In the United States District Court for the
Northern District of Illinois

| | | |
|---|---|---|
| Robert Sam<br>  Plaintiff | ( | Case Number: 23-50301 |
| VS | ( | Jury Demand |
| Melissa Mobile<br>BKA holdings LLC.<br>The Law Office Of Riley N Oncken P.C.<br>Riley N. Oncken | ( | **FILED**<br>SEP 15 2023 |
| Defendants | ( | THOMAS G. BRUTON<br>CLERK, U.S. DISTRICT COURT |

### Amended Complaint At Law

Now comes the Plaintiff, Robert Sam and through pro se, and complains of defendant's,

Melissa Mobile, BKA Holdings LLC, The Law office of Riley N Oncken P.C. And Riley N

Oncken, as follows:

### General Allegations

1.  The cause of action set forth in this complaint arise out of a wrongful eviction and multiple violations of federal laws, that began in 2019 and to present.

2.  The plaintiff Robert Sam was and is a renter, renting the property at 639 stonegate dr in sycamore Illinois, 60178. This property is owned by the defendants Melissa Mobile and BKA Holdings LLC.

3.  The cause of action took place in Dekalb county Illinois, making venue appropriate under federal code of civil procedure.

4.  On and around October 2019 the plaintiff signed into a lease with the defendants Melissa Mobile, BKA Holdings LLC and Melissa Mobile's husband Michael Mobile.

5. Prior to signing the lease the plaintiff Robert Sam explained his family's situations with having severe medical issues and disabilities. The plaintiffs wife Karen Sam suffers from MS, CVID, hashimoto and much more. The Plaintiffs daughter is disabled and suffers from a rare neurological disorder called Double Cortex syndrome or Band hetratopia causing severe epilepsy, seizures and major learning and intellectual problems. ( please see exhibits D through (r) )

6. The plaintiff Robert Sam also explained to the defendants that the plaintiffs daughter had a IEP for school and that it's necessary once she is signed up and registered with school, she needs to finish as transferring a IEP during a school year causes significant problems and challenges. ( please see exhibits H through N )

7. The plaintiff also explained to the defendants that there will be times he ( the plaintiff) will be late on rent due to the medical situation, the plaintiff explained that they have been through five evictions and that plaintiff was trying to find stable housing and getting approved for section 8 housing vouchers.

8. The defendants agreed to all the terms, waived any application or credit check and only required a back ground check by the local police department in sycamore Illinois. The background came back in good standings with no convictions or warrants and the plaintiffs and defendants entered into set lease agreement for immediate occupancy. Plaintiffs paid a security deposit and first and last months rent.

9. On or about November of 2019, plaintiff Robert Sam notified defendants husband Mike Mobile that they would be a few weeks late on rent as they are still going through the approval process for the section 8 choice vouchers. Defendants husband understood and had no issues. Shortly thereafter about a week after plaintiff already spoke with defendants husband about being a few weeks late, defendant and her lawyer Riley Oncken swiftly filed for eviction, not two months into the lease. After filing the 2019 Eviction, defendants and her attorney decided that it made more sense to not deviate from the lease agreement as they would lose in

trial, so they dismissed the 2019 eviction and excepted the money for rent.

10.  From 2019 to current 2023 the plaintiff has asked the defendant numerous times to make necessary repairs to the unit. To this day not one repair has been made. The plaintiffs wife and daughter are disabled and with the bad conditions of the unit the plaintiffs family needed these repairs. There was a blown front window that allowed rain and ice and air to blow through the house. A sinking front porch with a overhang ready to collapse. There was a dining room window that when it rained it badly leaked and soaked the flooring causing mold. There is a front door with gaps so big bees can fly through the home as well as the hot and cold air causing extremely high energy bills for the plaintiff. There is a crack in the foundation and when it rains the basement floods causing mold and mildew. There is exposed electrical wires on the unfinished and poorly half made basement causing potential for life threatening electrocution. There is a HVAC vent not even connected and you can look into the basement.
( please see exhibits O  through Z ).

11.  In 2020 the plaintiff and his family were approved for the section 8 choose housing voucher program due to the plaintiffs wife and daughters disability's. The mayor of Rockford wrote a compelling letter to the housing authority that helped with getting the HUD vouchers approved for the plaintiff and his family. ( please see exhibit A 1 ). Going forward all the rent was being paid by HUD and the Dekalb housing authority and the defendant excepted the vouchers.

12. In and about March of 2022 the defendants raised the rent above what the housing authority and HUD would allow. The plaintiffs were responsible for 250.00 of the 1950.00 month rent. The defendants also would not grant the plaintiffs a new lease and would only rent to them on a month to month basis.

13. In about March of 2023 the plaintiff Robert Sam notified the defendant that he would be

late on his portion of the rent due to his wife's new medication that the insurance would not cover. The defendant had her lawyer Riley Oncken reach out to the plaintiffs to come to a mutual agreement and sign a agreed order. I the agreed order Riley Oncken stated that the plaintiff would be waiving any 5 day or 30 day notice. As well the defendants would file for a order of possession and judgment June 1st if the plaintiffs had not moved out. ( please see the attached agreed order exhibit A2 ). On and about March 10th the agreed order was signed by both the defendants and the plaintiff.

14. On March 10th 2023 the same day the agreed order was signed. Defendants lawyer Riley Oncken deviated from the agreed order and filed the order of possession eviction order on March 10th 2023 instead of the agreed date of June 1st 2023. ( see exhibit A3 ).

15. On April 7th 2023 the plaintiff Robert Sam retained prairie state legal to help him vacate the agreed order. ( please see exhibit A4 ). On April 18th 2023 the lower court of Dekalb county Illinois and Stephanie klyn the judge denied the plaintiffs motion to vacate the agreed order. ( please see exhibit A5 ).

16. In May of 2023 the plaintiff filed a appeal with the appeals Court. The plaintiff also asked the lower court to stay the eviction. The lower court and judge Stephanie Klyn took the matter under advisement. She then set a new date for her ruling. While she took the matter under advisement and while it was stayed, the judge became a trespasser of the law. She personally involved herself illegally in the eviction matter by personally setting the eviction with civil processing. ( please see exhibit A6 ).

17. In June of 2023 on the return for the ruling of the motion to stay that was taken under advisement by Stephanie Klyn, the judge with no reason denied the motion and already had the eviction set violating her own court order stay. Immediately after the ruling Mr. Sam the plaintiff filed a emergency motion to stay with the appeals court and the appeals court granted the stay.

18. During the stay defendant and her lawyer Riley Oncken used thuggery and intimidation tactics to force the Plaintiff and his family to live in fear and move. Riley Oncken came to the home of the Sam's with the sycamore police department to intimidate Mrs. Sam who is disabled and there disabled 14yr old daughter. Riley Oncken demanded to be let in to film the unit. The police never intervened and there was no warrant.

19. A short time after Riley Oncken doxxed Mr. Sam on Mrs. Sam's go fund me site which she used to help raise money for her family due to her illnesses. Riley Oncken attacked her on her site and paid five dollars to dox them. Riley Oncken used interstate to keep the Sam's from raising money for there cause by using Mr. Sam's personal info and criminal background without his authorization and to smear them. ( please see exhibit A7 ).

20. Robert Sam the Plaintiff quickly filed for a no contact order against Riley Oncken in July of 2023 to protect his family. The defendants tried to argue away the no contact order by smearing Mr. Sam but Mr. Sam responded in kind with a very clear response ( please see attached response in no contact order)

21. The Plaintiff filed complaints with the Illinois Department of human rights for discrimination. The defendant and her new lawyers told the agency that the defendant evicted the Sam's for Mr. Sam's criminal record which Mr. Sam has zero convictions. They said this directly to the department of human rights.

22. Riley Oncken and Oncken law the defendants went on in July to use abusive litigation and filed a motion in front of Judge Klyn to hold Mr. Sam in contempt for not abiding by the agreed order that is being heard by the appeals court. Doing so Riley Oncken violated a court order stay by the appeals court. ( please see exhibit A8- A11 ). This was to bring back debtors jail and the judge denied the motion without prejudice. The Defendant Riley Oncken and Oncken law also intentionally contacted the housing authority of Dekalb and told them that the plaintiff Robert Sam was not in good standings. This costed the Sam's there hosing voucher.

23. The Plaintiff Robert Sam and his family were and are tenants and were injured at 639 stonegate dr in sycamore Illinois, 60178

## Count 1
## Discrimination Reasonable Accommodations

24. Robert Sam the Plaintiff incorporates by reference the general allegations in paragraphs 1 through 23.

25. On and about October 5th 2019 the Plaintiff Robert Sam reported to Defendants husband Mike Mobile that the basement was damp and that the dining room and bedroom Winslow's were severely taking in water.

26. On and about October 10th 2019 Defendants husband Mike Mobile explained he would send someone to make the repairs to the foundation and windows.

27. On and about October 18th 2019 the Plaintiff Robert Sam called Defendants husband Mike Mobile again about the repairs that were promised to be made. The plaintiff left multiple voicemails on Mike Mobile cell phone.

28. On and about November 1st 2019 the Plaintiff Robert Sam emailed the defendants husband Mike Mobile about the repairs and explained there was a horrible draft now coming from the front door. The Plaintiff also explained he will be late a few weeks in his rent.

29. On or about November 10th 2019 the defendants lawyer Riley Oncken and the law office of Riley N Oncken PC, filed a eviction against Robert Sam and his wife for failure to pay rent.

30. To this day September 5th 2023, not one repair has been made. The plaintiff has emailed and called and asked defendant Melissa Mobile, BKA holdings llc and Riley Oncken to make repairs. There failure has costed Robert Sam and his family thousands in energy bills and medical expenses. Because of the neglect of the unit more and more issues kept rising and none were addressed. (Please see exhibits__*A*__ though __12__ ).

31.  BKA Holdings, Melissa Mobile, Riley Oncken and The law firm of Riley N Oncken PC and through its officers, agents, employees, servants, joint ventures and/or representatives were guilty on one or more of the following acts and/or omissions:

A.  Failed to make any and all repairs in a timely manner and to date no repairs have been made.

B.  By not making the repairs the Defendants violated the Reasonable Accommodation Act under FHAA section 504 Act, 29 U. S. C. 794.

C.  The Defendants failed to except Plaintiffs court assistance income to help pay the rent. This failure to except income was a income discrimination but also a failure of reasonable accommodation under the HUD choice voucher program.

D.  Reasonable accommodation defenses under FHAA, section 504 and the ADA are all subject to the same analysis. Churney v Chicago housing auth, 2013 WL 589599, 3(NDIII.2013) The FHAA, ADA and the rehabilitation act each contain a requirement of reasonable accommodations and courts interpret the requirements similarly.

E.  In the Douglas v Kriegsfeld corp.,884 A.2d 1109, 1129 ( D.C. 2005) the court set forth the standard for establishing a reasonable accommodation defense. The tenant must demonstrate that:

1. She suffers from a " Handicap" or " disability"

2. The landlord knew or should have known of this disability

3. An accommodation of the disability may be necessary to afford the tenant an equal opportunity to use and enjoy her apartment.

4.  The tenant requested a reasonable accommodation

A. In Rosenborough v Cottonwood Apts, 1996 WL 490717, at 2(N. D. I'll. 1997), the court omitted a reference to this fourth element, but it is generally still required and a failure to

establish the element could prove fatal.

5.   The landlord refused to grant this request

32.  As a direct and proximate result of one or more of the aforementioned negligent acts or omissions by BKA Holdings LLC, Melissa Mobile, Riley Oncken and The law firm of Riley N Oncken PC.  Robert Sam the plaintiff and his family have been injured and sustained injuries including but not limited to pain, suffering, disability, loss of normal life, emotional and mental distress. These losses have been incurred in the past and will be incurred in the future; all or some of these losses are permanent.

Wherefore, the plaintiff Robert Sam respectfully request judgment in his favor against BKA Holdings LLC, Melissa Mobile, Riley Oncken and the law office of Riley N Oncken PC for the amount in excess of one-million five hundred thousand dollars ( 1,500,000.00) or as the jury finds to be fair and reasonable.

## Count two
## Violation of the Cares Act

33.  The plaintiff Robert Sam incorporates by reference the general allegations above in paragraphs 1 through 23.

34.  The Defendants violated the Cares Act, specifically related to discrimination regarding rent default curing timeframes, as established in section 5/9-209 of the code of civil procedure.

A. Section 5/9-209 of the code of civil procedure explicitly requires a period of 5 days to cure any rent defaults. However, the cares act, P.L. 16-36 402(c), extends the curing period for 30 days for recipients of subsidized housing, a category which includes Mr. Sam and his family, the aggrieved party in matter.

B. The defendants have acknowledged the cares act extension in line 1 of the agreed order (please see attached) they drafted, as well as in paragraph 9 of its complaint. This raises serious concerns about the discrimination against Mr. Sam and his disabled family based on there housing status.

C. Due to the willful violation of the federal cares act, BKA Holdings LLC, Melissa Mobile, Riley Oncken and the law office of Riley N Oncken PC have put the life of Mrs.Karen Sam in a irreparable situation. Without a home for Mrs. Sam to take her medications and a address to have the meds shipped to, she would almost certainly pass away, leaving there disabled daughter without a mother and Mr. Sam without his wife.

D. Wherefore, Plaintiff Robert Sam respectfully requests judgment in his favor against BKA Holdings LLc, Melissa Mobile, Riley Oncken, the law office of Riley N Oncken PC for a amount in excess of one million five hundred thousand dollars (1,500,000.00) that the jury finds to be fair and reasonable, plus costs.

