**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION**

| | | |
|---|---|---|
| Robert Sam, | ) | |
| | ) | Case No. 23-CV-50301 |
| Plaintiff, | ) | |
| | ) | Judge: Ian D. Johnston |
| v. | ) | |
| | ) | Magistrate Judge: Margaret Schneider |
| BKA Holding, LLC, Melissa Mobile, | ) | |
| Riley Oncken, Riley N. Oncken, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

**ROBERT SAM'S REPLY IN SUPPORT OF HIS**
**SUPPLEMENTAL MOTION TO DISQUALIFY CRONAUER LAW**

Plaintiff seeks to disqualify Cronauer Law from this litigation because Plaintiff is a former prospective client of Cronauer Law and the subject matter of this instant litigation is substantially related to Plaintiff's communications with Cronauer Law from September 12, 2022 through November 17, 2022 (the "Prospective Client Communications.")[1].

Defendants' response to the Plaintiff's Supplemental Motion to Disqualify Cronauer Law ("Motion") attempts to avoid disqualification by arguing that Plaintiff has engaged in attorney shopping and that an unrelated Illinois Appellate Court ruling precludes this Court from granting the Motion. Defendants further argue that Cronauer Law should not be disqualified because they were aware of the pending criminal charges against Defendants prior to retaining Cronauer Law and because criminal charges and case files are public record. Lastly, Defendants argue that Plaintiff has failed to allege the existence of a substantial relationship between Cronauer Law's former representation of Plaintiff and its current representation of the Defendants.

---

[1] In order to safeguard the attorney-client privilege, Plaintiff is unable to be too specific regarding his communications with Cronauer Law and refers the Court to the documents previously submitted for an *in camera* review on or before December 4, 2023.

1

Defendants' arguments are either inaccurate or fail as a matter of law. First, Plaintiff has not communicated with any law firms for the purpose of disqualifying Cronauer Law. Second, this Court may and should disregard the Appellate Court's ruling because the facts before this Court and the Appellate Court differ and because the Appellate Court failed to provide any factual reasoning as to why it denied Plaintiff's motion to disqualify. Third, Defendants' knowledge regarding the public filings and community gossip is irrelevant to the duties that Cronauer Law owes to Plaintiff. Fourth, the information, mental impressions, questions, and concerns that Plaintiff shared with Cronauer Law are not public record, and Plaintiff did not share this information with the police. Lastly, there is a substantial relationship between Cronauer Law's consultation with Plaintiff and its current representation of Defendants because it is highly anticipated that the pending criminal charges will be an issue in this lawsuit.

## ARGUMENT

Illinois courts have a "'vital interests in "protecting the attorney-client relationship, maintaining public confidence in the legal profession and ensuring the integrity of judicial proceedings."'" *In re Est. of Wright*, 377 Ill. App. 3d 800, 804 (2007). When necessary, courts must "safeguard these vital interests" by disqualifying an attorney seeking to represent a client with materially adverse interests to the attorney's former prospective client. *Id.* Importantly, "'any doubts as to the existence of a conflict should be resolved in favor of disqualification.'" *Id.*

As set forth in more detail below, this Court should safeguard Plaintiff's vital interests and resolve any doubts in favor of disqualification.

### A. Plaintiff Has Not Attorney Shopped

Confusingly, Defendants' Supplemental Reply to Plaintiff's Motion Seeking Disqualification of Defendants' Counsel ("Response") (ECF No. 58) attempts to argue that Plaintiff contacted Cronauer Law on September 12, 2022 with the intent of disqualifying Cronauer

2

Law from this instant litigation. (Resp., p. 3.) In support of its argument, Defendants rely on Rule of Professional Conduct 1.18 and Plaintiff's Motion for Attorney Representation (ECF No. 4). However, neither of these sources support Defendants baseless argument that Plaintiff has engaged in attorney shopping.

In relevant parts, Comment 2 to Rule of Professional Conduct[2] 1.18 states "[m]oreover, a person who communicates with a lawyer *for the purpose* of disqualifying the lawyer is not a 'prospective client.'" When Plaintiff contacted Cronauer Law on September 12, 2022, he was genuinely seeking Cronauer Law's representation against the pending criminal charges.

