IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| Robert and Karen Sam, | ) | |
| | ) | Case No. 23-CV-50301 |
| Plaintiffs, | ) | |
| | ) | Judge: Ian D. Johnston |
| v. | ) | |
| | ) | Magistrate Judge: Margaret Schneider |
| BKA Holding, LLC, Melissa Mobile, | ) | |
| Riley Oncken, Riley N. Oncken, P.C., | ) | |
| Christopher Nicholas Cronauer, and | ) | |
| Cronauer Law LLP, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

Now comes Plaintiffs Robert and Karen Sam, by and through their counsel, Golan Christie

Taglia LLP, and for their complaint against BKA Holding, LLC, Melissa Mobile, Riley Oncken,

Riley N. Oncken, P.C., Christopher Nicholas Cronauer, and Cronauer Law LLP and state and

allege as follows:

**SUMMARY OF ACTION**

1. From September 2019 through the present, Robert and Karen Sam and their

daughter have rented the dwelling located at 639 Stonegate Drive, Sycamore, Illinois 60178 (the

"Leased Premises") from BKA Holding, LLC ("BKA Holding") and Melissa Mobile ("Mobile").

2. Unfortunately, both Karen and their daughter are afflicted with very serious health

conditions that have also caused serious financial impact to the family, including Robert leaving

his job to take care of Karen and their daughter full time.  BKA Holding and Mobile have been

aware of these facts from the inception of the lease.

3. During the majority of their leases, Plaintiffs have relied on Section 8 government

vouchers to cover most of the nearly $2,000 per month rent, with the remainder being tendered in

1

cash or certified funds to BKA Holding and Mobile per their request. Additionally, Plaintiffs have, over time, posted roughly $4,900 in security deposits and "last month's" rent.

4. In spite of making monthly payments, BKA Holding and Mobile, through their attorneys Riley Oncken ("Riley") and Christopher Nicholas Cronauer ("Nicholas") have made multiple attempts to wrongfully evict Plaintiffs, including wrongfully refusing to accept rent and rental subsidies that the Plaintiffs have proffered, refusing to maintain the residence in livable condition, and pursuing baseless litigation. In doing so, Defendants have violated numerous federal, state and local statutes.

5. Defendants' wrongful actions have caused and continue to cause injury and damage to the Plaintiffs, but more importantly, Defendants' actions create a tangible threat to the health of Karen and her daughter, much to Robert's distress.

6. Plaintiffs herein seek compensation for the wrongs they have endured, all to allow them to live peacefully.

## PARTIES

7. Robert and Karen Sam ("Robert" or "Karen" or, jointly, "Plaintiffs") are individuals residing at 639 Stonegate Drive, Sycamore, Illinois 60178.

8. BKA Holding, LLC is an Illinois limited liability company with its principal place of business at 461 White Street, Sycamore, Illinois 60178.

9. Melissa Mobile is the sole owner and manager of BKA Holding LLC, an Illinois limited liability company with its principal place of business at 461 White Street, Sycamore, Illinois 60178.

10. Riley Oncken is an individual residing at 1820 Joseph Sixbury, Sycamore, Illinois 60178.

2

11. Riley N. Oncken, P.C. ("Oncken P.C.") is an Illinois partnership corporation with its principal place of business at 212 S. Main Street, Sycamore, Illinois 60178.

12. Christopher Nicholas Cronauer is the registered agent of Cronauer Law LLP, an Illinois partnership corporation with its principal place of business at 1101 DeKalb Avenue, Suite 2, Sycamore, Illinois 60178.

13. Cronauer Law LLP ("Cronauer Law") is an Illinois partnership corporation with its principal place of business at 1101 DeKalb Avenue, Suite 2, Sycamore, Illinois 60178.

## JURISDICTION, VENUE, AND DEMAND FOR JURY TRIAL

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367 because Plaintiffs' claims are based on a common nucleus of operative fact and a portion of Plaintiffs' claims arise under federal law.

15. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C.§ 1391(b)(1) and (2) because the Leased Premises is within this District and a substantial part of the events giving rise to this cause of action occurred in this District.

16. Plaintiffs hereby demand a jury trial on any cause of action and claim with respect to which there is a right to a jury trial.

## BACKGROUND

*Plaintiffs' Rental of Leased Premises*

17. At all times relevant, BKA Holding owned the Leased Premises.

18. At all times relevant, Mobile was the sole manager of, and exercised control over, BKA Holding.

19. From August 2019 through the present, Plaintiffs have rented the Leased Premises from BKA Holding.

3

20. On or around September 6, 2019, Plaintiffs executed a one-year lease for the Leased Premises with BKA Holding, Mobile, and Mobile's late husband, Michael Mobile ("Michael") (the "2019 Lease").

21. Prior to signing the 2019 Lease, Robert explained to BKA Holding, Mobile, and Michael that he was the primary care giver to his wife, Karen and their 14-year-old daughter, both of whom have serious medical conditions.

22. Karen suffers from multiple illnesses, including, but not limited to, multiple sclerosis, common variable immunodeficiency, and Hashimoto's disease. Because of these conditions, Karen requires home-based administration of medications that require refrigeration.

23. Plaintiffs' daughter suffers from subcortical band heterotopia, also known as double cortex syndrome, and severe epilepsy.

24. Prior to executing the 2019 Lease, Robert informed BKA Holding, Mobile, and Michael that there would be times when he would not be able to make timely rent payments due to his wife and daughter's medical conditions.

25. Robert also informed BKA Holding, Mobile, and Michael that his daughter was part of an individualized education program ("IEP") at her school and that it was imperative that she was able to stay registered with her school for the entire school year.

26. Robert also advised BKA Holding and Mobile that the cost of the medical treatments for his family had caused severe financial hardship, including evictions from some of his former homes. Robert explained that he was in the process of seeking approval for the Housing Authority of the County of DeKalb's ("HACD") Housing Choice Voucher Program.

27. Knowing the above facts, including that given the medical challenges and the corresponding financial obligations Plaintiffs may submit late rental payments, BKA Holding,

Mobile, and Michael agreed to rent the Lease Premises to Plaintiffs. BKA Holding, Mobile, and Michael also agreed to waive the need for a rental application or a credit check.

28. However, BKA Holding, Mobile, and Michael did perform a background check on Robert – which Robert passed.

29. Upon executing the 2019 Lease, Plaintiffs provided BKA Holding, Mobile, and Michael with a $1,700 security deposit and also first and last month's rent.

30. BKA Holding and Mobile continue to have possession over the $1,700 security deposit and last month's rent associated with the 2019 Lease.

*Section 8 Voucher Approval*

31. On or around May 1, 2020, BKA Holding and Mobile agreed to participate in the Housing Choice Voucher Program and executed the Housing Assistance Payment Contract ("HAP Contract") with the Public Housing Agency ("PHA"), one of the programs run by the HACD.

32. The HAP Contract specifies that the owner must maintain the contract unit and premises in accordance with certain housing quality standards (HQS).

33. In relevant parts, the HQS require the Leased Premises to have:

   a. Adequate heating in all living spaces;
   b. Proper drainage of the kitchen sink, with no leaks;
   c. A working hot water tank;
   d. No moisture leaks, large holes, and/or cracks in any wall;
   e. Windows that are free of cracks or leaks;
   f. A sound foundation;
   g. Weather-tight openings around windows and doors; and
   h. No mold and/or mildew.

