# EXHIBIT G

IN THE CIRCUIT COURT OF THE TWENTY-THIRD JUDICIAL DISTRICT
DEKALB COUNTY, ILLINOIS

**FILED**
4/7/2023 10:47 AM
2023EV000102

*Lori Grubbs*

Lori Grubbs
Clerk of the Circuit Court
DeKalb County, Illinois

BKA Holding, LLC,
an Illinois Limited Liability Company,
 *Plaintiff*

vs.

Robert Sam & Karen Sam,
 *Defendants*.

2023 EV 000102

## MOTION TO VACATE EVICTION ORDER AND VOID AGREED ORDER

Now comes ROBERT SAM, by and through his attorneys, Aaron Hanford and Prairie State Legal Services and, pursuant to 735 ILCS 5/2-1301(e), moves this Court to Vacate its Eviction Order and strike the supporting Agreed Order entered on March 10, 2023, and in support thereof, states as follows:

1. On March 8, 2023, Plaintiff filed its Complaint for Forcible Entry and Detainer, seeking to evict Defendant Robert Sam (Mr. Sam).

2. The Complaint stated "Plaintiff has signed an Agreed Order whereby Defendants have: (a) Waived the requirements of being served a 5-day or 30-day notice; (b) Submitted to the jurisdiction of this Court and waived formal Service of the Complaint and Summons…" *See Plaintiff's Complaint, ¶. 9.*

3. On March 10, this Court entered an Eviction Order which grants possession of the disputed home to Plaintiff, staying enforcement of the Judgment until June 1. It refers to the signed Agreed Order referred to in Plaintiff's Complaint. *See Eviction Order, p. 1.*

Page 1 of 9

4. Also on March 10, this Court entered an Agreed Order which recited that an eviction order would be entered only if Mr. Sam had not met its terms, which included a payment schedule and a move-out date, on June 1.

5. Although the Agreed Order recites a Status Compliance date of June 6, 2023, the form Eviction Order is enforceable after 11:59 pm on June 1, 2023. *Eviction Order, ¶¶ 4-5.* It recites also that "the Court finds no just reason to delay enforcement or appeal" of the possession order. *Eviction Order, ¶ 6.*

6. Mr. Sam avers in his Affidavit, attached to this Motion, that at the time of filing, he had never seen Plaintiff's Complaint or the Eviction Order, and he was not aware that the Eviction Order existed. *See Affidavit of Robert Sam, hereinafter "R.S. Aff.." ¶¶ 15, 18.*

7. Mr. Sam never came before this Court to confirm his understanding of, or his agreement with, this Order. *R.S. Aff. ¶ 19.*

8. He did not meet with counsel and he was not advised of his rights. *R.S. Aff. ¶ 16.*

9. A review of the Magnus MultiCourt system appears to show that this case was never on this Court's docket and was never addressed in open court.

10. 735 ILCS 5/2-1301(e) permits this Court to vacate orders within 30 days of their entry upon just and reasonable terms. In order to grant a motion to vacate, the courts have required the movant to show that "substantial justice was not achieved." *Draper & Kramer, Inc., v. King,* 2014 Ill. App. 132073 at *¶ 25.* "It is well recognized that motions to vacate under section 2–1301 are routinely granted in order to achieve substantial justice." *Id.*

11. The Draper court found that "substantial justice" does not have specific elements which must be met: "[w]hat is just and proper must be determined by the facts of each case, not

a hard and fast rule applicable to all situations." *Id.* at ¶ 23 (quoting *Mann v. The Upjohn Co.,* 324 Ill.App.3d 367, 377 (1st Dist. 2001)). The court stated that there is no precise definition of substantial justice, but courts should consider: 1) the movant's diligence; 2) the existence of a meritorious defense; 3) the severity of the penalty resulting from the judgment; and 4) the relative hardships on the parties if the motion to vacate is granted. *Id. See also Jackson v. Bailey,* 384 Ill.App.3d 546, 549(1st Dist. 2008), *Mann,* 324 Ill.App.3d at 377.

12. In Draper, the defendant in an eviction case signed an agreed order which resulted in her eviction. She did so in open court, verbally indicating her consent to its terms before signing it. Nonetheless, the appellate court found that where the defendant had not fully understood the implications of her agreement because she lacked counsel, and she had a meritorious defense and would suffer the balance of the hardships, the agreement should be rescinded and the eviction order vacated. *Draper & Kramer, Inc., v. King* 2014 Ill. App. 132073.

