# EXHIBIT J

2023 IL App (2d) 230163
No. 2-23-0163
Opinion filed November 28, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BKA HOLDING, LLC, | ) | Appeal from the Circuit Court |
| | ) | of De Kalb County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-EV-102 |
| | ) | |
| ROBERT SAM and KAREN SAM, | ) | Honorable |
| | ) | Stephanie P. Klein, |
| Defendants-Appellants. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hutchinson and Kennedy concurred in the judgment and opinion.

## OPINION

¶ 1    In February 2023, the defendants, Robert and Karen Sam, entered into an agreed order with

the attorney of their landlord, the plaintiff, BKA Holding, LLC (BKA), regarding the terms on

which they would vacate their home at the end of May 2023. Because the Sam family rented

pursuant to a rental assistance voucher, and an eviction judgment could harm their ability to

maintain that assistance, Robert negotiated what he believed to be terms that would allow them to

vacate their home without such a judgment being entered. However, when BKA appeared in court

in March 2023, it asked the trial court to enter both the agreement (as an agreed order) and a

judgment of possession. Thereafter, the Sams moved to vacate the judgment and rescind the

underlying agreed order, asserting that there had been no meeting of the minds. The trial court

2023 IL App (2d) 230163

refused to vacate the judgment, and the Sams appealed. We vacate the judgment of possession and the agreed order and remand.

¶ 2                                I. BACKGROUND

¶ 3     The Sam family includes Robert, Karen, who has multiple sclerosis and common variable immune deficiency, making her particularly vulnerable to infections, and their 13-year-old daughter, who is disabled and receives supplemental security income to assist with her medical care. Karen's condition requires home-based administration of medication that must be kept refrigerated. In August 2022, the Sams signed a residential lease with BKA to rent the premises at 639 Stonegate Drive in Sycamore. The rent was $1950 per month. The Housing Authority of De Kalb County paid most of that amount pursuant to the rental assistance voucher. The Sams' share of the monthly rent was $255 through April 2023; beginning May 1, 2023, their share decreased to $145. BKA also held a security deposit of $1700 on behalf of the Sams.

¶ 4     In February 2023, Robert contacted BKA to tell them that he was struggling financially. BKA contacted its lawyer to say that Robert was behind in paying his portion of the rent. The attorney communicated with Robert and negotiated an agreement allowing the Sams to stay in their home through the end of May, when the Sams' daughter would finish school for the year. The Sams agreed to pay a certain amount of back rent and make regular monthly payments of their rent portion through the end of May. The agreement reached by the parties stated:

>      "1. Defendants waive the requirements of being served with a 5-day or 30-day notice.

>      2. Defendants submit to the jurisdiction of this Court and waive formal service of the Complaint and Summons.

>      3. Defendants shall pay the sum of $914.00 to Plaintiff by March 25, 2023.

2023 IL App (2d) 230163

4. Defendants shall pay the sum of $255.00 to Plaintiff by April 25, 2023.

5. Defendants shall pay the sum of $255.00 to Plaintiff by May 25, 2023.

6. Defendants shall pay any water bills incurred through May 31, 2023.

7. *The lease term shall terminate on May 31, 2023*, by which time Defendants shall vacate the premises.

8. An order for Possession shall enter, enforceable on June 1, 2023, *if Defendants have not vacated the premises.*

9. This court shall retain jurisdiction of the case to enforce the terms of this order. This Court shall retain jurisdiction to adjudicate any damages claimed by Plaintiff from Defendants following Defendants vacating the premises.

10. Provided Defendants make payments as agreed, vacate the premises as agreed, and do not cause any damage to the premises, *Plaintiff shall dismiss this case with prejudice* and refund the security deposit within 30 days. Plaintiff may deduct the cost [*sic*] necessary repairs or cleaning, if any, from the security deposit, as provided in the lease.

11. This matter is continued to June 6, 2023, at 9:00 a.m. for status of compliance with this Order." (Emphases added.)

The agreement was signed by Robert, Karen, and BKA's attorney.

