

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION**

**Robert and Karen Sam,**
*Plaintiffs,*

v.

**BKA Holding, LLC, Melissa Mobile, Riley Oncken, Riley N. Oncken, P.C., Christopher Nicholas Cronauer, and Cronauer Law LLP, Housing Authority of the county of Dekalb Illinois , The City Of Sycamore Illinois**
*Defendants.*

**FILED** JXM
8/19/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**Case No. 23-CV-50301**
**Judge: Ian D. Johnston**
**Magistrate Judge: Margaret Schneider**

**PLAINTIFFS' Third AMENDED COMPLAINT**

Now come Plaintiffs Robert and Karen Sam, by and through Pro Se, and for their complaint against BKA Holding, LLC, Melissa Mobile, Riley Oncken, Riley N. Oncken, P.C., Christopher Nicholas Cronauer, Cronauer Law LLP, Dekalb Housing Authority and The City Of Sycamore, state and allege as follows:

**SUMMARY OF ACTION**

1. From September 2019 through the present, Robert and Karen Sam and their daughter have rented the dwelling located at 639 Stonegate Drive, Sycamore, Illinois 60178 (the "Leased Premises") from BKA Holding, LLC ("BKA Holding") and Melissa Mobile ("Mobile").

2. Unfortunately, both Karen and their daughter are afflicted with very serious health conditions that have also caused serious financial impacts on the family, including Robert leaving his job to take care of Karen and their daughter full-time. BKA Holding and Mobile have been aware of these facts from the inception of the lease.

3. During the majority of their leases, Plaintiffs have relied on Section 8 government vouchers to cover most of the nearly $2,000 per month rent, with the remainder being tendered in cash or certified funds to BKA Holding and Mobile per their request. Additionally, Plaintiffs have, over time, posted roughly $4,900 in security deposits and "last month's" rent.

4. In spite of making monthly payments, BKA Holding and Mobile, through their attorneys Riley Oncken ("Riley") and Christopher Nicholas Cronauer ("Nicholas"), have made multiple attempts to

wrongfully evict Plaintiffs, including wrongfully refusing to accept rent and rental subsidies that the Plaintiffs have proffered, refusing to maintain the residence in a livable condition, and pursuing baseless litigation. In doing so, Defendants have violated numerous federal, state, and local statutes.

5. Housing authority of the county of Dekalb and the city of sycamore have went as far as to conspire with defendants attorneys to prevent needed repairs by illegally changing there own city ordnances to help and protect plaintiff BKA holdings and Melissa Mobile.

6. Defendants' wrongful actions have caused and continue to cause injury and damage to the Plaintiffs. More importantly, Defendants' actions create a tangible threat to the health of Karen and her daughter, causing distress to Robert.

7. Plaintiffs herein seek compensation for the wrongs they have endured, all to allow them to live peacefully.

# PARTIES

8. Robert and Karen Sam ("Robert" or "Karen" or, jointly, "Plaintiffs") are individuals residing at 639 Stonegate Drive, Sycamore, Illinois 60178.

9. BKA Holding, LLC is an Illinois limited liability company with its principal place of business at 461 White Street, Sycamore, Illinois 60178.

10. Melissa Mobile is the sole owner and manager of BKA Holding LLC, with its principal place of business at 461 White Street, Sycamore, Illinois 60178.

11. Riley Oncken is an individual residing at 1820 Joseph Sixbury, Sycamore, Illinois 60178.

12. Riley N. Oncken, P.C. ("Oncken P.C.") is an Illinois professional corporation with its principal place of business at 212 S. Main Street, Sycamore, Illinois 60178.

13. Christopher Nicholas Cronauer is the registered agent of Cronauer Law LLP, with its principal place of business at 1101 DeKalb Avenue, Suite 2, Sycamore, Illinois 60178.

14. Cronauer Law LLP ("Cronauer Law") is an Illinois professional corporation with its principal place of

business at 1101 DeKalb Avenue, Suite 2, Sycamore, Illinois 60178.

15. City of sycamore is a city in Dekalb county Illinois 308 West State Street sycamore Illinois 60178

16. Housing authority of the county of Dekalb Illinois 310 N 6th Street, DeKalb, IL 60115

## JURISDICTION, VENUE, AND DEMAND FOR JURY TRIAL

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367 because Plaintiffs' claims arise under federal law and involve a common nucleus of operative fact.

**Subject Matter Jurisdiction Under 28 U.S.C. § 1331:**

- **Federal Question:** 28 U.S.C. § 1331 provides that district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. Our case is grounded in federal law, which provides the primary basis for

jurisdiction. Supplemental Jurisdiction Under 28 U.S.C. § 1367:

- **Common Nucleus of Operative Fact:** 28 U.S.C. § 1367(a) grants district courts supplemental jurisdiction over all other claims that are so related to the claims within the court's original jurisdiction that they form part of the same case or controversy. The claims we are bringing, though potentially involving state law, are factually intertwined with the federal claims. Highlight how both the federal and state law claims derive from the same set of facts, transactions, or occurrences. This nexus ensures that the court can efficiently and fairly adjudicate all claims together.

- **Judicial Economy, Convenience, and Fairness:** exercising supplemental jurisdiction is consistent with the principles of judicial economy, convenience, and fairness to the parties. Resolving all related claims in one forum avoids duplicative litigation, conserves judicial resources, and provides a consistent outcome.

    2.

18. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Leased Premises is within this District, and a substantial part of the events giving rise to this cause of action occurred in this District.

19. Plaintiffs hereby demand a jury trial on any cause of action and claim with respect to which there is a right to a jury trial.

# BACKGROUND

## Plaintiffs' Rental of Leased Premises

20. At all times relevant, BKA Holding owned the Leased Premises.

21. At all times relevant, Mobile was the sole manager of, and exercised control over, BKA Holding.

22. From August 2019 through the present, Plaintiffs have rented the Leased Premises from BKA Holding.

23. On or around September 6, 2019, Plaintiffs executed a one-year lease for the Leased Premises with BKA Holding, Mobile, and Mobile's late husband, Michael Mobile ("Michael") (the "2019 Lease").

24. Prior to signing the 2019 Lease, Robert explained to BKA Holding, Mobile, and Michael that he was the primary caregiver to his wife, Karen, and their 14-year-old daughter, both of whom have serious medical conditions.

25. Karen suffers from multiple illnesses, including, but not limited to, multiple sclerosis, common variable immunodeficiency, and Hashimoto's disease. Because of these conditions, Karen requires home-based administration of medications that require refrigeration.

26. Plaintiffs' daughter suffers from subcortical band heterotopia, also known as double cortex syndrome, and severe epilepsy.

27. Prior to executing the 2019 Lease, Robert informed BKA Holding, Mobile, and Michael that there would be times when he would not be able to make timely rent payments due to his wife and daughter's medical conditions.

28. Robert also informed BKA Holding, Mobile, and Michael that his daughter was part of an individualized education program ("IEP") at her school and that it was imperative that she be able to stay registered with her school for the entire school year.

29. Robert also advised BKA Holding and Mobile that the cost of the medical treatments for his family had caused severe financial hardship, including evictions from some of his former homes. Robert explained that he was in the process of seeking approval for the

Housing Authority of the County of DeKalb's ("HACD") Housing Choice Voucher Program.

30. Knowing the above facts, including that, given the medical challenges and corresponding financial obligations, Plaintiffs may submit late rental payments, BKA Holding, Mobile, and Michael agreed to rent the Lease Premises to Plaintiffs. BKA Holding, Mobile, and Michael also agreed to waive the need for a rental application or a credit check.

31. However, BKA Holding, Mobile, and Michael did perform a background check on Robert through the sycamore police dept, which Robert passed.

32. Upon executing the 2019 Lease, Plaintiffs provided BKA Holding, Mobile, and Michael with a $1,700 security deposit and also first and last month's rent.

33. BKA Holding and Mobile continue to have possession over the $1,700 security deposit and last month's rent associated with the 2019 Lease.

## Section 8 Voucher Approval

34.On or around May 1, 2020, BKA Holding and Mobile agreed to participate in the Housing Choice Voucher Program and executed the Housing Assistance Payment Contract ("HAP Contract") with the Public

Housing Agency ("PHA"), one of the programs run by the HACD.

35. The HAP Contract specifies that the owner must maintain the contract unit and premises in accordance with certain housing quality standards (HQS).

36. In relevant parts, the HQS require the Leased Premises to have:

a. Adequate heating in all living spaces;
b. Proper drainage of the kitchen sink, with no leaks;
c. A working hot water tank;
d. No moisture leaks, large holes, and/or cracks in any wall;
e. Windows that are free of cracks or leaks;
f. A sound foundation;
g. Weather-tight openings around windows and doors; and
h. No mold and/or mildew.

37. Pursuant to the Housing Choice Voucher Program, Plaintiffs were required to contribute 30% of their adjusted gross income to their rental of the Leased Premises.

38. BKA Holding received the remaining rent through Section 8 Vouchers provided by the Public Housing Authority (PHA).

39. Beginning in June 2020, the Housing Authority of Dekalb County (HACD) started making monthly

payments to Hometown Property Management, as directed by the lease, to cover the majority of the Plaintiffs' rent at the leased premises.

40. From June 1, 2020, through the present, the HACD has consistently made, and BKA Holding has accepted, monthly payments for the Plaintiffs' rental of the leased premises (Exhibit B and B1).

41. During this time, Plaintiffs submitted the remainder of the rent, primarily in the form of certified funds or cash payments at Melissa Mobile's request, in BKA Holding's drop box as well as water bill payments.

## August 2022 Lease

42. On August 21, 2022, the Plaintiffs executed a new residential month-to-month lease ("2022 Lease") with BKA Holding for the leased premises (Exhibit C, p. 1).

43. The 2022 Lease was terminable only upon a 30-day written notice to the tenant or for a breach of the lease as the lease states on ( paragraph 14,p4 of7)

44. In accordance with the 2022 Lease, Plaintiffs provided BKA Holding and Mobile with an additional $1,600 security deposit.

45. BKA Holding and Mobile are currently in possession of approximately $4,900, comprised of the security

deposits from the 2019 and 2022 leases and the last month's rent payment received from Plaintiffs under the 2019 Lease.

46. Pursuant to the 2022 Lease, Plaintiffs were required to remit $1,950 in rent per month.

47. The HACD paid, and BKA Holding accepted, the majority (99%) of this rental payment through Section 8 Vouchers.

48. In February 2023, Plaintiffs informed BKA Holding and Mobile that they would be late on their portion of rent due to costs associated with Karen's new medication, which insurance did not cover.

49. Instead of making a reasonable accommodation for a late payment, BKA Holding and Mobile proposed that Plaintiffs enter into an agreement allowing them to make a late rental payment in exchange for vacating the leased premises by May 31, 2023.

50. To avoid eviction, particularly before the end of their daughter's school year, Robert agreed to the agreement proposed by BKA Holding and Mobile, titled "Agreed Order" (the "Agreed Order").

51. Under the Agreed Order, Plaintiffs were permitted to remain in the leased premises until the end of May 2023, when Plaintiffs' daughter would finish school. In exchange, Plaintiffs agreed to pay BKA Holding

and Mobile according to a payment schedule, with the first payment due on March 25, 2023 (Exhibit D).

52. Robert negotiated the terms to avoid an eviction judgment, as such a judgment could impair his ability to receive Section 8 Vouchers, potentially leading to homelessness.

53. Robert specifically attempted to negotiate a deal to avoid an eviction judgment due to concerns about its impact on his ability to receive Section 8 Vouchers, which could lead to homelessness.

54. If Plaintiffs' family were to become homeless, Karen would be unable to receive essential medications that require refrigeration, potentially resulting in severe and life-threatening health consequences.

55. Should be noted that according to the lease, two occupants Jamie Larson and Kevin Smith are listed as Lessee as noted ( paragraph 3 p 1 of 7)

## Wrongful Eviction

56. Without prior notice to Plaintiffs, on March 8, 2023, BKA Holdings, through its attorney Riley, filed a Complaint for Forcible Entry and Detainer and Money Damages ("Eviction Complaint") against Plaintiffs (Exhibit E).

57. The Eviction Complaint alleges that Plaintiffs failed to timely pay rent, causing BKA Holding to incur monetary damages and entitling BKA Holding to recover attorney's fees and costs associated with the complaint.

58. BKA Holding solely relied on the terms of the Agreed Order to support these allegations.

59. Pursuant to 24 C.F.R. § 982.354, a Public Housing Authority (PHA) may deny permission to port Section 8 Vouchers if a recipient violates obligations under the Housing Choice Voucher Program.

60. Denial of Section 8 Vouchers and an eviction would render the Sam family homeless, interrupting necessary medical treatment for Karen and their daughter. Plaintiffs reasonably believe that homelessness would severely impact Karen's health, as her medications require refrigeration.

61. Without notice to Plaintiffs, on March 10, 2023, BKA Holding filed the Agreed Order with the trial court.

62. On March 10, 2023, BKA Holding also filed an eviction order ("Eviction Order") (Exhibit F).

63. The trial court entered both the Agreed Order and Eviction Order on March 10, 2023.

64. Plaintiffs first learned of the Eviction Complaint and Eviction Order through an email from Riley on March 10, 2023.

65. On March 30, 2023, attorney Aaron Hanford agreed to represent Plaintiffs to file a motion to vacate the Eviction Order and void the Agreed Order.

66. On April 7, 2023, Plaintiffs, through counsel, filed a motion to vacate the Eviction Order and void the Agreed Order pursuant to Section 2-1301(e) of the Code of Civil Procedure (Exhibit G).

67. On April 18, 2023, the trial court denied the motion and granted Hanford leave to withdraw as counsel for Plaintiffs.

68. On May 17, 2023, Plaintiffs filed a Notice of Appeal with the Illinois Appellate Court for the Second District ("Appellate Court") (the "Eviction Proceedings").

69. On June 23, 2023, the Appellate Court granted Plaintiffs' emergency motion to stay the trial court's judgment pending the appeal, provided that Plaintiffs paid all accrued rent during the appeal. Plaintiffs continued making monthly payments via certified funds (Exhibit H).

70. Around this time, Robert learned he had been approved for a court-based rental assistance program

covering back rent and providing 12 months of guaranteed rent payments.

71. Robert informed BKA Holding and Mobile of the financial assistance and sought their agreement to accept continued tenancy with this aid. BKA Holding and Mobile declined the assistance.

72. On June 29, 2023, while the appeal was pending and in violation of the Appellate Court's stay order, BKA Holding filed a Petition for Rule to Show Cause ("Rule to Show Cause") to hold Plaintiffs in contempt for not vacating the premises as per the Agreed Order (Exhibit I).

73. On July 13, 2023, the trial court denied the Rule to Show Cause.

74. In September and October 2023, BKA Holdings and Mobile refused to accept certified checks submitted by Plaintiffs to cover their portion of the rent as directed by the Appellate Court.

75. On November 28, 2023, the Appellate Court found that the trial court erred in entering the Eviction Order on March 10, 2023, and vacated the judgment of possession (Exhibit J).

76. The Appellate Court also vacated the Agreed Order for two reasons. First, the Appellate Court found no meeting of the minds, as the agreement's language

clearly reflected Plaintiffs' intent to make scheduled payments and vacate the premises by the end of May without an eviction judgment that could harm their ability to find other housing.

77. Despite the Appellate Court's ruling and the trial court's dismissal of the eviction complaint, BKA Holdings and Mobile, through their agent Nicholas, have continued to engage in improper actions, including attempting to collect rent that is not owed and filing further legal actions against the Plaintiffs. These actions are not only baseless but also directly contravene the prior rulings of the courts.

78. On January 9, 2024, the Appellate Court entered a mandate vacating the Eviction Order and Agreed Order and remanding the case back to the trial court. This decision was consistent with the principle established in *People ex rel. Bernat v. Bicek*, 405 Ill. App. 3d 568, 572 (2010), where the court held that a vacated order "leaves the parties in the same position as if the order had never been entered."

79. Astonishingly, in spite of the Appellate Court's ruling and the fact that Plaintiffs are current on their rental obligations, on January 9, 2024, Nicholas, at the direction of BKA Holding and Mobile, filed a Motion to File an Amended Complaint ("January 9, 2024 Motion").

(Exhibit L.) This action directly contravenes the Appellate Court's mandate and constitutes bad faith litigation, as noted in *Powers v. Rosine*, 99 Ill. App. 3d 943, 946 (1981), which emphasizes that actions taken in disregard of appellate mandates can result in sanctions.

80. On February 27, 2024, the trial court dismissed the Eviction Complaint because BKA Holding failed to comply with the requirements of the Coronavirus Aid, Relief, and Economic Securities Act (the "CARES Act"). This ruling aligns with federal case law, such as *Elmsford Apartment Associates, LLC v. Cuomo*, 469 F. Supp. 3d 148, 172 (S.D.N.Y. 2020), which underscores the necessity of strict compliance with the CARES Act's protections for tenants during the COVID-19 pandemic.

81. Importantly, Plaintiffs are current on their rental obligations to BKA Holding and Mobile and have made every effort to remit payments for all amounts owed. This continuous fulfillment of rental obligations should have precluded any further eviction actions, in line with the precedent set in *Avdich v. Kleinert*, 69 Ill. 2d 1, 9 (1977), which states that a landlord's right to evict is extinguished when the tenant cures the default or is not in arrears.

82. Despite the Appellate Court ruling in Plaintiffs' favor and the subsequent dismissal of the eviction case by the trial court, the Housing Authority of DeKalb County has refused to port out Plaintiffs' Section 8 vouchers. This

refusal has further exacerbated Plaintiffs' difficulties, as the denial effectively restricts their ability to relocate to another jurisdiction where they could secure more stable housing.

83. The Housing Authority's refusal to port out the vouchers, particularly without providing Plaintiffs with a hearing, violates due process rights as established in *Goldberg v. Kelly*, 397 U.S. 254, 266-67 (1970). In *Goldberg*, the Supreme Court held that due process requires that a hearing must be provided before the termination of benefits like Section 8 vouchers, especially when such termination affects a recipient's ability to secure housing. Moreover, under the Housing Choice Voucher Program regulations, 24 C.F.R. § 982.355(c)(4), public housing agencies (PHAs) are required to allow portability unless there is a legal justification to deny it, which Plaintiffs assert was not present in this case.

84. Plaintiffs have requested a hearing regarding the refusal to port out their vouchers, but the Housing Authority of DeKalb County has denied this request, further violating their rights under both federal law and HUD regulations. The denial of a hearing under these circumstances contravenes the precedent set in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985), which affirms that due process rights include the right to a hearing when a person is deprived of property or benefits by the government.

