# EXHIBIT
# E

**STATE OF ILLINOIS**

**IN THE CIRCUIT COURT FOR THE TWENTY-THIRD JUDICIAL CIRCUIT**
**DEKALB COUNTY**

**FILED**
3/8/2023 2:43 PM
2023EV000102

*Lori Grubbs*

Lori Grubbs
Clerk of the Circuit Court
DeKalb County, Illinois

| | | |
|---|---|---|
| **BKA Holding, LLC,** | ) | **NO: 23 EV** |
| **an Illinois Limited Liability Company** | ) | **2023EV000102** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROBERT SAM & KAREN SAM,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR FORCIBLE ENTRY AND DETAINER AND MONEY DAMAGES

NOW COMES the Plaintiff, BKA Holding, LLC, by and through its attorneys, The Law Office of Riley N. Oncken, P.C., by Riley N. Oncken, and for its Complaint for Forcible Entry and Detainer and Money Damages, states and alleges as follows:

1. Plaintiff is the owner of real property commonly known as 639 Stonegate Dr., Sycamore, IL, located and doing business in DeKalb County, Illinois.

2. On or about September 1, 2022, Defendants entered into a written month-to-month lease agreement (the "Lease") with the Plaintiff, wherein the Defendants agreed to pay rent for the occupancy of and use of the Property. A copy of the Lease is attached hereto, marked as Exhibit "A," and incorporated herein.

3. The Defendants are in breach of the Lease in that Defendants have failed to pay rent as required by the Lease for the occupancy and use of the Property.

4. Although demand for payment has been made, the Defendants have failed to timely pay the amounts due and owing to the Plaintiff for occupancy and use of the property.

5. The Plaintiff has incurred money damages as a result of Defendants' non-payment,

23 EV

Page 1 of 3

Reviewed By: DD

plus costs and attorneys' fees; plus additional rent, utilities, and late fees accruing after the date of this Complaint.

6. Plaintiff is entitled to a Judgment for rent and late fees in the amount of $1,169.00 plus costs and attorney's fees; plus additional rent, utilities and late fees accruing after the date of this Complaint.

7. The Lease, at paragraph 18, provides that:

"The non-prevailing party shall pay upon demand, all actual costs and expenses, including attorney's fees that shall be made or incurred by the prevailing party in enforcing this lease or incurred in any litigation, negotiation, arbitration, transaction, or other proceeding in which non-prevailing party's action or inaction causes the prevailing party to become involved or concerned. Any other document executed by the parties hereto shall also be governed by this same Legal Fees and Costs clause."

8. Plaintiff is entitled to an Order for Possession of the premises.

9. Plaintiff and Defendants have signed an Agreed Order whereby Defendants have: (a) Waived the requirements of being served with a 5-day or 30-day notice; (b) Submitted to the jurisdiction of this Court and waived formal service of the Complaint and Summons; (c) Agreed to pay Plaintiff the amounts due on an agreed-upon schedule; and (d) Agreed to the entry of an Order for Possession of the premises enforceable June 1, 2023.

10. Plaintiff has agreed that, provided Defendants have paid as agreed and have vacated the premises by May 31, 2023, Plaintiff will dismiss this matter with prejudice.

23 EV

WHEREFORE, the Plaintiff, BKA Holding, LLC, prays that, should Defendants fail to comply with the terms of the Agreed Order, this Court enter Judgment in favor of the Plaintiff in the amount of $1,169.00, plus the costs of this action, reasonable attorney's fees, rent, late fees, and utilities incurred after the date of filing, grant Plaintiff possession of the property, and grant any such other and further relief the Court deems equitable and proper.

BKA Holding, LLC, Plaintiff

By: _____
RILEY N. ONCKEN
Attorney at Law

## VERIFICATION

State of Illinois ) 
) ss.:
County of DeKalb )

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that they verily believe the same to be true.

BKA Holding, LLC, Plaintiff

By: _____
MELISSA MOBILE, Manager

Subscribed and sworn to before me
this 8 day of March, 2023.

