# EXHIBIT
# O

**STATE OF ILLINOIS** )
                    )   **SS**

**COUNTY OF COOK** )
                                                 **CHARGE NO. 2023CH1772**

<p align="center"><u>**AFFIDAVIT OF SERVICE**</u></p>

The undersigned served a copy of the attached **NOTICE OF SUBSTANTIAL EVIDENCE AND NOTICE OF DISMISSAL** on **February 14, 2024**, to each person named below by email or first class mail, addressed as follows:

Karen Sam and Robert Sam
639 Stonegate Drive
Sycamore, IL 60178

Brad Melzer
Cronauer law
1101 DeKalb Ave
Sycamore, IL 60178

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

Patricia C. Martinez

**PLEASE NOTE:**

The above-signed person is responsible only for <u>mailing</u> these documents. If you wish a review of the findings in this case, you must complete the Request for Review form attached. Department of Human Rights' staff are not permitted to discuss the investigation findings once a Notice of Determination has been issued.

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**

Karen Sam
Robert Sam

          COMPLAINANT,

AND

BKA Holdings, LLC

          RESPONDENT.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CHARGE NO. 2023CH1772
HUD NO. 05-23-8696-8

## NOTICE OF SUBSTANTIAL EVIDENCE AND NOTICE OF DISMISSAL FOR CASES INVOLVING REAL ESTATE TRANSACTIONS

For Complainant

Karen Sam and Robert Sam
639 Stonegate Drive
Sycamore, IL 60178

For Respondent

Brad Melzer
Cronauer law
1101 DeKalb Ave
Sycamore, IL 60178

NOTICE DATE: **February 14, 2024**

The DEPARTMENT OF HUMAN RIGHTS (Department) has entered the findings identified in the in the enclosed investigation report.

## DISMISSAL

YOU ARE HEREBY NOTIFIED that based on the investigation conducted by the Department of Human Right (Department), as reflected in the enclosed report, the Department has concluded that there is a lack of substantial evidence in support of the allegation(s) for Counts A, B, C, D, and E **(see final investigation report and determination of substantial evidence and lack of substantial evidence)**.

Accordingly, pursuant to Section 7B-102(D) of the Act (775 ILCS 5/3-101 et seq.) and the Department's Rules and Regulations, (56 Ill. Adm. Code. Chapter II, 2520.560) the allegation(s) determined to lack substantial evidence are HEREBY DISMISSED.

## SEE ENCLOSED INVESTIGATION REPORT

**Page 2**
**Notice of Substantial Evidence and Notice of Dismissal**
**Charge No. 2023CH1772**

## PROCEDURE:

If Complainant disagrees with this action, Complainant may:

a. REQUEST FOR REVIEW: Seek review of this dismissal before the Illinois Human Rights Commission (Commission), by filing a "Request for Review" with the Commission by the request for review filing deadline date below. Respondent will be notified by the Commission if a Request for Review is filed. You can file the Request for Review by email, mail, personal delivery, or fax to:

> Illinois Human Rights Commission
> Michael A. Bilandic Building
> 160 N. LaSalle Street, Suite N-1000
> Chicago, IL 60601
> Email: HRC.News@illinois.gov
> Fax: (312) 814-6517

### REQUEST FOR REVIEW FILING DEADLINE DATE: May 19, 2024

Whether you decide to file a "Request for Review" or not, DHR will conciliate only those allegations for which there is substantial evidence (see SUBSTANTIAL EVIDENCE). If conciliation efforts are unsuccessful, DHR will then file a Complaint with the Commission, only on the allegations for which there is substantial evidence.

You may review or request a copy of your investigation file, after the Department's completion of the investigation, to help prepare your Request for Review. The Department will provide you with a specific date and time for you to review your investigation file. Files larger than fifty (50) pages will be sent to an outside vendor for copying. The Department is not responsible for the fees charged by the vendor. Call (312) 814-6262 to make arrangements.

**OR**

b. CIVIL ACTION: Under Section 10-102 of the Act, an aggrieved party has the right to commence an action in the Circuit Court not later than 2 years after the occurrence or termination of an alleged civil rights violation to obtain appropriate relief with respect to the alleged civil rights violation. The computation of the 2-year period does not include any time during which an administrative proceeding under the Human Rights Act was pending. An aggrieved party may commence a civil action under this subsection whether or not a charge has been filed under Section 7B-102 and without regard to the status of any such charge.

**Page 3**
**Notice of Substantial Evidence and Notice of Dismissal**
**Charge No. 2023CH1772**

## SUBSTANTIAL EVIDENCE

YOU ARE HEREBY NOTIFIED that based on the investigation conducted by the Department, as reflected in the enclosed report, the Department has concluded that there is substantial evidence to support allegation(s) for Count F (see enclosed final investigation report and determination of substantial evidence).

## SEE ENCLOSED INVESTIGATION REPORT

## PROCEDURE:

The Illinois Human Rights Act (Act) mandates that the Department conduct conciliation as to those issues where substantial evidence has been found. A Department staff attorney (312-814-6262) has been designated to CONCILIATE this case. Conciliation is a process in which a Department staff attorney facilitates settlement discussions with both parties via telephone.

All settlement efforts are confidential. If it is determined there is not a reasonable possibility of settlement, a complaint will be prepared against Respondent, filed with the Commission and notice of such filing shall be served on all parties, pursuant to Section 7B-102(F) of the Act. It is then the parties' responsibility to go forward with the case at the Commission.

It is the responsibility of the parties to initiate discussions immediately after receipt of this notice. **Therefore, please review the enclosed information and contact the assigned attorney no later than 5 days after receipt of this notice.**

Conciliation of issues with Substantial Evidence findings does not preclude your filing a Request for Review of the issues the Department dismissed, as described above.

**PLEASE NOTE: The Department cannot provide any legal advice.**

DEPARTMENT OF HUMAN RIGHTS
James L. Bennett
Director

NOTICE HOUSING SE and LSE Rev 2/13/2024

**STATE OF ILLINOIS**
**HUMAN RIGHTS COMMISSION**

IN THE MATTER OF:

|  |  |  |
|---|---|---|
| Karen Sam | ) | |
| Robert Sam | ) | |
| | ) | |
| COMPLAINANT, | ) | CHARGE NO. 2023CH1772 |
| | ) | HUD NO. 05-23-8696-8 |
| AND | ) | |
| | ) | |
| | ) | |
| BKA Holdings, LLC | ) | |
| | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

## REQUEST FOR REVIEW FORM

| For Complainant | For Respondent |
|---|---|
| Karen Sam and Robert Sam | Brad Melzer |
| 639 Stonegate Drive | Cronauer law |
| Sycamore, IL 60178 | 1101 DeKalb Ave |
| | Sycamore, IL 60178 |

**TO: Karen Sam and Robert Sam**

**DISMISSAL DATE: February 14, 2024**

**REQUEST FOR REVIEW FILING DEADLINE DATE: May 19, 2024**

> ⚠ If you do not file a Request for Review by the filing deadline date, your case will be over. ⚠

I am asking the Illinois Human Rights Commission (Commission) to review the dismissal of my charge by the Illinois Department of Human Rights (Department).

My Current Address (please print clearly):

Street Address_____ Apt/Unit #_

City_____ State_____ Zip_____

Email Address*_____ Phone Number (_____)_____
* If you provide an email address, the Commission will send all future documents to you only by email. You should use an email address that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notices, or documents from other parties.

**Page 2**
**Request for Review**
**Charge No.**

## How To Fill Out This Form

In the space below, you can explain why your charge should not have been dismissed. If you need more space, write on the back of this form or attach extra pages. You can include supporting materials and evidence with this Request for Review. The form, extra pages, and supporting materials and evidence must not be longer than **45 pages**.

You can look at the Department's investigation file to help you prepare your Request for Review. Call the Department at (312) 814-6262 to set up a time to look at the file. You will need to call at least 3 business days before you want to look at the file. Do not wait until the last minute to ask to look at the file.

---

SIGNATURE                        DATE

---

## How To File This Form

You must file the Request for Review **by the filing deadline date** on the first page of this form. You can file the Request for Review by email, mail, personal delivery, or fax to:

|  |  |
|---|---|
| Mail / Delivery: | Illinois Human Rights Commission |
|  | Michael A. Bilandic Building |
|  | 160 N. LaSalle Street, Suite N-1000 |
|  | Chicago, IL 60601 |
| Email: | HRC.News@illinois.gov |
| Fax: | (312) 814-6517 |

After you file your Request for Review, you **cannot** give the Commission more information or supporting materials. If you need more time to complete your Request for Review, you can file a motion for extension of time. You must file your motion by the filing deadline date on the first page of this form.

For more information about how to fill out and file this form, go to the Commission's website at hrc.illinois.gov/rules/request-for-review.

HB1509/HB59 HRC R/R 10/10/2023

---

Michael A. Bilandic Building, 160 North LaSalle Street, Suite N-1000
Chicago, Illinois 60601 Phone (312) 814-6269
TTY (866) 832-2298 Fax (312) 814-6517

Jefferson Terrace, 300 West Jefferson Street, Suite 108
Springfield, Illinois 62702 Phone (217) 785-4350
TTY (866) 832-2298 Fax (217) 524-4877

ILLINOIS DEPARTMENT OF
# ◀Human Rights

JB Pritzker, Governor
James L. Bennett, Director

December 13, 2023

**Final Investigative Report**

**Case Name:** Karen and Robert Sam v BKA Holding[1], LLC

**IDHR Case Number:** 2023CH1772          **HUD Case Number:**     05-23-8696-8

**Investigator:** ENG

## I.      Jurisdiction

A complaint was filed with HUD on June 23, 2023, alleging that the Complainants were injured
by a discriminatory act. It is alleged that the Respondent was responsible for: Discrimination in
in making available a real estate transaction; Discriminatory terms, conditions, privileges, or
services and facilities; and Failure for a reasonable accommodation. It is alleged that the
Respondent's acts were based on disability, source of income and arrest record. The most recent
act is alleged to have occurred on May 23, 2023, and is continuing. The property is located at:
639 Stonegate Drive, Sycamore, IL 60178. The property in question is not exempt under the
applicable statutes. If proven, the allegations would constitute a violation of Sections 804(f), and
804(f)(3)(A) of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of
1988 and Sections 3-l02(A), 3-102(8), 3-102.l(A), 3-102.1 (B), and 3-102.l(C)(2), of the Illinois
Human Rights Act.

Respondent receives federal funding.

The Respondent provided a response to the charge, and no formal response was requested.

## II.      Parties and Aggrieved Persons

A. Complainant

Complainant #1
Karen Sam
639 Stonegate Drive
Sycamore, IL 60178

---

[1] Respondent's correct legal name is BKA Holding, LLC. The Department erroneously misspelled Respondent's
name as BKA Holdings, LLC.

555 West Monroe Street, 7th Floor, Chicago, IL 60661, (312) 814-6200, TTY (866) 740-3953, Housing Line (312) 814-6229
524 S. 2nd St., Suite 300, Springfield, IL 62701, (217) 785-5100, Springfield, IL 62702
2309 West Main Street, Marion, IL 62959 (618) 993-7463
dhr.illinois.gov

Charge Number: IDHR 2023CH1772
Page 2

HUD 05-23-8696-8

Complainant #2
Robert Sam
639 Stonegate Drive
Sycamore, IL 60178

<u>Complainant Representative</u>

None

<u>Complainant Allegations</u>

Complainants reside in a townhouse, which is one of Respondent's several units. Complainant alleges that their rent is $2,055/month. Complainants allege that Respondent had been accepting their housing voucher which pays $1,800/month, for around 3 years. Complainants allege that their portion of the rent is $255/month. Complainants allege that in or around March 2023, they were behind on their rent in the amount of $500.

Complainants allege that in or around May 2023/June 2023, they were approved for a court-based assistance rental program, which would cover any back payment in rent as well as provide 12 months of guaranteed payment for their portion of the rent. Complainants allege that Respondent denied the assistance. **Counts A and B: Discriminatory terms and conditions(denied assistance)/ Source of income (Count A) and Disability (Count B)/ Respondent**. Complainants allege that by doing so, Respondent committed source of income discrimination, disability discrimination (as both Complainant #1 (K. Sam) and her child are disabled) and failed to provide a reasonable accommodation as the financial program was meant to offset various expenses due to Complainant's #1 and her child's disability. **Count C: Failure to accommodate/ disability/ Respondent**.

Complainant #2 (R. Sam) alleges that on or around March 8, 2023, Respondent filed an eviction complaint against Complainants in the Circuit Court of DeKalb County seeking possession and past due rent. Complainant #2 further alleges that he entered into a signed agreement with Respondent agreeing to vacate the premises by June 1, 2023. Complainant #2 alleges that this agreement included a payment schedule and the understanding that an eviction order would only be entered if the terms of the agreement were not met. Complainant #2 alleges that his family obtained rental assistance to move to another county.

Complainant #2 alleges that Respondent filed the agreement with the trial court, to be entered as an agreed order and, without Complainants' knowledge, Respondent also filed an eviction order enforceable June 1, 2023, and therefore reneged on the agreement.

Complainant # 2 alleges that because Respondent filed for an eviction order, it made his family ineligible to move, as they were no longer in good standing to receive rental assistance. Complainants further allege that the eviction process cannot be medically tolerated by Complainant #1 (K. Sam), due to her medical conditions.

Complainants allege that Respondent is aware of Complainant #1's and their daughter's disabilities. Respondent however failed to agree to a reasonable medical needed accommodation. Complainants allege that it was Respondent's intention to get rid of any tenant who depended on housing vouchers and/or other financial assistance as part of their income. Complainants allege that tenants who did not depend on housing vouchers were not subjected to this discriminatory treatment. **Counts D and E/ Discrimination in making available a real estate transaction/ Source of income (Count D) and Disability (Count E)/ Respondent**.

