# EXHIBITS

1

IN THE CIRCUIT COURT OF THE 23RD JUDICIAL CIRCUIT

DEKALB COUNTY, ILLINOIS

BKA HOLDINGS, LLC, an           )
Illinois Limited                )
Liability Company,              )
                                )
Plaintiff,                      )   CASE NO. 24 EV 136
                                )
      vs.                       )
                                )
ROBERT SAM and KAREN SAM,       )
                                )
Defendants.                     )

REPORT OF PROCEEDINGS of the hearing before

THE HONORABLE JUDGE JILL KONEN, on the 12th of July,

2024.


APPEARANCES:

            MR. BRADLEY MELZER,
            for the plaintiff.

            Defendant Robert Sam.


SANDRA FOORD, CSR 084-003025
Official Court Reporter
DeKalb County Courthouse

(The following proceedings were had in open court.)

THE COURT:  Good afternoon.  Mr. Sam is here on his own behalf.

MR. MELZER:  Bradley Melzer on behalf of the plaintiff.

THE COURT:  And Mr. Melzer is here on behalf of the plaintiff.

We are scheduled for a hearing on the plaintiff's petition for partial summary judgment.

I see Mr. Sam filed a response and then there was a reply.  I presume that plaintiff received a copy of Mr. Sam's response.

Mr. Sam, did you receive a copy of the reply?

DEFENDANT R. SAM:  Yes.  And then yesterday I filed a motion to ask if I could surreply to that because new things were brought into that.  I don't know if you got that.

THE COURT:  I -- unless you sent it to me or gave me a courtesy copy, I --

DEFENDANT R. SAM:  I didn't.  I'm sorry.

THE COURT:  -- I did not.

I guess I would ask are you ready to proceed

today -- I'll start with you, counsel.

Are you ready to proceed today?

MR. MELZER: Yes, Judge.

THE COURT: And Mr. Sam?

DEFENDANT R. SAM: No. That's why I filed that motion. They brought up things in their response that are different than what they brought up before, new evidence, and I wanted time to respond to it.

THE COURT: Oh. Let me take a look at it real quick.

Okay. I think that -- did you receive a copy of the motion that was filed yesterday?

MR. MELZER: I did, Judge.

THE COURT: Did you have a chance to look at it?

MR. MELZER: I did.

THE COURT: I'm going to deny your request for a continuance. I think that -- I read your surreply. Counsel has also received a copy of that and taken a look at that.

Because of the nature of today's proceedings it's truly only argument, so I'm going to allow counsel to argue and then I'll allow you to argue.

There are some things that I just want to put on the record so everybody is aware, because I don't

4

disagree with you, Mr. Sam, that this case has some issues procedurally, so I'd like to clean up that.

The complaint was filed on March 29, 2024. The only party -- the parties to the case, the defendants, Robert Sam and Karen Sam, are the party defendants. Mrs. Sam was served. Mr. Sam, I don't see anywhere where you were served. However, you did file an appearance. So Mr. Sam has filed an appearance. I have jurisdiction over you. Mrs. Sam was served. I have jurisdiction over her. However, she has not filed a response. I know we've had some talk about when you do file your pleadings you list both, but you're the only person that signs it.

We're scheduled for jury trial on July 29th, so if Mrs. Sam is going to participate in any type of trial, an appearance needs to be filed. That's the one thing I wanted to say.

And so I have read through both this petition for partial summary judgment. I have read your response, Mr. Sam. I have looked at the case law cited by both. I have done a little bit of my own research. I have now looked at Mr. Sam's filing from July 11th of 2024. So in terms of what has been written, I feel like I have a pretty good idea

of what's been written.

So for purposes of argument today, if you want to stress something in your written motions or pleadings, wonderful, but you don't have to go through and read or tell me everything that's in each of your pleadings.

So, counsel, I'll let you go first.

MR. MELZER: Thank you, Judge.

Obviously with the Court's discussion beforehand I'm not going to go through everything, but I think it's important that right now we're just talking about possession. We're not talking about damages. We're talking about possession. Possession is pretty clear, very clear with the text messages and then with being served notice.

So between those two things, Judge, it's undisputed here that the plaintiff should get possession back.

As far as damages and the other things that are brought up, that's for a later date. So how much rent is due, whether rent or not is due, again, all goes to damages. What this motion goes to is possession.

Now, the only other thing that I would mention

initially is that the defendant has indicated these other cases and whatnot. Each eviction case stands on its own, so what happened in the other cases are not germane to this motion, are not germane to possession in this case.

And for those reasons, the reasons in the brief, we ask that you grant the plaintiff possession in this matter.

THE COURT: Okay. Mr. Sam.

DEFENDANT R. SAM: Yeah. Well, in their response he used the last eviction and said that it was not dismissed with prejudice and that it has everything to do with this case.

