



# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

# ROCKFORD DIVISION

**Robert and Karen Sam** ,
Plaintiff,

v.

**BKA HOLDINGS LLC, e.g., Nicholas Cronauer/BKA Holdings],**
Defendants.

Case No. 23-cv-50301

## Response to Mr. Hannigan on Rule 11

**Mr. Hannigan,**

Thank you for your letter; I appreciate you reaching out. However, you raised several issues and made some incorrect statements that I feel obligated to address and clarify. I'll do my best to respond to these in the order of your letter.

You begin by stating that you represent Nicholas Cronauer. If that is indeed the case, why does he continue to contact me directly regarding the federal case? I had considered filing a motion with the court to question how

he could be represented while also acting on his own behalf, but your letter seems to have cleared up this confusion.

Regarding Karen's bankruptcy case, I am aware of your involvement, and I believe she will have an attorney representing her by the next court date.

The first point I need to correct you on is your reference to the "alleged violations" of Karen's bankruptcy discharge. These are not allegations—they are facts. The 30-day notice and complaint clearly outline the violations. Jim Stevens recognized the issues within 30 seconds, and I believe you are familiar with Mr. Stevens. I know for certain that Nick is.

As for the Rule 11 action that you and your clients continue to emphasize, if there are issues related to case law on my part, I will address them after the judge rules on my recent motion for counsel. At that time, I will file a motion requesting additional time to make any necessary corrections. I acknowledge that this was an oversight on my part, one that I should have been more mindful of, and I will rectify it.

Regarding your comment about the absence of case law in the latest complaint and your remark, "there is a reason for that"—I'm unclear on what you mean by that. You also mentioned that I did not heed the advice of a lawyer your firm has worked with, who suggested reducing the

counts to six instead of 17. I find it interesting that you focus so much on this lawyer's opinion but disregard the opinion of the first firm, which pursued all 17 counts. As you are well aware, it only takes one count to win a case. Whether it's 32, 17, or 6 counts doesn't change that fact. At the end of the day—and I know you won't admit this—I will win. The facts and the merits are on my side, even if your client and his client are not.

Every count is supported by facts and law, and I will go into further detail when I respond to your motion to dismiss. This letter isn't the place to debate the validity of each count, but know that I am confident in my case. I will prevail, not only in this case but also in the current eviction case, and Karen will succeed in her sanctions case against your client.

I also find it hard to believe that Judge Lynch would have his staff assist Karen in finding a lawyer for a case that he believed had no merit, don't you?

Your interpretation of what constitutes a debt collector and the actual definition differ. You would be correct if your client were simply pursuing an eviction on behalf of his client. However, your client went beyond that and violated federal laws, despite being made aware of these violations by an appeals court and two state judges. You can argue that attorneys aren't held accountable for actions taken on behalf of their clients, but that only

applies when those actions are within legal bounds. In this case, your client crossed those boundaries and made this situation deeply personal by attacking my family.

I'm not removing a single count—none. You can threaten me with whatever you wish, but I don't scare easily. I've been told time and again that I wouldn't win my appeal, that the eviction wouldn't be overturned, that your client would succeed in both summary judgments, and that Karen's bankruptcy matter would be dismissed within a week. None of these things have happened. Continually underestimating me is, frankly, a mistake. I am willing to take this as far as necessary for my family, including pursuing appeals if needed. So, let's dispense with the threats—they're unnecessary. If I made an error regarding case law, that's my responsibility, and I will correct it.

As for your statements about the 1983 and CARES Act claims, those are your opinions. I can demonstrate that these claims do have merit and will withstand any motion to dismiss. But let me ask you this: You've pointed out a few counts you believe lack merit—what about the ones that do?

No one enjoys being sued, but to expect that I would simply stand by while your client and his landlord client tried to destroy my family is unrealistic. I know you're smarter than that. They brought this situation upon themselves. I never wanted any of this—I only wanted to

live in peace and take care of my family. Your client and his client couldn't leave well enough alone, and now they're dealing with the consequences of their actions. Stop blaming me, and start holding them accountable.

I appreciate you stating that you're not passing judgment. I've never claimed to be a lawyer, and I'm doing the best I can with the resources available to me. However, I need to address your comments about my anger and the emails I've sent to your client in more detail.

