# U.S DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

ROBERT & KAREN SAM,     )
            )
   Plaintiff      )
            )
   vs.        )   No. 3:23-cv-50301
            )
MELISSA MOBILE, et al.    )
            )
   Defendants.     )

## DEFENDANTS' RESPONSE TO DISQUALIFICATION

COMES NOW Defendants MELISSA MOBILE, BKA HOLDING, LLC, through undersigned counsel, in opposition to Plaintiff's motion to disqualify states:

To the extent the Sam's motion re-hashes the same issues for disqualification as before by claiming "wrongful denial," the disqualification has been denied by three Justice appellate court, Judge Klein, Judge Pedersen, and Judge Konen in DeKalb County after evidentiary hearings. *See* Ex. 8 at 19 ("you telling a potential attorney that you didn't do anything wrong . . . I don't see how that creates a conflict or how . . . use[d] . . . adversely against you.") The underlying criminal claims are now moot given Robert's guilty plea to felony theft.[1] *See* Ex. 2, at 5, 10; *see also* RPC 1.18, comments (public disclosure eviscerates any confidential disclosure concerns). Given his admission, there is no perceived, apparent, nor constructive conflict given his now public confession, let alone any actual conflict. Estoppel applies as previously argued and incorporated herein by reference. *See* ECF #23, ECF #58. To the extent Mr. Sam's motion relies on RPC 1.7, he lacks standing because he's never been a client as his assertions in ECF #56 clarifies along with reliance on 1.18, duties to prospective clients. Applying 1.7, it's only BKA and Melissa's interest involved, which permits informed consent if there were any actual conflict. Informed consent has been received, including retaining independent

---

[1]    Robert Sam pled guilty to committing felony theft from his neighbor on June 18, 2024.

counsel Hannigan for undersigned out of caution, not due to any actual conflict, and will submit for *in camera* inspection if requested. The Sams have sued every lawyer representing BKA Holdings and Melissa Mobile and no reason to believe that will stop given his unsubstantiated conspiracy theories, which will only evolve to include more lawyers allegedly out to get him. The material witness claim is a ruse to improperly disqualify lawyers rather than address the merits. *See* Email dated March 7, 2024, Ex. 11. The *Shelton* rule prevents the Sam's motion and protects the adversarial process.

Mr. Sam's motion relies on, like his current complaint, citation to cases hallucinated by Artificial Intelligence software. For that reason alone, his motion must be denied. It's not this Court's job to do his legal research to start, nor to cure his use of fake cases. The Sam's have been warned already, ([ECF #116](#)), and even admitted to it, (Ex. 12) yet continues to use AI without corroboration Their pleading should be stricken for that alone. *See Whaley v. Experian Info. Sols., Inc.*, 2023 U.S. Dist. LEXIS 205468 (S.D. Ohio) (The penalty for committing this fraud upon the Court with fake citations to cases should include striking the pleading from the record . . . .) Every case cited by Sam's are hallucinated. *See* Ex. 10. *Olin Corp.*, at B(3) is a real case, at least, but the proposition cited was hallucinated. *Olin* has nothing to do with an attorney conflict. He cites *People v. Ross*, a fake criminal case, for the proposition that a lawyer cannot have a personal stake. How a lawyer can have a personal stake in a criminal case should have alerted Plaintiffs that something is not correct in the case citation. Mr. Sam has been party to over fifty (50) lawsuits in the last twenty years. He is no stranger to *pro se* litigation and is held to the same standard as any attorney when citing to case law even if this was his first case rather than fiftieth.[2] *See Zedcrest Capital Ltd. v. Oshionebo*, 3:24-cv-00780-S (BT) (N.D. Tex. Aug 06, 2024) ([S]elf-represented litigants are cautioned against submitting to the Court any pleading, written motion, or other paper drafted using generative artificial intelligence without checking accuracy by traditional means.

---

[2] See spreadsheet of cases per FRE 1006, attached hereto as Exhibit 6.

**1. The Sam's perception of being on a very long leash ignores precedent for use of Artificial Intelligence without corroboration.**

"Many harms flow from the submission of fake opinions. *Mata*, 2023 U.S. Dist. LEXIS 108263, *2 (S.D. NY, 2023). The opposing party wastes time and money in exposing the deception. *Id.* The Court's time is taken from other important endeavors. *Id.* There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. *Id.* It promotes cynicism about the legal profession and the American judicial system." *Id. See also Scott v. Fed. Natl Mortg. Ass'n*, RE-2023-037 (Me. Super. Jun 14, 2023) ("sanctions should be imposed both to penalize . . . and to deter future litigants from blindly relying on filings generated by artificial intelligence."); *See, e.g., Park v. Kim*, 91 F.4th 610, 613-16 (2d Cir. 2024) (*per curiam*) (sanctioning for brief, drafted in reliance on ChatGPT, included citations to fake opinions); *Mata v. Avianca, Inc.*, 678 F.Supp.3d 443, 459-66 (same). Here, the Sam's response to the significant citation of fake opinions with AI was discussed in his email dated **August 29, 2024, at 3:20 PM**, wherein Mr. Sam made clear his perceived "very long leash" with this court was justification for his uncorroborated use of AI, stating:

> "We are *pro se* and since the judge would not grant us a lawyer, that's on her. <u>We get a very long leach (sic) with the court</u>. And as you pointed out, I am not a lawyer. So I am sure any issues on case law error, well I'm not a lawyer." Ex. 12.

