IN THE CIRCUIT COURT OF THE 23RD JUDICIAL CIRCUIT

DEKALB COUNTY, ILLINOIS

BKA HOLDINGS, LLC, an    )
Illinois Limited        )
Liability Company,      )
                        )
Plaintiff,           )   CASE NO. 24 EV 136
                        )
   vs.              )
                        )
ROBERT SAM and KAREN SAM,  )
                        )
Defendants.         )

REPORT OF PROCEEDINGS of the hearing before

THE HONORABLE JUDGE JOSEPH PEDERSEN, on the 26th of

April, 2024.

APPEARANCES:

     MR. NICHOLAS CRONAUER,
     for the plaintiff.

     Defendant Robert Sam.

*Exhibit C*

SANDRA FOORD, CSR 084-003025
Official Court Reporter
DeKalb County Courthouse

(The following proceedings were had in open court.)

DEFENDANT R. SAM: Robert Sam.

MR. CRONAUER: Nicholas Cronauer for the plaintiff, Your Honor.

THE COURT: All right. If you want to stand at the podiums, that's fine. Gives you more work space.

All right. I've reviewed the motion and the response regarding disqualification of counsel. I know, Mr. Sam, you said that you may have some trouble having your witnesses here by today, but I guess I have some preliminary questions first before we get to the hearing.

The motion that you filed basically just says refer to the motion you filed in -- your attorneys filed for you in federal court.

DEFENDANT R. SAM: Correct.

THE COURT: But neither your motion nor the attached motion set forth any of the information that you claim is the basis for the conflict, meaning what are the -- I don't have any information to base a decision on as to whether or not there's

some type of conflict for Mr. Cronauer to represent the plaintiff in this case; simply because you may have inquired about his firm representing you on an unrelated criminal matter. So I guess absent some showing, I don't even know why I would have a hearing.

The motion that's filed talks about there's emails but they're not attached to this, so do you have these emails that you're ready to --

DEFENDANT R. SAM: Yes. I don't have them -- I mean, I don't have them with me.

THE COURT: Well, why would you not have them with you? I set it for hearing on your motion.

DEFENDANT R. SAM: Well, I had -- no. I have enough of the emails to show you. If you want to go forward, that's fine. We can go forward with it right now.

THE COURT: Well --

DEFENDANT R. SAM: I needed the witnesses to prove the case, but if you're fine with not --

THE COURT: To prove the case of what? That there's a conflict?

DEFENDANT R. SAM: That there can be a conflict of interest and taking all the information that he

was going to represent me in the criminal case that was in front of you. My criminal case was in front of you when you posted bond, that criminal case he was going to represent me in, him and his father. I have those emails. So the conflict of interest is he took all the information that I gave him in the criminal case and he used it against me in the eviction case.

THE COURT: Well, how did he use it against you in the eviction case?

DEFENDANT R. SAM: So in the Illinois Department of Human Rights, which there's a charge against his client for discrimination of criminal records, his Attorney Bradley Melzner took all the information that I gave them and used it against me and said that's the reason for the eviction, is my criminal record, which is what was the criminal record that was in front of you when you gave me the I bond.

THE COURT: But where does that say anything about the criminal record?

DEFENDANT R. SAM: It should be inside of the attached --

THE COURT: No. In the -- in the eviction complaint in this case where --

DEFENDANT R. SAM: It's right on the cover of the eviction complaint. The reason for the eviction is because of the police record.

THE COURT: I'm looking at the eviction complaint in 24 EV 136. The basis is that nonpayment of rent, refused to leave the property after their oral or written lease ended and violated the terms of the lease by refusing landlord entry. They entered lawfully but have overstayed.

There is nothing about any type of criminal --

DEFENDANT R. SAM: It's right on the -- it was on -- even on the 30-day notice. I'll try to pull it up here.

Do you have the 30-day notice in front of you?

THE COURT: Yes.

DEFENDANT R. SAM: Can I --

THE COURT: All right.

DEFENDANT R. SAM: Here. On the 30-day notice one of their reasons for eviction is due to the criminal charges. It's right on there.

THE COURT: Well, there's a police department synopsis attached. That's an exhibit.

