**U.S DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | | |
|---|---|---|
| ROBERT & KAREN SAM, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | No.  3:23-cv-50301 |
| | ) | |
| MELISSA MOBILE, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF FEDERAL JURISDICTION**

COMES NOW Defendants MELISSA MOBILE and BKA HOLDING, LLC, by and through undersigned counsel, respectfully moves to Dismiss Plaintiffs' complaint due to lack of any original subject-matter jurisdiction, and states as follows:

## I.    INTRODUCTION

District Courts have an affirmative duty to *sua sponte* determine whether subject-matter jurisdiction exists.[1] *See Local 150 v. Ward*, 563 F.3d 276, 282 (7th Cir. 2009); *Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir. 2005). An anchoring federal claim bestowing original and supplemental jurisdiction is required for Plaintiffs' complaint to stand. None exist here. The only potential federal anchor claims are Counts I, II, III, IV, V, X, XVII, XXI with the remaining counts being anchored by supplemental jurisdiction under § 1331. There is no anchoring claim existing in this case permitting supplemental jurisdiction. None of the counts alleged bestow original subject-matter jurisdiction in federal court. None of the counts are a civil action "arising under" the Constitution, laws, or treaties

---

[1]    Plaintiff's operative complaint contains no less than fifty citations to non-existent legal cases. *See* Attached list of fake cases. Ex. 10. Plaintiffs have admitted to relying on artificial intelligence programs in order to proceed since [ECF #124], but still refuse to corroborate the output. This conduct alone should result in dismissal of the complaint. *See, e.g., Park v. Kim*, 91 F.4th 610, 613-16 (2d Cir. 2024) (*per curiam*) (sanctioning for reliance on ChatGPT, included citations to fake opinions); *Mata v. Avianca, Inc.*, 678 F.Supp.3d 443, 459-66 (same)." *See also Whaley v. Experian Info. Sols., Inc.*, 2023 U.S. Dist. LEXIS 205468 (S.D. Ohio) (The penalty for committing this fraud upon the Court with fake citations to cases should include striking the pleading from the record).

of the United States. "[A]rising under means that the claimant is suing under a federal law that creates a cause of action." *Pollard v. Johnson*, 694 F. Supp. 3d 1080, 1085 (W.D. Wis. 2023). Because none of Plaintiffs claims "arise under" federal law, dismissal under FRCP 12(b)(1) is required. *See id.* at 1088 (no supplemental jurisdiction where no original federal question jurisdiction). Federal law does not recognize Plaintiffs' alleged CARES Act or HUD claims, nor is there federal arrest record discrimination. Their sole remedy for any alleged arrest record discrimination is in State court by the Illinois Attorney General. Additionally, the problem for Plaintiffs' arrest discrimination claims, even if that was recognized discrimination arising out of federal law, is the fact he pled guilty on June 18, 2024, to Class III felony theft of weapons from a neighbor in his rental community. Sam was sentenced to two years of reporting probation, including being ordered to seek gainful employment. *See* Exhibit 3, at 2, ¶ 10. Sam admitted to guilt and stipulated to the factual foundation supporting his theft of weapons in order to plead guilty to the felony. *See* Report of Proceedings dated June 18, 2024, Exhibit 2 at 5, 9-10; Ex. 3, at 9. Under *Heck v. Humphrey*, even if Plaintiffs could sue, Sam's guilty plea and sentence precludes any federal claim under *Heck*. 512 U.S. 477, 486-487 (1994).

