

**FILED**
10/20/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MEN

# UNITED STATES DISTRICT COURT

# FOR THE Northern District of Illinois Western Division

**Robert Sam and Karen Sam**,
**Plaintiffs**,

v.

**Melissa Mobile et al**,
**Defendants**.

**Case No. Case No.: 3:23−cv−50301 Honorable Iain D. Johnston**

**PLAINTIFFS' EMERGENCY MOTION TO ENFORCE FEDERAL JURISDICTION AND DISMISS DIRCT CRIMINAL CONTEMPT MOTION FILED IN STATE COURT**

**NOW COMES the Plaintiff, Robert and Karen Sam, representing themselves pro se, and moves this Honorable Court to enforce its jurisdiction over matters related to Plaintiffs' federal case and to dismiss any related contempt motions filed in state court by Defendants or their counsel. In support of this motion, Plaintiffs state as follows:**

## Background :

On October 10th 2024 Robert Sam received very serious evidence regarding Melissa Mobile, Nicholas Cronauer and the Housing authority. Evidence so serious it proves Robert and Karen Sam's entire case very very quickly. Robert Sam filed a motion with this court on October 8th 2024 asking this court to **" PLAINTIFFS' MOTION TO STRIKE DEFENDANTS'RESPONSE DUE TO NON-COMPLIANCE WITH COURT ORDER AND SUPPLEMENT TO PLAINTIFFS' MOTION TO DISQUALIFY ATTORNEY NICHOLAS CRONAUER"**

In this motion Robert Sam tried explaining to the court that the lower court has been bias over and over as well as making inappropriate statements. When Mr. Cronauer and his lawyer Mr. Hannigan found out that I have very detrimental evidence that may expose what they have done to my family, Mr. Hannigan and Mr. Cronauer filed immediate motions. They filed motions with this court at the same time, one motion to dismiss and one motion to strike my motion. Mr. Cronauer then on October 14th 2024, filed two Motions with the lower court. One motion for Direct criminal contempt against Robert Sam and a motion for Direct criminal contempt against Karen Sam. The motion he filed is based on my federal motion to strike filed with this court. On October 18th the lower court moved to hold a hearing on Mr. Cronauers motions

even after Robert Sam explained that this is not the jurisdiction of the court. The lower court also put Karen Sam in a dangerous position. Karen Sam has not filed a appearance in the lower court eviction matter because the federal bankruptcy court re opened her bankruptcy filing for potential discharge violations by Melisa Mobile, BKA holdings and Nicholas Cronauer. The help desk attorney from the Bankruptcy court advised Karen to refrain from filing a appearance as the court has not ruled if she can even be a defendant in the eviction case. The lower court has now put Karen in a very bad position. The lower court is telling Karen Sam to file a appearance in the eviction matter or she can not defend herself in this motion for criminal contempt matter that is a federal jurisdiction Matter. The lower court is violating federal laws and the rights and federal protections granted to Robert and Karen Sam. On October 18th this court made a ruling on Mr. Sam's motion to strike that was filed on October 8th 2024, nowhere in the ruling did this court make any mention of direct criminal contempt. Direct Criminal contempt had to be addressed immediately after the contempt takes place. If a judge where even to leave to use the washroom that would break the chain and direct criminal contempt can not be issued. For Mr. Cronauer to ask for direct criminal contempt based on a federal motion and ask for the lower court where it was not filed and not read to make a ruling on a penalty that can only be made in the courts presence and immediately as it

happens, is a intentional abuse of power and intestinal disregard for this federal court and its process. Now the state court has scheduled a hearing on this matter for Karen Sam for October 30th at 3pm to answer why she should not be held in direct criminal contempt of her federal motion, filed in federal court. Not one statement made by Robert Sam is a actionable offense of direct or indirect criminal contempt. Nicholas Cronauer is a abuser, he is abusing the federal and state court rules and laws to gain advantage and intimidate and pressure the Sam's again.

## Federal Jurisdiction and the Supremacy Clause:

1. **This case is properly before the federal court**, and any motions or filings made within this case are subject to the jurisdiction of this Court. Actions arising from Plaintiffs' federal court filings fall exclusively under the purview of this Court, and the state court lacks jurisdiction to entertain contempt motions related to federal filings.

2. **The Supremacy Clause of the United States Constitution** grants federal courts the authority to handle matters filed in their jurisdiction, without interference from state courts. In **Aetna Life Insurance Co. v. Haworth, 300 U.S. 227 (1937), ( Case information found on Justia US Supreme Court center) and ( Casetext)** the Supreme Court

established that federal courts hold exclusive jurisdiction over matters arising within their proceedings. Thus, any attempts by the state court to impose contempt for actions taken in federal court are overstepping jurisdictional boundaries.

## 2. Attempted Harassment and Abuse of the Court System

3. Defendants' counsel has filed a motion for direct criminal contempt in **state court**, based on Plaintiffs' statements made in a federal court filing. This attempt to seek contempt charges in a **separate jurisdiction** is a clear abuse of the court system, designed to harass Plaintiffs and retaliate against them for exercising their legal rights in federal court.

4. **Plaintiffs have experienced ongoing harassment** from Defendants' counsel, which includes:

   ◦ Taking advantage of the fact that Plaintiffs are unrepresented and fighting multiple legal battles simultaneously, creating an uneven playing field in which the attorney seeks to overwhelm and intimidate Plaintiffs. For this reason this is why it is almost a must that we have a attorney to help us.

   ◦ **Nicholas Cronauer has abused the court syestem and harassed the Sam's,** such as filing

multiple baseless motions, making unfounded allegations, or attempting to intimidate Plaintiffs through aggressive legal tactics. Croanuer has sued Mr. Sam for 50k saying he is acting as a lawyer, allowed him and his client to use self help eviction techniques to force the Sam's to have to move and in doing so have jeopardized there life. BKA holdings has now filed 5 motions to jail Mr. Sam with the state court, all have been denied except now this new and current Morin for direct criminal contempt. Mr. Cronauer is a lawyer and is suppose to know better, he is to know and understand the law, by his side stepping this court to bring a motion in the Dekalb court where he is favored by freinds and family, this is a abuse of power.

- **Bankruptcy violation**, Mr. Cronauer a licensed lawyer who on his website admits do handling federal cases aggressively. But knowing the federal laws he would know not to violate a bankruptcy discharge. That is exactly what he has done, he filed a eviction against Mrs. Sam dating back pre dating her bankruptcy discharge. Judge Lynch has since re opened the bankruptcy case for potential sanctions and violations of the bankruptcy injunction.
  - **Violation of the cares act.** Mr. Cronauer has violated the 30 day cares act, a federal

law in place to protect people. This violation was already proven as the lower court dismissed the last eviction for violation of the cares act and not affording the Sam's a 30 day notice.

- **Conflict of interest:** Mr Cronauer had a ethical obligation to inform the courts of any conflicts of interest. Mr. Cronauer never disclosed that a prior partner Mr. Brett Brown, also a relative of Melissa Brown Mobile was also the director of the Dekalb housing authority.

- Defendants' counsel has repeatedly sought to pressure and intimidate Plaintiffs through these baseless legal actions, misusing the court system in an effort to exhaust Plaintiffs' resources and undermine their defense in both state and federal courts. By exploiting Plaintiffs' unrepresented status and the complexity of the ongoing legal battles, Defendants' counsel has created a significant power imbalance, further demonstrating the need for this Court to assert its jurisdiction and protect Plaintiffs from harassment. At this point we also need to inform the ARDC of all these actions brought by Mr. Cronauer.

# 3. Plaintiffs' Right to Free Speech Under the First Amendment

6. **Plaintiffs have a constitutionally protected right to free speech under the First Amendment**, including the right to criticize the court and its proceedings. Plaintiffs' statements regarding perceived bias or unfair treatment by the state court do not constitute contempt but are protected expressions of opinion. It is no secret that the Dekalb county court house and some of its judges had engaged in unethical and bias and prejudicial behavior. The appeals court itself states that the lower court was highly prejudicial to the Sam's. The Dekalb county sheriff found himself that one of its judges wrongly personally intervened in the last eviction to help attorney Riley Oncken gain a advantage. Mr. Cronauer constantly files motions and asks for all his cases to be in front of Dekalb judges. His and his families prior relationships with current on the bench judges may have gained him favorable outcomes and it is no surprise he is useing this same relationships in this motion for direct criminal contempt of a federal filed motion. Only a unethical lawyer and judge would allow the federal laws to be trampled and stepped on. No honest and ethical lawyer or judge would have brought such a action in a state court and no ethical judge would allow it to move on to a hearing. The

judge should have stopped this at the front door not entertained it. Mr. Cronauer is useing the lower court as a weapon to silence the Sam's and that is not only unethical but a very dangerous abuse of powers.

7. In **Madsen v. Women's Health Center, Inc., 512 U.S. 753 (1994),(Information and case law found on Justia). ( Matal v Tam) (Bantam books v Sullivan) (City of Ladue v. Gilleo (1994)) (these cases I found through Google and are not hallucinations)** the Supreme Court addressed the balance between free speech rights and court authority, affirming that criticisms of the court should not lead to contempt sanctions if they do not disrupt court proceedings. Therefore, Plaintiffs' criticisms regarding perceived bias in the state court are constitutionally protected and should not serve as grounds for any contempt motion. But by Mr. Cronauer'S own admission he is now violating another federal amendment by trying to silence free speech.

## 4. The State Court Lacks Jurisdiction Over Federal Proceedings and subject matter Jurisdiction.

8. **The contempt motion filed by Defendants' counsel in state court** seeks to punish Plaintiffs for statements made within a federal case, an action

clearly outside the jurisdiction of the state court. The federal court is the only court with the authority to address matters arising from filings made within its own proceedings.

9. Allowing the state court to entertain this contempt motion would set a dangerous precedent, whereby **state courts could penalize individuals for legal actions taken within federal court**, undermining the independence and authority of the federal judiciary. This principle is supported by the ruling in **Klein v. State of Illinois, 17 F.3d 489 (7th Cir. 1994)**, which established that state courts cannot infringe upon the authority of federal courts.(Princess Lida v. Thompson) this case is almost exact in what the defendant is trying to do here. Also ( **moody v net choice )** these are just a few cases that layout the laws on states trying to over reach on federal jurisdiction and they can't.

## 6. The Need for Legal Representation

10. Plaintiffs have been forced to navigate the complexities of this legal battle without the benefit of legal counsel, which has significantly hindered their ability to effectively defend their rights and interests. The ongoing harassment from Defendants' counsel has been exacerbated by this lack of representation, as they exploit Plaintiffs' vulnerability in the legal

system. Because one or two lawyers did not work out for plaintiffs, punishing them for issues that arose is not a fair reason to deprive them of council.

11. The intricacies of the federal and state court systems, combined with the aggressive tactics employed by Defendants' counsel, underscore the critical need for legal representation. Plaintiffs believe that with proper counsel, they would be better positioned to protect their rights, respond to motions appropriately, and challenge the harassment they have faced.

12. The importance of legal representation is further demonstrated by the challenges Plaintiffs have encountered in understanding the procedures, deadlines, and nuances of both federal and state laws, which has been overwhelming and has led to significant emotional distress. Having legal representation Is not a privilege it's a human right, like having water or housing. People should be able to defend themselves properly not just if they have money, otherwise the criminal courts syestem should not be assigning public defenders to indigent people. Being in a civil proceeding should be looked at no differently. Defense is defense and and protection under laws and rights is the same in criminal court as it is in civil courts. Because of fraud and unethical behaviors like Mr. Cronauer, people like the Sams

could now face criminal issues because of no attorney protections.

13. Robert Sam tried calling witnesses in the eviction case in his motion to dismiss, he filed all the proper forms and the witness appeared in court. As Mr. Sam was ready to call them Judge Konnen and the court granted Nicholas Cronauer his motions to squash the subpoenas. This plaintiffs believe Was done to sheild the defendants from making statements that could be used in this court. At no time did the lower court halt this case do to the fact motions where waiting to be heard in the BK matter that pertained to Karen Sam and would have major issues with the eviction matter.

14. The eviction case was set and scheduled for a 12 person jury trial for October 15th 2024. The lower court made numerous statements in court that even though Karen Sam has open matters that will impact this eviction case in BK court, this eviction can still move forward.

15. October 2024 the lower court now cancels the trial even after another statement that this case can move forward while Karen's Bk matter is being heard. The lower court cancels the trial and informs defendants that if the BK court finds that they violated the bankruptcy injunction they may have problems with there eviction case in the lower court.

16. The very next day defendants list the property for sale and the first listing expressed it's a great opportunity for a investor as there is guaranteed housing vouchers rent from the housing authority. When the defendants realized it proves they have been paid there rent every month they re wrote the listing changing there admission to great oppurtunity for investor long term tenant comes with property. They then changed it a 3 rd time all within 24 hours and this time went from over 200k to 184k and dropped it 24k to get it sold quickly before the November 27th court date. Now even though the eviction case will have to be dismissed under law as the landlord would have no legal ownership and no right to evict. It hurts the Sams because they where striped of there right to prove there case and now have to live in limbo and face not only a potentially new eviction but something worse. As it is the landlord has a HAP contract with the housing authority and the housing authority has a obligation to port the Sams at there request. If the unit sells the new landlord has no obligation to port the Sam's as they have no standing contract with the housing authority and only a month to month lease. Now, hopefully the defendants made the new potential owners aware of all the code violations but if the new owners don't port the Sam's Then this would be again reckless endangerment not only again by all the

defendants but also the new owners. Mr. And Mrs Sam have the smoking gun, the evidence that not only proves there claims but opens the door on how many others these people and agency's may have abused other voucher recipients.

