FILED
11/5/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
E.C

# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION

## Case No. 3:23-cv-50301

## Robert Sam and Karen Sam, Plaintiffs,

v.

## Melissa Mobile, BKA Holding, LLC, et al., Defendants.

## PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF FEDERAL JURISDICTION

## Introduction

Plaintiffs Robert Sam and Karen Sam, proceeding pro se, respectfully submit this Response to Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Defendants argue that Plaintiffs' claims fail to establish federal jurisdiction and should be dismissed. Plaintiffs contend that their claims arise directly under federal laws and the U.S. Constitution, thereby invoking federal question jurisdiction under 28 U.S.C. § 1331. Furthermore, Plaintiffs assert that supplemental

jurisdiction over their state law claims is appropriate under 28 U.S.C. § 1367.

This case involves allegations of violations of federal statutes and constitutional rights, including but not limited to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), the Fair Housing Act ("FHA"), the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), the Fair Debt Collection Practices Act ("FDCPA"), and 42 U.S.C. § 1983. Defendants' actions, as alleged, infringe upon Plaintiffs' federally protected rights, necessitating federal court adjudication.

## I. Establishing Federal Jurisdiction (28 U.S.C. § 1331)

## A. Federal Question Jurisdiction

Under 28 U.S.C. § 1331, federal district courts have original jurisdiction over all civil actions "arising under" the Constitution, laws, or treaties of the United States. A claim arises under federal law if it involves a federal right or depends on the interpretation of federal law. See *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005). Plaintiffs' claims involve substantial questions of federal law, including alleged violations of federal statutes and constitutional rights. **( case law found through Google was on justia and quimbee)**

The Supreme Court in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986), recognized that federal question jurisdiction is appropriate when "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Plaintiffs' rights to relief depend on the interpretation and application of several federal statutes designed to protect tenants in federally assisted housing, individuals with disabilities, and consumers. **( case found on case text and find law on Google)**

## B. The Preemption Principle

Federal law preempts state law when it is in direct conflict or when Congress expresses a clear intent to occupy a field exclusively. See *Arizona v. United States*, 567 U.S. 387, 399 (2012). The CARES Act, FHA, and other federal housing laws establish federal standards that preempt conflicting state laws or practices. Plaintiffs allege that Defendants' actions conflict with these federal standards, thus invoking federal jurisdiction.

In *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005), the Court emphasized that when federal statutory schemes provide specific remedies, federal courts are the proper forum for resolving disputes arising under those statutes. Plaintiffs' claims are rooted in federal statutes intended to protect tenants' rights, further

supporting federal jurisdiction. **( both cases found through Google on justia and oyez)**

## A. Counts I & II: CARES Act and HUD Violations

### 1. Private Right of Action under the CARES Act

Defendants assert that the CARES Act does not provide a private right of action. While it is true that the CARES Act does not expressly create a private right of action for tenants, courts have recognized that tenants may assert defenses or counterclaims based on the Act's protections. In *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020), the court acknowledged the CARES Act's role in protecting tenants from eviction without proper notice during the pandemic.

Moreover, under the *Cort v. Ash*, 422 U.S. 66 (1975) test, courts consider whether a statute was enacted for the special benefit of a class of which the plaintiff is a member, whether there is any indication of legislative intent to create or deny a private remedy, whether implying such a remedy is consistent with the underlying purposes of the legislative scheme, and whether the cause of action is traditionally relegated to state law.

Plaintiffs argue that the CARES Act was designed to protect tenants in federally assisted housing, like themselves, from improper eviction during a national emergency, implying a private right of action or at least a federal defense to eviction proceedings. **( both cases**

**found through Google on justia and library of congress)**

## 2. Federal Question Jurisdiction over CARES Act Claims

Even absent an express private right of action, federal question jurisdiction exists when a plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. *Grable*, 545 U.S. at 314. Plaintiffs' claims require interpretation of the CARES Act's eviction moratorium provisions and HUD regulations, which are substantial federal issues.