### Count three
### Violation of the fair housing act

35. Robert Sam the plaintiff incorporates by reference the general allegations about in paragraphs 1 through 23.

36. The plaintiff Robert Sam filed discrimination charges against the defendant BKA Holdings LLC and Melissa Mobile with the Illinois department of human rights ( please see attached).

37. As the charges were presented to BKA Holdings LLC and Melissa Mobile for response. They admitted that due to the plaintiff Robert Sam's criminal charge that this was another reason they were not continuing the lease with the Plaintiff. By this admission in writing to the illinois department of humane rights, they violated HUD's fair housing act.

38. Wherefore, The plaintiff Robert Sam respectfully requests judgment in his favor against

BKA Holdings LLC, Melissa Mobile, Riley Oncken and the law firm of Riley Oncken PC for the amount in excess of one million five hundred thousand dollars( 1,500,000.00) that the jury finds to be fair and reasonable, plus costs.

## Count Four
## Interstate Stalking and Cyber Harassment

39. Robert Sam the plaintiff incorporates by reference the general allegations in paragraph 1 through 23.

40. BKA Holdings LLC, Riley Oncken and the law office of Riley Oncken PC, used intimidation and fear to scare Mrs. Karen Sam a disabled woman into submission.

41. Defendant Riley Oncken and the law office of Riley Oncken on behalf of there client Melissa Mobile and BKA holdings llc, went to Mrs. Sam's go fund me camp that she uses to help raise money for her family by getting donations based on her and her daughter's disabilities. Riley Oncken donated five dollars to be able to leave a review. He then went on to shame Mrs. Sam and tarnish and slander her by harassing and stalking her and going after her only means of income. Riley Oncken sought out Mrs. Sam personally to prevent and harm her means of income.

42. 18 U.S. Code Section 2261A prohibits the federal crime of stalking and has been amended to include online actions to harass, injure, harm, or intimidate a person. This is exactly what Mr. Riley Oncken has committed. By the defendants actions he subjected and exposed Mrs. Sam to hatred, loss of income, ridicule and threats. Mrs. Sam a disabled woman fighting to stay alive and fighting to help her family while she can, was subjected to cyber bullying, cyber harassment by the hands of a lawyer, someone who is suppose to know better. The defendant actually committed a crime, a federal crime.

43. Wherefore, Robert Sam the plaintiff respectfully requests the judgment in his favor against BKA Holdings LLC, Melissa Mobile, Riley Oncken and the law office of Riley N Oncken for a

amount in excess of one million five hundred thousand dollars (1,500,000.00) that the jury finds to be fair and reasonable, plus costs of this lawsuit.

44. Robert Sam the plaintiff is also asking the court to recommend to the government criminal charges against Riley Oncken for the federal offense of cyber stalking and harassment.

## Count Five
## Violations of the American Bar Association

45. Robert Sam the plaintiff incorporates by reference the general allegations about in paragraph 1 through 23.

46. The defendant Riley Oncken and the law office of Riley N Oncken PC violated the American bar association's professional misconduct by engaging in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, in conduct related to the practice of law.

47. As a direct proximate result of one or more of the aforementioned negligent acts or omissions by Riley Oncken and the law office of Riley Oncken pc. Robert Sam and his family have been injured and sustained injury's including but not limited to pain, suffering,disability, loss of income.

48. Wherefore, Robert Sam the plaintiff respectfully requests this court to refer this matter to the Bar Association and the ARDC for disbarment.

## Count Six
## Violation of the Interstate Doxxing Prevention Act

49. Robert Sam the Plaintiff incorporates by reference the general allegations above in paragraphs 1 through 23.

50. The Defendant Riley Oncken and the law office of Riley N Oncken PC on behalf of there client BKA Holdings LLC and Melissa Mobile used the internet to Doxx defendant Robert Sam.

51. Riley Oncken committed a federal criminal offense by using doxxing to hurt, smear and intimidate Mr. Sam by exposing his name and criminal charge through Mr. Sam's wife crowd finding site. By doing so he SEC. 2. DISCLOSURE OF PERSONAL INFORMATION WITH THE INTENT TO CAUSE HARM.

52. following:

## "§ 881. Publication of personally identifiable information with the intent to cause harm

"(a) Prohibition.—Whoever, with the intent to threaten, intimidate, harass, stalk, or facilitate another to threaten, intimidate, harass, or stalk, uses the mail or any facility or means of interstate or foreign commerce to knowingly publish the personally identifiable information of another person, and as a result of that publication places that person in reasonable fear of the death of or serious bodily injury to—

"(1) that person;

"(2) an immediate family member of that person; or

"(3) an intimate partner of that person,

shall be subject to the criminal penalty and the civil liability provided by

this section.

"(b) Criminal Penalty.—

"(1) IN GENERAL.—Whoever violates subsection (a) shall be fined under this title or imprisoned not more than 5 years, or both.

53. Wherefore, Robert Sam the Plaintiff respectfully requests judgment in his favor against BKA Holdings LLC, Melissa Mobile, Riley Oncken and the law office of Riley N Oncken PC for a amount in excess of one million five hundred thousand dollars (1,500,000.00) that the jury finds to be fair and reasonable, plus costs.

54. Robert Sam also asks this court to refer Riley Oncken to the government for criminal charges as the federal law does require.

Federal Jurisdiction:

This court has federal jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1331, as the claims asserted herein arise under the laws of the United States specifically the Cares Act and regulations promulgated by the Department of housing and urban development.

The plaintiff alleges that the defendants actions have resulted in a violation of the Cares Act, which was enacted by the United States congress to provide financial assistance and protection to individuals affected by the covid pandemic. The cares act includes provisions relevant to housing security and eviction protections, which are directly implicated in the instant case.

Additionally, the defendants alleged conduct constitutes a breach of HUD regulations governing

the administration of federal housing subsidies, including the housing choice voucher program. The plaintiff, who are recipients of the HCV program, rely on these federal regulations to ensure their rights to adequate housing and protection against arbitrary evictions.

As a result of the defendant's violations of federal laws and regulations, the plaintiff seeks remedies and relief provided under the cares act and HUD regulations, which can only be adjudicated in federal court.

Therefore, this court possesses both subject matter jurisdiction and the authority to provide appropriate remedies to redress the plaintiffs grievances arising from the defendants violations of federal law and regulations.

Due process violations: The plaintiff was not provided with proper notice or opportunity to be heard before the eviction order was entered. The plaintiffs due process rights were violated under federal law.

Fair housing act violations were violated due to disability and criminal record discrimination which violates the fair housing act.

Robert Sam

By: _____          9-13-23

639 stonegate dr sycamore Illinois 60178

708-830-9995

harpees(@yahoo.com

**Division of Pediatric Neurology
Ann & Robert H. Lurie
Children's Hospital of Chicago
At Northwestern Medicine Central DuPage
Hospital**
25 N. Winfield Rd
Winfield, IL, 60190
630-933-4954
Fax 630-933-4225
www.luriechildrens.org

Ann & Robert H. Lurie
Children's Hospital of Chicago™

*Affiliated with
Northwestern University's
Feinberg School of Medicine*

4/11/2018

Re: Harper Sam
DOB: 5/20/2009
Medical Record Number: 1845978

TO WHOM IT MAY CONCERN:

Harper Sam is being followed in our Pediatric Neurology Clinic for bilateral band heterotopia of gray matter, epilepsy, right sided weakness, learning difficulty due to cognitive limitations and speech delays.

Subcortical band heterotopia, also known as double cortex syndrome, is a condition of abnormal brain development that is present from birth. This condition which primarily affects females, occurs when neurons migrate to an area of the brain where they are not supposed to be (heterotopia), and form abnormal areas that appear as band-like clusters of white tissue underneath the gray tissue of the cerebral cortex (subcortical), creating the appearance of a double cortex. Symptoms associated with subcortical band heterotopia include intellectual disability and epilepsy, both of which Harper has. The condition is not progressive and children can benefit greatly from therapies and educational assistance.

If more specific information is needed such as IQ, memory, or attention testing, we would refer Harper for neuropsychological testing.

Sincerely,

Electronically signed by
Diana Sieciechowicz, MD
Division of Pediatric Neurology

Exhibit
B

1



**LOYOLA MEDICINE**

*We also treat the human spirit.*®

July 1, 2016

To Whom It May Concern:

Karen K Sam is a patient of mine who I have been taking care of for years. she has the following diagnosis:

## Past Medical History

| Diagnosis | Date |
|---|---|
| • Asthma | |
|     *triggers: weather changes, allergies - dogs and cats - has both* | |
| • CVID (common variable immunodeficiency) | 2/3/2016 |
| • DJD (degenerative joint disease) | |
|     *thoracic region* | |
| • Hashimoto's thyroiditis | |
| • Migraines | |
|     *with aura* | |
| • Scoliosis | |
| • Septic shock | |
|     *due to possible food poisoning* | |

Due to her various medical conditions, she is totally disabled and unable to work. She cannot drive due to her thyroid disease affecting her vision. She cannot be in public places for any duration of time due to her immunodeficiency. She also has chronic migraines, causing her pain nearly every day, which we are in the process of trying to get under control.



**LOYOLA MEDICINE**

*We also treat the human spirit.*

December 29, 2016

To Whom It May Concern:

Karen K Sam has been a patient of mine since 5/2014. She has the following medical issues:

**Patient Active Problem List**
**Diagnosis**

- Migraines
- DJD (degenerative joint disease)
- Scoliosis
- Septic shock
- Asthma, moderate persistent
- Microscopic colitis
- CVID (common variable immunodeficiency)
- Allergic rhinitis due to cats
- Allergic rhinitis due to dogs
- Graves disease

As you can see, she suffers from CVID, an immunodeficiency which makes her more susceptible to infection. She has suffered from infections over the course of her life, and once was critically ill as a result, leading to septic shock. She has been actively getting treatment for CVID but is still at risk of infection. Due to this, as well as some of her other medical problems, Karen has been unable to work. It is my medical opinion that she has been unable to work for a long period of time (well before 2012) and probably for her whole life, and has a chronic disability.

Please do not hesitate if you have any questions.



Sincerely,

Sara Doss, MD
Center For Health At Homer Glen Medicine Pediatrics
15750 Marian Drive
Homer Glen IL 60491
PH: 708-645-3400

Exhibit 2
E

Name: Karen K AUKSI-SAM | DOB: 12/16/1977 | MRN: 1962859 | PCP: Sara Doss, MD | Legal Name: Karen K AUKSI-SAM

# Letter Details

 **LOYOLA MEDICINE**
*We also treat the human spirit.*



May 7, 2023

To Whom It May Concern:

Karen K AUKSI-SAM has been a patient of mine since 2014. She has the following medical conditions:

**Patient Active Problem List**

Diagnosis
- Migraines
- DJD (degenerative joint disease)
- Scoliosis
- Septic shock
- Asthma, moderate persistent
- Microscopic colitis
- CVID (common variable immunodeficiency)
- Allergic rhinitis due to cats
- Allergic rhinitis due to dogs
- Graves disease
- Migraine without aura and without status migrainosus, not intractable
- CIN III (cervical intraepithelial neoplasia grade III) with severe dysplasia

Ms. Auksi-Sam suffers from CVID, an immunodeficiency which makes her more susceptible to infection. She has suffered from infections over the course of her

life, and once was critically ill as a result, leading to septic shock. She has been actively getting treatment for CVID but is still at risk of infection. Due to this, as well as some of her other medical problems, Karen has to have stable housing to receive her treatments and try to remain healthy.

Sincerely,

Sara Doss, MD

exhibit
6

Loyola Medicine Homer Glen
15750 Marian Drive
Homer Glen IL 60491-6200
PH: 708-645-3400

*This letter was initially viewed by Karen K AUKSI-SAM at 5/7/2023 4:09 PM.*

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

# Parent/Guardian Notification of Conference Recommendations

**Student Name:** *Harper Sam*  **Grade:** *7th*  **Date:** *04/13/2022*  **DOB:** *05/20/2009*

Dear *Robert Sam* :

The purpose of this letter is to provide you with notification of the educational recommendation developed for your child at the conference held on *04/13/2022* at *Sycamore Middle School* .

At this conference it was determined that your child:

☐ Is eligible or continues to be eligible for special education and related services under the category of:

☐ Is not eligible for special education and related services.

☑ Will receive the special education and related services as listed in the IEP.

☐ Requires and will receive the post-secondary goals and transition services (beginning at age 14 1/2) as listed in the IEP.

☐ Requires and will receive a functional behavioral assessment and behavioral intervention plan.

☐ Was determined that the disciplinary code violation(s) was related to your child's disability.

☐ Was determined that the disciplinary code violation(s) was not related to your child's disability.

☐ Is recommended for graduation.

☐ Other (e.g. termination of placement, aging out):

CHECK ONE, WHEN APPLICABLE: I understand that as soon as possible following development of the IEP, but not more than ten (10) school days, special education and related services will be provided to my child in accordance with the IEP, and:

☑ I **agree** to waive the requirement of a ten school day interval before an initial or change in placement occurs.

☐ I **do not agree** to waive the requirement of a ten school day interval before an initial or change in placement occurs.