Additionally, as this Court is aware, Plaintiff is indigent and has contacted over 45 law firms seeking free legal representation and made several requests to this Court seeking the appointment of an attorney. Each of Plaintiff's attempts at finding counsel were made in good faith and were not made for the purpose of disqualifying Cronauer Law, or any other firm.

Plaintiff's attempts to obtain representation in the current litigation are wholly unrelated to his attempt to retain Cronauer Law to defend him against the pending criminal charges brought by the State of Illinois. Therefore, because Plaintiff's communications with Cronauer Law were not for the purpose of disqualifying Cronauer Law, or for his claims against the Defendants, Rule of Professional Conduct 1.18 does not prohibit this Court from disqualifying Cronauer Law.

## B. Illinois Supreme Court Rules of Professional Conduct Necessarily Require the Disqualification of Cronauer Law

Defendants' Response spends a significant amount of time focused on what knowledge the Defendants had prior to engaging Cronauer Law. (Resp., pp. 8-9.) The Defendants owe no duties to the Plaintiff under the Rules of Professional Conduct – so their knowledge regarding the

---

[2] All capitalized terms shall have the same meaning ascribed to them in Plaintiff's Supplemental Motion to Disqualify Cronauer Law, ECF No. 56.

criminal charges is completely irrelevant. Therefore, this this Court does not need to consider the Defendants' prior knowledge in ruling on the Motion.

Rules of Professional Conduct 1.18 and 1.9 require an attorney to safeguard the information they receive from a prospective and/or former client and to not represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the prospective and/or former client.

Specifically, Rule of Professional Conduct 1.18 imposes the following obligations:

(a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d)

(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:

(1) both the affected client and the prospective client have given informed consent, or

(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and that lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom.

Furthermore, Rule of Professional Conduct 1.9(a) imposes the following duties:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which

that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

Plaintiff was indisputably a prospective client of Cronauer Law. As a prospective client, Cronauer Law owed then – and continues to owe now – the same duties that it owes to every single client it has ever represented. Namely, that it will not represent a person in the same or a substantially related matter in which that persons interests are materially adverse to Plaintiff's interests. Therefore, because Cronauer Law's relationship with Plaintiff arises out of a situation that is substantially related to the instant matter, the Rules of Professional Conduct explicitly prohibit Cronauer Law's representation of the Defendants.

### i. *Rules of Professional Conduct 1.18(b) and 1.9(a) Prohibit Cronauer Law from Representing Defendants*

Rules of Professional Conduct 1.18(b) and 1.9(a) are clear that lawyers are forbidden from representing a person in a substantially related matter in which that person's interests are materially adverse to the interests of the prospective and/or former clients. Pursuant to comment 3 of the Rule of Professional Conduct 1.9, "[m]atters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."

In determining whether matters are substantially related, Illinois courts seek to determine whether "the lawyer ***could have*** obtained confidential information in the first representation" that is relevant in the second. *Analytica, Inc. v. NPD Rsch., Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983) (emphasis added). In conducting such analysis, it is irrelevant whether an attorney "actually obtained such information and used it against his former client." *Id.*

From September 12, 2022 through November 17, 2022, Plaintiff and Cronauer Law engaged in numerous communications relating to criminal charges currently pending against

Plaintiff. Throughout the duration of the Prospective Client Communications, Cronauer Law requested, and Plaintiff provided, a detailed account of the facts and circumstances surrounding the Sycamore Police Department's investigation. Plaintiff continuously communicated to Cronauer Law about the impact criminal charges could have on his and his family's wellbeing – including losing his Section 8 Vouchers. Plaintiff also shared with Cronauer Law that he was concerned about his landlord.