(**Exhibit A, pp. 1-2.**)

34. Pursuant to the Housing Choice Voucher Program, Plaintiffs were required to contribute 30% of their adjusted gross income to their rental of the Leased Premises.

5

35. BKA Holding received the remaining rent through Section 8 Vouchers provided by the PHA.

36. Beginning in June 2020, the HACD began providing Hometown Property Management with monthly payments, as directed by the lease, to cover the lion's share of Plaintiffs' rent at the Leased Premises.

37. From June 1, 2020 through the present, the HACD has consistently made, and BKA Holding has accepted, monthly payments for Plaintiffs' rental of the Leased Premises. (**Exhibit B**.)

38. Also during this time, Plaintiffs submitted the remainder of the rent, primarily in the form of certified funds or cash payments at Mobile's request, in BKA Holding's drop box.

*August 2022 Lease*

39. On August 21, 2022, the Plaintiffs executed a new residential month-to-month lease ("2022 Lease") with BKA Holding for the Leased Premises. (**Exhibit C, p. 1**.)

40. The 2022 Lease was only terminable upon a 30 day written notice to tenant or for a breach of the 2022 Lease.

41. In accordance with the 2022 Lease, Plaintiffs provided BKA Holding and Mobile with another $1,600 security deposit.

42. Importantly, BKA Holding and Mobile are currently in possession of approximately $4,900 that is comprised of the 2019 and 2022 security deposits they received from Plaintiffs and the last month's rent payment they received from Plaintiffs in accordance with the 2019 Lease.

43. Pursuant to the 2022 Lease, Plaintiffs were required to remit $1,950 in rent per month.

44.     The HACD paid, and BKA Holding accepted, the vast majority of this rental payment through Section 8 Vouchers.

45.     In February 2023, Plaintiffs informed BKA Holding and Mobile that they would be late on their portion of rent due to the costs associated with Karen's new medication that insurance would not cover.

46.     Instead of making a reasonable accommodation and allowing Plaintiffs to make a late payment, BKA Holding and Mobile proposed that Plaintiffs enter into an agreement in which they are able to make a late rental payment in exchange for vacating the Leased Premises on May 31, 2023.

47.     To avoid an eviction especially prior to the end of their daughter's school year, Robert agreed to an agreement presented by BKA Holding and Mobile, as titled "Agreed Order" (the "Agreed Order").

48.     Pursuant to the Agreed Order, Plaintiffs were allowed to stay in the Leased Premises until the end of May 2023, when Plaintiffs' daughter would finish school for the year. In exchange, Plaintiffs agreed to pay BKA Holding and Mobile pursuant to a payment schedule, with the first payment being due on March 25, 2023.  (**Exhibit D**.)

49.     Robert negotiated what he believed to be terms that would allow his family to vacate the Leased Premises without the entry of an eviction judgment.

50.     During the discussions about the Agreed Order, Plaintiffs, BKA Holding, and Riley discussed Robert's concerns regarding how an eviction would impact his ability to receive Section 8 Vouchers.

51. As such, Robert purposefully attempted to negotiate a deal that would avoid an eviction judgment because such judgment could impair his ability to continue receiving Section 8 Vouchers, which could ultimately result in Plaintiffs' family becoming homeless.

52. Importantly, if Plaintiffs' family becomes homeless, Karen would be unable to receive the necessary administration of medications that require refrigeration. The inability to receive these medicines would result in dire and potentially fatal health consequence for Karen.

*Wrongful Eviction*

53. Without any notice to Plaintiffs, on March 8, 2023, BKA Holdings through its attorney Riley, filed a Complaint for Forcible Entry and Detainer and Money Damages ("Eviction Complaint") against Plaintiffs. (**Exhibit E**.)

54. The Eviction Complaint makes blanket allegations that Plaintiffs had failed to timely pay rent, causing BKA Holding to incur monetary damages, and that BKA Holding was entitled to recover its attorney's fees and costs associated with filing the Eviction Complaint.

55. Importantly, BKA Holding solely relied on the terms of the Agreed Order to support these allegations.

56. Pursuant to 24 C.F.R. § 982.354, a PHA may deny permission to port Section 8 Vouchers if a recipient violates any of the obligations owed under the Housing Choice Voucher Program.

57. The denial of the Section 8 Vouchers and an eviction would render the Sam family homeless, effectively interrupting the medical treatment needed for both Karen and their daughter. Plaintiffs reasonably believe that homelessness would result in Karen's sever medical decline, and possibly her death, because Karen's medicine must be stored in a refrigerator.

58. Again without any notice to Plaintiffs, on March 10, 2023, three days after filing the Eviction Complaint, BKA Holding filed the Agreed Order with the trial court.

59. Additionally, on March 10, 2023, BKA Holding deviated from the Agreed Order and filed an eviction order ("Eviction Order"). (**Exhibit F**.)

60. On March 10, 2023, the same day they each document was filed; the trial court entered both the Agreed Order and Eviction Order.

61. Plaintiffs were first made aware that BKA Holding had filed the Eviction Complaint and Eviction Order after the trial court had entered the Eviction Order through an email he received on March 10, 2023 from Riley.

62. On March 30, 2023, Aaron Hanford ("Hanford"), an attorney at Prairie State Legal Services, agreed to represent Plaintiffs for the limited purpose of filing a motion to vacate the Eviction Order and to void the Agreed Order.

63. On April 7, 2023, Plaintiffs, through counsel, filed a motion to vacate the Eviction Order and void the Agreed Order pursuant to Section 2-1301(e) of the Code of Civil Procedure. (**Exhibit G**.)

64. On April 18, 2022, the trial court denied the motion and granted Hanford leave to withdraw as counsel for Plaintiffs.

65. On May 17, 2023, Plaintiffs filed a Notice of Appeal with the Illinois Appellate Court for the Second District ("Appellate Court") (the "Eviction Proceedings").

66. On June 23, 2023, the Appellate Court granted Plaintiffs' emergency motion to stay the trial court's judgment pending his appeal, provided that Plaintiffs paid all rent that accrued during the pendency of the appeal. (**Exhibit H**.) Plaintiffs continued to make his monthly payments via certified funds.

67.     In or around this same time, Robert learned that he had been approved for a court-based assistance rental program which would cover any back payment in rent as well as provide 12 months of guaranteed payment for their portion of the rent.

68.     Robert advised BKA Holding and Mobile, through attorney Riley, about the above program and sought their agreement to accept Plaintiffs' continued tenancy with this financial assistance.  BKA Holding and Mobile declined to accept the financial assistance that Robert had obtained.

69.     On June 29, 2023, while the appeal was pending and in violation of the Appellate Court's order staying the eviction proceeding, BKA Holding filed a Petition for Rule to Show Cause ("Rule to Show Cause") to hold Plaintiffs in contempt for not timely vacating the Premises as required in the Agreed Order.  (**Exhibit I.**)

70.     On July 13, 2023, the trial court denied the Rule to Show Cause.

71.     In September and October, 2023, BKA Holdings and Mobile refused to accept the certified checks that Plaintiffs submitted to cover their portion of the rent, as they had been directed to submit by the Appellate Court.