13. In addition to the factors recited above, the Draper court also focused significant attention on defendant's lack of awareness that she was being evicted and found it vital that the apparent agreement had not resulted from a "meeting of the minds" as is required for agreed orders and other contracts to form. *See Draper* at ¶¶ *27-31.*

14. Here, as in Draper, Mr. Sam was not aware that an eviction order would be entered on March 10 until he received it by email from Plaintiff's counsel after the fact. Unlike in Draper, he had not even signed an agreement stating that an eviction would enter that quickly. He understood that an order of possession would only enter if he failed to meet the terms of the agreement by June 1. Plaintiff preempted the agreement and violated its

terms immediately by entering the Eviction Order based on this Agreed Order on March 10.

15. Not only did Plaintiff violate the Agreed Order, it has behaved as though the Agreed Order and the Eviction Order were inextricably linked. Page 1 of the Eviction Order refers to the Agreed Order for proof of signature, but Defendant never saw the Eviction Order before it was entered. Plaintiff's Complaint alleges that Mr. Sam agreed to an eviction order enforceable on June 1, 2023. *See Complaint, p. 2.* But the Agreed Order stated only that such an eviction would enter "if Defendants have not vacated the premises" by that date. *See Agreed Order, ¶ 8.*

16. For the following reasons, the Eviction Order should be vacated.

17. Each of the factors considered by the Draper court weighs in favor of granting Mr. Sam's Motion to Vacate:

18. **The movant's diligence:** Mr. Sam contacted Prairie State Legal Services to seek the advice of counsel on March 22; less than two weeks had passed since March 10, when the Eviction Order was entered. March 10 was also the first time Mr. Sam saw the Order and Complaint. *R.S. Aff. ¶ 17.*

19. Section 2-1301 permits 30 days to file any motions to vacate. Thirty days from March 10 is April 9, which is a Sunday. Illinois law further provides that deadlines which fall on Sundays are automatically extended to the next non-holiday. 5 ILCS 70/1.11. This Motion is therefore timely filed if filed by April 10, 2023.

20. Mr. Sam executed diligence in seeking an attorney and in the filing of this motion, so this factor weighs in his favor.

21. **The existence of a meritorious defense:** Mr. Sam has averred that he had not seen the Complaint of Eviction Order to which his agreement became attached, until after both were filed and the Order was entered by this Court. He was not represented by counsel, and he was not asked at any point to confirm his understanding of the agreement before the Court. Enforcement of this Order and the agreement on which it is based would deprive Mr. Sam of property, namely his home, without the requirements of due process: notice and an opportunity to be heard. *See Matthews v. Eldridge,* 424 U.S. 319 (1976).

22. The Draper court explained that Section 1301(e) does not require the movant to prove their defense. *Draper* at ¶ 35. Here, Mr. Sam has averred that he never received a Notice to Quit. *R.S. Aff. at ¶ 16.* Illinois law requires that notice not only be given, but that it "prominently state" specific language providing tenants an opportunity to cure default and thereby avoid any eviction action. 735 ILCS 5/9-209. In asking Mr. Sam to waive this notice, Plaintiff denied him this opportunity to cure alleged defaults.

23. Section 5/9-209 of the Code of Civil Procedure requires 5 days to cure any rent defaults. However, the CARES Act extended this to 30-days for subsidized housing recipients such as Mr. Sam. *See* CARES Act, P.L. 16-36 §4024(c). Plaintiff appears to acknowledge this in Line 1 of the Agreed Order it drafted, and again in Paragraph 9 of its Complaint.

24. Where Mr. Sam should have been entitled to 30 days to cure any shortfall, this waiver, made without counsel, stripped him of that opportunity and resulted instead in an eviction order being entered immediately.

25. If this Court vacates the Eviction Order and the agreement upon which it is based, Mr. Sam's defense to the Complaint will be that it cannot stand without the required notice and should be dismissed.

26. The existence of this defense mitigates in favor of granting this Motion.

27. **The severity of the penalty resulting from the judgment:** Mr. Sam has averred that his wife and daughter are severely disabled. If this judgment is allowed to stand, they will be evicted and his wife will be at imminent risk of death.

28. Mr. Sam also receives a Housing Choice Voucher (HCV), a federal housing subsidy funded by the Department of Housing and Urban Development (HUD). *See R.S. Aff., Ex. 1.* His HCV is administered by the Housing Authority of the County of Dekalb.