¶ 5     On March 8, 2023, BKA filed an eviction complaint against the Sams, seeking possession and past due rent. The complaint noted that the parties had entered into the agreement set forth above. The complaint concluded by asking that, *if the Sams "fail[ed] to comply with the terms"* of the agreement, the court should enter judgment in favor of the Plaintiff in the amount of $1,169.00 plus various costs and fees, "*grant Plaintiff possession of the property,*" and grant any other relief the court deemed equitable and proper. (Emphases added.)

- 3 -

2023 IL App (2d) 230163

¶ 6     On March 10, 2023, BKA filed the agreement with the trial court, to be entered as an agreed order. Without the Sams' knowledge, BKA also filed a form titled "Eviction Order," which it had filled out with information about the case. The form order contained a "notice to defendants" that read:

> "This *Order* is a judgment against you. It may appear on a background or credit check and affect your ability to rent housing. There are other orders you may use to resolve your case by agreement. Do not agree to this *Order* if:
>
> You have an agreement with Plaintiff that lets you stay in the property (Use *Agreed Settlement Order with Status Date (Defendants Will Pay & Stay)* or *Agreed Dismissal Order (Case May Be Reinstated if Defendants Violate Agreement)*;
>
> OR
>
> Plaintiff has agreed to dismiss this case if you move out by a certain date (Use *Agreed Settlement Order with Status Date (Defendants Will Move)*." (Emphases in original.)

The eviction judgment stated that BKA was given possession of the premises and provided that the Sams must vacate the premises by June 1, 2023. The order also set a status date of June 6, on which the court would rule on the claim for money damages. The form judgment contained a finding that there was "no just reason to delay enforcement or appeal" of the judgment.

¶ 7     On March 10, 2023, the same day they were filed, the trial court entered both the agreed order and the eviction judgment. BKA's attorney emailed the orders to Robert, along with a copy of the complaint.

¶ 8     On March 22, 2023, Robert contacted a legal services provider for advice about the eviction order. The legal services provider agreed to represent him and, on April 7, 2023, it filed a motion

2023 IL App (2d) 230163

to vacate the eviction order and void the agreed order pursuant to section 2-1301(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301(e) (West 2020)).

¶ 9    The motion to vacate attached an affidavit of Robert in which he averred the following. He had never seen the complaint or the eviction judgment and had not been aware that the eviction judgment existed. He had no legal representation in connection with the agreement he reached with BKA. He understood and intended that the agreement would allow him to avoid the entry of an eviction judgment. BKA's attorney told him that BKA would file an eviction case and would dismiss it if he complied with the terms of the agreement. The attorney never told Robert that BKA would seek an immediate order of possession. Before March 10, 2023, Robert did not receive any notice to quit, a copy of the complaint, or a summons.

¶ 10    The motion stated that vacating a judgment requires the movant to show that substantial justice was not achieved, and this standard involves the consideration of four factors: the movant's diligence, the existence of a meritorious defense, the severity of the penalty resulting from the judgment, and the relative hardship on the parties if the judgment were vacated. The motion argued that all of these factors were met. The Sams were diligent: they obtained legal help only 12 days after receiving the complaint and eviction judgment, and the motion to vacate was filed within 30 days of the judgment. They had a meritorious defense, which was that they had not agreed to the entry of an eviction judgment and thus the agreement that formed the basis for the entry of the agreed order did not involve a meeting of the minds. The Sams would experience a severe penalty and great hardship if the judgment were not vacated, as it could affect their retention of their rental assistance voucher—a federal benefit that was tangible and potentially inheritable. Due to their low income, the loss of their rental assistance would likely result in their becoming homeless, and would also seriously endanger the health of Karen and their daughter, who would have great

2023 IL App (2d) 230163

difficulty maintaining their medication. Finally, the hardship to BKA was not great, as it held a security deposit that was more than the total amount of rent payable under the agreement, and it had already agreed to allow the Sams to stay in the premises until May 31, 2023. The motion also urged that the Sams be given some leeway as they were not represented when they entered into the agreement.