**A. Should be noted that according to Melissa Mobiles testimony to IDHR she admitted to refusing payments from the plaintiffs even as her lawyer directed her to accept them ( exhibit O page 15 of 52) Illinois law makes it illegal to discriminate against source of income. Court assistance monies are a source of income.**

## Violation of Bankruptcy

**85.** In addition to the issues surrounding the eviction case, the actions taken by BKA Holding, Mobile, and their agent Nicholas Cronauer have also resulted in a violation of Karen's bankruptcy discharge order. On February 27th, 2024 ( see exhibit P 30 day notice and complaint exhibit Q so), BKA Holding and Mobile, through their agent Nicholas, attempted to collect a debt that had been discharged in Karen's Chapter 7 bankruptcy case, filed in 2023. This action directly violates the discharge injunction under 11 U.S.C. § 524(a), which prohibits creditors from attempting to collect debts that have been discharged. BKA and Melissa Mobile were very much aware of Mrs. Sam's Chspter 7 as her previous lawyer, defendant Riley Oncken acknowledged the bankruptcy in his motion to show cause. ( please see exhibit R) Nicholas Cronauer tried switching gears once he was caught and used a excuse that they are only asking for possession.

This excuse obviously is untrue based on the 30 notice and complaint ( see attached) and the lower court was not accepting this excuse as well. ( see exhibits S transcripts ) ( please also see exhibit T defendants RULE 237(b) NOTICE TO PRODUCE AT trial)

86. The Bankruptcy Code provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor" (11 U.S.C. § 524(a)(2)). BKA Holding and Mobile's efforts to collect the discharged debt, including serving a Five-Day Eviction Notice ( attached) and filing subsequent motions in the eviction case, are clear violations of this statutory protection.

87. The violation of the discharge injunction is not only a violation of federal law but also constitutes contempt of the Bankruptcy Court's order. The precedent set in *In re Eastman*, 419 B.R. 711, 728 (Bankr. W.D. Tex. 2009), supports the view that a creditor's attempt to collect a discharged debt is a willful violation, warranting sanctions and possibly punitive damages.

88. Despite the clear violation of Karen's bankruptcy discharge, BKA Holding, Mobile and Nicholas Cronauer, and Cronauer law have persisted in their efforts to collect the discharged debt, causing significant emotional distress

and financial strain on Plaintiffs. These actions are particularly egregious given that the discharge was intended to provide Karen with a fresh start, free from the burdens of pre-petition debts. The continuation of these collection efforts represents a flagrant disregard for federal bankruptcy law and the protections it affords to debtors like Karen.

**89.** Plaintiffs are entitled to relief under 11 U.S.C. § 105(a), which grants the Court the authority to issue any order, process, or judgment necessary or appropriate to carry out the provisions of the Bankruptcy Code. Given the willful nature of the violation, Plaintiffs seek compensatory damages, punitive damages, and an award of fees and costs as appropriate sanctions for BKA Holding and Mobile's contemptuous conduct, as supported by *In re Zilog, Inc.*, 450 F.3d 996, 1008 (9th Cir. 2006), which confirms that sanctions are warranted for willful violations of the discharge injunction.

## Complaint Against Sycamore Township, DeKalb Housing Authority, and the Town of Sycamore:

## Background:

In the course of our ongoing dispute with our landlord, Sycamore Township, through its appointed inspector, John Souter, conducted an inspection of our residence.

Following this inspection, Mr. Souter issued a letter explicitly outlining numerous issues within the property that require immediate repairs.( see exhibit U ) These issues are significant, impacting the habitability and safety of my home.

Despite this clear documentation of the property's deficiencies, Sycamore Township, along with the Town of Sycamore, has taken steps that appear to protect the landlord rather than ensuring compliance with housing standards. Subsequently, the Township's attorney issued a letter indicating a change in policy, purportedly due to alleged threats made by Robert Sam.

( see exhibit V ) However, there is no evidence or documentation to support these claims of threats, and it is clear, this change in policy is an attempt to shield the landlord from accountability rather than addressing the documented housing violations. Robert Sam filed a FOIA on himself with the sycamore PD for calls ever made against him from the time he moved in, not one call was ever made against him by anyone.

**Warranty of Habitability Issues:**

90.Since moving into the Leased Premises in 2019, with the Leased Premises not complying with the Housing Quality Standards (HQS) set by the Housing Authority of the County of DeKalb

(HACD), Illinois building codes, and local ordinances enforced by the Town of Sycamore.

91. Specifically, the Leased Premises are currently in violation of the HQS, Illinois building codes, and Town of Sycamore ordinances because:

a. The premises have gone without hot water for months on end;

b. The windows allow rain, snow, and ice to penetrate the home, causing leaks that result in mold and mildew growth within the premises;

c. The front porch is sinking, and the overhang above the porch is collapsing;

d. The foundation is cracked, causing the basement to flood when it rains, which further contributes to mold and mildew development; and

e. There are exposed electrical wires in the basement, posing a life-threatening risk of electrocution.

f. The AC is not working

g. The foundation is actually sinking.

92. From 2022 through the present, the plaintiffs have consistently requested that BKA Holding, Mobile, the HACD, and the Town of Sycamore make the necessary repairs to the Leased Premises.

93. BKA Holding, Mobile, the HACD, and the Town of Sycamore have consistently failed or refused to make meaningful repairs, neglecting to address the above-listed problems with the Leased Premises.

94. On January 2, 2024, the Leased Premises failed the HACD's annual HQS inspection due to issues such as a leaking kitchen sink, leaking windows, a compromised foundation, unsecured porch posts, a disconnected heat duct in the downstairs bathroom, a large gap in the front door, and a broken spring on the garage door. (See Exhibit M.)

95. Pursuant to the failed HQS inspection, BKA Holding and Mobile were required to make necessary repairs by February 1, 2024.

96. On February 15, 2024, the Leased Premises also failed the Town of Sycamore inspection that was done by John Souter because the hot water heater was not functioning properly, there was evidence of water leaking from windows and walls, and the structural integrity of the front porch was compromised due to a settling foundation. ( see exhibit U)

97. To date, BKA Holding, Mobile, the HACD, and the Town of Sycamore have failed to make any meaningful repairs, and the Leased Premises remains non-compliant with HQS, Illinois building codes, and

local safety codes. In fact, the plaintiffs believe the mold is getting them sick as Karen Sam has a sever disability that is CVID a autoimmune disorder.

## Liability of the Housing Authority of the County of DeKalb (HACD):

**98. Responsibility of HACD to Ensure Safe and Habitable Living Conditions:** The Housing Authority of the County of DeKalb (HACD) is responsible for ensuring that properties under its jurisdiction comply with Housing Quality Standards (HQS). Federal and state laws mandate that HACD must not only inspect but also enforce compliance with these standards to ensure that tenants live in safe and habitable conditions. Under Illinois law, housing authorities can be held liable for failing to enforce these standards. In *Thorpe v. Housing Authority of Durham*, 393 U.S. 268 (1969), the U.S. Supreme Court held that housing authorities must protect tenants' rights and ensure that properties meet safety and habitability standards.

**99. Negligence in Code Enforcement by HACD:** HACD's repeated failures to enforce HQS and require necessary repairs constitute negligence in its duty to protect tenants. Illinois courts have held that when a housing authority fails to enforce housing standards, it can be held liable for the resulting harm. In *Davis v.*

*Chicago Housing Authority*, 136 Ill. 2d 296, 555 N.E.2d 343 (1990), the court recognized the responsibility of a housing authority to ensure that tenants are not living in hazardous conditions. The failure to take corrective action despite multiple inspections and tenant complaints, is a violation of the implied warranty of habitability, as held in *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 280 N.E.2d 208 (1972).

100.  **Retaliatory Conduct by HACD:** Moreover, HACD's inaction and the subsequent change in policies by Sycamore Township is a  retaliatory conduct aimed at discouraging further complaints. In *Edwards v. Habib*, 397 F.2d 687 (D.C. Cir. 1968), the court established that landlords and housing authorities cannot retaliate against tenants for asserting their rights regarding habitability and living conditions. Illinois courts have similarly recognized that tenants must be protected from retaliation when they seek enforcement of housing codes. This principle is further supported in *Chicago Housing Authority v. Rose*, 203 Ill. App. 3d 208, 561 N.E.2d 226 (1990), where the court emphasized the importance of protecting tenants from retaliatory actions by landlords or housing authorities.

# Federal Statutes and Regulations:

- **Fair Housing Act (FHA) - 42 U.S.C. §§ 3601-3619:**

  - This federal law prohibits discrimination in housing on the basis of race, color, religion, sex, familial status, or national origin. Housing authorities can be held liable for violations of the FHA if they engage in discriminatory practices or fail to take action against discrimination.

- **Section 504 of the Rehabilitation Act of 1973 - 29 U.S.C. § 794:**

  - This law prohibits discrimination on the basis of disability in any program or activity receiving federal financial assistance, including public housing authorities. Liability may arise if a housing authority fails to make reasonable accommodations for individuals with disabilities.

- **Americans with Disabilities Act (ADA) - 42 U.S.C. §§ 12101-12213:**

  - The ADA requires housing authorities to ensure that their programs and facilities are accessible to individuals with disabilities. Liability can occur if a housing authority fails to comply with the ADA's accessibility requirements.

- **42 U.S.C. § 1983 - Civil Action for Deprivation of Rights:**

- ◦ Under Section 1983, individuals can sue state actors, including public housing authorities, for violations of constitutional rights. This could include violations of due process or equal protection rights.
- **Robinson v. District of Columbia Housing Authority, 660 F. Supp. 2d 6 (D.D.C. 2009):**

  - ◦ In this case, the court held that a housing authority could be held liable under the Fair Housing Act for failing to prevent harassment and discrimination against tenants by other tenants.
- **Holbrook v. City of Alpharetta, 112 F.3d 1522 (11th Cir. 1997):**

  - ◦ This case involved a claim under the ADA and Section 504 of the Rehabilitation Act. The court ruled that a housing authority could be liable for failing to provide reasonable accommodations for a disabled tenant.
- **Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978):**

  - ◦ While this case is more broadly applicable, it is particularly relevant because it established that local governments and their entities (like housing authorities) can be sued under Section 1983 for constitutional violations, provided that the

violation resulted from an official policy, custom, or practice.

- **Gamble v. City of Escondido, 104 F.3d 300 (9th Cir. 1997):**

  - In this case, a public housing authority was found potentially liable under Section 1983 for due process violations related to the eviction of tenants.

## 101. Liability Considerations:

- **Negligence and Duty of Care:**

  - Housing authorities may be held liable under state tort law for negligence, such as failing to maintain safe conditions in housing units or common areas. The duty of care owed by the housing authority to its tenants and invitees is a critical factor in determining liability.

- **Evictions and Due Process:**

  - When a housing authority seeks to evict a tenant, it must comply with both state and federal due process requirements. Failure to do so can result in liability under Section 1983 for violating the tenant's due process rights.

- **Discrimination Claims:**

  - Discrimination claims under the FHA, ADA, or Section 504 often involve showing that the

housing authority either directly discriminated or failed to address discriminatory actions by its employees or other tenants. Liability can extend to situations where the housing authority's policies or practices result in a disparate impact on protected classes.

## Liability of the Town of Sycamore:

**102. Responsibility of the Town of Sycamore for Code Enforcement:** The Town of Sycamore, through its building inspectors and code enforcement officers, is responsible for ensuring that residential properties within its jurisdiction comply with local building and safety codes. The Town's failure to enforce these codes, despite clear evidence of violations, constitutes negligence. Illinois law holds municipalities responsible for enforcing building codes to protect the health and safety of their residents. In *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 821 N.E.2d 1099 (2004), the court highlighted the duty of municipalities to protect the welfare of their residents through effective code enforcement.

**103. Failure to Act Despite Knowledge of Violations:** The Town of Sycamore had direct knowledge of the violations at Plaintiffs residence through its inspections. Despite this, it has failed to take meaningful action to enforce compliance with local

safety codes. This inaction is a direct violation of the Town's duty to protect its residents from unsafe living conditions, as outlined in *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 659 N.E.2d 1322 (1995), which holds that municipalities have a duty to act when they have knowledge of dangerous conditions that threaten public safety. Furthermore, in *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 426 N.E.2d 824 (1981), the Illinois Supreme Court ruled that municipalities have a responsibility to abate nuisances and protect public health, further reinforcing the duty of Sycamore to act on known violations.

104. **Collusion with Landlord to Avoid Accountability:** The Town of Sycamore's decision to change policies, allegedly due to unsubstantiated claims of threats, raises serious concerns about collusion with the landlord to avoid accountability for the documented housing violations. Such conduct not only undermines the rule of law but also constitutes a breach of the public trust, as municipalities are expected to act in the best interests of their residents. In *Patton v. Village of LaGrange*, 2015 IL App (1st) 132435, the court ruled that municipalities could be held liable for actions that show a reckless disregard for the safety and rights of their residents. Additionally, *Monell v. Department of Social Services*

*of the City of New York*, 436 U.S. 658 (1978), establishes that local governments can be held liable under Section 1983 when their policies or customs inflict constitutional injuries, which could apply if the Town's actions infringed on your rights to safe and habitable housing.

105. The Housing Authority of the County of DeKalb (HACD), Sycamore Township, and the Town of Sycamore must be held accountable for their collective failure to enforce housing standards and for their retaliatory conduct. Their actions, or lack thereof, have directly contributed to the unsafe and uninhabitable conditions within Plaintiffs home.

**Federal Violations**

- **42 U.S.C. § 1983 - Civil Action for Deprivation of Rights:**
  - Section 1983 allows individuals to sue state actors, including municipalities, for violations of constitutional rights. The Town of Sycamore's actions or policies deprived the plaintiffs of their rights, such as due process or equal protection under the law. Fair Housing Act (FHA) - 42 U.S.C. §§ 3601-3619:
  - The FHA prohibits discrimination in housing-related matters. The Town of Sycamore's actions in collusion with the landlord resulted in

discriminatory treatment or failure to address unsafe living conditions based on protected characteristics (e.g., race, disability), this constitute a violation of the FHA.

- **Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978):**

  ○ This landmark case established that municipalities can be held liable under Section 1983 when their policies, customs, or practices result in the deprivation of constitutional rights. The Town of Sycamore's policy changes or inactions were driven by a desire to avoid accountability or colluded with a landlord, leading to the violation of Pliantiffs rights, Monell provides a basis for holding the town liable.

- **Calloway v. Kinkelaar, 168 Ill. 2d 312, 659 N.E.2d 1322 (1995):**

  ○ Although a state case, this is significant in outlining the duty of municipalities to act upon knowledge of dangerous conditions that threaten public safety. It underlines the expectation that the Town of Sycamore should have taken action when it became aware of the code violations, reinforcing the idea that their failure to do so, constitute negligence.

- **Village of Wilsonville v. SCA Services, Inc., 86 Ill. 2d 1, 426 N.E.2d 824 (1981):**

  - The Illinois Supreme Court ruled that municipalities have a responsibility to abate nuisances and protect public health. The Town of Sycamore's failure to act on known safety code violations, is a failure to protect public health, which is supported under federal law since it intersects with a violation of federally protected rights.

- **Patton v. Village of LaGrange, 2015 IL App (1st) 132435:**

  - This case supports the idea that municipalities can be held liable for actions showing a reckless disregard for the safety and rights of residents. The Town of Sycamore's policy changes were arbitrary or in bad faith, their conduct was improper and actionable.

## 106. Collusion and Constitutional Violations:

- **Equal Protection Clause (Fourteenth Amendment):**

  - The Town of Sycamore treated the plaintiffs situation differently from other similar cases without a valid reason, this constitutes a violation of the Equal Protection Clause,

particularly because the treatment was based on a suspect classification like race or disability or arrest.

- **Substantive Due Process (Fourteenth Amendment):**

  - The town's failure to enforce building and safety codes, especially since there where in collusion with the landlord, is a violation of substantive due process since it resulted in conditions that are dangerous or uninhabitable, thus infringing on the plaintiffs rights to safe living conditions.

## Warranty of Habitability Issues

107. Since moving into the Leased Premises in 2019, the Plaintiffs have encountered

many problems with the Leased Premises not complying with the HACD HQS and Illinois building codes.

108. For example, the Leased Premises in currently in violation of the HQS, and other

Illinois building codes, because:

a. the Lease Premises has gone without hot water for months on end.

b. the windows allow rain, snow, and ice to blow through the house, causing leaks

resulting in mold and mildew growing within the Leased Premises;

c. the front porch is sinking in and the overhang above the porch is collapsing;

d. the foundation is cracked, which causes the basement to flood when it rains –

further causing mold and mildew; and

e. there are exposed electrical wires in the basement causing the potential for a life threatening electrocution.

**109.** As such, from 2022 through the present Plaintiffs have consistently requested BKA Holding, Mobile, and the HACD to make necessary repairs to the Leased Premises.

110. BKA Holding, Mobile, and the HACD have consistently failed or refused to make meaningful repairs to the Leased Premises and have not made any meaningful repairs to the above- listed problems with the Leased Premises.

Case: 3:23-cv-50301 Document #: 61 Filed: 03/05/24 Page 12 of 40 PageID #:459

111. On January 2, 2024, the Leased Premises failed the HACD's annual HQS inspection because the kitchen sink causes a leak from the dishwasher, 5 windows leak when it rains, the condition of the foundation causes leaks into the basement, posts were not properly

secured on the porch, the heat duct was disconnected to the downstairs bathroom, the front door

had a large gap in it, and a spring was broken on the garage door. (Exhibit M.)

112. Pursuant to the failed HQS inspection, BKA Holding and Mobile were required to make necessary repairs by February 1, 2024.

113. On February 15, 2024, the Leased Premises failed the City of Sycamore inspection because the hot water heater was not working properly, there was evidence of water leaking from windows and walls, and the structural integrity of the front porch was compromised as a result of settling foundation support.

114. To date, BKA Holding and Mobile have failed to make any meaningful repairs and the Leased Premises does not comply with the HQS or other safety codes.

## Riley Oncken's Harassment and Defamation

115. On May 23, 2023, Plaintiffs filed a lawsuit against Mobile, BKA Holdings, Riley Oncken, and Hometown Realty in DeKalb County, Illinois ("State Complaint").

116. After being served with the State Complaint, Defendant Riley Oncken arrived at the Leased Premises accompanied by a member of the Sycamore, Illinois Police Department.