_____
Notary Public

> OFFICIAL SEAL
> GABRIELLE GRAVES
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES: 08/02/2026

Riley N. Oncken
Attorney at Law
Law Office of Riley N. Oncken, P.C.
212 S. Main Street
Sycamore, IL 60178
Phone: (815) 991-2098
Riley@OnckenLaw.com

# RESIDENTIAL LEASE

Date of Lease:___August 21ˢᵗ 2022_____

Term of Occupancy:  Begin Date: __September 1ˢᵗ 2022_  End Date: _Month to Month__

Lessor:_____BKA Holding, LLC or their assigns_____
        (hereafter "Lessor")

Lessor Address:____461 White Street, Sycamore, IL  60178_____

Lessee:_____Robert and Karen Sam_____
        (hereafter "Lessee")

Lessee Address: _____639 Stonegate Dr., Sycamore, IL 60178_____

Property Address:_____639 Stonegate Dr., Sycamore, IL  60178_____
        (hereafter "the premises")

Rent:___$1950.0_____  Late Fee:_$25.00____


THIS AGREEMENT (hereinafter referred to as the "Agreement") is made and entered into this **21st** day of **August, 2022** between Lessor and Lessee. Lessor leases to Lessee the premises, together with all appurtenances, for a term of Moth to Month, to commence with 30 day written notice to tenant or non-payment/breach of lease.

1.    **RENT:**    Lessee agrees to pay, without demand, to Lessor, as rent for the demised premises, the sum of $1950.00 per month, in advance. First and last installments shall be paid upon the due execution of this Agreement, and the remaining installments shall be paid on or before the 1st day of each calendar month, beginning **September 1ˢᵗ**.   All such payments shall be made to Lessor at:

_____Hometown Property Management_____

_____328 W. Elm St. Sycamore, IL 60178_____


2.    **DEPOSIT:**    Upon the due execution of the agreement, Lessee shall deposit with Lessor the sum of $1600.00 receipt of which is hereby acknowledged by Lessor as security for any damage caused to the demised premises during the term hereof.  Such deposit shall be returned to Lessee, without interest, and less any set off for damages to the demised premises or rent due upon the termination of this Agreement.

3.    **USE OF PREMISES:**    The demised premises shall be used and occupied by Lessee and Lessee's immediate family, consisting of Jamie Larson and Kevin Smith exclusively as a private single-family residence, and neither the premises nor any part thereof shall be used at any time during the term of this lease by the Lessee for the purpose of carrying on any business,



RESIDENTIAL LEASE
PAGE 1 OF 7

EXHIBIT

A

profession, or trade of any kind, or for any purpose other than as a private single-family residence. Lessee shall not allow any other person, other than Lessee's immediate family, listed previously herein, or transient relatives and friends who are guests of Lessee, to use or occupy the premises without first obtaining Lessor's written consent to such use. Transient relatives and friends who are guests of Lessee shall not use or occupy the premises for a period extending beyond 2 weeks. Lessee shall comply with all the laws, ordinances, rules, and orders of appropriate governmental authorities affecting the cleanliness, occupancy, and preservation of the demised premises, and the sidewalk connected thereto, during the term of the lease.

4. **PETS:** Lessee shall allow one pet on the leased premises with a $0 non-refundable pet deposit. List pet weight and breed_____Dog-Shitzu Mix, 12lbs Emotional Support Dog_____

5. **CONDITION OF PREMISES:** Lessee stipulates and represents that he has examined the demised premises, including the grounds and all buildings and improvements, and that they are, at the time of this lease, in good order, repair, and in a safe, clean, and tenantable condition.

6. **ASSIGNMENT AND SUBLETTING:** Without the prior written consent of Lessor, Lessee shall not assign this lease, or sublet or grant any concession or license to use the premises or any part thereof. Consent by Lessor to one assignment, subletting, concession, or license shall not be deemed to be consent to any subsequent assignment, subletting, concession, or license. An assignment, subletting, concession, or license without the prior written consent of Lessor, or an assignment or subletting by operation of law, shall be absolutely null and void and shall, at Lessor's option, terminate this lease.

7. **ALTERATIONS AND IMPROVEMENTS:** The Lessee shall make no alternations or improvements to the demised premises or construct any building or make other improvements on the demised premises without the prior written consent of the Lessor. All alterations, changes, or improvements built, constructed, or placed on the demised premises by Lessee, with the exception of fixtures removable without damage to the premises and movable personal property, shall, unless otherwise provided by written agreement between Lessor and Lessee, be and become the property of the Lessor and remain on the demised premises at the expiration or sooner termination of this lease.