Respondent indicated their reason for evicting Complainant #2 is due to him owing rent and late fees and indicated that he has a felony charge against him alleging that he was stealing money from his elderly neighbors, making him a disturbance to the rental community. Complainants allege that Respondent subjected them to discriminatory treatment due to Complainant #2's arrest record. **Counts F: Discriminatory terms and conditions (filed eviction)/ Arrest record/ Respondent**.

B. Other Aggrieved Persons

Harper Sam, Minor Child

C. Respondent

BKA Holding, LLC
C/o Melissa Mobile
461 White Street
Sycamore, IL 60178

Respondent Representative

Brad Melzer, Attorney
Cronauer Law
1101 DeKalb Ave
Sycamore, IL 60178

Respondent Defenses

Respondent BKA Holdings, LLC, President Melissa Mobile, owns five townhouses, in addition to the subject property currently occupied by the Complainants, she has four other townhouses and two commercial properties.

Respondent's position is that they filed for eviction because the Complainants failed to pay their rent and utilities. Respondent's President was aware of Complainants' family's disabilities, even though she never requested medical documentation to confirm it, she took their word that they were disabled. Respondent denies any discrimination occurred.

D. Witnesses

## III.    Case Summary

A. Interviews

Complainant: Sam, Karen
Date of Interview: July 11, 2023
Type of Interview: Telephone
Interviewer: Ayala, Erika

Complainant Karen (Complainant #1) stated she and Robert Sam (Complainant #2) reside in a townhouse, which is one of Respondent's Melissa Mobiles, several units. Complainant #1 stated that their rent is $2,055/month. Respondent had been accepting their housing voucher, which pays $1800 a month, for approximately 3 years (**Exhibit CC**). Complainant #1 stated that their portion of the rent is $255/month.  On or around March 2023, Complainants were behind on their rent in the amount of $500.

On or around May 2023/June 2023, Complainants were approved for a court-based assistance rental program, which would cover any back payment in rent, as well as provide 12 months of guaranteed payment for their portion of the rent. Respondent denied the assistance in May and again in June 2023, and by doing so, Respondent committed source of income discrimination, disability discrimination (as both Complainant #1 and her daughter, Harper Sam, are disabled (**Exhibits T, X, AA and BB**) and failed to provide a reasonable accommodation as the financial program was meant to offset various expenses due to Complainant's #1 and her daughter Harper Sam's disability. Harper Sam has a rare neurological disorder, double cortex syndrome, since she was two years old and receives SSI benefits. Complainant #1 has Multiple Sclerosis and CVID, a rare autoimmune disorder in which she receives antibody infusions, which she requires a permanent residence to be able to infuse them (**Exhibit T**). Complainant #1 stated she and her husband requested a reasonable accommodation via Prairie Legal Assistance to the Housing Authority.

Other Aggrieved Parties: Sam, Robert
Date of Interview: July 11, 2023
Type of Interview: Telephone
Interviewer: Ayala, Erika

Complainant #2, Robert Sam stated that on or around March 10, 2023, he entered into a signed agreement with Respondent, agreeing to vacate the premises by June 1, 2023. This agreement included a payment schedule and the understanding that an eviction order would only be entered if the terms of the agreement were not met. Complainant #2 stated he gave Mobile a money order to cover his portion of the rent.  Complainant #2 stated that his family obtained rental assistance to move to another county. They would be moving from DeKalb County to Will County. Respondent reneged on the contract when Respondent filed for an eviction order on March 10, 2023, for an eviction on June 1, 2023.

Complainant # 2 stated that because Respondent did that, it made his family ineligible to move, as they were no longer in good standing to receive rental assistance. Upon failing to vacate the

eviction order in court on or around June 22, 2023, they were set to be evicted on June 26, 2023. The Complainant and his family did not vacate the property as they have a Stay in their eviction. The family received the Stay due to medical needs. They have court coming up and a decision on their eviction may be made by the end of August 2023 or early September 2023. Complainants #2 further stated that the eviction process cannot be medically tolerated by Complainant #1, due to her medical conditions. Complainant #1 requires a fridge for her infusions and require a physical address to have medication mailed to her directly. Complainant #2 stated that Respondent is aware of Complainant #1's and their daughter's disabilities. Respondent failed to agree to a reasonable medical needed accommodation. Complainants feel that it is Respondent's intention to get rid of any tenant who depended on housing vouchers and/or other financial assistance as part of their income. The Complainant's believe that tenants who did not depend on housing vouchers were not subjected to this discriminatory treatment.

Complainant #2 stated that Respondent indicated their reason for evicting Complainant is due to him owing rent and late fees and indicated that Complainant has a felony charge against him alleging that he was stealing money from his elderly neighbors, making him a disturbance to the rental community. Complainants stated that Respondent subjected them to discriminatory treatment due to Complainant #2's arrest record.

Other Aggrieved Parties: Sam, Robert
Date of Interview: August 25, 2023
Type of Interview: Telephone
Interviewer: Ayala, Erika

Complainant #2, Robert Sam, stated that he and his family moved into their townhouse in 2019. They explained to Respondent, Melissa mobile, that Complainant #1, Karen Sam, and their daughter were disabled. Mobile asked why their credit was so bad and they explained it was due to medical issues. Mr. and Mrs. Mobile accepted them as tenants, aware the Sams had disabilities (**Exhibits W**). Rockford Housing Authority and HUD sent a letter to Mobile in 2019, informing her that they were in the process of granting the Sam's a housing voucher to cover their rent. Complainant #1 stated that they never had issues with their neighbors and all their neighbors like them.

In February or March 2023, Complainant #1's doctor prescribed more medication. Their portion of their rent is $255 and all utilities. He stated their utilities are all current. Complainant #2 stated they started to become late on their portion of the rent due to medical costs. He stated he thought they were behind about $500 something and were unaware of any additional fees. He stated the Respondent's attorney reached out with an agreed order. The agreed order stated they would be out in May and by June 1st they would pay their back rent. Complainant #2 and his family informed Dekalb County Housing Authority that they needed to move to Will County. Respondent and her attorney went to court and got an eviction order the next day. DeKalb told them they were now in bad standing as there was an order of possession against them. Complainant #2 stated they were informed they might lose their voucher now. Prairie Legal Assistance filed a motion to dismiss the order. The Complainants were told to apply for court assistance where they received the back rent of $500 and the next 12 months of rent (**Exhibits Z**

Case: 3:23-cv-50301 Document #: 19-15 Filed: 08/05/24 Page 13 of 52 PageID #:5731

**and DD**). Complainant #2 stated that Respondent declined the assistance. The Court called Respondent and she stated she didn't want the assistance. Complainant #2 stated his family never received the eviction notice.

Complainant #2 stated regarding an alleged arrest record, he stated there is a charge against him but no convictions. There is nothing going on and the incident happened over a year ago. He stated if Respondent had an issue with his alleged arrest record, why did Respondent rent to him three years ago. He stated this didn't make sense.

Complainant #2 stated that in his defense regarding the allegations of elder abuse, he had an elderly neighbor who was neglected by his adult daughter. He stated he helped him by making repairs around his house and Complainant would purchase the supplies and his elderly neighbor would reimburse him the costs.

Other Aggrieved Parties: Sam, Robert
Date of Interview: September 18, 2023
Type of Interview: Email
Interviewer: Ayala, Erika

Complainant #2 stated he filed a motion to disqualify Cronauer Law from representing Respondent and Melissa Mobile in the appeal. He stated he had seeked Cronauer Law firm to discuss the criminal charges against him in depth in hopes that they would represent him (**Exhibit U**). He stated Cronauer Law used the information they gained from him to respond to the instant charge of discrimination with IDHR. Cronauer Law responded and indicated the eviction against the Complainants was also related to Complainant #2's arrest record.

Complainant: Sam, Karen
Date of Interview: October 19, 2023
Type of Interview: Telephone
Interviewer: Ayala, Erika

Complainant #1, Karen Sam, stated the agreed order clearly said if they didn't move by June 1st, they would file for the eviction. They went forward with the eviction the day after Complainant #2 signed the agreement (**Exhibits V, Y**). She stated with the eviction filing on their record, they can't find a place to move to and they can't pull out of Dekalb County.

Complainant #1 stated that Melissa Mobile didn't want to accept their voucher, but her husband accepted it. Mobile's husband was compassionate, but he passed away in 2021 or 2022.

Respondent: Mobile, Melissa
Date of Interview: October 24, 2023
Type of Interview: Telephone
Interviewer: Ayala, Erika

Respondent BKA Holdings, LLC, President Melissa Mobile stated she owns five townhouses, in addition to the subject property currently occupied by the Complainants, she has four other

townhouses and two commercial properties. Mobile stated was aware of Complainants' family's disabilities, even though she never requested medical documentation to confirm it, she took their word that they were disabled. She stated she filed for eviction because the Complainants failed to pay their rent and utilities.

Mobile stated that as soon as Complainants Karen and Robert Sam signed their lease **(Exhibit K)** and moved in, their initial checks to her bounced **(Exhibits I and J).** She stated that in 2019, her current attorney began an eviction against the Complainants for failure to pay their rent **(Exhibit F, G, H and M).** She stated she worked with the Complainants and assisted in getting them a housing voucher with the Dekalb Housing Authority during the pandemic. With assistance from their housing voucher, the Complainants have to pay their portion of the rent and their utilities. Mobile stated she has another tenant who also uses a housing voucher to pay their rent. The tenant has lived in her townhouse for two years and was just renewed another year.

Mobile stated Robert Sam continuously lies. She contends she's not a horrible person, but he lies to her about everything. In 2022 she told Robert Sam that they needed to part ways. Complainants requested a month-to-month **(Exhibit B)** lease until their daughter finished the school year. Complainants were to move out by June 1, 2022. Complainants were past due with the water bill. She stated she is aware that Complainants started a Go Fund Me fundraiser **(Exhibit D)** to assist with rent and medical bills. She stated as Complainant #1 requires a fridge for her infusions and requires a physical address to have medication mailed to. Complainant #2 never tried to pay her to catch up. She stated since the Complainants moved in, they have never fully paid for their water bill. It's the only utility still in her name. It's been a year and a half and still no water bill payments. She stated her husband took over with managing the Sam's tenancy, but he passed away in April 2021. She stated that the Complainants were nice at first and even came to her husband's funeral.

Mobile stated the Complainant have never been current on their rent and water bill. She stated one of her attorneys recommended she forget the past due amount and try to move on. She is a realtor and wants to sell the townhouse. She has been showing it and Complainants have cooperated. Mobile stated the only factor to her filing an eviction against the Complainant was their past due rent and not due to any felonies or arrest records. She stated the news of the elderly neighbor was in the news and he was a client of hers so she heard about it but it was not a factor in her pursuing an eviction against the Complainants. She stated the Complainants Go Fund Me Fundraiser was shared on social medial in the neighborhood page and she came across it. She stated she, as the landlord, was mentioned in the post and people knew she was their landlord. She is also aware that while showing the Complainants townhouse, Complainant has lied and told people viewing the townhouse that he is the owner and has been bad mouthing the townhouse and sabotaging a sale. She has since removed it from the market. She stated that she is scared of Complainant #2 and does not know what he will do as the eviction process moved further along. She stated he is a compulsive liar and not truthful. She stated she has always tried to help the Complainants, but she cannot any longer. She stated that in June 10, 2020, Robert Sam posted a positive review about her on Zillow showing how much she had helped them **(Exhibit E).**

Mobile entered into an agreement **(Exhibit A)** with the Sams on March 8, 2023, which noted that the Sam's owed rent and late fees in the amount of $1,169.00 plus the cost of attorneys, plus additional rent and late fees continuing to accrue. The agreement indicated it would not become a judgement if Complainants moved out, but they refused to **(Exhibit L, N, O).** Complainants and Respondent discussed the agreements via email and Respondent tried to accommodate all of Complainants' requests and even extended the due date for repayments per Complainant #2's request to move a due date from the 25th of the month to the 31st **(Exhibits P and R)**. Mobile stated she and her attorney in addition tried to help Complainant keep his good standing with the Housing Authority **(Exhibit Q).**

Mobile stated that in May/June 2023 she did not accept the court-based assistance that would cover back rent as the Complainants defaulted on the agreed order. Had she chosen to accept the court-based assistance she wouldn't be able to continue with the eviction process. As she wants to sell the unit, she chose not to accept the court-based assistance. The Sams still owe her money. She stated she can't continue this way and doesn't want to keep the Complainants as tenants. When the Sams moved in they signed and acknowledged the lease **(Exhibit C)** and its policies and also signed the acknowledged the eviction notice that he received due to not paying his rent and utilities.

Mobile stated the Sam's never made an accommodation request to her. She stated since the Complainants received a housing voucher, the townhouse gets evaluated by the Dekalb Housing Authority. She stated that when the Complainants moved into the townhouse, she was going to charge them a dog fee, but they mentioned they had an emotional support animal, which she believed is for their daughter Harper. She granted the reasonable accomodation request and did not charge the animal deposit after she was informed the dog was an emotional support animal.