THE COURT: I can take judicial notice of the fact that it was dismissed.

DEFENDANT R. SAM: Mmm.

THE COURT: And that it has since been impounded --

DEFENDANT R. SAM: Okay.

THE COURT: -- and removed from the public record.

DEFENDANT R. SAM: All right. And so as far as this -- when we got served the 30-day notice, the 30-day notice stated that we have to pay X amount of

dollars to stay in the property. There was no notice that said we're quitting, period. They kept accepting the rent, which if there was any breach, that's been -- that's moot because they keep accepting the rent, and under Illinois law if they accept the rent, that validates going forward with a new lease.

They never sent the letter saying, "We're going to keep accepting the rent but we still want to go forward with eviction". There was no letter ever sent to us.

I don't remember ever there being a copy of the spreadsheet or the complaint with the -- or I'm sorry -- the lease with the complaint, not that it matters. We have a current lease. It's a month-to-month lease. It was signed back in I believe September of last year. Every 1st of the month she gets paid the rent and she accepts it. She never balks at it.

Now, what's interesting is is that this is even -- they have no case. They never did. Why this is even happening we don't know. In the Illinois Department of Human Rights lawsuit that's been filed against her, when she was interviewed, in the

transcripts which I attached to my motion to dismiss that you denied, in it she states that she turned down our money. She said that herself. She said her lawyer Riley Oncken told her to accept it but she declined it.

So we can't make somebody take our money, but what's worse off is we tried moving a year and a half ago when we signed the agreed order and we asked the DeKalb Housing Authority to port us, and they told us, "We can't do that because there's a judgment against you". So then when I got the judgment vacated I asked them to port us, they said, "We still can't port you because your landlord says you're in bad standings". I said, "Well, how are we in bad standings? No Court said I owe any money". "Well, you have to talk it over with your landlord."

So they won't port us, so we can't even move if we wanted to. No Court said I owe a dime to these people, so there's no reason we're in bad standings. We haven't had hot water for four months. The house is a wreck. The Sycamore inspector wrote a whole letter about all the things that weren't done, but yet she keeps getting paid and I keep coming here.

I don't see how any of this is fair, how we

could be evicted and lose our vouchers that it took eight years to get. I mean, it's -- it's -- it's incredible. So that's really all I have.

THE COURT: Okay.

DEFENDANT R. SAM: That's it.

THE COURT: Anything beyond that or in response or rebuttal, I should say?

MR. MELZER: I guess the only other response that I would have is that because of the actions of the defendant that's the reason why no one was allowed in the house. There's letters to that. The damage is all allegations at this point. Again, that would be for another day at a damages hearing. This is possession.

DEFENDANT R. SAM: I'd like to comment on that.

So here's what they started to do. They had to have -- they tried throwing things to see if they'd stick.

So first they came after a police charge that turned out to go nowhere. That went absolutely nowhere. Two years of my life was taken from me in a newspaper article that ended up being nothing, was absolutely zero. So they tried using that in the eviction, and you'll see that it's all over the

place.  In the last eviction they used it.  They did, and they used it in this one, too.

So then that didn't work.  So then they said, well, we're going to come after his wife since she doesn't have an attorney and we're going to say he can't represent her, even though the last eviction in front of every judge other than you had no problem with me representing her.  Every judge did, every judge.  Nobody said a thing about it.  Now we have an issue.  Okay, fine.

So then they switched gears again.  When they got the letter from the Sycamore inspector, they go over to their friend, the Sycamore attorney who they know, they're good friends with them.  "We need you to make a letter.  Make it out like he's a -- like he's a crazy person, he threatens people's lives."  So they -- he drafted the letter for them.

So I went right over to the Sycamore Police Department and I filed a FOIA.  I said, "I want a FOIA of every call that ever came in on me from the time we lived here till current", and I got it.  And you know how many calls were on me?  Zero.  Not a one.  So all this stuff about I threaten people and the work couldn't get done?  There was never one

call on me, not one. So I don't know where they get this evidence because there ain't any.

THE COURT: Anything else?

DEFENDANT R. SAM: Nope.

THE COURT: Okay. So the motion for summary judgment is asking for possession based on a bankruptcy pleading by Karen Sam indicating that her admission in rent being owed to plaintiff entitled plaintiff to possession of the premises for the breach of the lease, and I understand that plaintiff is only asking for possession, but I still believe there's material issues of fact.

I mean, the defendant is entitled to file affirmative defenses, which he has done. I think it's a stretch to say that because Mrs. Sam indicated that she owed money to the landlord now transfers to this case that they're in arrears for rent, so I think there's a question there of whether rent is due, whether notice was proper.