Yes, I am extremely angry, and for good reason. Your client, along with his client, the City of Sycamore, the DeKalb Housing Authority, and Riley Oncken, worked together to get us evicted and removed from the voucher program—a program I no longer care to be a part of. They've all gone out of their way to assist Melissa Mobile while harming my family. From false police charges to changing town ordinances, their actions have been deliberate and calculated. All of this will come to light.

Your clients client and defendant Oncken violated their own agreed order. We could have left this situation behind years ago, but they chose instead to cause further harm to my family. You've read the appellate court's opinion—how is it possible that everyone else is wrong, and only your client and Melissa Mobile are the victims? A jury will see the truth.

Your client has tried to use everything against me, from phony arrests to lawsuits that are decades old. But what he keeps forgetting is that I'm an open book, and I'm more than willing to talk about my past and everything that has happened to me. In fact, I welcome it. Those lawsuits? I want them exposed. I want people to see what has been done to us over the years. If I'm so bad, why is there not a single conviction? Why has no town or county ever charged me, despite all the lawsuits? When the truth comes out—and all the names and actions of those involved are revealed—everything will be laid bare.

You might think you have me figured out, but I assure you, you don't. What you think you know is just the surface. I will expose everything— everyone involved. All the lies, all the false promises of help, it will all be revealed.

I never wanted any of this. All I've ever wanted was to be left alone so I could take care of my family—my daughter, who will need lifelong assistance, and my wife, who could pass away at any moment. When the time comes, I'll have doctors testify, and I know you and your client have questioned the severity of my wife's disabilities. You will have your chance to hear the truth from the doctors themselves.

Regarding the emails where I called your client names, I didn't realize he was so sensitive, but you're right—it was

wrong of me, and I do know better. Let me explain the situation. It was the hottest day of the year, and for two weeks, I had been asking Melissa, politely, to fix the air conditioning. She ignored my requests. When the air finally went out, the temperature in the house reached 90 degrees. I then emailed your client, asking for his help, again politely. He also ignored me. So to expect me to be pleasant after that is a bit unreasonable. I've tried to play nice, and that approach has gotten me nowhere.

Your client, just like Riley, has tried to trap me in a situation that could lead to me violating a corrupted probation—one I only agreed to under false pretenses, and I have the emails to prove it. I can also show that your client worked with the state's attorney and shared information I gave to Nick, thinking he was representing me. I have a witness who is willing to testify, and she is a lawyer.

Please understand, everything I say, I can back up with proof. I don't lie. If I make a statement or an accusation, I have the evidence to support it. You, on the other hand, have made false and unprovable claims. In fact, it seems like you're also representing Melissa Mobile. Can you prove that one water bill wasn't paid or that any rent hasn't been paid? If you can't, why make such a statement? Just because Melissa knows everyone in town, her brother worked for Cronauer, and her mother knows Charles, that doesn't mean she's not lying. Melissa

Mobile is not who you think she is, and while I won't go further into that right now, if you did a little digging, you'd understand what I'm saying.

You're right again about professionalism. I wasn't professional, and that's on me. Moving forward, I would prefer not to have any contact with Nick, if possible, to avoid further issues and to prevent matters from escalating. That's why a mediator was suggested, and I'll touch on that shortly. Name-calling is childish, but so is suing me because I'm acting in my own defense and have won every battle so far. That's just petty. But I agree, I need to refrain from name-calling in the future. It would be best for everyone if Nicholas were kept away from me. I'd even be willing to deal with Melzner if necessary.

We'll see what the judge rules on my motion for an attorney before I request time to correct the complaint. But let me be clear—not one count will change, nor will one defendant. As for the costs, your client and everyone involved brought this upon themselves. This is costing them, not me. I'm fighting for my family, and no threat is going to stop me. I mean that. I don't see any Rule 11 violations, and neither did the first firm I consulted. I'm sorry your client doesn't like being sued, but that's the reality of the situation.

You're correct that if there are issues with the case law, I need to fix them, and I will. I've been following the rules

of the court, but it's your client who has been lying and misleading the courts about me. Ask him about the rent Melissa Mobile supposedly didn't receive to justify lifting the stay. Enough with that. Your job is to paint your client as the victim and make everything he did seem harmless and acceptable. Your job is also to portray me as a criminal and a terrible person. Well, my so-called "crimes" are trying to keep a roof over my wife and daughter's heads. That's it. All of this is happening simply because we want a home.