The Sam's current complaint has around 70 fake cases ignoring many more with hallucinated propositions for real cases that is already subject to a Rule 11 notice. The Sam's now assert legal arguments in their motion to disqualify based on, again, reckless use of artificial intelligence sources with no care for how it is inaccurate and misleading, and waste everyone's time. Mr. Sam could easily google his case cites to see if they exist, read the case cites, and see they are not real and not cite to them. The prohibition to not cite fake cases applies to self-litigants like the Sams. *See Zedcrest Capital Ltd. v. Oshionebo*, 3:24-cv-00780-S (BT) (N.D. Tex. Aug 06, 2024) (Attorneys and self-represented

litigants are cautioned against submitting to the Court any pleading, written motion, or other paper drafted using generative artificial intelligence without checking the submission for accuracy by traditional means (using print reporters or reputable legal databases). There is no long leash exception for *pro se* litigants wrongful use of AI they claim.

In his email dated **August 30, 2024**, at 8:37 A.M., Mr. Sam was specifically asked to clarify his position for citing to fake cases. Instead of responding to the Rule 11 issue, he cites again to a "long leash" as his basis for citing to fake cases:

> "I am pretty sure that **being on a long leash** that the court needs to allow me, you possibly could look past the case law errors and just focus on the merits?" Ex. 13.

The Sam's confirmed on September 10, 2024, that they will not do the work necessary to corroborate their citations to hallucinated case law. As the Sam's have recognized, the Court has been more than patient with them, but they are now continuing to engage in clear bad faith conduct simply to waste time and raise costs for all, which they have also admitted to in emails, which cannot be condoned.

### 2.      Deliberate Attempts to Inflate Legal Costs

On **August 13, 2024**, Robert makes his intent to make others incur costs clear:

> "Well, these <u>lawyers want money</u>, **like all the stuff you and your slumlord have had to pay. We have had to pay zero dollars in legal bills hahahahhahah**." Ex. 14.

In his email dated **August 28, 2024, at 7:14 AM**, Mr. Sam explicitly threatens, again, to burden BKA Holdings with legal fees by threatening mechanics liens, stating: "Then you can pay more money in legal fees and have more court cases." Ex. 15. This reveals his strategy is to escalate litigation costs. Mr. Sam's admission that he faces no financial consequences from prolonged litigation, then citing to non-existent cases due to his perceived "very long leash" while gleefully stating he wants BKA to incur significant costs is a clear abuse of everyone's time and raises costs unnecessarily, which cannot be condoned, requiring his pleading be struck with prejudice for reliance on uncorroborated case law.

**3.** **There is no conflict under 1.7 requiring disqualification and the Sam's clear attempt to violate the attorney-client relationship violates the *Shelton* Rule.**

In Illinois, the right of a client to choose their own lawyer is highly regarded and protected. This right is considered fundamental, making sure clients can have confidence in their legal representation. Disqualification of an attorney should only occur when necessary and must be based on an actual conflict of interest rather than mere appearances of impropriety. *In re Marriage of Janev*, 2024 IL App (1st) 230998-U. In *Corti*, the court underscored that the attorney-client relationship is highly fiduciary and consensual, and any agreement that restricts this right is contrary to public policy *Corti v. Fleisher*, 93 Ill. App. 3d 517. Given this important public policy and high threshold to disqualify, the Sam's motion must be denied because it's not necessary, and there is no actual conflict, and informed consent has been obtained even if there was any risk of this conflict under 1.7

Relevant to the informed consent analysis is that the Sam's will sue every attorney who tries to represent BKA or Melissa in order interfere with her ability to be represented. He is 2/2 doing such. His allegations that undersigned is suing him in another action is irrelevant to any 1.7 analysis if true, but is false. *See* ECF # 126, at 25. Undersigned is the attorney of record in two (2) cases, he is not suing him. Nor are the actions related as is clear given the complaint he attached. Robert Sam filed for an order of protection on behalf of his wife from undersigned counsel and Mobile that was dismissed. Suing him now for unauthorized practice of law for clear misconduct and malicious prosecution of the OP is the opposite of creating a conflict, that is the adversarial process in action as *Shelton* protects. The absolute litigation privilege applies here, *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, and to be safe, informed consent has been obtained. The claim that undersigned is a "material" witness conflicts with the actual circumstances of the litigation privilege and barred by *Shelton*.