DEFENDANT R. SAM: Right.

THE COURT: Which --

DEFENDANT R. SAM:  Is the criminal charges. They even told the Illinois Department of Human Rights that the point of the eviction was the police report, which is why I needed Erika Ayala as a witness.

THE COURT:  Well, I see it attached, but I'm not sure why it would need to be -- or what relevance it has to the breach of the lease.

DEFENDANT R. SAM:  Because they're saying that the reason for the eviction is the police report charges.

THE COURT:  Well, you're saying that, but it doesn't say it anywhere in their complaint.  I agree that it's attached to the 30-day notice, but it's not a basis for the Court to evict you.

DEFENDANT R. SAM:  Well, that's what's in the 30-day notice.

THE COURT:  Well, it says refused landlord entry in breach of lease agreement and --

DEFENDANT R. SAM:  And Rule 720 I believe is on there.

THE COURT:  Well, Mr. Cronauer, is it a basis for the --

MR. CRONAUER:  His criminal charges?  No.

THE COURT: Well, why is it attached to the 30-day notice, then? Why do you have the police department synopsis attached?

MR. CRONAUER: To be honest, Judge, I don't recall attaching the synopsis police report. So I know it was attached to lots of other filings and it might have been a carry-over.

DEFENDANT R. SAM: Judge --

MR. CRONAUER: All for the --

THE COURT: Yeah, it's not cited in the complaint. It's attached as Exhibit -- well, I guess it is attached as Exhibit C.

DEFENDANT R. SAM: It's attached to everything, and they told the Illinois Department of Human Rights that the reason for the eviction is due to the police -- I have it here if you want to see it.

THE COURT: Okay, but --

DEFENDANT R. SAM: Let me pull it up here. It's right here.

THE COURT: Again --

DEFENDANT R. SAM: Can I give it to you to see it?

THE COURT: It's irrelevant to me.

DEFENDANT R. SAM: Okay.

THE COURT:  I mean, the eviction complaint, what I or whatever fact finder would hear the trial would have to decide based on what they are -- what they filed in their complaint simply alleges that you didn't pay rent, that -- and these are their allegations that they would have to prove at a trial.

DEFENDANT R. SAM:  Right.

THE COURT:  That you refused to leave after the oral or written lease ended.

DEFENDANT R. SAM:  Mmm.

THE COURT:  That you violated the terms of the lease by refusing the landlord agent's entry in breach of lease paragraph section 9, and that you entered lawfully but have overstayed.

So this charge of home repair fraud against that involves victims that live at another location, I don't see how that would have any relevance to you -- or to this eviction proceeding.

DEFENDANT R. SAM:  Well, it's attached to it.

THE COURT:  Well, I mean, it should be stricken. I don't see why it's relevant in any way, shape or form so, so that's the first issue.

So I guess what I'm -- and I don't know.  I

didn't review the -- I know there was a prior eviction complaint that was filed, but I haven't reviewed that, but as far as this complaint, there is no relevance as to that other criminal matter, and that's the first point.

Second then, even if there was some relevance to it, this is a public record. Anybody can access the police department synopsis that's been filed with the Circuit Clerk's Office, so that's not confidential information that is being disclosed so --

DEFENDANT R. SAM: No --

THE COURT: Again I need to know what confidential information you're alleging that --

DEFENDANT R. SAM: Okay.

THE COURT: -- was revealed to Mr. Cronauer that could be used --

DEFENDANT R. SAM: Okay. So --

THE COURT: -- adversely to you.

DEFENDANT R. SAM: Can I do that now?

THE COURT: Yes. Do you have the exhibits?

DEFENDANT R. SAM: So --

THE COURT: This is -- and just so you know, this is for me to determine whether or not we're

going to have a hearing.

DEFENDANT R. SAM:  No.  I understand.

THE COURT:  So you're proffering --

DEFENDANT R. SAM:  I understand.

THE COURT:  -- this information before we spend the time of calling witnesses.

DEFENDANT R. SAM:  So --

MR. CRONAUER:  Judge --

THE COURT:  Go ahead.