An outline of all pending counts[2] in the complaint along with the defendants for each count is as follows:

1. **Count I: Violation of the CARES Act**
   a. Defendants: BKA Holding, LLC, Melissa Mobile, Riley Oncken, Riley N. Oncken, P.C., Christopher Nicholas Cronauer, and Cronauer Law LLP

2. **Count II: Failure to Afford 30 Days' Notice HUD Rules**
   a. Defendants: BKA Holding, LLC, Melissa Mobile, Riley Oncken, Riley N. Oncken, P.C., Christopher Nicholas Cronauer, and Cronauer Law LLP

---

[2] Robert Sam is a habitual litigant. *See List of Prior Sam Cases, attached* Exhibit 6, attached hereto per FRE 1006. He has **fifty one (51)** current or prior cases. Of the **51** cases, **13** cases involve Robert and Karen Sam evictions. The rest range from home repair fraud, fraud, breach of contract for home repair work, and multiple bankruptcies. Since 2017, Robert began claiming, as he does repeatedly in this case and without support, that his wife will die if evicted. *See* **Exhibit 7**.

3. **Count III: Unlawful Discrimination in Violation of the Illinois Human Rights Act**

    a.    Defendants: BKA Holding, LLC, Melissa Mobile

4. **Count IV: Unlawful Discrimination in Violation of the Fair Housing Amendment Act of 1988**

    a.    Defendants: BKA Holding, LLC, Melissa Mobile

5. **Count V: Violation of Rehabilitation Act**

    a.    Defendants: BKA Holding, LLC, Melissa Mobile

6. **Count VI: Violation of Landlord-Tenant Regulations**

    a.    Defendants: BKA Holding, LLC, Melissa Mobile, Sycamore, Housing

7. **Count VII: Breach of Warranty of Habitability**

    a.    Defendants: BKA Holding, LLC, Melissa Mobile

8. **Count VIII: Abuse of Process**

    a.    Defendants: BKA Holding, LLC, Melissa Mobile

9. **Count IX: Abuse of Process**

    a.    Defendants: Riley Oncken, Riley N. Oncken, P.C., Christopher Nicholas Cronauer, and CRONAUER LAW, LLP

10. **Count X: Violation of the Fair Debt Collection Practices**

    a.    Defendants: Riley Oncken, Riley N. Oncken P.C., Nicholas Cronauer, and Cronauer Law, LLP

11. **Count XI: Malicious Prosecution**

    a.    Defendants: BKA Holding, LLC & Melissa Mobile

12. **Count XII: Malicious Prosecution**

    a.    Defendants: Riley Oncken and Riley N. Oncken, P.C.,

13. **Count XLII (sic): Civil Conspiracy**

    a.    Defendants: BKA Holding, LLC, Melissa Mobile, Riley Oncken, Riley N. Oncken, P.C., Christopher Nicholas Cronauer, and Cronauer Law LLP

14. **Count XIV: Intentional Infliction of Emotional Distress**

    a.    Defendants: All

15. **Count XV: Defamation**

    a.    Defendant: Riley Oncken & Sycamore

16. **Count XVI: Misrepresentation**

a.      Defendants: BKA Holding, LLC, Melissa Mobile, Riley Oncken, Riley N. Oncken, P.C.

17.   **Count XVII: Violation of Section 1983 of the Civil Rights Act**

a.      Defendants: Riley Oncken, Riley N. Oncken, P.C., DeKalb Housing Authority, Sycamore

18.   **Count XVIII: Breach of Contract**

a.      Defendants: BKA Holding, LLC, Melissa Mobile

19.   **Count XVIII Fraudulent Inducement:**

a.      Defendants: BKA Holding, Melissa Mobile, Riley Oncken, & Riley N. Oncken, P.C.

20.   **Count XIX:  Breach of Implied Covenant of Good Faith and Fair Dealing**

a.      Defendants: BKA Holding, LLC & Melissa Mobile.

21.   **Count XX:  Negligent Inflection of Emotional Distress.**

a.      Defendants: BKA Holding, LLC, Melissa Mobile, Riley Oncken, P.C., Town of Sycamore

22.   **Count XXI: Violation of the American with Disabilities Act (ADA)**

a.      Defendants: BKA Holding, LLC, Melissa Mobile, and Sycamore.