## 5. Request for Relief

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

1. **Enforce its jurisdiction** over this matter and issue an order preventing the state court from proceeding with the contempt motion filed by Defendants' counsel;
2. **Dismiss** or **quash** the state court contempt motion, as it is outside the jurisdiction of the state court and relates solely to matters within federal jurisdiction;
3. **Affirm Plaintiffs' First Amendment rights**, recognizing that their statements regarding perceived bias in the state court are constitutionally protected and do not constitute contempt of any form.
4. Provide any further relief that this Court deems appropriate.
5. Finally reprimand Mr. Nicholas Cronauer for his abuse of power, harassment and abuse of judicial system with holding him in contempt of this court and sanctions.

Respectfully submitted,

**Robert Sam and Karen Sam**
Pro Se Litigant

# 10/20/24

**IN THE CIRCUIT COURT OF THE TWENTY-THIRD JUDICIAL CIRCUIT
DEKALB COUNTY, ILLINOIS**

BKA HOLDINGS, LLC, an Illinois Limited
Liability Company,

Plaintiff,

v.

ROBERT SAM and KAREN SAM, &
Unknown Occupants

Defendants.

Case No. 2024 EV 136

---

**MOTION TO HOLD DEFENDANT KAREN SAM IN DIRECT CRIMINAL
CONTEMPT OF COURT FOR DEROGATING THIS COURT'S AUTHORITY**

NOW COMES the Plaintiff, by and through its undersigned attorney, and respectfully moves this Honorable Court to Defendant Karen Sam in direct criminal contempt of court for making false and derogatory statements regarding this Court and derogating its authority in public filings, and in support thereof states as follows:

**I.      Introduction**

Direct criminal contempt is defined as conduct that embarrasses, hinders, or obstructs the court in its administration of justice or <u>derogates from its authority or dignity</u>, thereby bringing the administration of law into disrepute. *People v. Simac*, 161 Ill. 2d 297, 306, (1994) Defendant Karen Sam has made flagrantly false accusations in public federal court filings that contain false and derogatory statements about this Court, falling squarely within the purview of direct criminal contempt that must be redressed.[1] The circumstances show it serves no legitimate purpose. Karen Sam is to be treated as any other attorney would. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287. Any attorney would be

---

[1]      Robert Sam has made numerous federal filings alleging, generally, corruption in De Kalb County Courts, and has specifically referenced Judge Klein repeatedly. In the October 9, 2024, filing, he also makes false statements about Judge Pedersen.

Page 1 of 6

sanctioned for similar statements. These baseless accusations were made in an attempt to undermine the authority of the court, obstruct the administration of justice, and bring the court into disrepute, clearly impugning its authority under *Minor*. Egregiously, she made the statements despite never having appeared in this Court for this case and without having even reviewed the transcript before making the salacious false statements.

## II. FACTUAL BACKGROUND

On October 9, 2024, Robert and Karen Sam caused to be publicly filed with the Federal Court and its Clerk filings stating that this Court acted with bias against *pro se* litigants, imputing to this Court a statement that *pro se* litigants "are supposed to lose" and further making allegations of irregularities and inconsistencies during proceedings due to "corruption" and "systematic bias." *See* Ex. A, attached hereto. These statements undermine the dignity and integrity of this Court and are baseless. As previously cited, public records are subject to judicial notice. In these filings, Robert and Karen Sam make egregious statements about this court, asserting corruption, bias, unfair treatment, and claiming, falsely that the court stated *pro se* litigants are "supposed to lose," thereby implying intentional bias against him as a *pro se* litigant. He also alleged favoritism. A copy of the transcript from the October 2, 2024, hearing is attached hereto as Exhibit B.

The allegations made by Robert and Karen Sam are not supported by the record. Karen Sam has refused to even appear before this Court to date, yet signed and filed a pleading with false accusations. The transcript of the proceedings held on October 2, 2024, clearly reflects that Judge Konen did not demonstrate any bias or unfair treatment toward *pro se* litigants but exercised restraint and patience to Robert Sam perpetual outburst and interruptions. Specifically, during the proceedings, Judge Konen explicitly stated, in response to Robert Sam continually interrupting the Court the need to "preserve the record" for appellate purposes, for Sam's benefit. *See i.e.,* Ex. B, at p. 16.

Page 2 of 6

Karen Sam has never appeared before the court, and has not even been held in default, yet claims *pro se* bias. Judge Konen also took care to explain legal procedures to Robert Sam, stating: "You don't get to just interject when you have a thought" and "When it's your turn to talk, I will let you say something relevant to the proceedings." *See generally*, Ex. 3, at p. 35. Additionally, Robert and Karen Sam accusing Judge Konen of saying that *pro se* litigants are "supposed to lose," the Judge said nothing remotely to that effect. The court responded to Robert Sam's interruption about "it only works when *pro se* loses" by explaining that *pro se* litigants often struggle with procedure, stating: "The reason that usually is because a *pro se* litigant doesn't understand procedure" (Ex. B, at p. 34). Finally, there was no favoritism, at one point the Court told Robert Sam she did not disagree with Sam about issues with the 30 day notice (Ex. B, at 29) and repeatedly question undersigned to explain himself regarding the notice intent, until it was pointed out the 30 day notice is a notice to quit the premises for breach of numerous lease terms, including not payment of rent. Ex. B, at 33, 35, 39.

The actual record shows that this Court was fair and patient, explaining legal processes and maintaining courtroom decorum for Robert and Karen Sam's benefit and keeping calm despite being interrupted repeatedly. At no point did the Court suggest that *pro se* litigants are meant to lose, as Robert and Karen Sam falsely claims in a public filing. Notably Robert and Karen Sam did not file the transcript with his pleading, which thye can obtain for free, permitting an accurate, objective, review of the statements. He did not do this because he willfully imputed false statements to this court.

### III.  Law

Direct criminal contempt is defined as willful conduct that occurs either in the presence of the judge or within an integral part of the court, and that embarrasses, hinders, or obstructs the court's administration of justice, or derogates from its authority or dignity, thereby bringing the administration of law into disrepute. See *People v. Simac*, 161 Ill. 2d 297, 306, (1994); *People v. Minor*, 281 Ill. App. 3d 568, 573, (1996)), filing documents with the clerk constitute direct criminal

Page 3 of 6

contempt despite the conduct occurs outside the physical presence of the judge. *People v. Minor*, 281 Ill. App. 3d 568, 573 (1996)).

### IV. Analysis

The filing of public documents with a Clerk of the Court that contain false and derogatory statements about this Court falls within the realm of direct criminal contempt. *Id.* In *Minor*, direct contempt against a *pro se* Defendant was affirmed because it was reasonable to punish *pro se* contemner for filing documents containing false statements about the court. The *pro se Minor* defendant filed a false affidavit with the court clerk, which contained deliberately false statements and accused the court of bias. *Minor* held that even though the filing occurred outside the judge's presence, it was within the court's integral processes and disrupted the administration of justice so direct contempt applied. Here, similarly, Sams' public filing with false accusations of *pro se* bias and corruption against Judge Konen were made in documents publicly filed with the federal clerk and federal court. The filing of these documents falsely accused Judge Konen of making prejudicial statements and being corrupt and bias, which not only misrepresents the court's proceedings but also attempts to damage the credibility of the judicial system. As in *Minor*, Robert and Karen Sam's conduct takes place within the court's integral function (filing with a clerk) and seeks to manipulate the perception of the judge's impartiality publicly, thereby hindering the court's ability to carry out its duties fairly and clearly derogating its authority. Just as the *pro se* defendant in *Minor* was held in direct contempt for filing false documents, Robert and Karen Sam's act of filing false statements about this court also meets the threshold for direct contempt for filing false statements about the Court. The content of their filings misrepresents the factual record, as Judge Konen's statements during the proceedings, as shown in the transcript, do not support Sams' claims, at all. Here, the false *pro se* statements made by the Sams, like the *pro se* statements in *Minor*, obstruct the court's ability to function with integrity and fairness and without a doubt derogates its authority. His false public accusations are now engrained in the public record, affect the court's

Page 4 of 6

reputation to others reading his filings, and inhibit administration of justice by falsely portraying the court as biased and corrupt. There is no way for the court to defend itself nor intervene to correct the blatant falsehood, requiring direct contempt. *See Mata*, 2023 U.S. Dist. LEXIS 108263, *2 (S.D. NY, 2023) ("sanctioning a party where its conduct creates potential harm to the reputation of judges and courts and to its reputation because it, *inter alia*, promotes cynicism about the legal profession and the American judicial system.). Thus, under *Minor*, the act of filing false statements *pro se* about the court's conduct constitutes direct criminal contempt because it is a willful act aimed at obstructing justice and damaging the court's credibility and derogating its authority, even if though outside the judge's immediate presence.

The willfulness of Defendant's actions is demonstrated by the fact that these accusations were made in writing, filed with a public court attempting to influence a federal judge to act, and aimed purely at discrediting this court in another matter. It served no productive purpose other than an *ad hominin* attack to this Court's authority and integrity in an attempt to garner sympathy and urge the federal court to intervene in her favor. Robert Sam as stated many times he believes he has a "long leash" with the Federal Court, which is why they have no fear to make false statements their. *See* Ex. C, D. The only conclusion then from the circumstances is that Sams' conduct was clearly intended to embarrass and obstruct the court given his perception. *See People v. Simac*, 161 Ill. 2d 297 (1994)). Given the circumstances of the federal case and his perception, her false allegations had no relevance nor significance to the Federal Court, she simply wanted to file and make public false accusations about the Court that it cannot correct, that will now be preserved in the public realm for eternity and nationally searchable. The intent to derogate this court's authority has no reasonable contrary conclusion. Her false statements, made in official court filings, were clearly designed to disparage this Court falsely, despite knowing there is absolutely no factual basis for his statements. Again, she had this pleading filed despite never appearing and this Court denying, twice, summary judgment against

Page 5 of 6

her even though she has never appeared. This Court has been more than lenient with the Sams despite the fact they are to be treated as any lawyer would.

The Court has the authority under *Minor* to summarily find Defendant Karen Sam in direct criminal contempt because all elements of the offense are within the integral process of the Court, giving the public filings, meaning the contemptuous conduct occurred within the court's proceedings. *See Simac*, 161 Ill. 2d at 306. Contrary to Sams' perception, a *pro se* litigant, she is treated the same as any other lawyer practicing before it, *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, and no lawyer with a license would get away with such willful flagrant false disregard of this Court's authority. Robert and Karen Sam cannot either, but the perception created in their mind is she gets a long leash to do what she pleases and will not be held to the same standard as any lawyer would. This perception has to be tempered and not condoned. Karen Sam is not special but on equal footing with her filings.

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court:

1. Find Defendant Karen Sam in direct criminal contempt of court for filing false and derogatory statements regarding this Court;

2. Impose appropriate sanctions to vindicate the dignity and authority of this Court and to deter future contemptuous conduct;

3. Grant such further relief as this Court deems just and proper.

Respectfully Submitted,

*/s/ C. Nicholas Cronauer*

CRONAUER LAW, **LLP**
1101 DeKalb Avenue, Suite 2
Sycamore, Illinois 60178
nc@cronauerlaw.com
(815) 895-8585
F(815) 895-4070
NC@CronauerLaw.com

Page 6 of 6

**IN THE CIRCUIT COURT OF THE TWENTY-THIRD JUDICIAL CIRCUIT
DEKALB COUNTY, ILLINOIS**

BKA HOLDINGS, LLC )
)
)
Plaintiff, )
) Case No. 24 EV 136
v. )
)
)
ROBERT and KAREN SAM )
)
Defendant. )
)

---

## **Coversheet**

- Exhibit A-D

C. Nicholas Cronauer
CRONAUER LAW, LLP
1101 DeKalb Avenue, Suite 2
Sycamore, IL 60178
T 815-895-8585/ F 815-895-4070
Nc@CronauerLaw.com
Service@CronauerLaw.com

BC

FILED

10/8/2024 MEN

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

## Case No.: 3:23-cv-50301

**ROBERT SAM AND KAREN SAM, et al.,**
Plaintiffs,

v.

**MOBILE, et al.,**
Defendants.

## PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' RESPONSE DUE TO NON-COMPLIANCE WITH COURT ORDER AND SUPPLEMENT TO PLAINTIFFS' MOTION TO DISQUALIFY ATTORNEY NICHOLAS CRONAUER

## INTRODUCTION

Plaintiffs, Robert Sam and Karen Sam et al., respectfully submit this Motion to Strike Defendants' response to Plaintiffs' Motion to Disqualify Attorney Nicholas Cronauer for exceeding the page limit set by the Court's order. The 5 page response by defendant has already been submitted. Plaintiffs further submit this supplement to the Motion to Disqualify Attorney Cronauer, detailing the procedural irregularities and bias encountered in previous rulings related to this matter.

## BACKGROUND

EXHIBIT

A

this Court granted Defendants leave to respond to Plaintiffs' Motion to Disqualify Attorney Nicholas Cronauer, specifically limiting the response to no more than five (5) pages. Despite this, Defendants attorney filed a response spanning twelve (12) pages, in direct violation of the Court's clear and unambiguous order.