## 3. HUD Regulations and Enforcement

HUD regulations govern the administration of federal housing programs and establish procedural protections for tenants. In *Thorpe v. Housing Authority of Durham*, 393 U.S. 268 (1969), the Supreme Court recognized the authority of HUD to issue regulations affecting eviction procedures and held that such regulations are binding on public housing authorities.

Plaintiffs allege that Defendants failed to comply with HUD regulations requiring a 30-day notice prior to eviction and that such noncompliance directly violates federal law. Federal courts have jurisdiction to enforce compliance with federal regulations, particularly when they protect statutory rights.**( case found through Google on justia and find law case law)**

## B. Count IV: Fair Housing Act (FHA)

### 1. Protection Against Discrimination

The FHA prohibits discrimination in housing based on disability, among other protected classes. See 42 U.S.C. § 3604(f). Discrimination includes refusing to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary for a person with a disability to have equal opportunity to use and enjoy a dwelling.

### 2. Federal Jurisdiction over FHA Claims

Federal courts have jurisdiction over claims alleging violations of the FHA. In *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979), the Supreme Court affirmed that individuals affected by discriminatory housing practices have standing to sue in federal court. **( case laws found through Google on justia and legal information institute)**

### 3. Retaliation Prohibited Under the FHA

The FHA prohibits retaliation against individuals for exercising their rights under the Act. See 42 U.S.C. § 3617. In *Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999), the court held that landlords cannot retaliate against tenants for asserting their fair housing rights, and such retaliation is actionable in federal court.**( case found through Google on quimbee and case text)**

Plaintiffs allege that Defendants retaliated against them by initiating eviction proceedings after they requested reasonable accommodations and asserted their rights under federal housing laws, thus invoking federal jurisdiction.

## C. Count V: Rehabilitation Act

### 1. Applicability to Federally Funded Programs

Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability under any program or activity receiving federal financial assistance. See 29 U.S.C. § 794(a). Plaintiffs allege that Defendants receive federal funds through participation in the Section 8 housing voucher program, making them subject to the Rehabilitation Act.

### 2. Private Right of Action

Courts have recognized that individuals may bring private actions to enforce rights under Section 504 of the Rehabilitation Act. In *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002), the Supreme Court assumed the availability of private suits under Section 504, and numerous lower courts have upheld private rights of action. **( case law found through Google on vlex and Supreme Court of US)**

### 3. Federal Jurisdiction

Claims under the Rehabilitation Act arise under federal law, providing federal question jurisdiction under 28

U.S.C. § 1331. Plaintiffs' allegations of disability discrimination by a federally funded landlord fall squarely within this jurisdiction.

## D. Count XVII: Section 1983 Civil Rights Violation

### 1. State Action Requirement

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived them of a right secured by the Constitution or federal laws. See *West v. Atkins*, 487 U.S. 42, 48 (1988). **( case found on justia and find law through Google).**

### 2. Private Parties as State Actors

Private parties may be considered state actors when they are "jointly engaged with state officials in the prohibited action." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), the Supreme Court held that private misuse of state procedures can constitute state action if there is significant involvement of state officials.**( both cases found through Google on casetext and justia)**

### 3. Deprivation of Constitutional Rights

Plaintiffs allege that Defendants, in concert with state actors, used state eviction procedures to deprive them of their rights under federal housing laws and the Due Process Clause of the Fourteenth Amendment. Such allegations, if proven, satisfy the requirements for a § 1983 claim, providing federal jurisdiction.