*I have the authority to enter into this agreement and acknowledge that my electronic signature below is legally binding. I agree that electronic versions of this document shall be given the same weight and deference as a hard copy.

| | |
|---|---|
| *04/13/2022* | |
| Date | Parent/Guardian Signature |

Please refer to your copy of the IEP conference summary report which contains the information used in making these recommendations. Please review the parental rights information in the **Explanation of Procedural Safeguards**. If you wish to discuss any concerns or have questions regarding your rights of this information, please contact:

**Name:** *Lynn Reilley*  **Title:** *Director of Student Services*  **Phone:** *815/899-8117*

Sincerely,

Name: *Matt Moore*

Title: *Special Education Teacher*

Exhibit
H

Student: Sam, Harper Lea
Conference Date: 04/13/2022
Embrace Version: ISBE 34-57E (8/16)            Sycamore CUSD #427

D.O.B.: 05/20/2009

Page 1 of 1

# Conference Summary Report

Conference Date: _04/13/2022_

## Purpose Of Conference

- ☐ Review of Existing Data
- ☐ Initial Eligibility
- ☐ Reevaluation
- ☐ Other:
- ☐ Initial IEP
- ☑ IEP Annual Review/Revision
- ☐ Transition
- ☐ Manifestation Determination
- ☐ Graduation
- ☐ Transfer-In
- ☐ IEP Addendum
- ☐ Termination of Placement
- ☐ FBA/BIP

## Student Identification Information

| | | |
|---|---|---|
| **Student's Last Name:** _Sam_ | **Current Grade Placement:** _7th_ |
| **First/Middle Name:** _Harper Lea_ | **Current School Year:** _21-22_ |
| **Address:** _639 Stonegate Dr_ | **Current Home School:** _Sycamore Middle School_ |
| _Sycamore, IL 60178_ | **Current Serving School:** _Sycamore Middle School_ |
| **Birthdate:** _05/20/2009_  **Gender:** _F_ | |
| **Age:** _12 years, 10 months, 24 days_ | **Next Grade Placement:** _8th_ |
| **Race/Ethnicity:** _White / Not Hispanic or Latino_ | **Next School Year:** _22-23_ |
| | **Next Home School:** _Sycamore Middle School_ |
| **Student Phone:** _(708)830-9995_ | **Next Serving School:** _Sycamore Middle School_ |
| **Parent/Guardian:** _Robert Sam_ | |

☐ Yes  ☑ No    Educational Surrogate Parent

**Resident District:** _Sycamore CUSD #427_

**Serving District:** _Sycamore CUSD #427_

**Address:** _639 Stonegate Dr_

_Sycamore, IL 60178_

**Home Phone:**

**Work Phone:**

**Email:** _harpees5@yahoo.com_

**Other Parent/Guardian:**

**Initial Consent for Evaluation Date:**

**Initial Eligibility Determination:**

**Annual Review Due Date:** _04/12/2023_

**Triennial Reevaluation Due Date:** _04/15/2024_

☐ Yes  ☑ No    Educational Surrogate Parent

| | |
|---|---|
| **Extended School Year:** | ☐ Yes  ☑ No |
| **Placement is in home school:** | ☑ Yes  ☐ No |

**Address:**

**Placement: (To be completed after placement determination)**

_02 - Inside general education classroom 40% - 79% of the day_

_02 - Inside general education classroom 40% - 79% of the day_

**Home Phone:**

**Work Phone:**

**Email:**

**Language/Mode of Communication (Student):**
_English_

**Anticipated Date of High School Graduation:** _06/10/2027_

**School Psychologist:**

**Language/Mode of Communication (Parent):**
_English_

**SIS Number:** _879330278_

**Medicaid Number:**

**Primary Eligibility:** _Multiple Disabilities (M)_

**Secondary Eligibility:**

## Interpreter Services

☐ Yes  ☑ No

Student: Sam, Harper Lea
Conference Date: 04/13/2022
BDS Version:(ISBE 37-44)

Sycamore CUSD #427

D.O.B.: 05/20/2009

Page 1 of 4

# Parent/Guardian Excusal of an Individualized Education Program Team Member

**Student Name:** _Harper Sam_ **Grade:** _7th_ **Date:** _04/13/2022_ **DOB:** _05/20/2009_

**Today's Date:** 4/13/22

Dear _Robert Sam_ :

An IEP Team meeting is scheduled for your child on _04/13/2022_ .

We ☑ met in person ☐ spoke on the phone ☐ exchanged e-mails ☐ exchanged faxes and agreed to the following:

Allowing team members to be excused from attending an IEP meeting is intended to provide additional flexibility to parents in scheduling meetings. The presence and participation of the required Individualized Education Program (IEP) team member(s) identified below is/are not necessary and has/have been excused from being present and participating in the meeting. The "team member" is described in the regulations as, the general education teacher, special education teacher, LEA representative, and/or an individual who can interpret the instructional implications of evaluation results, who may be a member of the team already identified.

**Content area of excused member _not_ discussed at the meeting**

☑ Yes ☐ NA The school district and parent/guardian agree the following member(s) is/are not required to attend the IEP meeting in whole or in part because the individual's area of curriculum, content or related service will not be discussed or modified.

_____
Name and Area

**Content area of excused member discussed at the meeting**

☑ Yes ☐ NA The school district and parent/guardian agree the following member(s) may be excused from attending the IEP meeting in whole or in part, when the meeting involves a modification to or discussion of the member's area of the curriculum or related services, if the member submits input into the IEP in writing to the parent and to the team prior to the meeting.

_Ashley Hayes (Physical Therapist)_
Name and Area

*I have the authority to enter into this agreement and acknowledge that my electronic signature below is legally binding. I agree that electronic versions of this document shall be given the same weight and deference as a hard copy.

_____    04/13/2022
Parent/Guardian Signature                **Date**

_____    04/13/2022
Authorized School Personnel Signature      **Date**

If you have any questions or would like a copy of **Explanation of Procedural Safeguards**, please contact:

**Name:** _Lynn Reilley_ **Title:** _Director of Student Services_ **Phone:** _815/899-8117_

*I have the authority to enter into this agreement and acknowledge that my electronic signature below is legally binding. I agree that electronic versions of this document shall be given the same weight and deference as a hard copy.

Sincerely,

_____
(Signature)

**Name:** _Matt Moore_

**Title:** _Special Education Teacher_

---

Student: Sam, Harper Lea                                      D.O.B.: 05/20/2009
Conference Date: 04/13/2022
Embrace Version: ISBE 34-57H (8/15)       Sycamore CUSD #427                 Page 1 of 1

# Present Levels Of Academic, Developmental, and Functional Performance

**Student Name:** *Harper Sam*          **Grade:** *7th*     **Date:** *04/13/2022*     **DOB:** *05/20/2009*

**Complete for initial IEPs and annual reviews.**

When completing this page, include all areas from the following list that are impacted by the student's disability: **academic performance, social/emotional status, independent functioning, vocational, motor skills, and speech and language/communication.** This may include strengths/weaknesses identified in the most recent evaluation.

**STUDENT STRENGTHS:**

*Harper Sam is a seventh-grade student in her second year at Sycamore Middle School (SMS). Always with a smile on her face and curiosity about the daily agenda, Harper has continued to assimilate into a more normalized school routine throughout the present school year. Harper is a very kind and caring person, and she enjoys making interpersonal connections with many staff members and peers while she is in attendance at school. As Harper has spent more time in different class settings with her peers, her ability to initiate and partake in more typical social interactions has improved. In the classes and clubs that she participates in at school, Harper has identified peers that she considers friends. In terms of functional independence at school, Harper is progressing in a wide range of skills that include navigating throughout the building, identifying appropriate people to support her, and completing her arrival and departure routines. Academically, Harper continues to grow in the core functional academic areas. Two of the areas where Harper has made the most academic gains are using a calculator to solve sets of math problems with mixed operations and her automaticity in saying sight words aloud. When it comes to behavior and her general attitude, Harper is a model student across all of her classes and sessions. Even on days when she has been impacted by medical events, Harper is always happy to be at school and completes all given activities to the best of her abilities.*

**PARENTAL EDUCATIONAL CONCERNS/INPUT:**

*Mr. Sam was a valuable participant in Harper's meeting today. He enlightened the other team members on Harper's medical condition and the progress she has made over the last year. Additionally, Mr. Sam discussed the different opportunities that Harper will partake in over the summer to support her academic, functional, and social development. Mr. Sam did say he was open to ESY if the team deemed it necessary, but after further discussion, the team decided it would be best to forgo it for this year to focus on having Harper ready for a longer school day next year. Mr. Sam did not request an extra copy of procedural safeguards or an additional copy of the completed additional information page.*

**HEALTH INFORMATION/CONCERNS:**

*Intractable epilepsy with focal seizures and epileptic spasms, band heterotopia*
*Seizure Action Plan and IHCP attached*
*Hearing: 02/23/2022 - Pass*
*Vision: 02/23/2022 - Pass*

**STUDENT'S PRESENT LEVEL OF ACADEMIC ACHIEVEMENT** (Include strengths and areas needing improvement):

*Over the past two years, Harper has participated in a heavily modified academic program due to her medical needs and the covid pandemic. This modified academic programming has included one-to-one virtual or in-person sessions that range from thirty minutes to an hour. These sessions centered around functional and foundational academic skills in the areas of reading, writing, and math. Additionally, Harper participates in weekly sessions with an occupational therapist, physical therapist, and a social language group with a social worker and speech and language pathologist. At this time, all of Harper's one-to-one and small group sessions are in-person within the school setting. At the onset of the second semester, Harper's schedule was modified again so that she could participate in PE and Allied Arts classes on a daily basis within the general education setting. Harper attends both of these classes with a support person (paraeducator for allied arts and case manager for PE), who is there to clarify directions, provide needed accommodations, and help Harper with task completion of assigned activities. Harper enjoys participating in both of these classes, and she performs to the best of her abilities. While Harper continues to progress and make gains as she spends more time at school, she will continue to need ample staff support in general education and instructional level classes to meet her academic, functional, and social needs.*

Student: Sam, Harper Lea
Conference Date: 04/13/2022
Embrace Version: ISBE 34-54G (1/22)                    Sycamore CUSD #427

D.O.B.: 05/20/2009

Page 5 of 41

# Present Levels Of Academic, Developmental, and Functional Performance

*As previously stated, Harper currently participates in an hour-long functional academic session with a focus on reading, writing, and math. When completing reading, Harper has focused on reading fluency, reading sight words aloud, reading short comprehension passages, and answering comprehension questions about short comprehension passages she has read. On reading fluency passages presented at the kindergarten (independent) level, Harper is able to read 50 words aloud in one minute. Harper is continuing to work on identifying high-frequency words from the FRY reading list of 200-300 words. When reading short comprehension passages, Harper reads passages at the kindergarten and first-grade level, and she practices answering both open and closed corresponding comprehension questions.*

*When working on writing skills, Harper focuses on writing several sentences (3-5 sentences) about a given topic. Harper is currently working on rereading her sentences in order to see if she missed any words. When completing independent writing, Harper is still emerging in her consistent use of capitals and end marks, and she often connects her sentences with the use of the word "and".*

*In math, Harper works on a combination of academic and functional life skill math tasks. Harper works on single-digit addition and subtraction using Touchpoints. Harper consistently places the Touchpoints independently on the numbers 1-9 when working on these skills. Recently, Harper has been introduced to double-digit addition and subtraction without regrouping with the use of touchpoints. Additionally, Harper has been introduced to checking addition and subtraction answers with the use of a calculator. When working with money, Harper utilizes Touchpoints to count money; she has difficulty when transitioning from counting silver coins to pennies. Harper also works on coin identification (penny, nickel, dime, and quarter); she benefits from repetition as she forgets the values and names of the silver coins when she has not worked on them for several days.*

*Report completed by Matt Moore and Jelene Denes*
*Special education teachers*

**STUDENT'S PRESENT LEVELS OF FUNCTIONAL/DEVELOPMENTAL PERFORMANCE** (Include <u>strengths</u> and <u>areas needing</u> <u>improvement</u>):

*Social/Emotional: Harper is a friendly, kind and caring student. She enjoys being an artist, spending time with her family and her pets. Harper has a variety of hobbies and interests. Harper receives social work services to address social skills. She has demonstrated positive initiation skills of making eye contact and saying hello. At times if she initiates in a quiet way and the peer does not respond she will not initiate again. Harper will benefit from continued work with her overall confidence socially and managing her emotions. She has been increasing her participation in activities and events at school (peer pals, art club, school newspaper, Spartan Minute) to help her develop topics of interest when talking with peers.*

*Speech/Language*
*Harper has been in our Social Language group sessions amongst her peers and she has made a great adjustment working with her peers. She participates actively and asks questions of her peers. She continues to be a great advocate for herself as well.*
*She continues to work on her word finding skills and at times only needs time to process an answer or a verbal cue is needed. In all of our group activities, Harper seems to enjoy all of the activities and she does not need any prompting to converse with her peers when it was her turn to make comments. She has played active roles in all of our sessions. Harpers articulation has vastly improved along with her continuation of producing multi-syllabic words in phrases as well. Working one on one with Harper on her memory skills has helped her gain strategies learned and seeing her in a group setting demonstrates skills that are being carried over into a functional setting. Harper has worked diligently on all of her goals and she has taken ownership of them as well. Harper has learned how to appropriately communicate with students (friends) at school and has taken all directions very well. At times Harper's conversational skills are sometimes unorganized or she has challenges not only in word finding but in using the descriptors It has been a joy having her here in school this year!*

*Functional Independence*

# Present Levels Of Academic, Developmental, and Functional Performance

At this time, Harper continues to participate in a modified daily school schedule where her day begins at approximately 10:45 AM. This schedule was implemented to better support Harper's medical needs as she is generally more impacted in the early morning. Given the shortened schedule, Harper currently participates in a forty-minute Allied Arts class (3rd quarter - STEM, 4th quarter - Art) and PE class, a weekly social language group (forty minutes weekly), and a weekly occupational therapy session (twenty to thirty minutes weekly) at Sycamore Middle School. Additionally, Harper participates in an hour-long functional academic session with her co-case manager at North School. While it is largely day-dependent, Harper attends in-person activities between 140 minutes and 200 minutes per day. Throughout the second semester, Harper's attendance is generally between three to four days per school week.