The subject matter of the Prospective Client Communications are substantially related to Plaintiff's current claims against the Defendants. Specifically, they are related to Plaintiff's claims that the Defendants unlawfully discriminated against him due to the pending criminal charges in violation of the Illinois Department of Human Rights ("IDHR"). Plaintiff has already made this affirmative claim against the Defendants in his Amended Complaint at Law ("Amended Complaint") (ECF No. 12) and also in a complaint he filed with the IDHR on June 23, 2023 ("IDHR Complaint"). (*See* ECF No. 1, pp. 15-18.) Plaintiff also stipulates that he will be including this affirmative claim against the Defendants in his second amended complaint, which is due to this Court on March 5, 2024.

It is highly anticipated that Plaintiff's pending criminal charges will be an issue in this lawsuit because Defendants have previously relied on the criminal charges as a defense to Plaintiff's claims of wrongful eviction. (*See* Resp., p. 8; *see also* IDHR Dismissal, Exhibit A, p. 51.) Furthermore, Plaintiff repeatedly indicated that a main reason he was seeking Cronauer Law's representation was to avoid losing his Section 8 Vouchers. From these references, it is reasonable to infer that eviction was his main concern.

As such, the subject matter of Cronauer Law's former engagement with Plaintiff is substantially related to Plaintiff's claims against the Defendants and the Defendants defenses

6

against those claims. Therefore, Rules of Professional Conduct 1.18(b) and 1.9(a) expressly prohibit Cronauer Law from representing Defendants.

### ii. Rule of Professional Conduct 1.18(c) Prohibits Cronauer Law from Representing Defendants

Furthermore, Plaintiff has not provided informed consent for Cronauer Law to represent the Defendants, and Nicholas Cronauer has not been timely screened from participating in this litigation. Therefore, Rule of Professional Conduct 1.18(c) also prohibits Cronauer Law from representing the Defendants.

As explained above, the Prospective Client Communications are substantially related to Plaintiff's pending and forthcoming allegations against the Defendants. Through the Prospective Client Communications, Cronauer Law learned information that could be significantly harmful to Plaintiff. For example, Plaintiff provided Cronauer Law with the facts and circumstances surrounding the criminal investigation, details relating to his communications with the investigator, his mental impressions and defenses to any charges brought against him, his concerns for his Section 8 Vouchers, and other similar information. Plaintiff concedes that the State of Illinois has made multiple public filings providing background on the pending criminal charges. However, much of the information Plaintiff shared with Cronauer Law is not part of the public record – including his defenses to the criminal charges. If Defendants were to learn this significantly harmful and non-public information, it could heavily influence their defenses and litigation strategy in this instant case.

Additionally, many of the Prospective Client Communications were between Plaintiff and Nicholas Cronauer. On September 20, 2023, Nicholas Cronauer filed his appearance on behalf of Defendants. Moreover, Nicholas Cronauer has filed documents and actively participated in

Defendants defense in this litigation. Therefore, it is clear that Cronauer Law has made no attempts of screening him from this matter.

Because Cronauer Law has received confidential and significantly harmful information, and also because Plaintiff has not provided informed consent for Cronauer Law to represent the Defendants and Nicholas Cronauer has not been timely screened, this Court should prohibit Cronauer Law from representing the Defendants pursuant to Rule of Professional Conduct 1.18(c).

### C. Plaintiff Has Successfully Alleged Facts Identifying Disqualifying Information Under the *LaSalle* Test

In deciding whether the Rules of Professional Conduct require the disqualification of an attorney, Illinois courts are required to determine "'whether it could reasonably be said that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation.'" *LaSalle Nat. Bank v. Lake Cnty.*, 703 F.2d 252, 255 (7th Cir. 1983). The crux of the Response is that it would be improper to disqualify Cronauer Law because Plaintiff has failed to identify any disqualifying information under the three-step inquiry set forth in *LaSalle*. Contrary to Defendants' assertions, Plaintiff's examples and background of the information included in the Prospective Client Communications are sufficient for this Court to infer that Cronauer Law acquired information relating to the subject matter of the instant litigation.