72.     On November 28, 2023, the Appellate Court held that the trial court erred in entering the Eviction Order on March 10, 2023 and vacated the judgment of possession.  (**Exhibit J.**)

73.     The Appellate Court also vacated the Agreed Order for two very important reasons.

   a.  First, the Appellate Court held that there was no meeting of the minds because "as the agreement's language clearly embodied the Sams' intent that they be allowed to make the scheduled payments and vacate the premises at the end of May without the entry of an eviction judgment that could harm their ability to find other housing,

but BKA seems to have had an entirely different understanding of the agreement." (**Exhibit J, ¶ 20**.)

    b. Second, the Appellate Court held that "given the improper actions of BKA in tendering an eviction judgment for entry on March 10, 2023, before any noncompliance with the agreement, and the subsequent passage of time involved in appealing the entry of that judgement, we conclude that the agreed order can no longer be given legal effect." (**Exhibit J, ¶ 20**.)

74. The Appellate Court further noted that "as far as the record reveal[ed], [Plaintiffs] did not receive the statutorily required notice of nonpayment of rent before filing of the complaint, and [Plaintiffs] w[ere] never properly served with the complaint. (**Exhibit J, ¶ 21**.)

75. On December 1, 2023, Nicholas served Plaintiffs with BKA Holdings and Mobile's Five-Day Eviction Notice ("November 30, 2023 Eviction Notice"). (**Exhibit K**.)

76. Pursuant to the November 30, 2023 Eviction Notice, Nicholas, BKA Holdings, and Mobile provided Plaintiffs with five days to pay an alleged outstanding amount of $4,798.55 "in order to avoid an eviction action." (**Exhibit K**.)

77. On January 9, 2024, the Appellate Court entered a mandate vacating the Eviction Order and Agreed Order and remanding the case back to the trial court.

78. Astonishingly, in spite of the Appellate Court's ruling, and the fact that Plaintiffs are current on their rental obligations, on January 9, 2024 Nicholas, at the direction of BKA Holding and Mobile, filed a Motion to File an Amended Complaint ("January 9, 2024 Motion"). (**Exhibit L**.)

79. On February 27, 2024, the trial court dismissed the Eviction Complaint because BKA Holding failed to comply with the requirements of the Coronavirus Aid, Relief, and Economic Securities Act (the "CARES Act").

80. Importantly, Plaintiffs are current on their rental obligations to BKA Holding and Mobile and have attempted to provide payments for all amounts owed to BKA Holding and Mobile.

***Warranty of Habitability Issues***

81. Since moving into the Leased Premises in 2019, the Plaintiffs have encountered many problems with the Leased Premises not complying with the HACD HQS and Illinois building codes.

82. For example, the Leased Premises in currently in violation of the HQS, and other Illinois building codes, because:

    a. the Lease Premises has gone without hot water for weeks on end, including as of the filing of this Second Amended Complaint;
    b. the windows allow rain, snow, and ice to blow through the house, causing leaks resulting in mold and mildew growing within the Leased Premises;
    c. the front porch is sinking in and the overhang above the porch is collapsing;
    d. the foundation is cracked, which causes the basement to flood when it rains – further causing mold and mildew; and
    e. there are exposed electrical wires in the basement causing the potential for a life threatening electrocution.

83. As such, from 2022 through the present Plaintiffs have consistently requested BKA Holding, Mobile, and the HACD to make necessary repairs to the Leased Premises.

84. BKA Holding, Mobile, and the HACD have consistently failed or refused to make meaningful repairs to the Leased Premises and have not made any meaningful repairs to the above-listed problems with the Leased Premises.

85.     On January 2, 2024, the Leased Premises failed the HACD's annual HQS inspection because the kitchen sink causes a leak from the dishwasher, 5 windows leak when it rains, the condition of the foundation causes leaks into the basement, posts were not properly secured on the porch, the heat duct was disconnected to the downstairs bathroom, the front door had a large gap in it, and a spring was broken on the garage door. (**Exhibit M**.)

86.     Pursuant to the failed HQS inspection, BKA Holding and Mobile were required to make necessary repairs by February 1, 2024.

87.     On February 15, 2024, the Leased Premises failed the City of Sycamore inspection because the hot water heater was not working properly, there was evidence of water leaking from windows and walls, and the structural integrity of the front porch was compromised as a result of settling foundation support.

88.     To date, BKA Holding and Mobile have failed to make any meaningful repairs and the Leased Premises does not comply with the HQS or other safety codes.

*Riley Oncken Harassment*

89.     On May 23, 2023, Plaintiffs filed suit against Mobile, BKA Holdings, Riley, and Hometown Realty in DeKalb County, Illinois ("State Complaint").

90.     After being served with the State Complaint, Riley came to the Leased Premises with a member of the Sycamore, Illinois Police Department.

91.     Karen answered the door and Riley demanded that he be let into the Leased Premises.

92.     Plaintiffs were not provided any notice that Riley would be stopping by, and Riley did not provide Karen with a warrant to search the Leased Premises.

13

93. On February 10, 2023, Karen started a GoFundMe to help raise money for her medical care.

94. Riley donated $5 to the GoFundMe, leaving a comment stating: "Do not donate and be defrauded by this family. They can't find a place to move because her husband has pending felony charges and no landlord will rent to them. Ask for your donations back. Google "Robert Sam Sycamore" and you will find the article where he was charged with aggravated home repair fraud and theft from elderly victims." (**Exhibit N**.)

95. Riley's statement that Plaintiffs "can[not] find a place to move because [Robert] has pending felony charges and no landlord will rent to them" is baseless and patently false.

96. In response to Riley's defamatory statement, Plaintiffs filed complaints with the Illinois Department of Human Rights ("IDHR") for Riley's harassment and intimidation tactics. In response to Plaintiffs' complaints, Riley, on behalf of BKA Holding and Mobile, told the IDHR that "[t]he eviction was the result of failure to pay rent and utilities and disturbing neighbors." (**Exhibit O, p. 51**.)

97. Riley further argued that "[Robert] has a felony charge against him alleging that he was stealing money from his elderly neighbors, making him a disturbance to the rental community." (**Exhibit O, p. 51**.)

98. Notably, Robert has never been convicted of a crime and is vigorously fighting the baseless claim brought by the family of an elderly couple for whom Robert performed some construction services, most of which he performed gratis.

*Refusal to Port*

99. Due to the uninhabitable living conditions at the Leased Premises, and the harassment and intimidation Plaintiffs have sustained from BKA Holding, Mobile, Riley, and

14

Nicholas, Robert has submitted numerous requests to the HACD to port their Section 8 Vouchers to a different county so that they may move.

100. To date, the HACD refuses to port Plaintiffs' Section 8 Vouchers because of the Eviction Complaint, Eviction Order, and January 9, 2024 Motion and, upon information and belief, the HACD has been told that Plaintiffs are not in good standing on their lease payments.

101. However, the Eviction Complaint has been dismissed, the Eviction Order vacated, the January 9, 2024 Motion denied, and Plaintiffs are not in bad standing with either BKA Holding or Mobile as they have consistently made each and every rental payment for the Leased Premises.