29. Mr. Sam has a property interest in the Housing Choice Voucher which pays the majority of his rent which, unless the voucher-holder violates certain rules, can be retained for as long as he meets the income requirements; it can also be inherited by family members. 24 CFR 982.552; 24 CFR 5.403; *see also* Housing Authority of the County of Dekalb Administrative Plan (Administrative Plan), Part 3-I (Definition of Family) and 12-I (Terminations), *available at https://www.dekalbhousing.org/about-us/hcv-program-administrative-plan.php.*

30. If Mr. Sam is evicted, not only will his family lose their home, but they will be at serious risk of having their voucher stripped, because eviction is a basis for termination from the program. *See* Administrative Plan, Part 12-I.D.

31. This loss, not only of his home, but of a permanent property right which could otherwise serve to support his disabled daughter throughout her life, is a very high penalty to pay. This factor must weigh in favor of granting Mr. Sam's request.

32. **The relative hardships of the parties:** As noted on the form Eviction Order which Mr. Sam moves to be vacated, such orders are "a judgment against you [which] may appear on your background or credit check and affect your ability to rent housing." In crafting and promulgating this form order, the Illinois Supreme Court has acknowledged the hardships that tenants face when evicted.

33. If these Orders are allowed to stand, the hardship to Plaintiff will be far less severe than that. Even if Mr. Sam has not paid his rent, through April, 2023, Plaintiff has received 87% of it from the HACD, or $1696 of the $1950. *See R.S. Aff., Ex. 1.* Beginning on May 1, they will receive 93% of the rent from HACD, or $1805 of the $1950. *See R.S. Aff. Ex. 1.*

34. If the Order is not vacated, Mr. Sam and his family will face a significant and severe property loss and will suffer the hardship of being homeless with severe disabilities.

35. Furthermore, Plaintiff holds a security deposit of $1700, more than the total amount sought by Plaintiff in the Agreed Order. It can keep any unpaid rent out of this deposit without significant harm.

36. For all of these reasons, the balance of the hardships weighs heavily in favor of granting Mr. Sam's Motion to Vacate.

37. **There was no meeting of the minds in this matter:** Defendant averred that Plaintiff's counsel had told him he would be filing an eviction case and then dismissing it. *R.S. Aff. ¶ 15.* No mention was made of an eviction order being entered *instanter.* Plaintiff invited Mr. Sam to enter into the agreement on the belief that he would have the opportunity to meet the terms of the agreement before an eviction was ordered.

38. The Draper court explained that an Agreed Order requires a "meeting of the minds" because it is a contract, governed by contract law principles. *Draper* at ¶27. Agreed orders are effectively the parties' private contractual agreement, so they are "generally binding on the parties and cannot be amended or varied without the consent of each

party." *Id.* at ¶28 (quoting *In re Marriage of Rolseth,* 389 Ill.App.3d 969, 971 (2nd Dist. 2009).

39. In Draper, the defendant entered into an agreement which she understood to be a "pay-and-stay," where she would pay the rent owed and not be evicted. The agreed order actually granted possession to the landlord and an eviction to the defendant. The Draper court held this difference was "a material feature of the parties' agreed order" which supported her motion to vacate.

40. In the case at bar, as in Draper, Mr. Sam was not aware that an Eviction Order would be entered. As a result, the parties did not reach the "meeting of the minds" necessary to form a contract. For this reason, the Agreed Order of March 10 should be voided, and the Eviction Order of March 10, which is based up on the Agreed Order, should be vacated.

41. Each factor which the Draper court considered in deciding whether to grant that movant's Motion to Vacate also weighs in favor of granting Mr. Sam's motion: he has been diligent in seeking relief, he has a meritorious defense to the underlying case, he and his family would be severely punished if this Order were not vacated, and the balance of the harms weighs heavily in his favor. Furthermore, the Agreed Order should be voided because there was no "meeting of the minds" sufficient to enforce a contractual agreement.

WHEREFORE, Plaintiff asks this Court to vacate its Eviction Order of March 10, 2023, and void the Agreed Order upon which it relies.

Respectfully Submitted,

Page 8 of 9

Aaron J. Hanford, Attorney for Robert Sam

Aaron Hanford – 6329778
PRAIRIE STATE LEGAL SERVICES
Amber Moore, Managing Attorney
31W001 E. North Ave. Suite 200
West Chicago, IL 60185
(630) 690-2130
westsuburban@pslegal.org