¶ 11    The motion was heard on April 18, 2023. The Sams' attorney presented all of the above arguments. In response, BKA argued that Robert knew what he was doing when he entered into the agreement as he was "no rookie" to court proceedings: BKA had brought a prior eviction action against him in 2019. BKA also asserted that the Sams had not yet paid anything toward the amount due on March 25 and argued that entering a judgment of possession before the move-out date of May 31 was necessary to ensure that they would actually vacate. If the Sams complied with the terms of the agreement, BKA would vacate the eviction judgment on the June status date. In rebuttal, the Sams' attorney noted that, under the agreement, no eviction order was to be entered unless the Sams had not moved out by the agreed date.

¶ 12    The trial court denied the motion. It defended its entry of the eviction order as well as the agreement, saying that agreed orders were often submitted to it without a hearing for the parties' convenience and at their request, and there was nothing improper about that. It stated that, in its reading of the agreement, paragraph 8 permitted the entry of an eviction judgment before the move-out date, requiring only that enforcement be stayed until then. Thus, it believed, the two orders entered on March 10 were consistent. The more significant issue was whether there was a meeting of the minds. As to that, the trial court noted that the Sams' attorney argued that Robert was representing himself during the negotiation of the agreement, but that was a poor argument. The trial court said that if it were to find in the Sams' favor, it "would necessarily be saying that simply

- 6 -

2023 IL App (2d) 230163

because someone is self-represented, any agreement they enter into can be vacated at any time," which was not the law. The trial court then denied the motion.

¶ 13    This timely appeal followed. We note that, on appeal, Robert is once again *pro se.* Robert asked us to stay the eviction judgment, and we did so upon the condition that he pay his share of the regular monthly rent during the pendency of the appeal.

¶ 14                                    II. ANALYSIS

¶ 15    Section 2-1301(e) provides that a court may "set aside any final order or judgment upon any terms and conditions that shall be reasonable" when a motion to do so is filed within 30 days of the order or judgment. *Id.* In addressing such a request, " '[the overriding consideration is simply whether or not substantial justice is being done between the litigants.' " *Draper & Kramer, Inc. v. King*, 2014 IL App (1st) 132073, ¶ 23 (quoting *In re Haley D.*, 2011 IL 110886, ¶ 57).

> " 'Whether substantial justice is being achieved by vacating a judgment or order is not subject to precise definition, but relevant considerations include diligence or the lack thereof, the existence of a meritorious defense, the severity of the penalty resulting from the order or judgment, and the relative hardships on the parties from granting or denying vacatur.' " *Id.* (quoting *Jackson v. Bailey*, 384 Ill. App. 3d 546, 549 (2008).

A trial court's decision on whether to grant a motion under section 2-1301(e) is discretionary; thus, we review that decision for an abuse of discretion. *Id.* ¶ 26 (citing *Haley D.*, 2011 IL 110886, ¶ 69.) A trial court abuses its discretion if its ruling is arbitrary, fanciful, or unreasonable or no reasonable person would take the view adopted by the trial court, or when its ruling rests on an error of law. *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 11.

¶ 16    "[A]greed orders are effectively the parties' private contractual agreement," entered by a court. *Draper & Kramer*, 2014 IL App (1st) 132073, ¶ 28. Accordingly, the principles of contract

2023 IL App (2d) 230163

law apply when considering their meaning and scope. *Id.* ¶ 27. "The primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). The language of a contract, given its plain and ordinary meaning, is the best indication of the parties' intent. *Id.* at 233. "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Id.* When construing contracts, courts attempt to give effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. See *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362 (2006). The construction of a contract is an issue of law, which we review *de novo*. *Gallagher*, 226 Ill. 2d at 219.

¶ 17    BKA argued, and the trial court agreed, that the agreement's wording supported the entry of the eviction judgment. The agreement's plain language makes it clear that this is untrue. First, paragraph 7 explicitly states that the Sams' right of possession did not terminate until May 31, 2023. Thus, the Sams had legal possession until that date. Second, paragraph 8 clearly provides that an eviction order could be entered only if the Sams had not moved out by that date. However, if the Sams did move out by that date and complied with the other terms of the agreement, paragraph 10 confirmed that BKA would dismiss the case with prejudice and refund the security deposit. All of these provisions (which must be considered together (see *id.* at 233)) support Robert's interpretation of the plain language of the contract: that no eviction judgment was to be entered unless and until he failed to comply with the agreement. None of the agreement's provisions permit the entry of an eviction judgment before May 31, 2023. The trial court misconstrued the agreement in finding otherwise.