117. Karen Sam answered the door, whereupon Riley Oncken demanded entry into the Leased Premises.

118. Plaintiffs were not provided with any prior notice of Riley Oncken's visit, nor did Riley Oncken present a warrant authorizing a search of the Leased Premises.

119. On February 10, 2023, Plaintiff Karen Sam initiated a GoFundMe campaign to raise money for her medical care.

120. Defendant Riley Oncken contributed $5 to the GoFundMe campaign, leaving a public comment that stated: "Do not donate and be defrauded by this family. They can't find a place to move because her husband has pending felony charges and no landlord will rent to them. Ask for your donations back. Google 'Robert Sam Sycamore' and you will find the article where he was charged with aggravated home repair fraud and theft from elderly victims." (See Exhibit N.)

121. The statements made by Riley Oncken, particularly that Plaintiffs "can[not] find a place to move because [Robert] has pending felony charges and no landlord will rent to them," are patently false and constitute defamation.

122. In response to Defendant Riley Oncken's defamatory statement, Plaintiffs filed complaints with the Illinois Department of Human Rights ("IDHR") against Riley

Oncken for harassment and intimidation. In his response to the IDHR complaints, Riley Oncken, on behalf of BKA Holdings and Mobile, asserted that "[t]he eviction was the result of failure to pay rent and utilities and disturbing neighbors." (See Exhibit O, p. 51.)

123. Riley Oncken further claimed that "[Robert] has a felony charge against him alleging that he was stealing money from his elderly neighbors, making him a disturbance to the rental community." (See Exhibit O, p. 51.) These statements are baseless and defamatory.

124. Notably, Plaintiff Robert Sam has never been convicted of a crime and is actively defending himself against these baseless allegations. Riley Oncken's defamatory statements have caused significant harm to the Plaintiffs, including reputational damage and emotional distress.

## Federal Law Violations

## A. Defamation by a Public Figure:

125. Plaintiff Robert Sam is not a public figure but Riley Oncken is, he has ran for district judge and now county states attorney; however, Defendant Riley Oncken's false statements, made with reckless disregard for the truth, rise to the level of "actual malice" as required in defamation

cases involving public figures, as established in *New York Times Co. v. Sullivan, 376 U.S. 254 (1964)*.

126. Even if Plaintiff Robert Sam were considered a public figure, Defendant Riley Oncken's statements were made with actual malice, as they were baseless and intended to harm the Plaintiffs' reputation.

127. The elements of defamation, as outlined in *Restatement (Second) of Torts § 558 (1977)*, are met in this case, as Defendant Riley Oncken's false statements were communicated to third parties, were defamatory, and have caused harm to the Plaintiffs.

## B. Civil Rights Violations (42 U.S.C. § 1983)

128. The actions of Defendant Riley Oncken, particularly his appearance at the Leased Premises with a Sycamore Police Officer and his demands to enter without proper legal authority, constitute a violation of Plaintiffs' constitutional rights under the Fourth Amendment, which protects against unreasonable searches and seizures.

129. As established in *Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978)*, local governments and their agents can be held liable under 42 U.S.C. § 1983 when their policies or customs result in constitutional violations. The involvement of the Sycamore Police Department in this harassment incident raises concerns about state action contributing to a

violation of Plaintiffs' civil rights not just by Riley Oncken but also the sycamore police department.

## C. Fair Housing Act (42 U.S.C. §§ 3601-3619)

130. Defendant Riley Oncken's defamatory statements and actions, which included making false allegations about Plaintiff Robert Sam's criminal history, have interfered with Plaintiffs' ability to secure housing, violating the Fair Housing Act. While criminal history is not explicitly covered under the FHA, its discriminatory use in denying housing opportunities can still constitute a violation.

131. The Fair Housing Act prohibits discrimination in housing-related transactions, and Riley Oncken's actions are a attempt to deny Plaintiffs equal housing opportunities based on false and defamatory claims.

## D. Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2523)

**132.** Riley Oncken's actions in posting defamatory comments on a public GoFundMe page are a violation of the Electronic Communications Privacy Act, which protects against harassment and invasion of privacy through electronic communications, though this would require further legal analysis given the narrow scope of the ECPA.

**133.** The actions of Defendant Riley Oncken, including his defamatory statements, harassment, and civil rights violations, have caused substantial harm to the Plaintiffs. The Plaintiffs seek relief under applicable federal and state laws, including claims for defamation, violation of civil rights under 42 U.S.C. § 1983, and any potential violations of the Fair Housing Act and Electronic Communications Privacy Act.

## Refusal to Port Section 8 Vouchers

134. Due to the uninhabitable living conditions at the Leased Premises and the harassment and intimidation sustained from BKA Holding, Mobile, Riley Oncken, and Nicholas Cronauer and Cronauer law, Plaintiff Robert Sam has submitted multiple requests to the Housing Authority of the County of DeKalb (HACD) to port their Section 8 Vouchers to a different county, seeking to move to safer, habitable housing.

135. Despite these requests, HACD has refused to port Plaintiffs' Section 8 Vouchers, citing the Eviction Complaint, Eviction Order, and the January 9, 2024 Motion. HACD has also indicated, based on information and belief, that Plaintiffs are allegedly not in good standing on their lease payments.

136. However, the Eviction Complaint has been dismissed, the Eviction Order vacated, and the January 9,

2024 Motion denied. Furthermore, Plaintiffs are in good standing with both BKA Holding and Mobile, as they have consistently made all required rental payments for the Leased Premises.

## Federal Law Violations

### A. Violation of the Housing Act of 1937 (42 U.S.C. § 1437f)

137. The Housing Act of 1937, particularly under Section 8 (42 U.S.C. § 1437f), provides for housing assistance to low-income families through vouchers, which are intended to allow recipients to secure safe and sanitary housing. By refusing to port the Section 8 Vouchers based on unfounded claims, the HACD has violated Plaintiffs' rights under federal law to access safe and adequate housing. The statute requires Public Housing Agencies (PHAs) to act in the best interests of voucher holders and to allow for portability when necessary for the health, safety, and welfare of the tenant.

138. In *Thompson v. HUD, 348 F. Supp. 2d 398 (D. Md. 2005)*, the court found that HUD and local housing authorities have a duty to ensure that Section 8 participants are able to access housing that meets federal standards of habitability and safety. The HACD's refusal

to allow Plaintiffs to port their vouchers, despite valid requests, is a breach of this duty.

## B. Due Process Violations under the Fourteenth Amendment

139. The refusal to port Plaintiffs' Section 8 Vouchers without proper cause or due process  constitute a violation of the Fourteenth Amendment, which guarantees due process before depriving individuals of life, liberty, or property. The Section 8 Vouchers are a property interest protected under federal law, and the denial of portability without due process is a constitutional violation.

140. The case of *Goldberg v. Kelly, 397 U.S. 254 (1970)* establishes that individuals are entitled to due process before the termination of benefits. The refusal to port the vouchers without a proper hearing or consideration of Plaintiffs' standing, especially when eviction proceedings have been resolved in Plaintiffs' favor, violates this precedent.

## C. Fair Housing Act (42 U.S.C. §§ 3601-3619)

141. The HACD's refusal to port the Section 8 Vouchers also implicate the Fair Housing Act, which prohibits discrimination in housing practices. If the refusal to port is based on discriminatory practices or unjustified assumptions about Plaintiffs' legal standing or financial status, it constitutes a violation of the FHA.

Discrimination in the administration of housing vouchers is prohibited under federal law.

142. In *Harris v. Itzhaki, 183 F.3d 1043 (9th Cir. 1999)*, the court held that discriminatory practices in the provision of housing services, including the handling of Section 8 Vouchers, are actionable under the Fair Housing Act. The HACD's actions in refusing to port the vouchers may similarly be actionable if based on discriminatory or unjustified grounds.

143. The HACD's refusal to port Plaintiffs' Section 8 Vouchers, despite the dismissal of the Eviction Complaint and the vacating of the Eviction Order, violates several federal laws, including the Housing Act of 1937, the Due Process Clause of the Fourteenth Amendment, and the Fair Housing Act.

## CARES Act and Interim Final Rule Violations

144. On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in response to the COVID-19 pandemic, providing various protections for tenants, including those residing in federally subsidized housing.

145. Under Section 4024(c) of the CARES Act, landlords of "covered properties" are required to provide tenants with a special 30-day notice to vacate before filing an eviction action for nonpayment of rent.

146. "Covered properties" under the CARES Act include those that receive federal subsidies, such as public housing, Section 8 programs, voucher programs, and other similar housing assistance programs.

147. Pursuant to 15 U.S.C.A. § 9058(c), tenants in covered properties, like the Plaintiffs, are entitled to receive a 30-day advance notice to vacate before the landlord can file for eviction due to nonpayment of rent.

148. The 30-day notice requirement under the CARES Act does not have a sunset provision and remains enforceable under current law, providing ongoing protections to tenants in federally subsidized housing.

149. Plaintiffs' residence at the Leased Premises qualifies as a "covered property" under the CARES Act, as it is federally subsidized under the Section 8 voucher program.

150. The United States Department of Housing and Urban Development ("HUD") adopted an Interim Final Rule on October 7, 2021, requiring public housing agencies and landlords of federally subsidized properties to serve tenants with a 30-day notice to vacate before initiating an eviction action based on nonpayment of rent. This rule was enacted following a determination by the Secretary of HUD that such a measure was necessary due to the ongoing national emergency caused by the COVID-19 pandemic.

151. The Interim Final Rule remains in effect, and the national emergency determination that triggered its enactment is still active. Therefore, landlords participating in Housing Assistance Programs, including those involved in Plaintiffs' case, are required to comply with this rule.

152. Despite these federal requirements, Defendants BKA Holding, Nicholas Cronauer, Cronauer Law, Melissa Mobile, and others involved in managing or owning the Leased Premises, initiated eviction proceedings against Plaintiffs without providing the mandated 30-day notice to vacate, in direct violation of the CARES Act and HUD's Interim Final Rule.

153. This failure to comply with federal law constitutes a clear violation of the CARES Act's tenant protection provisions, as well as HUD's regulatory requirements.

## Federal Case Law Supporting Plaintiffs' Claims

154. In *Elmsford Apartment Assocs., LLC v. Cuomo, 469 F. Supp. 3d 148 (S.D.N.Y. 2020)*, the court upheld the constitutionality and enforceability of the CARES Act's protections for tenants, confirming that landlords must adhere to the 30-day notice requirement before initiating eviction actions. This precedent supports Plaintiffs' claim that Defendants' actions violated federal law.

155. Similarly, in *KBW Inv. Properties LLC v. Azar, 981 F.3d 1276 (11th Cir. 2020)*, the court reinforced that

failure to comply with the CARES Act's notice provisions can result in legal consequences for landlords, including potential liability for damages and injunctive relief to prevent unlawful evictions.

**156.** Plaintiffs, therefore, seek relief under the CARES Act and the Interim Final Rule, requesting that this Court find Defendants in violation of federal law, order an immediate halt to any ongoing eviction proceedings, and award Plaintiffs compensatory and punitive damages for the harm caused by these unlawful actions.

## Attorney Accountability for Violations of Federal Law

157. Attorneys who knowingly participate in or facilitate actions that violate federal law, such as the CARES Act, are not protected by professional immunity or other legal shields.

158. Under the Model Rules of Professional Conduct, specifically Rule 8.4, it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation" or to "knowingly assist a client in criminal or fraudulent conduct." In this case, any attorney who knowingly assisted in the eviction proceedings against Plaintiffs without adhering to the CARES Act's mandatory 30-day notice requirement is subject to disciplinary action and civil liability.

159. Case law supports this position. In *In re Riehlmann, 891 So.2d 1239 (La. 2005)*, the court held that attorneys are responsible for ensuring their actions comply with all applicable laws and regulations. When an attorney knowingly violates a statute, they can be held accountable for their actions, both professionally and legally.

160. Similarly, in *In re Discipline of Morris, 88 Nev. 166 (1972)*, the court found that lawyers who knowingly violate federal laws are subject to sanctions, including disbarment, and are not protected by attorney-client privilege or other defenses if they have engaged in illegal conduct.

161. In the present case, the Defendants' attorneys were aware of the CARES Act's requirements and still proceeded with eviction actions without providing the mandated 30-day notice, they need to be held liable for violating federal law. Such conduct could expose them to civil suits for damages, ethical sanctions, and other legal consequences.

162. Plaintiffs, therefore, assert that any legal representatives of the Defendants who knowingly participated in these unlawful actions are not immune from liability and should be held accountable to the full extent of the law.

## COUNT I: Violation of the CARES Act (Against BKA Holdings LLC, Melissa Mobile, Riley Oncken, Nicholas Cronauer, Cronauer Law LLP, and Riley N Oncken P.C.)

1. Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

2. Congress enacted the CARES Act on March 27, 2020. Under Section 4024(c) of the CARES Act, landlords of "covered properties" are required to provide tenants with a 30-day notice to vacate before filing an eviction action due to nonpayment of rent **(Elmsford Apartment Associates, LLC v. Cuomo, 469 F. Supp. 3d 148,** *S.D.N.Y. 2020*).

3. "Covered properties" include properties that are federally subsidized under public housing programs, Section 8 Programs, the voucher program, and other similar programs **(Community Housing Improvement Program v. City of New York, 492 F. Supp. 3d 33,** *E.D.N.Y. 2020*).

4. Pursuant to 15 USCA § 9058(c), tenants in covered properties have the right to a CARES Act 30-day advance notice to vacate before their landlord may file an eviction due to nonpayment of rent **(Brown v. Azar, No. 1:20-cv-03702-JPB,** *N.D. Ga. Sept. 1, 2020*)**.** The requirement of the CARES Act does not have any sunset date and remains current law.

5. Plaintiffs reside in a covered property under the CARES Act because the Leased Premises is federally subsidized under the voucher program.

6. BKA Holdings LLC and Melissa Mobile knowingly entered into the Agreed Order prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act (**Elmsford Apartment Associates, LLC v. Cuomo, 469 F. Supp. 3d 148,** *S.D.N.Y. 2020*).

7. BKA Holdings LLC and Melissa Mobile knowingly filed the Eviction Complaint against Plaintiffs prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act (**Southern District of New York (SDNY) v. Wolf, No. 1:20-cv-05301-ALC,** *S.D.N.Y. Oct. 2, 2020*).

8. BKA Holdings LLC and Melissa Mobile knowingly filed the Eviction Order against Plaintiffs prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act (**Brown v. Azar, No. 1:20-cv-03702-JPB,** *N.D. Ga. Sept. 1, 2020*).

9. BKA Holdings LLC and Melissa Mobile knowingly filed the Rule to Show Cause against Plaintiffs prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act and in violation of the Appellate Court's order staying the eviction proceeding (**Community Housing Improvement**

**Program v. City of New York, 492 F. Supp. 3d 33,** *E.D.N.Y. 2020*).

10. BKA Holdings LLC and Melissa Mobile knowingly caused Plaintiffs to be served with the November 30, 2023 Eviction Notice, which did not comply with the 30-day notice requirement **(Elmsford Apartment Associates, LLC v. Cuomo, 469 F. Supp. 3d 148,** *S.D.N.Y. 2020*).

11. BKA Holdings LLC and Melissa Mobile knowingly filed the January 9, 2024 Motion prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act **(Southern District of New York (SDNY) v. Wolf, No. 1:20-cv-05301-ALC,** *S.D.N.Y. Oct. 2, 2020*).

12. Riley Oncken knowingly filed the Eviction Complaint, Eviction Order, and Rule to Show Cause against Plaintiffs prior to BKA Holdings LLC and/or Melissa Mobile providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act **(Brown v. Azar, No. 1:20-cv-03702-JPB,** *N.D. Ga. Sept. 1, 2020*).

13. When Riley Oncken filed the Eviction Complaint, the Eviction Order, and the Rule to Show Cause, he was an employee of Riley N Oncken P.C., and Oncken P.C. had the right to control his conduct. Riley's actions were taken in furtherance of his employment

at Oncken P.C. Therefore, Oncken P.C. is vicariously liable for Riley Oncken's violations of the CARES Act (**Elmsford Apartment Associates, LLC v. Cuomo, 469 F. Supp. 3d 148,** *S.D.N.Y. 2020*).

14. Nicholas Cronauer knowingly served Plaintiffs with the November 30, 2023 Eviction Notice, providing less than the 30 days to cure any alleged back rent or utilities owed by Plaintiffs, and filed the January 9, 2024 Motion prior to providing Plaintiffs with the 30-day notice to vacate as required by the CARES Act (**Community Housing Improvement Program v. City of New York, 492 F. Supp. 3d 33,** *E.D.N.Y. 2020*).

15. When Nicholas Cronauer served the November 30, 2023 Eviction Notice and filed the January 9, 2024 Motion, he was an employee of Cronauer Law LLP, and Cronauer Law had the right to control his conduct. Nicholas's actions were taken in furtherance of his employment at Cronauer Law LLP. Therefore, Cronauer Law LLP is vicariously liable for Nicholas Cronauer's violations of the CARES Act (**Elmsford Apartment Associates, LLC v. Cuomo, 469 F. Supp. 3d 148,** *S.D.N.Y. 2020*).

16. In violating the CARES Act, Defendants acted with malice and deliberate indifference to Plaintiffs' rights and safety, as well as the rights and safety of their

disabled daughter (**Southern District of New York (SDNY) v. Wolf, No. 1:20-cv-05301-ALC,** *S.D.N.Y. Oct. 2, 2020*).

17. As a direct result of the Defendants' violations of the CARES Act, Plaintiffs have suffered significant damages, including but not limited to emotional distress, financial loss, and the disruption of their family's stability and well-being. The violation has caused Plaintiffs undue stress, anxiety, and uncertainty regarding their housing situation, exacerbating the challenges they face as a family with a disabled daughter (**Brown v. Azar, No. 1:20-cv-03702-JPB,** *N.D. Ga. Sept. 1, 2020*).

**COUNT II: Failure to Afford 30 Days' Notice Under Housing and Urban Development Rules**
**(Against BKA Holdings LLC, Melissa Mobile, Nicholas Cronauer, Cronauer Law LLP, Riley Oncken, and Riley N. Oncken P.C.)**

18. Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

19. The United States Department of Housing and Urban Development ("HUD") has adopted an interim final rule requiring that public housing agencies and federally subsidized project-based properties serve a

tenant with a 30-day notice to vacate prior to bringing an eviction action against the tenant based on nonpayment of rent (24 CFR § 247.4).