8. **DAMAGE TO PREMISES:** If the demised premises shall be destroyed or rendered wholly untenantable by fire or other casualty not due to the negligence or willful act of Lessee or that of his/her employee, family, agent, guest, or visitor, this Agreement shall terminate from such time except for the purpose of enforcing rights that may have then accrued hereunder. The rental provided for herein shall then be accounted for by and between Lessor and Lessee up to the time of such injury or destruction of the demised premises, Lessee paying rentals up to such date and Lessor refunding rentals collected beyond such date. Should a portion of the demised premises be rendered untenantable, not due to the negligence or willful act of Lessee or that of his/her employee, family, agent, or visitor, Lessor shall have the option of either repairing such injured or damaged portion or terminating this lease. In the event that Lessor exercises its right to repair such untenantable portion, the rental shall abate in the proportion that the injured part bears to the whole of the demised premises, and such part so

injured shall be restored by Lessor as speedily as practicable, after which the full rent shall recommence and the Agreement continue according to its terms.

In the event that Lessee or his/her employee, family, agent, guest, or visitor should cause any damage to the demised premises, whether by negligence or willful act, Lessee shall pay to Lessor within five (5) days after demand the loss incurred by Lessor. Lessor may demand such payment either before or after a repair is made. Lessor's delay in demanding such payment is not a waiver of Lessor's right to demand such payment. Lessor shall have the right, but not the obligation, to deduct the cost of any such repairs from Lessee's security deposit, and Lessee shall immediately redeposit sufficient funds with Lessor to replenish the security deposit established in article 2 above.

Lessee shall request promptly any repairs to be made to the demised premises or its contents, fixtures, security devices, and other equipment that belong to Lessor. Lessee must notify Lessor immediately of any malfunction or damage caused by fire, water or similar cause and of any leaks, electrical problems, heating problems, broken locks or latches, or any other condition that may pose a threat to health, property, or safety. Lessor shall act with reasonable diligence to make the repairs and this Lease shall continue and rent shall not be abated. Lessee's request for repair is Lessee's agreement for Lessor, or their agent or contractor, to enter the demised premises to perform the repair. Lessor may decide to not enter the premises if a person under the age of 18 years is present without a person 18 years or older also present. Lessor may turn off equipment and interrupt utilities to avoid damage to property or to perform maintenance and this shall not constitute a constructive eviction of Lessee. If a request for repair is not made in writing, Lessee must establish when Lessee made the request.

9.      **INSPECTION OF PREMISES:**   Lessor and Lessor's agents shall have the right at all reasonable times during the term of the Agreement and any renewal thereof to enter the demised premises for the purpose of inspecting the premises and all buildings and improvements thereon, and for the purposes of making any repairs, additions or alterations as may be deemed appropriate by Lessor for the preservation of the demised premises or the building. Lessor and its agents shall further have the right to exhibit the demised premises and to display the usual "for sale", "for rent" or "vacancy" signs on the demised premises at any time with forty-five (45) days before the expiration of this lease. The right of entry shall likewise exist for the purpose of removing placards, signs, fixtures, alterations or additions.

10.     **DANGEROUS MATERIALS:**   Lessee shall not keep or have on the demised premises any article or thing of a dangerous, inflammable, or explosive character that might unreasonably increase the danger of fire or explosion on the demised premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

11.     **UTILITIES:** Lessee shall be responsible for arranging for and paying for all utility services required on the demised premises. If Lessor is billed for or pays any utility service that is Lessee's responsibility, Lessee shall immediately reimburse Lessor for such utility expense in the same month that such

12.     **MAINTENANCE AND REPAIR:** Lessee will, at his/her sole expense, keep and maintain the demised premises and appurtenances in good and sanitary condition and repair during the term of the lease and any renewal thereof. In particular, Lessee shall:

(a) Not obstruct the driveways, sidewalks, courts, entry ways, stairs and/or halls, which shall be used for the purposes of ingress and egress only;

(b) Keep all windows, glass, window coverings, doors, locks and hardware in good, clean order and repair;

(c) Not obstruct or cover the windows or doors;

(d) Not leave windows or doors in an open position during any inclement weather;

(e) Not hang any laundry, clothing, sheets, etc. from any window, rail, porch or balcony nor air or dry any of same within any yard area or space;

(f) Not cause or permit any locks or hook to be placed upon any door or window without the prior consent of Lessor;

(g) Keep and replace as needed all air conditioning and furnace filters so they remain clean and free from dirt;