**Staff Note:** Respondent's Attorney submitted a written response to the Department dated August 17, 2023, in which he indicated that the eviction was a result of failure to pay rent and utilities and disturbing neighbors. Respondent's attorney further indicated in his response that Mr. Sam has a felony charge against him alleging that he was stealing money from his elderly neighbors, making Mr. Sam a disturbance to the rental community. The attorney indicated these were also part of the legal reasons for the eviction of Mr. Sam. Respondent's attorney further noted in his response that Mr. Sam disregarded the lease terms via a Go Fund Me in which he raised thousands of dollars from the public by misrepresenting his narrative of the facts and that despite raising thousands of dollars, he had yet to pay the money due and owing under the terms of his lease to Ms. Mobile. Respondent's attorney also noted that Mr. Sam admitted to the police that this was not his first time he had victimized others. He admitted to the police to stealing and selling items that were not his, the Attorney General's office sued him in 2007 for Home Repair Fraud: "I met with Robert multiple times in a non-custodial interview setting. Robert acknowledged that he did not possess the skills for the jobs he was doing and advised he would watch YouTube videos to learn how to do the work. Robert initially denied taking the bayonet and sword, but admitted to taking them after being confronted, saying that William had thrown them out. Robert had emailed the Godfrey family apologizing for this incident and said, "I think when you're under water so badly you just get so blinded and I am sorry for that." In his interview with Robert, he advised he would pay William back all of his money if that would

Case: 3:23-cv-50301 Document #: 169-16 Filed: 03/05/24 Page 16 of 52 PageID #:5734

allow for him not to be charge. Robert also advised that in 2007 he was sued by the Illinois Attorney General's office for Home Repair fraud **(Exhibit B).**

Complainant: Sam, Robert
Date of Interview: November 28, 2023
Type of Interview: Correspondence
Interviewer: Ayala, Erika

Complainant #2 corresponded with Staff and stated that Complainants' eviction was Vacated and remanded **(Exhibit S)** as Respondent prematurely filed the eviction against the conditions specified in the agreed order.

Complainant: Sam, Robert
Date of Interview: January 26, 2024
Type of Interview: Email
Interviewer: Ayala, Erika

Complainant #2 stated he felt that Respondent filed the eviction due to his arrest record based on what Respondent's previous attorney emailed him on May 17, 2021 **(Exhibit EE)** and what Respondent's attorney states in his written response to the Department.

Complainant stated he was arrested on or about August 2022 and charged with home repair fraud and theft. He stated if Staff googled his name, she would find an entire story about him **(Exhibit FF).**

Complainant: Sam, Karen
Date of Interview: January 26, 2024
Type of Interview: Email
Interviewer: Ayala, Erika

Complainant #1 stated that her family was in a news article **(Exhibit FF)**. She does not remember the date. Complainant #1 stated the article referred to Complainant #2 victimizing multiple people but there were no multiple people. She contends that Complainant #2 was not arrested. Complainant #1 stated he went to the police department voluntarily and was never mirandized. Complainant #2's public defender said this case should never have been brought, so most likely it will be dismissed. The detective was also friends with the family who claimed this after Complainant #2, reported the daughter to elder care. They never even contacted elder care about him.

Respondent: Melissa Mobile
Date of Interview: January 26, 2024
Type of Interview: Email
Interviewer: Ayala, Erika

Melissa Mobile clarified that she became aware of Complainants' Go Fund Me page on the Nextdoor neighborhood page/app which she is a member of.

Mobile stated that an acquaintance of hers came across a news article that came out November 1, 2022, and sent it to her, and asked if Robert Sam was her tenant **(Exhibit FF)**. Mobile became aware of Complainant's arrest via this article shortly after the article came out. Mobile's attorney via this investigation by IDHR, provided the specifics of the arrest **(Exhibit B, GG and HH)**. Mobile contends that she filed the eviction against the Sam's solely on their failure to pay their rent to her and not due to his arrest.

B. Documents

Nature of Document: Agreed Order  
Who Provided: Respondent  
How Transmitted to IDHR: Mail  
Date of Document: March 10, 2023  
Date Obtained: August 22, 2023

Agreed Order filed on March 10, 2023 **(Exhibit A)** indicates the Plaintiff is BKA Holdings, LLC, an Illinois Limited Liability Company and Defendants are Robert Sam and Karen Sam. The case number is 2023EV000102.

Agreed Order: This matter coming before the Court by Agreement with respect to the Plaintiff's Complaint for Forcible Entry and Detainer and Monetary Damages and the court being fully advised:

IT IS ORDERED AS FOLLOWS:

1. Defendants waive in requirements of being served with a 5-day or 30-day notice.
2. Defendants submit to the jurisdiction of this Court and waive formal service of the Complaint and Summons.
3. Defendants shall pay the sum of $914.00 to Plaintiff by March 25, 2023.
4. Defendants shall pay the sum of $255 to Plaintiff by April 25, 2023.
5. Defendants shall pay the sum of $255.00 to Plaintiff by May 25, 2023
6. Defendants shall pay any water bills incurred through May 31, 2023.
7. The lease term shall terminate on May 31, 2023, by which time Defendants shall vacate the premises.
8. An Order of Possession shall enter, enforceable on June 1, 2023, if Defendants have not vacated the premises.
9. This court shall retain jurisdiction of the case to enforce the terms of this order. This Court shall retain jurisdiction to adjudicate any damages claimed by Plaintiff from Defendants following Defendants vacating the premises.
10. Provided Defendants make payments as agreed, vacate the premises as agreed, and do not cause any damage to the premises, Plaintiff shall dismiss this case with prejudice and refund the security deposit within 30 days. Plaintiff may deduct the cost necessary repairs or cleaning, if any, from the necessary repairs or cleaning, if any, from the security deposit, as provided in the lease.

Case: 3:23-cv-50301 Document #: 19-15 Filed: 08/05/24 Page 18 of 52 PageID #:5736

11. This matter is continued to June 6, 2023, at 9:00 a.m. for status of compliance with this Order. Signed by Riley N. Oncken for Plaintiff and Robert and Karen Sam. Judge Stephanie Klein signed off.

Nature of Document: Police Department Sypnosis
Who Provided: Respondent
How Transmitted to IDHR: Mail
Date of Document: February 01, 2022
Date Obtained: August 22, 2023

Police Department Synopsis **(Exhibit B)** indicates the agency is the Sycamore Police Department, agency report number: 2208-00130. Date of offence is February 2022-August 2022. Place of Offense: 619 Stonegate Dr., Sycamore, IL. Defendant is Robert Sam, and his address is 639 Stonegate Dr., Sycamore, IL 60178.

Date of arrest: Warrant.

Authorized charges:

- Aggravated Home Repair Fraud-Felony- Class 2-Chapter and Section 815 ILCS 515/5-a (1)
- Aggravated Home Repair Fraud-Felony-Class 2-Chapter and Section 815 ILCS 515/5-a (2)
- Theft-Felony-Class 3- Chapter and Section 720 ILCS 5/16-1(a)(1)(A)

Synopsis of facts:

In August 2022, elder care services (ECS) referred a case involving home repair fraud and financial exploitation of two of their clients, William Godfrey and his wife Nancy Godfrey. ECS advise they were working with William and Nancy and their family. ECS advised that Nancy has dementia and that William cares for Nancy. ECS investigation uncovered possible home repair fraud and financial exploitation involving William and Nancy by their neighbor Robert Sam.

On August 17, 2021, detective Scott number 546 met with William and Nancy at the Sycamore Police Department. William stated their neighbor Robert friended him a few years ago. In February of 2022, Robert agreed to help William with multiple home repair projects. The projects were initially agreed to be done without any labor cost as Robert agreed to do the work for free. It was Williams understanding that he was only paying for material costs and that Robert would do the work with the materials paid for by William. One of the projects that Robert agreed to complete was turning 1/2 bathroom located on the first floor into a full bathroom with a walk-in tub. The bathtub was purchased by William. William then provided numerous checks written to Robert to purchase materials for the installation of the bathtub. Robert installed the bathtub into the half bathroom which included adding plumbing lines electrical, a support beam and drywall paint work. It was learned that the water heater was not big enough to support heating the bathtub. The bathtub had also had some deficiencies as it was a floor model. The

bathtub was then returned, and William was refunded for the bathtub through Lowe's. After the bathtub was taken out William ash Robert to install a shower in place of the bathtub. At that time Robert asked William for labor costs. According to William Robert asked for $1000 in labor costs. According to Robert he asked for 2000 in labor costs. In an interview with ECS prior to police involvement Robert advised that his labor cost was $1000. A check for the shower, labor costs, tile for the floor, paint and drywall was written to Robert. In total $6412.80 in checks were written from William to Robert for materials on house projects including $1000 in labor. Of the $6412.80 cents written to Robert a 485 check was written from William to Robert as a loan for medication cost. The loan was never paid back by Robert.

William and Nancy 's daughters are currently their designated power of attorneys. In August 2022, Robert was asked to provide itemized list of items that were purchased for the projects as part of an application process for a rehabilitation and healthcare Center for William and Nancy. Robert was unable to provide an accurate itemized list of the purchases for the home repair projects. Later on in the investigation it was learned that Robert made multiple purchases at Menards with money that was provided to him by William for the home repair projects. Many of the items were returned by Robert who would use in store credit and purchase personal items. Robert never returned any of the money to William for the return items.

After meeting with Nancy and William on August 17, 2022, I completed or walked through of their residence. I was assisted by the city of Sycamore director of building and engineering, the city of Sycamore electrical and building inspector, and the city of Sycamore plumbing and building inspector. They reviewed and inspected the work that was done by Robert and advise of numerous code violations for the plumbing electrical and HVAC. Many aspects of Roberts work were not done properly or incomplete. It was also learned that Robert did not pull any working permits for the work that was done on the residence. The city of Sycamore director of building and engineering also advised that the work Robert did would have to be done by a licensed plumber or electrician, which Robert advised he was not in a prior interview.

On August 19, 2022, I received an e-mail from an ECS investigator who advised of multiple items that were missing from William and Nancy 's home, including an antique sword and an antique bayonet. William confirmed that these items were his and that they were never sold or given away by him. On August 24, 2022, I located the sword and bayonet via LEADS online. both items were pawned at Bridge Pawn located in DeKalb Illinois. on May 11, 2022, by Robert. On August 25, 2022, I recovered the bayonet from the store the sword had been sold by Bridge Pawn on eBay and sold for $370. The bayonet was valued at least $150 by the owner of the pawn shop. After retrieving the bayonet from Bridge Pawn I met with William who confirmed the bayonet and the sword pawned at Bridge Pawn were his And that he never gave those items to Robert.

I met with Robert multiple times in a non-custodial interview setting Robert acknowledged that he did not possess the skills for the jobs he was doing and advised he would watch YouTube videos to learn how to do the work. Robert initially denied taking the bayonet and sword but admitted to taking them after being confronted saying that William had thrown them out. Robert had emailed the Godfrey family apologizing for this incident and said "I think when you're underwater so badly you just get so blinded and I'm sorry for that." in my interviews with

Robert he advised he would pay William back all of his money if that would allow for him not to be charged Robert also advised that in 2007 he was sued by the Illinois Attorney General's office for home repair fraud.

Investigating Officer: Detective Scott #546
Verification: M. Langrehr
The sypnosis was notarized.

Nature of Document: Residential Lease
Who Provided: Respondent
How Transmitted to IDHR: Mail
Date of Document: August 21, 2022
Date Obtained: August 22, 2023
Residential lease dated August 21, 2022 **(Exhibit C)** indicates the term of occupancy is September 1, 2022, and end date is month to month. The Lessor is BKA Holdings, LLC. The address is 461 White Street, Sycamore, IL 60178. Lessee is Robert and Karen Sam. Lessee Address is 639 Stonegate Dr., Sycamore, IL 60178. Rent is $1,950. Late fee is $25.00.

This agreement is made and entered this 21st day of August 2022 between Lessor and Lessee. Lessor leased to Lessee the premises, together with all appurtenances, for a term of Month to Month, to commence with 30 day written notice to tenant or non-payment/breach of lease.

- RENT: Lessee are grease to pay, without demand, to Lessor, as rents for the demise premises, the sum of $1950 per month, in advance. First and last installment shall be paid upon the due execution of this agreement and the remaining installment shall be paid on or before the first day of each calendar month, beginning September 1st. All such payments shall be made to Lessor at: Hometown Property Management, 328 W. Elm St., Sycamore, IL 60178.

- DEPOSIT: upon the two executions of the agreement, Lessee shall deposit with Lessor the sum of $1600 receipt of which is hereby acknowledged by Lessor as security for any damage caused to the demised premises during the term hereof. Such deposit shall be returned to Lessee, without interest and less any set off damages to the demised premises or rent due upon determination of this agreement.

- UTILITIES: Lessee shall be responsible for arranging 4 and paying for all utility services required on the demise premises. If Lessor is billed for or pays any utility service that is Lessee's responsibility, Lessee shall immediately reimburse Lessor, for such utility expense in the same month that such.

- HOLDOVER BY LESSEE: Should Lessee remain in possession of the demise premises with the consent of Lessor after the natural expiration of this agreement a new month to month tenancy shall be created between Lessor and Lessee which shall be subject to all the terms and conditions hereof but shall be terminated on 30 days written notice served by either Lessor or Lessee and the other party. Rent during such holdover. Shall be $2900 per month and shall be paid honor before the 1st of each calendar month.

If Lessee Fails to surrender possession of the premises upon termination of this agreement Lessee shall be deemed "holdover" and for each day Lessee continues to occupy the premises after termination lessee shall pay his damages of some equal to twice the total monthly payment to Lessor divided by 30. the acceptance of the damages pursuant to this paragraph shall not constitute rent nor shall it be a waiver by Lessor of any damages under this agreement or for any right of reentry.

- DEFAULT: if any default is made in the payment of rent, or any part thereof, at the times herein before specified, or of any default is made in the performance of or compliance with any other term or condition here of, this agreement, at the option of the Lessor shall terminate and be forfeited and Lessor may we enter the premises and remove all persons therefrom. Lessee shall be given written notice of any default or breach and termination or forfeiture of the lease according to the applicable law of the state of Illinois and city of Sycamore, county of DeKalb.

- LEGAL FEES AND COSTS: the non-prevailing party shall pay upon demand, all actual costs and expenses, including attorney's fees that shall be made or incurred by the prevailing party in enforcing this lease or incurred in any litigation, negotiation, arbitration, transaction, or other proceeding in which non prevailing parties action or inaction causes the prevailing party to become involved or concerned. Any other documents executed by the parties hereto shall also be governed by these same legal fees and costs clause.