I just can't let this be dismissed -- or I shouldn't say dismissed. I can't let this -- I can't issue an order of possession because there's, in my opinion, many material facts that need to be determined by the fact finder, which is at this

point me.

So I'm going to deny the motion for summary judgment. I'm going to deny the request for possession.

And I do encourage the parties to see if there's any type of way to resolve this. There's a lot of things that are going on outside that do not affect the eviction case. The eviction case is whether landlord is entitled to possession. Damages comes after that. So whether rent is due comes after that. At this point the letter that's attached or the notice that is attached to the complaint is a 30-day notice to quit premises based on the nonpayment of rent.

Now, there's some other things here, breach of lease terms and unauthorized activity, which, again, that has gone nowhere. Mr. Sam is right about that. So I don't see anything before me right now that would not require some sort of trial and presentation of facts.

DEFENDANT R. SAM: Thank you.

THE COURT: Now, I do want to say just for the record there is also the February 27th letter that is the notice to quit. Again, the subject line says

"Nonpayment of rent and utilities".  Actually that's just the same duplicate so --

DEFENDANT R. SAM:  All of this is for nonpayment of rent.  It's on every single thing they've done. They've never sent anything separate that says, "We just want to quit the lease".  Everything they sent was, "If you want to stay in the unit" --

THE COURT:  Well, I've made my ruling.

DEFENDANT R. SAM:  Oh, I'm sorry.  All right.

THE COURT:  And I just wanted to let you know --

DEFENDANT R. SAM:  Thank you.

THE COURT:  -- that I've said this before, I just want to say it again for the record, you and Mrs. Sam, yes, you're married.  I understand that you are a single unit because you're married to one another.  That does not mean you can act as her attorney.

DEFENDANT R. SAM:  I agree with you.

THE COURT:  And the fact --

DEFENDANT R. SAM:  I -- I do.

THE COURT:  -- that other judges have not said anything, that's -- the issue was not, by my review of the record --

DEFENDANT R. SAM:  I'm not saying it was.  I

know.

THE COURT:  -- ever put before them.

DEFENDANT R. SAM:  But know this.  We -- if I were to show you the 285 attorneys we've reached out to for help and all of the free clinics, we've done everything we possibly can.  I mean, we tried everything.  I don't know why they won't help us.  I don't -- I don't know why Illinois Department of Human Rights -- so the Illinois Department of Human Rights has the AG representing them.  You would think they'd help us.  "Oh, I'm sorry, we don't represent you."

THE COURT:  Okay.  Well, that's a different issue.

DEFENDANT R. SAM:  Okay.

THE COURT:  I empathize with the situation, and I do, both sides.  I understand that both sides have an issue here.

I want to suggest -- I can't force either one of you to do it.  I'm not ordering this, but I wonder if each side would consider maybe mediation to see if there can be an agreement that's reached between the two of you.

DEFENDANT R. SAM:  Yes.  I would like this stuff

over with. I'm sick of coming to court. All of this is to fight to keep like a roof over our -- see, that's the thing here that nobody seems to understand.

This -- if this was just me, I don't care what they do with me, but I got two disabled people that I gotta fight for, so I have to do that and nothing is going to stop that from happening, but if I could stop having to do all of this court stuff, that would be fantastic. I never wanted this.

THE COURT: So that's my question that I would pose to take it back to your firm, see if that's something, and the mediation that I would suggest -- and it would be free of charge. It would not cost either party any money -- I believe there's a clinic at NIU Law School. And if there's an interest by both sides and both sides were to agree, then I would reach out to the professor at NIU. The name is written on my desk, but I can't remember what the name is right now. It's not Zuckerberg because that's the Facebook guy.

And, in fact, let me get it just so I can give -- so counsel knows and you can look into it if you want to, Mr. Sam. You can look into this

individually if you want to.

DEFENDANT R. SAM:  Well, it's not going to be up to me.  It's got to take both sides to do it.

THE COURT:  It's got to take both sides, but I'm going to at least give you the name, so I'll be right back.

(A recess was taken.)

(The following proceedings were had in open court.)

THE COURT:  The individual his name is Michael Zuckerman, spelled like it sounds, Z-u-c-k-e-r-m-a-n.

DEFENDANT R. SAM:  Okay.

THE COURT:  And what I would also like to do is -- like I said, we're scheduled for a jury trial.

DEFENDANT R. SAM:  Yeah.

THE COURT:  And Mrs. Sam has not filed an appearance.

DEFENDANT R. SAM:  Yeah.

THE COURT:  That's only a couple weeks away. Actually two weeks away.

MR. MELZER:  And, Judge, we would be seeking, I guess, to continue that trial until after the bankruptcy hearing, which is July 31st, because that could impact this case.