You should know that I have many witnesses to this. I have police officers, inspectors, and more. Please don't underestimate me or assume I'm not intelligent. I may not be a lawyer like you, and I respect that you might be a good lawyer, but I'm pro se, and look how far I've brought this case and how much I've won so far.

Now, let me bring you back down to earth. My offer to Melissa Mobile, which is now off the table, was not only overly generous—it was unfair to us. Two high profile individuals  thought my offer was so good for everyone, and three law firms didn't want to present it, including your colleagues at DeNolfo, because they believed I'd get five times that amount at trial. Your client has been the obstacle to any settlement, and honestly, there's no need for one anymore. What your client and all those involved are paying—and will continue to pay—for legal costs is ten times the amount of a two-year lease. You know that.

The security you asked for, is I would be doing this for my daughter—that's my motivation and my peace of mind. That's how I would have this bought in two years because I have to.

I'm only 20 points away from securing a $240K loan, and the loan officer told me that within two years, I would easily qualify. Whether you or your client, or Melissa Mobile, believe me is irrelevant. I don't trust any of you, and I've made that clear.

My offer for a two-year lease with a guaranteed purchase option was not only fair—it was the right thing for her to do. In that scenario, she wins no matter what. She continues to get paid, I'm stuck with making all the repairs, and she eventually sells the unit. Worst case, if we can't buy it after the two years, she can still sell it. There's no need for any additional security beyond that. The offer was entirely in her favor, not mine. I would be responsible for replacing all the appliances, windows, carpet, and the roof. What do I get out of this? I wanted to buy the property for my daughter because it would be easy for her to manage after I'm gone. That's all.

These evictions and legal matters stem from your client's clients and Riley Onckens  violation of the agreed order. But I'm not ever making that offer again. I'd rather go through the entire legal process and let a jury decide. I feel like I made the first step and extended an offer that

wasn't in our best interest, but I still did it. And she threw it back in my face. So now, let's see how she handles going through all of this, and in the end, let's see what people think of my offer and everything your client and the defendants have done to us.

I want to eventually move on from this, as it has consumed me, but I can't until these wrongs are corrected. As for my so-called "careless filings," which ones? The appeal I won that exposed your client and his client? The lawsuits that show what they've done? Why do you say things that, if the situation were reversed, you wouldn't say yourself?

You mention motions and seeking sanctions? Let's not forget Riley Oncken tried to file a motion to show cause, violating a court-ordered stay, asking for me to be jailed after I sued him. Now your client is suing me for $50K, claiming I'm acting as a lawyer, yet wants me to behave like one. Don't insult me with baseless comments.

I am not unreasonable, and I am not difficult to work with. I want to be left alone to take care of my family, and I will get there. I'm confident that I will be victorious in my claims, and once I am, I won't have any need for rental properties ever again.

I want this to be over just like anyone else. But my wife nearly died over this—literally—and no one cared. We moved here to make life better for our child, and we've

lost everything many times over. We've faced countless evictions because we had to choose between Medicaid and making money. Your client tries to use that against me, as if I'm hiding from it. I want it out in the open. I'm not stopping. I will make the necessary corrections if no lawyer is assigned, though it's hard to believe that would happen, especially now with your client's lawsuit against me. That's a major conflict of interest, just like how he's representing a defendant when he is a defendant. None of this makes sense.

You can ask me anything at any time, and I give you my word—it will be the truth. I don't lie; lies always come back to haunt you. Let's go through this and get to a jury trial. If my lawsuit is as baseless as you say, then you'll win without a problem. But I feel that if that's the case, neither you nor the other defendants should have any issue with facing a jury. I'm ready for trial right now. Just wait until the jury trial in October—watch what my witnesses say. You'll see I don't lie, and I can prove everything.

I also plan to bring up the arrest charge and the 50 lawsuits over the past 30 years during the trial. I want the jury to know who I am and what I've been through. There are things and people I'm going to expose that you won't believe were involved in what has happened to me over the years. It's time for the truth to come out.

Lastly, I do want to thank you for reaching out, I will keep away from name calling going forward.

Plaintiff submits this motion in good faith, seeking fair and just treatment under the law and equitable consideration of all matters raised herein.

Respectfully submitted, on 9-7-24
Robert Sam