In *Shelton v. American Motors Corp.* (8th Cir.1986), 805 F.2d 1323, the court held that 'The practice of forcing trial counsel to testify as a witness, however, has long been discouraged, *see Hickman*

*v. Taylor,* 329 U.S. 495, 513 (1947), because its <u>disrupting the adversarial nature of our judicial</u> <u>system</u> . . . and **lowers the standards of the profession**, but it also adds to the already burdensome time and costs of litigation. Finally, the practice detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. The 'chilling effect' that this practice will have on the truthful communications from the client to the attorney is obvious. It is for these reasons the courts have recognized that the trial courts should refuse to allow counsel be called as a witness and adopted the *Shelton* rule. *People v. Gendron* (1968), 41 Ill.2d 351, 358, *cert. denied* (1969), 396 U.S. 889. *Kilpatrick v. First Church of the Nazarene,* 182 Ill. App. 3d 461, 470, (4th Dist. 1989). The Appellate Court has affirmed sanctions imposed for simply serving a subpoena on opposing counsel. *See In re Marriage of Baumgartner,* 384 Ill. App. 3d 39, 67-68, (1st Dist. 2008) (recognizing and applying *Shelton*). Here, the Sam's "material witness" claim violates *Shelton*, requiring denial of the motion because it **<u>lowers the standards of the profession</u>** by Plaintiff who is not a member of the profession. This is to be guarded.

In *O'Callaghan*, the absolute litigation privilege barred claims against an attorney for actions performed as part of their representation. 2015 IL App (1st) 142152, ¶ 23—32. This privilege is intended to ensure attorneys can fully advocate for their clients without fear of later lawsuits and protects the adversarial process from devolving into endless litigation as is being attempted by the Sams. The court emphasized this privilege is connected to all correspondence and conduct related to litigation. *O'Callaghan* prevents 1.7 to apply, or at the very least, makes the request premature since *O'Callaghan* and the litigation privilege will be used to dismiss the operative complaint for any conduct protected by the privilege.

**4. Sam's allegations of collusion and failure to do repair work lack merit and are irrelevant to any 1.7 analysis.**

Sam's collusion and repair claims are irrelevant. As will be at issue to dismiss the operative complaint, for Plaintiff to maintain damages for his housing situation, he must move out, which he

refuses to do. Failure to move out renders his claim moot. *See Dell'Armi*, 172 Ill. App. 3d at 148 (damages only arise after the tenant quits the premises); *Ira Handelman Building Corp. v. Dolan*, 15 Ill. App. 2d 49 (1957). There can be no damages for constructive eviction without the vacating of the premises. *Dell'Armi*, 172 Ill. App. 3d at 148-49. Thus, the repair issues are not creating material witness concerns nor any conflict of interest requiring disqualification given the claims, it's the adversarial process playing out, which is protected against as argued already and will be a basis to dismiss the claim as a matter of law. At worst, the Sam's allegation is premature pending disposition of his claims after a motion to dismiss decided. Factually, Robert Sam, under the lease terms, is responsible for the repairs for which he continually complains of (ECF #109-3 at ¶ 12)[3] and, to the extent repairs have been attempted, he has made not so veiled threats of violence and refused access for any repairs. *See* ECF #126, at 41-42. This alleged "conclusion" lacks any basis in fact or law supporting disqualification and requires denial of the motion.

## CONCLUSION

Plaintiff failed in its high burden to file support disqualification by filing a motion with hallucinated case law, alternative facts, or any applicable analysis. Its motion should be stricken given the disregard for this Court's time having to verify the citation to fake cases, which are also rampant. Plaintiff must not be afforded an opportunity in reply to do what it should have done in this motion. As Judge Johnston cites on his district page, raising arguments for the first time in a reply brief is dirty pool. *In re Leventhal*, 2012 Bankr. LEXIS 1328, *9 n. 3 (N.D. Ill.2012). Skeletal, perfunctory, and unsupported arguments are waived. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 624-625 (7th Cir. 2010); *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 768 (7th Cir. 2018). The motion must be denied if not stricken for fake case, with prejudice.

Respectfully Submitted,

---

[3] ¶ 12. MAINTENANCE AND REPAIR: Lessee will, at his/her sole expense, keep maintain the demised premises and appurtenances in good and sanitary condition and repair during the term of the lease and any renewal thereof.

/s/ C. Nicholas Cronauer
Attorney for BKA Holdings, LLC & Melissa Mobile

CRONAUER, LAW, LLP
ARDC #6305683
1101 DeKalb Ave., Suite 2
Sycamore, IL 60178
(815) 895-8585/(815) 895-4070 Fax
nc@cronauerlaw.com
service@cronauerlaw.com

## CERTIFICATE OF SERVICE

Defendants, through their undersigned counsel, electronically served Defendants' Melissa

Mobile and BKA Holdings, LLC Response in Opposition to Defendant's Motion to Disqualify to all

parties of record through the PACER/ECF system.

Dated: September 16, 2024.

*/s/ Nicholas Cronauer*
CRONAUER LAW, LLP
1101 DeKalb Ave Ste 2
Sycamore, IL 60178
Telephone: (815) 895-8585
Email: nc@cronauerlaw.com