MR. CRONAUER:  -- can I just object.  If he's got the emails, he needs to give you the emails and let you read them.  The contact is all circumscribed by the emails.  His literation, narration is not evidence.

THE COURT:  Right.

MR. CRONAUER:  Not --

THE COURT:  No, I understand.

DEFENDANT R. SAM:  So the Cronauer has constantly fallen back on that the Appellate Court has made a ruling to not disqualify --

THE COURT:  I just asked you to provide me the confidential information --

DEFENDANT R. SAM:  Okay.

THE COURT:  -- that was disclosed so.

DEFENDANT R. SAM: So -- well, I have to give you the context of why I'm giving you this email because --

THE COURT: I don't need any context. You filed this motion. You said that you consulted with them.

DEFENDANT R. SAM: That's correct.

THE COURT: You revealed confidential information --

DEFENDANT R. SAM: Correct.

THE COURT: -- that now he's going to use against you. So you haven't shown me anything to support that yet, so I want to see what it is that you're relying on to say that's true.

DEFENDANT R. SAM: I'm going to give it to you right now.

THE COURT: Well, before you give it to me, Mr. Cronauer is entitled to see it.

DEFENDANT R. SAM: Yeah, that's fine.

Here's a few of them. I've got a couple more I've got to pull out. This one is the most important.

MR. CRONAUER: Here, Your Honor.

THE COURT: Thank you. So I'm going to just mark on these so that the record is clear that this

is Defendant's Exhibit No. 1.

This one page is a duplicate.

DEFENDANT R. SAM:  Oh, sorry.

THE COURT:  That's all right.

DEFENDANT R. SAM:  Judge, can I enter something else as a exhibit?

THE COURT:  Whatever it is that you're going to show me --

DEFENDANT R. SAM:  (Unintelligible).

THE COURT:  -- that is proof of the conflict.

MR. CRONAUER:  It's already an exhibit attached to our response.

THE COURT:  Right.  I have this already.  It's with the response that they filed.

DEFENDANT R. SAM:  Can I point out the reason for it?

THE COURT:  Go ahead.

DEFENDANT R. SAM:  So -- I got to see it again.

THE COURT:  You can keep it.  I already have it.

DEFENDANT R. SAM:  So --

THE COURT:  So you're talking about --

DEFENDANT R. SAM:  The affidavit from Charles Cronauer.

THE COURT:  Which is Exhibit --

DEFENDANT R. SAM: I don't know. A. Or I don't know if they marked it.

THE COURT: Well, no. I think it's marked on there. Which exhibit is it? Yes, Exhibit A.

DEFENDANT R. SAM: So you have it in front of you?

THE COURT: Yes.

DEFENDANT R. SAM: Okay. So if you go down to No. 2, "I do not know Robert Sam. To the best of my knowledge, I have never met him in person or virtually, nor have I ever otherwise spoken to him about anything, emailed with him, let alone offered any legal advice of any of the 'many matters' he alleges. He does not have my cell phone number".

And then No. 3 is, "I do not use the Admin@Cronauerlaw.com", but look at the emails I gave you. It's from Charles Cronauer.

So the reason that the Appellate Court denied the motion, they never had that evidence. They never had the evidence that he lied on the affidavit. He lied to the -- Judge Waller, he lied to Judge Klein, and it's right in front of you in their own affidavit.

THE COURT: Well, I mean, this is -- we're not

having the actual evidentiary hearing at this point.

DEFENDANT R. SAM:  No, but I'm giving you what I've got.

THE COURT:  But I'm saying that, I mean, just because you've given me these emails that say Charles Cronauer, he says he doesn't use this email.

DEFENDANT R. SAM:  Well, I asked him to be here as a witness.

MR. CRONAUER:  Judge, can I clarify that?

THE COURT:  Go ahead.

MR. CRONAUER:  Charles Cronauer is the admin of Cronauer Law Group.  How it populates on his computer we don't control, but we got all the (unintelligible) data, we got (unintelligible), we can submit it.  It is not --

THE COURT:  So do you know who was replying to these emails, then?

MR. CRONAUER:  What was that?

THE COURT:  Who sent these responses?