23.   **Count XXII: Retaliation**

a.      Defendants BKA Holding, LLC, Melissa Mobile, Riley Oncken, Riley N. Oncken P.C., and Town of Sycamore

## II.      LAW

Federal courts are courts of limited jurisdiction with strict jurisdictional rules intended to reduce the burden occurring on federal courts and concomitantly avoid encroachment on state court sovereignty. *See Johns-Manville Sales Corp. v. Chicago Title and Trust Co.*, 261 F. Supp. 905, 906 (N.D. Ill. 1966). ("[T]he first step in any federal lawsuit is ensuring the district court possesses authority to adjudicate the dispute—in short, that it has jurisdiction over the subject matter."); *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019) ("Subject-matter jurisdiction is the first issue in any case."). This District Court must determine whether it has subject matter jurisdiction before

addressing the merits of Plaintiffs' complaint even where neither party questions the existence of jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 104 (1998); *Smith v. Am. Gen. Life & Accident Ins. Co.*, 337 F. 3d 888, 892-93 (7th Cir. 2003).

Jurisdiction in federal court is a serious infringement upon state sovereignty and should not be allowed without "[d]ue regard for the rightful independence of state governments. . . ." *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 109 (1941). Under § 1331, federal district courts have original jurisdiction over civil actions "arising under" the Constitution, laws, or treaties of the United States."[T]he term 'arising under' carries special meaning" under § 1331, and generally means that the claimant is suing under a federal law that creates a cause of action, either expressly or by implication. *E. Cent. Illinois Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 959 (7th Cir. 2021); *see also Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979); Wright & Miller, *Federal Practice and Procedure* § 3562. Indeed, "the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law c*reates* the cause of action." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986) (emphasis added).

### III.    ANALYSIS

**A.  Counts I, II, III, IV, V, X, XVII, and XXII are not cause of actions "arising under" federal law because federal law does not create the cause of action being sought by Plaintiff nor does it allege a deprivation of any constitutional right to support any § 1983 claim.**

**i.  Count I, II, and XVII are not anchor claims because there is no private right of action to enforce the CARES Act nor HUD Rules, precluding any claim that CARES or HUD Rules support a § 1983 Constitutional Deprivation Action.**

There is no private right of action to enforce the CARES Act nor HUD rules by Plaintiffs. Counts I and II seek to enforce a private right of action under CARES and HUD, but none exists. *See Saloojas, Inc. v. Aetna Health of California, Inc.*, No. 22-16034 (9th Cir. 2023) (finding no private right of action exists under the CARES Act.). Count I therefore fails to arise under any federal law creating

a federal cause of action. *See also Turner v. Hamilton Cnty. Tr. Ass'n*, 2022 U.S. Dist. LEXIS 91064, 11 (S.D. Ind. 2022) (dismissing CARES act claim because no federal question private right of action jurisdiction provided by Act); *Borowski v. Aly Fin. Inc.*, 2023 U.S. Dist. LEXIS 35561, *4 (stating CARES Act enforcement consigned to federal and state agencies and officials)).

Count II, the HUD citation, does not have any legally enforceable effect nor does it afford a private right of action. *See Thorpe v. Housing Auth. Of City of Durham*, 393 U.S. 268, 275 (1969) ("[T]he various 'handbooks' and 'booklets' issued by HUD contain mere 'instructions,' 'technical suggestions,' and 'items for consideration.'"); *see also Burroughs v. Hills*, 741 F.2d 1525, 1529 (7th Cir. 1984) (finding a HUD handbook non-binding). Plaintiff has no private right of action in federal court because HUD regulation, Part 982.456(c) states <u>a tenant cannot enforce any private housing authority rights against an owner</u> like Defendant. The HUD regulations actually work to ensure there is no private right of action by a Plaintiffs. Count II is also defied by 24 CFR Part 982.456(c). <u>A HAP contract shall not be construed as creating any right of the family or other third party (other than HUD) to enforce any provision of the HAP contract, or to assert any claim against HUD, the PHA **or the owner** under the HAP contract</u>. *Id.* Yet despite this regulation, Plaintiff's Count I and II seeks enforcement of rights under a contract Plaintiff has no right to enforce under the regulations against any Defendant. Part 982.456(c) further supports the lack of any CARES private right of action. A family may exercise no right or remedy against the owner under any HAP contract. *Id.* at (b)(1). <u>The only remedy available under HUD include recovery of overpayments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract</u>. § 982.453. The remedy Plaintiff seeks in Count II is expressly not allowed.