Additionally, Plaintiffs' Motion to Disqualify Attorney Cronauer has faced several procedural challenges. Despite Plaintiffs bringing forth serious allegations and new evidence, the motion has not been dismissed on multiple occasions:

1. **First Dismissal:** The Appeals Court dismissed the motion without a hearing and without considering any of the new evidence presented by Plaintiffs.

2. **Second Dismissal:** Judge Peterson admitted on the record that he did not have access to critical emails submitted by Plaintiffs, and therefore could not make a ruling on the matter.

3. **Third Dismissal:** Most recently, Judge Konnen dismissed the motion after making a troubling statement during the proceedings. When Plaintiff Robert Sam pointed out that pro se litigants are suppose to lose, Judge Konnen affirmed this by stating "that is correct".   This admission confirms Plaintiffs' longstanding concern of bias against pro se litigants in DeKalb County.

Plaintiffs have faced <mark>systemic bias in DeKalb County, which Plaintiffs believe has unfairly favored Attorney Cronauer.</mark> Despite overwhelming evidence of misconduct, including actions by Attorney Cronauer that go beyond his professional duties and harm Plaintiffs' family, the court has continued to side with him. This attorney has repeatedly acted in ways that have caused direct harm to Plaintiffs, going beyond legal representation and intentionally undermining Plaintiffs' position.

If the Court requires transcripts of these proceedings to verify Judge Konnen's statements, Plaintiffs are prepared to provide them. Judge Konnen even went back on statements she made in the Sam's favor and when questioned my Robert Sam on why she made them she said " I don't know why I said that". <mark>The Sam's are bleeding out and no one is stoping this corruption and illegal acts by the defendants.</mark>

## ARGUMENT

### I. The Court Should Strike Defendants' Response for Failing to Comply with the Court's Page Limit Order

The Court explicitly limited Defendants' response to five pages. Defendants, however, submitted a response that is more than twice that length, totaling twelve pages. This is a clear violation of the Court's directive, and courts have routinely held that such procedural non-compliance warrants striking the non-conforming document.

Allowing Defendants to submit a response that exceeds the page limit undermines the fairness of these proceedings, as it places an undue burden on Plaintiffs and disregards the procedural rules established by this Court. Plaintiffs respectfully request that the Court strike Defendants' response in its entirety or disregard all arguments and information beyond the fifth page.

## II. Attorney Cronauer's Continued Representation is Prejudicial to Plaintiffs and Undermines the Integrity of These Proceedings

Plaintiffs reiterate their serious concerns regarding Attorney Cronauer's conduct, which has gone beyond the professional duties of legal counsel. Attorney Cronauer has taken steps to intentionally harm Plaintiffs' family, outside the scope of legal advocacy. His continued involvement in this case is prejudicial and undermines the integrity of these proceedings. Judge Thomas Lynch has re opened Karen Sam's BK due to the Violations by Nicholas Cronauer and his client. Cronauer client counts on him to know the laws and what to file. The violation of Karen's BK could not have been known by Cronauers client so Nicholas Cronauer should have known better but he did not care because him and his lawyer Hannigan never thought he would get caught.

Furthermore, the admissions made by Judge Konnen reinforce the systemic bias that pro se litigants, including

Plaintiffs, face in DeKalb County. Judge Konnen's statement that "pro se is supposed to lose" directly confirms Plaintiffs' belief that they are not being afforded a fair and impartial opportunity to present their case. Such a biased environment should not allow for the continued involvement of an attorney whose conduct has already raised serious ethical concerns.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court:

1. **Strike Defendants' response** to Plaintiffs' Motion to Disqualify Attorney Nicholas Cronauer due to non-compliance with the Court's page limit, or in the alternative, disregard any portion of Defendants' response that exceeds five pages;

2. **Grant Plaintiffs' Motion to Disqualify Attorney Cronauer** based on his misconduct and the prejudicial environment of DeKalb County; and

3. **Provide any other relief the Court deems just and proper.**

Respectfully submitted,

/s/ Robert Sam and Karen Sam
Robert Sam and Karen Sam

Plaintiff Pro Se

10/8/24

1

IN THE CIRCUIT COURT OF THE 23RD JUDICIAL CIRCUIT

DEKALB COUNTY, ILLINOIS

BKA HOLDINGS, LLC, an          )
Illinois Limited               )
Liability Company,             )
                               )
Plaintiff,                     )   CASE NO. 24 EV 136
                               )
vs.                            )
                               )
ROBERT SAM and KAREN SAM,      )
                               )
Defendants.                    )

REPORT OF PROCEEDINGS of the hearing before THE HONORABLE JUDGE JILL KONEN, on the 2nd of October, 2024.

APPEARANCES:

MR. NICHOLAS CRONAUER,
for the plaintiff.

Defendant Robert Sam.

SANDRA FOORD, CSR 084-003025
Official Court Reporter
DeKalb County Courthouse

EXHIBIT

B

2

(The following proceedings were had in open court.)

MR. CRONAUER:  Good afternoon, Your Honor. Nicholas Cronauer for the plaintiff.

THE COURT:  Mr. Sam is here on his own behalf.

A couple things we have today.  One, we're set for final jury status.  Two, we have a hearing on the motion to dismiss.  I also want to address the motion to quash plaintiff's Supreme Court Rule 237(b) notice to produce.  We also have a motion in limine that was filed by Mr. Sam.

And then I want to point out, again, that, Mr. Sam, I see that you filed motions for your 237(b).

DEFENDANT R. SAM:  Yes.

THE COURT:  Are there any other motions that are pending that we need to address today?

DEFENDANT R. SAM:  There is one thing that needs to be addressed.

THE COURT:  Yes.

DEFENDANT R. SAM:  Is today Judge Lynch re-opened Karen's bankruptcy case.

THE COURT:  Okay.  Well, we'll get to that --

DEFENDANT R. SAM:  Oh, okay.

THE COURT:  -- but --

DEFENDANT R. SAM:  No, nothing else that I filed.

THE COURT:  -- nothing else is pending.

DEFENDANT R. SAM:  I don't think so, no.

MR. CRONAUER:  I saw he filed something September 27.

THE COURT:  That was the -- I think it was a reply and an argument.

DEFENDANT R. SAM:  I sent that to them.

THE COURT:  Yes.  That's the summary argument against plaintiff's motion in limine.

DEFENDANT R. SAM:  Mmm.

THE COURT:  Did you receive a copy of that?

MR. CRONAUER:  I probably did, Your Honor.

THE COURT:  Okay.  And I think -- let's -- Mr. Sam, do you want to start with the bankruptcy issue?

DEFENDANT R. SAM:  Well, I mean, she's under the jurisdiction of the Federal Court.

THE COURT:  Well, let me ask you this.  Let's address this issue of Karen --

DEFENDANT R. SAM:  Okay.

THE COURT: -- Sam, because I know one of the issues -- there's a lot going on here.

DEFENDANT R. SAM: Yeah.

THE COURT: What part of the purpose of today is when we have a jury trial, it's not going to be like this. I mean, it's not going to be a free flow of conversation or a free flow of questions by me. When we have a jury that comes in, court rules are going to be followed, court procedure is going to be followed, which is why we have an appearance like today so we make sure what everybody is expecting and what's going to happen.

I am inclined -- well, I will hold that till the end.

So first and foremost, we have the 237(b) motions filed by Mr. Sam. You have one to Melissa Mobile, and then all the others are to people who are not parties. A 237(b) is for a party.

DEFENDANT R. SAM: Okay.

THE COURT: The rule specifically states that it is, "The appearance at the trial or other evidentiary hearing of a party or a person who at the time of trial or other evidentiary hearing is an officer", da da da da da, "may be required by

serving the party with a notice designating the person who is required to appear and whether the person shall appear in person or remotely, including" instructions. And then, "The notice also may require the production at the trial or other evidentiary hearing of the originals of those documents or tangible things" -- and this is the key part -- "previously produced during discovery".

So by listing a whole bunch of documents that you are wanting Ms. Mobile to bring, has there been any discovery in this matter?

DEFENDANT R. SAM: No.

MR. CRONAUER: No, Your Honor.

THE COURT: Okay. So for purposes of both parties' Rule 237(b), anything that wasn't previously produced during discovery is not going to be subject to the Rule 237.

So the documents that you have asked Mr. -- and when I say you, Mr. Cronauer, have asked Mr. Sam to produce when he -- or actually you sent it to Karen Sam, if there's been no discovery, there's no documents to bring pursuant to a 237(b), so that's going to be one thing that I'm going to order.

DEFENDANT R. SAM: Can I ask a question?

THE COURT: You can. And then with respect to the Rule 237 -- okay. What's your question?

DEFENDANT R. SAM: I've been asking for the bank statements for -- since this started.

THE COURT: I understand that you've been asking for them.

DEFENDANT R. SAM: Mmm.

THE COURT: Tell me the methods by which you've been asking.

DEFENDANT R. SAM: So when it first was sent to Judge Pedersen, I had attached that we need to have copies of Melissa Mobile and BKA Holdings' bank statements. Nothing was said about it.

THE COURT: Okay. But you filed something in court asking for that?

DEFENDANT R. SAM: I believe -- I filed so many things, Judge. I believe I did. Maybe I didn't.

THE COURT: No. Well --

DEFENDANT R. SAM: I believe I may have.

THE COURT: That's when I say discovery is not --

DEFENDANT R. SAM: Okay.

THE COURT: -- filed in the court file, so there's a way to properly request documents.

DEFENDANT R. SAM: Then I did it wrong.

THE COURT: And it doesn't appear -- because I shouldn't be privy to discovery. I --

DEFENDANT R. SAM: Then I did it wrong.

THE COURT: Okay. So that might be why you --

DEFENDANT R. SAM: Okay.

THE COURT: -- haven't received the documents that you have been hoping to get.

DEFENDANT R. SAM: Got it.

THE COURT: Okay. Any other questions?

DEFENDANT R. SAM: No.

THE COURT: Okay. That addresses the Rule 237(b) motions.

So then that leads us to the motion to dismiss, and are both sides ready to proceed --

DEFENDANT R. SAM: Yes.

THE COURT: -- on the motion to dismiss?

MR. CRONAUER: Yes, Your Honor.

THE COURT: Okay. Other than what you've already written, Mr. Sam, it's your motion, so I'm going to let you go first. Do you have any witnesses?

DEFENDANT R. SAM: Well, I probably did that wrong, too, and that's -- I've asked for that, but I've obviously asked the wrong way.

THE COURT: Well, let me ask how you've asked for that. What have you asked and --

DEFENDANT R. SAM: If you -- I don't know if you remember, but the last time I filed I think those exact same things and they were quashed as far as being able to have the witnesses here.

THE COURT: Okay. You had subpoenas issued. I saw that.

DEFENDANT R. SAM: Yes, that's correct.

THE COURT: Yes.

DEFENDANT R. SAM: And they were quashed.

THE COURT: What I didn't see is any service on those --

DEFENDANT R. SAM: Okay.

THE COURT: -- subpoenas. Did you just file those subpoenas or did you actually have them sent --

DEFENDANT R. SAM: Oh, no. I hand delivered and then emailed to all of the parties, and I believe they had come that day and it was a rule that they were quashed. That was it.

THE COURT: Well, I don't think they were quashed. I don't think you ever called any witness --

DEFENDANT R. SAM: I did. I called Aaron Lockhart, Melissa Mobile and John Sauter. They all

were here.

THE COURT: Well, you may have subpoenaed them --

DEFENDANT R. SAM: Yeah, subpoenaed them, that's what I meant.

THE COURT: -- and they may have appeared in court, but when we actually had the hearing, no witnesses were ever called to testify.

DEFENDANT R. SAM: Because before we had the hearing -- and I'm not going to say for sure, but I believe you had said no to all of those.

THE COURT: Okay. Any witnesses today?

DEFENDANT R. SAM: No.

THE COURT: Anything other than your written motion that you want to say?

DEFENDANT R. SAM: No. I'm not going to repeat it because it's so lengthy. You got it. The only thing I'm going to add is this.

THE COURT: Okay.

DEFENDANT R. SAM: Because it happened today. So Judge Lynch re-opened Karen's bankruptcy.

THE COURT: Okay.

DEFENDANT R. SAM: So she's under the jurisdiction of the Federal Court now.

THE COURT: And when you say he re-opened it, do

you have a certified order or some sort of --

DEFENDANT R. SAM:  Mr. Cronauer was --

THE COURT:  -- affidavit?

DEFENDANT R. SAM:  Nope.  Karen and Mr. Cronauer were -- and Mr. Cronauer's attorney, because he's a defendant in this as well, were on the call.  It was a Zoom call, and that's the order that Judge Lynch put in for November 20th.  He re-opened it.  They tried to stop it and he asked them, I guess, "Are you standing on your objections?", and Mr. Cronauer's attorney I guess said yes, and he said, "Well, I'm re-opening it", so it's now re-opened, and he set it for November 20th, which I'm guessing is going to be then a hearing on the sanctions for the violation of the bankruptcy.

So you have a defendant that's named in a complaint that we don't even know could be a defendant.  We don't know for how much because there's nothing attached.  They go back to January of 2022, and if you do the math, it would be about 60,000 that we owe, but that's not what they're asking for, and the bank statements would show that all the money has been paid.

So, I mean, to me -- they blocked the vouchers

because they went ahead and said he just owes it.