## E. Count X: Fair Debt Collection Practices Act (FDCPA)

### 1. Applicability to Landlords and Attorneys

The FDCPA applies to debt collectors who use abusive, deceptive, or unfair practices to collect debts. See 15 U.S.C. § 1692. In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Supreme Court held that attorneys who regularly engage in consumer debt collection activities, including litigation, are subject to the FDCPA.**( case found through the legal information institute Found through Google and AI)( by the way, fun fact, I actually created chat gpt before chat gpt was born. I created the virtually me with the you print blue print and the algorithm I created was used in Watson which was the first AI to be a contestant on jeoordy, should have patent this)**

### 2. Eviction Actions as Debt Collection

Courts have recognized that eviction proceedings may be subject to the FDCPA when they are used to collect unpaid rent. In *Romea v. Heiberger & Associates*, 163 F.3d 111 (2d Cir. 1998), the court held that a landlord's attorney's notice demanding payment of rent or possession constituted an attempt to collect a debt under the FDCPA.**( case law found on case text and case mine through Google and AI)**

Plaintiffs allege that Defendants used eviction proceedings to collect alleged debts in a manner that

violated the FDCPA, bringing their conduct within federal jurisdiction.

## F. Count XXI: Americans with Disabilities Act (ADA)

### 1. Protection Against Disability Discrimination

Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. See 42 U.S.C. § 12182(a). While residential facilities are generally not considered places of public accommodation, courts have applied the ADA to certain housing contexts, especially where the housing is connected to public accommodations or services.

### 2. Reasonable Accommodation

The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. See 42 U.S.C. § 12182(b)(2)(A)(ii). In *Bragdon v. Abbott*, 524 U.S. 624 (1998), the Supreme Court emphasized the broad scope of the ADA's protections.**( case law found on justia and legal information institute, AI found this case but it's on Google) ( I have found most of the case law that AI finds is very accurate, some of the section or page may be off but the correct section can be found on Lexus nexus or justia).**

### 3. Federal Jurisdiction

Claims under the ADA arise under federal law, providing federal question jurisdiction. Plaintiffs allege that Defendants failed to provide reasonable accommodations for their disabilities, invoking the protections of the ADA.

## III. Supplemental Jurisdiction Over State Law Claims (28 U.S.C. § 1367)

Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction over state law claims that are so related to federal claims that they form part of the same case or controversy. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), the Supreme Court held that federal courts may hear state claims deriving from a common nucleus of operative fact with the federal claims.

Plaintiffs' state law claims, including intentional infliction of emotional distress, defamation, and breach of the warranty of habitability, are intertwined with their federal claims. All claims arise from Defendants' alleged conduct related to housing discrimination, eviction proceedings, and failure to provide reasonable accommodations. Judicial economy, convenience, and fairness to the parties support the exercise of supplemental jurisdiction. **( case law on justia and quimbee with Google Search. AI found the case but doing a search against AI and reading the case, its relevant Law)**

## IV. Refuting Defendants' Illinois SLAPP Act Defense

Defendants invoke the Illinois Citizen Participation Act ("SLAPP Act") to argue for dismissal. However, the SLAPP Act is designed to protect individuals from lawsuits aimed at chilling their participation in government and free speech. See 735 ILCS 110/5.

### 1. Inapplicability to Federal Claims

The SLAPP Act does not apply to federal question cases. In *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), the Supreme Court held that federal courts sitting in diversity apply state substantive law and federal procedural law. However, in federal question cases, federal law governs. Additionally, courts have held that state anti-SLAPP statutes cannot be used to dismiss federal claims. See *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999).**( case law for both of these on justia and casetext. AI got the case right but the section was wrong, google search found correct section).**

### 2. Plaintiffs' Lawsuit is Legitimate

Plaintiffs are not seeking to interfere with Defendants' rights but are pursuing legitimate claims based on alleged violations of federal and state laws. The SLAPP Act is not intended to shield parties from accountability for unlawful conduct.

## V. Punitive Damages and Defendants' Ethical Obligations

### 1. Punitive Damages as Deterrence

Punitive damages are appropriate when a defendant's conduct is willful, wanton, or in reckless disregard of the plaintiff's rights. In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003), the Supreme Court stated that punitive damages serve to punish reprehensible conduct and deter its future occurrence.

Plaintiffs allege that Defendants knowingly and intentionally violated federal laws designed to protect tenants and individuals with disabilities. Such conduct, if proven, may warrant punitive damages to deter similar future misconduct.**( case law found on case text and oiez, AI was very accurate on this search)**

### 2. Defendants' Ethical Obligations

As participants in federally assisted housing programs, Defendants are obligated to comply with federal statutes and regulations. Willful noncompliance undermines the integrity of these programs and harms vulnerable populations. Defendants' alleged actions contravene their ethical and legal responsibilities.