As stated in the strengths, Harper's functional independence within the school setting has grown as she has become more comfortable with the school routine and structure. At this time, Harper is able to enter the school building, navigate to her locker bank and main classroom, identify familiar staff, and she has a general awareness of the classes she participates in while she is at school. There are times when Harper may need assistance finding a location within the building, but this usually only happens after Harper has missed a prolonged period of school days or the location is still somewhat new to her. Additionally, Harper has become much more comfortable advocating for herself about school-related manners. Harper is more than willing to share when she needs extra time with something, when she needs a direction to be clarified, and she can make appropriate decisions when given multiple choices (selecting what activity she wants to do in PE on choice day). Due to her modified schedule, there are limited opportunities for Harper to participate in many typical activities that happen within the school setting. These opportunities include natural socializing opportunities (eating lunch with peers), transitioning from class to class (following a full day schedule), organizing her materials, changing for PE, and problem-solving on her own when a problem may arise. When the length of Harper's school day increases, these activities will need to be explicitly taught and supported for Harper.

Matt Moore
Special Education Teacher

Occupational Therapy
Harper is a friendly and happy student, who always works hard and tries her best. Harper has been receiving weekly direct occupational therapy services to increase her independence with fine motor and visual motor skills, as well as fine motor strength and motor coordination. Harper presents
with decreased fine motor control and finger manipulation which affects the quality of her written work. She also has delays in visual perception and visual motor coordination which impacts how she can replicate letters and numbers, as well as simple sentences. While she has shown improvement with her functional motor skills, Harper continues to struggle with opening cartons/containers/sealed bags, zipping/unzipping, tying shoes, keeping up with peers when writing, and decreased coordination. When completing writing tasks, Harper continues to show improvement with spacing between words and letter sizing. She continues to work on line placement with "go-under" letters throughout her writing with more consistency. When working on cursive handwriting she is showing improvement and recall of letter formations. Harper has improved legibility and writing speed when utilizing cursive handwriting. Harper would benefit from continued skilled instruction with the Handwriting Without Tears cursive writing program to increase her writing ability. Harper may benefit from continued occupational therapy to increase her functional independence within her educational environment.

Kimberly Varas, COTA/L
Reviewed by: Nicole Meyers MOTR/L

PHYSICAL THERAPY

Student: Sam, Harper Lea
Conference Date: 04/13/2022
Embrace Version: ISBE 34-54G (1/22)

D.O.B.: 05/20/2009

Sycamore CUSD #427

Page 7 of 41

# Present Levels Of Academic, Developmental, and Functional Performance

Harper has participated in weekly physical therapy sessions during the past school year. Focus has been placed on incorporating Harper into a general education PE class with adult assistance. Harper is eager and willing to participate in 75% of PE activities. She will have days where she prefers to use the fitness center with therapist vs. join the class. Typically this seems to be when Harper is more tired, based off of her verbal report and body language. She is a willing participant in the fitness center, able to perform the stationary bike, rowing machine, and elliptical machines independently. She requires adult assist for setting of the machines, setting timers or speeds. When the class is performing game play, Harper is willing to involve herself and jumps right in. She requires one on one support due to her risk for seizures, as well as needing verbal prompting for how to play games, rules, and objectives of each activity. Harper does demonstrate improvement for each game after it has been played for 1-2 weeks and will begin to understand goals and objectives. She is participating socially with peers and frequently joins the same group of peers when given the choice. Harper would continue to benefit from adult assistance in participating in general education PE. If scheduling allowed, she would also be a great candidate for adaptive PE. Ashley Hayes, PT

**THE RESULTS OF THE INITIAL OR MOST RECENT EVALUATION OF THE STUDENT**

Per Harper's most recent eligibility determination dated 4/15/2021:

Adverse Effects:
Harper's medical diagnosis has led to deficits in language, adaptive, cognitive, academic and fine and gross motor skills.

Educational Needs:
Harper requires specially designed academic and functional instruction in small group and one on one settings as well as occupational therapy, physical therapy, speech therapy and social work support.

**ADVERSE EFFECTS**

Describe the effect of this individual's disability on involvement and progress in the general education curriculum and the functional implications of the student's skills.
- For preschool child, describe the effect of this individual's disability on involvement in appropriate activities.
- By age 14 1/2, describe the effect of this individual's disability on the pursuit of post-secondary expectations (living, learning, working).

Per Harper's most recent eligibility determination dated 4/15/2021:

Adverse Effects:
Harper's medical diagnosis has led to deficits in language, adaptive, cognitive, academic and fine and gross motor skills.

Educational Needs:
Harper requires specially designed academic and functional instruction in small group and one on one settings as well as occupational therapy, physical therapy, speech therapy and social work support.

Student: Sam, Harper Lea
Conference Date: 04/13/2022
Embrace Version: ISBE 34-54G (1/22)

Sycamore CUSD #427

D.O.B.: 05/20/2009

Page 8 of 41



























**THE CITY OF**
**ROCKFORD**
ILLINOIS, USA

Human Services Department
Community Services Division
A Community Action Agency

November 27, 2019

To Whom It May Concern:

Mr. Robert Sams and his family are eligible for a mainstream HUD voucher that will provide them with the ability to afford their housing. They have begun the application process and we believe they could have the voucher within a few weeks. Mr. Sam's family has been devastated by the debilitating illnesses that have affected his wife and daughter and he was placed in the unfortunate position of having to quit a good job so that he was eligible for Medicaid so he could afford medicine for his wife and daughter.

Recognizing that these unfortunate circumstances are not the responsibility of the landlord, we are requesting that the court allow for a reasonable amount of time of at least fourteen days to allow Mr. Sams and the agencies assisting him time to either produce the funds needed to halt the eviction through payment in full or complete the HUD voucher process.

Sincerely,

Jennifer Jaeger
Community Services Director
Boone/DeKalb/Winnebago Counties
Continuum of Care

A 1



City of Rockford, Illinois USA

**STATE OF ILLINOIS**
**IN THE CIRCUIT COURT FOR THE TWENTY-THIRD JUDICIAL CIRCUIT**
**DEKALB COUNTY**

BKA Holding, LLC,                          )       NO: 23 EV 102
an Illinois Limited Liability Company      )
    Plaintiff,                             )                    **FILED**
                                           )                    3/10/2023
                                           )              2023EV000102
    v.                                     )
                                           )              *Lori Grubbs*
                                           )              Lori Grubbs
ROBERT SAM & KAREN SAM,                     )              Clerk of the Circuit Court
    Defendants.                            )              DeKalb County, Illinois

**AGREED ORDER**

This matter coming before the Court by Agreement with respect to the Plaintiff's Complaint For Forcible Entry and Detainer and Monetary Damages and the court being fully advised;

IT IS ORDERED AS FOLLOWS:

1. Defendants waive the requirements of being served with a 5-day or 30-day notice.
2. Defendants submit to the jurisdiction of this Court and waive formal service of the Complaint and Summons.
3. Defendants shall pay the sum of $914.00 to Plaintiff by March 25, 2023.
4. Defendants shall pay the sum of $255.00 to Plaintiff by April 25, 2023.
5. Defendants shall pay the sum of $255.00 to Plaintiff by May 25, 2023.
6. Defendants shall pay any water bills incurred through May 31, 2023.
7. The lease term shall terminate on May 31, 2023, by which time Defendants shall vacate the premises.
8. An Order for Possession shall enter, enforceable on June 1, 2023, if Defendants have not vacated the premises.
9. This court shall retain jurisdiction of the case to enforce the terms of this order. This Court shall retain jurisdiction to adjudicate any damages claimed by Plaintiff from Defendants following Defendants vacating the premises.
10. Provided Defendants make payments as agreed, vacate the premises as agreed, and do not cause any damage to the premises, Plaintiff shall dismiss this case with prejudice and refund the security deposit within 30 days. Plaintiff may deduct the cost necessary repairs or cleaning, if any, from the security deposit, as provided in the lease.
11. This matter is continued to June 6, 2023 at 9:00 a.m. for status of compliance with this Order.

_____
Riley N. Oncken, For Plaintiff

_____
Robert Sam, Defendant

_____
Karen Sam, Defendant

DATED: 3/10/2023
_____

ENTER: /s/ Stephanie Klein
_____
                    Judge

NOT AN OFFICIAL COPY

This form is approved by the Illinois Supreme Court and is required to be used in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | | **EVICTION ORDER** | For Court Use Only |
|---|---|---|---|
| DeKalb     **COUNTY** | | | **FILED** 3/10/2023 |

2023EV000102

*Lori Grubbs*

Lori Grubbs
Clerk of the Circuit Court
DeKalb County, Illinois

**Instructions ▼**

Directly above, enter the name of the county where the case was filed.

**Plaintiff** *(For example, the landlord or owner):*

BKA HOLDING, LLC, an Illinois Limited Liability Company

Enter the full names of Plaintiff, Defendants, and the case number as listed on the *Eviction Complaint.*

v.

**Defendants** *(For example, the tenants or occupants):*

Check the box for Unknown Occupants if it was checked on the *Eviction Complaint.*

ROBERT SAM and KAREN SAM

23 EV 102

**Case Number**

☐ **Unknown Occupants**

**This Order is entered:**

Check the box for the type of order that is entered.

☐ By default *(Defendants not in court)*
☐ After contested hearing or trial
☐ After compliance hearing, the Defendants having failed to comply with a previous Agreed Order
☑ By agreement *(the court having made no factual findings)*

All parties (or their lawyer) who agree to this *Eviction Order* should sign it.

Signed and agreed to,

See Agreed Order

_____
*Plaintiff (or lawyer)*

_____
*Defendant (or lawyer)*

See Agreed Order

_____
*Defendant (or lawyer)*

_____
*Defendant (or lawyer)*

**Notice to Defendants:**

This *Order* is a judgment against you. It may appear on a background or credit check and affect your ability to rent housing. There are other orders you may use to resolve your case by agreement. Do not agree to this *Order* if:
- You have an agreement with Plaintiff that lets you stay in the property (Use *Agreed Settlement Order with Status Date (Defendants Will Pay & Stay)* or *Agreed Dismissal Order (Case May Be Reinstated if Defendants Violate Agreement)*; OR
- Plaintiff has agreed to dismiss this case if you move out by a certain date (Use *Agreed Settlement Order with Status Date (Defendants Will Move)*).

**You must complete sections 1-5.**

In **1**, check the boxes to indicate who is in court. Enter the names of the Defendants who were in court.

1. **People in court:**
   ☐ Plaintiff    ☐ Plaintiff's lawyer    ☐ Defendants' lawyer
   ☐ Defendants: _____
   ☑ Other: _____

In **2**, check the box if any Defendants were dismissed from the case. Enter the names of the dismissed Defendants. Otherwise, leave blank.

2. ☐ The following individuals are dismissed as Defendants and this *Order* does not apply to them:
   _____

In **3**, enter the complete address, including the street direction (N., E., etc.) and unit # or floor.

3. Plaintiff is given possession of the property located at:

   639 STONEGATE DRIVE
   _____
   *Street address*           *Unit*

   SYCAMORE        IL      60178
   _____
   *City*           *State*      *ZIP*

In **4**, enter the date and time by which Defendants must move out.

4. Defendants must move out of the property on or before   JUNE 1, 2023
   _____
                                                   *Date*

   ☑ by 11:59 p.m.     OR     ☐ by _____ ☐ a.m. ☐ p.m.
                                                       *Time*

E-O 3500.4                Page 1 of 2                              (12/21)

NOT AN OFFICIAL COPY

This form is approved by the Illinois Supreme Court and is required to be used in all Illinois Circuit Courts.

In 5, enter the names of Defendants to be evicted and check the box for Unknown Occupants if it was checked on the *Eviction Complaint*.

5.  Plaintiff may give the sheriff a copy of this *Eviction Order*. If Defendants do not move by the date and time listed above, the Sheriff is ordered to evict the following Defendants:  ROBERT SAM KAREN SAM, AND ANY OTHER OCCUPANTS _____ ☐ Unknown Occupants

**Section 6 is for landlords** *(condominium and homeowner associations should use Section 7)*

In 6, complete only if Plaintiff is a landlord. Condominium or homeowner associations suing an owner should use Section 7.

Check the boxes that apply. If Plaintiff is awarded money, enter the names of Defendants who have been ordered to pay the money.

6.  Check all that apply:

☐ No money claimed in *Eviction Complaint*

☐ Money claim dismissed and Plaintiff **may** seek this money in the future

☐ Money claim dismissed and Plaintiff **may not** seek this money in the future

☐ Plaintiff is owed:

　☐ $_____ in rent

　☐ $_____ in court costs

　☐ $_____ in attorneys' fees *(if allowed)*

　　$_____ is the total judgment entered against the following Defendants:

_____

☑ The Court is not yet ruling on the money claim. Case continued to:

June 6, 2023 at 9:00 ☑ a.m. ☐ p.m. for: ☑ status OR ☐ hearing
Date　　　　Time

in courtroom 200 and the Court finds there is no just reason to delay enforcement or appeal of this *Eviction Order*.

**Section 7 is for condominium and homeowner associations** *(landlords should use Section 6)*

In 7, complete only if Plaintiff is a condominium or homeowner association suing an owner.