As laid out in *LaSalle*, "[t]he standard for disqualification of an attorney who undertakes litigation against a former client is the so-called "substantial relationship" test." *Id*. This test is meant to protect the confidences of a former client against him and to "avoid even the appearance of impropriety." *Id*. Accordingly, Illinois courts engage in a three-step analysis to determine whether a substantial relationship exists between the former and subsequent matters. *Id.* at 255-56. This Courts first step in the *LaSalle* analysis is to make a factual reconstruction of the scope of Cronauer Law's prior representation of Plaintiff. *Id.* at 255. Next, this Court must determine

8

whether it is reasonable to infer the Plaintiff provided Cronauer Law with confidential information that would typically be given to a lawyer representing a client in the scope of Cronauer Law's prior representation of Plaintiff. *Id.* at 255-56. Lastly, this Court must determine whether the reasonably inferred information is relevant to the issues raised in the instant litigation. *Id.*

The instant litigation is substantially related to the facts and circumstances surrounding the Prospective Client Communications for three main reasons. First, Plaintiff has alleged that Defendants unlawfully discriminated against him due to his arrest record. Second, the Defendants have previously relied on the criminal charges as a defense to Plaintiff's allegations, including in their Response. Third, on numerous occasions Plaintiff shared his concerns that he would lose his Section 8 Vouchers, ultimately causing the Defendants to evict him, which is what is squarely at dispute in this lawsuit.

As acknowledged in the Response, Cronauer Law's former representation of Plaintiff arises out of the criminal charges pending against him and his concerns that he would lose his Section 8 Vouchers. (Resp., pp. 7, 9.) For over two months, Plaintiff and Cronauer Law discussed the Sycamore Police Department's criminal investigation and the potential consequences that could result from the investigation. Importantly, the Prospective Client Communications were not one-sided. Instead, Cronauer Law and Plaintiff engaged in dialogue in which Cronauer Law sought, and Plaintiff provided, information relating to the pending criminal investigation.

As explained above, Prospective Client Communications are relevant to the issues Plaintiff has previously raised, and will continue to raise, in this instant litigation. For example, in Plaintiff's Amended Complaint, which is currently operable, Plaintiff alleges that Defendants engaged in illegal discrimination based on the pending criminal charges. (Am. Compl., pp. 5, 9.) Additionally, Plaintiff alleged in his initial motion to disqualify Cronauer Law that "[t]he principal

purpose of my complaint filed in this court is for the federal violations that occurred during a wrongful eviction. This eviction was also part of the action taken against myself and my family due to illegal criminal charges pressed against me back in 2022." (Mot. to Disqualify, p. 2.)

Defendants appear to interpret the inquiry set forth in *LaSalle* to require Plaintiff to disclose "[w]hich specific email [] [the] disqualifying information can be found in." (Resp., p. 7.) However, such an interpretation is unreasonable because if Plaintiff were required to disclose his exact communications with Cronauer Law, as Defendants suggest, Plaintiff's instant efforts of ensuring the Defendants are not privy to confidential information would be futile. Additionally, the *LaSalle* court was clear that the second step in the inquiry is to "determine[] whether it is reasonable to **infer** that [] confidential information" was shared with the attorney. *LaSalle Nat. Bank,* 703 F.2d at 255-56 (emphasis added). As such, without waiving the attorney-client privilege, Plaintiff has provided this Court with sufficient information to reasonably infer that Plaintiff shared confidential information with Cronauer Law.

Furthermore, Defendants' reliance on *Schwartz v. Cortelloni* and *Doe v. Chand* are unpersuasive because Plaintiff's claims are neither vague, irrelevant, nor insufficient to show a substantial relationship between Cronauer Law's former representation of Plaintiff and its current representation of Defendants. At issue in *Doe v. Chand*, was whether the plaintiff's attorney received confidential information through his previous representations of the defendant that were relevant to the current litigation. 335 Ill. App. 3d 809, 815–16 (2002). Without conducting an *in camera* review, the trial court denied the defendant's motion to disqualify because the defendant offered "the vaguest allegations that attorney Favre obtained confidential information relevant to the [] litigation, and [] offer[ed] no specific as to the nature of th[e] confidential information or how it [was] relevant to the [] litigation." *Id.* at 816.