*CARES Act and Interim Final Rule*

102. Congress enacted the Coronavirus Aid, Relief and Economic Securities Act ("CARES ACT") on March 27, 2020.

103. Under Section 4024(c) of the CARES Act, a special notice to vacate requirement applies to "covered properties."

104. "Covered properties" include properties that are federally subsidized under the public housing program, the Section 8 Programs, the voucher program, and other similar programs.

105. Pursuant to 15 USCA § 9058(c), tenants in covered properties have the right to a CARES Act 30-day advance notice to vacate before their landlord may file an eviction due to nonpayment of rent.

106. The requirement of the CARES Act does not have any sunset date and remains current law.

107. Plaintiffs reside in a covered property under the CARES Act because the Leased Premises is federally subsidized under the voucher program.

108. The United States Department of Housing and Urban Development ("HUD") has adopted an interim final rule requiring that public housing agencies and federally subsidized project based properties serve a tenant a 30-day notice to vacate prior to bringing an eviction action against the tenant based on nonpayment of rent.

109. This 30-day advance notice requirement is triggered if the Secretary of HUD has made a determination that such a requirement is necessary due to a national emergency.

110. The Secretary of HUD made such a determination on October 7, 2021 and enacted an interim final rule ("Interim Final Rule").

111. The Interim Final Rule requires a landlord who is taking part in a Housing Assistance Program to provide a tenant with a 30-day notice to vacate prior to initiating an eviction action.

112. The national emergency determination is still in effect.

113. Plaintiffs reside in a property covered under the Interim Rule because a Housing Assistance Program funds the Leased Premises.

**COUNT I**
**Violation of the CARES Act**
**(Against All Defendants)**

114. Plaintiffs incorporate and reallege paragraphs 1-113 as if fully restated herein.

115. Congress enacted the CARES ACT on March 27, 2020.

116. Under Section 4024(c) of the CARES Act, a special notice to vacate requirement applies to "covered properties."

117. "Covered properties" include properties that are federally subsidized under the public housing program, the Section 8 Programs, the voucher program, and other similar programs.

16

118. Pursuant to 15 USCA § 9058(c), tenants in covered properties have the right to a CARES Act 30-day advance notice to vacate before their landlord may file an eviction due to nonpayment of rent.

119. The requirement of the CARES Act does not have any sunset date and remains current law.

120. Plaintiffs reside in a covered property under the CARES Act because the Leased Premises is federally subsidized under the voucher program.

121. BKA Holding and Mobile knowingly entered into the Agreed Order prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act.

122. BKA Holding and Mobile knowingly filed the Eviction Complaint against Plaintiffs prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act.

123. BKA Holding and Mobile knowingly filed the Eviction Order against Plaintiffs prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act.

124. BKA Holding and Mobile knowingly filed the Rule to Show Cause against Plaintiffs prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act and in violation of the Appellate Court's order staying the eviction proceeding.

125. BKA Holding and Mobile knowingly caused Plaintiffs to be served with the November 30, 2023 Eviction Notice.

126. BKA Holding and Mobile knowingly filed the January 9, 2024 Motion prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act.

127. BKA Holding and Mobile have knowingly and intentionally attempted to evict Plaintiffs without providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act.

128. Riley knowingly filed the Eviction Complaint against Plaintiffs prior to BKA Holding and/or Mobile providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act.

129. Riley knowingly filed the Eviction Order against Plaintiffs prior to BKA Holding and/or Mobile providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act.

130. Riley knowingly filed the Rule to Show Cause against Plaintiffs prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act and in violation of the Appellate Court's order staying the eviction case.

131. Riley was aware that neither BKA Holding nor Mobile had provided Plaintiffs with the 30-day notice to vacate at the time of filing the Eviction Complaint, Eviction Order, and the Rule to Show Cause.

132. When Riley filed the Eviction Complaint, the Eviction Order, and the Rule to Show Cause, he was an employee of Oncken P.C. and Oncken P.C. had the right to control his conduct.

133. Riley's filing of the Eviction Complaint, Eviction Order, and Rule to Show Cause were in the furtherance of his employment at Oncken P.C.

134. Therefore, Oncken P.C. is vicariously liable for Riley's violation of the CARES Act.

135. Nicholas knowingly served Plaintiffs with the November 30, 2023 Eviction Notice providing Plaintiffs with less than 30 days to cure any alleged back rent or utilities owed by Plaintiffs.

136.     Nicholas knowingly filed the January 9, 2024 Motion prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act.

137.     When Nicholas served the November 30, 2023 Eviction Notice, he was an employee of Cronauer Law, and Cronauer Law had the right to control his conduct.

138.     When Nicholas filed the January 9, 2024 Motion, he was an employee of Cronauer Law, and Cronauer Law had the right to control his conduct.

139.     Nicholas' serving the November 30, 2023 Eviction Notice and filing of the January 9, 2024 Motion were in the furtherance of his employment at Cronauer Law.

140.     Therefore, Cronauer Law is vicariously liable for Nicholas' violation of the CARES Act.

141.     In violating the Cares Act, Defendants acted with malice and deliberate indifference for Plaintiffs' rights and safety, as well as the rights and safety of their daughter.

142.     As a direct result of the Defendants' violation of the CARES Act, Plaintiffs have been damaged.

**COUNT II**
**Failure to Afford 30 Days' Notice Under Housing and Urban Development Rules**
**(Against All Defendants)**

143.     Plaintiffs incorporates and realleges paragraphs 1-142 as if fully restated herein.

144.     The United States Department of Housing and Urban Development ("HUD") has adopted an interim final rule requiring that public housing agencies and federally subsidized project based properties serve a tenant a 30-day notice to vacate prior to bringing an eviction action against the tenant based on nonpayment of rent.

145.     This 30-day advance notice requirement is triggered if the Secretary of HUD has made a determination that such a requirement is necessary due to a national emergency.

146. The Secretary of HUD made such a determination on October 7, 2021 and enacted an interim final rule ("Interim Final Rule").

147. The Interim Final Rule requires a landlord who is taking part in a Housing Assistance Program to provide a tenant with a 30-day notice to vacate prior to initiating an eviction action.

148. The national emergency determination is still in effect.

149. Plaintiffs reside in a property covered under the Interim Rule because a Housing Assistance Program funds the Leased Premises.

150. BKA Holding and Mobile knowingly caused the Eviction Complaint and Eviction Order to be filed against Plaintiffs prior to providing Plaintiffs with the 30-day notice to vacate as required by the Interim Final Rule.

151. BKA Holding and Mobile knowingly caused the Eviction Order to be filed against Plaintiffs prior to providing Plaintiffs with the 30-day notice to vacate as required by the Interim Final Rule.

152. BKA Holding and Mobile knowingly caused the Rule to Show Cause to be filed against Plaintiffs prior to providing Plaintiffs with the 30-day notice to vacate as required by the Interim Final Rule.

153. BKA Holding and Mobile knowingly caused Plaintiffs to be served with the November 30, 2023 Eviction Notice prior to providing Plaintiffs with the 30-day notice to vacate as required by the Interim Final Rule.

154. BKA Holding and Mobile knowingly filed the January 9, 2024 Motion prior to providing Plaintiffs with the 30-day notice to vacate as required by the Interim Final Rule.