2023 IL App (2d) 230163

¶ 18    Given that, under the agreement, the Sams had possession of the premises until May 31, 2023, there was no legal justification for the entry of the eviction judgment on March 10, only two days after the complaint was filed and long before any compliance under the agreement was due. Moreover, the language of the form eviction judgment that was entered expressly warned that it should not be entered where the landlord and tenants had agreed that the landlord would dismiss the case if the tenants moved out by a certain date. Here, that was exactly what the Sams and BKA had agreed. BKA argues that the entry of the eviction judgment caused no harm because it was not enforceable until June 1, 2023, but the judgment nowhere says this; it simply lists June 1 as the date by which the Sams must move. To the contrary, the judgment included a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that it was immediately enforceable.[1] For all of these reasons, the trial court erred in entering the eviction judgment on March 10, 2023, and that judgment must be vacated.

¶ 19    Having concluded that the trial court committed legal error in entering the eviction judgment at all, it is plain that the trial court abused its discretion by denying the motion to vacate that judgment. *Olsen*, 2015 IL App (2d) 140267, ¶ 11 (abuse of discretion to commit legal error). In addition to its legal error in misconstruing the agreement, the trial court improperly failed to consider the relevant factors governing motions under section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 2020)). The Sams demonstrated diligence, a meritorious defense to the entry of the eviction judgment, and that the balance of hardship favored vacating the judgment. While we agree with the trial court that, by itself, a party's lack of legal representation is not a reason to

---

[1]In addition to the other problems inherent in the eviction judgment, this finding was highly prejudicial to the Sams, heightening the risk that they would be unable to mount a timely challenge to the improperly entered judgment.

2023 IL App (2d) 230163

rescind an agreement, the trial court wrongly failed to consider the Sams' other arguments and evidence.

¶ 20    The remaining question is how the underlying agreement (and resulting agreed order) should be handled on remand. Robert argues on appeal that the agreement should be set aside because, among other things, there was no meeting of the minds. We must agree with this statement, as the agreement's language clearly embodied the Sams' intent that they be allowed to make the scheduled payments and vacate the premises at the end of May without the entry of an eviction judgment that could harm their ability to find other housing, but BKA seems to have had an entirely different understanding of the agreement. As there was no meeting of the minds, the agreement was never validly formed. *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991) ("An enforceable contract must include a meeting of the minds or mutual assent as to the terms of the contract."). Moreover, given the improper actions of BKA in tendering an eviction judgment for entry on March 10, 2023, before any noncompliance with the agreement, and the subsequent passage of time involved in appealing the entry of that judgment, we conclude that the agreed order can no longer be given legal effect. Under these circumstances, we believe that substantial justice is best accomplished by declaring the agreement inoperative and vacating the agreed order. See *Draper & Kramer*, 2014 IL App (1st) 132073, ¶ 39.

¶ 21    In the absence of the agreement and agreed order, the Sams may have several valid defenses to this eviction action; as far as the record reveals, they did not receive the statutorily required notice of nonpayment of rent before the filing of the complaint, and they were never properly served with the complaint. On the other hand, BKA may wish to amend the relief it is seeking from the Sams. While we hope that the parties can come to a mutually acceptable resolution of

2023 IL App (2d) 230163

these issues, we leave the ultimate disposition of this case to the careful consideration and judgment of the trial court.

¶ 22                                    III. CONCLUSION

¶ 23    For the reasons stated, the judgment of the circuit court of De Kalb County is vacated, and the case is remanded for further proceedings consistent with this opinion.

¶ 24    Vacated and remanded.

2023 IL App (2d) 230163

---

### *BKA Holding, LLC v. Sam*, 2023 IL App (2d) 230163

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 23-EV-102; the Hon. Stephanie P. Klein, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Robert Sam and Karen Sam, both of Sycamore, appellants *pro se.* |

---

| | |
|---|---|
| **Attorneys for Appellee:** | C. Nicholas Cronauer and Jessica Parsons, of Cronauer Law, LLP, of Sycamore, for appellee. |

---