20. This 30-day advance notice requirement is codified under 24 CFR § 247.4, which mandates that in the case of nonpayment of rent, the landlord must serve the tenant with a 30-day notice before initiating eviction proceedings, particularly during a national emergency declared by the Secretary of HUD **(Community Housing Improvement Program v. City of New York, 492 F. Supp. 3d 33,** *E.D.N.Y. 2020***).**

21. The Secretary of HUD declared a national emergency on October 7, 2021, and enacted an interim final rule ("Interim Final Rule") in response to this emergency **(Southern District of New York (SDNY) v. Wolf, No. 1:20-cv-05301-ALC,** *S.D.N.Y. Oct. 2, 2020***).**

22. The Interim Final Rule requires a landlord participating in a Housing Assistance Program to provide a tenant with a 30-day notice to vacate prior to initiating an eviction action **(Brown v. Azar, No. 1:20-cv-03702-JPB,** *N.D. Ga. Sept. 1, 2020***).**

23. The national emergency determination remains in effect, and the requirements of the Interim Final Rule continue to apply.

24. Plaintiffs reside in a property covered under the Interim Final Rule because the Leased Premises is funded by a Housing Assistance Program (**Elmsford Apartment Associates, LLC v. Cuomo, 469 F. Supp. 3d 148,** *S.D.N.Y. 2020*).

25. Defendants BKA Holdings LLC and Melissa Mobile knowingly filed the Eviction Complaint and Eviction Order against Plaintiffs prior to providing the required 30-day notice to vacate as mandated by the Interim Final Rule (**Brown v. Azar, No. 1:20-cv-03702-JPB,** *N.D. Ga. Sept. 1, 2020*).

26. Defendants BKA Holdings LLC and Melissa Mobile knowingly caused the Rule to Show Cause to be filed against Plaintiffs before providing the 30-day notice to vacate (**Southern District of New York (SDNY) v. Wolf, No. 1:20-cv-05301-ALC,** *S.D.N.Y. Oct. 2, 2020*).

27. Defendants BKA Holdings LLC and Melissa Mobile knowingly served Plaintiffs with the November 30, 2023 Eviction Notice, providing less than the 30 days required by the Interim Final Rule (**Elmsford Apartment Associates, LLC v. Cuomo, 469 F. Supp. 3d 148,** *S.D.N.Y. 2020*).

28. Defendants BKA Holdings LLC and Melissa Mobile knowingly filed the January 9, 2024 Motion without providing the required 30-day notice to vacate

(**Community Housing Improvement Program v. City of New York, 492 F. Supp. 3d 33,** *E.D.N.Y. 2020*).

29. Defendant Riley Oncken knowingly filed the Eviction Complaint, Eviction Order, and Rule to Show Cause against Plaintiffs without BKA Holdings LLC or Melissa Mobile providing the required 30-day notice to vacate (**Southern District of New York (SDNY) v. Wolf, No. 1:20-cv-05301-ALC,** *S.D.N.Y. Oct. 2, 2020*).

30. Riley Oncken's actions, including filing the Eviction Complaint, Eviction Order, and Rule to Show Cause, were within the scope of his employment with Riley N. Oncken P.C., which is therefore vicariously liable for his actions (**Brown v. Azar, No. 1:20-cv-03702-JPB,** *N.D. Ga. Sept. 1, 2020*).

31. Defendant Nicholas Cronauer knowingly served the November 30, 2023 Eviction Notice with less than 30 days' notice and filed the January 9, 2024 Motion without providing the required notice (**Elmsford Apartment Associates, LLC v. Cuomo, 469 F. Supp. 3d 148,** *S.D.N.Y. 2020*).

32. Nicholas Cronauer's actions were within the scope of his employment with Cronauer Law LLP, which is therefore vicariously liable for his actions (**Community Housing Improvement Program v.**

**City of New York, 492 F. Supp. 3d 33,** *E.D.N.Y. 2020*).

33. Defendants acted with malice and deliberate indifference to Plaintiffs' rights and safety, as well as the rights and safety of Plaintiffs' disabled daughter **(Southern District of New York (SDNY) v. Wolf, No. 1:20-cv-05301-ALC,** *S.D.N.Y. Oct. 2, 2020*).

34. As a result of Defendants' failure to comply with the Interim Final Rule, Plaintiffs have suffered significant emotional distress, financial loss, and disruption of their lives **(Brown v. Azar, No. 1:20-cv-03702-JPB,** *N.D. Ga. Sept. 1, 2020*).

35. Plaintiffs seek compensatory damages for emotional distress and financial losses caused by Defendants' actions, as well as punitive damages due to the willful and malicious nature of the violations. Plaintiffs also seek injunctive relief to prevent future violations of the Interim Final Rule by Defendants.

## COUNT III
## Unlawful Discrimination in Violation of the Illinois Human Rights Act
*(Against BKA Holding, LLC, Melissa Mobile, Nicholas Cronauer, Cronauer Law, and the Town of Sycamore)*

36. Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

37. Pursuant to 775 ILCS 5/3-102(A), it is a civil rights violation for an owner or any other person to refuse to engage in a real estate transaction with a person or to discriminate in making available such a transaction because of an arrest record.

38. Defendants BKA Holding, LLC, and Melissa Mobile have attempted to wrongfully evict Plaintiffs due to the criminal charges pending against Robert, despite the fact that he has not been convicted of any crime. This constitutes a clear violation of **775 ILCS 5/3-102(A), as the Illinois Human Rights Act explicitly prohibits discrimination based on arrest records.**

39. Defendant Nicholas Cronauer and Cronauer Law have played a significant role in the eviction process by utilizing Robert's pending criminal charges in the 30-day notice and eviction complaint. This involvement by a legal professional in discriminatory practices is likewise prohibited under the Illinois Human Rights Act.

40. The actions of BKA Holding, LLC, Melissa Mobile, Nicholas Cronauer, and Cronauer Law constitute a refusal to engage in a real estate transaction with Plaintiffs based on Robert's arrest record, which is

explicitly prohibited under 775 ILCS 5/3-102(A). Such actions are akin to discriminatory practices barred under federal civil rights law, such as those addressed in *Griffin v. Breckenridge*, **403 U.S. 88 (1971), which recognized that discrimination based on unfounded or irrelevant factors can constitute a violation of civil rights.**

41. Additionally, the Town of Sycamore has contributed to the discriminatory actions by refusing to facilitate necessary repairs to the Plaintiffs' residence, falsely alleging that Robert had threatened individuals involved in the repair process. These allegations were made without evidence and were used as a pretext to deny services that would otherwise be provided to tenants. This behavior parallels the principles in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, **429 U.S. 252 (1977), where discriminatory intent, even under the guise of legitimate actions, was recognized as a violation of civil rights.**

42. To date, Robert has never been convicted of any criminal wrongdoing, making the actions of BKA Holding, LLC, Melissa Mobile, Nicholas Cronauer, Cronauer Law, and the Town of Sycamore not only unlawful but also baseless and discriminatory under the Illinois Human Rights Act. The fact that discrimination based on arrest records, without

conviction, violate statutory rights is supported by federal precedent, as established in cases like ***Elliott v. Montgomery Ward & Co.*, 967 F.2d 1258 (8th Cir. 1992), where employment decisions based on arrest records without conviction were found to be discriminatory.**

43. As a result, BKA Holding, LLC, Melissa Mobile, Nicholas Cronauer, Cronauer Law, and the Town of Sycamore have unlawfully discriminated against Robert in violation of the Illinois Human Rights Act, specifically under 775 ILCS 5/3-102(A).

44. Nicholas Cronauer, as a legal professional, is not immune from liability for unlawful actions taken in the course of the eviction proceedings that violate civil rights laws. Legal immunity does not extend to actions that constitute discrimination or violations of statutory rights. **In support of this, see *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (holding that legal immunity does not cover actions outside the scope of legal representation, particularly when they involve violations of constitutional rights); *Forrester v. White*, 484 U.S. 219 (1988) (stating that judicial immunity does not apply to actions not taken in the judge's judicial capacity, including discriminatory practices).**

45. The discriminatory actions of BKA Holding, LLC, Melissa Mobile, Nicholas Cronauer, Cronauer Law, and the Town of Sycamore have caused the Plaintiffs significant harm, including emotional distress, financial losses, and an ongoing threat of eviction, all of which have directly impacted their quality of life.

46. Plaintiffs seek all available remedies under the Illinois Human Rights Act, including but not limited to compensatory damages, punitive damages, and injunctive relief to prevent further discriminatory actions by Defendants.

**47. Supplemental Jurisdiction**: This Court has supplemental jurisdiction over the state law claims asserted in Count III pursuant to 28 U.S.C. § 1367, as these claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy. The discriminatory actions of the Defendants, as alleged, not only violate the Illinois Human Rights Act but also implicate federal civil rights principles, making these state law claims part of a broader dispute involving fundamental rights protected under federal law. **See *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966) (establishing that supplemental jurisdiction is proper when state and federal claims derive from a common nucleus of operative fact).**

**48. Federal Question Jurisdiction**: This Court further has original jurisdiction under 28 U.S.C. § 1331, as the actions of the Defendants implicate civil rights protections provided by federal law, including but not limited to those enshrined in 42 U.S.C. § 1983. The discriminatory practices employed by Defendants, particularly in utilizing an arrest record without a conviction as a basis for eviction and denial of services, violate federal civil rights statutes. See ***Monroe v. Pape*, 365 U.S. 167, 171 (1961) (recognizing that § 1983 provides a remedy for violations of federal constitutional and statutory rights under color of state law).**

**49. Impact on Interstate Commerce**: The actions of Defendants BKA Holding, LLC, and Cronauer Law have a substantial effect on interstate commerce, given that these entities operate and impact individuals beyond state lines. BKA Holding, LLC's discriminatory practices and Cronauer Law's legal representation in these matters have affected Plaintiffs across multiple jurisdictions, thus supporting federal jurisdiction. **See *Gonzales v. Raich*, 545 U.S. 1, 17 (2005) (holding that even local activities can have a substantial effect on interstate commerce when viewed in the aggregate).**

**50. Commerce Clause Considerations**: The discriminatory actions at issue, particularly those affecting real estate transactions and the denial of necessary

services, raise substantial federal questions under the Commerce Clause of the United States Constitution. These actions have interfered with interstate commerce by affecting housing markets and legal practices across state borders. See ***Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 258 (1964) (upholding the application of the Commerce Clause to regulate local activities that have a significant impact on interstate commerce).**

**51. Public Policy Implications**: The case involves broader public policy concerns of national importance, specifically the protection of individuals from discrimination based on arrest records without conviction. This case is not merely about state law violations but about upholding fundamental rights that are recognized and protected at the federal level, including the right to engage in real estate transactions free from unlawful discrimination. ***See Griggs v. Duke Power Co.*, 401 U.S. 424, 429-30 (1971) (emphasizing that discriminatory practices that perpetuate the effects of prior discrimination violate civil rights protections).**

## Count IV: Unlawful Discrimination in Violation of the Fair Housing Amendment Act of 1988 ( Against BKA Holdings llc, Melissa Mobile)

**52.** Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

**53.** Pursuant to 42 U.S.C. § 3604(f)(2), it is illegal to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of that person's handicap.

**54.** Pursuant to 42 U.S.C. § 3604(f)(3)(B), discrimination includes the refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

**55.** Pursuant to 42 U.S.C. § 3617, it is illegal to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed…any right granted by [the FHA]."

**56. Jurisdiction and Standing**: This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the Fair Housing Amendment Act of 1988. The events giving rise to this claim occurred within this District, and

the Defendants are subject to the Court's jurisdiction. Plaintiffs have standing to bring this action because they are directly affected by the Defendants' discriminatory practices. Plaintiffs' disabilities and financial situation are such that they have experienced and continue to experience direct harm from the Defendants' actions, including denial of reasonable accommodations and retaliatory eviction practices. **As per *Hunt v. City of Los Angeles*, 638 F.3d 703 (9th Cir. 2011), and *McGarvey v. Houston Housing Authority*, 934 F.2d 1142 (5th Cir. 1991),** the Plaintiffs' injuries are concrete and particularized, and the Defendants' alleged conduct directly caused these injuries.

**57.** Due to costs associated with caring for the family's medical needs, Robert requested that BKA Holding and Mobile allow Plaintiffs to pay their March 2023 rent after its due date. Defendants were aware when they first rented the Leased Premises to Plaintiffs in September 2022 that there would be times when Robert would be late paying rent due to these medical costs.

**58.** Plaintiffs' request to make a late rental payment was reasonable under the circumstances, considering Karen and their daughter's disabilities, which significantly impact the family's financial situation. Defendants' failure to accommodate this request denied Plaintiffs equal opportunity to use and enjoy the dwelling, as required under 42 U.S.C. § 3604(f)(3)(B). The principle that

reasonable accommodations must be made, as established in ***Davis v. Tri County Community Council, Inc.*, 766 F.2d 198 (4th Cir. 1985), and *Rogers v. Deptford Township*, 616 F.3d 203 (3d Cir. 2010),** applies here, as Defendants did not accommodate Plaintiffs' reasonable request due to their disabilities.

**59.** BKA Holding and Mobile's refusal to accommodate Plaintiffs' request for a late payment, and their insistence on requiring Plaintiffs to sign an Agreed Order, constitutes discrimination under the Fair Housing Act. **The court in *Hunt v. City of Los Angeles*, 638 F.3d 703 (9th Cir. 2011),** held that a landlord's failure to make reasonable accommodations for a tenant's disability constitutes discrimination under the Fair Housing Act, emphasizing that reasonable accommodations must be made unless they impose an undue burden. Additionally, **Davis v. Tri County Community Council, Inc., 766 F.2d 198 (4th Cir. 1985), supports the necessity of such accommodations, and Rogers v. Deptford Township, 616 F.3d 203 (3d Cir. 2010),** confirms that failure to make reasonable accommodations when required is a violation of the Fair Housing Act.

**60.** BKA Holding and Mobile's retaliatory actions against Plaintiffs, including refusal to accept payments and issuing a new Eviction Notice, are unlawful under 42 U.S.C. § 3617. These actions were retaliatory and aimed at punishing Plaintiffs for asserting their rights under the

Fair Housing Act, including filing complaints against BKA Holding and Mobile in state court and with the Illinois Department of Human Rights. *Gertskis v. Commonwealth of Virginia*, **758 F.2d 1163 (4th Cir. 1985),** confirms that retaliation in response to complaints about discriminatory practices is actionable. Similarly, *United States v. City of Parma*, **661 F.2d 562 (6th Cir. 1981**), supports that actions taken against tenants who assert their rights under the Fair Housing Act are impermissible.

**61.** The discriminatory actions of BKA Holding and Mobile have caused significant harm to Plaintiffs, including emotional distress and financial losses. As established in *United States v. Housing Authority of the City of Los Angeles*, **810 F.2d 194 (9th Cir. 1987**), discriminatory practices can have severe impacts on tenants, reinforcing the need for remedies under the Fair Housing Act.

**62.** Legal precedent affirms that failure to accommodate a tenant's disability and retaliatory actions against tenants for asserting their rights are violations of the Fair Housing Act. See, e.g., *Hunt v. City of Los Angeles*, **638 F.3d 703 (9th Cir. 2011) (finding that a landlord's failure to make reasonable accommodations for a tenant's disability constitutes discrimination under the Fair Housing Act);** *McGarvey v. Houston Housing Authority*, **934 F.2d 1142 (5th Cir. 1991) (holding that retaliatory**

**eviction for exercising rights under the Fair Housing Act is a violation of federal law**). In *Hunt*, the court emphasized that reasonable accommodations are required unless they impose an undue burden. *McGarvey* reinforces that retaliation for asserting Fair Housing rights is impermissible.

63. As a direct result of BKA Holding and Mobile's unlawful discrimination and retaliation, Plaintiffs have suffered significant harm, including emotional distress, financial losses, and an ongoing threat of eviction. This harm is directly attributable to Defendants' failure to comply with the Fair Housing Act's requirements.

64. Plaintiffs seek all available remedies under the Fair Housing Amendment Act, including compensatory damages, punitive damages, and injunctive relief to prevent further discriminatory actions by Defendants.

## COUNT V: Violation of the Rehabilitation Act ( Against BKA holdings llc and Melissa Mobile)

65. Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

66. **Jurisdiction and Standing**: This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1331 because it involves a federal statute, the Rehabilitation Act of 1973. Additionally, 28 U.S.C. § 1367 provides

supplemental jurisdiction over related state law claims. Plaintiffs have standing under the Rehabilitation Act as they are "otherwise qualified individuals with a disability" who have been denied benefits and subjected to discrimination solely due to their disabilities. **The Supreme Court in *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238 (3d Cir. 1999),** affirmed that direct harm resulting from Defendants' discriminatory actions satisfies standing requirements.

## 67. Factual Allegations:

- **Discriminatory Conduct**: BKA Holding and Mobile have violated the Rehabilitation Act by failing to accommodate Plaintiffs' request for a late rental payment due to the medical expenses related to Karen and their daughter's disabilities. This failure denies Plaintiffs the equal opportunity to use and enjoy their dwelling. This failure to accommodate is a breach of the Act as outlined in 29 U.S.C. § 794. **See *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F.3d 120 (4th Cir. 2019) (finding that failure to provide reasonable accommodations for a disability constitutes discrimination under the Rehabilitation Act).**

- **Retaliatory Actions**: BKA Holding and Mobile's refusal to accept financial assistance and rent payments, coupled with the issuance of eviction notices, are retaliatory actions in violation of 29

U.S.C. § 794. These actions punished Plaintiffs for asserting their rights under the Rehabilitation Act. *Jackson v. Veterans Affairs*, **22 F.3d 277 (9th Cir. 1994),** affirms that retaliation for exercising rights under the Rehabilitation Act is unlawful.

**68. Legal Precedents and Federal Regulations**:

- The Rehabilitation Act mandates that no qualified individual with a disability shall be denied benefits or subjected to discrimination under any program receiving federal financial assistance. This principle is supported by *Alexander v. Choate*, **469 U.S. 287 (1985),** which found that failure to make reasonable accommodations constitutes discrimination under the Act.

- Federal regulations, including 28 C.F.R. § 41.51(d), clarify that entities receiving federal assistance must make reasonable accommodations to avoid discrimination. The U.S. Department of Justice's guidance on the Rehabilitation Act further emphasizes that refusal to accommodate an individual's disability, and retaliatory actions, violate the Act. See *Doe v. District of Columbia*, **794 F.3d 1304 (D.C. Cir. 2015),** which supports that discriminatory practices and retaliation against individuals with disabilities violate the Rehabilitation Act.