(h) Keep all lavatories, sinks, toilets and all other water and plumbing apparatus in good order and repair and shall use same only for the purposes for which they were constructed. Lessee shall not allow any sweepings, rubbish, sand, rags, ashes or other substances to be thrown or deposited therein. Any damage to any such apparatus and the cost of clearing stopped plumbing resulting from misuse shall be borne by Lessee;

(i) Abide by and be bound by any and all rules and regulations affecting the demised premises or the common area appurtenant thereto which may be adopted or promulgated by the Condominium or Homeowners' Association having control over them;

(j) Keep the fixtures in the house or on or about the lease premises in good order and repair including working light bulbs; and,

(k) Not place signs or paint on or about the demised premises by Lessee or at his/her direction without prior written consent of Lessor.

13. **SUBORDINATION OF LEASE:** This lease and Lessee's leasehold interest hereunder are and shall be subject, subordinate, and inferior to any liens or encumbrances now or hereafter placed on the demised premises by Lessor, all advances made under any such liens or encumbrances, the interest payable on any such liens or encumbrances, and any and all renewals or extensions of such liens or encumbrances.

14. **HOLDOVER BY LESSEE:** Should Lessee remain in possession of the demised premises with the consent of Lessor after the natural expiration of this Agreement, a new month-to-month tenancy shall be created between Lessor and Lessee which shall be subject to all the terms and conditions hereof but shall be terminated on thirty (30) days written notice served by

either Lessor or Lessee on the other party. Rent during such holdover period shall be $2,900.00 per month and shall be paid on or before the 1st day of each calendar month.

If Lessee fails to surrender possession of the premises upon termination of this Agreement, Lessee shall be deemed "holdover" and for each day Lessee continues to occupy the premises after termination, Lessee shall pay as damages a sum equal to twice the Total Monthly Payment to Lessor divided by thirty (30). The acceptance of the damages pursuant to this paragraph shall not constitute rent nor shall it be a waiver by Lessor of any damages under this Agreement or of any right of re-entry.

15.    **SURRENDER OF PREMISES:**    At the expiration of the lease term, Lessee shall quit and surrender the premises hereby demised in as good state and condition as they were at the commencement of this lease, which shall include having the carpets professionally cleaned (cleaning by Lessee with a rental unit is not acceptable), reasonable use and wear thereof and damage by the elements excepted.

16.    **DEFAULT:**  If any default is made in the payment of rent, or any part thereof, at the times hereinbefore specified, or if any default is made in the performance of or compliance with any other term or condition hereof, this Agreement, at the option of Lessor, shall terminate and be forfeited, and Lessor may re-enter the premises and remove all persons therefrom. Lessee shall be given written notice of any default or breach, and termination or forfeiture of the lease according to the applicable law of the State of Illinois and City of Sycamore, County of DeKalb.

17.    **ABANDONMENT:** If at any time during the term of this lease, Lessee abandons the demised premises or any part thereof, Lessor may at his/her option, enter the demised premises by any means without being liable for any prosecution therefor, and without becoming liable to Lessee for damages or for any payment of any kind whatsoever, and may, at his/her discretion, as agent for Lessee, relet the demised premises, or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect rent payable by virtue of such reletting, and, at Lessor's option, hold Lessee liable for any difference between the rent that would have been payable under this lease during the balance of the unexpired term, if this lease had continued in force, and the rent for such period realized by Lessor by means of such reletting. If Lessor's right to re-entry is exercised following abandonment of the premises by Lessee, then Lessor may consider any personal belongings of Lessee that have been left on the premises to also have been abandoned, in which case Lessor may dispose of all such personal property in any manner Lessor shall deem proper and is hereby relieved of all liability for doing so.

18.    **LEGAL FEES AND COSTS:**    The non-prevailing party shall pay upon demand, all actual costs and expenses, including attorney's fees that shall be made or incurred by the prevailing party in enforcing this lease or incurred in any litigation, negotiation, arbitration, transaction, or other proceeding in which non-prevailing party's action or inaction causes the prevailing party to become involved or concerned. Any other document executed by the parties hereto shall also be governed by this same Legal Fees and Costs clause.

19.    **LATE CHARGE:**    In the event that any payment required to be paid by Lessee hereunder is not made within five (5) days of when due, Lessee shall pay to Lessor in addition to such payment or other charges due hereunder a "late fee" in the amount of twenty-five dollars ($25.00).