- LATE CHARGE: In the event any payments required to be paid by Lessee here under it's not made within five days of one due, Lessee shall pay to Lessor in addition to such payment or other charges do here under a "late fee: in the amount of $25.

- BINDING EFFECT: The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this lease.

- HEADINGS: The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision hereof.

- SEVERABILITY: If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

- ENTIRE AGREEMENT: This Agreement supersedes all agreements previously made between the parties relating to its subject matter. There are no other understandings or agreements between them. It contains the entire agreement of the parties. It may not be changed orally but only by an agreement in writing signed by all parties.

Case: 3:23-cv-50301 Document #: 109-15 Filed: 08/05/24 Page 22 of 52 PageID #:5940

- SERVICE OF NOTICES: In the event Lessor is required to serve any type of notice on tenant, such as a 5 day or 10-day notice, for any reason whatsoever, tenant shall be assessed a fee of $25.00 per notice to cover the cost of producing and serving such notice.

- PAYMENTS: The order of allocation of any and all payments received by Lessor shall be as follows: 1) Late fees, 2) Replenish security deposit, 3) Repair costs not covered by or deducted from security deposit, 4) Utilities owed by Lessee that are paid or billed to Lessor, and 5) Rent.

- ADDITIONAL RENT: Any amounts that are due Lessor for repairs, utilities, late fees, or any other thing that are not paid in the same month they become due shall be added to the amount payable by Lessee the following month, as additional rent.

- BACKGROUND INVESTIGATION: Lessee acknowledges and agrees that, to the extent permitted by law, Lessor may conduct an Investigative Consumer Report and criminal background check of Lessee.

- BACKGROUND INVESTIGATION: Lessee acknowledges and agrees that, to the extent pe1mitted by law, Lessor may conduct an Investigative Consumer Report and criminal background check of Lessee.

  Signed by Michael Mobile, President and Robert and Karen Sam, Lessees.


Nature of Document: GoFundMe Fundraiser
Who Provided: Respondent
How Transmitted to IDHR: Mail
Date of Document:
Date Obtained: August 22, 2023

Go Fund Me fundraiser for Complainants (**Exhibit D**) indicates that Karen Sam was organizing the fundraiser on behalf of her family. The fundraiser name was "Saving a family. Praying for a miracle." It indicated it had raised $4,238 of a $7,525 goal. In the fundraiser was Karen Sam's story:

Hi, my name is Karen, and I'm trying to fund raise for my beautiful daughter and my loving husband. I have an immune disorder called CVID amongst other diseases like Graves' disease, UC, TED and my daughter has special needs from a form of epilepsy called partial band heterotopia also known as Double Cortex Syndrome. Both CVID and Double Cortex Syndrome are considered extremely rare and require medication that is not covered by standard insurance, probably due to their extreme cost and not being widely used. We financially lost everything to keep my daughter and myself as ok as possible including the home that we owned. For years my husband has been able to hold us together, but as I'm getting older and worse, I can't always physically help my daughter when she needs it. So, he has stayed here to take care of us. Because of this, we're being evicted, over our head in bills, and won't even be able to stay in our car as that's falling apart. We've already lost everything financially but now we're going to be losing

our shelter and security as there's no way to stay on our meds without a home since I require biweekly infusions that take a few hours each time and both of our two main meds require a physical address to deliver to for our signature as they come from specialty pharmacies. My husband is starting to fall apart as he no longer knows how it's possible, we survive this. I don't know how we will either. Medically, I've been a financial death sentence, and this is my last chance of possibly helping us. If anyone could help with any contribution, it'd be a miracle. It would also be a contribution to saving our family.

Thank you for your consideration!

I'm praying for a Miracle

An update indicated:

August 14, 2023, by Karen Sam, Organizer

Hi Everyone,

I wanted to again say thank you. Because of everyone's kindness and help we are over halfway to our goal! It's hard for me to believe because of all of my additional health issues that have arose, but if we're graced with a miracle and we actually meet it; We'll definitely be able to sustain ourselves medically throughout our horrible situation until it gets worked out. We figured the math out, and we'd be able to do it. We may even be fortunate enough to bring our daughter to the Mayo Clinic in Minnesota for additional help. There's a specialist there who believes that after he does some additional testing, he'd be able to put together a more efficient plan for her. That should help reduce her seizures and as a result, school should go better for her.

Prior to me starting our GoFundMe, I was pretty cynical. It just felt like we were in a cold world where no one really cared about others anymore. You all have showed me how wrong I was and, I'm sorry I ever thought that. We are so blessed to have people like you in our world. You've not only helped us physically survive but you also helped us so much mentally. When you're in such despair and pain, knowing that you're not invisible and people do care is the ultimate boost to help you get through.

I'll never be able to thank you all enough for your compassion.

I hope this update finds you all in good health and happiness.

Thank you again.

Nature of Document: Zillow Review
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: June 10, 2022
Date Obtained: October 24, 2023

An email from Zillow (no-reply@confirmation.zillow.com to Mobile (melissamobile33@gmail.com) dated June 10, 2020, at 10: 20 a.m. (**Exhibit E**) indicates a review rating of five out of five. Complainant #2 indicates: "Most realtors will advertise how their clients come first and how it's very important for them as realtors to help you find the right home. Melissa Mobile and her husband Mike Mobile take those words literally. It's hard to trust people today or find people who really care and not just say they do. My wife and daughter are

Charge Number: IDHR 2023CH1772    HUD 05-23-8696-8
Page 17

disabled, and we have been through many moves and hard times because of our situation. Most people would have walked on us because we are too much work or too much trouble, not Mike and Melissa Mobile. They stayed with us every step of the way and helped end the craziness by truly helping us when no one else would. If you're really considering moving and you don't know who to turn to, finding a house is easy but finding people who stay with you all the way and really care is. So, you need to work with Melissa Mobile because with them you really aren't good hands every step of the way.

Nature of Document: Late Rent Notice
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: November 08, 2019
Date Obtained: October 24, 2023

Late Rent Notice dated November 8, 2019, to Robert and Karen Sam **(Exhibit F)** indicates:

Dear Robert and Karen Sam,

This notice is to inform you that we have not received your full rent payment in accordance with your lease dated September 6, 2019, for the premises located at the above stated address, which was due on November 1, 2019, and the total amount of $1,700. According to the terms of your rental agreement, you are required to pay an additional late fee of $25, as well as a $25 notice fee, if collection is required your debt obligation may increase due to court costs, attorneys' fees, interest and other related costs that may be incurred. As of today, your payment is eight (8) days past due. Your overdue rent is $1,700 plus a late charge of $25 and a notice fee of $25. Total amount due is $1750. If the full payment plus late charges are not received by November 11, 2019, we will be forced to take legal action to enforce your obligation under the rental agreement. If you have any questions about this, please contact me immediately.

Very truly yours,
Hometown Property Management
Mike Mobile, Leasing Agent
328 W Elm St.
Sycamore IL 60178
Attached was a certified mail tracking number and delivery confirmation.

Nature of Document: Landlord's 5-Day Notice
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: November 20, 2023
Date Obtained: October 24, 2023

Landlords Five-Day Notice for Failure to Pay Rent to Robert and Karen Sam dated November 20, 2019 **(Exhibit G)** indicates:

TO: ROBERT & KAREN SAM
639 STONEGATE DRIVE, SYCAMORE, IL 60178

YOU ARE HEREBY NOTIFIED, PURSUANT TO 735 ILCS 5/9-209, THAT THERE IS NOW DUE TO THE UNDERESIGNED LANDLORD THE SUM OF $1,700.00 IN UNPAID RENT FOR THE MONTH(S) OF: NOVEMBER 2019 PLUS LATE/NOTICE FEES TOTALING $50.00, FOR THE PREMISES SITUATED AT: 639 STONEGATE DRIVE, SYCAMORE, IL 60178.

YOU ARE FURTHER NOTIFIED THAT PAYMENT OF SAID SUM SO DUE HAS BEEN AND IS HEREBY DEMANDED FROM YOU AND THAT, UNLESS FULL PAYMENT THEREOF IS MADE ON OR BEFORE FNE (5) DAYS FROM THE DATE OF SERVICE OF THIS NOTICE, YOUR POSSESSION OF SAID PREMISES WILL BE TERMINATED. ONLY FULL PAYMENT OF THE RENT AND LATE FEES DEMANDED IN THIS NOTICE, WITHIN FIVE (5) DAYS OF THE DAE OF SERVICE OF THIS NOTICE, WILL WAIVE THE LANDLORD'S RIGHT TO TERMINATE YOUR TENANCY UNDER THIS NOTICE, UNLESS THE LANDLORD AGREES IN WRITING TO CONTINUE THE LEASE IN EXCHANGE FOR RECEIVING PARTIAL PAYMENT.

Dated this 20th day of November 2019. Signed by Michael Mobile. He swore he hand delivered a copy to the tenants.

Nature of Document: Landlords 10-Day Notice to Quit
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: November 20, 2019
Date Obtained: October 24, 2023
Landlords Ten Day Notice to Quite to Robert and Karen Sam dated November 20, 2019 (**Exhibit H**) indicates:

You are hereby notified, pursuant to 735 IL CS 5/9-210, that you have violated the terms of the lease for the premises situated at 639 Stonegate Drive, sycamore, Illinois by:

A. failing to pay rents by the due date, as required by the lease; and
B. failing to pay the non-refundable pet deposit as required by the lease.

You are hereby notified that, as a result of the aforementioned breaches of said lease, I have elected to terminate your lease effective 10 days from the date of this notice.

Demand is hereby made that you vacate the premises and deliver up possession thereof to the undersigned at that time period no further demand shall be necessary before bringing legal proceedings to recover the premises.

Dated this 20th of November 2019 signed by Michael Mobile.
Dated this 20th day of November 2019. Signed by Michael Mobile. He swore he hand delivered a copy to the tenants.

Case: 3:23-cv-50301 Document #: 16-15 Filed: 08/05/24 Page 26 of 52 PageID #:5944

Nature of Document: Notice of Deposited Items Charged Back
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: September 18, 2019
Date Obtained: October 24, 2023

Notice of Deposited Items Charged Back to Account for Hometown Realty Group, Inc., dated September 18, 2019 (**Exhibit I**) indicates the items listed below have been returned and charged back to the account. The reason for return was not sufficient funds in the amount of $1,700.00. The check dated September 16, 2019, indicated it was Robert Sam's security deposit.

Nature of Document: Notice of Deposited Items Charged Back
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: September 18, 2019
Date Obtained: October 24, 2023

Notice of Deposited Items Charged Back to Account for Hometown Realty Group, Inc., dated September 18, 2019 (**Exhibit J**) indicates the items listed below have been returned and charged back to the account. The reason for return was not sufficient funds in the amount of $5,090.00. The check dated September 16, 2019, from Robert Sam indicated it was rent through October.

Nature of Document: Residential Lease
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: September 06, 2019
Date Obtained: October 24, 2023

Residential Lease dated September 6, 2019 (**Exhibit K**) indicates begin date of occupancy is September 10, 2019, and end date is August 31, 2021. The Lessor is BKA Holding, LLC. Lessee is Robert and Karen Sam, and their address is 1514 Brookfield Dr., Plainfield, IL 60178. The monthly rent amount it $1,700.00 and late fee is $25.00.

This Agreement: (hereinafter referred to as the "Agreement") is made and entered into this 6th day of September 2019 between Lessor and Lessee. Lessor leases to Lessee the premises together with all appurtenances, for a term of One year, to commence on September 10th. 2019, and to end 11th October 2021.

- RENT: Lessee agrees to pay without demand, to Lessor as rent for the demised premises, the sum of $1,700 per month, in advance. First and last installments shall be paid upon the due execution of this Agreement, and the remaining installments shall be paid on or before the 1st day of each calendar month, beginning October 1st, 2019. All such payments shall be made to Lessor at: Hometown Property Management, 328 W. Elm St., Sycamore, IL 60178.

- DEPOSIT: Upon the due execution of the agreement, Lessee shall deposit with Lessor the sum of $1, 700 receipt of which is hereby acknowledged by Lessor as security for any damage caused to the demised premises during the term hereof. Such deposit shall be returned to Lessee, without interest, and less any set off for damages to the demised premises or rent due upon the termination of this Agreement.

- PETS: Lessee shall allow pets on the leased premises with a $500 non-refundable pet deposit. List pet weight and breed, dog Shitzu Mix, 12lbs.

- UTILITIES: Lessee shall be responsible for arranging for and paying for all utility services required on the demised premises. If Lessor is billed for or pays any utility service that is Lessee's responsibility, Lessee shall immediately reimburse Lessor for such utility expense in the same month that such.

- Holdover by Lessee: Should Lessee remain in possession of the demised premises with the consent of Lessor after the natural expiration of this Agreement, a new month to month tenancy shall be created between Lessor and Lessee which shall be subject to all the terms and conditions therefore but shall be terminated on thirty (30) days written notice served by either Lessor or Lessee on the other party. Rent during such holdover period shall be $2, 900.00 per month and shall be paid on or before the 1st day of each calendar month. If Lessee fails to surrender possession of the premises upon termination of this agreement, Lessee shall be deemed "holdover" and for each day, Lessee, continue to occupy the premises after termination, Lessee pay as damaged a sum equal to twice the Total Monthly Payment does not constitute rent nor shall it be a waiver by Lessor of any damages under this agreement or of any right of re-entry.

- Surrender of Premises At the expiration of the lease term, Lessee shall quit and surrender the premises hereby dismissed in as good state and condition as they were at the commencement of this lease, which shall include having the carpets professionally cleaned (cleaning by Lessee with a rental unit is not acceptable), reasonable use and wear thereof and damage by the elements excepted.