THE COURT: Oh, okay. I didn't -- that's fine. Let's strike the 29th in the order, because I need to let the jury administrator know that. So that date is going to be stricken, and if you don't know what's going to happen until after July 31st -- why don't we set another status instead of a jury trial.

DEFENDANT R. SAM: Yes, let's do that.

THE COURT: Typically I could hear -- especially a status, and both of you can appear via Zoom if you'd like to appear via Zoom. You don't have to come into court. I could either do a Wednesday mid-morning, Thursday mid-morning usually works, depending on the day, or a Tuesday late afternoon.

DEFENDANT R. SAM: Could we do Tuesday late afternoon?

THE COURT: Well, let me look and see what dates are relatively light. I have a normal regular call on Tuesday afternoons.

DEFENDANT R. SAM: This is for a status; right, Judge?

THE COURT: Just a status.

DEFENDANT R. SAM: Status. It's for August.

THE COURT: And I'm looking maybe at August 6 or 13 if --

DEFENDANT R. SAM:  6th is fine if you got it.

THE COURT:  Let me see.

And, counsel, does that date work for you?

MR. MELZER:  Judge, I think it would probably be better to go to the 13th for Mr. Cronauer.

DEFENDANT R. SAM:  Can that be late -- or afternoon?

THE COURT:  It can, and I will leave it up to -- really it could be any time.

DEFENDANT R. SAM:  Any time is fine.

THE COURT:  Do you want to do 3 o'clock again?

DEFENDANT R. SAM:  Fine.

THE COURT:  Even 3:30 would be okay.

DEFENDANT R. SAM:  Whatever you want.  Whatever works for them.

MR. MELZER:  Sure.  3 o'clock.

DEFENDANT R. SAM:  3 o'clock?

THE COURT:  3 o'clock.  All right.  Let's do 3 o'clock on Tuesday, August 13th.

DEFENDANT R. SAM:  Okay.

THE COURT:  Zoom is okay.

DEFENDANT R. SAM:  Your Honor, I got a question. So this mediation thing, how would you know if the other -- like since I say okay, I will do it but I

don't know if they will, I mean, do I just wait for them to reach out to me or --

THE COURT: Well, what I'm going to do is address that on the next court date --

DEFENDANT R. SAM: Okay.

THE COURT: -- for status. If Mr. Cronauer and his client are receptive to that, we can enter an order on that date --

DEFENDANT R. SAM: Okay.

THE COURT: -- putting forth the terms and how it's going to happen.

DEFENDANT R. SAM: Okay.

THE COURT: The only -- so are you saying you are in agreement with that, Mr. Sam?

DEFENDANT R. SAM: Oh, yeah.

THE COURT: So, Mr. Melzer, if you can let Mr. Cronauer know, if he is interested in that at all and he knows before the next court date, if he lets me know and Mr. Sam know, I'll look into that and get specifics and I'll have specifics on that day as to how it takes place, where it takes place, things like that.

DEFENDANT R. SAM: Yeah, if you don't mind. Thank you.

MR. MELZER:  I will talk to him, Judge.

THE COURT:  Okay.

MR. MELZER:  I'll put on here also for status of possible mediation.

THE COURT:  Okay, thank you.

DEFENDANT R. SAM:  That's August 13th at 3 o'clock.

THE COURT:  Correct.

DEFENDANT R. SAM:  Thank you.

THE COURT:  You're welcome.

DEFENDANT R. SAM:  And that guy's name is Michael Zuckerman, NIU.

THE COURT:  I don't know --

DEFENDANT R. SAM:  We have to go to NIU for this?

THE COURT:  I don't -- well, that's why I say we have to find out.

DEFENDANT R. SAM:  Oh.  Oh, you'll find out.

THE COURT:  I know nothing about it.  I just know that there is --

DEFENDANT R. SAM:  Okay.

THE COURT:  -- a possibility that that is an option.

DEFENDANT R. SAM:  Okay.  Thank you, Your Honor.

THE COURT: You're welcome.

Thank you, counsel.

Okay. That order is entered. And if you would like to get a copy, you can go up to the second floor clerk's office and get a copy.

DEFENDANT R. SAM: Thank you.

THE COURT: All right, you're welcome.

DEFENDANT R. SAM: I gotta bring that.

Thanks, guys. Thanks for everything.

Thank you, Your Honor.

THE COURT: You're welcome.

                    (End of proceedings.)

22

IN THE CIRCUIT COURT OF THE 23RD JUDICIAL CIRCUIT

DEKALB COUNTY, ILLINOIS

I, Sandra Foord, certify the foregoing to be a true and accurate transcript of the electronic recording of the proceeding of the above-entitled cause, which recording contained the operator's certification as required by Local Rule 1.02(b)(2).

*Sandra Foord*
_____
Official Court Reporter

License No. 084-003025

Dated this 23rd day of July, 2024.