MR. CRONAUER:  It would have been me or my staff.

THE COURT:  Okay.

DEFENDANT R. SAM:  Well, if you look at his affidavit, he says he never gave me any advice, and

you have the emails showing from him where he says he gave me advice, unless that's a new person over at Cronauer Law.

And by the way, I can bring an expert in on how admin accounts work.

THE COURT: But even if he gave you this advice, there's no communications in these emails that are adverse to you. You're --

DEFENDANT R. SAM: Yes, they are.

THE COURT: In your emails you're saying that you did nothing wrong.

DEFENDANT R. SAM: Correct.

THE COURT: That you were trying to cooperate with the police, so how is that --

DEFENDANT R. SAM: Because then they went to the Illinois Department of Human Rights when we filed our complaint and they told the detective -- or the investigator Erika Ayala.

THE COURT: But do you agree that there's nothing in these emails that you just gave me that could be used adversely against you? I mean, you're saying --

DEFENDANT R. SAM: They were used adversely against me is what I'm saying.

THE COURT: Well --

DEFENDANT R. SAM: That's what I'm trying to explain. They did.

THE COURT: But --

DEFENDANT R. SAM: They even said it in their own words.

THE COURT: In what way?

DEFENDANT R. SAM: I was trying to give it to you, but you told me not to. Do you want to see it?

THE COURT: See what?

DEFENDANT R. SAM: The adverse that they used this against me?

THE COURT: I'm talking about the statements --

DEFENDANT R. SAM: Right.

THE COURT: -- that were made in here.

DEFENDANT R. SAM: Right.

THE COURT: So you're saying that in this eviction case --

DEFENDANT R. SAM: Correct.

THE COURT: -- these statements can be used adversely against you that you did nothing wrong?

DEFENDANT R. SAM: Correct.

THE COURT: Okay. So explain that to me.

DEFENDANT R. SAM: Okay. So when we filed our

discrimination complaint with the Illinois Department of Human Rights, which they charged the landlord with discrimination, Brandon Melzner, who is Cronauer's attorney, spoke on behalf of Melissa Mobile and in writing, which I have, he tells her that the reason for the eviction is because of Mr. Sam's criminal pending charges. He then gets into all the statements that I made to Charles Cronauer and Nicholas Cronauer.

So, yes, it was used against me clearly, and I have it with me if you want to see it, and that is the reason I asked for the witnesses. So they were used against me. They have every intention on using this against me in front of 12 people in an eviction trial.

THE COURT: I don't understand how they could use it against you.

DEFENDANT R. SAM: Well, then why did they -- then why did they? That's a great question. I don't, either. Why did they take the information that I shared with them when I --

THE COURT: If they wanted to evict you because you committed this unrelated crime that they believe you committed, the landlord, that's not a basis in

the lease to evict you, so it's irrelevant.  They'd have to find a basis that you violated the terms of the lease.

DEFENDANT R. SAM:  That's what --

THE COURT:  So --

DEFENDANT R. SAM:  That's what he said I did.

MR. CRONAUER:  -- whether or not they had ever intended -- like if they wanted to evict you because of that reason, they'd still have to prove that you violated the terms of the lease, and in the eviction complaint in this case it has nothing to do with this home repair fraud charge.

DEFENDANT R. SAM:  Judge, would I be able to see it?  I don't have it in front of me.  Can I see the 30-day notice?  Would you happen to have a copy of it?

THE COURT:  This is the entire eviction complaint.  You should have it.

DEFENDANT R. SAM:  But is the 30-day notice around here?

THE COURT:  I don't know.

DEFENDANT R. SAM:  Because it's not attached to this.  This isn't going to have it.  I need to see the third paragraph in here.  Right here.  30-day

notice from the date of the notice which is March. "As of the date of this notice, you are also in breach of the August 21, 2022, lease terms, specifically 9, and 735 Illinois CS". That's the police report.

THE COURT: No, it's not. 735 ILCS is the civil code.

DEFENDANT R. SAM: 5/9-120.

THE COURT: Right. That's the eviction code.

DEFENDANT R. SAM: Okay. All right. So then it's not in there.