Count II not "arising under" any federal law is consistent with plethora of precedent limiting federal jurisdiction. Count II alleges a mere violation of a rule of procedure, not any right. *See, Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) ("[I]t is only violations of rights, not laws, which give rise to

[private] actions.") (emphasis in original). Neither HUD nor the Cares Act codifies an express private right of action to seek redress for violations of this statute by Plaintiffs. Statutes passed under the Spending Clause of the Constitution (Art. I, Section 8, Clause 1), like the Cares Act, rarely confer private rights of action. *See National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 576-78 (2012). More recently, the Supreme Court observed that [r]ecognition of any private right of action for violating a federal statute governing decisions instruct, must ultimately rest on congressional intent to provide a private remedy. *Astra USA, Inc. v. Santa Clara County, Cal.*, 563 U.S. 110, 117 (2011) (citations omitted). To provide a basis for a private right of action, a federal statute must create both a right for the plaintiff, and a remedy for violating that right against the defendant. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). (The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.). No remedy language is found in the CARES Act or any HUD regulation. In fact, the HUD regulations make clear Plaintiffs have no right to enforcement, explicitly eviscerating any private right of action. Congressional intent is clear, Count II is not an anchor claim bestowing federal court jurisdiction.

**ii. Count III seeks to enforce an Illinois statute, which precludes any original federal jurisdiction.**

Plaintiffs Count III alleges "arrest record" discrimination. There is no "arrest-record" discrimination claim "arising under" federal law. To the extent federal law did recognize any such claim, Count III is now barred by Plaintiff Robert Sam's guilty plea to felony theft of his neighbor, William Godfrey, under *Heck. See* Ex. 2. In *Heck v. Humphrey* the Supreme Court established that "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus...the district court must consider whether a judgment in favor of the plaintiff would necessarily

imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477,486-487 (1994). "[I]f the plaintiff's factual claims in the civil suit necessarily imply the invalidity of the criminal conviction, then *Heck* bars the civil suit." *Tolliver v. City of Chicago*,820 F.3d 237, 243 (7th Cir. 2016). *Heck* therefore applies to bar Count III given Robert Sam's guilty plea to a felony and probation sentence because any judgment in his favor would invalidate his criminal sentence. Even if *Heck* was not a civil bar, the HUD regulations bar Count III. The relevant federal regulations are as follows:

### 24 CFR § 982.310. Owner termination of tenancy.

**(c) Criminal Activity—**

**\*\*\***

**(3) *Evidence of criminal activity.*** The owner may terminate tenancy and evict by judicial action a family for criminal activity by a covered person in accordance with this section if **the <u>owner</u> determines that the covered person has engaged in the <u>criminal activity</u>,**[3] **<u>regardless of whether the covered person has been arrested or convicted for such activity and without satisfying the standard of proof used for a criminal conviction.</u>**

**(d) *Other good cause.***

**(1)** "Other good cause" for <u>termination of tenancy by the owner may</u> include, but is not limited to, any of the following examples:

**(ii)** A family history of **disturbance of neighbors** or destruction of property, or of living or housekeeping habits resulting in damage to the unit or <u>premises;</u>

### 24 CFR Part § 982.551. Obligations of Participant.

**(k) *Fraud and other program violation.*** The members of the family must not commit fraud, bribery or any other corrupt or criminal act in connection with the programs.