THE COURT: Okay. Let me -- just stop for a second.

DEFENDANT R. SAM: Okay.

THE COURT: You're saying a lot of blanket things.

DEFENDANT R. SAM: Mmm.

THE COURT: Just because you say them doesn't mean it's true or --

DEFENDANT R. SAM: Oh, I agree.

THE COURT: -- that it's evidence.

DEFENDANT R. SAM: But I -- I can't --

THE COURT: Let me stop for a second.

DEFENDANT R. SAM: Go ahead.

THE COURT: Mr. Cronauer, what's going on with the bankruptcy that you're aware of?

MR. CRONAUER: Correct. Thank you, Judge. So we had a hearing this morning. Judge Lynch did agree to re-open it for Karen Sam, but the automatic stay does not go in effect on a re-opening. He has to re-order it. He was asked. That issue is not before him, so he did re-open it for a status in 45 days to give them the chance to talk to an attorney or see if there's going to be a hearing.

DEFENDANT R. SAM:  That's actually not what happened.

MR. CRONAUER:  That's the --

THE COURT:  Let him --

DEFENDANT R. SAM:  Okay.

THE COURT:  Just let him -- let --

DEFENDANT R. SAM:  Okay.

THE COURT:  And again, for the purposes --

DEFENDANT R. SAM:  Sure.

THE COURT:  -- of the record.

DEFENDANT R. SAM:  No problem.

THE COURT:  You're the one that is going to want the record.

DEFENDANT R. SAM:  Got it, yes.

THE COURT:  Or Mr. Cronauer is going to want the record.  Somebody --

DEFENDANT R. SAM:  Sure.

THE COURT:  -- may want a record in here.

DEFENDANT R. SAM:  That's fine.

THE COURT:  As I said last time, the court reporter can't take down two people at once.

DEFENDANT R. SAM:  I understand.

THE COURT:  Go ahead, Mr. Cronauer.

MR. CRONAUER:  Thank you.  So the bankruptcy was

re-opened, but that has no bearing on the automatic stay at this time.

Now, whether there's any other motions filed, which Judge Lynch barred any other motions without leave of Court, is to be determined, but the Bankruptcy Court is open, has no bearing in this case because there's not an automatic stay upon re-opening, and I don't think has any bearing given that it's Robert Sam here, not Karen Sam.

THE COURT: Okay.

DEFENDANT R. SAM: Can I go now?

THE COURT: Go ahead.

DEFENDANT R. SAM: That's completely false what he just said.

THE COURT: What --

DEFENDANT R. SAM: So --

THE COURT: What did he say that's false?

DEFENDANT R. SAM: Judge Lynch --

THE COURT: He said --

DEFENDANT R. SAM: -- never said any of that.

THE COURT: Okay. Let me ask you this.

DEFENDANT R. SAM: Okay.

THE COURT: Here's what Mr. Cronauer said. He re-opened it for status 45 days. Is it re-opened

and there's going to be a status --

DEFENDANT R. SAM:  Correct.

THE COURT:  -- in 45 days?  So that part is correct.  What part is not correct?

DEFENDANT R. SAM:  Cronauer asked the judge pointblank, "Is this stay put in effect?", and he went off on him and said, "I'm not the lower court".  That's what he said.  He never said there's no stay in effect.  He never said that at all.  He's putting it on you.

THE COURT:  I'm not a Bankruptcy Court.

DEFENDANT R. SAM:  No kidding.

THE COURT:  And I'm not a --

DEFENDANT R. SAM:  Judge Lynch --

THE COURT:  -- Federal Court.

DEFENDANT R. SAM:  -- told him directly, unless he's denying it, told him that the stay -- that -- what did he tell you exactly?

MR. CRONAUER:  Yeah.

DEFENDANT R. SAM:  Because we can get the transcripts.

MR. CRONAUER:  Yeah.

THE COURT:  Well, I'll ask the questions.

DEFENDANT R. SAM:  Go ahead.

MR. CRONAUER:  He said that issue is not before him, he's not ruling on that.

THE COURT:  Okay.  Did he say the issue is not before him?

DEFENDANT R. SAM:  He said -- no, he didn't say that.  Did he not say --

THE COURT:  What do you believe -- what do you believe he said?

DEFENDANT R. SAM:  Karen told me that he exactly said --

THE COURT:  Were you there?

DEFENDANT R. SAM:  I can't be there.

THE COURT:  Okay.  So I don't want to hear the double hearsay.

DEFENDANT R. SAM:  Okay.

THE COURT:  That's why a certified order would be nice or a transcript or something because --

DEFENDANT R. SAM:  How can we get that when it just happened?

THE COURT:  I can't tell you --

DEFENDANT R. SAM:  Well, then that's fine.

THE COURT:  I --

DEFENDANT R. SAM:  It's fine.

THE COURT:  Okay.

DEFENDANT R. SAM:  I'm expecting this to go to the Appellate Court, so I'm --

THE COURT:  And I understand --

DEFENDANT R. SAM:  -- prepared for that.

THE COURT:  -- that, Mr. Sam.

DEFENDANT R. SAM:  That's fine.

THE COURT:  I do.  I'm really trying to just piece the issues separate --

DEFENDANT R. SAM:  But I'm trying to tell you something.

THE COURT:  Please stop while I'm talking. Again, that record.  I am trying to preserve the record by stopping you from talking.  Mr. Cronauer knows that.  If he interrupts me, I'll stop him from talking.

I just want to be able to isolate the issues so we know going forward, one, what the jury is going to have to listen to and what issues we have but also to preserve that record.  So if you intend, no matter what, that it's going to the Appellate Court, you'll have a clean record for that.

DEFENDANT R. SAM:  Okay.

THE COURT:  So you were not there.  Karen was there.  Is that correct?

DEFENDANT R. SAM:  Correct.

THE COURT:  Okay.  So she was able to appear in Bankruptcy Court.

DEFENDANT R. SAM:  Via Zoom.

THE COURT:  And she's not able to appear via Zoom in this court?

DEFENDANT R. SAM:  Because she never filed an appearance.

THE COURT:  But she was served, and let's -- let's -- you said you wanted to add that to your motion.  Anything else you want to add to your motion?

Is there anything that you would like to add to your response to the motion to dismiss?

MR. CRONAUER:  No, Your Honor.

THE COURT:  Okay.  So what I'm going to do is go straight down your motion.  Okay.

So the motion to dismiss that was filed on September 16th, the first paragraph, "Failure to properly serve all defendants".  Karen Sam was served personally on April 1, 2024.  There's a sworn affidavit in the file.  That is prima facie evidence that she has been served.

She has to date not filed any appearance,

although motions that Mr. Sam has filed or responses include both defendants' names, and I have yet to see a signature of Mrs. Sam, or Karen Sam, because it's always signed by Mr. Sam, although there are typed saying Karen Sam, defendant.

So for purposes of failing to properly serve all defendants, it was personal service, so she was able to do so.

The part in here about abode service, what you put in there is true. I mean, there is a statute that provides that. There is a statute that says you can leave it with somebody over the age of 13 but then you have to follow it up with mail. There wasn't abode service here. There was personal, individual service. That's what has been served on Ms. Sam.

So if we get down then to paragraph 5, because all those other paragraphs pertain to abode service and that's not applicable here -- well, let's go back to Mr. Sam's.

DEFENDANT R. SAM: I was never served.

THE COURT: I'm going to address you as well, because you filed -- Mr. Sam filed an appearance on 4/15/2024. Therefore, you have submitted yourself

to the jurisdiction by filing an appearance and by participating in these court actions and by filing motions. Your appearance brings you before the Court and submits you to the jurisdiction.

DEFENDANT R. SAM: Can I ask a question?

THE COURT: You can ask a question.

DEFENDANT R. SAM: Then why did you in the last hearing say there were service issues. It's in the transcript.

THE COURT: It is in the transcript.

DEFENDANT R. SAM: Right. So what's the service issues then if there isn't any?

THE COURT: I'm not going to --

DEFENDANT R. SAM: Okay.

THE COURT: That I don't -- you know what, here's the answer. I don't know.

DEFENDANT R. SAM: No, that's fine.

THE COURT: I don't know the answer.

DEFENDANT R. SAM: But you said it.

THE COURT: I did say it. I saw the transcript, and I know that I said that.

DEFENDANT R. SAM: This is --

THE COURT: And the issues being that it needed to be sorted out.

DEFENDANT R. SAM:  Okay.

THE COURT:  And it's been sorted out.

DEFENDANT R. SAM:  It's very obvious that -- just award it to them.  Just give it to them.

THE COURT:  I --

DEFENDANT R. SAM:  Because that's all that's happening.  Now you don't even know what you said.

THE COURT:  I'm going to disregard that because --

DEFENDANT R. SAM:  Okay.

THE COURT:  -- that's not the case at all.

DEFENDANT R. SAM:  You just --

THE COURT:  I'm going --

DEFENDANT R. SAM:  -- said it.  You don't know.

THE COURT:  So back to No. 5, the failure to attach required documents.  The lease and the 30-day notices were attached -- they were filed at the same day, which was 3/29/24.  The complaint was filed on 3/29/24.  The lease, the 30-day notice, the affidavit, that was filed on 3/29/24.

It's not required that all proof or all exhibits for a trial be filed.  In fact, the rules prohibit that.  You don't file evidence in a court file.  One, the court file would be so voluminous but, two, just because you attach it doesn't mean it's

evidence. Sometimes things are not admissible. Sometimes things are hearsay. There's a whole reason why all of the proof that they have or they purport to have against you would not be attached.

So with respect to that I find that the eviction complaint is supported by the relevant lease agreement and the 30-day notices.

And so then we come to the violation of the bankruptcy injunction. Possession is not -- I'm not a bankruptcy judge. Possession is not stayed. An eviction case is only possession that can be joined with the damages request, which is what happened in this case.

So the complaint that has been filed on March 29th of 2024 is for possession, for refusing to leave the -- these are allegations. This is not -- I'm not finding these are true. This is just what the complaint says. "They refused to leave the property after their oral or written lease ended", and, "I ended the lease because defendants violated the terms of their lease by refused landlord's entry in breach of lease, paragraph 9".

The allegations of the violation of 735 ILCS 5/9-120, that has been stricken and that is no

longer and hasn't been since Judge Pedersen had the case part of the complaint.

And then also that they have "entered lawfully but have overstayed" and then they're demanding possession of the property and court costs, and then that's when they get into the past-due amount of rent and then attorney's fees, and it tells what's been attached.

So a bankruptcy stay does not stay possession requests.

Also you're a defendant, also, Mr. Sam, so you can be named as a defendant and it's not a violation of the bankruptcy injunction that a landlord would serve a 30-day notice or file an eviction complaint seeking possession of the property.

So then that brings us to -- so that is not something I'm going to grant.

With respect to paragraph 9, then, "Karen Sam's status as a defendant". Your motion, "Karen Sam should not be listed as a defendant in this eviction case while the Bankruptcy Court determines whether the claims against her are legally enforceable".

I don't think that's what the Bankruptcy Court is going to determine whether or not an eviction

complaint can be filed against her.  That's not what a Bankruptcy Court does.

Now, a bankruptcy discharge certainly would affect her liability.  That part I agree with. However, you're a named defendant as well, so they're asking for judgment against you and for possession against both of you.

DEFENDANT R. SAM:  But, Judge --

THE COURT:  And it's up to the Bankruptcy Court to determine whether they've violated the bankruptcy stay.  That's not my realm.

DEFENDANT R. SAM:  But you -- you said yourself in the last hearing that all they've been asking for -- you denied the summary judgment for possession because you said every filing they filed was for money damages.  You said it yourself.

THE COURT:  I said there were factual issues.

DEFENDANT R. SAM:  Right.

THE COURT:  They're factual issues which preclude a summary judgment being entered.

DEFENDANT R. SAM:  Okay.

THE COURT:  And with respect to her status as a defendant, her status as a disabled individual, that does not make her not eligible, if you will, to be a

defendant in a lawsuit.

DEFENDANT R. SAM: But they're asking for money from her that she doesn't owe.

THE COURT: They're asking for possession of the unit.

DEFENDANT R. SAM: That's not what the 30-day notice said. The 30-day notice is asking for money. It says, "You need to be current. You're in arrears". It predates her bankruptcy. It violates her bankruptcy. It's right on the form. You even said so yourself. None of this was about possession. The 30-day notice says you have to cure the back rent. It was not a notice to quit.

THE COURT: Mr. Cronauer, what do you want to say about that?

MR. CRONAUER: About the damages or --

THE COURT: Yes. Well, about the fact that your 30-day notice to quit premises, nonpayment of rent and utilities addressed to both Robert Sam and Karen Sam dated February 27, 2024, and that is -- she was discharged -- and I think we had this last time -- in August of '23.

DEFENDANT R. SAM: Right. And they're predating it. They're asking for money from January of 2022.

It's on the 30-day notice.

THE COURT: The 30-day notice is dated February 27th of '24, and that is several months after the bankruptcy discharge.

DEFENDANT R. SAM: But the amount of money they're asking for predates the bankruptcy. It's from January of 2022. It's right on there.

MR. CRONAUER: Judge, can I --

THE COURT: Yes.

MR. CRONAUER: We put in a court order June 10th stating we are -- we put it in prior motions, we put it in a court order stating we are not seeking any discharge debt against Ms. Sam. We're not going to violate the bankruptcy order.