## VI. POTENTIAL PUBLIC CORRUPTION AND IMPROPER COLLUSION BETWEEN HACD AND THE LANDLORD

Plaintiffs raise significant concerns regarding the possibility of improper collusion and public corruption between HACD and the landlord. The pattern of inconsistent and arbitrary actions taken by HACD, as detailed below, suggests that HACD  may have abused its public office to serve the private interests of the landlord at the expense of Plaintiffs' due process rights and access to fair housing.

- **Inconsistent Application of Policies for Personal Gain**: HACD's denial of portability for Plaintiffs' Section 8 voucher based solely on the landlord's unverified allegations—despite the landlord accepting rent payments and entering into a new lease with Plaintiffs—raises concerns about HACD's motives. Courts have found that the acceptance of rent and lease renewal acts as a waiver of prior claims of tenant default, as in *Bank of America v. 3301 Atlantic,* (N.Y. App. Div. 2014)**( now here is a example of what some might claim as a hallucination but it's not. This case really only comes up with a deep dive into trellis law)** or (***Peoria Housing Authority v. Sanders***, **372 Ill. App. 3d 774 (2007):** In this case, the court held that a landlord who accepts rent payments with knowledge of a tenant's breach may be deemed to have waived the right to terminate the lease based on that breach. The court emphasized that accepting rent after a

known default can constitute a waiver of the landlord's right to enforce the lease's termination clause for that specific breach). HACD's disregard for this standard suggests that its decision was not based on a fair evaluation of Plaintiffs' standing but rather on an improper motive to deny portability in favor of the landlord's interests.**( again this case through a google search of cases having to do with public corruption involving housing authority's or HUD, masses amounts of case law, easy find, no AI needed).**

- **Possible Abuse of Public Authority**: If HACD's actions were intended to benefit the landlord by denying Plaintiffs the opportunity to port their voucher, this may constitute an abuse of public authority. Public housing authorities are obligated to administer their programs equitably and without favoritism, ensuring that decisions are made transparently and fairly. The reliance on unsupported allegations from the landlord, coupled with the later approval of portability despite prior denials, reflects a possible misuse of HACD's position to deprive Plaintiffs of their rights.

- **Lack of Independent Verification or Transparency**: HACD's decision to deny portability without conducting an independent investigation into the landlord's allegations, or providing Plaintiffs an

opportunity to contest these claims, demonstrates a lack of transparency and procedural fairness. According to HUD regulations, **24 C.F.R. § 982.355(c)(4)**, housing authorities must have substantiated grounds for denying portability. The selective reliance on the landlord's statements without objective review violates this requirement and raises questions about the impartiality of HACD's actions.

- **Potential for Public Corruption**: Although there is no direct evidence of financial incentives or bribery at this time, the pattern of HACD's actions raises red flags suggestive of favoritism toward the landlord. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), public entities can be held liable when they act in concert with private parties to deprive individuals of their rights. Plaintiffs allege that HACD's coordination with the landlord deprived them of their due process rights and that this conduct may reflect a deeper issue of improper influence or collusion.**( now this was interesting, AI was no help on this one, but UMKC school of law had a good write up on this case)**

- **Request for Discovery to Uncover Potential Corruption**: Plaintiffs respectfully request that the Court allow discovery to investigate the nature of HACD's interactions with the landlord and to

determine whether improper influence or collusion affected HACD's decision-making process. Discovery may reveal internal communications or agreements between HACD and the landlord that could provide further evidence of improper conduct or abuse of authority.

## Conclusion to Public Corruption Section

Plaintiffs have direct evidence of public corruption, the pattern of HACD's arbitrary and inconsistent actions raises significant concerns. Plaintiffs request the opportunity to investigate further, as discovery could reveal additional information regarding HACD's potentially improper coordination with the landlord, suggesting possible public corruption. Plaintiffs urge the Court to consider these red flags when evaluating HACD's motion to dismiss.