7.  Check all that apply:

☐ This Order is entered against the unit only *(In Rem)*

☐ Plaintiff is owed:

　☐ $_____ in assessments

　☐ $_____ in court costs

　☐ $_____ in attorney's fees

　　$_____ is the total judgment entered against the following Defendants:

_____

The expiration of judgment provisions of 735 ILCS 5/9-117 do not apply to this *Order*.

☐ The Court is not yet ruling on the money claim. Case continued to:

_____ at _____ ☐ a.m. ☐ p.m. for: ☐ status OR ☐ hearing
Date　　　　Time

in courtroom _____ and the Court finds there is no just reason to delay enforcement or appeal of this *Eviction* Order.

**STOP!**

DO NOT complete this section. The judge will complete this section if it applies to your case.

☐ 8.  This *Order* is entered after an Emergency Housing Proceeding. An order entered under these sections may not be stayed more than 7 days. Check the box to indicate which section of the Eviction Act applies:

☐ 735 ILCS 5/9-118　　☐ 735 ILCS 5/9-119　　☐ 735 ILCS 5/9-120

The sheriff or other lawfully deputized officers shall give priority to service and execution of orders entered under Sections 118 and 119, or execute the *Order* within 7 days of its entry if entered under Section 120.

Enter the name and contact information of the person completing this *Order*. **DO NOT** complete the section the right for Date and Judge.

Name:  RILEY N. ONCKEN

Street Address:  212 S. MAIN STREET

City, State, ZIP:  SYCAMORE, IL 60178

Telephone #:  815 991-2098

Attorney # *(if any)*:  6283674

Email Address *(if any)*:  RILEY@ONCKENLAW.COM

ENTERED:  3/10/2023
　　　　　Date

/s/ Stephanie Klein
_____
Judge

E-O 3500.4　　　　　Page 2 of 2　　　　　A3　　　(12/21)

*1*

**IN THE CIRCUIT COURT FOR THE TWENTY-THIRD**
**JUDICIAL CIRCUIT**
**DEKALB COUNTY, ILLINOIS**

BKA HOLDING LLC
_____ )    CASE NO. _23 EV 102_
Plaintiff(s)                    )
                                )
            vs.                 )
                                )
ROBERT SAM + KAREN SAM          )
_____ )
Defendant(s)                    )

**FILED**
IN OPEN COURT

APR 18 2023

Lori Grubbs
Clerk of the Circuit Court
DeKalb County, Illinois

## BOXED ORDER

| Judge KUON | Court Reporter | Plaintiff Attorney ONGEN | X |
|---|---|---|---|
| Deputy Clerk | A copy of this order ☐ should be sent to: ☐ has been sent to: | Defendant Attorney HANFORD | X |

**Plaintiff present in Open Court:** ☐ Yes ☐ No   **Defendant present in Open Court:** ☐ Yes ☐ No

| | |
|---|---|
| Continued to: 6/13/23 | Amount of Judgment: $ |
| Time: 9:00 A.M. Courtroom: 200 | Amount of Costs: $ |
| Judge: KUON | Amount of Attorney's Fees: $ |
| For: ☐ Motion | Judgment in Favor of: |
| ☐ Trial | ☐ Plaintiff _____ |
| ☐ Entry of Judgment | ☐ Defendant _____ |
| ☒ Other: STATUS | and against |
| _____ | ☐ Plaintiff _____ |
| | ☐ Defendant _____ |

☐ It appearing to the Court that service has not been made on the Defendant, **IT IS ORDERED** that this cause be continued to the place and time set forth herein.

☐ **IT IS ORDERED** that ☐ Alias ☐ Pluries Summons be issued and this cause be continued to the place and time set forth herein.

☐ On the Motion of _____ **IT IS ORDERED** that this cause be continued to the place and time set forth herein.

☐ **IT IS ORDERED** that Judgment be entered as set forth herein, in the amount indicated, together with costs.

☐ **IT IS ORDERED** that this cause be dismissed ☐ with prejudice ☐ without prejudice, as to: _____

☒ **IT IS ORDERED:** FOR THE REASONS STATED ON THE RECORD, DEFENDANTS MOTION TO VACATE IS DENIED. ATTORNEY HANFORD

Date: 4·18·23   IS GRANTED LEAVE TO WITHDRAW AS COUNSEL FOR DEFENDANT.   Enter: _Steph· P. K._____   Judge

Boxed Order
Rev. 12-16-2020

A5



# DeKalb County Sheriff's Office

ADMINISTRATION OFFICE • 815-895-7260
CIVIL PROCESS • 815-895-7259
COMMUNICATION CENTER • 815-895-2155
CORRECTIONS/JAIL • 815-895-4177
RECORDS • 815-895-7216
FAX • 815-899-0757 - SHERIFF
FAX • 815-895-7275 - COMMUNICATIONS
FAX • 815-895-6525 - CORRECTIONS
FAX • 815-899-0757 - RECORDS

"TO SERVE AND PROTECT"

**ANDREW SULLIVAN, SHERIFF**

**JAMES BURGH, CHIEF DEPUTY**

July 20, 2023

Mr. Robert Sam
639 Stonegate Drive
Sycamore, IL 60178

Dear Mr. Sam,

I am writing this in response to the citizen complaint form that you filed regarding an eviction process. In your complaint, you allege that Mr. Oncken was able to use this office to obtain an eviction date without an eviction order. After researching your complaint, it was determined that the eviction date was tentatively held on the calendar after the civil process division had spoken with the judge regarding this matter and not Mr. Oncken. This portion of your complaint is unfounded.

I understand that you have received a stay on the eviction order through the appeals process and that no eviction has taken place as of this date.

In regards to the email that you sent me on June 26, 2023, without a reply, I would like to apologize to you for this. When I received your email, I was going to follow up with the civil process division about your concerns and the staff member was not working on that day. This is not a valid excuse on my part by any means and I should have let you know that I was looking into the complaint that you had made in your email. Again, I do apologize to you for my error and the lack of response to your email.

Respectfully,

Sheriff Andy Sullivan

A6

DeKalb County Sheriff's Office • Public Safety Building • 150 N. Main Street • Sycamore, Illinois 60178

 **Karen Sam**
Organizer
Sycamore, IL

[ Contact ]

## Words of support (4)

Please donate to share words of support.

 **Riley Oncken**
$5 • 5 mins

Do not donate and be defrauded by this family. They can't find a place to move because her husband has pending felony charges and no landlord will rent to them. Ask for your donations back. Google "Robert Sam Sycamore" and you will find the article where he was charged with aggravated home repair fraud and theft from elderly victims.

 **Daniel Buchino Sr**
$50 • 4 d

My heart hurts for you all. My wife and I are praying for you.

 **Mark & Pat Collins**
$50 • 17 d

These are good people and deserve our help. Please contribute.

 **George Herrmann**
$20 • 3 mos

SHE IS IN MY PRAYERS!

*A 7*

# STATE OF ILLINOIS
## IN THE CIRCUIT COURT FOR THE TWENTY-THIRD JUDICIAL CIRCUIT
## DEKALB COUNTY

IN RE THE MARRIAGE OF:      )     NO:   23 EV 102

BKA HOLDING, LLC,            )
     **Plaintiff,**           )

and                  )

ROBERT SAM AND KAREN SAM,    )
     **Defendant.**         )

**FILED**

6/29/2023 1:07 PM
2023EV000102

*Lori Grubbs*

Lori Grubbs
Clerk of the Circuit Court
DeKalb County, Illinois

## PETITION FOR RULE TO SHOW CAUSE

NOW COMES the Petitioner, BKA HOLDING, LLC, by and through its attorneys, The Law Office of Riley N. Oncken, P.C., by Riley N. Oncken, and for its Petition for Rule to Show Cause against Robert Sam, states and alleges as follows:

1. An Agreed Order was entered on March 10, 2023, which provided that "Defendants shall pay the sum of $914.00 to Plaintiff by March 25, 2023, Defendants shall pay the sum of $255.00 to Plaintiff by April 25, 2023, Defendants shall pay the sum of $255.00 to Plaintiff by May 25, 2023, and Defendants shall pay any water bills incurred through May 31, 2023."

2. In addition to the foregoing payments, Robert Sam has failed to pay the water bills dated 3/31/23 in the amount of $176.90 and 5/31/23 in the amount of $174.76, for a total due of $351.66.

3. As of the date of this motion, no payments have been made by Defendants.

4. Karen Sam has filed for bankruptcy protection, so this Petition is not directed at her.

5. Defendant Robert Sam's failure to comply with the Order of this Court has been without compelling cause or justification.

6. The Plaintiff has incurred attorney's fees in the prosecution of this Petition and as a result of Defendant's failure to comply with the Agreed Order of March 10, 2023.

23 EV 102                        *A8*           Page 1 of 4

WHEREFORE, Counsel respectfully prays that this Court enter an Order:

A. Finding Robert Sam in indirect civil contempt of court for failing to comply with the order of March 10, 2023;

B. Ordering Robert Sam to serve an indefinite period of incarceration in the DeKalb County Jail, not to exceed six (6) months;

C. Requiring Robert Sam to purge his contempt by payment of all outstanding amounts due totaling $2,030.66;

D. Requiring Robert Sam to pay the attorney fees and costs incurred by Plaintiff;

E. For any such other and further relief the Court deems equitable and proper.

BKA Holding, LLC, Plaintiff

By: _____
RILEY N. ONCKEN
Attorney at Law

Riley N. Oncken
Attorney at Law
Law Office of Riley N. Oncken, P.C.
212 S. Main Street
Sycamore, IL 60178
Phone: (815) 991-2098
Fax:    (815) 991-2128
Riley@OnckenLaw.com

23 EV 102                                    A9                    Page 2 of 4

**VERIFICATION**

STATE OF ILLINOIS      )
                            ).ss.
COUNTY OF DEKALB      )

         Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certified as aforesaid that she verily believes the same to be true.

                                       BKA Holding, LLC, Plaintiff

                         By: _____
                                 MELISSA MOBILE, Manager

Subscribed and sworn to before me
this 29 day of June, 2023

> OFFICIAL SEAL
> HOLLY J DURST
> NOTARY PUBLIC, STATE OF ILLINOIS
> My Commission Expires 3/8/26

Notary Public

Riley N. Oncken
Attorney at Law
Law Office of Riley N. Oncken, P.C.
212 S. Main Street
Sycamore, IL 60178
Phone: (815) 991-2098
Fax:    (815) 991-2128
Riley@OnckenLaw.com

23 EV 102                                        Page 3 of 4

A10

## CERTIFICATE OF SERVICE

I, the undersigned attorney at law, hereby certify that a copy of the foregoing **Petition for Rule to Show Cause** was served upon:

> Robert Sam
> 639 Stonegate Dr.
> Sycamore, IL 60178

by email transmission to harpees5@yahoo.com on June 29, 2023

_____
Riley N. Oncken
Attorney at Law

Riley N. Oncken
Attorney at Law
Law Office of Riley N. Oncken, P.C.
212 S. Main Street
Sycamore, IL 60178
Phone: (815) 991-2098
Fax:    (815) 991-2128
Riley@OnckenLaw.com

23 EV 102                                          A11                          Page 4 of 4

9:19

< Sent

Found in Sent Mailbox



**robert sam**  4/4/22
To: Melissa Mobile >

## Re: New Water bill

It's always been paid. Always. The carpet was the cheapest garbage you could find. It was not professionally cleaned. This house had 3 Rottweilers in here. All the moldings were damaged, infested with fleas. I professionally painted the entire house. I replaced and installed all the gfi outlets for mike so not would pass inspection and never got paid. I professionally installed blinds as the paper you guys hung was garbage. All the appliances are crape, the roof leaks, the porch sank and is no longer connected to the roof. The windows are all shot, the foundation leaks into the basement. And you want 200k for this? Maybe 135k max. I will get my security deposit back Melissa, that I know for sure.

Sincerely, Robert Sam

On Apr 4, 2022, at 7:46 PM, Melissa Mobile <melissamobile33@gmail.com> wrote:

Robert,

A 12

Exhibit 4

ILLINOIS DEPARTMENT OF
# Human Rights

JB Pritzker, Governor
James L. Bennett, Director

September 6, 2023

Karen Sam
639 Stonegate Drive
Sycamore, IL 60178

Robert Sam
639 Stonegate Drive
Sycamore, IL 60178

IDHR Charge Number: 2023CH1772
Respondent(s): Melissa Mobile

HUD Charge Number: 05-23-8696-8

Dear Complainant:

Enclosed is a draft amendment to the charge of discrimination currently on file with the Department. In order for the Department to process this amendment, you must:

1) Sign the amended charge where indicated; and
2) Return the amended charge within ten (10) days of the date of this letter to my attention.

If the amendment is incorrect, please do not write on it. Contact me immediately so that we may discuss any errors or proposed changes to the amendment.

If the amended charge is not returned with your signature within ten (10) days, and I do not hear from you, I will assume that you do not wish to proceed with this amendment. My investigation will continue based on the signed charge currently on file with the Department.