10

Importantly, unlike the defendant in *Doe*, Plaintiff has not only provided the most detailed allegations that he can without waiving the attorney-client privilege, he has also submitted the Prospective Client Communications to this Court for an *in camera* review. Furthermore, dissimilar to the defendant in *Doe*, Plaintiff has demonstrated his pending criminal charges are directly related to his allegations against the Defendants and the Defendants' defenses in this instant litigation. As such, Plaintiff has provided this Court with the specifics as to how the subject matter of Cronauer Law's former representation of Plaintiff is substantially related to its representation of Defendants.

In *Schwartz v. Cortelloni*, a law firm represented the defendant when she was a child in connection with the sale of real estate. 177 Ill. 2d 166, 175 (1997). Forty years later, the plaintiff brought a partition action against the defendant alleging that plaintiff and defendant were tenants in common under the will of their maternal great-aunt, and hired the defendant's former attorney. *Id.* at 168-169. The defendant filed a motion to disqualify plaintiff's counsel, and the court denied such motion because "[t]he evidence contained in the record adequately establishe[d] that the scope of the [law firm's] former representation of [defendant] was limited to the 1956 sale of real estate and did not entail the disclosure of confidential information relevant to the present litigation." *Id.* at 183.

However, unlike the defendant in *Schwartz*, the subject matter of the confidential information shared in the Prospective Client Communications is directly related to the instant litigation. As such, the holding in *Schwartz* is inapposite to this Court's analysis.

Therefore, because it is reasonable to infer that Plaintiff shared confidential information with Cronauer Law that is relevant to the issues raised in the instant litigation, this Court should disqualify Cronauer Law from representing the Defendants.

**D. Appellate Court's Former Denial Is Irrelevant to This Court's Analysis**

Illinois courts are clear that any party asserting a preclusion argument bears the heavy "burden of showing with clarity and certainty what was determined by the prior judgment." *Jones v. City of Alton, Ill.*, 757 F.2d 878, 885 (7th Cir. 1985). A court may not "'invoke the rule of estoppel by verdict or res judicata on pure speculation as to the finding of the trial court in the prior litigation.' To speculate on the grounds for the prior judgment would be to remove the burden placed on the proponent." *Id*.

This Illinois Appellate Court Second District's (Appellate Court") denial of Plaintiff's September 11, 2023, motion to disqualify Cronauer Law does not preclude this Court from granting Plaintiff's Motion because the case before the Appellate Court and the case before this Court arise out of a different set of circumstance. Additionally, the Appellate Court did not provide any factual reasoning as to why it denied Plaintiff's motion. Therefore, this Court may and should wholly disregard the Appellate Court's ruling on Plaintiff's previous attempt to disqualify Cronauer Law from representing the Defendants in the appeal.

### i. *The Circumstances Alleged Before This Court and The Appellate Court Are Different*

The Appellate Court's denial of Plaintiff's previous motion to disqualify in an entirely different case with entirely different issues does not preclude this Court from reviewing the facts and circumstances of the instant case before it. If this Court were to accept Defendants' arguments, then the Rules of Professional Conduct would have no bearing on Cronauer Law and Cronauer Law would be free to team up with the State of Illinois and attempt to convict Plaintiff of the pending criminal charges.

Furthermore, the main issues before the Appellate Court were whether the DeKalb County Circuit Court erred in entering an eviction order and agreed order. Importantly, the Defendants'

motives behind initiating the eviction were not issues before the Appellate Court.  In the instant litigation, however, the main issues arise out of the Defendants' improper motives of seeking to evict Plaintiff, the Defendants' violation of federal statutes in attempting to evict the Plaintiff, the Defendants' breach of warranty of habitability, and other related allegations.

The circumstances before this Court are quite different from the circumstances before the Appellate Court, as such; this Court is not precluded from conducting its own analysis.

### ii.    The Appellate Court's Rationale Is Unclear

BKA Holding advanced two main arguments and three alternative arguments before the Appellate Court in its response in opposition to Plaintiff's motion to disqualify. One of BKA Holding's main arguments was that Plaintiff's motion should be denied because it was not supported by an affidavit or verification by certification pursuant to section 1-109 of the Illinois Code of Civil Procedure.