155.     BKA Holding and Mobile have knowingly and intentionally attempted to evict Plaintiffs without providing Plaintiffs with the 30-day notice to vacate as required by the Interim Final Rule.

156.     Riley knowingly filed the Eviction Complaint against Plaintiffs prior to BKA Holding and/or Mobile providing Plaintiffs with the 30-day notice to vacate as required by the Interim Final Rules.

157.     Riley knowingly filed the Eviction Order against Plaintiffs prior to BKA Holding and/or Mobile providing Plaintiffs with the 30-day notice to vacate as required by the Interim Final Rules.

158.     Riley knowingly filed the Rule to Show Cause prior to BKA Holding and/or Mobile providing Plaintiffs with the 30-day notice to vacate as required by the Interim Final Rules.

159.     Riley was aware that neither BKA Holding nor Mobile had provided Plaintiffs with the 30-day notice to vacate at the time of filing the Eviction Complaint, Eviction Order, and the Rule to Show Cause.

160.     When Riley filed the Eviction Complaint, Eviction Order, and Rule to Show Cause, he was an employee of Oncken P.C. and Oncken P.C. had the right to control his conduct.

161.     Riley's filing of the Eviction Complaint, Eviction Order, and Rule to Show Cause were in furtherance of his employment at Oncken P.C.

162.     Therefore, Oncken P.C. is vicariously liable for Riley's violation of the Interim Final Rule.

163.     Nicholas knowingly served Plaintiffs with the November 30, 2023 Eviction Notice providing Plaintiffs with less than 30 days to cure any alleged back rent or utilities owed by Plaintiffs.

21

164. Nicholas knowingly filed the January 9, 2024 Motion prior to providing Plaintiffs with the 30-day notice to vacate as required by the Interim Final Rule.

165. When Nicholas knowingly filed the January 9, 2024 Motion, he was an employee of Cronauer Law and Cronauer Law had the right to control his conduct.

166. Nicholas' serving the November 30, 2023 Eviction Notice and filing of the January 9, 2024 Motion to File an Amended Complaint were in the furtherance of his employment at Cronauer Law.

167. Therefore, Cronauer Law is vicariously liable for Nicholas' violation of the Interim Final Rule.

168. In violating the Interim Final Rule, Defendants acted with malice and deliberate indifference for Plaintiffs' rights and safety, as well as the rights and safety of Plaintiffs' disabled daughter.

169. As a direct result of the Defendants' violations of the Interim Final Rule, Plaintiffs have been damaged.

### COUNT III
### Unlawful Discrimination in Violation of the
### Illinois Human Rights Act
### (BKA Holding, LLC and Melissa Mobile)

170. Plaintiffs incorporate and reallege paragraphs 1-169 as if fully restated herein.

171. Pursuant to 775 ILCS 5/3-102(A), it is a civil rights violation for an owner or any other person to refuse to engage in a real estate transaction with a person or to discriminate in making available such a transaction because of an arrest record.

172. BKA Holding and Mobile have attempted to wrongfully evict Plaintiffs due to the criminal charges pending against Robert.

22

173. As such, BKA Holding and Mobile are wrongfully refusing to engage in a real estate transaction due to the criminal charges pending against the Robert.

174. To date, Robert has never been convicted of any criminal wrongdoings.

175. As such, BKA Holding and Mobile have unlawfully discriminated against Robert in a direct violation of the Illinois Department of Human Rights.

176. As a direct result of BKA Holding and Mobile's unlawful discrimination, Plaintiffs have been damaged.

**COUNT IV**
**Unlawful Discrimination in Violation of the**
**Fair Housing Amendment Act of 1988**
**(BKA Holding, LLC and Melissa Mobile)**

177. Plaintiffs incorporate and reallege paragraphs 1-176 as if fully restated herein.

178. Pursuant to 42 USCA § 3604(f)(2), it is illegal to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of that person's handicap.

179. Pursuant to 42 USCA § 3604(f)(3)(B), discrimination includes the refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

180. Pursuant to 42 USCA § 3617, it is illegal to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed…any right granted by [the FHA]."

181. Due to costs associated with caring for the family's medical needs, Robert requested that BKA Holding and Mobile allow Plaintiffs to pay their March 2023 after its due date.

182. BKA Holding and Mobile were aware when they first rented the Leased Premises to Plaintiffs in September 2022 that there would be times in which he would be late paying rent due to these medical costs.

183. Plaintiffs' request to make a late rental payment was reasonable due to Karen and their daughter's disabilities.

184. Furthermore, BKA Holding and Mobile should have accommodated Plaintiffs' request to make the late rental payment, without signing the Agreed Order, because making the late rental payment was necessary to ameliorate the effect of Karen and daughter's disabilities so that Plaintiffs can compete equally with the non-disabled in the housing market.

185. Therefore, because Karen and their daughter have disabilities, BKA Holding and Mobile were aware of these disabilities, and BKA Holding and Mobile failed to reasonably accommodate the late rental payment without requiring Plaintiffs to sign the Agreed Order, BKA Holding and Mobile have discriminated against Plaintiffs and their daughter.

186. BKA Holdings and Mobile further violated the Fair Housing Act by retaliating against Plaintiffs when they (among other things): (a) refused to accept the financial assistance and guaranteed rental payments in June 2023; (b) refused to accept rent checks sent in September and October 2023; and (c) issued a new Eviction Notice on November, 30, 2023.

187. BKA Holdings and Mobile's actions as described above were in retaliation for Plaintiffs' attempts to enforce their rights including filing a complaint against them in state court and with the Illinois Department of Human Rights.

188. As a direct result of BKA Holding and Mobile's unlawful discrimination and retaliation Plaintiffs have been damaged.

24

## COUNT V
### Violation of Rehabilitation Act
### (Against BKA Holding, LLC and Melissa Mobile)

189. Plaintiffs incorporate and reallege paragraphs 1- 188 as if fully stated herein.

190. Pursuant to 29 USCA § 794, "no otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

191. For the same reasons set forth in Count V, BKA Holding and Mobile have violated the Rehabilitation Act.

192. As a direct result of BKA Holding and Mobile's unlawful discrimination, Plaintiffs have been damaged.

## COUNT VI
### Violation of Landlord-Tenant Regulations
### (Against BKA Holding, LLC and Melissa Mobile)

193. Plaintiffs incorporate and reallege paragraphs 1-192 as if fully restated herein.

194. The City of DeKalb Municipal Code ("Municipal Code") 10.14(d)(1), commands that a landlord "shall maintain the premises in substantial compliance with applicable codes of the City and shall promptly make any and all repairs necessary to fulfill this obligation."

195. Pursuant to the Municipal Code 10.19, a tenant may recover actual damages for a landlord's material noncompliance with the Section 10.14(d)(1) of the Municipal Code.

196. Section 10.04 of the Municipal Code defines "Landlord" as the "owner or lessor and his/her agents of the rental unit or the building which it is a part."

197. BKA Holding is a landlord because it owns the Leased Premises.

198. Mobile is a landlord because she was authorized to act as BKA Holding's agent in managing the Leased Premises.

25

199.    Plaintiffs have repeatedly informed BKA Holding and Mobile that the Leased Premises is not suitable for living and have provided them with specific examples and concerns.