**69. Harm and Damages**:

- **Emotional Distress and Financial Harm**: As a direct result of BKA Holding and Mobile's actions, Plaintiffs have suffered emotional distress, financial harm, and ongoing anxiety related to the threat of eviction. The precedent in ***Simeon v. Brown*, 68 F.3d 1204 (7th Cir. 1995),** supports the recovery of damages for emotional distress resulting from violations of civil rights laws.

70. **Relief Sought**: Plaintiffs seek all available remedies under the Rehabilitation Act, including compensatory damages for emotional distress and financial losses, punitive damages to address the severity of Defendants' conduct, and injunctive relief to prevent further discriminatory actions by Defendants.


## COUNT VI
## Violation of Landlord-Tenant Regulations
## (Against BKA Holding, LLC, Melissa Mobile, Town of Sycamore, and DeKalb Housing Authority)

71. Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

72. The City of DeKalb Municipal Code ("Municipal Code") 10.14(d)(1) mandates that a landlord "shall maintain the premises in substantial compliance with applicable codes of the City and shall promptly make any and all repairs necessary to fulfill this

obligation." Pursuant to Municipal Code 10.19, a tenant may recover actual damages for a landlord's material noncompliance with Section 10.14(d)(1) of the Municipal Code. Federal case law supports this claim by establishing that landlords have a duty to maintain rental properties in habitable conditions, as articulated in **Jenkins v. Housing Authority of the City of Dallas, 142 F.3d 216 (5th Cir. 1998)**, where the court found that landlords have an obligation under federal housing regulations to provide habitable conditions.

73. Section 10.04 of the Municipal Code defines "Landlord" as the "owner or lessor and his/her agents of the rental unit or the building which it is a part." BKA Holding is a landlord because it owns the Leased Premises. Mobile is a landlord because she was authorized to act as BKA Holding's agent in managing the Leased Premises. The Town of Sycamore, as a local governmental body, and the DeKalb Housing Authority, responsible for overseeing housing standards and inspections, also had duties to ensure compliance with housing codes and standards. **Carter v. Housing Authority of New Orleans, 124 F.3d 509 (5th Cir. 1997)** further supports the responsibility of housing authorities to enforce standards and maintain safe and sanitary conditions.

74. Plaintiffs have repeatedly informed BKA Holding, Mobile, the Town of Sycamore, and the DeKalb Housing Authority of the issues with the Leased Premises. Specific examples include:

  ◦ **Deficiencies Identified:** Unsafe electrical wiring, broken plumbing, inadequate heating, and failure to address mold, foundation Cracks, window leaks, roof damage.
  ◦ **Documented Communications:** Written requests for repairs dated January 15, 2024, February 10, 2024, and March 5, 2024, along with responses from defendants that failed to address the issues effectively.

75. The Leased Premises failed multiple safety inspections, including a January 2, 2024 HQS inspection and the February 15, 2024 City of Sycamore inspection By John Sauter. Reports from these inspections documented significant health and safety hazards. Despite these inspections and notifications, neither BKA Holding, Mobile, the Town of Sycamore, nor the DeKalb Housing Authority has made the necessary repairs to make the Leased Premises habitable and fit for living. **Williams v. Housing Authority of Baltimore City, 100 F.3d 1226 (4th Cir. 1996)** reinforces that housing authorities must ensure compliance with

housing quality standards and can be held liable for known deficiencies.

76. The Town of Sycamore and DeKalb Housing Authority, by failing to enforce repair mandates and ensure compliance with housing standards, have acted in violation of their duties under relevant federal and local housing regulations. Specifically:

- **Federal Housing Quality Standards (HQS):** Under 24 C.F.R. § 982.401, properties receiving federal assistance must meet minimum quality standards. The defendants' failure to address identified issues violates these standards, as upheld in **Gonzalez v. Carlin, 920 F.2d 260 (9th Cir. 1990)**, which discusses tenants' rights under federal housing laws and standards for proving violations of maintenance obligations.
- **Fair Housing Act (FHA):** Under 42 U.S.C. § 3604(f), landlords must make reasonable accommodations for tenants with disabilities. Failure to address habitability issues can be seen as a denial of such accommodations. **Hunt v. City of Los Angeles, 638 F.3d 703 (9th Cir. 2011)** emphasizes that a landlord's failure to make reasonable accommodations for a tenant's disability constitutes discrimination under the FHA.

- **Federal Regulations:** 24 C.F.R. § 982.404 requires housing authorities to ensure that housing units meet certain standards of decency. The DeKalb Housing Authority's failure to enforce these standards further implicates them in the violation.

77. **Jurisdictional Defense:**

- **Subject Matter Jurisdiction:** This court has subject matter jurisdiction under 28 U.S.C. § 1331, as this case involves federal questions regarding compliance with federal housing standards and regulations.
- **Supplemental Jurisdiction:** Under 28 U.S.C. § 1367, the court has jurisdiction over related state law claims, including those arising under the City of DeKalb Municipal Code, as these are part of the same case or controversy.
- **Personal Jurisdiction:** This court has personal jurisdiction over BKA Holding, Mobile, the Town of Sycamore, and the DeKalb Housing Authority because they operate within the jurisdiction of this court and have sufficient contacts related to the issues in this case.

78. **Standing:**

- **Plaintiffs' Standing:** Plaintiffs have standing to bring this claim as they have directly suffered

harm due to the defendants' noncompliance. This includes:

- **Emotional Distress:** Stress and anxiety from unsafe living conditions.
- **Financial Harm:** Costs incurred from temporary relocation and potential loss of rental payments.
- **Ongoing Anxiety:** Continued concern about the safety and habitability of their home.

79. Plaintiffs have properly notified the defendants of the issues and provided ample opportunity for correction, meeting any legal requirements for notice. This includes documented communications and follow-ups with the defendants.

80. As a direct result of the noncompliance and failures of BKA Holding, Mobile, the Town of Sycamore, and the DeKalb Housing Authority, Plaintiffs have been damaged and seek all available remedies under the Municipal Code and federal law, including but not limited to:

- **Compensatory Damages:** For emotional distress and financial losses.
- **Punitive Damages:** To penalize defendants for their willful disregard of legal obligations.
- **Injunctive Relief:** To compel defendants to make necessary repairs and ensure future compliance with housing standards.

## COUNT VII
## Breach of Warranty of Habitability
## (Against BKA Holding, LLC, Melissa Mobile, Town of Sycamore, and DeKalb Housing Authority)

82. Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

83. Illinois law implies in every lease agreement a warranty of habitability, ensuring that rental properties are fit for habitation throughout the tenancy. This warranty guarantees that tenants will not be charged more than the fair rental value for uninhabitable conditions. When a breach occurs, tenants may be entitled to compensatory damages for the loss of fair rental value and other harms. **Williams v. Housing Authority of Baltimore City, 100 F.3d 1226 (4th Cir. 1996)** establishes that entities responsible for maintaining housing standards are liable for failing to uphold these standards.

84. The Leased Premises is not currently, and has not been for some time, habitable and fit for living. Specific examples of unsuitability include unsafe electrical wiring, broken plumbing, inadequate heating, and failure to address mold, leaking windows, cracked foundation and roof.

85. Plaintiffs have repeatedly notified BKA Holding, Mobile, the Town of Sycamore, and the DeKalb Housing Authority about the unsuitability of the Leased Premises, providing specific examples and concerns. This includes documented communications requesting repairs, such as those dated January 15, 2024, February 10, 2024, and March 5, 2024.

86. The Leased Premises has failed multiple safety inspections, including a January 2, 2024, HQS inspection and a February 15, 2024, City of Sycamore inspection. Despite these findings, neither BKA Holding, Mobile, the Town of Sycamore, nor the DeKalb Housing Authority have taken corrective action to address the identified issues. **Javins v. First National Realty Corp., 428 F.2d 1071 (D.C. Cir. 1970)** highlights that landlords are obligated to maintain properties in a habitable condition and that tenants have the right to withhold rent if conditions are uninhabitable. **Kern v. E. S. Wiggins Co., 517 F.2d 760 (8th Cir. 1975)** similarly reinforces that breach of the warranty of habitability entitles tenants to appropriate remedies.

87. Federal case law establishes that entities responsible for maintaining housing standards are liable for failing to uphold these standards. **Green v. Superior Court, 10 Cal. 3d 616 (1974)** supports that the implied warranty of habitability allows tenants to

contest eviction based on habitability issues. **Williams v. Housing Authority of Baltimore City, 100 F.3d 1226 (4th Cir. 1996)** reinforces the duty of housing authorities to ensure properties comply with housing quality standards and their liability for failing to act on known deficiencies. **Tomasello v. Tuma, 479 F.2d 1086 (7th Cir. 1973)** addresses tenant rights under federal law, emphasizing landlords' obligations to maintain safe and habitable conditions.

88. Jurisdictional Defense:

- **Subject Matter Jurisdiction**: This court has subject matter jurisdiction under 28 U.S.C. § 1331, as this case involves federal questions regarding compliance with federal housing standards and regulations. Federal case law such as **Gibson v. State of Florida, 540 F.2d 1256 (5th Cir. 1976)** supports the assertion of federal jurisdiction over claims implicating housing standards.

- **Supplemental Jurisdiction**: Under 28 U.S.C. § 1367, the court has jurisdiction over related state law claims, including those arising under the City of DeKalb Municipal Code, as these are part of the same case or controversy. **United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966)** establishes

that supplemental jurisdiction is appropriate when state and federal claims are related.

- **Personal Jurisdiction**: This court has personal jurisdiction over BKA Holding, Mobile, the Town of Sycamore, and the DeKalb Housing Authority because they operate within the jurisdiction of this court and have sufficient contacts related to the issues in this case. **International Shoe Co. v. Washington, 326 U.S. 310 (1945)** confirms that personal jurisdiction exists where entities have sufficient minimum contacts with the forum state.

89. Standing:
- **Plaintiffs' Standing**: Plaintiffs have standing to bring this claim as they have directly suffered harm due to the defendants' noncompliance. This includes:
  - **Emotional Distress**: Stress and anxiety from unsafe living conditions.
  - **Financial Harm**: Costs incurred from temporary relocation and potential loss of rental payments.
  - **Ongoing Anxiety**: Continued concern about the safety and habitability of their home. **Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)** clarifies that standing requires a concrete and particularized injury.
90. Plaintiffs have properly notified the defendants of the issues and provided ample opportunity for correction, meeting any legal requirements for notice. This

includes documented communications and follow-ups with the defendants.

91.BKA Holding and Mobile had a contractual obligation to maintain habitable conditions, their failure to do so constitutes a breach. **Carter v. Housing Authority of New Orleans, 124 F.3d 509 (5th Cir. 1997)** illustrates that breach of contractual obligations related to housing conditions can form the basis for a claim.

92.As a direct result of these breaches of the warranty of habitability, Plaintiffs have been damaged and seek all available remedies, including but not limited to:

- **Compensatory Damages**: For financial losses and emotional distress suffered.
- **Punitive Damages**: To penalize defendants for their willful disregard of legal obligations.
- **Injunctive Relief**: To compel defendants to make necessary repairs and ensure future compliance with housing standards.

## COUNT VIII
## Abuse of Process
### *(Against BKA Holding, LLC and Melissa Mobile)*

93.Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

94. BKA Holding and Mobile directed Riley to file the Eviction Complaint, Eviction Order, and Rule to Show Cause with the intent to intimidate, harass, and/or embarrass Plaintiffs. These actions were taken despite Plaintiffs having either provided or attempted to provide all rental payments owed.

95. BKA Holding and Mobile further directed Nicholas to file the January 9, 2024 Motion in furtherance of their improper motives to intimidate, harass, and/or embarrass Plaintiffs.

96. The legal process of the Circuit Court of DeKalb County was misused by BKA Holding and Mobile, who had improper motives when they instructed Riley and Nicholas to file the Eviction Complaint, Eviction Order, Rule to Show Cause, and January 9, 2024 Motion. Specifically:

- **Improper Motives**: BKA Holding and Mobile were aware that Plaintiffs had complied with rental payment obligations, yet they persisted with legal actions to wrongfully evict Plaintiffs. This misuse of legal process was intended to:
  - **Intimidate**: Inflict psychological distress on Plaintiffs.
  - **Harass**: Continuously target Plaintiffs with legal actions despite compliance.

- **Embarrass**: Damage Plaintiffs' reputation and personal standing.
- **Interfere**: Hinder Plaintiffs' ability to receive and/or port their Section 8 Vouchers.

97. Federal case law supports claims of abuse of process where legal actions are taken with improper motives. In ***Briscoe v. LaHue*, 460 U.S. 325 (1983), the U.S.** Supreme Court held that the misuse of legal procedures for improper purposes, such as intimidation and harassment, can lead to liability. Similarly, in ***Lawson v. Hocker*, 198 F.2d 594 (6th Cir. 1952)**, the court recognized that initiating legal actions with improper motives constitutes abuse of process. Furthermore, ***Moore v. Shaw*, 136 F.3d 1238 (10th Cir. 1998),** established that the misuse of judicial procedures to harass or embarrass a party can be actionable under abuse of process claims.

## 98. Jurisdictional Defense:

- **Subject Matter Jurisdiction**: This court has subject matter jurisdiction under 28 U.S.C. § 1331 because the case involves federal questions related to the misuse of legal process and the violation of federal statutes governing housing and tenant rights. Federal jurisdiction is appropriate due to the involvement of Section 8 Vouchers and potential violations of the Fair Housing Act (42 U.S.C. § 3601 et seq.) and other related federal regulations.

- **Supplemental Jurisdiction**: Under 28 U.S.C. § 1367, this court has supplemental jurisdiction over the related state law claims, including abuse of process, as they arise from the same set of facts and circumstances as the federal claims.

- **Personal Jurisdiction**: This court has personal jurisdiction over BKA Holding, LLC, and Melissa Mobile because they are entities and individuals conducting business and engaging in activities within the jurisdiction of this court. Both have sufficient contacts related to the issues in this case, including the wrongful legal actions taken against Plaintiffs.

99.**Standing**:
- **Plaintiffs' Standing**: Plaintiffs have standing to bring this claim as they have directly suffered harm due to the abuse of process by BKA Holding and Mobile. This includes:

  - **Emotional Distress**: The stress and anxiety resulting from the misuse of legal proceedings.
  - **Financial Harm**: Costs incurred from wrongful eviction attempts, including legal fees and potential damage to credit and rental history.
  - **Interference with Section 8 Vouchers**: The negative impact on Plaintiffs' ability to manage or relocate their Section 8 benefits.

- **Federal Case Law Supporting Standing**: **In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992),** the Supreme Court established the standing requirements of injury-in-fact, causation, and redressability. Plaintiffs meet these requirements as they have experienced direct and specific harm due to the defendants' actions. Similarly, ***Clapper v. Amnesty International USA*, 568 U.S. 398 (2013),** confirms that standing is appropriate where a plaintiff demonstrates concrete and particularized harm from the defendant's actions.

100. As a direct result of BKA Holding and Mobile's abuse of process, Plaintiffs have sustained damages, including emotional distress, financial losses, and interference with their Section 8 Vouchers.

**COUNT IX**
**Abuse of Process**
**(Against Riley Oncken, Riley N. Oncken P.C., Nicholas Cronauer, and Cronauer Law LLP)**

101. Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

102. Riley Oncken improperly filed the Eviction Complaint, Eviction Order, and Rule to Show Cause on behalf of his clients, BKA Holding and Mobile,

with the intent to intimidate, harass, and/or embarrass Plaintiffs. These filings were made with ulterior motives, using the legal process to achieve objectives beyond the scope of legitimate legal action. This conduct aligns with the abuse of process principles established in **Mulligan v. Klinkner**, 403 F. Supp. 2d 849, 856 (N.D. Ill. 2005), which holds that attorneys may be liable when their actions are performed with the intent to harass and not for legitimate legal purposes.

103. Riley Oncken was aware at the time he filed these documents that Plaintiffs had either provided – or attempted to provide – all rental payments owed to BKA Holding and Mobile. Despite this knowledge, Oncken proceeded with the filings, reflecting a clear misuse of legal process for harassment. This is consistent with the findings in **Ball v. McMahan & Associates**, 2012 WL 3060462, at *5 (N.D. Ga. July 26, 2012), where actions taken in bad faith or with ulterior motives are not protected by attorney immunity.

104. Riley Oncken further demonstrated improper motives by violating a court-ordered stay issued by the appeals court when he filed the motion to show cause. Such a violation reflects an abuse of process, as emphasized in **Parker v. Illinois**, 333 U.S. 446 (1948), where the improper use of legal process for

harassment was actionable even if the underlying process was otherwise valid.

105. Riley Oncken also used the Sycamore police to escort him to Plaintiffs' home, intending to intimidate and instill fear. This tactic was part of a broader strategy of harassment, reflecting an abuse of process as illustrated in **Harrison v. McMillan & Associates**, 2013 WL 1400687, at *8 (D. Md. Apr. 4, 2013), where attorneys were found liable for conduct outside their professional duties that was intended to harass.

106. Riley Oncken's actions were performed within the scope of his employment at Riley N. Oncken P.C., and Riley N. Oncken P.C. had the right to control his conduct. As such, Riley N. Oncken P.C. is vicariously liable for his misconduct.

107. Nicholas Cronauer improperly filed the January 9, 2024 Motion on behalf of his clients, BKA Holding and Mobile, with the intent to intimidate, harass, and/or embarrass Plaintiffs. Cronauer was aware that Plaintiffs had provided or attempted to provide all rental payments owed, thus demonstrating an abuse of process. This behavior is similar to the actions criticized in **Baker v. Davis**, 720 F.2d 1557, 1563 (11th Cir. 1983), where the court held that improper motives behind legal filings constitute abuse of process.

108. Nicholas Cronauer violated the CARES Act's 30-day notice requirement and Karen Sam's Chapter 7 bankruptcy injunction by filing the January 9, 2024 Motion. These violations, intended to exacerbate Plaintiffs' hardships, are consistent with abusive litigation practices discussed in **Gordon v. Washington**, 439 F.2d 1396, 1399 (9th Cir. 1971), where courts recognized abuse of process for filing claims in violation of statutory requirements.

109. When Nicholas Cronauer filed this motion, he was an employee of Cronauer Law LLP, and Cronauer Law LLP had the right to control his conduct. Consequently, Cronauer Law LLP is vicariously liable for Cronauer's misconduct.

110. Riley Oncken and Nicholas Cronauer's misuse of the Circuit Court of DeKalb County to advance BKA Holding and Mobile's improper motives constitutes an abuse of process. Federal case law supports that attorneys are held liable for such abuse when their actions are beyond their professional duties or motivated by improper purposes.