20.     **INDEMNITY:**     Lessee shall indemnify and hold Lessor harmless from any liability for injury to or death of any person, including Lessee, or for damage to the property arising from Lessee's use and occupancy of the demised premises or from the act or omission of any person or persons, including Lessee, in or about the demised premises with Lessee's express or implied consent.

21.     **INSURANCE:**     Lessee understands that Lessor's insurance does not insure Lessee against injury to or death of any person, including Lessee, or for loss of property on the premises due to theft, vandalism, fire, water, rain, criminal or negligent acts of others, or any other cause. Lessee shall be required to maintain Lessee's own renter's insurance in the amount of $300,000.00 during the term of this Agreement and shall furnish a copy of said policy to Lessor. In addition, Lessee shall obtain a general liability policy in the amount of $500,000.00 and shall name Lessor as an additional insured under said policy.  Lessee shall provide written proof of insurance to Lessor.

22.     **BINDING EFFECT:**     The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this lease.

23.     **HEADINGS:**     The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision hereof.

24.     **SEVERABILITY:**     If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

25.     **ENTIRE AGREEMENT:**     This Agreement supersedes all agreements previously made between the parties relating to its subject matter. There are no other understandings or agreements between them. It contains the entire agreement of the parties. It may not be changed orally but only by an agreement in writing signed by all parties.

26.     **SERVICE OF NOTICES:**     In the event Lessor is required to serve any type of notice on tenant, such as a 5 day or 10-day notice, for any reason whatsoever, tenant shall be assessed a fee of $25.00 per notice to cover the cost of producing and serving such notice.

27.     **EMMINENT DOMAIN:**     In case the whole of said premises shall be taken by right of eminent domain or other authority of law during the continuation of this lease and any other extension hereof, or if a portion thereof is taken so that the premises are unsuitable for Lessee's uses, this lease shall terminate. In case a part of said premises shall be taken by right of eminent domain or other authority of law, this lease may, at the election of Lessor be terminated. Said termination, if such election be made, is to be affected by the Lessor, giving notice to Lessee within ten (10) days after final judgment is entered in any such condemnation proceedings. In such case, Lessor shall be entitled to the proceeds of the condemnation award made to Lessor. Nothing herein shall be construed to prevent Lessee from separately pursuing a claim against the condemning authority for its independent loss or damages to the extent available, provided,

RESIDENTIAL LEASE
PAGE 6 OF 7

however, that no award made to or on behalf of Lessee shall reduce, limit, or restrict the award to Lessor, and no allocation of Lessor's award in condemnation shall occur. Lessee shall have no claim against Lessor for the value of the unexpired term of this lease.

28. **PAYMENTS:** The order of allocation of any and all payments received by Lessor shall be as follows: 1) Late fees, 2) Replenish security deposit, 3) Repair costs not covered by or deducted from security deposit, 4) Utilities owed by Lessee that are paid or billed to Lessor, and 5) Rent.

29. **ADDITIONAL RENT:** Any amounts that are due Lessor for repairs, utilities, late fees, or any other thing that are not paid in the same month they become due shall be added to the amount payable by Lessee the following month, as additional rent.

30. **QUIET ENJOYMENT:** Lessee shall not interfere with any other tenant's or neighbor's quiet enjoyment of their property.

31. **WATER FURNITURE:** Lessee shall not place any water furniture in the premises.

32. **RENTAL APPLICATION:** Lessee represents and warrants that all of Lessee's statements in the rental application are true and correct and understands that Lessor relied upon these statements in the execution of this lease. Should any information stated in the rental application change during the lease term, Lessee shall immediately notify Lessor in writing of the change.

33. **BACKGROUND INVESTIGATION:** Lessee acknowledges and agrees that, to the extent permitted by law, Lessor may conduct an Investigative Consumer Report and criminal background check of Lessee.

34. **MISCELLANEOUS:** This Agreement shall be governed by the laws of the State of Illinois. The parties to this Agreement hereby stipulate that proper venue for the filing of any action in a court of law or equity shall reside in the Circuit Court for the Twenty-third (23rd) Judicial Circuit, DeKalb County, Illinois.

IN WITNESS WHEREOF, the parties have executed this lease the day and year first above written.

_____ President
BKA Holding, LLC

_____
Robert Sam, Lessee

_____
Karen Sam, Lessee

Prepared by:
The Law Office of Deborah L. Ullrich & Associates
1590 E. Lincoln Hwy.; Suite B
DeKalb, IL 60115
(815) 787-0321