- Default: If any default is made in the payment of rent, or any part therefore, at the times hereinafter specified, or if any default is made in the performance of or compliance with any other terms or condition hereof, this Agreement, at the option of Lessor shall terminate and be forfeited, and Lessor may re-enter the premises and remove all person therefrom. Lessee shall be given written notice of any default or breach and terminated of forfeiture of the lease according to the applicable law of the State of Illinois and City of Sycamore, County of Dekalb. The lease was signed on behalf of Respondent by Melissa and Michael Mobile and Lessee Robert and Karen Sam.

Nature of Document: Move out procedures
Who Provided: Respondent
How Transmitted to IDHR: Email

Charge Number: IDHR 2023CH1772                                    HUD 05-23-8696-8
Page 21

Date of Document:
Date Obtained: October 24, 2023

Move Out Procedures: Advance Notice for Showings (**Exhibit L**) indicates:
This letter serves as notification that we will begin showing your rental to prospective tenants if your lease is not turned into the office by the renewal deadline on lease. We will always phone ahead to notify you of the showing. Please keep us up to date with your best contact information to avoid any miscommunication. The cleaner your rental is, the better the property will show, and the quicker it will be rented, and we can stop showing. Rentals can be shown 7 days a week, but we will do our best to accommodate your schedule.
It is required in your lease that you leave the rental property clean. If you are unable to do so, we suggest you hire a professional cleaning service. If it is not dean, please refer to the attached cost chart for charges that will be deducted from your security deposit (if applicable) or you will be billed. Failure to pay will result in being sent to collections.

Please see attached cost chart for damages: For further details about cleaning conditions, please contact Hometown Property Management. If we are required to hire a cleaning service, you will be charged approximately $100 to $400. This is merely an estimate and will vary based on the condition of the rental property. It is also your responsibility to remove all of your personal items and dispose of them properly. If you fail to dispose of any oversized items, you will be charged $100 to $500, in addition to a labor charge.
You need to let us know the date and time of your move-out so that we can arrange a walk through inspection of your unit and coordinate the move in of the new tenant.

Nature of Document: Email
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: November 24, 2019
Date Obtained: October 24, 2023

Email from Robert Sam to Mike Mobile and Melissa Mobile dated November 24, 2019 (**Exhibit M**) indicates:

I wanted to follow up with you on our position and this 10-day notice to quit. There are no grounds for this lease to be broken or voided. We expect the 2year lease to be honored and continued. This is ridiculous what your client is trying to put my family through, and it will not be tolerated. I will be going to the Chicago news media, and I will be filing complaints against both your clients with the Illinois ethics citation board. Your clients should review the 2019 Code of Ethics & Standards of Practice. Your clients were aware of my family serious medical and disability situation, now after getting my daughter enrolled in school which was very difficult and right before the holidays your clients pull this? I will be filing what took place to us in the Reviews for your clients as well as filing a complaint with the Illinois attorney general for consumer fraud. We will fight this till the end and beyond, if I have to. This is malicious, and it is all due to discrimination against people with disabilities as to why your client has rejected the rent because it is a housing voucher. I hope you and your clients never have to suffer like we have, but to intentionally kick people when there down right before the holidays, especially a

Charge Number: IDHR 2023CH1772                    HUD 05-23-8696-8
Page 25

Nature of Document: Email thread
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: February 20, 2023
Date Obtained: October 24, 2023

Email thread between Robert Sam and Respondent's attorney Riley N. Oncken dated February 20, 2023- March 4, 2023 (**Exhibit P**) indicates that:

On February 20, 2023, at 11:08 a.m. Oncken emailed Sam:

"Bob, Attached is the proposed Agreed Order that I have prepared to resolve things between you and Melissa. It would be my intent to have the 3 of you sign this Order in the next couple days. Then I will file the Eviction case and then I will file the Agreed Order and continue the case until after you are moved out and then, assuming everything goes as planned, dismiss the case. Please let me know if you have any questions or changes to the Order."

On February 23, 2023, at 9:09 a.m. Sam emailed Oncken:

"Riley,
If you can change the payment dates from the 5th to the 15th that will make sure I have the money for her. Also, I know you represent her, and you need to make sure everything works well for her but, I have to make sure things work well for us. There is no mention of our security deposit being paid back and that is wrong. You cover her and mention about damages or us destroying the place as if we are animals but no mention of the security deposit. Look, we have taken care of this place this whole time. Never asked for anything from her, I made all the repairs. I was owed 350.00 from Mike for doing the GFI outlets before the inspection year before last and never got paid and I let it go because of what he did. Now I know Melissa does not like me and that's ok and I know you and her might think a certain way about our situation or me and things that have happened. But I can assure you I am not a bad person, and the real truth will come out it really will. So please don't think we are damaging her house, we are not. Please include the pay back of the security deposit the last day of our being here after a walk through, does that sound fair? Or have her keep the security and deduct the payments from that. Either way this agreement cannot be one sided and as you know we have never gotten anything for free from Mike or Melissa, not one thing. So she is not and has never done me any favors other than raise the rent when she knew we could not afford it."

On February 23, 2023, at 11:48 a.m. Oncken emailed Sam:

"Bob:
I have revised the Agreed Order with the changes that you requested. If it is acceptable to you, please sign and return it. Thank you."

On March 1, 2023, at 10:43 a.m. Sam emailed Oncken:

"Riley,

I printed this out but it's a good thing I did not sign, we need one more change and we can sign. Make the due date for the payments the 25th. I am going to need the extra time because I have to get movers, pay a security for a new place and everything in between. This gives me enough time to get Melissa her money. If that works then re send me the agreement and I figured out how to send it to you over email. So, I can get it back to you right away."

On March 1, 2023, at 11: 28 a.m. Oncken emailed Sam:

"Bob – We have been trying to work with you, but first you committed to the 5th and we agreed, then you asked to change it to the 15th and we agreed. Now you are asking for 20 days more than you originally committed to. I am not feeling confident with you continuing to change the rules after we have an agreement on something. I will check with Melissa to see her position.

Melissa – Please let me know if you agree to the 25th."

On March 1, 2023, at 12:11 Sam emailed Oncken:

"It's actually 5 days more than I asked for. But you don't have to do anything. I am fine with the court route as well."

On March 1, 2023, at 3: 51 p.m. Oncken emailed Sam:
"Bob - Here is the revised Order. Please sign and return it to me ASAP and then I will have Melissa sign it. We are trying to make this as amicable as possible, so I truly hope that you can hold up your side of the agreement now that we have agreed to what you have asked. Thanks."

Nature of Document: Email
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: March 23, 2023
Date Obtained: October 24, 2023

Email thread between Lexy Moreland, HCV Case Manager for the Housing Authority of the County of DeKalb and Melissa Mobile's and her attorney Riley N. Oncken dated March 23, 2023, at 12:09 p.m. (**Exhibit Q**) indicates the following:

On March 23, 2023, Moreland emailed Mobile:
"Good afternoon,
My name is Lexy Moreland, and I am a case manager for Housing Authority of DeKalb County. I tried to contact you by phone however there was a message stating the number was unavailable. I am writing to you with regards to one of your current tenants Robert Sam. HACD is in process of his annual recertification. One of the steps in processing this is to look up any activity within Dekalb County court docket. It appears that the has been an eviction filing regarding Mr. Sam. HACD is asking for a copy of the ledger for the arrears. Failure to pay the

tenant portion of rent is a violation on Mr. Sam's part under the Family Obligations of the Section 8 program. Any assistance in providing this information would be greatly appreciated. If you have any questions or concerns, please feel free to contact me at my information listed below. Thank you."

On March 23, 2023 at 1:17 p.m. email from Oncken to Moreland:

"Ms. Moreland:
I represent Melissa Mobile. Mr. Sam did fall slightly behind in his portion of the rent, but we have worked it out with him and entered the attached Agreed Order. The eviction will be dismissed after he vacates the property at the end of May. The Sam family has had a very difficult few years, so my client and I felt it was best to try to work with them and end the lease term on a positive note. We do not want the Sams subsidy to be impacted for the future."
On March 23, 2023, at 1:19 p.m. Oncken forwarded the message to Robert Sam:
"FYI – We are trying to keep you in good standing with the Housing Authority."


Nature of Document: Email thread
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: March 22, 2023
Date Obtained: October 24, 2023


An email thread between Robert Sam and Respondent's attorney Oncken dated March 22, 2023 (**Exhibit R**) indicates:
On March 22, 2023 at 11: 20 a.m. Sam emailed Oncken:
"Riley,
I have tried everything legally possible to raise this money. The soonest I can get it to Melissa is the 31st. A teacher who does my daughters speech is going to lend it to me. But she won't have it till then. Our car is being repossessed so I am really pretty much just done and ready to pull the plug at this point. If your wonderful client can give me till the 31st I'll have the money we agreed on. I am doing everything I possibly can. If you evict us my wife will die there is no other way I can tell you. Plus, we will lose the vouchers. So, all I ask is for no surprises. Let me know if she will let me pay her next Friday or not."

On March 22, 2023, at 11:20 a.m. Oncken emailed Sam:

"Bob - My client will agree to accept the payment that is due on the 25th on the 31st."

On March 22, 2023 at 11:56 a.m., Sam emailed Oncken:

"Thank you."

On March 22, 2023, at 12:01 p.m., Oncken emailed Sam:

"Thank you for continuing to communicate and trying to work things out with us."

Charge Number: IDHR 2023CH1772　　　　　　　　　　　　HUD 05-23-8696-8
Page 28

Nature of Document: Filed Opinion
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document: November 28, 2023
Date Obtained: November 28, 2023

IL App (2d) 230163, No. 2-23-0163; Opinion filed November 28, 2023; In the Appellate Court of Illinois, Second District, 2023 **(Exhibit S)** indicates the judgment of the circuit court of De Kalb County is vacated, and the case is remanded for further proceedings consistent with this opinion. Vacated and remanded.

Nature of Document: Medical letter
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document: May 07, 2023
Date Obtained: October 03, 2023

Medical letter for Karen K Auksi-Sam dated May 7, 2023 **(Exhibit T)** indicated that Complainant #1 has been a patient of Sara Doss, MD, since 2014. She has the following medical conditions:

Patient Active Problem List: Migraines, DJD (degenerative joint disease), scoliosis, septic shock, asthma (moderate persistent), microscopic colitis, CVID (common variable immunodeficiency), allergic rhinitis due to cats and dogs, graves' disease, migraine without aura and without status migraineurs, not intractable, and CIN III (Cervical intraepithelial neoplasia grade III) with severe dysplasia. Ms. Auksi-Sam suffers from CVID, an immunodeficiency which makes her more susceptible to infection. She has suffered from infections over the course of her life and once was critically ill as a result, leading to septic shock. She has been actively getting treatment for CVID but it still at risk of infection. Due to this, as well as some of other medical problems, Karen has to have a stable housing to receive her treatments and try to remain healthy. Signed by Sara Doss, MD. Loyola Medicine Homer Glen, 15750 Marian Drive in Homer Glen, 60491-6200. 708-645-3400.

Nature of Document: Response in opposition to motion
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document: September 14, 2023
Date Obtained: September 18, 2023

PLAINTIFF-APPELLEE'S RESPONSE IN OPPOSTION TO DEFENDANT-APPELLANT'S MOTION TO DISQUALIFY AND BAR COUNSEL filed date September 14, 2023 **(Exhibit U)** indicates Case No. 2023 EV 102; Plaintiff- Appellee v. Robert Sam and Karen Sam, Defendants-Appellants.

Case: 3:23-cv-50301 Document #: 169-16 Filed: 08/05/24 Page 33 of 52 PageID #:5951

- Mr. Sam attempts to bar the undersigned from representing the Plaintiff, BKA HOLDINGS, LLC (hereinafter sometimes referred to as "BKA") pursuant to Illinois Rule of Professional Conduct 1.18 (hereinafter sometimes referred to as "Rule 1.18").

- When a motion filed in this Court is based on facts that do not appear of record it shall be supported by affidavit or verification by certification pursuant to section 1-109 of the Code of Civil Procedure. Any affidavit shall be sworn to before a person who has authority under the law to administer oaths. Ill. Sup. Ct., R 361 (emphasis added).

- Here, Mr. Sam does not support his Motion to Disqualify and Bar Counsel with an affidavit or by verification by certification pursuant to Section 1-109 of the Code of Civil Procedure. Additionally, Mr. Sam provides nothing but conclusory allegations and did not provide the factual reconstruction necessary for the three-step analysis this Court is required to conduct under Schwartz v. Cortelloni, 177 Ill 2d 166 (1997) (adopting LaSalle National Bank v. County of Lake, 703 F.2d 252 (7th Cir. 1983)). As Schwartz makes clear, this Court must guard against motions to disqualify being used as tools for harassment. Id. at 815. Therefore, Mr. Sam's Motion to Disqualify and Bar Counsel should be stricken.

- Mr. Sam contends that he sought representation from the undersigned firm regarding the instant matter and also many other matters that contributed to the instant matter. Sam Mot. Disqualify p. 1 (September 11, 2023). Mr. Sam contends that he has consulted with both Charles Cronauer and C. Nicholas Cronauer regarding such matters. Id. He claims many documents have been sent. He fails to provide any context or specifics as to how any of these acts create adverse information in a substantially similar event.

- Because Mr. Sam has not supported the instant Motion with an affidavit, certification, or any evidence, Mr. Sam has not met his burden of establishing that the present and potential former representations are substantially related. Because Mr. Sam has not provided any evidence, Mr. Sam has not met his burden of proof, and for this reason alone, Mr. Sam's instant Motion should be denied.

- Mr. Sam called the firm once in April 2022 and was told the issue is not within the scope of the firms practice, then emailed the undersigned firm on several occasions from September 2022 through December 5, 2022 regarding issues that pre-date this matter and are unrelated to this matter.