THE COURT: So -- so this is what I'm going to do. I'm striking -- I'm denying your motion. I'm striking it. You're free to refile it, if you want to refile it and provide some information that actually shows how there is a conflict of interest.

This Exhibit 1 that you've provided me, you telling a potential attorney that you didn't do anything wrong and them telling you that it's not a good idea to talk to the police, I don't see how that creates any conflict or how they could use that information adversely against you.

The police department synopsis that is attached to the eviction complaint, I don't really understand

why it's attached, so I'm going to strike that as well. It's marked two different ways. Is it Plaintiff's Exhibit C or Exhibit B?

MR. CRONAUER: So I believe the Exhibit B is how the State, the State's exhibits are of record.

THE COURT: Plaintiff's Exhibit C, so that would be --

MR. CRONAUER: So -- correct, our C. B is the State's exhibit.

THE COURT: So I'll need that included in the order that Plaintiff's Exhibit B is stricken from the exhibits attached to the eviction complaint.

So I'm just striking it -- or I guess I'm denying it because it's insufficient as a matter of law, but that doesn't preclude you from refiling the motion if you can provide me with the confidential information that you believe was disclosed that is adverse to you and creates a conflict of interest.

So now that I've addressed that, you had indicated you wanted time to hire an attorney. Where are you at as far as doing that?

DEFENDANT R. SAM: I'm relentlessly doing that.

THE COURT: Do you still -- you had attorneys representing you in the federal case. There was a

motion for them to withdraw. Did they --

DEFENDANT R. SAM: Yep, they withdrew. The federal judge had assigned me a new attorney which I've never spoken to yet, but that federal attorney is never going to take this case.

THE COURT: Right. No, I understand.

DEFENDANT R. SAM: But I haven't even met with that attorney. My hope is when I do, maybe he can refer me to someone. Prairie State, for whatever reason, won't help us.

THE COURT: Well, I mean, I used to preside over the eviction call. There's a lot of people being evicted and there's only so many attorneys, so they --

DEFENDANT R. SAM: Well, that's probably what it is.

THE COURT: I mean, they are overwhelmed.

So I can give you a brief continuance. This can't be -- based on the prior litigation it can't be a surprise that they filed another eviction complaint against you, so you, I would presume, would have known that it was coming at some point here.

And as I said before, eviction cases are not --

under the statute they are to proceed in an expedited basis, but I can give you a short period of time to see if you can retain an attorney, and then once that occurs, either you're going to -- if you don't have an attorney, either you're going to represent yourself, or if there's some resolution to this, that's fine, too.

DEFENDANT R. SAM: And will it be in front of a jury, I hope?

THE COURT: Well --

DEFENDANT R. SAM: That's what I requested.

THE COURT: That depends when you filed your appearance if you requested a jury trial.

DEFENDANT R. SAM: I did.

THE COURT: Yes. So do you have appointments scheduled with attorneys?

DEFENDANT R. SAM: So I was waiting to meet with this new federal attorney because my hope is that he can refer me to someone, so I'm trying and I called. In fact, they made reference. He had made reference that all I do is shop attorneys. Before I reached out to hundreds, to be honest, but I do it daily, so I'm trying to find someone.

THE COURT: All right. And you understand in

the eviction complaint -- well, let me see.

DEFENDANT R. SAM: I'd like to also -- when do we get to file a response to that? Because I want to file a response to that complaint.

THE COURT: You're free to file one whenever you want. Under the statute it's not required.

DEFENDANT R. SAM: Okay.

THE COURT: The defendants in eviction proceedings are not required to file an answer but --

DEFENDANT R. SAM: We need to.

THE COURT: Well, that's fine. You're free to do that.

So when are you meeting with this attorney?

DEFENDANT R. SAM: I -- I've emailed him twice. I haven't heard back. I just sent an email letter to the federal judge the other day telling her that he hasn't responded back to me, so I guess they're relentlessly working on it and I'm hoping that he gets back to me very soon, but that isn't stopping me from reaching out to other attorneys.

THE COURT: Why don't we come back in about a week and a half if you're available on May 8th at 1:30.

DEFENDANT R. SAM: What time?