**(l) *Crime by household members.*** The members of the household may not engage

---

[3]     On October 11, 2022, well before any attempt to evict Plaintiffs, public record filings with the DeKalb Circuit Clerk show that Robert Sam admitted to felony theft of stealing weapons from his neighbor, William Godfrey. *See* Ex. 1, 2; s*ee also Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 702 (2000) (After submission to the clerk of the court, a document becomes a part of the public record.) Courts take judicial notice of public court records. *Treadway v. Nations Credit Fin. Servs. Corp.*, 383 Ill. App. 3d 1124, 1132 (5th Dist. 2008); (taking judicial notice of court records); *Ins. Co. of North America v. Cape Inds., Ltd.*, 138 Ill. App. 3d 720 (4th Dist. 1985) (court may take judicial notice of its own records);*see also Lacey v. Progressive Direct Ins. Co.*, 15 CV 50110, ECF #31, at n. 3 (N.D. Il., Jan. 4, 2016) (citing Fed.R. Evid. 201) (taking judicial notice of public filings).

in . . . criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises.

Federal regulations are clear, Count III fails to establish any federal jurisdictional claim because federal law does not recognize any "arrested" discrimination. The Federal Regulations promote the landlord's ability to facilitate community safety and harmony among tenants, especially where one steals weapons. Robert Sam admitting to stealing weapons from his neighbor in October 2022 is cause by itself to terminate a HUD lease, without waiting for a conviction or reasonable doubt standard. BKA may terminate the lease with PHA for disturbing neighbors and admittedly engaging in criminal conduct. *See* 24 CFR § 982.310(d)(1). Sam's conduct is admitted criminal activity which may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents or people living in the immediate vicinity. *See* Ex. 1 (admitting to felony theft to the police on October 11, 2022). 24 CFR § 982.553(2)(ii)(3) permits adverse action and prevents any federal discrimination claim. There is no jurisdictional basis for Count III. In fact, 775 ILCS 5/3-106(K), establishes Count III is not a jurisdictional hook because inquiry into or the use of an arrest record is allowed if the inquiry or use is otherwise authorized by federal law, which it is in this case.

### iii. Count IV is not a claim arising under the Fair Housing Act because the claim is explicitly disqualified by the PHA regulations.

Plaintiff's Count IV is defied by its own pleadings, which pleads them out of Court. *Pollastrini v. Patternmakers' Pension Trust Fund*, 34 F. Supp. 2d 701, 704 (N.D. Il. 1999) (The court is not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim). Defendant alleges an agreed late payment schedule for Plaintiff in ECF #12, at 43. Plaintiff allegations admit he failed to pay rent timely. This violates the PHA regulations. Karen Sam's public bankruptcy filings, sworn under oath by penalty of perjury, which this court must take judicial notice, confirm $10,000 in unpaid rent and utilities by herself that Robert guaranteed and co-signed. *See* Karen Kristen Auksi-Sam Bankruptcy, 23-80459, at ECF #1, at 9; #15, at 22-23 (attached hereto as Exhibit 4 & 5). *See*

*Lacey v. Progressive Direct Ins. Co.*, 15 CV 50110, ECF #31, at n. 3 (N.D. Il., Jan. 4, 2016) (citing Fed. R. Evid. 201) (taking judicial notice of public filings); *All Purpose Nursing Service v. Illinois Human Rights Com'n*, 205 Ill. App. 3d 816, 823 (1990) (*citing People v. Davis*, 65 Ill. 2d 157 (Ill. 1976)) (circuit courts may take judicial notice of matters of record in other cases in the same court). Robert is listed as a debtor on the lease. Bankruptcy, 23-80459 at ECF #15, at 23. Even assuming Plaintiff's argument is true (it's not), Section 8 **requires** late penalties and permits termination for non payment. 24 CFR § 982.310; 24 CFR § 982.451(b)(5)(ii)(A)). Part § 982.451 permits "The owner to charge late penalties against the tenant for late payment of family rent to owner. 24 CFR § 982.451(b)(5)(ii)(A)(3). Nothing in Section 8 nor the Cares Act requires a landlord to even accept a late payment if they don't want too. The regulations list not paying rent as a "serious violation" permitting termination. 24 CFR § 982.310. A tenant not complying with regulations is a serios violation, requiring a landlord to ignore the regulations is not a reasonable accommodation under any disability standard.