This notice to quit has Robert Sam -- Robert Sam is jointly and severally liable for the entire amount. That's the amount. It has nothing to do with Karen Sam. We're not seeking any discharge yet against Karen Sam. It's in an order. I've said it. I'll say it again.

DEFENDANT R. SAM: It's in the 30-day notice. It says that if you don't pay the rent, you're going to get evicted. It's what it says.

MR. CRONAUER: It's a 30-day notice to quit.

DEFENDANT R. SAM:  No, it's not a 30-day notice to quit.

THE COURT:  Hold on, hold on, hold on.  It is a 30-day notice and it is asking for back rent.  That's exactly what it is, and for nonpayment of utilities.

DEFENDANT R. SAM:  Right.  Not to quit.  And it's asking it from January of 2022, which predates her bankruptcy.  That's a violation, which is why Judge Lynch re-opened it, that he said he was never going to re-open.  Cronauer knew Lynch wasn't going anywhere with it.  That's what he said.

THE COURT:  Okay.

DEFENDANT R. SAM:  I got the email.  He said this ain't going anywhere.  Well, why did it?

THE COURT:  So what about the February 27, 2024, notice to quit asking for payment of $5,780 to vacate the premises if you do not do so?

DEFENDANT R. SAM:  Not for -- not for3 --

THE COURT:  Hold on.

DEFENDANT R. SAM:  Okay.

THE COURT:  I'm asking him, Mr. Cronauer.

MR. CRONAUER:  Because he still -- I mean, he still owes rent.

DEFENDANT R. SAM: But you said it's not damages.

THE COURT: Hold --

DEFENDANT R. SAM: Okay, sorry.

THE COURT: And let me tell you this.

DEFENDANT R. SAM: I'm sorry.

THE COURT: When he says damages, when we say damages, I know the layperson term of damages is if I hit my computer and it breaks, I'm damaging it. Rent is damages in an eviction case.

DEFENDANT R. SAM: Right.

THE COURT: So we're not talking about physical damage --

DEFENDANT R. SAM: Right, I know.

THE COURT: -- to the unit. We're talking --

DEFENDANT R. SAM: For rent damages. It says that --

THE COURT: It does say that.

DEFENDANT R. SAM: -- if we pay that money, we can stay there. That's what it says.

THE COURT: That's what it says.

DEFENDANT R. SAM: Correct.

THE COURT: So what's your position on that, that order?

MR. CRONAUER: It's a 30-day notice to quit for breach of the lease. The reason we did the 30-day notice is because Judge Klein said it couldn't be a ten-day notice. This is under the CARES Act, and that's why we did it this way.

THE COURT: Okay. Well, that's not a good excuse, "The judge told me". That's -- I highly doubt that Judge Klein would have said this is what exactly you need to do.

DEFENDANT R. SAM: She didn't. She even said that she -- he -- she can't tell him. I stood there, and she said -- he asked her, "Should I file this form?", and she says, "I can't tell you that". She dismissed the case for the violation of the CARES Act.

MR. CRONAUER: Judge, if you --

DEFENDANT R. SAM: And the 30 --

THE COURT: Hold on.

Go ahead, Mr. Cronauer.

MR. CRONAUER: If you pull the 23 EV case, it was dismissed because she said the ten-day notice wasn't sufficient; it had to be a 30-day notice.

DEFENDANT R. SAM: Which is a violation of the CARES Act. It says right in there.

THE COURT: With respect to the June 10, 2024, order it does say that Karen -- as it relates to Karen Sam no damages will be sought for any discharge debt from bankruptcy.

DEFENDANT R. SAM: But that's after they did the 30-day notice after they got caught.

THE COURT: I don't disagree with that.

So what's the position there, Mr. Cronauer?

MR. CRONAUER: About -- about what?

THE COURT: About the order being entered after the fact that you've already filed the -- or served --

DEFENDANT R. SAM: 30-day notice.

THE COURT: -- the 30-day notice.

MR. CRONAUER: Because Robert Sam is liable for the entire amount of debt. It has nothing to do with Karen.

DEFENDANT R. SAM: It doesn't --

THE COURT: Hold on.

DEFENDANT R. SAM: If it has nothing --

THE COURT: Hold on. We're not having just a discussion here. We still have to have some sort of let him talk, then I'll let you talk. I'm going to give you an opportunity to talk. We have all

afternoon.

Go ahead.

MR. CRONAUER: Because Robert Sam is jointly and severally liable for the debt.

THE COURT: Well, I understand that, but you didn't list just his name. You listed Karen Sam as well.

MR. CRONAUER: Right, because there's breach of the lease terms, there's not paying utilities going forward. It's not saying, "Karen Sam, we're going after you for this debt". It's this is what's owed. Robert owes it.

DEFENDANT R. SAM: Who said so?

THE COURT: Well, that's your allegations. I understand that's -- and it's just an allegation.

DEFENDANT R. SAM: Can I say something now?

THE COURT: Hold on.

So it's your position that a letter dated -- or letter addressed to "Robert Sam," comma, "Karen Sam," comma, "and all unknown occupants of 639 Stonegate, Sycamore, Illinois, 60178", is to be interpreted as only pertaining to Robert Sam?

MR. CRONAUER: No. It pertains to both, but as far as the damages, we're not seeking discharge

debt. If you look at the lease, holdover damages their rent doubles, so the amount of money being sought is not the amount of money that was discharged in debt.

DEFENDANT R. SAM: What does that have to do with this?

THE COURT: Okay. You don't --

DEFENDANT R. SAM: I'm trying to sit there, but if I can't say something --

THE COURT: You can say something when it's your turn to say something.

DEFENDANT R. SAM: Okay, all right.

MR. CRONAUER: And I'm unaware of any bankruptcy code requirement that you have to list out separately the different amounts due. And if it's there, you can point me to it, I'm happy to do it, but I'm not aware of you've got to serve different notices on different people. It's a general notice, notice to quit.

DEFENDANT R. SAM: Uh-uh. I'm not going to say anything.

MR. CRONAUER: And let's go to September, right. September 2023, under the holdover clause in the lease, because they were supposed to be out in June

of '22.  Rent is actually $2,500 a month. September, October, November, December, January, you take 2500 times five, that comes to like $15,000.

THE COURT:  Is the amount in your complaint, the $6,228.60 that you're alleging as of the 3/29/24, you do have it listed as the period January 1, 2022, through 3/29/24, that the defendants owe rent for that period.

MR. CRONAUER:  Robert Sam does, correct.

DEFENDANT R. SAM:  It would be 60 grand.

THE COURT:  Where you say that the defendants, and the two defendants are Robert Sam and Karen Sam. Karen's discharge was 8/8/23, but this is asking for rent from 1/1/22.

DEFENDANT R. SAM:  Judge, I gotta say one thing, please.

THE COURT:  It's his -- get a piece of paper. Write down the things you want to say.  That's what people who are in litigation do.  That way you don't forget.

DEFENDANT R. SAM:  Oh.

THE COURT:  But you don't get to just interject when you have a thought.

Go ahead, Mr. Cronauer.  What's the -- why are

you asking for rent for a period of time prior to Karen's discharge with her listed as a defendant?

MR. CRONAUER: Because it's geared towards Robert Sam and we can craft through the litigation process, the law is clear, remedies, actions, whatever, to make sure discharge that's not being pursued or collected.

We don't even have an order showing what damages are. That's the Court's role, an agreement or whatever it may be. It has no bearing on any attempt to collect a debt. It's an attempt to get possession and damages and then we can determine what's collectible, what's not.

THE COURT: Okay. Mr. Sam, what do you say?

DEFENDANT R. SAM: Okay. He keeps on saying this is a holdover. Riley Oncken, which was sitting right here, was Melissa Mobile's attorney. He drafted a agreed order.

THE COURT: I remember the procedure of --

DEFENDANT R. SAM: You said I can speak.

THE COURT: -- the agreed order. You can, but that doesn't mean you can say anything. We don't have to go back to --

DEFENDANT R. SAM: But he keeps calling --

THE COURT:  -- what happened in --

DEFENDANT R. SAM:  -- it a holdover he said because we violated that agreed order.  They violated it.

THE COURT:  He's not saying they violated --

DEFENDANT R. SAM:  He just said it.  Didn't he say -- someone had to hear him say that.

THE COURT:  Okay.

DEFENDANT R. SAM:  Did he say that?

THE COURT:  Stop.  That's not how -- this is not how litigation works.

DEFENDANT R. SAM:  Then it only works where pro se loses.

THE COURT:  Usually, and the reason --

DEFENDANT R. SAM:  Oh, that's good.

THE COURT:  -- and the reason that usually is is because a pro se litigant doesn't understand procedure --

DEFENDANT R. SAM:  I tried getting an attorney --

THE COURT:  -- even after being told --

DEFENDANT R. SAM:  -- a hundred times.

THE COURT:  -- for a half hour how it works.

DEFENDANT R. SAM:  Do you know --

THE COURT:  Stop.  Stop talking.  That's not how

it works.

You don't get to go to church and interrupt your sermon and say, "Hey, this is what I think".  You sit and you listen.  If you want to say something afterwards, you say something afterwards.

When it's your turn to talk, I will let you say something that is relevant to the proceedings.  A lawsuit that has already been dismissed, I understand you want to show me the history, but this is this case.  This is 24 EV 136.  This does not involve the lawsuit where Judge Klein ended up dismissing that matter.

DEFENDANT R. SAM:  Okay.  So they're -- he says that the holdover is because we violated the agreed order.  He just said that to you.  You didn't stop him.

THE COURT:  The violation, what they are alleging, is of the lease.

DEFENDANT R. SAM:  Okay.  They asked -- they asked for the money.  They said if we pay this money, then we can stay -- she renews the month-to-month lease every month she accepts the money.  She's been accepting money every month.

THE COURT:  You say that.  Who is she accepting

the money from?

DEFENDANT R. SAM: The DeKalb County Housing Authority.

THE COURT: Okay.

DEFENDANT R. SAM: It gets wired to her account.

THE COURT: That is not rent.

DEFENDANT R. SAM: Oh, it's not.

THE COURT: According to --

DEFENDANT R. SAM: Okay.

THE COURT: -- the case law, payments from the housing authority is not considered rent.

DEFENDANT R. SAM: Well, that's not what the contract says between Melissa Mobile and myself. The contract from the housing authority says that they've been paying the rent every month. 1950 every month has been getting wired to her account.

THE COURT: From housing authority.

DEFENDANT R. SAM: Correct.

THE COURT: Not from you.

DEFENDANT R. SAM: For our vouchers. We have housing vouchers.

THE COURT: But not from you?

DEFENDANT R. SAM: That's why we have housing vouchers. So now those are irrelevant?

THE COURT: Those are not considered rent.

DEFENDANT R. SAM: Okay. Then we got a big misunderstanding, because this whole time for -- for four years that's what's been being paid is from the housing authority.

THE COURT: I'm not saying she didn't get it. I'm not saying the housing authority didn't pay it. You're the one that's saying the housing authority paid it.

DEFENDANT R. SAM: No. They gave us the spreadsheet. I attached it to everything. You have it.

THE COURT: Correct. That's not considered rent. That is considered a payment from the housing authority to the landlord with the agreement that the landlord has with the housing authority.

DEFENDANT R. SAM: Right.

THE COURT: Okay.

DEFENDANT R. SAM: Okay. Well, that's something. Now you're saying that the housing vouchers that we get are invalid?

THE COURT: I'm saying the housing authority payments directly to the landlord are not considered rent.

DEFENDANT R. SAM: Okay.

THE COURT: Anything that you would pay, your portion of the rent, would be considered rent. So all this time when you have been saying they've been accepting rent, you're talking about the housing authority payments. You have not personally written any payments for your portion.

DEFENDANT R. SAM: No, because that's what they said they paid, is our portion of the rent. I have it in writing.

THE COURT: That they pay your portion of the rent?

DEFENDANT R. SAM: Correct. They pay a hundred percent of the rent. That's what -- I have it in writing. The housing authority said they pay a hundred percent of our rent. They said the word "rent". They used the word "rent".

MR. CRONAUER: Judge, could I --

THE COURT: You can.

MR. CRONAUER: -- go back to this 30-day notice? Nothing in this 30-day notice requests rent to be paid. It says you haven't paid rent. You need to vacate.

THE COURT: "Please understand that the failure

to pay rent, comply with the lease terms and conduct prohibited by 735 ILCS 5/9-120, this violates the terms of your lease dated August 21, 2022. In accordance with the federal CARES Act you are given 30 days' notice to vacate. If you do not vacate, legal proceedings may be initiated for the failure to pay rent". It says right in your letter.

MR. CRONAUER: Correct. But we get possession. It has nothing to do -- they're trying to make it sound like we're asking them to pay rent. We're seeking possession for failure to pay rent, breach of the lease.

DEFENDANT R. SAM: Unbelievable.

THE COURT: All right. I'm going to go on to -- we're going to table that one for a second.

That takes us to your paragraph 12, "Relief sought in eviction cases". This is Mr. Sam. "In an eviction case, the primary relief sought is possession of the property." That's true. That's what the eviction statute says.

And then you go on, "Claims for damages related to the tenancy should be brought separately, typically in a different type of legal action, such as a breach of contract claim or a claim for rent

due".

The claim for rent can be joined to an eviction matter, so that's -- it doesn't have to be a separate action. It could be a separate action, but it doesn't have to be.