## VII. BKA Holdings VIOLATED BANKRUPTCY DISCHARGE INJUNCTION (11 U.S.C. § 524)

Plaintiffs allege that HACD's refusal to port the Section 8 voucher, coupled with actions taken by other defendants to collect a debt discharged in Karen Sam's bankruptcy, violates the discharge injunction established under 11 U.S.C. § 524. This injunction protects debtors from any attempt to collect on discharged debts, including indirectly through housing authorities refusing essential

services. *In re Eastman*, 419 B.R. 711, 728 (Bankr. W.D. Tex. 2009), confirms that such actions constitute contempt of the discharge order and justify sanctions.**( this case was in case text)**

- **Case Law Support for Enforcement**: The Ninth Circuit in *In re Zilog, Inc.*, 450 F.3d 996, 1008 (9th Cir. 2006), upheld sanctions against creditors who willfully violated the discharge injunction by attempting to enforce previously discharged debts. HACD's refusal to cooperate with Plaintiffs' requests for voucher portability, especially after the discharge, effectively obstructs their legal protections under bankruptcy law.**( case text and case mine through Google search)**

- **Intentional Harm to Plaintiffs**: Plaintiffs allege HACD's and BKA Holdings actions were not incidental but part of a concerted effort to pressure them, denying them the fresh start intended by the bankruptcy discharge. Courts have consistently emphasized that violating a discharge injunction is a serious offense, warranting punitive measures.

## VIII. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss

pursuant to Rule 12(b)(1). Plaintiffs have adequately established federal question jurisdiction under 28 U.S.C. § 1331, and the Court should exercise supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367. Plaintiffs' allegations involve substantial questions of federal law and constitutional rights, warranting adjudication in this federal forum. I want to address something a little more personal.

The motion filed by Nicholas Cronauer is an unjust attempt to slander my character and discredit my legitimate grievances by misrepresenting my background and experiences. I have dedicated my life to serving the public, including work as a firefighter, police officer, correctional officer, and employee at the Braidwood nuclear plant. These roles reflect my integrity and dedication to bettering my community—qualities that have been consistent, even as I've faced extraordinary personal challenges.

I come from a complex background. I am a junior, and my father's life was marked by criminal activity with organized crime, which included using my identity since I was a child. This had profound consequences for me. As a result, I've been pulled into numerous legal battles—not due to my own actions, but because of my father's. Our family has faced 13 evictions, with a total of 147 lawsuits spanning Will County, DuPage County, and Cook County. These are tied largely to my father's criminal activities,

which left a long legacy that I've had to contend with throughout my life.

One notable example is my uncle, John Sam, who served as a lead detective in the infamous Jeanine Nicarico case in DuPage County. Despite his commitment to integrity, even he faced backlash, demonstrating how our family name became a target. I, however, have made a concerted effort to walk an honest path, standing firm in my resolve not to follow in my father's footsteps despite the overwhelming odds against me.

## Absence of Criminal Record

Despite the extensive legal challenges I've faced, I have no criminal record—aside from a recent arrest that was corruptly orchestrated, an incident that I believe was the result of retaliation. My only arrest, which will be expunged within a year, was based on fabricated allegations involving an old, discarded sword. The alleged victim, who had ties to the prosecuting detective through a Bible study group, asked me to take the sword from the garbage. I firmly believe that this arrest was a punishment for my prior reports of elder neglect involving the alleged victim's daughters. This was my "reward" for advocating for someone vulnerable and attempting to uphold what is right.