Sincerely,

Erika Ayala
Human Rights Investigator III
Fair Housing Division
Voice: (312) 909-5035
Email: Erika.G.Ayala@illinois.gov

IN4 CP
Revised 5/2019



ILLINOIS DEPARTMENT OF
# Human Rights

JB Pritzker, Governor
James L. Bennett, Director

September 5, 2023

## HOUSING DISCRIMINATION COMPLAINT
### AMENDMENT #1

**CASE NUMBER:  IDHR  2023CH1772**          **HUD  05-23-8696-8**

1. **Complainant**

   **Complainant #1**
   Karen Sam
   639 Stonegate Drive
   Sycamore, IL 60178

   **Complainant #2**
   Robert Sam
   639 Stonegate Drive
   Sycamore, IL 60178

2. **Representing Complainant**

   N/A

3. **Other Aggrieved Persons**

   Harper Sam, Minor Child

4. **The following is alleged to have occurred or is about to occur:**

   - Discrimination in terms/conditions/privileges relating to rental
   - Discrimination in making available a real estate transaction
   - Failure to Make Reasonable Accommodation

5. **The alleged violation occurred because of:**

   - Source of Income
   - Disability
   - Arrest Record

IDHR Charge No. **2023CH1772**                    HUD No. **05-23-8696-8**
Page 2

6.    **Address and location of the property in question (or if no property is involved, the city and state where the discrimination occurred):**

639 Stonegate Drive
Sycamore, IL 60178

7.    **Respondent**

Melissa Mobile
BKA Holdings, LLC
461 White Street
Sycamore, IL 60178

8.    **The following is a brief and concise statement of the facts regarding the alleged violation:**

Complainants reside in a townhouse, which is one of Respondent's several units. Complainant alleges that their rent is $2,055/month. Complainants allege that Respondent had been accepting their housing voucher which pays $1800/month, for around 3 years. Complainants allege that their portion of the rent is $255/month. Complainants allege that in or around March 2023, they were behind on their rent in the amount of $500.

Complainants allege that in or around May 2023/June 2023, they were approved for a court-based assistance rental program, which would cover any back payment in rent as well as provide 12 months of guaranteed payment for their portion of the rent. Complainants allege that Respondent denied the assistance. Complainants allege that by doing so, Respondent committed source of income discrimination, disability discrimination (as both Complainant #1 (K. Sam) and her child are disabled) and failed to provide a reasonable accommodation as the financial program was meant to offset various expenses due to Complainant's #1 and her child's disability.

Complainant #2 (R. Sam) alleges that on or around March 10, 2023, he entered into a signed agreement with Respondent, agreeing to vacate the premises by June 1, 2023. Complainant #2 alleges that this agreement included a payment schedule and the understanding that an eviction order would only be entered if the terms of the agreement were not met. Complainant #2 alleges that his family obtained rental assistance to move to another county. Complainant #2 alleges that Respondent reneged on the contract when she filed for an eviction order on March 10, 2023, for an eviction on June 1, 2023.

555 W. Monroe, 7th Floor, Chicago, IL 60661, (312) 814-6200, TTY (866) 740-3953, Housing Line (312) 814-6229
524 S. 2nd Street, Suite 300, Springfield, IL 62701, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
dhr.illinois.gov

IDHR Charge No. **2023CH1772**                    HUD No.  **05-23-8696-8**
Page 3

Complainant # 2 alleges that because Respondent did that, it made his family ineligible to move, as they were no longer in good standing to receive rental assistance. Complainants allege that upon failing to vacate the eviction order in court on or around June 22, 2023, they are set to be evicted on June 26, 2023.

Complainants further allege that the eviction process cannot be medically tolerated by Complainant #1 (K. Sam), due to her medical conditions.

Complainants believe that Respondent is aware of Complainant #1's and their daughter's disabilities.  Respondent however failed to agree to a reasonable medical needed accommodation. Complainants allege that it was Respondent's intention to get rid of any tenant who depended on housing vouchers and/or other financial assistance as part of their income. Complainants believe that tenants who did not depend on housing vouchers were not subjected to this discriminatory treatment.

Respondent indicated their reason for evicting Complainant is due to him owing rent and late fees and indicated that Complainant has a felony charge against him alleging that he was stealing money from his elderly neighbors, making him a disturbance to the rental community. Complainants allege that Respondent subjected them to discriminatory treatment due to Complainant #2's arrest record.

9.      **The most recent date on which the alleged discrimination occurred:**

March 10, 2023, and ongoing

10.     **Types of Federal Funds identified:**

N/A

11.     **The acts alleged in this complaint, if proven, may constitute a violation of the following:**

Sections 804 (A), 804 (B), 804 (F)(2), and 804(F)(3) of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988 and Sections 3-102(A), 3-102(B), 3-102.1(A), 3-102.1 (B), and 3-102.1(C)(2), of the Illinois Human Rights Act.

IDHR Charge No. **2023CH1772**                      HUD No.  **05-23-8696-8**
Page 4

**Please sign and date this form:**

**Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure [735 ILCS 5/1-109], the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he or she verily believes the same to be true.**

Karen Sam                                              9-1-2022
_____            _____
Karen Sam                                              Date

                                                       9-1-22
_____            _____
Robert Sam                                             Date

**N O T E :  IDHR WILL FURNISH A COPY OF THIS COMPLAINT TO THE PERSON OR ORGANIZATION AGAINST WHOM IT IS FILED.**



**State of Illinois**
Department of Human Rights

# Procedures for Housing Cases

**Role of IDHR:** The Illinois Department of Human Rights (IDHR) is the state agency responsible for enforcing the Illinois Human Rights Act. The role of IDHR is to conduct a **NEUTRAL and FAIR** investigation of the allegations of discrimination stated in a charge. **More information is available on IDHR's website, including forms and fair housing videos.**

**Attorneys and Fair Housing Organizations:** IDHR represents the state's interest in eliminating discriminatory housing practices. However, we cannot give legal advice or represent either party. Attorneys are not required, but if you would like representation, you must obtain your own attorney or advocate. Attorneys and advocates may not testify unless they have first-hand knowledge, and must sign an appearance form. If you do not have an attorney or advocate, you may bring a friend or relative for advice or moral support. You may also bring an interpreter if needed (interpreters must be age 18 or over).

**Filing a Charge:** A Complainant may initiate a charge in writing, by phone or in person. IDHR does not suggest reasons to file, but will discuss the various types of discrimination and explain the filing procedures. After a charge is filed, the case is given an IDHR charge number and it is served on the Respondent(s), the person or organization the charge is filed against. If jurisdictional under federal fair housing law, IDHR cross-files the case with the U.S. Department of Housing and Urban Development (HUD) as per our cooperative agreement. Cases that are initiated with HUD and referred to IDHR, as well as cases cross-filed with HUD, will be investigated and processed in accordance with the Illinois Human Rights Act and its rules.

**Responsibility to Cooperate:** Complainants and Respondents have a responsibility to cooperate with IDHR, and must notify us of any changes in address or telephone number **immediately**. If the Complainant cannot be contacted or interviewed, the case will be dismissed.

**Temporary Relief:** At any time after a charge is filed and while the determination of the case is pending, either IDHR or the Complainant may petition the appropriate court for a "temporary restraining order" (TRO). A petition must contain a certification by the Director explaining the **irreparable injury** that will result from a civil rights violation in the absence of the TRO.

**Investigation:** The signed charge is served on the Respondent with a request for information. The Respondent is required to cooperate with IDHR's requests and may elect or be required to file a formal response to the charge. If a formal response is filed, a copy is required to be served on Complainant and Complainant may elect to file a reply on IDHR and the Respondent. The investigator will contact and interview the parties, obtain relevant documents and interview witnesses. The investigator may schedule a fact-finding conference with the parties to discuss the case; if so, all parties are required to attend. All parties should assist in the investigation by helping the investigator to locate pertinent documents and witnesses. Upon completing the investigation, IDHR will send the parties a copy of the report summarizing the information obtained along with recommended findings dismissing the case or indicating that IDHR found substantial evidence of a violation of the Human Rights Act.

**Private Settlement and Withdrawal:** The parties to the charge may attempt to resolve the dispute between themselves, and may enter into a private settlement agreement, which should include Complainant's withdrawal of both the IDHR and HUD charge numbers. A privately drafted settlement agreement is not enforceable by IDHR or the Illinois Human Rights Commission (IHRC).

**IDHR Settlement:** IDHR will discuss settlement with all parties to attempt to resolve the dispute voluntarily. Information about the pros and cons of settlement is available on IDHR's website. If resolved, IDHR will draft a Terms of Settlement and Agreement (TSA) incorporating the terms. Once signed, the TSA is submitted to the Illinois Human Rights Commission (IHRC) for approval. The IHRC then enters an order dismissing the charge pursuant to compliance with the approved TSA. A party who alleges that an approved TSA has been breached may seek to have IDHR enforce the agreement in state court (where the Illinois Attorney General represents IDHR), or may file an enforcement action in the circuit court.

**Appeal Rights:** If IDHR dismisses the case, the Complainant may file a request for review within 90 days to appeal the dismissal with the Illinois Human Rights Commission, a separate state agency. Respondents may file a request for review within 30 days of a notice of default recommendation.

**Public Hearing:** If substantial evidence of discrimination is found and conciliation fails, IDHR files a complaint with the Illinois Human Rights Commission (IHRC). Parties may elect instead to have their claims decided in a circuit court of Illinois, and have 20 days to make this decision. If such election is made, the IHRC administratively closes the file. Otherwise, the IHRC will schedule the case for a public hearing before an administrative law judge. IDHR will be a party to the case, and seek appropriate relief for the Complainant and vindication of the public interest. All parties are advised to obtain legal counsel at this stage as IDHR is not the Complainant's attorney. If the Complainant wins at this level, the judge can order appropriate remedies to make the Complainant "whole," as if the discrimination had not occurred. The IHRC process may take several years.

**State and Federal Court:** An aggrieved party may file a civil action in an appropriate federal district court or state circuit court within 2 years after the occurrence or termination of an alleged discriminatory housing practice. The computation of this 2-year period does not include the time during which this administrative proceeding was pending. The IDHR may administratively close a pending charge if the issues that are the basis of the charge are being litigated in a state or federal court proceeding.

State of Illinois
In the circuit court for the twenty-third judicial circuit
Dekalb County

Robert Sam,
  Petitioner,

And

Riley Oncken,
  Defendant,

)
)
)
)
)
)
)
)

NO. 23 OP 296

**FILED**

**AUG 21 2023**

Lori Grubbs
Clerk of the Circuit Court
DeKalb County, Illinois

**<u>Response to the Defendants response to the verified petition stalking no contact order.</u>**

<u>Now comes the petitioner, Robert Sam, Pro-Se and for his response to the Defendant's response to the verified petition stalking no contact order.</u>

*In our pursuit of justice, I have undertaken the task of presenting the chronology of events surrounding the defendant's actions. This cinematic narrative aims to shed light on the convoluted responses presented by the defendant and their legal representation. By showcasing a cohesive and coherent depiction, I intend to elucidate the criminal harassment inflicted upon my family by Riley Oncken.*

*Our journey to Sycamore commenced in October 2019, marked by transparent conversations with Melissa and Mike Mobile. We disclosed our financial predicament, underscoring the potential for occasional delays in rental payments due to exorbitant monthly medical expenses amounting to $80,000 for vital prescriptions. Both Melissa and Mike Mobile endorsed our situation, affirming their willingness to accommodate our needs, thus paving the way for the tenancy. In a display of good faith, we provided the stipulated security deposit and first and last month's rent.*

*However, the harmony swiftly devolved into adversity. Merely a month later, we found ourselves two weeks behind on rent. Seizing upon this perceived vulnerability, Melissa Mobile and Riley Oncken promptly instigated eviction proceedings. It is crucial to elucidate that the defendant has consistently referred to a prior eviction in 2019, attempting to portray me, Robert Sam, as a seasoned participant in such legal matters. This historical context holds significant weight, as the previous eviction was withdrawn by Riley and Melissa Mobile upon realization that their case lacked merit and was bound for failure.*

*Rather than pursuing legal action to its culmination, the defendant, Riley Oncken, and Melissa Mobile opted to dismiss the eviction upon receiving the outstanding rent that was promised prior to the initiation of proceedings. This strategy was seemingly deployed to avert the prospect of embarrassment and financial loss. The net result of this approach was an incessant campaign of harassment against my family.*

*In conclusion, this comprehensive portrayal of events is intended to provide the court with an unequivocal narrative, demonstrating the calculated and persistent criminal harassment inflicted upon my family by Riley Oncken. The upcoming cinematic presentation will offer a concise, coherent, and compelling portrayal of the truth, shedding light on the tactics employed to manipulate legal proceedings.*

The Defendant started his response by a denial and a admission of guilt which was very interesting knowing the repercussions of the crime. The defendant Riley Oncken starts with a denial " **A. Respondent denies stalking the Petitioner or his family.**"

**"Respondent denies the allegations contained in paragraph 3 of the Verified Petition Stalking No Contact Order and demands strict proof thereof.**
**a. On March 10, 2023, Petitioner signed an agreed order to make three payments**

to the landlord and pay off his water bill by May 31, 2023. The order stated the lease would terminate on May 31, 2023, by which time he would vacate the premises, and that an Order for Possession shall enter, enforceable on June 1, 2023, if Defendant's have not vacated the premises. Petitioner petitioned for and obtained a stay of enforcement through June 22, 2023, after which time the eviction order was enforceable immediately. The eviction was scheduled in accordance with the policies and procedures of the DeKalb County Sheriff's Department and there was no violation of the stay. The Petitioner then obtained a stay from the appellate court pending the appeal. That stay has not been violated and remains in effect."