When the Appellate Court denied Plaintiff's motion, it did not provide any guidance as to which of BKA Holding's arguments it found compelling. Instead, the Appellate Court simply stated, "[a]ppellant's motion to disqualify appellee's counsel is denied pursuant to the appellee's response."  (ECF No. 20-2.) The Appellate Court did not provide any further rationale or explanation.

It is equally as likely that the Appellate Court denied Plaintiff's motion for failing to attach an affidavit, a procedural error, as it that the Appellate Court denied the motion any of the other reasons put forth by BKA Holding.  Because Plaintiff has included an affidavit with the Motion, which would cure any procedural defects, it would not make sense for this Court to deny Plaintiff's Motion for failing to attach an affidavit or verification pursuant to section 1-109 of the Code of Civil Procedure.

13

It is unclear, therefore, why the Appellate Court denied Plaintiff's motion, and this Court must conduct its own analysis to determine whether the Professional Rules of Conduct require the disqualification of Cronauer Law.

### E. Cronauer Law Did Not Unequivocally Inform Plaintiff that it Would Not Represent Him

Comment 2 of the Rule of Professional Conduct 1.18 notes that "a consultation is likely to have occurred if a lawyer … specifically invites the submission of information about a potential representation *without clear and reasonably understandable warnings and cautionary statements that limits the lawyer's obligations, and a person provides information in response."* Black's Law Dictionary defines the term "unequivocal" as "[u]nambiguous; clear; free from uncertainty." Black's Law Dictionary (11th ed. 2019). Contrary to the Defendants' representation to this Court, at no point did Cronauer Law ever clearly and unambiguously inform Plaintiff that it would not represent him in the Prospective Client Communications. Additionally, at no point did Cronauer Law provide clear and reasonably understandable warnings and cautionary statements limiting its obligations to Plaintiff.

In the Response, Defendants reference an email from November 17, 2022, at 1:31:14 CST ("November Email") in which Plaintiff was "explicitly told, twice, to find someone else to take his criminal case." (Resp., p. 3.) Conveniently, the Response fails to inform the Court that the November Email was in response to an email Cronauer Law received earlier that day in which Plaintiff attempted to determine his relationship with Cronauer Law. Additionally, Defendants omitted from the rest of the email, which contradicts their argument, in which Cronauer Law noted that it needed to review the discovery before determining whether it would represent Plaintiff.

Furthermore, even if Cronauer Law would have unequivocally informed Plaintiff that it would not represent him – which it did not – the November Email was sent more than two months

14

after Plaintiff initially contacted Cronauer Law for representation and after Cronauer Law had requested information from and provided legal advice to Plaintiff.

Since Cronauer Law never unequivocally informed Plaintiff that it would not represent him and did not provide him with any cautionary warnings, Rule of Professional Conduct 1.18 does not prohibit this Court from disqualifying Cronauer Law.

**F. Plaintiff Did Not Have Retained Counsel The Entire Time At Issue**

Contrary to Defendants' assertions, Plaintiff did not have "retained counsel the entire time at issue." (Resp. at 4.) Plaintiff first reached out to Cronauer Law on September 12, 2022. Pursuant to Defendants' own admission, at the earliest, Plaintiff retained a criminal defense attorney on October 11, 2022 – one month after Plaintiff and Cronauer had begun exchanging email communications. (Resp., p. 3.) As such, the Defendants cannot seriously believe that throughout the entire time that Plaintiff was seeking representation that counsel represented him. Therefore, this Court should disregard this argument in its entirety.

## CONCLUSION

For the foregoing reasons, Plaintiff's Supplemental Motion to Disqualify Cronauer Law should be granted.

Respectfully submitted,

Date: March 1, 2024

*/s/* Bradley S. Lohsl

Margaret A. Gisch (6204431)
Bradley S. Lohsl (6332989)
GOLAN CHRISTIE TAGLIA LLP
70 W. Madison Street, Suite 1500
Chicago, IL 60602
312-696-2039
magisch@gct.law
bslohsl@gct.law

15