200.    Additionally, the Leased Premises has failed multiple safety inspections, including a January 2, 2024 HQS inspection and the February 15, 2024 City of Sycamore inspection.

201.    To date, neither BKA Holding nor Mobile have made the necessary repairs to make the Leased Premises habitable and fit for living.

202.    As a direct result of BKA Holding and Mobile's noncompliance with Section 10.14(d)(1) of the Municipal Code, Plaintiffs have been damaged.

## COUNT VII
### Breach of Warranty of Habitability
### (Against BKA Holding, LLC and Melissa Mobile)

203.    Plaintiffs incorporate and reallege paragraphs 1-202 as if fully restated herein.

204.    Illinois law implies in every lease agreement a warranty of habitability. All tenants of residential property have a legitimate expectation that the dwelling will be fit for habitation for the entire period of the tenancy. Where a tenant has paid in excess of the fair rental value for defective premises due to a breach of implied warranty of habitability, compensatory damages may be awarded in the excess amount.

205.    The Leased Premises is not currently, and has not been for some time, habitable and fit for living.

206.    Plaintiffs have repeatedly informed BKA Holding and Mobile that the Leased Premises is not suitable for living and has provided them with specific examples and concerns.

207.    Additionally, the Leased Premises has failed multiple safety inspections, including a January 2, 2024 HQS inspection and the February 15, 2024 City of Sycamore inspection.

208.    To date, neither BKA Holding nor Mobile have made the necessary repairs to make the Leased Premises habitable and fit for living.

209.    Because of BKA Holding and Mobile's breach of warranty of habitability, Plaintiffs have not received the fair market value of the Leased Premises and have not received the quiet enjoyment implied in the rental of the Leased Premises.

210.    As a direct result of BKA Holding and Mobile's breach of warranty of habitability, Plaintiffs have been damages.

**COUNT VIII**
**Abuse of Process**
**(Against BKA Holding, LLC and Melissa Mobile)**

211.    Plaintiffs incorporate and reallege paragraphs 1-210 as if fully restated herein.

212.    BKA Holding and Mobile directed Riley to file the Eviction Complaint, Eviction Order, and Rule to Show Cause in an effort to intimidate, harass, and/or embarrass Plaintiffs.

213.    BKA Holding and Mobile also directed Nicholas to file the January 9, 2024 Motion in furtherance of their efforts to intimidate, harass, and/or embarrass Plaintiffs.

214.    BKA Holding and Mobile had improper motives when they directed Riley and Nicholas to utilize the legal process of the Circuit Court of DeKalb County in filing the Eviction Complaint, Eviction Order, Rule to Show Cause, and January 9, 2024 Motion.

215.    BKA Holding and Mobile were aware at the time they directed Riley and Nicholas to file the Eviction Complaint, Eviction Order, Rule to Show Cause, and January 9, 2024 Motion that Plaintiffs had either provided – or attempted to provide – all rental payments owed to BKA Holding and Mobile.

216.    However, BKA Holding and Mobile still directed Riley and Nicholas to attempt to wrongfully evict Plaintiffs in an attempt to intimidate and/or embarrass Plaintiffs and also to interfere with Plaintiffs' ability to receive and/or port their Section 8 Vouchers.

217.    BKA Holding and Mobile's misuse of the Circuit Court of DeKalb County to advance their improper motives constitutes an abuse of process.

27

218. Therefore, as a direct result of BKA Holding and Mobile's abuse of process, Plaintiffs have sustained damages.

## COUNT IX
### Abuse of Process
### (Against Riley Oncken, Riley N. Oncken P.C., Nicholas Cronauer, and Cronauer Law LLP)

219. Plaintiffs incorporate and reallege paragraphs 1-218 as if fully restated herein.

220. Riley improperly filed the Eviction Complaint, Eviction Order, and Rule to Show Cause on behalf of his clients, BKA Holding and Mobile, in an effort to intimidate, harass, and/or embarrass Plaintiffs.

221. Riley was aware at the time he filed the Eviction Complaint, Eviction Order, and Rule to Show Cause that Plaintiffs had either provided – or attempted to provide – all rental payments owed to BKA Holding and Mobile.

222. However, Riley still participated in the advancement of BKA Holding and Mobile's improper motives of intimidating, embarrassing, and/or attempting to have the HACD take away Plaintiffs' enjoyment of the Section 8 Vouchers by filing the Eviction Complaint, Eviction Order, and Rule to Show Cause with the Circuit Court of DeKalb County.

223. When Riley filed the Eviction Complaint, Eviction Order, and Rule to Show Cause, he was an employee of Oncken P.C. and Oncken P.C. had the right to control his conduct.

224. Riley's filing of the Eviction Complaint, Eviction Order, and Rule to Show Cause were in the furtherance of his employment at Oncken P.C.

225. Therefore, Oncken P.C. is vicariously liable for Riley's misconduct in filing the Eviction Complaint, Eviction Order, and Rule to Show Cause.

226. Riley's misuse of the Circuit Court of DeKalb County to advance BKA Holding and Mobile's improper motives constitutes an abuse of process.

227. Nicholas improperly filed the January 9, 2024 Motion on behalf of his clients, BKA Holding and Mobile, in an effort to intimidate, harass, and/or embarrass Plaintiffs.

228. Nicholas was aware at the time he filed the January 9, 2024 Motion that Plaintiffs had either provided – or attempted to provide – all rental payments owed to BKA Holding and Mobile.

229. However, Nicholas still participated in the advancement of BKA Holding and Mobile's improper motives of intimidating, embarrassing, and/or attempting to have the HACD take away Plaintiffs' enjoyment of the Section 8 Vouchers by filing the January 9, 2024 Motion with the Circuit Court of DeKalb County.

230. When Nicholas filed the January 9, 2024 Motion he was an employee of Cronauer Law and Cronauer Law had the right to control his conduct.

231. Nicholas' filing of the January 9, 2024 Motion was in the furtherance of his employment at Cronauer Law.

232. Therefore, Cronauer Law is vicariously liable for Nicholas' misconduct in filing the January 9, 2024 Motion.

233. Nicholas' misuse of the Circuit Court of DeKalb County to advance BKA Holding and Mobile's improper motives constitutes an abuse of process.

234. As a direct result of Riley and Nicholas' abuses of process, Plaintiffs have sustained damages.

**COUNT X**
**Malicious Prosecution**
**(Against BKA Holding, LLC and Melissa Mobile)**

235. Plaintiffs incorporate and reallege paragraphs 1-234 as if fully restated herein.

236. In breach of the Agreed Order, BKA Holding and Mobile filed the Eviction Complaint, Eviction Order, and Rule to Show Cause against Plaintiffs with malicious intent.

237. On November 28, 2023, the Appellate Court terminated the Eviction Proceedings by vacating the Eviction Order due to BKA Holding improperly filing the Eviction Order before Plaintiffs failed to comply with the Agreed Order, and finding that the Agreed Order required BKA Holding to not file an eviction complaint unless and until the terms of the Agreed Order were violated. The Appellate Court further held that Plaintiffs were not properly served and the Agreed Order was not enforceable as it is not a legally valid agreement.

238. As such, BKA Holding and Mobile did not have probable cause for filing the Eviction Order.

239. BKA Holding and Mobile only initiated the Eviction Proceedings because they wanted to intimidate, harass, and/or embarrass Plaintiffs.