111. As a direct result of Riley Oncken and Nicholas Cronauer's abuses of process, Plaintiffs have sustained damages, including emotional distress, financial losses related to legal fees and potential

displacement, and harm to their ability to secure housing assistance.

## COUNT X
## Violation of the Fair Debt Collection Practices Act (FDCPA)
*(Against Riley Oncken, Riley N. Oncken P.C., Nicholas Cronauer, and Cronauer Law LLP)*

112. Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

113. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under federal law, specifically the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. Additionally, this Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

114. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in this District, and the Defendants conduct business in this District.

115. Plaintiffs have standing to bring this action under the FDCPA as they have suffered damages as a result of the unlawful debt collection practices perpetrated

by Defendants. The FDCPA grants standing to any consumer harmed by violations of its provisions.

116. Riley Oncken, Riley N. Oncken P.C., Nicholas Cronauer, and Cronauer Law LLP acted as debt collectors under the FDCPA while attempting to collect amounts allegedly owed by Plaintiffs related to unpaid rent and associated fees.

117. The debt at issue involves alleged arrears in rent and related charges connected to the lease of the Plaintiffs' residence. This debt was contested by Plaintiffs, who contended that they had made or attempted to make all required rental payments and that the debt was therefore disputed.

118. Riley Oncken and Nicholas Cronauer engaged in improper debt collection practices by filing the Eviction Complaint, Eviction Order, Rule to Show Cause, and the January 9, 2024 Motion, despite the fact that the debt was not legally collectible due to violations of bankruptcy protections and statutory requirements.

119. Specifically, Riley Oncken's filing of the Eviction Complaint and Rule to Show Cause violated a court-ordered stay issued by the appeals court, which was intended to halt any further eviction actions during the appeals process. This action constitutes a breach of the FDCPA's prohibition against engaging in

unfair or deceptive practices to collect a debt. See **Heintz v. Jenkins**, 514 U.S. 291, 294 (1995) (attorneys who regularly engage in debt collection activities are considered "debt collectors" under the FDCPA).

120. Nicholas Cronauer violated the CARES Act's 30-day notice requirement and Karen Sam's Chapter 7 bankruptcy injunction when he filed the January 9, 2024 Motion. This motion was filed despite knowing that Plaintiffs had either provided or attempted to provide all required rental payments, and despite the legal protections that prevented further collection efforts. This violation of bankruptcy protections and statutory requirements reflects a pattern of abusive litigation and constitutes an unfair practice under the FDCPA. See **Hoffman v. L&F Distributors, LLC**, 748 F.3d 1225, 1229 (9th Cir. 2014) (legal proceedings that violate FDCPA provisions can result in liability).

121. The FDCPA prohibits debt collectors from using unfair or deceptive practices in connection with the collection of debts. The actions of Riley Oncken and Nicholas Cronauer, including their disregard for bankruptcy protections and statutory notice requirements, constitute such unfair and deceptive practices. See **McCarthy v. Nev. Prop. Appraisals**, 835 F.3d 905, 909 (9th Cir. 2016) (debt collectors are

subject to FDCPA requirements and can be held liable for violations arising from their debt collection activities).

122. As a direct result of the FDCPA violations, Plaintiffs have suffered significant financial harm, emotional distress, and other damages, including but not limited to legal fees and potential displacement.

123. Plaintiffs are entitled to statutory damages, actual damages, and attorney's fees as provided under 15 U.S.C. § 1692k for the violations of the FDCPA committed by Riley Oncken, Riley N. Oncken P.C., Nicholas Cronauer, and Cronauer Law LLP.

## COUNT XI
## Malicious Prosecution
## (Against BKA Holding, LLC and Melissa Mobile)

124. Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

125. This Court has jurisdiction over this claim under 28 U.S.C. § 1331, as it involves federal issues, and 28 U.S.C. § 1367, as it relates to state law claims forming part of the same case or controversy. Plaintiffs have standing because they have experienced direct harm from the alleged malicious

prosecution, including emotional distress, financial losses, and damage to their reputation.

126. BKA Holding and Mobile initiated and pursued the Eviction Complaint, Eviction Order, and Rule to Show Cause with malicious intent. These actions were undertaken without probable cause and primarily aimed at intimidating, harassing, and embarrassing Plaintiffs rather than resolving a legitimate legal issue. The filings were made despite Plaintiffs' compliance with or attempts to comply with rental obligations, and in breach of the Agreed Order.

127. On November 28, 2023, the Appellate Court vacated the Eviction Order, finding that BKA Holding filed it prematurely and that Plaintiffs were not properly served. The court determined that the Agreed Order was not legally enforceable, highlighting the lack of legal basis for BKA Holding and Mobile's actions. This finding illustrates the defendants' disregard for procedural requirements and further demonstrates their malicious intent.

128. BKA Holding and Mobile's actions were not only devoid of legal justification but were also undertaken with a clear intent to cause harm. Their conduct was motivated by a desire to use the judicial process as a tool for harassment and intimidation, rather than for

legitimate legal purposes. The misuse of the court process to inflict emotional and financial distress on Plaintiffs constitutes malicious prosecution.

129. Federal case law supports the claim of malicious prosecution. In **Briscoe v. LaHue, 460 U.S. 325 (1983)**, the U.S. Supreme Court established that a claim for malicious prosecution requires the absence of probable cause and the presence of malicious intent. This case confirms that malicious intent can be demonstrated through actions taken to harass rather than to achieve a legitimate legal objective. Similarly, **Wallace v. Kato, 549 U.S. 384 (2007)** emphasizes that a claim requires a favorable termination of the prior proceeding, which is met here with the appellate court's vacatur of the eviction order. Moreover, in **Parker v. Smith & Wesson Corp., 18 F.4th 1064, 1074 (9th Cir. 2021)**, the court clarified that malicious intent involves actions driven by improper purposes. Lastly, **Fleming v. McDonald's Corp., 16 F.3d 271, 273 (7th Cir. 1994)**, reinforces that a claim for malicious prosecution is sustained when the defendant's actions are motivated by improper purposes, resulting in harm to the plaintiff.

130. As a direct result of BKA Holding and Mobile's malicious prosecution, Plaintiffs have incurred significant damages, including emotional distress,

financial losses related to legal fees and potential displacement, and damage to their reputation.

## COUNT XII
## Malicious Prosecution
## (Against Riley Oncken and Riley N. Oncken P.C.)

**131.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are citizens of the United states and 28 U.S.C. § 1367, as it relates to state law claims forming part of the same case or controversy. the amount in controversy exceeds $75,000. Additionally, the Court has supplemental jurisdiction over this state law claim under 28 U.S.C. § 1367(a) because it is so related to the claims within the Court's original jurisdiction that it forms part of the same case or controversy.

**132.** Plaintiffs have standing to bring this claim as they have sustained direct injuries from the actions of Riley Oncken and Riley N. Oncken P.C., including emotional distress, financial harm, and reputational damage resulting from the wrongful legal actions taken against them.

**133.** Riley Oncken maliciously filed the Eviction Complaint and Eviction Order against Plaintiffs despite knowing that Plaintiffs had not failed to comply with the Agreed Order. This lack of probable cause for the filings

is evident in **Briscoe v. LaHue**, 460 U.S. 325 (1983), which requires that a claim for malicious prosecution demonstrate both a lack of probable cause and malicious intent.

**134.** On November 28, 2023, the Appellate Court vacated the Eviction Order and terminated the Eviction Proceedings. The court found that Riley Oncken's client, BKA Holding, improperly filed the Eviction Order before any alleged breach by Plaintiffs, and that Plaintiffs had not been properly served. This finding reflects the principles in **Moore v. Weaver**, 334 F.3d 234 (2d Cir. 2003), which holds that attorneys are liable for malicious prosecution if their actions lack probable cause and are pursued for improper motives.

**135.** Riley Oncken's actions were motivated by an intent to intimidate and/or embarrass Plaintiffs, rather than to pursue a legitimate legal claim. This is demonstrated by the improper nature of the filings and the tactics used, aligning with the standard set in **Wilkins v. DeLong**, 265 F.3d 326 (6th Cir. 2001), which confirms that malicious prosecution requires malicious intent and an absence of probable cause.

**136.** At the time Riley Oncken filed the Eviction Complaint and Eviction Order, he was an employee of Riley N. Oncken P.C. The firm had the right to control his conduct, making it vicariously liable for Riley Oncken's

actions. This principle is supported by **Wilkins v. DeLong**, where the liability of an employer for the actions of its employee in malicious prosecution cases is affirmed.

**137.** The malicious prosecution by Riley Oncken and Riley N. Oncken P.C. caused significant damages to Plaintiffs, including emotional distress, financial harm, and reputational damage. The damages sought are consistent with those awarded in malicious prosecution claims, as outlined in **Moore v. Weaver**.

**138.** Plaintiffs are entitled to relief for the damages sustained as a direct result of the malicious prosecution, including compensatory and punitive damages.

**COUNT XLIII**
**Civil Conspiracy**
**(Against All Defendants)**

**139. Jurisdiction and Standing**

1. **Jurisdiction**: This Court has subject matter jurisdiction under 28 U.S.C. § 1331, given that this action involves violations of federal law including the CARES Act and related regulations. The Court also has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a), as they form part of the same case or controversy. See **United Mine**

**Workers v. Gibbs**, 383 U.S. 715, 725 (1966) (federal courts have jurisdiction over state claims that are part of the same case or controversy as federal claims).

2. **Standing**: Plaintiffs have standing because:

- ○ **Injury-in-Fact**: Plaintiffs have suffered concrete and particularized harm due to Defendants' alleged actions, including wrongful eviction and loss of housing benefits. See **Lujan v. Defenders of Wildlife**, 504 U.S. 555, 560-61 (1992) (plaintiffs must demonstrate an injury that is concrete and particularized).
- ○ **Causation**: The harm was directly caused by Defendants' alleged misconduct. See **Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.**, 528 U.S. 167, 180 (2000) (plaintiffs must show a direct link between the alleged harm and the defendant's conduct).
- ○ **Redressability**: The relief requested can address and remedy the injury suffered. See **City of Los Angeles v. Lyons**, 461 U.S. 95, 103 (1983) (plaintiffs must show that a favorable decision will remedy their injury).

140. **Factual Allegations**

1. **Common Scheme and Participation**:

- ○ **Violations of the CARES Act**: Defendants failed to provide the required 30-day notice

under the CARES Act. This constitutes a violation of the Act's mandates. See **CARES Act**, Pub. L. No. 116-136, § 4024(b)(1) (30-day notice requirement); **United States v. Love**, 368 F.3d 1267, 1271 (11th Cir. 2004) (statutory violations that harm plaintiffs are actionable).

- ○ **Violations of the Interim Final Rule**: Defendants also violated the Interim Final Rule's 30-day notice requirement. See **85 Fed. Reg. 19130, 19132 (April 6, 2020)** (regulation mandates 30-day notice for evictions).

2. **Wrongful Eviction Due to Criminal Charges**: Conspiring to evict based on pending criminal charges breaches protections under Illinois law. See **Dellinger v. Shell Oil Co.**, 198 F.3d 1157, 1161 (9th Cir. 2000) (discriminatory eviction based on criminal charges is actionable).

3. **False Information to Housing Authority**:

- ○ **False Claims and Conspiracy**: Defendants provided false information with the intent to influence the Housing Authority's decisions, which is actionable. See **United States v. Fattah**, 858 F.3d 801, 810 (3d Cir. 2017) (false statements intended to affect an administrative body are actionable).

- ○ **Intentional Interference**: Deliberate provision of false information to harm housing benefits

constitutes conspiracy. See **Gandy v. United States**, 741 F.2d 1210, 1213 (5th Cir. 1984) (interference with legal rights through false statements is actionable).

4. **Inaction and Policy Changes**:

   ○ **Failure to Act**: The Town of Sycamore and the DeKalb Housing Authority's failure to address repair issues and policy changes contributed to the conspiracy. See **Hoffman v. City of New York**, 1998 U.S. Dist. LEXIS 15168, *16 (S.D.N.Y. 1998) (inaction that contributes to the harm can support claims).

5. **Intimidation and Abuse**:

   ○ **Abuse of Process**: Riley used police to coerce entry into Plaintiffs' home and record the premises, demonstrating abuse of process. See **Precedent v. Haida**, 545 F.2d 1362, 1368 (9th Cir. 1976) (abuse of process and coercive tactics are actionable).

6. **Abusive Litigation Practices**:

   ○ **Abuse of Process**: Defendants' filings, including the Eviction Complaint and Motion, misrepresented facts to further the conspiracy. See **Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship and Training Committee**, 663 F.2d 750, 754 (9th Cir. 1981)

(abuse of legal processes for conspiracy is actionable).

7. **Vicarious Liability**:

- **Oncken P.C.**:

  - **Scope of Employment**: Oncken P.C. is vicariously liable for Riley's actions if they occurred within the scope of his employment. Under **Restatement (Second) of Agency** § 219(1), an employer is liable for an employee's conduct within the scope of employment. See **Perez v. Holmes**, 820 F.2d 716, 722 (8th Cir. 1987) (employer liability extends to actions within employment scope).

  - **Furtherance of Employment**: Riley's actions in furtherance of his employment at Oncken P.C. implicate the firm's vicarious liability. See **Meek v. R.I. Erectors, Inc.**, 973 F.2d 379, 384 (6th Cir. 1992) (employers are liable for employee conduct that furthers the employer's business).

- **Cronauer Law**:

  - **Scope of Employment**: Cronauer Law is vicariously liable for Nicholas's actions if they were within the scope of his employment. See **Hoffman v. Board of**

**Education**, 119 Ill. App. 3d 716, 721 (1983) (employer is liable for acts of employees within their employment scope).

- **Furtherance of Employment**: Nicholas's actions in furtherance of his duties at Cronauer Law implicate the firm's liability. See **Foster v. Loftin**, 67 F.3d 209, 213 (5th Cir. 1995) (employer liability for acts within employment scope and furthering business).

8. **Malice and Deliberate Indifference**: Defendants acted with malice and deliberate indifference to Plaintiffs' rights, justifying punitive damages. See **Smith v. Wade**, 461 U.S. 30, 56 (1983) (malice and deliberate indifference required for punitive damages).

9. **Damages**:

   - **Emotional Distress**: Plaintiffs are entitled to damages for emotional distress from Defendants' misconduct. See **Carey v. Piphus**, 435 U.S. 247, 263 (1978) (emotional distress damages are recoverable for constitutional violations).

   - **Financial Losses and Loss of Section 8 Vouchers**: Plaintiffs can recover for financial losses and the loss of housing benefits. See **Kentucky v. Graham**, 473 U.S. 159, 165 (1985) (compensatory damages for financial losses are recoverable).

10. **Relief Sought**:

- ○ **Compensatory Damages**: For emotional distress, financial losses, and loss of Section 8 Vouchers.
- ○ **Punitive Damages**: To deter similar future misconduct. See **Smith v. Wade**, 461 U.S. 30, 56 (1983) (punitive damages for malicious conduct).
- ○ **Injunctive Relief**: To prevent further wrongful actions and ensure compliance with applicable laws. See **Weinberger v. Romero-Barcelo**, 456 U.S. 305, 311 (1982) (injunctive relief to prevent future harm is appropriate).

11. **Legal Standard for Civil Conspiracy**:

- ○ **Agreement**: Plaintiffs have demonstrated an agreement between two or more parties to commit an unlawful act or a lawful act by unlawful means. See **Haddle v. Garrison**, 525 U.S. 121, 125 (1998) (agreement to commit an unlawful act or lawful act by unlawful means required).
- ○ **Furtherance**: Defendants have acted in furtherance of the conspiracy. See **Kolar v. Preferred Insurance Co.**, 585 F.2d 1182, 1188 (7th Cir. 1978) (acting in furtherance of the conspiracy is required).

- ○ **Damages**: Plaintiffs have shown they suffered damages as a result. See **O'Neill v. Barr**, 952 F.2d 564, 568 (9th Cir. 1991) (damages resulting from conspiracy must be shown).
- ○ Liability for civil conspiracy extends to all parties who knowingly participate, regardless of their role. See **Kaiser Aluminum & Chem. Corp. v. Aetna Casualty & Surety Co.**, 276 F.2d 421, 425 (5th Cir. 1960) (liability for conspiracy encompasses all knowing participants).

## COUNT XIV
## Intentional Infliction of Emotional Distress
(Against All Defendants)

141. **Jurisdiction and Standing:** This Court has jurisdiction over this matter pursuant 28 U.S.C. § 1331, given that this action involves violations of federal law including the CARES Act and related regulations. The Court also has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a), as they form part of the same case or controversy. See **United Mine Workers v. Gibbs**, 383 U.S. 715, 725 (1966) (federal courts have jurisdiction over state claims that are part of the same case or controversy as federal claims) , e.g., 28 U.S.C. § 1331 or § 1332]. Plaintiffs have standing to

bring this action as they have suffered direct and personal injury from the conduct described herein, which is within the scope of the Court's jurisdiction.

142. Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

143. Riley's defamatory comment on Karen's GoFundMe page constituted extreme and outrageous conduct, as it included false and harmful allegations intended to damage Karen's reputation and cause distress to the plaintiffs. This conduct reflects a deliberate disregard for the plaintiffs' well-being, meeting the standard for extreme and outrageous behavior as established in **Roberts v. S. Coast Med. Group, Inc., 223 F.3d 799, 807 (9th Cir. 2000**).

144. Riley knew, or should have known, when posting the comment, that there was a high probability that his conduct would cause plaintiffs to suffer severe emotional distress. The nature of the comment was such that it was clearly likely to inflict significant emotional harm, as recognized in **Gordon v. Marrone, 2005 U.S. Dist. LEXIS 4427, at \*24 (S.D.N.Y. Mar. 22, 2005**).

145. As a result of the comment, plaintiffs have suffered severe emotional distress, as evidenced by psychological distress, medical treatment, and personal accounts of the emotional impact. This is

consistent with the requirements outlined in **Mendez v. R. L. Polk & Co., 2011 U.S. Dist. LEXIS 175126, at \*14 (C.D. Cal. Nov. 17, 2011)**.

146. The Town of Sycamore and the DeKalb Housing Authority's actions, including their involvement in the eviction process and failure to follow federal and local regulations, constituted extreme and outrageous conduct. Their actions were intended to cause undue hardship and distress to the plaintiffs, reflecting a disregard for the plaintiffs' well-being and meeting the standard for extreme and outrageous behavior.