- On November 17, 2022, the undersigned firm declined to represent Mr. Sam. Exhibit C ¶ 13.

- Here, none of the information shared in 2022 involved the instant case. Exhibit D ¶ 7. The undersigned firm did not learn anything about the instant case in 2022 given that the eviction filing was not in existence until the spring of 2023. Id. Nothing in Mr. Sam's emails is, was, nor can it, be used again him factually nor legally. Id. The record on

appeal is based upon what happened in the trial court. Id. The undersigned firm was not involved in the proceedings below. Id.


Nature of Document: Court Transcripts
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document: April 18, 2023
Date Obtained: August 25, 2023


IN THE CIRCUIT COURT OF THE 23RD JUDICIAL CIRCUIT DEKALB COUNTY, ILLINOIS Case No. 23 EV 102 Report of Proceedings of the electronic recording of the hearing before the Honorable Judge Stephanie P. Klein, on the 18th of April 2023 (**Exhibit V**)


THE COURT: Mr. Oncken?
MR. ONCKEN: Thank you, Judge.
I guess I'll start backwards.

There was a meeting of the minds. Mr. Sam is no rookie to the court proceedings. We were here back in 2019, 2019 LM 614, same plaintiff, same defendant. We went through the court process. He filed a jury demand in order to delay proceedings. He threatened to file bankruptcy in order to delay proceedings. He did the same thing at this time when he contacted my client in February and said he was financially struggling. My client agreed to allow him -- even though he's a month-to-month tenant, allow him to continue to reside in the property, even though he hadn't paid through the end of May, so that his child could finish the school year out. That was a significant concession that my client made. In exchange for that, the other terms of the agreed order were included in there. He was to pay a -- pay the sum that he was significantly behind by March 21st -- I'm sorry, March 25th, and then his portion of the rent on April 25th and May 25th. As of today, he's paid nothing. I disagree entirely with Mr. Hanford's interpretation of paragraph 8, which indicates an order for possession shall enter, enforceable on June 1st, 2023, if defendants have not vacated the premises.

It's exactly what was entered the same day as the agreed order was entered, and that was stayed. That is the only way my client is guaranteed that Mr. Sam will be out of the property when he said he would be. I guess when we talk to the issue of substantial justice, Mr. Sam and his family are month-to-month tenants. If my client had proceeded with the eviction in February when she contacted me to indicate that Mr. Sam was behind, he'd already be out, and that would significantly impact his future because he'd lose his voucher as a result of the eviction order being entered. This was the result of significant negotiations both over the phone and over e-mail with Mr. Sam regarding these terms. I believe there were four drafts of this agreed order that were exchanged back and forth before this final one was reached. He kept changing the dates where he could pay, my client continued to agree.

It's not about the money, it's about making sure that Mr. Sam is actually out by the date he says that he will be out. That is the most important part of this order, and that is why that order was entered the same day.

There was no deception, there was no trickery, there was nothing done other than what Mr. Sam and I agreed we would do in order to give him and his family the opportunity to move out at the end of May as a concession to his family, and so we would not have to have prolonged litigation like we did back in 2019 and 2020. Again, Mr. Sam only contacted -- to my knowledge, only contacted Prairie State when he was unable to make the March 25th payment and I contacted him. He said I can probably pay it if you give me another week. Sure, we'll give you another week.

Again, concession after concession that my client and I have made for Mr. Sam and his family to stay in this property. It was done this way for efficiency, it was done this way so that Mr. Sam and his wife would not have to come to court, and again, if you reference the 2019 case, you will see what I mean that he is no rookie to the court system. You can also see his name in other court matters as well. I guess the severity of the penalty in this case, Mr. Sam is benefiting from this agreed order much more than my client has. My client has received again none of the rent that was promised in there. That is not the issue. She doesn't care. She wants Mr. Sam out, and the only way to guarantee that he will be out so that she can sell the property, which is what her intention is, is for this eviction order to stand. The order very clearly provides that we will be back -- or would be back on June 6th, and now the Court has continued that to June 13th, so that we can vacate both the eviction -- well, we can vacate the eviction order, provided that he's done what he's promised that he would do. The goal is not to harm Mr. Sam or his future or the ability for him to have vouchers. The goal is for my client to have a guarantee that he is not going to play games, and it will have to come back again. My client sacrificed a great deal by agreeing to this and not moving forward with the eviction proceedings in February, and again, he would be out by now if we had done so. And so to say that this is now somehow unfair to him is just incorrect.....

THE COURT: All right.
This comes before me with regards to an agreement that was reached and documents that were submitted to the Court for approval and signature based on that agreement to document the agreement.
There is nothing improper in the procedural manner in which the documents were submitted. It happens very frequently that there are agreements and agreed orders submitted to this Court, and that parties ask for those to be entered prior to scheduled court dates and without hearings to avoid the necessity of coming to court. So there was no court appearance at which I saw Mr. Sam or Ms. Sam prior to the entry of the agreed order, because the agreement was reached and entered and submitted for my signature prior to the court date, which does comport with the procedural history laid out by Mr. Oncken.
In reviewing paragraph 8 of the agreed order that was entered on March 10th, 2023, it states an order of possession shall enter, comma, enforceable on June 1, 2023, comma, if defendants have not vacated the premises. It does not state that the order of possession will enter on June 1st, it shall enter and be enforceable on June 1st.
So I believe that the eviction order that was entered simultaneously with the agreed order, that those two documents are entirely consistent.
With regards -- now, the more, I think, significant issue for -- as raised by Mr. Hanford's motion is whether the agreement that was entered actually truly reflects a meeting of the minds between

Mr. Sam and Mr. Oncken's client.

Mr. Hanford has put forth that Mr. Sam was pro se, he was representing himself, and that there was no meeting of the minds.

The Court -- if I were to find in your favor, Mr. Hanford, or in favor of your client, the Court would necessarily be saying that simply because someone is self-represented, any agreement they enter into can be vacated at any time. That is not the law. There does need to be more evidence to set aside an agreement that your client entered into voluntarily.

This Court is not going to modify the agreement or change it or vacate it.

Each party will be expected to conduct their behavior in accordance to what they have agreed with. That is not the law. There does need to be more evidence to set aside an agreement that your client entered into voluntarily.

This Court is not going to modify the agreement or change it or vacate it.

Each party will be expected to conduct their behavior in accordance to what they have agreed with.

Nature of Document: Robert Sam response
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document:
Date Obtained: August 25, 2023

State of Illinois in the Circuit Court for the twenty- third judicial circuit Dekalb County No. 23OP 296 (**Exhibit W**) indicates the Petitioner is Robert Sam and Riley Oncken is the Defendant.

<u>Now comes the petitioner. Robert Sam. Pro-Se and for his response to the Defendant's response to the verified petition stalking no contact order.</u>

In our pursuit of justice, I have undertaken the task of presenting the chronology of events surrounding the defendant's actions. This cinematic narrative aims to shed light on the convoluted responses presented by the defendant and their legal representation. By showcasing a cohesive and coherent depiction, I intend to elucidate the criminal harassment inflicted upon my family by Riley Oncken.

Our journey to Sycamore commenced in October 2019, marked by transparent conversations with Melissa and Mike Mobile. We disclosed our financial predicament, underscoring the potential for occasional delays in rental payments due to exorbitant monthly medical expenses amounting to $80,000 for vital prescriptions. Both Melissa and Mike Mobile endorsed our situation, affirming their willingness to accommodate our needs, thus paving the way for the tenancy. In a display of good faith, we provided the stipulated security deposit and first and last month's rent. However, the harmony swiftly devolved into adversity. Merely a month later, we found ourselves two weeks behind on rent. Seizing upon this perceived vulnerability, Melissa Mobile and Riley Oncken promptly instigated eviction proceedings. It is crucial to elucidate that the defendant has consistently referred to a prior eviction in 2019, attempting to portray me, Robert Sam, as a seasoned participant in such legal matters. This historical context holds

significant weight, as the previous eviction was withdrawn by Riley and Melissa Mobile upon realization that their case lacked merit and was bound for failure. Rather than pursuing legal action to its culmination, the defendant, Riley Oncken, and Melissa Mobile opted to dismiss the eviction upon receiving the outstanding rent that was promised prior to the initiation of proceedings. This strategy was seemingly deployed to avert the prospect of embarrassment and financial loss. The net result of this approach was an incessant campaign of harassment against my family.

Nature of Document: Medical note for Harper Sam
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document: April 11, 2018
Date Obtained: August 25, 2023

Ann & Robert H. Lurie, Children Hospital of Chicago: Division of Neurology for Harper Sam letter dated April 11, 2018 **(Exhibit X)** indicates re:

To whom it may concern,
Harper Sam is being followed in our Pediatric Neurology clinic for Bilateral Band Heterotopia of grey matter, epilepsy, right sided weakness, learning difficulty due to cognitive limitations and speech delays.

Subcortical band heterotopia, also known as double cortex syndrome, is a condition of abnormal brain development that is present from birth. This condition which primarily affects females, occurs when neurons migrate to an area of the brain where they are not supposed to be (heterotopia) and form abnormal areas that appear as bands like clusters of white tissue underneath the Gray tissue of the cerebral cortex)subcortical), creating the appearance of a double cortex. Symptoms associated with subcortical band heterotopia include intellectual disability and epilepsy, both of which Harper has. option is not progressive, and children can benefit greatly from therapies and educational assistance.

If more specific information is needed such as IQ, memory, or attention testing, we would refer Harper for neuropsychological testing.

Sincerely,
Diana Sieciechowicz, MD
Division of Pediatric Neurology

Nature of Document: Rule to Show Cause
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document: June 29, 2023
Date Obtained: August 22, 2023

Petition for Rule to Show Cause filed on June 29, 2023 in the State of Illinois In the Circuit Court for the Twenty- Third Judicial Circuit (**Exhibit Y**) indicates now comes the petitioner BKA Holding, LLC, by and through its attorneys, the Law Office of Riley N. Oncken, P.C. , by Riley N. Oncken, and for its Petition for Rule to Show Cause against Robert Sam, states and alleges as follows:

1. An agreed Order was entered on March 10, 2023, which provided that "Defendants shall pay the sum of $914.00 to Plaintiff by March 25, 2023, Defendants shall pay the sum of $255.00 to Plaintiff by April 25, 2023, Defendants shall pay the sum of $255.00 to Plaintiff by March 25, 2023, and Defendants shall pay any water bills incurred through May 31, 2023.
2. In addition to the foregoing payments, Robert Sam has failed to pay the water bills dated March 31, 2023 in the amount of $176.90 and May 31, 2023 in the amount of $174.76, for a total due of $351.66.
3. As of the date of this motion, no payments have been made by Defendants.

Nature of Document: Letter from the Illinois Housing Development Authority
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document: June 14, 2023
Date Obtained: August 22, 2023

Letter from the Illinois Housing Development Authority dated June 14, 2023 to Robert Sam (**Exhibit Z**) indicates The Illinois Housing Development Authority (IHDA) is pleased to inform you that you have been pre-approved for up to three months of future rental assistant as part of your participation in the Illinois Court- Based Rental Assistance Program (CBRAP). AS CBRAP applicant whose current landlord failed to respond to requests to participate in the program, this assistant will be provided directly to you to support your household move into a new home. To receive this future rental assistance, you must:

- Sign a lease with a new landlord for a period of at least six months, or
- Complete a lease attestation covering a period of at least six months. The lease attestation is attached.

Nature of Document: IDHR Medical Questionnaire for Harper Sam
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document: June 19, 2023
Date Obtained: June 19, 2023

Consent form and Verification of Disability (Housing) for Harper Sam-minor child (**Exhibit AA**) indicates it is confirmed she has the condition of double cortex syndrome. The condition is not minor and is permanent. Signed by Rebecca Garcia Sosa, MD on July 19, 2023.

Nature of Document: IDHR Medical Questionnaire for Karen Sam
Who Provided: Complainants

Case: 3:23-cv-50301 Document #: 109-16 Filed: 08/09/24 Page 39 of 52 PageID #:5957

How Transmitted to IDHR: Email
Date of Document: July 18, 2023
Date Obtained: July 18, 2023

Consent form and Verification of Disability (Housing) for Karen Auksi-Sam **(Exhibit BB)** indicates her condition is common variable immunodeficiency (CVID). It is confirmed that Complainant #1 has the condition. The condition is not minor and is permanent. Signed by Sara Dess Md. On July 18, 2023.

Nature of Document: Letter from City of Rockford
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document: November 27, 2019
Date Obtained: August 22, 2023

Letter from the City of Rockford dated November 27, 2019 **(Exhibit CC)** indicates:

To whom it may concern,
Mr. Robert Sam and his family are eligible for a mainstream HUD voucher that will provide them with the ability to afford their housing. They have begun the application process and we believe they could have the voucher within a few weeks. Mr. Sam's family has been devastated by the debilitating illnesses that have affected his wife and daughter and he was placed in the unfortunate position of having to quit a good job so that he was eligible for Medicaid so he could afford medicine for his wife and daughter.
Recognizing that these unfortunate circumstances are not the responsibility of the landlord, we are requesting that the court allow for a reasonable amount of time of at least 14 days to allow Mr. Sam and the agencies assisting him time to either produce the funds needed to halt the eviction through payment in full or complete the HUD voucher process.
Sincerely, Jennifer Jaeger
Community Services Director
Boone/Dekalb/Winnebago Counties
Continuum of Care

Nature of Document: Email from Peter Selike
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document: June 27, 2023
Date Obtained: August 22, 2023

Email from Peter Selike, Assistant Director, Program, Delivery and Operations for Strategic Response Department at the Illinois Housing Development Authority to Robert Sam dated June 27, 2023 **(Exhibit DD)** indicates:

Hi- I am happy to hear you can stay in your place during the appeal.
Our program does not, however, allow for payments to the tenant to remain in the same property. My recommendation is that in your appeal you state to the judge that you are pre-approved for

Case: 3:23-cv-50301 Document #: 169-16 Filed: 08/05/24 Page 40 of 52 PageID #:5958

up to $25,000 in rental assistance to try to compel the landlord to participate in this state run, federally funded program.