THE COURT: May 8th.

MR. CRONAUER: That works for me, Your Honor.

DEFENDANT R. SAM: May 8th. What time?

THE COURT: At 1:30.

DEFENDANT R. SAM: Oh, 1:30?

THE COURT: And it's just a status on you retaining an attorney.

DEFENDANT R. SAM: Okay.

THE COURT: So we can do that on Zoom.

DEFENDANT R. SAM: Zoom? Okay.

THE COURT: I mean, or I'll be here in person. You can always come in person if you want.

DEFENDANT R. SAM: That would be preferred? You prefer in person?

THE COURT: I don't prefer either way. I'm just saying that I have to be here, so if you want to come in person, you can come, or if you want to be on Zoom, that's fine, too.

DEFENDANT R. SAM: Okay.

THE COURT: I don't have a preference either way so.

DEFENDANT R. SAM: And then just so we're clear, Your Honor, any reference in the eviction complaint

regarding police charges will be stricken?

THE COURT: Well, I struck that Exhibit B. That's the only reference I saw. If you have any other request to strike --

DEFENDANT R. SAM: Then I'll file it.

THE COURT: -- you can file that.

All right. And then --

DEFENDANT R. SAM: Oh, and then I filed, too, to get the 2019 and 2023 eviction cases off public record. They both have been dismissed.

THE COURT: That's not before me.

DEFENDANT R. SAM: It should be.

THE COURT: Well, you would have to file it in those case numbers --

DEFENDANT R. SAM: I did.

THE COURT: -- and provide notice.

DEFENDANT R. SAM: I sent a copy to Cronauer. I sent one to Riley Oncken, and then the Court wanted them and they were sent down to you.

THE CLERK: They were never noticed up. There was a motion in the -- I was looking at the 19 one. There is a motion on file, but it's not actually noticed up. It would have to be in front of whatever judge it was in front of before.

DEFENDANT R. SAM:  Oh.

THE COURT:  Right.

DEFENDANT R. SAM:  So how do I -- they never gave me a date.

THE CLERK:  You'd have to file a notice of motion.

DEFENDANT R. SAM:  Oh, okay.

THE COURT:  Right.

DEFENDANT R. SAM:  Sorry.

THE COURT:  It has to go back to --

DEFENDANT R. SAM:  The original judge.

THE COURT:  Yes.

DEFENDANT R. SAM:  Okay.  Oh, well, that would be you.

THE COURT:  I was the original?

DEFENDANT R. SAM:  One of them, yes, on the 2019, so I'll set the motion.

THE COURT:  If you want to notice it in, that's fine, but like I said, I didn't have that.

DEFENDANT R. SAM:  Okay.

MR. CRONAUER:  Just looking, Judge, to draft an order, it looks like it's all criminal orders.

THE COURT:  It should be in the old hundred-year-old cabinet there.

DEFENDANT R. SAM: Your Honor, on the motion to disqualify you dismissed it without prejudice so I can refile?

THE COURT: That's correct.

All right, thank you.

DEFENDANT R. SAM: Thank you.

MR. CRONAUER: Thank you.

THE CLERK: The exhibits, those weren't admitted; correct?

THE COURT: Yes. Plaintiff's Exhibit No. 1.

THE CLERK: Admitted?

THE COURT: Admitting for purposes of that hearing so it's in the record.

DEFENDANT R. SAM: But --

THE COURT: Well, I'll order that that be filed under seal since there was communications in anticipation of possible attorney representation so.

So you understand I've entered that exhibit with the emails so I'm filing it under seal so nobody else can see it.

DEFENDANT R. SAM: I got it. I got it. Thank you.

(End of proceedings.)

IN THE CIRCUIT COURT OF THE 23RD JUDICIAL CIRCUIT

DEKALB COUNTY, ILLINOIS

I, Sandra Foord, certify the foregoing to be a true and accurate transcript of the electronic recording of the proceeding of the above-entitled cause, which recording contained the operator's certification as required by Local Rule 1.02(b)(2).

_____
*Sandra Foord*
Official Court Reporter

License No. 084-003025

Dated this 30th day of April, 2024.