Therefore, the non-payment of rent is not considered a reasonable accommodation under these laws. FHA (42 U.S.C. §§ 3601-3619) and regulations implementing the ADA (28 CFR Part 35 for public entities and 28 CFR Part 36 for public accommodations and commercial facilities) provide for reasonable accommodations in housing for individuals with disabilities. These accommodations typically relate to modifications in rules, policies, practices, or services when such modifications are necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling. Accommodating by non-payment and late payment of rent are unreasonable accommodations as a matter of law given the regulations requiring rent be paid, on time, by Plaintiffs. 24 CFR Part 982.310(a)(1). It's a fundamental alteration of the landlord's business and serious violation of the terms providing rental housing unsupported by the PHA regulations. *Id.* Non-payment and late payment of rent fundamentally alters the nature of the rental agreement, making it an unreasonable request. This is because the financial viability of the landlord's business relies on the consistent and

timely payment of rent. This concept is found it Part 982.310(a)(1) which requires, by law, for the tenant to pay rent and amounts due under the lease. There is no such thing as a reasonable accommodation to make payments not agreed to under the terms of the lease. *Id.* In fact, payment of rent is the responsibility of the family. § 982.515(c). Count IV therefore is not a claim arising under any federal law. It's precluded by PHA regulations.

### iv. Count V's reliance on the Rehabilitation Act fails to plead a cause of action for any anchor claim arising out of federal law.

There is no private right of action under the Rehabilitation Act. *See i.e., D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474 (7th Cir. 1985). Count V's reliance on 29 U.S.C. § 794 has no application to Defendants as a private landlord. 29 U.S.C. involves rights and advocacy for vocational and rehabilitation and other services to the States and their employment of persons with disabilities. *See i.e.,* 29 U.S.C. §§ 701,791. The Defendant does not fall within any other provision of 29 U.S.C. § 794 either. 29 USC 794(a) is also clear it only applies to program recipients of federal funds: "Any program or activity receiving Federal financial assistance." It does not apply to private parties. What constitutes a "program or activity" is defined in subsection (b). 29 U.S.C. 794(b). The private landlord is specifically excluded. The Code of Federal Regulations defines the recipients of federal financial assistance subject to Section 504's requirements. 24 C.F.R. § 8.3. Section 8.3 specifically defines a recipient of federal financial assistance and excludes from it an entity or person receiving housing assistance payments from a recipient on behalf of eligible families under a housing assistance payments program or a voucher program is not a recipient or subrecipient merely because of receipt of such payments. 24 C.F.R. § 8.3.

Even if there was a private right of action, Defendant receiving federal funds does not create any liability under the Rehabilitation Act either. In *Simpson v. Reynolds Metals Company, Inc.*, after affirming no private right of action, held that a contractor recipient of federal funds does not meet the definition

Page 11 of 17

of a program or activity under the Rehabilitation Act. 629 F.2d 1226, 1232, 1240 (7th Cir. 1980) ("§ 503 does not manifestly endow with a private judicial remedy any handicapped individual who believes he has been harmed by a contractor's failure to meet his duty."). To be actionable, the discrimination must come in the operation of the federal program or manifest itself in a handicapped individual's exclusion from the federal program or a diminution of the benefits he would otherwise receive from the program. 629 F.2d at 1232. Count V therefore does not arise out of any federal law precluding any original jurisdiction for this cause.

      **v.**    **Count X fails because FDCPA does not apply to Landlord Attorneys seeking eviction or damages related thereto.**