And I'm looking at Peoria Housing Authority vs. Sanders. It's a Supreme Court of Illinois case June 25, 1973. "No matters not germane to the distinctive purpose of the proceedings shall be introduced by joinder, counterclaim or otherwise". "However, a claim for rent may be joined in the complaint and judgment obtained for the amount of rent found due."

So there's nothing wrong with them attaching that or joining that.

And then No. 13, "Failure to maintain essential services". That's not a basis for a dismissal. That is a factual matter for trial. That is something that if that's your defense, that's your defense, but that is not for a motion to dismiss.

And then 14, "Actions taken and threats of criminal action". "In response to the plaintiff's failure to maintain essential services, defendants undertook necessary repairs and charged the

plaintiff for the costs. The plaintiff's attorney has since threatened criminal action." Those are all factual allegations that would be put forth at a trial, not in a motion to dismiss that's not -- that doesn't have an affidavit attached.

And then back to the conflict of interest, paragraph 15, "The attorney representing the plaintiff in this eviction", Mr. Cronauer, "is also a defendant in a federal case involving similar issues and is a material witness" which "creates an inherent conflict of interest as the attorney has a vested interest in the outcome of the federal case, which could influence or compromise their representation in this matter".

Mr. Cronauer, what would you like to say about that?

MR. CRONAUER: It has no bearing on this case.

THE COURT: Okay. I agree. The bankruptcy case is separate.

DEFENDANT R. SAM: What about the federal lawsuit?

THE COURT: The federal lawsuit --

DEFENDANT R. SAM: Where he's a defendant.

THE COURT: -- is the federal lawsuit.

DEFENDANT R. SAM:  Okay.

THE COURT:  And then "Illegal harassment by Nicholas Cronauer and intentional harm to the Sam family", and you go through entrapment, you go through collaboration with the State's Attorney's Office, inducement to violate probation, entrapment under federal and state law.

If that's your position -- I'm not saying this doesn't happen.  I'm not saying he's not harassing you, I'm not saying he is harassing you -- this would be something for a separate case.  This is not germane to an eviction case.

"Potential criminal conduct by plaintiff's attorney", and then, again, you go through the definition of harassment and misconduct by an attorney under the professional rules of conduct. It falls under the same one.  If you have an issue with Mr. Cronauer, you would take that up in a different venue or with the ARDC.

"Failure to make repairs and use of self-help." I think we kind of addressed that.  That would be a defense in your criminal -- or in your eviction case, so it's not a basis for a motion to dismiss.

Paragraph 34, "Collusion".  Frankly, I don't

even know what to say about this because it's not germane to an eviction case. You're making allegations against Mr. Cronauer, against Melissa Mobile, against Riley Oncken, against the DeKalb County State's Attorney's Office. I think in somewhere in here you're talking about the attorney Hannigan. You reference Judge Klein. That's not germane to an eviction case, so that's not a basis for dismissing the matter.

I do want to let you know, I read everything you filed. "This plaintiff" -- this is from your motion. "This plaintiff has not showed one shred of evidence that any money is owed, not one dime." That's a true statement because we've not got to trial yet. That's where they prove things like that, at trial. It's just an allegation at this time.

And then it goes on, I want to address another thing that you put in here, that, "For the Court to ask Karen Sam to file a appearance or even recognize her as a defendant when this Court has no evidence that she can even be a defendant in this case, is wrong".

I didn't write the Code of Civil Procedure. I

didn't write the rules.  If she wants to participate in a lawsuit in which she's been named a defendant and she's been personally served, in order for her to participate she has to file an appearance.

DEFENDANT R. SAM:  Even if it violates her bankruptcy?  Okay.

THE COURT:  I'm not saying it does violate her bankruptcy, I'm not saying it doesn't violate her bankruptcy because I'm not the Bankruptcy Court.  I am saying if she wants to participate in this eviction case, she has to file --

DEFENDANT R. SAM:  Okay.

THE COURT:  -- an appearance, but that takes us back to the Bankruptcy Court where I know it's been re-opened.  I don't know anything about the Bankruptcy Court.  You can tell me what you think. Mr. Cronauer can tell me what he thinks.  I don't have a transcript.  I don't have a certified order. I don't even know what motion was filed to get it re-opened.  I don't know what's going on in the Bankruptcy Court.

And I'm not minimizing this because it is a very serious issue, but this is an eviction case.  It's not a conspiracy.  It's an eviction, and the issues

in an eviction case are does the landlord have the right to possession of the unit.  If so, you enter an eviction order.

Then becomes the issue of damages.  You go through why an eviction order would be entered, and if there's damages to be had, there would have to be a hearing on what those damages are.  And damages can include things like rent, unpaid utilities.  It could also mean physical damage to the unit, but that's not what I -- that's not being alleged at this point.

Is it?  I don't think it is.  I haven't seen that.

MR. CRONAUER:  Not yet, Your Honor.  He's still living there.

THE COURT:  But here's what jumped out at me what you wrote, and this what I would like to see. Mr. Sam indicated in his -- I think it was his reply that he did just file, and I'm looking at -- there's no page numbers but it's under paragraph 4, "Defendants' arguments are properly grounded in law", and this is what hopefully both of you will try to resolve and work towards, and this is a quote from Mr. Sam's filing.  "This Court to make everyone

happy could order the housing authority to port us out. It takes 90 days and we will be moved and the plaintiffs get their property."

So, Mr. Sam, it's your position that I can order the housing authority what to do?

DEFENDANT R. SAM: I don't know what your position is. I'm just telling you --

THE COURT: No. I'm asking you what your position is. You think that a --

DEFENDANT R. SAM: We tried getting out of here two years ago. We never wanted to stay here.

THE COURT: Okay. And I certainly understand.

DEFENDANT R. SAM: Okay. But you know how you said that they are -- these things that they say are allegations?

THE COURT: Yes.

DEFENDANT R. SAM: You said that. Okay. Well, those allegations were good enough for the housing authority to not port us, so nothing has been proven but the housing authority said, "Well, your landlord and her attorney said you're in bad standing" --

THE COURT: Okay.

DEFENDANT R. SAM: -- "so that's good enough".

THE COURT: So let me ask you this. Did they

say that to you on the phone?  Did they give you something in writing?

DEFENDANT R. SAM:  Emails.

THE COURT:  Do you have those emails?

DEFENDANT R. SAM:  I don't have them in here. They were attached with all the other stuff.

THE COURT:  So you're --

DEFENDANT R. SAM:  And, Judge -- and, no, no.

THE COURT:  Point it to me.

DEFENDANT R. SAM:  And also the Chief Judge has it, too, yeah.  He knows all about that.

THE COURT:  Here contrary to popular belief we don't tote around --

DEFENDANT R. SAM:  Okay.

THE COURT:  -- all the filings.  I had to print all of --

DEFENDANT R. SAM:  Okay.

THE COURT:  Well, you -- and I appreciate, you provided courtesy copies.  I appreciate that.

DEFENDANT R. SAM:  I did do that.

THE COURT:  You did, too.  We don't have the files in our offices.

DEFENDANT R. SAM:  Okay.

THE COURT:  Just because you may have filed

something doesn't mean --

DEFENDANT R. SAM:  All right.  Well, I can tell you this.  I can get them for you, but they did send them in email to me.

THE COURT:  What I would like for you to do is if you believe you filed them, the emails --

DEFENDANT R. SAM:  Oh, yes.

THE COURT:  -- point to when and what -- just give me a general idea --

DEFENDANT R. SAM:  I think it was on the --

THE COURT:  -- because there's 1,287 pages.

DEFENDANT R. SAM:  -- first motion to dismiss, I believe.  I don't know.  Judge, I don't remember.  I filed so many things.

THE COURT:  You're telling me.

DEFENDANT R. SAM:  All I can tell you is I think it was on the motion to dismiss, the first one that you denied, I think, and in there I had attached the email showing that the housing authority said, "You are in bad standings.  We are not porting you".  That is what they said.  They were aware of it because they're the ones that told them not to.

THE COURT:  Okay.  Well, let me ask you this, Mr. Cronauer.

MR. CRONAUER: Yes, Your Honor.

THE COURT: If Mr. Sam would be able to port the vouchers to a different property, would your client work with that process to get what she wants, which is possession of the unit?

MR. CRONAUER: I think there would have to be a global understanding with everything else he has filed.

DEFENDANT R. SAM: Oh, see, that's -- I said --

THE COURT: Okay.

DEFENDANT R. SAM: -- they want me now to get rid of my lawsuits against them, including Riley Oncken and Sycamore. That's --

THE COURT: Okay.

DEFENDANT R. SAM: -- not part of the deal.

THE COURT: We don't have a deal.

DEFENDANT R. SAM: Okay.

THE COURT: We're not negotiating.

DEFENDANT R. SAM: And there won't be.

THE COURT: I'm asking a question as to whether that's something your client would be inclined. I don't even want to know what a global understanding would be because --

DEFENDANT R. SAM: Never happen.

THE COURT:  -- I'm not -- here's what I'm inclined to do.  I would like to see what the Bankruptcy Court is going to do, because I know you say it's not relevant, but when you're asking for rent in a complaint going back to January of '22 and she had a bankruptcy discharge in August of '23, there might be an issue there.  I don't know because I'm not the bankruptcy judge.

I would be interested to know what the bankruptcy judge is going to do.  If the bankruptcy Judge is going to say, "You're right, you shouldn't have done" -- "Mr. Cronauer shouldn't have done that, shame on him", whatever the sanctions or whatever the consequences are in the Bankruptcy Court, you can't ask for rent even though you're saying it's only against Mr. Sam, even though you filed -- or entered an order on June 10th of 2024.

If the Bankruptcy Court comes down and says you have violated the stay and you're asking for rent from her for a period of time before she was discharged, then I think you've got a problem.

MR. CRONAUER:  Here's what I'll do, Judge, to try to avoid this.  We can dismiss the request for damages without prejudice and re-raise that based on

bankruptcy and just go to trial on possession.

DEFENDANT R. SAM:  That would make the 30-day notice invalid, which means we never got a 30-day notice.

MR. CRONAUER:  The 30-day notice does not request rent.

DEFENDANT R. SAM:  Oh, this --

MR. CRONAUER:  It says you have to leave for not paying.

THE COURT:  It does say that.  The 30-day --

DEFENDANT R. SAM:  It says for rent.

THE COURT:  I want to find the emails, that are pure hearsay, but I am interested to know why the housing authority would hold up you from moving out if you wanted to move out.

DEFENDANT R. SAM:  Judge --

MR. CRONAUER:  Judge, here's what I will tell you --

DEFENDANT R. SAM:  I'm going to finish right here.

THE COURT:  Well, let him --

DEFENDANT R. SAM:  I'm gonna talk.

THE COURT:  Let him finish and then I'll let you talk.

DEFENDANT R. SAM: Judge Waller is very much aware of what the housing authority's attorney has done to us. They listened to Riley Oncken and Cronauer and they told them that we're in bad standings, and the emails every time I -- I've asked 15 times, I have a count, 15 times I sent an email saying we want to be ported, not in -- I don't want to stay in this county. I said out of this county. I don't want nothing to do with this place. Every email back is, "I'm sorry, Mr. Sam, but your landlord says you're in bad standings. We're not able to port you at this time". I -- under oath I'll pull -- I'll blow it up for you.

THE COURT: All right. Let me --

DEFENDANT R. SAM: It says it every time.

THE COURT: Let me ask you this. Have you ever asked them what they would need in order to port you?

DEFENDANT R. SAM: They won't respond. I said, "We paid all the rent". I said, "You've got the spreadsheet". I said, "What proof did they show you that we owe anything?" They come back with, "Your landlord says you're in bad standings".

THE COURT: Okay. Mr. Cronauer -- and I'm not

telling you what to do. I'm asking. Would your client -- and you don't know the answer because your client is not here and you would have to ask her. Would your client be willing to notify the housing authority that, hey, they're in good standing. Because we have an agreement they're going to move out, so if they can get ported out, port them out and they can move.

MR. CRONAUER: The problem, Judge, is the last time there was an agreement to move out --

THE COURT: Well, the last time there was an agreement to move out an eviction case was filed when it said it wasn't going to be filed, so I understand, and actually what I understand that happened last time, too, is Mr. Sam paid the amount that was required in the agreed order.

DEFENDANT R. SAM: Yes.

THE COURT: So --

MR. CRONAUER: That's news to me.

DEFENDANT R. SAM: How is it news to you?

THE COURT: You don't get to talk to each other.

DEFENDANT R. SAM: Oh, okay. It's news to him.

THE COURT: We can bring into -- well, we can bring in 40 people and select 12 of those people and

we can put them through days of having to be off of their work and listening to the evidence and they can render a judgment and neither one of you know what that's going to be, or we can work towards a settlement. Mr. Sam doesn't want to stay.

DEFENDANT R. SAM: Right.

THE COURT: Your client doesn't want him to stay, either.

MR. CRONAUER: Well, here's what I'll tell you, Judge. Again, he's had four or five attorneys in the federal case that have come in and left.

DEFENDANT R. SAM: That's not what happened.

THE COURT: Hold on, Mr. Sam, please.

MR. CRONAUER: There has been filings by their attorneys when they're withdrawing from the case saying they've spent lots of time trying to work with the housing authority to port him. For whatever reason the housing authority does not want to, they won't do it, and that's not our problem.