## Allegations of Misrepresentation and Fraud

Cronauer's motion asserts that I have engaged in fraudulent conduct by including "fake citations" to legal cases. He uses this claim as grounds for dismissal, citing my use of artificial intelligence to support my filings. First, I would like to clarify that my reliance on technology is simply a tool, not a means of deception. This motion distorts the reality of my situation and represents a broader attempt to undermine my credibility. The references to supposed "fake cases" are simply an attempt to distract from the merits of my claims. Lawyers and judges alike are using these same programs. In fact I believe this court has referenced and applauded the use of AI technology. I am doing nothing different then the attorneys do everyday. The only difference, it didn't cost me thousands in a degree in law and since no lawyer would help us, AI does.

In fact, Cronauer's own conduct raises ethical questions. His attempts to link my civil lawsuits to my credibility as a plaintiff are baseless and seem calculated to discredit me personally. Yes, I have been involved in civil cases. However, those lawsuits are predominantly a result of the fallout from my father's actions and the hardships my family has endured, not due to any wrongdoing on my part.

**Retaliation by Legal Professionals and the Attorney General's Office**

My interactions with the Attorney General's office and my former attorney, Joe Morris, are further examples of how I've been targeted. The Attorney General sued me three times, and while they lost twice, the third resulted in a default judgment due to an unethical arrangement. Morris, my attorney at the time, threw my case intentionally as part of a deal to get his own case dismissed. With the support of Jerry Larkin and the ARDC, we exposed this misconduct, leading to Morris's suspension and the removal of his firm.

This experience underscores a pattern of mistreatment by certain members of the legal community, including Cronauer and others who seem intent on using their positions to harm me. This unjust treatment has even extended to police officers, judges, and various high-profile individuals who have attempted to discredit me by association. But my record stands: I have no convictions, and my record remains clear despite the immense challenges I have faced.

**Unfounded Personal Attacks**

Cronauer's motion is filled with insinuations that I am somehow undeserving of justice because of my family's history and our struggles to maintain a home. His attitude suggests that my civil suits and evictions mean I am somehow less entitled to fair treatment under the law, which is an unacceptable stance. My father's actions and

my family's history should have no bearing on my right to seek justice. Cronauer's attempt to connect my background to my current case is a distraction, not a valid legal argument.

I am an open book with nothing to hide. If Cronauer intends to bring up irrelevant details from my past, he should be prepared to face scrutiny on the broader context of my experiences. I have faced retaliation from those in power and endured significant personal loss. Despite this, I have always chosen the path of integrity.

This motion to dismiss is yet another attempt to silence me and delegitimize my claims. Cronauer's strategy, focused on irrelevant personal history and misleading arguments, fails to address the real issues at hand. I urge the court to consider the context of my background and the facts of this case rather than the baseless, defamatory tactics employed by the defendant and his counsel.

**Respectfully submitted,**

/s/ Robert Sam and Karen Sam
**11/5/24**

8:43

< Emails to GCT

**HCV**                                                    10/10/24
To: robert sam >

## Robert Sam

Mr. Sam,

HACD is in receipt of your communications.  HACD considers you not in good standing due to failure to comply with family obligations under HCV to pay rent.  Please see attachments as you requested.


Housing Authority of the County of DeKalb
310 N. 6th Street
DeKalb, IL 60115
815.758.2692 - phone
815.758.4190 – fax

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version. The Housing Authority of the County of DeKalb 310 N 6th St., DeKalb, IL  60115 www.dekcohousing.com

8:43

< **Emails to GCT**     **Robert Sam**     ∧  ∨

Robert Sam HAP amendment 6-22-22.pdf
260.4kB

Robert Sam HAP amendment 8-24-22.pdf
575.3kB

---



**Robert Sam Back rent and Utilities (1).xlsx**
15 KB

---

CRONAUER LAW, LLP
1101 DeKalb Ave., Suite 2
Sycamore, IL 60178
(815) 895-8585
Info@CronauerLaw.com

February 27, 2024

Robert Sam, Karen Sam, and all unknown occupants of:
639 Stonegate Drive
Sycamore, IL 60178

Subject: **30 Day Notice to Quit Premises** - Non-Payment of Rent, Utilities, breach of lease terms, 735 ILCS 5/9-120.

Dear Robert Sam, Karen Sam, and all unknown occupants.