It is correct we entered into a agreed order on March 10,2023. The agreement was made between myself and Riley Oncken, there was no communication with Melissa Mobile on this agreement. The agreement was made so that we could move out and Melissa and Riley would get the unit back. The agreed order stated that the order of possession would not be filed until June 1st 2023. Nowhere in this order did it state this order would be entered prior to June 1st 2023, otherwise why would June 1st 2023 be even identified? The significance of this trickery by Riley Oncken was to intentionally help his client secure a judgment and help Dekalb housing authority remove us off the program. We are section 8 vouchers recipients and having a eviction being filed against us, we lose the ability to port our vouchers out of Dekalb county which we badly, badly wanted to do. So by Riley Oncken using a smoke and mirror technique, we can't move because we lose our vouchers. The Dekalb housing authority has us in bad standings because of this and because of this we can't move. We have been forced to be stuck here and this is all because of Riley Oncken, not one bit by us. Riley Oncken is the reason we can not

move and why we are still here. Riley Oncken intentionally I believe, with Melissa Mobile

and with a contact at the Dekalb housing authority, which Riley was on the board in Dekalb

and it's not hard to believe he would have contacts at the Dekalb housing authority. I believe that everyone wanted us off this program, and with the help of a flawed and deceitful agreement, they would get their wish. I say this because Dekalb housing authority continues to pay Melissa Mobile but won't return one call or email to us or help us look for a new home, In at least the Dekalb county area since they won't port us. So I believe this is all commingled together. We immediately contacted prairie state legal to file a motion to vacate this flawed and phony agreement. The case brought back in front of the judge who signed the eviction order, Judge Stephanie Klein. When we had our hearing Judge Klein denied my motion, so I myself filed a appeal in the second district Elgin appeals court. I then filed for a stay with the lower court and again that was in front of judge Klein. The Defendant misleads this court and states " Petitioner petitioned for and obtained a stay of enforcement through June 22, 2023." This is not what happened. Judge Klein took my motion under advisement, she made no ruling on my motion until the following hearing in June 22nd 2023. At the June 22nd 2023 hearing on my motion to stay, Judge Klein with no reason denied my motion all while knowing my wife would pass away without a home. Judge Klein intentionally endangered my family with zero reason. That same day right after the hearing Riley Oncken emailed me to say he believed my eviction was that Monday, only 3 days away but I should call the sheriffs office to make sure of that date. This is very important what I am about to disclose, I called the sheriffs office and Kelly does the scheduling of evictions. Kelly told me when I asked when is my eviction date she said" well, this is highly unusual but it's been already scheduled" she would not elaborate, when I asked who scheduled this she would not say. I asked if it was done during the stay while the

judge was taking my motion under advisement, she said "yes". Now, I immediately could not believe we were moved up and the date already set, before my hearing on my motion to stay. The same day later in the day I get a email from Riley Oncken explaining they set up a hearing for damages, this is before they even seen the place. This was to kick us when we were already down. Well, I received a stay by the appeals court. I then filed a complaint against Oncken and the sheriffs office for violating a court order stay and moving forward with scheduling a eviction while a stay was placed. I received a certified letter from the sheriff Mr. Andrew Sullivan ( **please see exhibit A)** the letter explained that he investigated this himself and found it was not Oncken who filed the eviction, it was the Judge herself. Well that is terrible! This judge Stephanie Klein violated her own court ordered stay and interfered with this eviction to help a friend have leverage in this eviction. Riley oncken and Stephanie Klein have a personal relationship. When Stephanie Klein was a states attorney she wrote a very complimentary letter on behalf of Riley Oncken **(see exhibit B).** I filed a complaint with judge Waller, as of this date, I have not heard back. I contacted The Illinois Judicial

Inquiry Board, I spoke to a woman and explained what happened. I asked if this is normal behavior her exact response was " **This would Be considered inappropriate for a judge to directly work with civil processing, such as scheduling an eviction. Judges are expected to maintain impartiality and avoid direct involvement in administrative or procedural matters to ensure a fair and unbiased legal process. This helps prevent conflicts of interest and maintains the integrity of the judicial system."**

I immediately filed a complaint against Judge Stephanie Klein. This eviction was not only done with trickery and deceit, it was a abuse of power. Riley Oncken received help by a friend , a Judge, to have a advantage in this eviction case. We had no chance in this case. The odds were against us from the time this case was brought. Now, Riley

Oncken's attorney makes another false statement to to this court. She says **"That stay has not been violated and remains in effect.** *The stay does remain in effect but, Riley Oncken a attorney here in sycamore, a attorney who prides himself on being saintly and law abiding, intentionally violated a court order stay by the appeals court. Riley Oncken filed a motion in front of his favorite Judge Stephanie Klein, to find me in contempt of court for not complying with the agreed order. The same agreed order being appealed and stayed. This so called attorney then asked the Judge to bring back a two centuries old abolished system of Debtors Jail. He asked her to incarcerate me for no more than 6 months or until I purge my contempt. Riley Oncken used abusive litigation to harass, intimidate and threaten me because he lost and could not evict me when he and the Judge wanted. So because I won my stay with the appeals court, Riley Oncken sidestepped the stay to use corruption and thuggery to punish me. Riley Oncken violated a court order and should be held in contempt of court immediately.* **( please**

**see attached exhibit of the violation of the court order and contempt of court exhibit C)**

Now the verified petition stalking no contact order is a vague term. It is not a one crime fits all order, rather it's a umbrella for not just stalking but harassment, intimidation and doxxing.

Mr. Oncken selectively fixates on isolated actions while skillfully sidestepping the core essence of the order's actual definition.

In approximately May 2023, Riley Oncken commenced his pattern of criminal behavior against my family. This transpired shortly after the service of a civil lawsuit, numbered 23-LA40, which I filed against him and his client, Melissa Mobile. The evening he was served by the Dekalb County Sheriff, he promptly

appeared at my residence, accompanied by the Sycamore Police, catching my

disabled wife and daughter off guard. Despite the absence of any prior notice, he

insisted on entering our home to record a video, even after my wife explained our daughter's ongoing seizures.

Shockingly, the police, instead of intervening, permitted his intrusion.

What amplifies the uniqueness of this incident is Mr. Oncken's assertion that the

lease mandated no notice, supported by an alleged presentation of the lease to the

officers present. However, the peculiarity emerges from the fact that there was no

active lease at that time. Mr. Oncken misled the police by displaying an outdated

lease. Complicating matters further, our eviction under Illinois law rendered the

lease null and void. Consequently, the events of that night unraveled as a vengeful

response to being served at his workplace. Exploiting his affiliations with the

Sycamore PD, he employed an authoritarian and intimidating approach to unnerve

and terrorize my disabled wife and 14-year-old daughter. The warrantless entry

coupled with a recording device amounted to an unlawful search, bereft of any justification.

Mr. Oncken, or rather his legal counsel, contends, "**_b. Respondent denies this was_**

**_done in an attempt to intimidate the Petitioner or his family and was done solely_** **_to_**

**_evaluate the condition of the property._**" This proclamation contradicts the three

years during which we resided on the property without any prior attempts from

Melissa Mobile, Riley Oncken, or their associates to inspect or visit. Clearly, the

intention behind this intrusion was to create an environment of intimidation, harassment, and fear.

The subsequent evening, around 9:30 pm, an identical car to that of Riley Oncken was observed outside, capturing photographs. Upon my appearance, the vehicle swiftly departed. Upon notifying the police, their recommendation was to pursue a no-contact order. As the court can see, this was just another criminal attempt by Riley Oncken to harass my family to force us out. Defendants attorney make a shocking statement to the court. Mrs. Caplan states **" _Melissa Mobile requested that Respondent do a walkthrough of the property prior to the eviction date to evaluate the condition of the property and to identify any damages or violations of the lease because she was afraid of Petitioner._**

Now we already discussed never being asked in three years to inspect the property. But now we hear for the first time Melissa Mobile was in fear of me. There has never been a police report or call on me ever from anyone for being violent, not one time. This is a despicable attempt to think the court would now fall for the King Kong capturing Ann Darrow the helpless victim. If I was such a threat why had it taken Melissa Mobile and Riley Oncken 3 years and not one police report? Mrs. Caplan starts and ends with the word fear, but does not dare elaborate because she would find herself on the same path Riley Oncken is on, a path that leads to contempt and criminal charges. If Mrs. Caplan were to try to elaborate she would have to lie to this court, so it was easier to just start and stop with one word Fear. As the court can see, these people will say anything to harm me, anything.

*We are now getting into some of the more serious allegations against Mr. Oncken and I will again reference certain exhibits to refer to.*

*The defendant a lawyer, someone who ran to become a judge, lost thankfully but nonetheless almost become a decision maker in cases of law. In the following arguments you will see a few things jump out at you. First you will see how this attorney knows nothing about actual law, and primarily uses contacts and connections to win cases. You will also see Riley Oncken as he truly really is, a fraud and criminal. Before I begin I want to turn your attention to **(Exhibt D)**. You will find that I had made comments about posting reviews against Riley Oncken and Melissa Mobil. This is a first amendment right, I am actually in the process of finishing these page long reviews that should be live under both there reviews very soon. But the reason I bring you to this is that Riley threatened to file this same petition, a no contact order for merely posting reviews, a first amendment right. So for the defendant and his attorney to even attempt to say to this court that my petition should be denied is honestly laughable.*

*Riley Oncken took his harassment and intimidation to a whole new level a month or so back. Riley while doing so not only violated state laws but Riley Oncken, someone who ran for judge, committed a federal and state criminal offenses. Riley decided to try to bait me into being able to get a no contact order or file police charges against me. He did so by personally attacking my disabled wife. Riley*

*Oncken didn't just post a bad review he went out of his way to Doxxing myself and my wife. Riley paid 5.00 so that he could spread malicious information all while doxxing and committing deformation and libel as well as criminal state offenses of cyber bullying . Attached is ( exhibit E) this was the review Riley Oncken left about myself and my wife. Now before I continue I need to give the court a bit of a back story about my wife and daughter and our situation as to why my wife even set up this account to help raise money. My wonderful, beautiful and caring wife suffers not only*

*from MS and CVID, but a slue of other medical ailments, please see (Exhibits F,G and H). My beautiful 14yr old daughter was diagnosed at age two with Double Cortex Syndrome or Band Hetratopia ( please see exhibit I)*

*My wife is blind in one eye and can not drive, she suffers daily just standing for long periods of time due to the chronic pain. My daughter struggles with seizures and learning and behavioral disabilities, everyday. She has IEP for school and that is huge process to get right. It takes time to meet with teachers and staff to finally build a good individualized program for my daughter in school. I'll touch more On this in my closing arguments. The reason my wife set this crowd fund up is because we lost everything many times over. We lost our home we owned in orland park, our cars, furniture, personal possessions, everything, many time over. Some Lost during multiple evictions, some because we sold stuff to get buy. See, we lost*

*everything because before we had Medicaid we tried paying the 80k per month out of pocket for my wife and daughters meds. No private insurance would cover my wife's Hyquvia, so we lost everything and moved many times ( not willingly) to cover these expenses. We finally got Medicaid, but, being on Medicaid a family of 3 can only make 2700.00 per month or your off the program and lose the insurance. Well, my daughters SSI is 914.00 per month, so they count that as income which then even if I could work, if I worked for minimum wage that puts me over the 2700.00 per month. Now I can't work a anyway because I take care of my wife and daughter 24 hours a day. I take my daughter to school, she has late starts, grocery's, errands , doctor appointment and yes wonderful days of coming to court and playing lawyer, all to fight to keep a roof over my families heads. This is why the vouchers are so important, that Riley Oncken, Melissa Mobile and the Dekalb housing authority so kindly took away from us. Now that you have some context on why the crowd funding site was set up, I'll explain the crimes and harassment. Riley the person he is, decided to attack the only other form of income we have, this donation fund. He puts my personal Name and information in my wife's crowd funding page. He talks about my criminal case ( I'll be speaking in depth on this as we progress through the lens of corruption) as he is attacking me he attacks my wife please again see ( **exhibit F,G,H**). Now, what was the point of this? The*

*point was to first try to ruin our only source of income. He then went on use cyber*

*bullying, intimidation and harassment. While doing this he violated state and*

*federal laws. Riley Oncken committed the criminal act of cyber bullying and*

*criminal cyber stalking ( Someone who harasses another through electronic communications may be guilty of a crime in Illinois. And every school district in Illinois must develop and maintain a policy prohibiting and addressing student-on-student bullying and cyberbullying.)*

(In Illinois, someone who uses an electronic device to harass another on at least two separate occasions commits the crime of cyberstalking. It is a class 4 felony under Illinois law to use an electronic communication to:

- engage in a course of conduct that causes the target to fear for his or her safety or the safety of third person

- engage in a course of conduct that causes the target to suffer emotional distress

- harass the target by making a threat or placing the target or a family member in reasonable apprehension of immediate or future bodily harm, sexual assault, or confinement, or

- solicit another person to commit a criminal act against the target.

(720 Ill. Comp. Stat. § 5/12-7.5.)

Course of conduct"

Illinois law defines "course of conduct" for purposes of the criminal cyberstalking law as two or more acts, including surveillance, threats, or harassing statements. (720 Ill. Comp. Stat. § 5/12-7.5.)

Electronic communication"

Illinois law defines "electronic communication" for purposes of the criminal cyberstalking law to include communication via cellphone, voicemail, email, text, and instant messaging, and any other type of computer communication. (720 Ill. Comp. Stat. § 5/12-7.5.)

"Harassment"

Illinois law defines "harassment" for purposes of the criminal cyberstalking law as a knowing and willful course of conduct (two or more acts) directed at a specific person that "alarms, torments, or terrorizes" that person. (720 Ill. Comp. Stat. § 5/12-7.5.)

# Cyberbullying Punishment

Cyberstalking is a Class 4 felony in Illinois. (720 Ill. Comp. Stat. § 5/12-7.5.) A person convicted of a Class 4 felony faces imprisonment of not less than one year and not more than three years, a fine of up to $25,000, or both. (730 Ill. Comp. Stat. § § 5/5-4.5-45, 5/5-4.5-50.)