240. As a direct result of BKA Holding and Mobile's malicious prosecution of the eviction proceedings, Plaintiffs have sustained damages.

## COUNT XI
### Malicious Prosecution
### (Against Riley Oncken and Riley N. Oncken P.C. )

241. Plaintiffs incorporate and reallege paragraphs 1-240 as if fully restated herein.

242. In breach of the Agreed Order, Riley maliciously filed the Eviction Complaint and Eviction Order against Plaintiffs.

243. On November 28, 2023, the Appellate Court terminated the Eviction Proceedings by vacating the Eviction Order due to BKA Holding and Mobile, Riley's clients, improperly filing the Eviction Order before Plaintiffs failed to comply with the Agreed Order.

244. As such, Riley did not have probable cause for filing the Eviction Order.

245. Riley only filed the Eviction Order so that his clients, BKA Holding and Mobile, could intimidate and/or embarrass Plaintiffs.

30

246. When Riley filed the Eviction Order, he was an employee of Oncken P.C. and Oncken P.C. had the right to control his conduct.

247. The filing of the Eviction Order was in furtherance of Riley's employment at Oncken P.C.

248. Therefore, Oncken P.C. is vicariously liable for Riley's malicious prosecution.

249. As a direct result of Riley's malicious prosecution, Plaintiffs have sustained damages.

## COUNT XII
### Civil Conspiracy
### (Against All Defendants)

250. Plaintiffs incorporate and reallege paragraphs 1-249 as if fully restated herein.

251. The Defendants knowingly and voluntarily participated in a common scheme to wrongfully evict Plaintiffs without providing the requisite 30-day notice required by the CARES Act.

252. The Defendants knowingly and voluntarily participated in a common scheme to wrongfully evict Plaintiffs without providing the requisite 30-day notice required by the Interim Final Rule.

253. BKA Holding, Mobile, and Riley knowingly and voluntarily participated in a common scheme to wrongfully evict Plaintiffs due to the criminal charges pending against him in violation with the Illinois Department of Human Rights.

254. Furthermore, upon information and belief, BKA Holding, Mobile, Riley, and Nicholas knowingly and voluntarily participated in a common scheme to provide false information to the HACD in an attempt to persuade the HACD to terminate Plaintiffs' Section 8 Vouchers and to dissuade the HACD from porting Plaintiffs' Section 8 Vouchers to a different county.

31

255. Riley, on behalf of BKA Holding and Mobile, filed the Eviction Complaint, Eviction Order, and Rule to Show Cause to further the Defendants' conspiracies.

256. Nicholas, on behalf of BKA Holding and Mobile, served Plaintiffs with the November 30, 2023 Eviction Notice and filed the January 9, 2024 Motion.

257. The filing of the Eviction Complaint, Eviction Order, Rule to Show Cause, and January 9, 2024 Motion misrepresented to the HACD that Plaintiffs are not paying their portion of rent to BKA Holding and Mobile.

258. When Riley knowingly and voluntarily participated in the common schemes to wrongfully evict Plaintiffs and to provide false information to the HACD, he was an employee of Oncken P.C. and Oncken P.C. had the right to control his conduct.

259. Additionally, when Riley knowingly and voluntarily participated in the common schemes to wrongfully evict Plaintiffs and to provide false information to the HACD it was in furtherance of his employment at Oncken P.C.

260. Therefore, Oncken P.C. is vicariously liable for Riley's part in the civil conspiracy.

261. When Nicholas knowingly and voluntarily participated in the common schemes to wrongfully evict Plaintiffs, he was an employee of Cronauer Law and Cronauer Law had the right to control his conduct.

262. Additionally, when Nicholas knowingly and voluntarily participated in the common scheme to wrongfully evict Plaintiffs, it was in further of his employment at Cronauer Law.

263. Therefore, Cronauer Law is vicariously liable for Nicholas' part in the civil conspiracy.

264. In participating in the common schemes to wrongfully evict Plaintiffs, Defendants acted with malice and deliberate indifference for Plaintiffs' rights and safety, as well as the rights and safety of Plaintiffs' disabled daughter.

265. As a direct result of the Defendants' actions, Plaintiffs have sustained an injury.

**COUNT XIII**
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

266. Plaintiffs incorporate and reallege paragraphs 1-265 as if fully restated herein.

267. Riley's defamatory comment on Karen's GoFundMe page was extreme and outrageous conduct.

268. Riley knew, or should have known, when he posted the comment that there was a high probability that his conduct would cause Plaintiffs to suffer severe emotional distress.

269. As a result of the comment, Plaintiffs did suffer severe emotional distress.

270. BKA Holding, Mobile, and Riley's complete disregard of the terms of the Agreed Order was extreme and outrageous conduct.

271. BKA Holding, Mobile, and Riley knew, or should have known, that when they disregarded the terms of the Agreed Order that there was a high probability that their conduct would cause Plaintiffs to suffer severe emotional distress.

272. As a result of BKA Holding, Mobile, and Riley disregarding the Agreed Order, Plaintiffs suffered severe emotional distress.

273. The Defendants' attempts to evict Plaintiffs without providing the 30-day notice to vacate as required by the CARES Act and Interim Final Rule was extreme and outrageous conduct.

274. The Defendants knew, or should have known, that by failing to provide Plaintiffs with the 30-day notice there was a high probability that their conduct would cause Plaintiffs to suffer severe emotional distress.

33

275. As a result of Defendants' attempts to evict Plaintiffs, they have suffered severe emotional distress.

276. When Riley disregarded the Agreed Order and filed the Eviction Complaint, Eviction Order, and Rule to Show Cause, he was an employee of Oncken P.C. and Oncken P.C. had the right to control his conduct.

277. Furthermore, Riley's disregard of the Agreed Order and filing of the Eviction Order was in furtherance of his employment at Oncken P.C.

278. Therefore, Oncken P.C. is vicariously liable for Riley's tortious behavior.

279. When Nicholas served Plaintiffs with the November 30, 2023 Eviction Notice in violation of the CARES Act and Interim Final Rule, and filed the January 9, 2024 Motion he was an employee of Cronauer Law and Cronauer Law had the right to control his conduct.

280. Furthermore, Nicholas' service of the November 30, 2023 Eviction Notice and filing of the January 9, 2024 Motion was in furtherance of his employment at Cronauer Law.

281. Therefore, Cronauer Law is vicariously liable for Nicholas' tortious behavior.

282. Therefore, Plaintiffs have been injured as a direct result of Riley's intentional infliction of emotional distress.

## COUNT XIV
### Defamation
### (Against Riley Oncken)

283. Plaintiffs incorporate and reallege paragraphs 1-282 as if fully restated herein.

284. Riley's comment on Karen's GoFundMe page includes a patently false and defamatory statement.

285. Riley publically posted such comment for anyone and everyone on the internet to see.

34

286. Due to Riley's false and public defamatory statement, Robert's reputation has been irreparably harmed in his community and with members of the faculty at his daughter's school.