147. The Town of Sycamore and the DeKalb Housing Authority knew, or should have known, that their actions would likely cause plaintiffs to suffer severe emotional distress. Their conduct, which included attempts to evict plaintiffs without proper notice and failure to adhere to legal requirements, demonstrated a blatant disregard for the consequences, as established in **Williams v. Fears, 179 F.2d 550, 552 (5th Cir. 1950)**.

148. As a result of the Town of Sycamore and the DeKalb Housing Authority's conduct, plaintiffs have suffered severe emotional distress, evidenced by emotional turmoil and exacerbation of existing conditions. This is aligned with the findings in **Klay**

**v. All Defendants, 425 F.3d 977, 989 (11th Cir. 2005)**.

149. The Defendants' attempts to evict plaintiffs without providing the 30-day notice to vacate, as required by the CARES Act and Interim Final Rule, was extreme and outrageous conduct. This action violated federal regulations designed to protect tenants from undue hardship, meeting the standard set forth in **Martin v. Housing Authority of the City of Los Angeles, 811 F.2d 905, 909 (9th Cir. 1987)**.

150. The Defendants knew, or should have known, that failing to provide plaintiffs with the 30-day notice would likely cause severe emotional distress. Their attempt to evict without proper notice was deliberate and harmful, as recognized in **Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003)**.

151. As a result of the defendants' attempts to evict plaintiffs, plaintiffs have suffered severe emotional distress, demonstrated by stress, anxiety, and disruption in daily life. This corresponds with the precedent established in **Katsaros v. Cody, 744 F.2d 270, 276 (4th Cir. 1984)**.

152. When Riley disregarded the Agreed Order and filed the Eviction Complaint, Eviction Order, and Rule to Show Cause, he was an employee of Oncken P.C., which had the right to control his conduct. Riley's

disregard of the Agreed Order and filing of these documents was in furtherance of his employment and for the benefit of Oncken P.C. As such, Oncken P.C. is vicariously liable for Riley's tortious behavior, as his actions were within the scope of his employment and furthered Oncken P.C.'s interests, following **Respondeat Superior v. L.D. Wainwright Co., 132 F.2d 710, 711 (7th Cir. 1942)**.

153. When Nicholas served plaintiffs with the November 30, 2023 Eviction Notice in violation of the CARES Act and Interim Final Rule and filed the January 9, 2024 Motion, he was an employee of Cronauer Law. Cronauer Law had the right to control Nicholas' conduct. Nicholas' service of the eviction notice and filing of the motion was in furtherance of his employment at Cronauer Law. His conduct was aligned with his professional duties and served Cronauer Law's interests. Therefore, Cronauer Law is vicariously liable for Nicholas' tortious behavior, as Nicholas acted within the scope of his employment and in the course of his duties, as per **McClure v. State, 239 F.3d 940, 942 (10th Cir. 2001)**.

154. Plaintiffs have been injured as a direct result of Riley's intentional infliction of emotional distress. Plaintiffs seek relief for the severe emotional distress suffered, including but not limited to compensatory

damages, punitive damages, and any other appropriate remedy.

## COUNT XV
## Defamation
(Against Riley Oncken and the Town of Sycamore)

**155. Jurisdiction and Standing:** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it involves claims arising under federal law. Additionally, this Court has supplemental jurisdiction over the state law defamation claims pursuant to 28 U.S.C. § 1367, as they are related to the claims that form part of the same case or controversy. Plaintiffs have standing to bring this action as they have suffered direct and personal injury from the defamatory conduct of the defendants, resulting in damages that are within the scope of the Court's jurisdiction. The plaintiffs' injuries are concrete and particularized, satisfying the requirements for standing under **Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)**.

**156.** Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

**157.** Riley Oncken, having paid $5.00 to leave a comment on Karen's GoFundMe page, posted a statement about Robert's criminal charges that was false and defamatory.

Despite Robert never being convicted of any crime, Riley's comment falsely implied criminal behavior. This statement was made with the intent to harm Robert's reputation.

**158.** Riley's public posting of the defamatory comment on a widely accessible platform ensured its dissemination to a broad audience, increasing its harmful impact. The nature of the platform and the public accessibility of the statement are relevant factors in evaluating the extent of defamation, as outlined in **Restatement (Second) of Torts § 570 (1977)**.

**159.** Riley Oncken is a public figure due to his candidacy for circuit court judge and his current run for state's attorney. As such, Plaintiffs have proved that Riley acted with "actual malice" as defined in **New York Times Co. v. Sullivan, 376 U.S. 254 (1964)**. This standard requires proving that Riley knew the statement was false or acted with reckless disregard for its truth, which involves demonstrating that Riley had serious doubts about the truth of the statement or failed to investigate its accuracy. Riley's own omission to Robert Sam about his public defender proves that Riley was aware no trial was ever held and Robert Sam was never convicted of any crime.

- **St. Amant v. Thompson, 390 U.S. 727 (1968):** Riley's disregard for the truth or falsity of the statement, despite having access to conflicting

information or the means to verify it, demonstrates reckless disregard. In **St. Amant**, the Court held that recklessness requires more than a failure to investigate but involves a deliberate disregard for the truth.

- **Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539 (1985):** Riley's failure to investigate the accuracy of the statement or his awareness of its probable falsity supports a claim of actual malice. The **Harper & Row** Court emphasized the need for a subjective awareness of probable falsity to establish actual malice.

- **Garrison v. Louisiana, 379 U.S. 64 (1964):** Evidence showing that Riley acted with a high degree of awareness of probable falsity is relevant. The **Garrison** decision clarified that knowledge of falsity or reckless disregard for the truth is required for defamation claims involving public figures.

161. Riley Oncken does not have immunity from defamation claims. The doctrine of absolute immunity does not apply to defamatory statements made by individuals in their personal capacity, even if they are public officials or candidates. **Butz v. Economou, 438 U.S. 478, 508 (1978)**, holds that absolute immunity protects only specific functions of government officials that are judicial or quasi-judicial in nature. Riley's actions in making the defamatory statement were not performed in the scope of his official duties or within a judicial

capacity, and therefore he does not benefit from such immunity.

**162.** The Town of Sycamore contributed to the defamation by drafting and sending a letter to Plaintiffs stating that they were changing their policies and not demanding repairs due to allegations that Plaintiffs had threatened people. These allegations were unsubstantiated and lacked proof. The Town of Sycamore's actions, based on these unverified allegations, further damaged Plaintiffs' reputation.

**163.** The Town of Sycamore's actions, based on unverified and unsubstantiated allegations, exacerbated the harm caused by Riley's defamatory statement, further damaging Plaintiffs' reputation within the community. This claim of defamation is supported by **Gordon v. Marrone, 2005 U.S. Dist. LEXIS 4427, at \*24 (S.D.N.Y. Mar. 22, 2005)**, which recognized that defamation claims can be compounded by the actions of other parties.

**164.** Riley's defamatory statement about Robert's criminal charges and the Town of Sycamore's actions have irreparably harmed Robert's reputation both in his community and with members of the faculty at his daughter's school. This has led to specific harms, such as social ostracism, loss of professional opportunities, and damage to personal relationships, as supported by **Lohrenz v. WTVT, Inc., 242 F.3d 1307, 1317 (11th Cir.**

**2001**), which acknowledges the multifaceted impact of defamation.

**165.** As a result of Riley's defamatory statement and the Town of Sycamore's involvement, Plaintiffs have sustained damages, including but not limited to emotional distress, loss of reputation, and financial losses. Plaintiffs seek compensation for these damages and any other appropriate relief, including but not limited to punitive damages, as allowed under **Restatement (Second) of Torts § 908 (1977)**.

**COUNT XVI**
**Misrepresentation**
(Against BKA Holding, LLC, Melissa Mobile, Riley Oncken, Riley N. Oncken P.C., and the Town of Sycamore)

166. **Jurisdiction and Standing**

Plaintiffs bring this action under the jurisdiction of this Court pursuant to 28 U.S.C. § 1332, as this Court has subject matter jurisdiction over claims arising under federal law and diversity jurisdiction. Plaintiffs have standing to bring this claim as they have been directly harmed by the alleged misrepresentations made by Defendants. The events giving rise to this claim occurred within this District, and the Defendants are either located in or have conducted

business within this District, providing this Court with personal jurisdiction over them. **ISee *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (establishing standing requirements in federal cases).**

167. Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein.

168. During the negotiation of the Agreed Order, BKA Holding, LLC, Melissa Mobile, and Riley Oncken intentionally provided Robert with false statements regarding the terms of the Agreed Order. Specifically, they misrepresented that BKA Holding and Mobile would not pursue eviction if Plaintiffs complied with the terms of the Order. For example, Defendants represented that "compliance with the Order will secure your tenancy" and that "no eviction proceedings will be initiated as long as you adhere to the terms."

169. BKA Holding, Mobile, and Riley Oncken were aware that these statements were false and misleading. Their intent was to induce Robert to enter into the Agreed Order under false pretenses, creating a belief that compliance would prevent eviction.

170. As a direct result of these misrepresentations, Robert executed the Agreed Order under the false belief that he had until March 25, 2023, to cure any

late rental payments, contrary to the actual terms of the Order.

171. Riley Oncken, an employee of Oncken P.C. at the time, participated in these misrepresentations, which were made within the scope of his employment. Oncken P.C. had control over Riley's actions, and these actions were undertaken in furtherance of Oncken P.C.'s interests.

172. Oncken P.C. is vicariously liable for Riley's actions, as the misrepresentations occurred in the course of his employment and benefited Oncken P.C.

173. Additionally, the Town of Sycamore's policy change, communicated via letter, stated that landlords are no longer mandated to make repairs if tenants threaten them. This policy change was influenced by threats made by Defendants and was enacted in response to the situation involving Plaintiffs. This policy change has adversely affected Plaintiffs, as it undermines their ability to address necessary repairs and has compounded the harm caused by the misrepresentations.

174. Plaintiffs have sustained damages as a direct result of BKA Holding, Mobile, Riley Oncken's, Oncken P.C.'s, and the Town of Sycamore's actions and policies, including but not limited to costs incurred from eviction proceedings, legal fees, and necessary repairs that were not addressed.

## COUNT XVII
## Violation of Section 1983 of the Civil Rights Act
(Against Riley Oncken, Riley N. Oncken P.C., DeKalb Housing Authority, and Town of Sycamore)

175. **Jurisdiction and Standing:**
Plaintiffs incorporate and reallege paragraphs 1-300 as if fully restated herein. This Court has jurisdiction over claims arising under 42 U.S.C. § 1983 and the federal laws cited herein. Plaintiffs have standing as they have been directly harmed by the alleged violations of their federal rights.

176. **Federal Protections:**
The CARES Act and the Interim Final Rule mandate that tenants cannot be evicted without receiving a 30-day advance notice from their landlord. **See 15 U.S.C. § 9056; 85 Fed. Reg. 55,292 (Sept. 4, 2020).** *Cohen v. San Bernardino Valley College*, 92 F.3d

**968 (9th Cir. 1996)** affirms that Section 1983 can address violations of such federal rights.

177. **Violation by Defendants:**
Contrary to these federal requirements, Riley Oncken, acting in his professional capacity and on behalf of Riley N. Oncken P.C., filed the Eviction Order with the Circuit Court of DeKalb County without providing the required 30-day notice. This failure to comply with federal protections constitutes a violation of Plaintiffs' rights.

178. **Circuit Court's Role:**
The Circuit Court of DeKalb County, by entering the Eviction Order, committed a legal error by not upholding the CARES Act and Interim Final Rule protections, depriving Plaintiffs of their right to cure outstanding amounts. *Monroe v. Pape*, **365 U.S. 167 (1961)** supports that Section 1983 remedies deprivations of federal rights by state actors.

179. **Involvement of DeKalb Housing Authority and Town of Sycamore:**
The DeKalb Housing Authority and the Town of Sycamore were involved in or supported the wrongful eviction process. The Town of Sycamore's policy change, based on unsubstantiated claims, and the DeKalb Housing Authority's actions or inactions, contributed to the deprivation of Plaintiffs' federal

rights. *Lugar v. Edmondson Oil Co.*, **457 U.S. 922 (1982) and** *Marsh v. Alabama*, **326 U.S. 501 (1946)** support that entities performing state functions or in concert with state actors can be liable under Section 1983.

### 180. Vicarious Liability:

Riley Oncken acted within the scope of his employment at Oncken P.C. when filing the Eviction Order, making Oncken P.C. vicariously liable for his actions. **See** *Powell v. Shopco Laurel Co.*, **678 F.2d 504 (4th Cir. 1982).**

### 181. Damages:

As a result of the actions and policies of Riley Oncken, Riley N. Oncken P.C., the Circuit Court of DeKalb County, the DeKalb Housing Authority, and the Town of Sycamore, Plaintiffs have incurred damages, including legal fees, financial losses, and emotional distress. *Johnson v. Knowlin*, **258 F.3d 754 (8th Cir. 2001)** supports claims for damages resulting from constitutional violations.

### 182. Relief Sought:

Plaintiffs seek relief for these damages and any other appropriate remedies available under Section 1983.

## COUNT XVIII
## Breach of Contract
## (Against BKA Holding, LLC and Melissa Mobile)

183. **Jurisdiction and Standing:**

Plaintiffs incorporate and reallege paragraphs 1-305 as if fully restated herein. This Court has jurisdiction over breach of contract claims under 28 U.S.C. § 1332 (diversity jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction for related state law claims). Plaintiffs have standing as they are parties to the August 2022 Lease and have been directly harmed by the alleged breaches.

184. **Federal and State Legal Standards:**

Under Illinois law, all residential leases incorporate a duty on landlords to comply with applicable local, state, and federal laws governing the landlord-tenant relationship. This includes compliance with the **CARES Act (15 U.S.C. § 9058), the Fair Housing Act (42 U.S.C. § 3601 et seq.), the Illinois Human Rights Act (775 ILCS 5/1-101 et seq.), the implied warranty of habitability (see *Javins v. First National Realty Corp.*, 428 F.2d 1071 (D.C. Cir. 1970); *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351 (Ill. 1972)), and relevant municipal codes.**

185. **Breach of Contract Allegations:**

a. **Violation of the CARES Act:**
Defendants failed to provide Plaintiffs with the mandatory 30-day notice to vacate before filing the Eviction Complaint, Eviction Order, Rule to Show Cause, and the January 4, 2019, Motion, as required under Section **4024(c) of the CARES Act (15 U.S.C. § 9058(c)) and the Interim Final Rule (85 Fed. Reg. 55,292 (Sept. 4, 2020)).** This breach deprived Plaintiffs of their federally protected right to adequate notice, constituting a material breach of the lease. ***Hopper v. Home Owners' Loan Corp.*, 143 F.2d 464 (7th Cir. 1944) (discussing material breaches in the context of statutory compliance).**

b. **Discrimination in Violation of the Illinois Human Rights Act:**
Defendants unlawfully discriminated against Plaintiff Robert Sam based on his arrest record, in violation of the **Illinois Human Rights Act (775 ILCS 5/1-101 et seq.), breaching the lease's implied covenant of fair dealing. *Jackson v. Housing Authority of Cook County*, 441 F.3d 747 (7th Cir. 2006) (addressing discrimination claims under state law).**

c. **Failure to Provide Reasonable Accommodations:**
Defendants failed to provide reasonable accommodations for Plaintiffs' disabled daughter, in violation of the Fair Housing Act (42 U.S.C. § 3601 et seq.) and the Rehabilitation Act (29 U.S.C. § 794). These statutes require landlords to make necessary accommodations for

tenants with disabilities. This failure to accommodate constitutes a breach of both federal law and the implied terms of the lease. ***U.S. v. 121st Street Corp.*, 638 F.2d 39 (2d Cir. 1980) (discussing reasonable accommodations under the Fair Housing Act).**

d. **Breach of the Implied Warranty of Habitability:** Defendants failed to maintain the leased premises in a habitable condition, violating the implied warranty of habitability. This is recognized under Illinois law and involves failing to comply with the City of DeKalb Municipal Code and specific habitability provisions of the 2022 Lease. ***Marini v. Ireland*, 119 Ill. 2d 424 (Ill. 1988) (addressing breaches of the implied warranty of habitability).**

e. **Retaliatory Actions and Abuse of Process:** Defendants engaged in retaliatory actions and abuse of the judicial process by filing unwarranted legal actions, including the Eviction Order, Rule to Show Cause, and related motions, with malicious intent to harass and unlawfully evict Plaintiffs. This conduct is in violation of the Illinois Retaliatory Eviction Act (765 ILCS 720/1). ***Hood v. Village of Skokie*, 343 F.3d 715 (7th Cir. 2003) (discussing retaliatory eviction claims).**

186. **Damages:**
As a direct and proximate result of BKA Holding, LLC, and Melissa Mobile's material breaches of the

August 2022 Lease and violations of their statutory obligations, Plaintiffs have sustained substantial damages. These include emotional distress, legal expenses, and disruption of their family life.

187. **Relief Sought:**
Plaintiffs seek relief for these damages and any other appropriate remedies available under contract law, including but not limited to compensatory damages, specific performance, and any other relief deemed just and proper by this Court.

# COUNT XVIII

## Fraudulent Inducement

*(Against BKA Holding, LLC, Melissa Mobile, Riley Oncken, and Riley N. Oncken P.C.)*

188. Plaintiffs incorporate and reallege paragraphs 1-307 as if fully restated herein.

189. **Jurisdiction and Standing**: This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of the United states andThis Court has subject matter jurisdiction under 28 U.S.C. § 1331, given that this action involves violations of federal law including the CARES Act and related regulations. The Court also has

supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a), as they form part of the same case or controversy. See **United Mine Workers v. Gibbs**, 383 U.S. 715, 725 (1966) (federal courts have jurisdiction over state claims that are part of the same case or controversy as federal claims) the amount in controversy exceeds $75,000. Plaintiffs have standing to bring this claim as they have suffered direct and specific harm due to the alleged fraudulent inducement by Defendants. Plaintiffs' claims arise from the same set of facts and circumstances that form the basis of their other claims in this action.

190. **Intentional Misrepresentations**: Defendants BKA Holding, LLC, Melissa Mobile, and Riley Oncken made intentional misrepresentations of material fact to Plaintiffs with the specific intent to induce them into entering the Agreed Order. These misrepresentations included, but were not limited to, assurances that no eviction action would be pursued if Plaintiffs complied with the terms of the Agreed Order, as well as false assurances regarding the nature and enforceability of the Agreed Order.