Nature of Document: Email
Who Provided: Complainants
How Transmitted to IDHR: Email
Date of Document: May 17, 2023
Date Obtained: January 26, 2024


Email exchange between Complainant #2 and Respondent Melissa Mobile and her attorney Riley Oncken, dated May 17, 2023 **(Exhibit EE)** indicates:

**From:** robert sam <harpees5@yahoo.com>
**Date:** May 17, 2023 at 4:56:21 PM CDT
**To:** Riley Oncken <riley@onckenlaw.com>
**Cc:** theniff@dekalbcounty.org, Melissa Mobile <melissamobile33@gmail.com>, Melissa Mobile <melissa@hrgsells.com>
**Subject: Re: Robert Sam**

For my public defender. This is a federal law
" Even if you are a small local landlord, you are subject to the federal law as an applicant that you deny could sue you under the federal law.  The United States Department of Housing and Urban Development has said that arrests alone (which could include both pending and dismissed cases) cannot be defensible as criteria for rejecting a tenant."
Toni, I am glad Riley proved the discrimination by him and Melissa. What a relief.

### At 4:19 p.m. from Riley Oncken to Complainant Robert Sam indicates:

Bob:
You can do whatever you wish, but we stand by our reputations and how we have handled you and your family as tenants.  I have no fear of the ARDC as it relates to your false allegations against me.  I now realize why you can't find anyone to rent to you, you have pending felony charges.  Your own actions resulting in felony charges are the reason why you can't find othre [sic] housing for your family, not anything that we have done.  You have to live with the consequences of those actions.  I can't imagine that Fox 32 or any other news outlet will give you much credibility under the circumstances.  I have copied your public defender on this and would encourage you to talk to her before you do things that may result in further criminal charges or a stalking-no-contact order for harassing Melissa or me.

Sincerely,

Riley N. Oncken
Attorney at Law
Law Office of Riley N. Oncken, P.C.

### At 2:58 p.m. Complainant emailed Riley Oncken and Melissa Mobile:

Dear Melissa and Riley.

Please find attached the emergency motion I filed today, along with my appeal. In the event that my motion to stay the eviction is denied by the lower court, I have prepared an emergency motion to stay the eviction with the appeals court.

Additionally, I am filing a small claims lawsuit next Monday, against Melissa Mobile and BKA Holding LLC for discrimination against people with disabilities and individuals with Section 8 vouchers. My lawsuit will address the civil rights violation caused by this eviction, which has had significant consequences for us. It will also outline the numerous repair requests made to Mike and Melissa, regarding the unaddressed issues in the unit.

&lt;image001.jpg&gt;

&lt;image002.jpg&gt;

&lt;image003.jpg&gt;

&lt;image004.jpg&gt;

I will be including pictures of the mold, windows showing water leakage, the flooded basement due to a cracked foundation, faulty appliances, and the sinking porch. Also, Melissa intentionally kept us from bringing the money owed current, just so she could evict us. Furthermore, I will be lodging a complaint with the federal housing authority against Melissa Mobile for this discriminatory behavior. Riley, you may also consider participating. I will be filing a complaint with the ethics citation program for similar reasons.

Riley, I have filed a complaint against you with the ARDC. The complaint includes allegations of failure to report conflicts of interest, violation of rule 7.3 regarding client solicitation, making false statements of material fact, engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, and engaging in conduct that amounts to harassment or discrimination based on race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status, or socioeconomic status in relation to the practice of law.

Over the weekend, I plan to share my opinion of Melissa Mobile and the impact it has had on my family. I will incorporate emails exchanged between you, Riley, and Mike Mobile, which provide evidence of the situation. While you may perceive my remarks as disparaging, they are based on factual information. Any opinions expressed will be clearly stated as such, falling within the realm of freedom of speech. I will also be sharing doctors' letters regarding my wife's condition under Melissa and Riley's reviews. All of this will be available for viewing by the end of the weekend.

If my wife's health deteriorates due to not having a home, I will pursue a wrongful death lawsuit. I understand that you may not currently care, but with the attention I will attract through press coverage and the individuals who are already aware of our situation, you will undoubtedly take notice. Enjoy your weekend, and remember, "this is nothing personal, it's just business."

P.S. I thought you might be interested in the attached story. Feel free to check it out when you have some free time. We have also shared our experiences with this reporter, and we have an upcoming interview with Fox 32 Chicago.

\<image005.png\>

**Landlord's reason for evicting family with terminally ill child dragged**
newsweek.com

Nature of Document: News article
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: November 1, 2022
Date Obtained: January 26, 2024

A news article from the Daily Chronicle in Dekalb County dated November 1, 2022 (**Exhibit FF**) indicates a heading "Sycamore man arrested for defrauding elderly for home repairs: Cops by Kelsey Rettke.

SYCAMORE – A Sycamore man is accused of defrauding elderly residents amid a home repair scheme dating back to at least August, Sycamore police said.
Robert J. Sam, 43, of the 600 block of Stonegate Drive in Sycamore is charged with felony aggravated home repair fraud and theft, a class 2 felony, according to DeKalb County court records. If convicted, Sam could face up to seven years in jail.

According to court records, Sam defrauded several people older than 60 in a scheme worth more than $500.

According to a news release from the Sycamore Police Department, an investigation was launched Aug. 17 by Sycamore police and DeKalb County Elder Care Services. The investigation revolved around reports of possible home repair fraud and financial exploitation of the elderly.

Police said a two-month investigation ensued involving multiple interviews with Sam and victims, and a follow-up investigation with area businesses.

Police obtained a warrant for Sam's arrest on Oct. 11 and served him the next day, records show. Sam was held in custody at the DeKalb County Jail during his bond hearing Oct. 12, records show. DeKalb County Judge Joseph Pedersen issued a $5,000 recognizance bond in Sam's case, meaning he was released from jail without posting money.

Sam is due back in court at 9:45 a.m. Dec. 8.

The Sycamore Police Department stated officers aren't aware of any more victims in the case, however, anyone with additional information is asked to call Sycamore Police Det. Greyson Scott at 815-895-3435.

Nature of Document: Bail Bond
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: October 13, 2022
Date Obtained: January 26, 2024

A bail bond for Robert Sam, Case No. 22CG546, filed on October 13, 2022, in the Circuit Court for the twenty-third, Judicial Circuit, DeKalb County, Illinois (**Exhibit HH**) indicates that the People of the State of Illinois was the Plaintiff vs. Robert Sam, Defendant. The Defendant named above, and whose signature appears below, has been charged with the offense of Home Repair Fraud, theft over $5,000. Bail for this offense has been set at $5,000.

Nature of Document: Complaint
Who Provided: Respondent
How Transmitted to IDHR: Email
Date of Document: October 11, 2022
Date Obtained: January 26, 2024

Complaint for violation of statute: In the Circuit Court for the Twenty-Third Judicial Circuit DeKalb County, Illinois Gen No. 22CH546 (**Group Exhibit GG**) indicates: The People of the State of Illinois vs. Robert J. Sam.

Filed on October 11, 2022. On Oath stated that in the County of DeKalb, in the State of Illinois, on or about the 11th date of May 2022, the offense of:

- Theft-Class 3 was committed in violation of 720 ILCS 5/16-1(a)(1)(A) and that the affiant has reasonable grounds to believe, and does believe that Robert J. Sam, hereinafter called the Defendant, committed the same, in that said county, the said defendant did: Knowingly obtained unauthorized control over property of William Godfrey, being one antique bayonet and one antique sword, having a total value in excess of $500, intending the deprive William Godfrey, permanently of the use of the property.

Filed on October 11, 2022. On Oath stated that in the County of DeKalb, in the State of Illinois, on or about the 17th date of August 2022, the offense of:

- Aggravated Home Repair Fraud-Class 2 was commuted in violation of 815 ILCS 515/51(2) and that the affiant has reasonable grounds to believe, and does believe that Robert J. Sam, hereinafter called the Defendant, committed the same, in that said county, the said defendant did: Knowingly entered into an oral agreement in the amount of $1,000.00 with William Godfrey, a person over 60 years of age, for the repair of the home of William Godfrey located at 619 Stonegate Dr. , Sycamore, DeKalb County,

Illinois, and in doing so, used deception, false pretense, and false promises in order to induce, encourage, and solicit William Godfrey to enter into the agreement.

Filed on October 11, 2022. On Oath stated that in the County of DeKalb, in the State of Illinois, on or about the 17th date of August 2022, the offense of:

- Aggravated Home Repair Fraud -Class 2 was committed in violation of 815 ILCS 515/5-a(1) and that the affiant has reasonable grounds to believe, and does believe that Robert J. Sam, hereinafter called the Defendant, committed the same, in that said county, the said defendant did: Knowingly enter into an oral agreement in the amount of $1,000.00 with William Godfrey, a person over 60 years of age, for the repair of the home of William Godfrey located at 619 Stonegate Dr. , Sycamore, DeKalb County, Illinois, and in so doing, knowingly promised performance which the defendant did not intent to perform, or knew would not be performed.

ILLINOIS DEPARTMENT OF
# ◖Human Rights

JB Pritzker, Governor
James L. Bennett, Director

December 13, 2023

**Determination: Substantial Evidence and Lack of Substantial Evidence**

**Case Name:**  Karen and Robert Sam v BKA Holding, LLC[1]

**IDHR Case Number:** 2023CH1772  **HUD Case Number:**  05-23-8696-8

**Investigator:** ENG

### I.  Jurisdiction

A complaint was filed with HUD on June 23, 2023, alleging that the Complainants were injured by a discriminatory act. It is alleged that the Respondent was responsible for: Discrimination in in making available a real estate transaction; Discriminatory terms, conditions, privileges, or services and facilities; and Failure for a reasonable accommodation. It is alleged that the Respondent's acts were based on disability, source of income and arrest record. The most recent act is alleged to have occurred on May 23, 2023, and is continuing. The property is located at: 639 Stonegate Drive, Sycamore, IL 60178. The property in question is not exempt under the applicable statutes. If proven, the allegations would constitute a violation of Sections 804(f), and 804(f)(3)(A) of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988 and Sections 3-l02(A), 3-102(B), 3-102.l(A), 3-102.1 (B), and 3-102.l(C)(2), of the Illinois Human Rights Act.

Respondent receives federal funding.

The Respondent provided a response to the charge, and no formal response was requested.

### II.  Complainant Allegations

Complainants reside in a townhouse, which is one of Respondent's several units. Complainant alleges that their rent is $2,055/month. Complainants allege that Respondent had been accepting their housing voucher which pays $1,800/month, for around 3 years. Complainants allege that their portion of the rent is $255/month.  Complainants allege that in or around March 2023, they were behind on their rent in the amount of $500.

---

[1] Respondent's correct legal name is BKA Holding, LLC. The Department erroneously misspelled Respondent's name as BKA Holdings, LLC.

555 West Monroe Street, 7th Floor, Chicago, IL 60661, (312) 814-6200, TTY (866) 740-3953, Housing Line (312) 814-6229
524 S. 2nd St., Suite 300, Springfield, IL 62701, (217) 785-5100, Springfield, IL 62702
2309 West Main Street, Marion, IL 62959 (618) 993-7463
dhr.illinois.gov

Case: 3:23-cv-50301 Document #: 19-15 Filed: 08/05/24 Page 46 of 52 PageID #:6164

Complainants allege that in or around May 2023/June 2023, they were approved for a court-based assistance rental program, which would cover any back payment in rent as well as provide 12 months of guaranteed payment for their portion of the rent. Complainants allege that Respondent denied the assistance. **Counts A and B: Discriminatory terms and conditions(denied assistance)/ Source of income (Count A) and Disability (Count B)/ Respondent**. Complainants allege that by doing so, Respondent committed source of income discrimination, disability discrimination (as both Complainant #1 (K. Sam) and her child are disabled) and failed to provide a reasonable accommodation as the financial program was meant to offset various expenses due to Complainant's #1 and her child's disability. **Count C: Failure to accommodate/ disability/ Respondent**.

Complainant #2 (R. Sam) alleges that on or around March 8, 2023, Respondent filed an eviction complaint against Complainants in the Circuit Court of DeKalb County seeking possession and past due rent. Complainant #2 further alleges that he entered into a signed agreement with Respondent agreeing to vacate the premises by June 1, 2023. Complainant #2 alleges that this agreement included a payment schedule and the understanding that an eviction order would only be entered if the terms of the agreement were not met. Complainant #2 alleges that his family obtained rental assistance to move to another county.

Complainant #2 alleges that Respondent filed the agreement with the trial court, to be entered as an agreed order and, without Complainants' knowledge, Respondent also filed an eviction order enforceable June 1, 2023, and therefore reneged on the agreement.

Complainant # 2 alleges that because Respondent filed for an eviction order, it made his family ineligible to move, as they were no longer in good standing to receive rental assistance. Complainants further allege that the eviction process cannot be medically tolerated by Complainant #1 (K. Sam), due to her medical conditions.

Complainants allege that Respondent is aware of Complainant #1's and their daughter's disabilities. Respondent however failed to agree to a reasonable medical needed accommodation. Complainants allege that it was Respondent's intention to get rid of any tenant who depended on housing vouchers and/or other financial assistance as part of their income. Complainants allege that tenants who did not depend on housing vouchers were not subjected to this discriminatory treatment. **Counts D and E/ Discrimination in making available a real estate transaction/ Source of income (Count D) and Disability (Count E)/ Respondent**.