The FDCPA does not apply to the collection of rental payments from a possessor of real estate by a landlord's lawyer. In *Watkins*, eviction was sought against those who continued to live in a foreclosed property without paying rent. The court determined that the parties involved were not considered "debt collectors" under the FDCPA's definitions and dismissed the case for no jurisdiction per FRCP 12(b)(6)(1), as should occur here. *See Watkins v. Associated Brokers*, 1998 U.S. Dist. LEXIS 8676, *4. Additionally, FCPA does not apply here either per 15 USC§ 1692(a)(6)(f) because BKA is the party who originated the debt under the lease. Additionally, the FDCPA excludes any lawyer associated with the party who originated the debt given the fiduciary relationship between the debt originator and their lawyer. *Id.* Finally, the FDCPA applies to lawyers only if they are lawyers regularly engaged in consumer debt-collection litigation on behalf of creditor clients. *See Heintz v. Jenkins*, 514 U.S. 291, (1995) (attorney regularly engaged in actions on bank's behalf to recover balances due on defaulted car loans within definition of "debt collector" under 15 U.S.C. § 1692a(6)). Here, Plaintiff, as in *Cook v. Hamrick*, 278 F. Supp. 2d 1202 (D. Colo. 2003), merely parrots the language of § 1692a(6) to assert Defendants are a "debt collector" within the meaning of the Act and offers no factual basis to conclude that any Defendant regularly represents creditors in consumer or any other debt collection activities. *Id.* As an officer of the Court, which can be confirmed with a PACER serach, neither

undersigned nor his law firm regularly represent creditors in consumer transactions or any other debt collection activities. For this additional reason, as in *Cook*, the Complaint fails to establish a claim under the FDCPA and this Court is without subject matter jurisdiction to consider it. *Id.*

> **vi.    Plaintiffs § 1983 claim, Count XVII, cannot stand because no constitutional violation is alleged.**

Count XVII alleges a § 1983 cause of action yet fails to identify any constitutional right that was deprived by a state actor. To succeed on a Section 1983 claim, a plaintiff must prove that his constitutional rights were violated, and that the violation was caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 4242 (1988). There are no constitutional right violations alleged anywhere in Count XVII. The CARES Act and Interim Final Rule violations alleged are not constitutional rights. *See Taake v. Cnty of Monroe*, 530 F. 3d 538, 542 (7th Cir. 2008) (stating that Section 1983 claims only cover "fundamental" rights deeply rooted in history and tradition or implicitly in liberty, which are few; Section 1983 does not transform every tort committed by a state actor into a constitutional violation."). Since there are no constitutional violations alleged in the complaint, there is no jurisdictional basis for Count XVII. The complaint must be dismissed, with prejudice.

> **vii.    Plaintiffs fail to create subject matter jurisdiction by Count XXI alleging ADA violations.**

Plaintiff's ADA claim fails to provide subject matter jurisdiction for the same reason as Count IV, which is incorporated herein by reference. The only accommodation alleged appears at ¶ 58, which is a request to make late rental payments. ECF, #109, at ¶ 58. This is not patently a reasonable accommodation as a matter of law given the PHA regulations already cited and argued *ad naseum*. Timely rent is required and failure to pay timely permits termination under the regulations, which Plaintiff admits they violated, routinely, then had unpaid rent discharged in bankruptcy for Karen Sam, while ignoring the unpaid debt is still owed by Robert.

> **viii.    ILLINOIS' SLAPP ACT REQUIRES DISMISSAL OF PLAINTIFF'S COMPLAINT ENTIRELY.**

Under the SLAPP Act, 735 ILCS 110/20(c), a court shall grant the motion and dismiss the judicial claim unless the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability by this Act. Plaintiff cannot produce clear and convincing evidence refuting his admissions to stealing weapons and not paying rent or utilities, which eviscerates their claims. Defendant raises, and incorporates by reference, his argument from ECF # 16, regarding the application of the SLAPP Act to bar this claim. For purposes of summarizing the argument from ECF 16, Plaintiffs' cause violates Illinois' SLAPP Act and absolute litigation privilege immunizing the Judge and lawyer. *See O'Callaghan*, 2015 IL App 1st 142152 (The privilege protects zealous advocacy by allowing attorneys to represent their clients vigorously, without fear of being sued for conduct related to their role in the judicial process.) The conduct here relates entirely to advocacy in 23 EV 102: a judicially signed eviction order. Plaintiff obtained relief by the appellate court, as is designed. *See O'Callaghan*, 2015 IL App 1st 142152 (parties should attempt to redress injuries from misconduct in judicial proceedings in the same litigation. *Id.* at ¶ 28. Were it otherwise, litigation would never end). Applying the Act to this claim, it is clear that Plaintiff's claim is based on, relates to, or is in response to, any act of acts of the Defendant, privilege in petitioning government in the eviction action, obtaining a signed order that was reversed on appeal. SLAPP therefore protects Defendants from Plaintiffs claims. *See Sandholm v. Kuecker*, 2012 IL 111443, ¶54 (Il. 2012). The Act states:

> Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that the constitutional rights of citizens and organizations to be involved and participate freely in the process of government must be encouraged and safeguarded with great diligence. The information, reports, opinions, claims, arguments, and other expressions provided by citizens are vital to effective law enforcement, the operation of government, the making of public policy and decisions, and the continuation of representative democracy. The laws, courts, and other agencies of this State must provide the utmost protection for the free exercise of these rights of petition, speech, association, and government participation.

Here Plaintiffs are seeking millions of dollars over an eviction filing signed by a Judge. Since filing this case, Robert has admitted to felony theft of weapons from his neighbor, been sentence to probation for it, and has agreed in filings to not paying rent or utilities leading up to the 23 EV 102 filing. *See e.g. Wright Dev. Grp., LLC v. Walsh*, 238 Ill. 2d 620 (Ill. 2010) (SLAPPS use the threat of money damages); *see also Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 121, 123 (2d Dist. 2010). Defendants' use of the eviction court system through its judicial officers constitutes privileged State Action under the Fourteenth Amendment. *See Shelley v. Kraemer*, 334 U.S. 1, 17 (1948).  In this case, the Defendant's use of the court system to petition for redress against Plaintiff after he did not fulfill his obligations under a lease to pay rent and utilities with an agreed order signed by a Judge is privileged conduct, as is applied to the States under the Fourteenth Amendment. Plaintiff has not and cannot fulfil its burden to refute the SLAPP application by clear and convincing evidence given his admission to felony theft of a neighbors' weapons and owing rent and utilities. Plaintiff's suit, one of fifty-one others in his history, violates the act, is clearly related to privileged litigation conduct, and must be dismissed under the SLAPP act given this clear relationship to privileged conduct. To hold otherwise, undermines *O'Callaghan* and perpetuates endless litigation which Plaintiffs have shown by their conduct is their ultimate goal. The complaint must be dismissed entirely.

### IV.    CONCLUSION

Plaintiffs' complaint lacks the original federal jurisdictional anchor necessary to maintain a federal civil action for any claim. Plaintiffs claim is not "arising under" federal law. Plaintiffs' allegations fail to clear this low, but crucial, hurdle. Without these jurisdictional thresholds, all Plaintiffs' claims sink, dragging down all supplemental state claims with them. This court, respecting the sovereignty of state courts and the stringent jurisdictional boundaries set by Congress, must dismiss this case under Rule 12(b)(1). *See Gammon v. Terex Corp.*, 2014 U.S. Dist. LEXIS 40115, *3 (S.D. Ill. 2014) (the failure to establish subject-matter jurisdiction will result in dismissal).

Respectfully Submitted,

/s/ C. Nicholas Cronauer
One of its Attorneys

CRONAUER, LAW, LLP
ARDC #6305683
1101 DeKalb Ave., Suite 2
Sycamore, IL 60178
(815) 895-8585/(815) 895-4070 Fax
nc@cronauerlaw.com
service@cronauerlaw.com

## CERTIFICATE OF SERVICE

Defendants, through their undersigned counsel, electronically served Defendants' Melissa Mobile and BKA Holdings, LLC FRCP 12(b)(1) Motion to Dismiss to all parties of record through the PACER/ECF system.

Dated:  October 14, 2024.

*/s/Nicholas Cronauer*
CRONAUER LAW, LLP
1101 DeKalb Ave Ste 2
Sycamore, IL 60178
Telephone: (815) 895-8585
Email: nc@cronauerlaw.com