DEFENDANT R. SAM: That's never happened.

MR. CRONAUER: I mean --

THE COURT: Okay. What do you have when you say the housing authority wouldn't do it? Did they talk to you? Did they send you something?

MR. CRONAUER: What -- no. What his lawyers put in filings all the work they're doing on his case, that's part of the work they've done in their case.

DEFENDANT R. SAM: They never said that they weren't going to port. Can you get a copy on that? Can you print -- pull it up where it says the attorney said that the housing authority will not port us? That's why they walk off the case.

One of the attorneys --

MR. CRONAUER: No. That's --

DEFENDANT R. SAM: -- that was assigned, Your Honor, was Judge Schostok, our appeal -- you know, the Appellate Court.

THE COURT: Okay.

DEFENDANT R. SAM: She's the judge on our Appellate Court. Out of all the attorneys they assigned me Michael Schostok, her son, so how would that work out?

THE COURT: I would guess not very well.

DEFENDANT R. SAM: But he said they left on you, they left on you. Then they gave me an attorney, oh, I forget this guy's name. Turns out to be they did cases with Cronauer. Cronauer is represented by an attorney in the Bankruptcy Court because he's a

defendant in that and he's a defendant in the federal case. Hannigan is his attorney. Turns out they work together, so I told the federal judge, I said, I told the federal judge I said I can't have this attorney on here. He wanted to take a -- here.

THE COURT: Well, is this --

DEFENDANT R. SAM: Christie Taglia --

THE COURT: Okay. When you say they work together, at the same firm?

DEFENDANT R. SAM: No. They did cases together. They worked together. They did cases.

So that what happened is this. Taglia -- the first law firm that was assigned to us was Christie Taglia and something else. They're a big firm in Chicago. They drafted a 17-count complaint against Oncken, Cronauer, Mobile, all these people. Well, at the time we didn't know that Cronauer was being added as a defendant, so they never told us that. They went and filed the case without me knowing that he was a defendant. All of a sudden he jumps up and down Rule 11, Rule 11. The law firm then files a motion to withdraw and they dump the 17-count complaint on me.

Now, I didn't even know he was being sued, so

then they assign me Michael Schostok, which is Judge Schostok's son. Well, that's a conflict of interest.

So all these attorneys that he's talking about, none of them were viable attorneys. They either couldn't do the case because of a conflict or there was something else.

He has nothing that says that they told him that the housing authority would not port us. He has nothing to that effect.

MR. CRONAUER: Okay. Here is a filing dated March 11, 2024, 23-cv-50301, document 64, motion for leave to withdraw by firm -- the first firm Margaret, what's her last name, don't remember. Paragraph 2(f), part of the 350 hours spent working on the case, 2(f), "communicating with the housing authority of the county of DeKalb to attempt to coordinate to port plaintiff's Section 8 vouchers per plaintiff's request".

DEFENDANT R. SAM: And where does it say they denied it? You just said it said it. Where did it say it?

THE COURT: Okay. Remember the part where you don't get to ask him questions?

DEFENDANT R. SAM: Okay. Sorry.

THE COURT: We still have the practical problem. We also still have the -- the end result, everybody wants the same thing.

DEFENDANT R. SAM: Right. We want to get out of here.

THE COURT: We want the same thing. How do we get to have the same thing without having to have a couple days worth of a jury trial?

DEFENDANT R. SAM: Just port us out. All we need to do is have them port us out. It's a 90-day process. We're out of here. We're already packed. We have boxes packed.

We've been -- when we had that agreement with Riley Oncken, we had already started packing to move. The very next day when I asked them to port us, "Oh, I'm sorry. There's a judgment against you entered. We can't port you". He went the very next day and got a judgment that the agreed order said he wasn't gonna do, but we're the ones that are bad. We're the ones that violated everything.

All we've been trying to do is get out of here and these people that -- they don't want to just -- Judge, they don't want to just evict us. You said

this is about an eviction. It's not. They don't want to just evict us. They want to cause as much pain and suffering as possible. They want to block the vouchers. They want to evict, and then they want to come in and sue for damages. That's exactly what Oncken did.

After he got this judgment do you know what he did? The very next day he sends me an email, um, the hearing for damages will be in about a week after we were already kicked out. He wanted to come more.

THE COURT: Okay. Back to the practical solution of getting them out of the property that your client would like to have vacated, I mean, it sounds like Mr. Sam is willing to move out and enter into some sort of order so long as he can get ported to a different property.

MR. CRONAUER: And I appreciate that, Judge, but we don't control it. We have no say over any of this porting situation. I understand --

THE COURT: Where does he get the notion or where does the housing authority get the motion that he's in bad standing with the landlord?

MR. CRONAUER: Don't know other than the fact

that we are trying to evict for various reasons, valid reasons. That's the only thing that would -- in theory you're in bad standing by the fact there's an eviction complaint pending.

DEFENDANT R. SAM: They said that the landlord told them that we're in bad standings, so when he says he doesn't know how they got that, he's the one that told them. Riley Oncken told them.

MR. CRONAUER: My point, Your Honor --

DEFENDANT R. SAM: How can you evict and take away someone's voucher that took eight years to get? How can you do both?

THE COURT: I don't know.

DEFENDANT R. SAM: Me, neither.

THE COURT: Go ahead.

MR. CRONAUER: No. I was just going to say, I mean, my understanding behind the scenes they've been trying to do that.

DEFENDANT R. SAM: What?

THE COURT: Who is behind the scenes and who is trying to do what?

MR. CRONAUER: In the federal case, the civil attorneys that have been appointed have been trying to work with housing behind the scenes.

DEFENDANT R. SAM: That's never happened. That would be part of a settlement he's talking about. There's never been a talk of a settlement. Even Judge Margaret in the federal case said this is a -- this is a early stages. There was never talks of any settlement.

THE COURT: Okay. Well, here's what we're going to do. I'm going to reserve ruling on motion to dismiss until I know what the Bankruptcy Court is doing. I would like for -- and which means I'm going to hold off on the motions in limine and the jury instructions, and I'm not going to pull in a jury with this much convolution when both parties want the same thing and there should be a way to make that happen.

And so I guess what I would like you to do, Mr. Cronauer, is find -- and you, Mr. Sam, find out what the housing authority needs, and if they will accept an order from the Court and the parties agree, I'll enter the order.

DEFENDANT R. SAM: They told me in an email, "The landlord says you're in bad standings. Until she says differently we are not porting you", so it has to come from them, but they don't want to just

evict us.  They want to make sure we lose the vouchers.  We could have been out of here a year and a half ago.  They intentionally got in the way of it.

THE COURT:  Well --

DEFENDANT R. SAM:  That's why we're suing --

THE COURT:  -- that's a pretty --

DEFENDANT R. SAM:  -- them in Federal Court.

THE COURT:  -- strong allegation and --

DEFENDANT R. SAM:  It's a fact.

THE COURT:  It's not a fact that's been proven in a court.

DEFENDANT R. SAM:  Judge, there's evidence to that.

THE COURT:  There hasn't been any evidence submitted to that.  Pleadings are not evidence. Argument is not evidence.

DEFENDANT R. SAM:  So what are you saying is not evidence?

THE COURT:  Argument.

DEFENDANT R. SAM:  Or what are you saying that is --

THE COURT:  Testimony, documents properly admitted into evidence.  That's evidence.

DEFENDANT R. SAM:  So the email from the housing authority when they said "We're not porting you because your landlord says you're in bad standings", that's not evidence?

THE COURT:  Unless somebody from the housing authority comes and testifies and authenticates the email and has testimony that's consistent with the rules of evidence --

DEFENDANT R. SAM:  Okay.

THE COURT:  -- to have it admitted.

DEFENDANT R. SAM:  All right.  Okay.  Then that's what I mean.  No matter what we do here, we're just never gonna get --

THE COURT:  Because that's not --

DEFENDANT R. SAM:  It's just -- you're set up to --

THE COURT:  -- evidence.

DEFENDANT R. SAM:  Okay.  Well --

THE COURT:  What I'm trying to do is get a resolution that makes both sides happy without having to continue to file things and come to court --

DEFENDANT R. SAM:  Right.

THE COURT:  -- and have a jury trial.

DEFENDANT R. SAM:  But what else can we -- on our end what else can --

THE COURT:  That's --

DEFENDANT R. SAM:  -- we do?

THE COURT:  That's a good question.

DEFENDANT R. SAM:  Nothing.  They have no proof that we owe a dime.  There's --

THE COURT:  There hasn't been any proof because we haven't had a trial.

DEFENDANT R. SAM:  Okay.  Well, I don't know what to do, then, so.

THE COURT:  So if you want to withdraw your motion -- or your complaint for damages and you want to only go on possession, we're going to do that after the Bankruptcy Court has made some decision.

MR. CRONAUER:  Okay.

DEFENDANT R. SAM:  All right.

THE COURT:  And in the meantime, like I said, I'm going to rule -- I'm going to make reservation on the motion to dismiss except for those things that I went through.

DEFENDANT R. SAM:  All right.

THE COURT:  So the only one that I'm not ruling on is the paragraph 7, "Seeking to collect rent for

a period extending back to January of '22 breaches the injunction as impermissible", because the federal bankruptcy judge has to say that, not me.

And in terms of her being a defendant, that I will say she can absolutely be a defendant.

And it's like this. People say, "Well, can you sue me for that?" You can sue people for anything.

DEFENDANT R. SAM: Okay.

THE COURT: It doesn't mean you're going to prevail.

DEFENDANT R. SAM: I got it, okay.

THE COURT: So she can be a defendant.

DEFENDANT R. SAM: Okay.

THE COURT: Doesn't mean they'll prevail. So to just say that she doesn't have to come to court, she doesn't have to file an appearance, she doesn't have to participate, she can't be named as a defendant, that's not the case.

DEFENDANT R. SAM: Okay.

THE COURT: But I'm not going to make any findings of any wrongdoing by the State's Attorney's Office or Mr. Cronauer or Mr. Oncken or Mr. Hannigan or the probation officer or anybody else that's been named other than -- well, nobody. BKA Holdings,

Robert Sam and Karen Sam, those are the relevant people in this particular case, and I would cite to the case. I have the case that says federal housing vouchers are not rent in an eviction case.

Oh, and I also want to address the use of AI and the Google ChatGPT or -- I read your response. I read your apology. I read your -- and when I say you, I'm talking to Mr. Sam.

You can't -- people go to law school, just like people go to medical school. You can go to WebMD. You can try to take out your own spleen, and AI can probably tell you how to do that. I would certainly not rely on AI to take out my spleen, just like I would not rely on AI to do my case citings, so if you're going to file anything else and cite a case, I want a copy of the case.

DEFENDANT R. SAM: Okay.

THE COURT: I want the case printed out and I want the case provided to me as a courtesy copy and I want a case given to Mr. Cronauer if you're going to be citing anything that you're going to file in the future, because you can't do that. That's misrepresenting. It's relying on something that's not to be relied on, so we're not to the stage in

our lives where AI has completely taken over everything. They don't have a brain. It's in the name, artificial. So am I clear on that part?

DEFENDANT R. SAM: Yes.

THE COURT: I'm going to hold off on sanctions at this point. I know Mr. Cronauer is asking for sanctions, but I'm going to hold off to see where we end up going with this.

So what do you want to do, Mr. Cronauer?

MR. CRONAUER: I guess based on the Court's order got to continue it out until after November 20th. I don't know if you want to come back on an interim status on anything with porting and housing. I guess I don't know how you want to handle that.

THE COURT: Well, I would like to because I would like to see that ball get rolling. I would like to see Mr. and Mrs. Sam be able to move. I would like to see your landlord have her place back. I don't know what's involved in that because that's not my playground. That's not what I do. I don't know anything about the housing authority.

So I guess I'm going to put the burden on you, Mr. Sam, to determine exactly what the housing authority will accept to allow you to port the

vouchers.

And, Mr. Cronauer, I want you to talk to your client to see what she's willing to do to try to facilitate that so she can get what she wants.

MR. CRONAUER: Understood, Judge. The only other thing, I don't know if it matters, he is suing the housing authority so that might --

THE COURT: That might be a reason.

DEFENDANT R. SAM: Well, that's why. What does somebody else do when someone intentionally gets in the way of something, don't they get sued if they wrongfully do something? How else do you handle it?

I mean, you got to remember something here, Judge. For a year and a half all I did was beg them to port us. I didn't go right to a lawsuit. He makes it out like he just sued them.

THE COURT: And when you say "them", who is them?

DEFENDANT R. SAM: The housing authority.

For a year and a half I constantly asked them. Do you know they sent out their inspector and their inspector filled out the form saying all these things that need to be fixed in the place and they were never fixed? This came from the housing

authority because they said, "Those things have to be fixed for us to continue paying the rent", and they used the word "rent". Well, even though the work hasn't been fixed, she's still been getting the rent every month. The 1st of every month she has an automatic deposit from the housing authority.

So when he says, well, he's suing them, that's after a year and a half of asking for help. So, yeah, we're suing them. That's why the law firm made a 17-count complaint of all the wrongdoings that everyone did. It's like we're expected to just keep getting kicked in the face and you don't do anything, you just take it. I don't know anybody that would do that.

I know his client wouldn't. If the housing authority messed around with her, she'd be the first one with Cronauer suing them to the ground, but all of a sudden because it's us, well, he is suing them.