This letter serves as a formal Notice to Quit Premises in accordance with Section 4024(c) of the federal Coronavirus Aid, Relief, and Economic Security (CARES) Act and applicable state and local laws.

As of the date of this notice, you are in arrears of rent for the period of January 2022 through present day, totaling an amount not less than $5,780. This notice is to inform you that due to the non-payment of rent, you are required to vacate the premises located at 639 Stonegate Drive, Sycamore, Illinois, 60178 no later than 30 days from the date of this notice, which is March 28, 2024. As of the date of this notice, you are also in breach of the August 21, 2022, lease terms, specifically § 9, and 735 ILCS 5/9-120.

Please understand that the failure to pay rent, comply with the lease terms, and conduct prohibited by 735 ILCS 5/9-120, this violates the terms of your lease agreement dated August 21, 2022. In accordance with the federal CARES Act, you are hereby given 30 days' notice to vacate the premises. If you do not vacate by March 28, 2024, legal proceedings may be initiated to recover possession of the property.

Please be advised that this notice is made under the specific requirements set forth in Section 4024(c) of the CARES Act and is subject to change based on any amendments to federal, state, or local laws.

We appreciate your immediate attention to this matter. If you have any questions or need further clarification, please do not hesitate to contact me directly at (815) 895-8585.

Sincerely,

/s/ C. Nicholas Cronauer
1101 DeKalb Ave., Suite 2
Sycamore, IL 60178

7:37

< Sent  ∧ ∨

Found in Yahoo! Sent Mailbox

**robert sam**                    8/16/22
To: Melissa Mobile >

## Re: Robert

Ok. I can have it to you on the 31st. Can I get a total on the water bills, I believe there is only two. Thank you very very much Melissa.

Sincerely, Robert Sam

> On Aug 16, 2022, at 9:04 PM, Melissa Mobile <melissa@hrgsells.com> wrote:
>
> Robert,
>
> If you can pay $1900 plus all the late water bills and $5 late August rent I will do a month to month until you can find something but I need the cash before the 1st of the month otherwise I have no choice but to file the eviction.
>
> This is all I can do.
>
> Melissa
>
> > On Tue, Aug 16, 2022 at 8:56 PM robert sam <Harpees5@yahoo.com> wrote:





7:37

< Sent

Found in Yahoo! Sent Mailbox

**RS** robert sam    8/21/22
To: Melissa Mobile >

## Re: Housing Authority needs this MTM lease signed as well.

pdf **639 Stonegate Lease- Robert and Karen Sam-Ma...**
531 KB

Sincerely, Robert Sam

On Aug 21, 2022, at 6:33 PM, Melissa Mobile <melissa@hrgsells.com> wrote:

Please initial every page and sign and return to me so I can send to Kim.

Your portion every month will be $255 unless you can get them to up your voucher.

Thanks again,

Melissa Mobile, Managing Broker
Hometown Realty Group
330 West Elm St.
Sycamore, IL 60178

7:38

< Sent

### robert sam                    8/24/22
To: Kim   Cc: Melissa & 4 more... >

## Re: Robert Sam

I think I understand. So you'll continue paying month to month at 1695.00 and I pay 255.00?

Sincerely, Robert Sam

On Aug 24, 2022, at 10:16 AM, Kim Rodr <krodr@dekcohousing.com> wrote:

Mr. Sam,
HACD has received a copy of the signed lease agreement from your landlord with an increased contract rent of $1950 effective September 1st. Please understand that the full burden of the contract rent increase will be your responsibility effective September 1st, and by not moving out of the unit on the agreed upon date of August 31, 2022, you have waived your right to the in general 30-day notice of rent increase. See attached IR 9.1.2022 R. Sam for more details.
Effective September 1st
Housing Assistance Payment = $1695
Robert Sam Rent to Landlord = $255

When you find your new unit in Lake County and have your move-in date you and your landlord must provide HACD with a completed intent to vacate form so HAP payments are stopped at HACD prior to the start of HAP payments at your new housing authority.

I have included your landlord on this email so we are all