Interference with a child's attendance at school through bullying is a Class A misdemeanor. (105 Ill. Comp. Stat. § 5/22-12.) A person convicted of a Class A misdemeanor in Illinois faces less than one year's imprisonment, a fine of up to $2,500, or both. (730 Ill. Comp. Stat. § 5/5-4.5-55.)

*Riley Oncken went on to violate Illinois state law ( HB2954 please see attached) while doing all of this Riley Oncken didn't just commit deformation or libel, no, he committed a federal criminal act. Riley Oncken a supposed lawyer violated federal law ( H. R. 6478 please see attached). Mr. Oncken committed the criminal act of doxxing my self and my wife through interstate. Mr. Oncken is now looking at five Years of imprisonment for his illegal and vicious actions. I know this because as I am writing this response I am preparing a federal lawsuit against Riley Oncken in federal court where I'll be asking for relief by charging and sentencing Riley Oncken for his criminal acts and federal law violations. Mr. Oncken is not above the law, just because you have some clout in a small town and just because you ran to become a judge, you are not immune from prosecution. Now, you will remember earlier I made a statement that Riley Oncken is a fraud. I believe 100% that Riley Oncken is a fraud and I am going to prove it right now. In America we as people have beliefs and traditions that we hold close to us. We also especially if your a lawyer or judge stand by the constitution and what it means to all people. Now, you read by Riley Onckens attorney there admission of Mr. Oncken being a life long*

NRA member. This is actually a great thing, I am as well. Before this wrongful criminal charges placed on me ( again I'll explain as we progress) I was a concealed carrier. But when you take the oath of being a lawyer or judge your are in fact swearing to uphold laws and the constitution. But you also must believe and uphold amendments and due process, now I don't have to recite the amendments to this court but I may have to for Mr. Oncken and his lawyer. The 5th and 6th amendments discuss the rights of innocent until proven guilty, something for hundreds of years we as a country were suppose to stand for. But, now as you will see these same amendments and due process is being rapped from me by the same person who more then most is suppose to believe them. Please refer to **exhibit( A-1 and A-5)** The fraud that I charge Riley Oncken with is clear, he advertises in his website that he is a defense lawyer, his firm represents people charged. He tells them they are innocent until proven guilty, but as you can see he does not believe that. So he is tricking and defrauding thousands of people out of there money, by telling them he believes there innocent until proven guilty but actually does not mean on bit of it by his own admissions. Riley Oncken and his lawyer kindly admitted to committing federal crimes as you can see from there response, they admit to violating state and federal laws. But they also unknowingly admitted there frauds. Riley Oncken dresses and I believe try's to replicate a much smaller version

*of President Trump, actually seems like Riley looks up to him. Well, as we all know*

*Trump is facing probably 100 charges by now, how would Riley Oncken review*

*Melania Trumps go fund me page?*

*They also unknowingly admitted that they use threats, harassment, abusive litigation*

*and retaliation, both Riley Oncken and his lawyer Alicia Caplan. Please reference*

*the defendants response and look over their requests for relief. They ask that the*

*court punish me for filing this no contact order by allowing friends and colleagues*

*at the states attorneys office to again prosecute me. The same office Mrs. Caplan*

*worked for. They also ask for damages, as well as other means of relief. This is to*

*instill fear for my filings, well, proudly, I have zero fear of any of that.  Riley*

*Onckems attorney makes reference to ( **Illinois Supreme Court Rule 137 for***

***Petitioner's misrepresentations).***

*What has been misrepresented? Mrs. Caplan does not pull one thing from my*

*statements that she says are misrepresented. She does however go on and signal*

*some sort of panic over my belief that Riley Oncken is having a sexual relationship*

*with Melissa Mobile. She goes on to threaten me with prison and felony's for my*

*beliefs, more intimidation. She infact quotes the law **(Referring this matter to the** **DeKalb County State's Attorney's office for a** **determination of whether Petitioner should be charged with a Class 3 Felony for** **his violation of 735 ILCS 5/1-109;)***

*What is again surprising is these peoples, and I mean Riley Oncken and Alecia*

*Caplan lack of understanding of laws. Here is Rule 735 IlCS 5/1-109 ( Any person who makes a false statement, material to the issue or point in question, which he does not believe to be true, in any pleading, affidavit or other document certified by such person in accordance with this Section shall be guilty of a Class 3 felony.)*

*So here is the thing, I do believe it to be true. I believe 100% that Riley Oncken and Melissa Mobile are having a sexual relationship with each other. This is why I believe this. No lawyer would go to these lengths and put himself now in a position where he will infact lose his license l, go to prison and risk his life for just a client. No lawyer would take it upon themselves to Doxxing people on behalf of a client when the client has a team of 25 people that could do all this for her. Now, there is word around sycamore and Dekalb that there is this relationship that I believe they have. I have heard from realtors, gas station workers and even a teacher, that they believe and I'll quote exactly what they all said " I believe Riley and Melissa have much more going on them just client lawyer relationship." So I think Mrs. Caplan should worry less about my beliefs and more about her bosses morals and values. I spoke earlier about Riley being a fraud, and I believe that and I also proved it, so we now know that is a fact. But let me paint with a wider brush, the fraud. In 2021 a lovely article about Riley and his family came out. ( please see exhibit B) this*

*article Riley is quoted saying the following " In spite of all that happened in 2020 with the COVID-19 pandemic, we wanted our family to end it on a positive note, one of hope and promise of good in the future. The new Fund allows us a hands-*

*on approach to teach and model generosity to our children." Riley continued, "As a family, we've been blessed and we want to pass on that blessing to helps others. A few years ago one of our daughters asked to make a lemonade stand so she could raise money to give to the local homeless shelter. We did that together and she experienced great joy in being able to raise and donate the money to Hope Haven. That's the mindset we want to instill in our kids, to be generous, to hold money loosely, and to try to meet needs where we see them"*

*How touching! I think you can see from all Riley has done to my disabled family*

*that he does not believe a word of what his fraudulent mouth spewed. Riley Oncken*

*had this wonderful article less than a year before he ran and loss the circuit court*

*judge position, how convenient. Riley Oncken plays the victim in just about*

*everything. Even when Riley was in the Dekalb board he played the victim (please see exhibit C) you can see by Riley Onckens own words " The only allegations of a conflict have come from a few, vocal, individuals within the system who have their own agenda and seek to do me harm for their own political, personal, or financial reasons. I will not be bullied or manipulated into resigning by those who put their own interests above those of the public." Riley will not be bullied,*

*he only wants to be the bully. You know it takes more than a family photo on a*

*Article and some phony words to be a truly good person. In my closing arguments*

*I'll show you what a good person is.*

*The last response and I saved the best for last is Riley Oncken and Alecia Caplan*

*portraying of my criminal charges. Now I have public defender and she advised me*

*not to argue my case here as it has nothing to do with this motion. I feel arguing*

*this anywhere is fine with me as I have nothing to hide. But, I will do as she said*

*and not waste the courts time explaining the whole case now. I will however say a*

*few things about this case. I was asked my my elderly neighbor to help him and his wife or she ( his wife) would die. I was asked because there older daughters abandoned them. So I helped them for two years with everything I could, the last year I worked in there home for a full year installing a 20k bathtub and at least 30 more projects, all which were finished and completed. I got nothing but praise from them, there daughters when they would come and anyone who seen what I did. A full years worth of work for 6400.00 with materials is all I was paid. When I filed a complaint with elder care that's when the charges were pressed against me. I am the one who called Elder care, elder care was never called on me. Attached you'll find (exhibit D) a letter of recommendation form the elderly man that Riley Oncken speaks about. Riley Oncken knows nothing about this case, unless he does? That would be interesting. So then a detective Grayson Scott who has a personal long standing relationship with the alleged victim and Sarah Fraser from elder care a ex Dekalb cop asked Greyson Scott to charge me since the daughters husband threaten to sue her if she kept bothering them. I was constantly thanked and praised by the daughters and the elderly neighbors, constantly. I am the reason the elderly couple is now living safety in a related living home. Riley Oncken has tried to muddy the waters about me and in my closing arguments I'll tell you exactly who and what I am. After my closing arguments I'll be asking this court for my*

*relief from this criminal. Going back to these phony charges, I was never served or arrested as the paper explained. The reporter a friend of the police department and the elder care lady was asked to write this story about me and say that " I was running a scheme that involved many victims." They ran this hoping more people would come forward and make the story true, well not one person came forward. The editor Kelsey Rettke not only admitted she never investigated this but would investigate now ( see exhibit E) but after her investigation she would write my letter to the editor and allow me my side of the story. Guess what? 6 months later and she has not returned one call or one email. ( see exhibit F) she lied just like she did in her story about me. That's the whole case summed up. This is my reign of terror and crime sprees that warrants not having a home for my family. I have never*

*stolen a thing in my life from old or young people especially from elderly people, but again in my closing I'll*

*explain who I am. Riley Oncken found this story and police synopsis and used it against me. Used it against me without even allowing me to defend myself , this from a defense lawyer. Riley Oncken is not a lawyer, he may have the license but he does not have the morals and values of a lawyer. By him and his lawyer acting like hungry hyenas and circling me as I am down right now, should show this court who these people really are. Riley Oncken talks about credibility and said many times to me I have none. See, what is happened is since these charges I am of no*

value or belief, I have no legal voice or worth. Riley and in fairness he is not alone, believe these charges are true and I am just bad and I should have no home for my family, no nothing, I should be one in done in the world of crime and punishment. Well, that's when you as a person have to rise above, this is when you as a person has to realize this is the moments in life that matter the most, when your being tested and made for a bigger moment. This is where you never ever give the Pricks the satisfaction. Riley Oncken and his band of merry lynchman are circling my wagon, but I will not break!

## Closing Arguments:

Who is Robert Sam ? I grew up in Cicero Illinois to a family affiliated with organized crime. We moved a lot, I lost a lot and was abused a lot. All things that made me cast iron today. I never ever caused my family one ounce of heartache, maybe that's why things were as they were. Growing up I chose to become a firefighter, and I did, I was a firefighter and paramedic I was also a Kankakee county deputy, Illinois department of corrections C/O and a federal agent for the braidwood nuclear plant. I never had a criminal record, never. The state however has harassed me my entire adult life, maybe because I am a Jr and they think I am my father or it's because my uncle John Sam was the head detective for the Jeanine Nicarico murder case in Naperville. I believe it's the ladder. Many states attorneys

and attorney general people and lawyers and detectives were either charged or fired over my uncle doing the right thing and coming forward and being honest. Well I was told by a dupage county state attorney one time that " my name is not welcome here" I don't think it's welcome anywhere. My life has been anything but ok, or good, infact it's been horrible. But when I married my wife and we had my daughter I finally thought things are changing and getting better. Well, many sicknesses and disabilities later and top that with evictions, and a cherry of now criminal charges for helping your neighbor and well suicide is pretty much what your faced with. I come to the realization that my life is for one purpose, it's not to be liked or successful at anything it's to take care of my wife and daughter and that's my calling. I have tried my whole life to be liked or do all the right things and be as honest as I can and as you can see, well that leads to charges. I can't escape this black cloud, god knows I have tried. But I can embrace it and fight, fight like it's my last day on earth. I spend my days either daydreaming my problems away or my options for checking out of this life. And when I find myself checking out, I think of what will happen to my wife and daughter if I am gone and how will they get on. So, I am here for them and them only. There was a time when I had money and did well and when I did I donated my cars to

TLC animal charity, donated money to st Jude's and thousands to kids and animals charities.

*when I had money, I gave a Cadillac to a homeless kid, I handed a thousand dollars to a single mom sitting outside the daily center, I even a year ago helped Grayson Scott's supervisor who was struggling with a kid out side of Burger King as the kid went for his gun, I helped him restrain him. Have you heard of me? I mean before the charges? Right. See I didn't do these things to have a magazine or paper write a story about me, I did all this because I really enjoy helping people. It's the one thing that makes me feel alive. Everyday is a struggle, everyday day we lose my wife a little more, everyday we don't know what kind of personality or issues my daughter will have, everyday is just a beating, but I continue to take it, continue to try to find security for them. My daughter started high school this year at sycamore high, someway I'll make sure she finishes there. The state, Dekalb states attorney, sycamore PD, Judges, Riley Oncken are not going to run me or my family out. I am here and my family is here, and no matter how tired I am getting the older I get, I am there advocate and will be to my last dieing day. This is who I am, not what Riley Oncken makes up, this is who I am and I am here to face all the demons with my head high and nothing, not one thing to hang my head about.*

*In todays world, No good deed goes unpunished and neither do good People.*

*Wherefore, Petitioner, Robert Sam respectfully prays that this court:*

1. *Grants Robert Sam's petition for no contact- there is zero reason why this should not be granted as there is plenty of evidence and admissions of guilt.*
2. *Immediately hold Riley Oncken in contempt of court for violating the appeals courts court order stay.*
3. *Allow me to file criminal charges against Riley Oncken for violating the states laws on cyber bullying and doxxing, refer this matter to the states attorneys office.*
4. *Refer my case to Judge Weller for a immediate dismissal of the eviction order and agreed order. Case law states when a Judge acts as a trespasser of the law, when a judge does not follow the law, he or she then loses subject matter jurisdiction and the Judges orders are void, of no legal force or affect.*
5. *And any and all relief ( which I badly need) that this court and this Judge feels is fair and reasonable as well as long overdue.*
6. *Definitely do not impound or seal these records. People need to be made aware of who Riley Oncken is. The court should not hide and protect him from his crimes.*

Robert Sam

8-19-23