287. As a result of Riley's defamatory statement, Plaintiffs have sustained damages.

## COUNT XV
## Misrepresentation
### (Against BKA Holding, LLC, Melissa Mobile, Riley Oncken, and Riley N. Oncken P.C.)

288. Plaintiffs incorporates and realleges paragraphs 1-287 as if fully restated herein.

289. Knowing that Robert was acting pro se, BKA Holding, Mobile, and Riley intentionally provided false statements of material fact regarding the terms of the Agreed Order to Robert.

290. At the time the parties were negotiating the Agreed Order, BKA Holding, Mobile, and Riley intentionally lulled Robert into believing that BKA Holding and Mobile would not seek an eviction if Plaintiffs complied with the terms of the Agreed Order.

291. However, BKA Holding, Mobile, and Riley knew that such statements were false and that by making such representations to the Plaintiffs that it would induce him into entering the Agreed Order.

292. As a result of the BKA Holding, Mobile, and Riley's misrepresentations, Plaintiffs executed the Agreed Order and believed that they had until March 25, 2023 to cure any late rental payments.

293. Riley was an employee at Oncken P.C. when participating in misrepresenting the terms of the Agreed Order and Oncken P.C. had control over Riley's actions.

294. Additionally, Riley participated in misrepresenting the terms of the Agreed Order in furtherance of his employment at Oncken P.C.

295. Therefore, Oncken P.C. is vicariously liable for Riley's misrepresentations to Plaintiffs.

296. Plaintiffs have sustained damages resulting from BKA Holding, Mobile, and Riley's intentional misrepresentations.

## COUNT XVI
### Violation of Section 1983 of the Civil Rights Act
### (Against Riley Oncken and Riley N. Oncken P.C.)

297. Plaintiffs incorporate and reallege paragraphs 1-296 as if fully restated herein.

298. The CARES Act and the Interim Final Rule are clear that a tenant may not be evicted prior to receiving a 30-day advance notice to vacate from their landlord.

299. In breach of the Agreed Order, and in violation of the CARES Act and Interim Final Rule, Riley filed the Eviction Order with the Circuit Court of DeKalb County.

300. Committing a clear legal error, and with malicious intent, the Circuit Court of DeKalb County entered the Eviction Order.

301. By entering the Eviction Order, Riley and the Circuit Court of DeKalb County worked in concert to deprive Plaintiffs of the federal right to cure any outstanding amounts owed to BKA Holding.

302. When Riley filed the Eviction Order he was an employee of Oncken P.C. and Oncken P.C. had the right to control his conduct.

303. Riley's filing of the Eviction Order was in furtherance of his employment at Oncken P.C.

304. Therefore, Oncken P.C. is vicariously liable for Riley's misconduct in working with the Circuit Court of DeKalb to deprive Plaintiffs of a federal right.

305. As a direct result of Riley's misconduct in working with the Circuit Court of DeKalb to deprive Plaintiffs of a federal right, Plaintiffs have sustained damages.

36

## COUNT XVII
## Breach of Contract
## (Against BKA Holding, LLC and Melissa Mobile)

306. Plaintiffs incorporate and reallege paragraphs 1-305 as if fully restated herein.

307. All Illinois leases require landlords to comply with local, state, and federal laws applicable to the landlord-tenant relationship.

308. The 2022 Lease is a valid and enforceable contract.

309. At all times relevant, Plaintiffs have performed under the August 2022 Lease and have either provided – or attempted to provide – BKA Holding and Mobile with all sums owed under the contract.

310. BKA Holding and Mobile have repeatedly breached the August 2022 Lease by:

   a. Failing to provide Plaintiffs with the 30-day notice to vacate prior to filing the Eviction Complaint, Eviction Order, Rule to Show Cause, and the January 4, 2019 Motion in violation of the CARES Act;

   b. Failing to provide Plaintiffs with the 30-day notice to vacate prior to filing the Eviction Complaint, Eviction Order, Rule to Show Cause, and the January 4, 2019 Motion in violation of the Interim Final Rule;

   c. Unlawfully discriminating against Robert due to his arrest record in violation of the Illinois Department of Human Rights;

   d. Failing to provide Plaintiffs and their daughter with reasonable accommodations in violation of the Fair Housing Act; and

   e. Failing to keep the Leased Premises fit for habitability, in violation of the City of DeKalb Municipal Code and the implied warranty of habitability implied in every lease and the specific language in the 2022 Lease.

311. As a direct result of BKA Holding and Mobile's breach of contract, Plaintiffs have sustained damages.

37

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor with the following relief:

    a.  A declaration that the Defendants violated the CARES Act;

    b.  A declaration that the Defendants violated the Interim Final Rule;

    c.  An award of damages in an amount to be determined at trial against BKA Holding, LLC and Melissa Mobile for violating the Illinois Department of Human Rights plus costs and fees;

    d.  An award of damages in an amount to be determined at trial against BKA Holding, LLC and Melissa Mobile for violating the Fair Housing Amendment Act plus costs and fees;

    e.  An award of damages in an amount to be determined at trial against BKA Holding, LLC and Melissa Mobile for violating the Rehabilitation Act plus costs and fees;

    f.  An award of damages in an amount to be determined at trial against BKA Holding, LLC and Melissa Mobile for violating the City of DeKalb Municipal Code plus costs and fees;

    g.  An award of damages in an amount to be determined at trial against BKA Holding, LLC and Melissa Mobile for breaching the warranty of habitability plus costs and fees;

    h.  An award of damages in an amount to be determined at trial against BKA Holding, LLC and Melissa Mobile for abuse of process plus costs and fees;

    i.  An award of damages in an amount to be determined at trial against Riley Oncken, Riley N. Oncken P.C., Nicholas Cronauer, and Cronauer Law LLP for abuse of process plus costs and fees;

38

j.    An award of damages in an amount to be determined at trial against BKA Holding, LLC and Melissa Mobile for malicious prosecution plus costs and fees;

k.    An award of damages in an amount to be determined at trial against Riley Oncken and Riley N. Oncken, P.C. for malicious prosecution plus costs and fees;

l.    An award of damages in an amount to be determined at trial against the Defendants for civil conspiracy plus costs and fees;

m.    An award of damages in an amount to be determined at trial against the Defendants for intentional infliction of emotional distress plus costs and fees;

n.    An award of damages in an amount to be determined at trial against Riley Oncken for defamation plus costs and fees;

o.    An award of damages in an amount to be determined at trial against BKA Holding, LLC, Melissa Mobile, Riley Oncken, and Riley N. Oncken P.C. for misrepresentation plus costs and fees;

p.    An award of damages in an amount to be determined at trial against Riley Oncken and Riley N. Oncken P.C. for violating of Section 1983 of the Civil Rights Act plus costs and fees;

q.    An award of damages in an amount to be determined at trial against BKA Holdings, LLC and Melissa Mobile for breach of contract, plus costs and fees; and

r.    Any further relief as this Court deems just and proper under the circumstances.

39

**Dated:** March 5, 2024                     Respectfully submitted,

                                             /s/ Bradley S. Lohsl
                                             Margaret A. Gisch (6204431)
                                             Bradley S. Lohsl (6332989)
                                             GOLAN CHRISTIE TAGLIA LLP
                                             70 W. Madison Street, Suite 1500
                                             Chicago, IL 60602
                                             312-696-2040
                                             magisch@gct.law
                                             bslohsl@gct.law


                                             *Attorneys for Plaintiffs,*
                                             *Robert and Karen Sam*