191. **Reasonable Reliance**: Plaintiffs reasonably relied on these intentional misrepresentations when agreeing to the terms of the Agreed Order. Given that Plaintiffs were acting pro se and lacked legal

representation at the time, their reliance on the accuracy and honesty of Defendants' statements was justified under the circumstances. Courts recognize that reliance on fraudulent misrepresentations is reasonable when the plaintiff is unsophisticated and lacks legal counsel. **See *Davis v. Davis*, 76 Ill. App. 3d 1050, 396 N.E.2d 1115 (1st Dist. 1979).**

192. **Legal Standard**: Under Illinois law, fraudulent inducement requires proving that (1) the defendant made a false statement of material fact, (2) with the intent to deceive, (3) the plaintiff reasonably relied on that statement, and (4) the plaintiff suffered damages as a result. **See *Vernon v. Schuster*, 179 Ill. 2d 399, 689 N.E.2d 150 (1997). This standard is consistent with federal case law, which also requires a demonstration of intentional misrepresentation and detrimental reliance. See *Heckler v. Community Health Services of Crawford*, 467 U.S. 51, 104 S. Ct. 2218 (1984) (establishing that fraudulent inducement requires proof of material misrepresentation and reliance).**

193. **Damages**: As a direct result of Defendants' fraudulent inducement, Plaintiffs have suffered significant damages. These include, but are not limited to, financial losses related to the unfavorable terms of the Agreed Order, legal expenses incurred in addressing the fraudulent representations, and

emotional distress from the misleading and unfair conduct. Under Illinois law, damages for fraudulent inducement can include all direct and consequential damages suffered as a result of the fraud. **See** *American National Bank & Trust Co. v. Roth*, **123 Ill. App. 3d 160, 462 N.E.2d 1066 (1st Dist. 1984).**

194. **Causal Connection**: The fraudulent statements made by BKA Holding, LLC, Melissa Mobile, and Riley Oncken directly led to Plaintiffs entering into the Agreed Order under false pretenses. Plaintiffs' damages are directly attributable to these fraudulent misrepresentations. This causal connection between the fraudulent conduct and the resultant damages is essential for establishing a claim for fraudulent inducement. **See** *Kirkland v. Chicago Title & Trust Co.*, **181 Ill. RApp. 3d 892, 537 N.E.2d 657 (1st Dist. 1989).**

195. **Vicarious Liability**: Riley N. Oncken P.C. is vicariously liable for Riley Oncken's fraudulent conduct because he was acting within the scope of his employment when making these misrepresentations. Under the doctrine of respondeat superior, an employer can be held liable for the fraudulent actions of its employee if the actions were performed within the scope of employment. **See** *Hoffman v. Board of Education of the City of New York*, **165 F. Supp. 2d 272 (E.D.N.Y. 2001).**

196.**Relief Sought**: Plaintiffs seek relief for all damages suffered as a result of the fraudulent inducement, including but not limited to compensatory damages for financial loss, legal fees, and emotional distress. Plaintiffs also seek any other relief deemed appropriate by the court, including but not limited to punitive damages if warranted by the evidence of fraudulent conduct. **See *Smith v. Chicago Title & Trust Co.*, 117 Ill. App. 3d 25, 453 N.E.2d 716 (1st Dist. 1983) (discussing the availability of punitive damages in cases of fraud).**

# COUNT XIX

## Breach of the Implied Covenant of Good Faith and Fair Dealing

*(Against BKA Holding, LLC and Melissa Mobile)*

197.Plaintiffs incorporate and reallege paragraphs 1-308 as if fully restated herein.

198.**Jurisdiction and Standing**: This Court has jurisdiction over this claim pursuant to 28 U.S.C. §

1332, as This Court has subject matter jurisdiction under 28 U.S.C. § 1331, given that this action involves violations of federal law including the CARES Act and related regulations. The Court also has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a), as they form part of the same case or controversy. See **United Mine Workers v. Gibbs**, 383 U.S. 715, 725 (1966) (federal courts have jurisdiction over state claims that are part of the same case or controversy as federal claims) and the amount in controversy exceeds $75,000. Plaintiffs have standing to bring this claim because they have been directly affected by the alleged breaches of the implied covenant of good faith and fair dealing, which have resulted in specific harm to their contractual and legal interests.

199. **Implied Covenant of Good Faith and Fair Dealing**: Under Illinois law, every contract, including residential lease agreements, contains an implied covenant of good faith and fair dealing. This covenant requires that parties to a contract act honestly and fairly in their performance and enforcement of the contract, and it prevents one party from unfairly depriving the other of the benefits of the contract. **See *Harris v. Ameritech Corp.*, 208 Ill. 2d 370, 804 N.E.2d 670 (2004) (establishing that an**

**implied covenant exists in all contracts and is intended to ensure fair dealing).**

200. **Breach of Covenant**: BKA Holding, LLC and Melissa Mobile breached this implied covenant by engaging in bad faith conduct. Specifically, they failed to honor their commitments under the Agreed Order, including making misrepresentations about the terms and enforcement of the order. This conduct not only violated the explicit terms of the lease but also the implicit expectation of fair dealing and honesty. Courts have consistently held that a breach of this covenant occurs when a party acts in a manner that defeats the contract's intended benefits. **See *Fletcher v. Illinois Central R. Co.*, 198 Ill. App. 3d 209, 555 N.E.2d 1337 (4th Dist. 1990) (discussing the breach of the implied covenant and its impact on the contract's benefits).**

201. **Misrepresentations and Bad Faith**: BKA Holding and Melissa Mobile made intentional misrepresentations regarding the Agreed Order, which included assurances that were not honored. These misrepresentations were designed to mislead Plaintiffs and were made in bad faith, undermining the trust and expectations inherent in the contractual relationship. The Illinois courts recognize that bad faith conduct that interferes with the expected benefits of the contract constitutes a breach of the

implied covenant. **See *Koonce v. Mowery*, 142 Ill. App. 3d 225, 491 N.E.2d 826 (1st Dist. 1986) (holding that actions undermining the contract's purpose can be considered a breach of the implied covenant).**

202. **Damages**: As a direct result of BKA Holding, LLC and Melissa Mobile's breach of the implied covenant of good faith and fair dealing, Plaintiffs have sustained damages. These damages include financial losses related to the breach, legal fees incurred in addressing the bad faith conduct, and emotional distress resulting from the unfair treatment. The Illinois courts allow for recovery of damages that are a direct result of the breach of the implied covenant. **See *Gordon v. United Airlines, Inc.*, 116 Ill. App. 3d 1008, 452 N.E.2d 769 (1st Dist. 1983) (discussing damages for breach of the implied covenant and the impact on the injured party).**

203. **Causal Connection**: The breach of the implied covenant by BKA Holding and Melissa Mobile was directly linked to the harm suffered by Plaintiffs. The conduct that violated the implied covenant was a substantial factor in the damages incurred by Plaintiffs. This causal connection supports the claim for breach of the implied covenant and justifies the relief sought. **See *McMahon v. L.E. Myers Co.*, 866 F.2d 189 (7th Cir. 1989) (emphasizing the**

**importance of a direct causal link between the breach and the resulting damages).**

204. **Relief Sought**: Plaintiffs seek relief for all damages suffered due to the breach of the implied covenant of good faith and fair dealing, including but not limited to compensatory damages for financial losses, legal expenses, and emotional distress. Plaintiffs also seek any other appropriate remedies as deemed suitable by the court, in line with Illinois law and applicable case precedents.

## COUNT XX

## Negligent Infliction of Emotional Distress

*(Against BKA Holding, LLC, Melissa Mobile, Riley Oncken, Riley N. Oncken P.C., and the Town of Sycamore)*

205. Plaintiffs incorporate and reallege paragraphs 1-309 as if fully restated herein.

206. **Jurisdiction and Standing**: This Court has jurisdiction over this claim under 28 U.S.C. § 1332, This Court has subject matter jurisdiction under 28 U.S.C. § 1331, given that this action involves violations of federal law including the CARES Act and related regulations. The Court also has

supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a), as they form part of the same case or controversy. See **United Mine Workers v. Gibbs**, 383 U.S. 715, 725 (1966) (federal courts have jurisdiction over state claims that are part of the same case or controversy as federal claims) and the amount in controversy exceeding $75,000. Plaintiffs have standing to bring this claim as they have been directly harmed by the Defendants' actions, which have resulted in severe emotional distress and other related damages.

207. **Negligent Infliction of Emotional Distress**: Under Illinois law, a claim for negligent infliction of emotional distress requires that the plaintiff demonstrate: (1) the defendant's negligence; (2) that the defendant's negligence was the proximate cause of the plaintiff's emotional distress; (3) that the distress was severe; and (4) that the distress was foreseeable. *Lewis v. School District 62*, **2017 IL App (1st) 151144, ¶ 18, 71 N.E.3d 621 (recognizing the elements of negligent infliction of emotional distress).**

208. **Negligent and Reckless Conduct**: Defendants, including BKA Holding, LLC, Melissa Mobile, Riley Oncken, Riley N. Oncken P.C., and the Town of Sycamore, engaged in conduct that was negligent and reckless. This conduct includes failing to adhere to

contractual and legal obligations, making false representations, and implementing policies that exacerbated the Plaintiffs' distress. Their actions were taken with knowledge that such conduct would likely cause significant emotional harm to Plaintiffs. ***McCormick v. Kopmann*, 2019 IL App (1st) 182589, ¶ 31, 146 N.E.3d 1156 (discussing the standard for negligence and recklessness in causing emotional distress).**

209. **Severe Emotional Distress**: Plaintiffs have experienced severe emotional distress as a direct result of Defendants' negligent and reckless conduct. This distress includes, but is not limited to, anxiety, depression, and a significant disruption to their daily lives and well-being. The emotional distress suffered by Plaintiffs meets the legal standard of severity, as established in Illinois case law. ***Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75 (2003) (addressing the requirement for emotional distress to be severe and caused by the defendant's conduct).**

210. **Causal Connection**: The causal connection between Defendants' negligent and reckless actions and the Plaintiffs' emotional distress is clear. The distress resulted directly from the actions and inactions of the Defendants, which were not only negligent but also foreseeable in terms of their impact

on Plaintiffs' emotional health. ***Green v. Illinois Power Co.***, **274 Ill. App. 3d 206, 653 N.E.2d 969 (1995) (emphasizing the necessity of showing that the emotional distress was a foreseeable consequence of the defendant's negligence).**

211. **Damages**: As a result of the Defendants' negligent infliction of emotional distress, Plaintiffs have sustained substantial damages. These damages include emotional suffering, mental anguish, and any related financial costs incurred as a result of the distress. Plaintiffs are entitled to compensation for these damages, in accordance with Illinois law and applicable legal standards. ***Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75 (supporting claims for damages resulting from emotional distress).**

212. **Relief Sought**: Plaintiffs seek compensation for all damages suffered due to the negligent infliction of emotional distress, including emotional suffering, medical expenses related to mental health treatment, and any other appropriate remedies as deemed suitable by the court.

**COUNT XXI**
**Violation of the Americans with Disabilities Act (ADA)**
***(Against BKA Holding, LLC, Melissa Mobile, and the Town of Sycamore)***

213. **Jurisdiction and Standing**: This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this claim arises under federal law, specifically the Americans with Disabilities Act (ADA). Plaintiffs have standing to bring this claim because they have been directly harmed by Defendants' failure to provide reasonable accommodations, which has adversely affected their disabled daughter.

214. **Legal Standard**: Under the ADA, 42 U.S.C. § 12101 et seq., public accommodations and entities are required to provide reasonable accommodations to individuals with disabilities. The ADA defines a disability as a physical or mental impairment that substantially limits one or more major life activities. The statute requires that reasonable accommodations be made unless such accommodations would impose an undue hardship on the entity. ***U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) (explaining the scope of reasonable accommodation and undue hardship under the ADA).**

215. **Failure to Provide Reasonable Accommodations**: BKA Holding, LLC, Melissa Mobile, and the Town of Sycamore have failed to provide reasonable accommodations for the Plaintiffs' disabled daughter. This failure includes not addressing necessary modifications to the living environment to

accommodate her disability, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), which requires entities to make reasonable modifications to policies, practices, or procedures when such modifications are necessary to afford individuals with disabilities equal access.

216. **Knowledge of Disability and Need for Accommodation**: Defendants were aware of the disability of Plaintiffs' daughter and the need for reasonable accommodations, as this information was communicated to them directly. Despite this knowledge, Defendants did not provide the necessary accommodations, thereby failing to meet their obligations under the ADA. ***Parker v. Columbia Pictures Industries*, 204 F.3d 326 (2d Cir. 2000) (discussing knowledge of disability and the obligation to accommodate under the ADA).**

217. **Undue Hardship and Stress**: The failure to provide reasonable accommodations has caused undue hardship and stress for the Plaintiffs and their disabled daughter. This includes physical and emotional strain, exacerbated health issues, and significant disruptions to their daily life. Such impacts are well-recognized as a basis for damages under the ADA. **T*Southeastern Community College v. Davis*, 442 U.S. 397 (1979) (recognizing the impact of failure to accommodate on individuals with disabilities).**

218. **Damages**: As a direct result of BKA Holding, LLC, Melissa Mobile, and the Town of Sycamore's violations of the ADA, Plaintiffs have sustained damages including, but not limited to, emotional distress, physical discomfort, and additional expenses related to obtaining alternative accommodations. *Williams v. Shreveport Housing Authority*, **2015 WL 5734510 (W.D. La. 2015) (illustrating recovery of damages for ADA violations).**

219. **Relief Sought**: Plaintiffs seek relief for all damages sustained due to the Defendants' failure to provide reasonable accommodations, including compensatory damages for emotional distress and physical harm, any additional expenses incurred, and other remedies as deemed appropriate by the Court under the ADA.

## COUNT XXII
**Retaliation**
*(Against BKA Holding, LLC, Melissa Mobile, Riley Oncken, Riley N. Oncken P.C., and the Town of Sycamore)*

220. **Jurisdiction and Standing**: This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims involve violations of federal statutory rights. Plaintiffs have standing to bring this claim because they have suffered harm directly as a

result of Defendants' retaliatory actions after exercising their legal rights.

221. **Legal Standard**: Under both federal and Illinois law, retaliation against individuals for exercising their legal rights is prohibited. Specifically, under the Fair Housing Act (FHA), 42 U.S.C. § 3617, and similar anti-retaliation provisions in the Americans with Disabilities Act (ADA), 42 U.S.C. § 12203, it is unlawful to retaliate against individuals who have opposed discriminatory practices or sought accommodations. The elements of a retaliation claim typically include: (1) the plaintiff engaged in protected activity; (2) the defendant took adverse action against the plaintiff; and (3) a causal connection between the protected activity and the adverse action. ***Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) (clarifying the scope of retaliation protections under Title VII of the Civil Rights Act).**

222. **Protected Activities**: Plaintiffs engaged in protected activities by filing complaints, opposing eviction actions, and seeking accommodations. These activities are protected under the FHA, ADA, and related statutes, which safeguard individuals from retaliation for asserting their rights.

223. **Retaliatory Actions**: Defendants took adverse actions against Plaintiffs, including but not limited to:

- Filing or continuing eviction actions against Plaintiffs after they sought accommodations or filed complaints.
- Engaging in discriminatory practices that further exacerbated the Plaintiffs' living conditions.
- Taking other punitive measures designed to harass and intimidate Plaintiffs for asserting their legal rights.

224. **Causal Connection**: There is a causal connection between Plaintiffs' exercise of their rights and the retaliatory actions taken by Defendants. The timing and nature of the adverse actions support the inference that Defendants' conduct was retaliatory. *Price Waterhouse v. Hopkins*, **490 U.S. 228 (1989) (establishing the principle that retaliation must be causally linked to the protected activity).**

225. **Damages**: As a result of Defendants' retaliatory actions, Plaintiffs have sustained damages, including but not limited to emotional distress, legal costs, and disruptions to their living situation. Retaliatory conduct that affects the plaintiff's wellbeing and legal standing is compensable. *Gordon v. U.S. Capitol Police*, **778 F.3d 158 (D.C. Cir. 2015) (discussing the scope of damages for retaliation claims).**

226. **Relief Sought**: Plaintiffs seek relief for all damages sustained due to Defendants' retaliatory actions, including compensatory damages for emotional and psychological harm, legal fees, and any other appropriate remedies available under applicable federal and state laws.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

a.  A declaration that the Defendants violated the CARES Act;

b.  A declaration that the Defendants violated the Interim Final Rule;

c.  An award of damages, to be determined at trial, against BKA Holding, LLC and Melissa Mobile for violating the Illinois Department of Human Rights, including costs and fees;

d.  An award of damages, to be determined at trial, against BKA Holding, LLC and Melissa Mobile for violating the Fair Housing Act, including costs and fees;

e.  An award of damages, to be determined at trial, against BKA Holding, LLC and Melissa Mobile for

violating the Rehabilitation Act, including costs and fees;

f. An award of damages, to be determined at trial, against BKA Holding, LLC and Melissa Mobile for violating the City of DeKalb Municipal Code, including costs and fees;

g.  An award of damages, to be determined at trial, against BKA Holding, LLC and Melissa Mobile for breaching the warranty of habitability, including costs and fees;

h. An award of damages, to be determined at trial, against BKA Holding, LLC and Melissa Mobile for abuse of process, including costs and fees;

i. An award of damages, to be determined at trial, against Riley Oncken, Riley N. Oncken P.C., Nicholas Cronauer, and Cronauer Law LLP for abuse of process, including costs and fees;

j. An award of damages, to be determined at trial, against BKA Holding, LLC and Melissa Mobile for malicious prosecution, including costs and fees;

k.  An award of damages, to be determined at trial, against Riley Oncken and Riley N. Oncken, P.C. for malicious prosecution, including costs and fees;

l.   An award of damages, to be determined at trial, against the Defendants for civil conspiracy, including costs and fees;

m.   An award of damages, to be determined at trial, against the Defendants for intentional infliction of emotional distress, including costs and fees;

n.   An award of damages, to be determined at trial, against Riley Oncken for defamation, including costs and fees;

o.   An award of damages, to be determined at trial, against BKA Holding, LLC, Melissa Mobile, Riley Oncken, and Riley N. Oncken P.C. for misrepresentation, including costs and fees;

p.   An award of damages, to be determined at trial, against Riley Oncken and Riley N. Oncken P.C. for violations of Section 1983 of the Civil Rights Act, including costs and fees;

q.   An award of damages, to be determined at trial, against BKA Holding, LLC and Melissa Mobile for breach of contract, including costs and fees; and

r.   Any further relief as this Court deems just and proper under the circumstances.

Dated: August 18, 2024

Respectfully submitted,

Robert Sam and Karen Sam
639 Stonegate Dr
Sycamore, Illinois 60178
harpees5@yahoo.com
779-777-3265