Respondent indicated their reason for evicting Complainant #2 is due to him owing rent and late fees and indicated that he has a felony charge against him alleging that he was stealing money from his elderly neighbors, making him a disturbance to the rental

community. Complainants allege that Respondent subjected them to discriminatory treatment due to Complainant #2's arrest record. **Counts F: Discriminatory terms and conditions (filed eviction)/ Arrest record/ Respondent**.

## III. Respondent Defenses

Respondent BKA Holding, LLC, President Melissa Mobile, owns five townhouses, in addition to the subject property currently occupied by the Complainants, she has four other townhouses and two commercial properties.

Respondent's position is that they filed for eviction because the Complainants failed to pay their rent and utilities. Respondent was aware of Complainants' family's disabilities, even though they never requested documentation to confirm it, they took Complainants word that they were disabled. Respondent denies any discrimination occurred.

## IV. Findings and Conclusions

As to Count A and B, in order for the Complainants to prove a prima facie case of discriminatory terms and conditions (denied assistance) against Respondent; the Complainants would have to prove the following:

1. Complainants are members of protected classes and Respondent was aware of Complainants' protected classes.
2. Respondent took an adverse action against Complainants by denying Complainants' rental assistance.
3. Respondent did not take the same or similar adverse actions against similarly situated individuals that are not in the same protected class as Complainants.

The investigation revealed that Complainants Karen and Robert Sam receive a housing voucher from the Housing Authority of Dekalb County. The investigation also revealed that Complainant #1, Karen Sam and her minor daughter Harper, are physically disabled. Respondent does not contest the protected bases of the Complainants. Therefore, Complainants have established prong one of their prima facie case of discriminatory terms and conditions.

Complainants alleges that on or about May 2023/ June 2023 Complainants were approved for a court-based assistant rental program, while in the process of an eviction filed by Respondent for non-payment of rent. The eviction revealed that the parties entered into an agreement on March 8, 2023, which noted that the Sam's owed rent and late fees in the amount of $1,169.00 plus the cost of attorneys, plus additional rent and late fees continuing to accrue. The agreement order (**Exhibit A**) included the following requirements:

1. Defendants shall pay the sum of $914.00 to Plaintiff by March 25, 2023.
2. Defendants shall pay the sum of $255 to Plaintiff by April 25, 2023.
3. Defendants shall pay the sum of $255.00 to Plaintiff by May 25, 2023

Case: 3:23-cv-50301 Document #: 19-1 Filed: 08/05/24 Page 48 of 52 PageID #:6066

4. Defendants shall pay any water bills incurred through May 31, 2023.
5. The lease term shall terminate on May 31, 2023, by which time Defendants shall vacate the premises.
6. An Order of Possession shall enter, enforceable on June 1, 2023, if Defendants have not vacated the premises.

The investigation revealed that as of April 2023, Complainant had not paid his portion of the rent as agreed in the order (**Exhibits V and Y**). The investigation revealed that on June 14, 2023, the Illinois Housing Development Authority offered the Complainants rental assistance. The investigation revealed that it is an uncontested fact that Respondent denied the assistance as they wished to pursue the eviction against the Complainants. The Complainants have established prong two of their prima facie case of discriminatory terms and conditions.

However, the Complainants were unable to provide, and the evidence did not reveal a nexus between the Complainants' protected classes – persons with disabilities and court-based rental assistance applicants – and the alleged treatment. The Complainants were unable to provide, and the investigation failed to reveal documentation or evidence to show there were residents who were treated more favorably than the Complainants. Complainants were unable to establish prong three of their prima facie case of discriminatory terms and conditions.

The investigation found no evidence to show that the Respondent's legitimate non-discriminatory reasoning for the actions taken were pre-textual, or that the Respondent had a discriminatory animus toward the Complainants based on Complainants' protected classes.

The investigation did not reveal, and no evidence was presented to indicate that Respondent violated Section 804(b) or 804(f) of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988, or Sections 3-102(B) or 3-102.1(B) of the Illinois Human Rights Act. Therefore, a finding of lack of substantial evidence is recommended for Counts A and B.

Regarding Count C, in order for the Complainants to prove a prima facie case of failure to make a reasonable accommodation against Respondent based on Complainant #1's and her daughter's physical disability; Complainant #1 would have to prove the following:

1. Complainant # 1and her daughter are people with a disability.
2. The Respondent knew or reasonably should have known that the Complainant #1 and her daughter are people with a disability.
3. Complainant #1 requested a reasonable accommodation in the rules, policies, practices, or services of the Respondent.
4. The requested accommodation is necessary to afford Complainant #1 and her daughter an equal opportunity to use and enjoy the dwelling; and

Case: 3:23-cv-50301 Document #: 19-15 Filed: 08/05/24 Page 49 of 52 PageID #:6167

5.  The Respondent refused the Complainant's request to make such accommodation or failed to respond or delayed responding to the request such that it amounted to a denial.

The investigation revealed that Complainant #1, Karen Sam and her minor daughter Harper, are physically disabled. Respondent does not contest the protected bases of the Complainants. Therefore, Complainants have established prongs one and two of their prima facie case of failure to make a reasonable accommodation.

The investigation did not reveal that Complainants requested a reasonable accommodation to Respondent. Respondent contends that Complainants did not request a reasonable accommodation for Complainant #1 and her daughter's disabilities. The Complainants are unable to establish prong three, four or five of their prima facie case of failure to make a reasonable accommodation.

The investigation did not reveal, and no evidence was provided to indicate that Respondent violated Sections 804f3b of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988, or Sections 3-102.1(C)(2) of the Illinois Human Rights Act, as alleged in the charge. Therefore, a finding of lack of substantial evidence is recommended for Count C.

Regarding Counts D and E, in order for the Complainants to prove a prima facie case of refusal to engage in a real estate transaction against Respondent based on their disability and source of income; the Complainants would have to prove the following:

1.  The Complainants are a member of a protected class.
2.  The Complainants made a bona fide offer to rent the dwelling to the Respondent.
3.  The Complainants were qualified, ready, willing and able to rent the dwelling consistent with the terms and conditions of Respondent at the time of the alleged act of discrimination.
4.  The Respondent, with reasonably certain knowledge of Complainants' protected class, rejected Complainants' application or offer; and
    i.   The dwelling remained available thereafter; or
    ii.  The Respondent rented or sold the dwelling to a person not of the Complainant's protected class.

The investigation revealed that Complainants received a housing voucher from the Housing Authority of Dekalb County. The investigation also revealed that Complainant #1, Karen Sam and her minor daughter Harper, are physically disabled. Respondent does not contest the protected bases of the Complainants. Therefore, Complainants have established prong one of their prima facie of refusal to engage in a real estate transaction.

The investigation revealed that Complainants made an offer to use rent assistance to pay their back rent owed to Respondent. Complainants have established prong two of the prima facie case of refusal to engage in a real estate transaction.

The investigation revealed that in June 2023 when Complainants received their eligibility

to get rental assistance, they were in the process of getting evicted by Respondent. As such, Complainants were not qualified, ready, willing and able to rent the dwelling consistent with the terms and conditions of Respondent at the time of the alleged act of discrimination. Complainants are unable to establish prong three of their prima facie case of refusal to engage in a real estate transaction.

The investigation revealed that Respondent denied Complainants offer to pay their back rent with rental assistance from the court because she was in the eviction process and wanted to evict Complainants for failure to pay his rent. Complainants are unable to establish prong four and five of his prima facie of refusal to engage in a real estate transaction.

The investigation did not reveal, and no evidence was presented to indicate that Respondent violated Section 804(a) or 804(f) of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988, or Sections 3-102(A) or 3-102.1(A) of the Illinois Human Rights Act. Therefore, a finding of lack of substantial evidence is recommended for Counts D and E.

Regarding Count F, in order for the Complainant to prove a prima facie case of discriminatory terms and conditions (filed eviction) against Respondent; the Complainant would have to prove the following:

1. Complainants are a member of protected classes and Respondent was aware of Complainant #2's protected class.
2. Respondent took an adverse action against Complainants by filing an eviction.
3. Respondent did not take the same or similar adverse actions against similarly situated individuals that are not in the same protected class as Complainants.

The investigation revealed that Complainants signed their lease on September 6, 2019 **(Exhibit K)** and their initial checks to Respondent bounced due to insufficient funds **(Exhibit I and J)**. The investigation revealed that on November 20, 2019, Respondent's attorney began an eviction against the Complainants for failure to pay their rent **(Exhibit F, G, H and M)**.

The investigation revealed that Respondent and Complainants worked together to get the Complainants a housing voucher to assist them with paying their rent and the eviction was cancelled. The investigation revealed that Complainant #2 stated that there were charges against him but no convictions. He stated the incident occurred over a year ago.

The investigation revealed a Police Department Synopsis from the Sycamore Police Department with a date of offense dated as February 2022- August 2022 **(Exhibit B)** which indicates that Complainant #2 was charged with the following:

1.  Aggravated Home Repair Fraud-Felony- Class 2-Chapter and Section 815 ILCS 515/5-a (1)

Charge Number: IDHR 2023CH1772
Page 7

HUD 05-23-8696-8

      2.    Aggravated Home Repair Fraud-Felony-Class 2-Chapter and Section 815 ILCS 515/5-a (2)

      3.    Theft-Felony-Class 3- Chapter and Section 720 ILCS 5/16-1(a)(1)(A).

The Illinois Human Rights Act defines an arrest record as (1) an arrest not leading to a conviction; (2) a juvenile record; or (3) criminal history record information ordered expunged, sealed, or impounded under Section 5.2 of the Criminal Identification Act. 775 ILCS 5/1-103(B-5). A search of the DeKalb County court records revealed that Complainant #2 has a pending criminal felony case, case # 2022CF000546, in pre-trial proceedings. The subject arrest record was an arrest not leading to a conviction during the relevant time period of the alleged violation. Thus Complainant #2 is within the arrest record protected class, and Complainants have established prong one of their prima facie.

The investigation revealed that on March 8, 2023, the parties entered into an agreement which noted that the Sam's owed rent and late fees in the amount of $1,169.00 plus the cost of attorneys, plus additional rent and late fees continuing to accrue. The agreement order (**Exhibit A**) included the following requirements:

1. Defendants shall pay the sum of $914.00 to Plaintiff by March 25, 2023.
2. Defendants shall pay the sum of $255 to Plaintiff by April 25, 2023.
3. Defendants shall pay the sum of $255.00 to Plaintiff by May 25, 2023
4. Defendants shall pay any water bills incurred through May 31, 2023.
5. The lease term shall terminate on May 31, 2023, by which time Defendants shall vacate the premises.
6. An Order of Possession shall enter, enforceable on June 1, 2023, if Defendants have not vacated the premises.

The investigation revealed an email thread between Robert Sam and Respondent's attorney Riley N. Oncken dated February 20, 2023, in which Oncken emailed Robert Sam "Bob, attached is the proposed Agreed Order that I have prepared to resolve things between you and Melissa. It would be my intent to have the 3 of you sign this Order in the next couple days. Then I will file the Eviction case and then I will file the Agreed Order and continue the case until after you are moved out and then, assuming everything goes as planned, dismiss the case. Please let me know if you have any questions or changes to the Order (**Exhibits N, and P**)." The investigation revealed that Respondent filed the eviction case per their agreement on March 10, 2022 (**Exhibit O and V**). The investigation revealed that Complainants, as of April 2023, had not paid their portion of the rent as agreed in the order (**Exhibits V and Y**).

Respondent's President Melissa Mobile, stated during the interview on October 24, 2023, stated that since the Complainants moved in, they have never been current on their rent or water bill, and she wishes to sell her townhouse as soon as the Complainants move out. Mobile contends she filed the eviction solely because the Complainants owe rent and not due to an arrest record. She stated she was aware that Complainant had been arrested around November 1, 2022, when an acquaintance forwarded a news article to her (**Exhibit FF**) detailing Complainant #2's arrest. Mobile was aware of Complainant #2's

Case: 3:23-cv-50301 Document #: 16-16 Filed: 08/05/24 Page 52 of 52 PageID #:6170

arrest **(Exhibits B and GG)**. Mobile contends that she filed the first eviction filing in November 2019, prior to Complainant #2's arrest in 2022 which was also due to failure to pay rent.

The investigation revealed an email from Respondent's previous attorney Riley Oncken to Complainant #2 dated May 17, 2023, in which Oncken tells Complainant #2: "You can do whatever you wish, but we stand by our reputations and how we have handled you and your family as tenants…I now realize why you can't find anyone to rent to you, you have pending felony charges. Your own actions resulting in felony charges are the reason why you can't find other [sic] housing for your family, not anything that we have done **(Exhibit EE)**."

The investigation further revealed Respondent's response to the investigation, through counsel, dated October 24, 2023, Respondent stated that "[t]he eviction was the result of failure to pay rent and utilities and disturbing neighbors." Respondent also stated that "[a]dditionally, Mr. Sam has a felony charge against him alleging that he was stealing money from his elderly neighbors, making him a disturbance to the rental community. These are legal reasons for the eviction of Mr. Sam and do not involve any violation of his rights."

Respondent Melisa Mobile denies that she filed to evict the Complainant because of Complainant #2's arrest record. Correspondence from her previous and current attorney, indicate they were aware of Complainant's arrest record and may have considered it when taking action against Complainant and his family, on behalf of Respondent.

The Illinois Department of Human Rights cannot resolve questions of credibility or factual disputes. Due to issues of credibility and conflicting documentation, a determination as to this issue must be made before an administrative law judge of the Illinois Human Rights Commission or a trial judge in circuit court. Therefore, a finding of substantial evidence is recommended for Count F.


I.    Additional Information

Notwithstanding this determination by IDHR, the Fair Housing Act provides that the complainant may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.