THE COURT: Well, it's not all of a sudden. You're asking the housing authority to port some vouchers, but you're also suing them so --

DEFENDANT R. SAM: After a year and a half of asking. How long should we have done this for?

THE COURT: It may take longer than 90 days.

DEFENDANT R. SAM:  But when you're in an eviction, you don't have more than 90 days.

THE COURT:  But you've had --

DEFENDANT R. SAM:  You don't know how long you're --

THE COURT:  Well, you've had April, May, June, July, August, September --

DEFENDANT R. SAM:  Yes.

THE COURT:  Now we're going to have October --

DEFENDANT R. SAM:  But they never ported them.

THE COURT:  -- November --

DEFENDANT R. SAM:  So what do we do?  I can't force them to do this.  I can't -- do you know I even went to their director and he won't respond to me.  I can't go there and say, "You better -- you better port these.  The judge told me to tell you".

THE COURT:  Well, the judge didn't tell you to tell them that.

DEFENDANT R. SAM:  Exactly, but what should I tell them then?  If I can't even say --

THE COURT:  I --

DEFENDANT R. SAM:  -- the judge ordered it, how would they listen to me?  They're not going to.

THE COURT:  Well, I think you may overestimate

my power.  I could tell them in an order to do something --

DEFENDANT R. SAM:  I know.

THE COURT:  -- and they are not bound --

DEFENDANT R. SAM:  Well, I'm just trying --

THE COURT:  -- by a state judge --

DEFENDANT R. SAM:  It was -- what I'm trying to say is no matter what I ask or say, it just doesn't matter.  I spent a year and a half asking, not demanding; asking.  It didn't matter.

I had the Sycamore inspectors come to the house. They even told the housing authority, this is John Sauter and Aaron Lockhart, "This stuff needs to be done".  So obviously the housing authority knows that.  The landlord is in bad standings, but yet they're still paying her, but they won't port us.

If we're in bad standings, how come she keeps getting the rent?

THE COURT:  That's a good question.

DEFENDANT R. SAM:  Nobody answered it.  Nobody's answered it.  Even he hasn't answered it.  Why does your client -- why does his client keep accepting the rent and why does she keep getting paid if she's in bad standings?  The work isn't done, but can I

point something out?  Do you know what they said?

So then they went to the Sycamore attorney when they see where this was going, and they asked him to draft a letter, which I told you I have it attached. You have it.  Here's the thing.  Well, the work couldn't be done because Mr. Sam was threatening people's lives with violence.

So Mr. Sam went down to the Sycamore Police Department and did a FOIA, and I asked for a FOIA from the entire time we lived there.  Not one call was made on me.  Well, how can I have threatened people with violence if no one called the police? That's odd.  If I threaten you, I would think anybody would call the police.  No one called the police.

THE COURT:  You're making a lot of assumptions and a lot of blanket statements.

DEFENDANT R. SAM:  That's what the letter said.

THE COURT:  What I would like you to do, Mr. Cronauer, is talk to your client, see if there's -- if she works with the housing authority to get her vouchers, see if there's a way you can get them out.

MR. CRONAUER:  I will, Your Honor, absolutely.

THE COURT:  Because sometimes jury trials make both sides not happy.

DEFENDANT R. SAM:  Yeah.

THE COURT:  So that's the risk you're both taking.

And so I want -- you say it's a 90-day process?

DEFENDANT R. SAM:  Yes.

THE COURT:  I'm not going to continue it for 90 days, but why don't we come back on -- and if this is not a good day, I'm okay with giving it a different day but I'm looking at the 27th, which is the day before Thanksgiving.

DEFENDANT R. SAM:  Yeah, because the bankruptcy thing is the 20th.

THE COURT:  Correct.

DEFENDANT R. SAM:  So the 27th is fine.

THE COURT:  Well, does that work for you, Mr. Cronauer?

MR. CRONAUER:  Yes, Your Honor.  It would be morning or afternoon?

THE COURT:  It would be an afternoon at 1:30.

DEFENDANT R. SAM:  1:30?

MR. CRONAUER:  Yep, that works.

THE COURT:  So reserve ruling on the motion to

dismiss that one paragraph -- or that one section, I should say, or that one issue, because the sections are not numbered by issues. They're just numbered by paragraph.

MR. CRONAUER: What was that number, Judge? Sorry.

DEFENDANT R. SAM: 7.

THE COURT: Let me look and see where it was.

Also, Mr. Sam, it would be very useful if you will put page numbers on your filings.

DEFENDANT R. SAM: I'm sorry.

THE COURT: It's paragraph 8, ongoing bankruptcy proceedings, page 7 of the actual motion itself, not including any notices.

MR. CRONAUER: Do you want me to draft the order, Your Honor?

THE COURT: I'm sorry?

MR. CRONAUER: Do you want me to draft an order?

THE COURT: If you would, please. I have some blank orders. I'd prefer it be written out.

And I do also that same case I cited, the Peoria Housing Authority vs. Sanders, Supreme Court of Illinois, "when an action for possession is based upon nonpayment of rent, the question whether the

defendant owes rent to the plaintiff is germane, whether or not the plaintiff seeks judgment for the rent that he says is due". So I don't think just dismissing the claim for damages is going to solve the issue.

DEFENDANT R. SAM: Your Honor, what day is the 27th?

THE COURT: It's a Wednesday.

DEFENDANT R. SAM: Oh, the same day, okay. You said 1:30; right?

THE COURT: Yes, yes.

MR. CRONAUER: For the 237(b) quash as to documents; right?

THE COURT: Correct, for any non -- well, quash as to documents and quash as to any nonparties at this point.

MR. CRONAUER: I apologize, Judge. 11/27 at 1:30?

DEFENDANT R. SAM: 1:30.

THE COURT: Yes.

MR. CRONAUER: Your Honor, for the other case can we just put that to status?

THE COURT: Yes -- no. We're going to have a hearing on that one. You wanted time to respond.

Let's do a separate --

MR. CRONAUER:  Okay.

THE COURT:  I hope you're doing a separate order on that one.  That one is you have 28 days -- well, you have until October 30th to file your response, and then we're scheduled for a hearing on that motion to dismiss for November 6th at 1:30.

DEFENDANT R. SAM:  Can we do -- I was just going to say can we do them on the same day?

THE COURT:  Do you want to push that to the 27th?

DEFENDANT R. SAM:  Can we just do them both on the 27th?

THE COURT:  You want to do that?

MR. CRONAUER:  That's fine with me.

THE COURT:  Why don't we do that.

And I will say that what the ruling on the 237(b) motion is that Mrs. Sam is still subject to her appearance in person.

DEFENDANT R. SAM:  Okay.

THE COURT:  Or Zoom.  I'm okay allowing Zoom if --

DEFENDANT R. SAM:  Okay.  But she has to file an appearance.

THE COURT:  She has not.

DEFENDANT R. SAM:  I said she would have to file an appearance.

THE COURT:  Mr. Sam, did you get a copy of the jury instructions?

DEFENDANT R. SAM:  From Mr. Cronauer?

THE COURT:  Yes.

DEFENDANT R. SAM:  I did.

THE COURT:  Okay.  Those are proposed.  We haven't gone over them yet.

DEFENDANT R. SAM:  Probably not till after the 27th, right, or on the --

THE COURT:  No, not until we schedule it for another jury trial.

DEFENDANT R. SAM:  Okay.  But I did get them.

THE COURT:  Okay.

DEFENDANT R. SAM:  But I didn't file any, so you know.

THE COURT:  No, I did note that.

Thank you.  I'm going to strike the trial date, too.  Strike jury trial.

Before you scan that, I'm also going to indicate in the 24 EV 136 I'm going to indicate in the order that Mr. Sam was admonished on use of AI.

MR. CRONAUER:  For the LA case, Judge, do you care if I add --

THE COURT:  Or was it in the ChatGPT -- or was it in the LA case that --

MR. CRONAUER:  No.  It was --

THE COURT:  You can put it on that one, too.

MR. CRONAUER:  It was in -- yeah, okay.  Can I extend the briefing two weeks if the hearing is going to be moved?

THE COURT:  You can, you can.  And I'm just going to give him more time to file a response.  Just make sure that it is filed at least two weeks before the hearing date so Mr. Sam can take a look at that and so I can actually take a look at it, too.

DEFENDANT R. SAM:  You don't need me to respond to that you said?  Okay.  I won't.  I'm just asking.

THE COURT:  Okay.  And if you do file something that has case law in it --

DEFENDANT R. SAM:  You want copies of the case.

THE COURT:  -- I want copies of the cases but you do not have to file them in the court file.  Just you know when you take -- I don't know if you take them upstairs to the judicial administrator.

DEFENDANT R. SAM: I take them first to the clerk's office where they -- or I think it's the clerk's office where they stamp them and make copies and then I go upstairs to that lady and give her the courtesy copies.

THE COURT: Okay. That's who you would have to give the cases to.

DEFENDANT R. SAM: Okay. So I don't have --

THE COURT: You do not have --

DEFENDANT R. SAM: -- to have them --

THE COURT: -- to file them --

DEFENDANT R. SAM: Fine, okay.

THE COURT: -- in the clerk's records.

DEFENDANT R. SAM: Okay, all right.

THE COURT: I'm going to add just here that any case law cited by defendant shall -- okay.

So 11/27 at 1:30.

DEFENDANT R. SAM: Got it.

THE COURT: And I'm going to have madam clerk here print copies of the orders for each of you.

DEFENDANT R. SAM: Thank you.

MR. CRONAUER: Thank you, Your Honor.

THE COURT: You're welcome.

DEFENDANT R. SAM: Thank you, Judge.

THE COURT:  You're welcome.

(End of proceedings.)

81

IN THE CIRCUIT COURT OF THE 23RD JUDICIAL CIRCUIT

DEKALB COUNTY, ILLINOIS

I, Sandra Foord, certify the foregoing to be a true and accurate transcript of the electronic recording of the proceeding of the above-entitled cause, which recording contained the operator's certification as required by Local Rule 1.02(b)(2).

_Sandra Foord_
Official Court Reporter

License No. 084-003025

Dated this 11th day of October, 2024.

# Re: Rule 11 Notice to Withdraw  External  Inbox ×

**robert sam**                                    Thu, Aug 29, 3:20 PM (17 hours ago)
to me

Nick,
Your harassing me is going to get you disbarred. I am not stoping. I am filing liens on all her property's and your threats mean nothing to me. I am going to win all my cases and you know it. You're obsessed with me, you live everyday with me on your brain. Your not helping your client because your using her money for your own vengeance. We are pro se and since the judge would not grant us a lawyer, that's on her. We get a very long leach with the court. And as you pointed out , I am not a lawyer. So I am sure any issues on case law error, well I'm not a lawyer. And your so jealous of AI, because I am smarter then you and can not only create motions and lawsuits but, I can argue them and win. How many motions have you filed against me? How many have you won? Let me know how court goes Friday. You know what's weird? Why are so many cases from Dekalb overturned in appeals court? Strange. Hey, I thought the states attorney was prosecuting me?

> On Aug 29, 2024, at 3:09 PM, Nicholas Cronauer <NC@cronauerlaw.com> wrote:

See below, think your email was accidentally omitted.

---------- Forwarded message ---------
From: **Nicholas Cronauer** <NC@cronauerlaw.com>
Date: Thu, Aug 29, 2024 at 3:02 PM
Subject: Rule 11 Notice to Withdraw
To: Denise Hays <denise@konicekdillonlaw.com>, Mike Hannigan <mhannigan@konicekdillonlaw.com>, <corinne@crayhuber.com>, Zachary Shook <zgs@crayhuber.com>, Allie Burnet <aburnet@bestfirm.com>, <eservice@bestfirm.com>, <Ilovethewizardofoz5@gmail.com>, Gabrielle

**EXHIBIT C**

# Re: Rule 11 Notice to Withdraw <span>External</span>  <span>Inbox ×</span>

 **robert sam**      8:37 AM (1 minute ago)   ☆   ↩   ⋮

to me, Denise, Mike, corinne, Zachary, Allie, eservice, Ilovethewizardofoz5, Gabrielle ▾

I submitted a request for council yesterday with the federal judge. If she grants this, then they can make whatever corrections are needed. If she does not, well, I am not a lawyer as you keep making me aware of. So how would I know case law or how to correct it ? The last complaint was backed up with no case law, so I am pretty sure that being on a <mark>long leash</mark> that the court needs to allow me, you possibly could look pass the case law errors and just focus on the merits? Car law are only examples, there not merits or facts of this case. There examples of others. If your arguing against my claims then any errors in my cade law examples should not stop your motion to dismiss? As far as this rule 11 that only you seem to bring up, not Riley Oncken, only you. The ARDC has made it clear that attorneys don't have absolute protection, I know this because I was involved in getting Joseph A Morris suspended with Jerry larkins help. So, this theory of immunity is not a defense for ignorance and intentional violations of federal law. Now, your represented by council? So why are you in contact with me on this? Why isn't your lawyer reaching out to me?

On Aug 30, 2024, at 8:22 AM, Nicholas Cronauer <NC@cronauerlaw.com> wrote:

Good morning Robert,

 I am not sure how to construe your response as answering my question. If you need time to think over withdrawing your complaint, that is fine, you have 20 days to think about it.

Have a good Labor Day Weekend.

On Thu, Aug 29, 2024 at 3:20 PM robert sam <harpees5@yahoo.com> wrote:

Nick,



**EXHIBIT**

**D**