FILED
11/5/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
E.C

# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION

**Case No. 3:23-cv-50301**

**Robert Sam and Karen Sam, Plaintiffs,**
**v.**
**Riley Oncken, Riley N. Oncken, P.C., Nicholas Cronauer, and Cronauer Law, et al., Defendants.**

## I. Introduction

Plaintiffs Robert Sam and Karen Sam, proceeding pro se, respectfully submit this Response opposing Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that Plaintiffs' claims lack federal jurisdiction and that certain claims fail to state a claim upon which relief can be granted. Plaintiffs contend, however, that each of their claims arises from federally protected rights, invoking federal question jurisdiction and warranting this Court's oversight.

Plaintiffs' claims are rooted in violations of federal statutes, including but not limited to the CARES Act, HUD regulations, Fair Housing Act (FHA), Rehabilitation Act, Americans with Disabilities Act (ADA), and the Fair Debt Collection Practices Act (FDCPA). Each of these

federal statutes provides essential protections for tenants, individuals with disabilities, and consumers. Plaintiffs allege that Defendants engaged in retaliatory, discriminatory, and coercive conduct that not only violated these statutes but also involved the misuse of state mechanisms to further private objectives—an approach often referred to as "cloaking." This misuse of state authority constitutes "state action" and thus invokes federal jurisdiction to prevent abuses of federal protections.

Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety and allow Plaintiffs to proceed with their claims based on federal question jurisdiction and supplemental state law claims.

## II. Establishing Federal Jurisdiction (28 U.S.C. § 1331)

### A. Federal Question Jurisdiction

Federal question jurisdiction under 28 U.S.C. § 1331 is conferred when a case arises under the Constitution, laws, or treaties of the United States. Plaintiffs' claims in this case involve specific federal statutes, including the CARES Act, FHA, ADA, Rehabilitation Act, HUD regulations, and FDCPA. Each of these statutes provides protections for tenants and individuals with disabilities in

federally assisted housing, ensuring essential federal oversight and enforcement.

1. **CARES Act and HUD Regulations**
   Plaintiffs assert that Defendants violated mandatory notice provisions under the CARES Act, which established federally mandated protections against eviction for tenants in federally funded housing during the COVID-19 pandemic. Although Defendants argue that the CARES Act lacks a private right of action, federal courts retain the authority to enforce claims where substantial federal interests are implicated. In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005), the Supreme Court held that a federal issue "embedded" within a state claim could confer federal jurisdiction if it involves significant federal interest. Here, Plaintiffs allege Defendants failed to comply with the CARES Act's notice requirements, which are integral to tenant protections and therefore invoke federal oversight.**( this case law found everywhere on Google, there are about 10 cases I found but this fit the bill)**

2. **Fair Housing Amendments Act (FHA)**
   The FHA (42 U.S.C. § 3604(f)) prohibits housing discrimination based on disability. Plaintiffs allege that Defendants engaged in discriminatory practices specifically targeting Plaintiffs as disabled tenants. In

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979), the Supreme Court recognized that federal courts have a vested interest in enforcing fair housing standards. Plaintiffs further allege that Defendants retaliated against them in direct response to their assertion of rights under the FHA, protected under 42 U.S.C. § 3617, which prohibits coercion, intimidation, threats, or interference with individuals exercising their rights under the FHA.**( case law found on justia and oyez)**

3. **ADA and Rehabilitation Act**
   The ADA and Rehabilitation Act require reasonable accommodations for individuals with disabilities, particularly in housing contexts, especially when federal funds are involved. In *Barnes v. Gorman*, 536 U.S. 181 (2002), the Supreme Court held that recipients of federal funds are required to make accommodations for individuals with disabilities to avoid discrimination. Plaintiffs assert that Defendants violated these requirements by failing to make necessary accommodations and acting in a way that discriminated against Plaintiffs' federally protected rights. This claim invokes federal jurisdiction due to the ADA and Rehabilitation Act's focus on preventing disability-based discrimination.**( case law found on the legal information institute)**

## B. Cloaking Argument – Misuse of State Mechanisms to Further Private Goals

Plaintiffs argue that Defendants improperly used state processes to further private interests under the guise of legal authority, effectively "cloaking" their private objectives within state actions. In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), the Supreme Court established that private parties might be treated as state actors under 42 U.S.C. § 1983 if they misuse state processes to violate federally protected rights. Plaintiffs allege that Defendants coordinated legal actions, including eviction proceedings, with the intention of suppressing Plaintiffs' federal housing and disability rights, all while concealing their retaliatory motives within the procedural mechanisms of state eviction processes.

In *Lugar*, the Supreme Court held that private misuse of state legal procedures could constitute state action if it results in the deprivation of rights. Plaintiffs argue that Defendants, by using state eviction processes to penalize them for exercising federal rights, engaged in cloaked conduct intended to infringe upon those rights. This misuse of state power for private objectives warrants federal jurisdiction as it is essential to protect federally mandated tenant and disability rights from subversion.

Furthermore, Plaintiffs contend that Defendants' actions were designed not only to evict them but to intimidate and retaliate against them for asserting protections under the FHA, ADA, and Rehabilitation Act. This calculated use of state mechanisms to achieve a private aim effectively cloaks Defendants' intentions, thereby fulfilling the criteria for federal court review. Federal courts must address such cloaking tactics to ensure that state processes are not misused to mask private discrimination.**( case law found on justia and library of congress)**

## C. Counts I & II: CARES Act and HUD Violations

### 1. Private Right of Action

Defendants argue that the CARES Act does not explicitly grant a private right of action for tenants. While the CARES Act itself does not contain language providing an express private right, federal courts have recognized that statutory provisions, especially those intended to protect tenants and vulnerable individuals, may be enforced when federal rights are substantially implicated. In *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020), the court acknowledged that the CARES Act was enacted to protect tenants during the COVID-19 pandemic, which involved substantial federal interests in preventing housing instability. Here, Plaintiffs allege Defendants violated the CARES Act's mandatory notice

requirements, protections that are essential for tenants facing potential eviction during emergencies.

The court's decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), supports the notion that federal jurisdiction is appropriate when a federal statute raises substantial federal interests, even if it does not explicitly provide a private right of action. Plaintiffs argue that the protections afforded by the CARES Act, including notice requirements, warrant federal oversight because they directly impact housing stability and tenant rights, thus presenting a significant federal interest.**( all case law here AI's search results where accurate and after a extensive read on justia and the library of congress and law text these are solid cases)**

## 2. HUD Regulations

HUD regulations outline procedural protections for tenants in federally funded housing programs, including specific notice requirements prior to eviction. These regulations set standards to prevent arbitrary or retaliatory eviction of tenants in federal housing programs. In *Thorpe v. Housing Authority of Durham*, 393 U.S. 268 (1969), the Supreme Court upheld HUD's authority to establish regulatory standards to protect tenant rights, recognizing that HUD standards must be enforced to ensure fair housing practices in federal housing programs.

Plaintiffs assert that Defendants violated these HUD regulations by failing to provide the required notice prior to eviction, constituting an actionable violation under federal law. Federal jurisdiction is appropriate here, as HUD's regulatory authority governs federally funded housing, and these protections must be enforced to prevent landlords from undermining federal housing policies. Plaintiffs' claims underscore the necessity of federal oversight to uphold tenant protections provided by HUD regulations.**(case mine and Vlex with a Google search. Lexus nexus also but limited unless you pay for the full membership )**

## 3. Count IV: Fair Housing Act (FHA)

Plaintiffs allege that Defendants' actions constitute discriminatory practices under the Fair Housing Act (FHA), which prohibits discrimination in housing based on disability. Specifically, 42 U.S.C. § 3604(f) of the FHA makes it unlawful for housing providers to discriminate against individuals with disabilities by refusing reasonable accommodations or taking adverse actions against them due to their protected status.

In *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979), the Supreme Court affirmed that individuals affected by discriminatory housing practices have the right to bring claims under the FHA in federal court.

Plaintiffs contend that Defendants targeted them for eviction in direct response to their disabilities and as retaliation for asserting their rights under the FHA. Such discriminatory eviction practices contravene the FHA, which mandates federal courts to address housing discrimination and uphold protections for individuals with disabilities.

Additionally, Plaintiffs allege that Defendants engaged in retaliatory eviction in violation of 42 U.S.C. § 3617, which prohibits coercion, intimidation, threats, or interference with any individual exercising their rights under the FHA. Courts have consistently held that retaliatory eviction against individuals asserting their FHA rights is unlawful. In *Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999), the court found that landlords who retaliate against tenants asserting fair housing rights may be liable under the FHA. Plaintiffs allege that Defendants' actions, including their attempts to evict Plaintiffs for exercising disability rights, represent clear retaliatory conduct under the FHA.

Federal jurisdiction is warranted here to address and remedy discriminatory practices prohibited by the FHA. Plaintiffs argue that Defendants' actions directly infringe upon their federally protected housing rights and that federal court oversight is necessary to prevent such discriminatory and retaliatory actions.

## D. Count V: Rehabilitation Act

Plaintiffs allege that Defendants failed to provide reasonable accommodations and engaged in discriminatory practices in violation of the Rehabilitation Act, which prohibits discrimination on the basis of disability by entities receiving federal financial assistance, including federally funded housing programs. Under 29 U.S.C. § 794, the Rehabilitation Act mandates that recipients of federal funds provide equal access to services, benefits, and programs to individuals with disabilities.

The Supreme Court in *School Board of Nassau County v. Arline*, 480 U.S. 273 (1987), underscored the obligations of federally funded entities to prevent discrimination against individuals with disabilities. Plaintiffs argue that Defendants, by refusing to provide necessary accommodations, violated this obligation and failed to meet the standards set forth under the Rehabilitation Act. Federal jurisdiction is warranted here because the Rehabilitation Act directly establishes Plaintiffs' right to non-discriminatory treatment in federally supported housing.

Furthermore, in *Barnes v. Gorman*, 536 U.S. 181 (2002), the Supreme Court affirmed that individuals with disabilities have enforceable rights under the Rehabilitation Act to seek redress for discrimination and

denial of accommodations. Plaintiffs contend that Defendants' actions were not only discriminatory but also violated federal standards that protect the housing rights of individuals with disabilities. Given that the Rehabilitation Act directly applies to Defendants' obligations as participants in federally funded housing, Plaintiffs' claims fall within federal jurisdiction and must be addressed to ensure compliance with federally mandated protections.**( all case law AI was goggled and justia and oyez)**

## E. Count XVII: 42 U.S.C. § 1983 Civil Rights Violation

Plaintiffs further allege that Defendants acted under color of state law by misusing state mechanisms to infringe upon Plaintiffs' federally protected rights, thereby violating 42 U.S.C. § 1983. In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), the Supreme Court held that private parties could be considered state actors when they misuse state procedures to infringe upon constitutional or federally protected rights. Plaintiffs argue that Defendants engaged in state action by exploiting state eviction procedures to retaliate against Plaintiffs for asserting their rights under federal housing and disability laws.

To establish a claim under § 1983, a plaintiff must show that a person acting under color of state law deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States. In *West v.*

*Atkins*, 487 U.S. 42 (1988), the Court clarified that private entities could be liable under § 1983 if they function as state actors. Plaintiffs assert that Defendants coordinated eviction actions as a form of retaliation, effectively misusing state legal mechanisms to penalize Plaintiffs for exercising their federally protected rights.

Additionally, Plaintiffs argue that Defendants' actions were intended to interfere with Plaintiffs' exercise of their federal rights and to deprive them of their protections under the FHA, ADA, and Rehabilitation Act. This misuse of state mechanisms for discriminatory and retaliatory purposes fulfills the requirements for state action under § 1983, invoking federal jurisdiction to address Defendants' alleged civil rights violations. Plaintiffs contend that federal oversight is essential to ensure that private parties do not exploit state processes to subvert federally mandated protections.

## F. Count X: Fair Debt Collection Practices Act (FDCPA)

Plaintiffs assert that Defendants engaged in debt collection practices in violation of the Fair Debt Collection Practices Act (FDCPA). The FDCPA prohibits abusive, deceptive, and unfair practices by debt collectors, particularly in contexts involving consumer debt. Plaintiffs argue that Defendants' eviction actions were

directly tied to efforts to recover unpaid rent and that these actions qualify as debt collection under the FDCPA.

The Supreme Court has interpreted the FDCPA to apply to attorneys engaged in debt collection, including those who initiate legal proceedings to collect on debts. In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Court held that the FDCPA applies to attorneys involved in debt collection litigation. Plaintiffs argue that Defendants' eviction proceedings, initiated as an attempt to collect unpaid rent, fall squarely within the scope of the FDCPA. This interpretation of debt collection aligns with cases that have determined eviction proceedings involving rent recovery can be subject to the FDCPA's protections.

Additionally, in *Romea v. Heiberger & Associates*, 163 F.3d 111 (2d Cir. 1998), the court held that notices demanding rent payment or possession, served as part of eviction proceedings, could constitute debt collection under the FDCPA. Plaintiffs contend that Defendants, in pursuing eviction with the intent of recovering rent, engaged in conduct that qualifies as debt collection. Federal jurisdiction is warranted to address these FDCPA claims and ensure that Plaintiffs' rights as consumers are protected under federal debt collection law.**( all case law on justia and library of congress)**

## G. Count XXI: Americans with Disabilities Act (ADA)

Plaintiffs also allege that Defendants violated the Americans with Disabilities Act (ADA) by refusing to make reasonable accommodations for Plaintiffs' disabilities and by discriminating against them on the basis of their disabilities. Title III of the ADA prohibits discrimination in places of public accommodation, and while residential facilities are generally not considered public accommodations, courts have applied the ADA to certain housing contexts, especially when the housing is connected to public services or receives federal support.

The ADA mandates reasonable accommodations in policies, practices, or procedures when necessary to provide individuals with disabilities equal access to housing. In *Bragdon v. Abbott*, 524 U.S. 624 (1998), the Supreme Court emphasized the broad reach of the ADA in protecting individuals with disabilities from discrimination. Plaintiffs argue that Defendants' refusal to provide reasonable accommodations in the eviction process represents a clear violation of ADA protections, as Defendants failed to consider Plaintiffs' disabilities in their housing-related actions.

Furthermore, in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), the Supreme Court held that the ADA requires public entities to provide services to individuals with disabilities in the most integrated setting appropriate to their needs. Plaintiffs allege that Defendants' actions disregarded these ADA requirements by failing to offer

necessary accommodations and attempting to evict them without consideration of their disabilities. Given the federal interest in enforcing ADA protections, Plaintiffs' claims fall under federal jurisdiction, warranting judicial intervention to uphold the anti-discrimination mandates of the ADA.**( case law on quimbee)**

## H. Retaliation Claims under FHA and ADA

Plaintiffs allege that Defendants retaliated against them for asserting their rights under the Fair Housing Act (FHA) and the Americans with Disabilities Act (ADA). Both the FHA and ADA prohibit retaliatory actions against individuals who seek to exercise their federally protected rights, including the right to fair and equal treatment in housing. Plaintiffs contend that Defendants pursued eviction and other retaliatory measures in direct response to Plaintiffs' assertion of their disability and housing rights.

The FHA specifically prohibits retaliation under 42 U.S.C. § 3617, making it unlawful for housing providers to coerce, intimidate, threaten, or interfere with individuals exercising their rights under the FHA. In *Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999), the court ruled that landlords are prohibited from retaliating against tenants asserting their fair housing rights. Plaintiffs argue that Defendants' actions, including their attempts to evict Plaintiffs as punishment for requesting reasonable

accommodations, constitute retaliatory conduct in violation of FHA protections.

Similarly, the ADA includes protections against retaliation for individuals who advocate for their disability rights. In *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002), the court affirmed that ADA rights are protected from retaliatory actions, emphasizing that individuals with disabilities must be able to seek accommodations without fear of reprisal. Plaintiffs contend that Defendants' actions in refusing accommodations and attempting to evict them were driven by discriminatory motives, violating federal anti-retaliation provisions under both the FHA and ADA. **(case text)**

Federal jurisdiction is appropriate here to ensure the enforcement of these anti-retaliation protections, which are critical to safeguarding individuals' rights to housing free from discrimination and retaliation. Plaintiffs seek the Court's intervention to uphold these protections and prevent Defendants from retaliating against individuals exercising their federally guaranteed rights.

## I. Supplemental Jurisdiction Over State Claims

In addition to their federal claims, Plaintiffs seek the Court's exercise of supplemental jurisdiction over related state law claims, including defamation, intentional

infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and malicious prosecution. Under 28 U.S.C. § 1367(a), federal courts may exercise supplemental jurisdiction over state claims that form part of the same case or controversy as the federal claims.

The Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), held that federal courts have the discretion to exercise supplemental jurisdiction when the state law claims arise from a "common nucleus of operative fact" with the federal claims. Plaintiffs' state law claims are closely related to their federal claims, as they involve the same alleged conduct by Defendants in the context of housing, disability accommodations, and retaliation. Consolidating these claims within a single proceeding serves the interests of judicial economy, convenience, and fairness.

Furthermore, in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), the Supreme Court emphasized the importance of efficiency in handling state and federal claims within the same lawsuit to avoid duplicative litigation. Plaintiffs argue that their defamation, IIED, NIED, and malicious prosecution claims are intertwined with their federal claims, as they arise from Defendants' alleged retaliatory actions and mistreatment. Accordingly, supplemental jurisdiction is appropriate to address all claims cohesively and allow Plaintiffs the opportunity for full redress.

## J. State Law Claims Against Each Defendant

In addition to the federal claims, Plaintiffs bring state law claims against Defendants, including defamation, intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and malicious prosecution. These claims are directly related to the alleged retaliatory actions taken by Defendants, which harmed Plaintiffs' reputations, mental health, and overall well-being.

## K. Defamation (Count XV)

Plaintiffs allege that Defendant Riley Oncken made defamatory statements about them on public platforms, including GoFundMe, with the intent to damage their reputation. Defamation under Illinois law involves making false statements to a third party that harm an individual's reputation. In *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77 (1996), the Illinois Supreme Court ruled that defamation claims are actionable when the statements cause reputational harm and are made with intent to damage. Plaintiffs argue that Oncken's public statements were intended to harm their personal and professional reputation, thereby causing them significant emotional distress and social harm.

## L. Malicious Prosecution (Count XXII)

Plaintiffs contend that Defendants pursued eviction proceedings without just cause, constituting malicious prosecution. Illinois law defines malicious prosecution as initiating legal action without probable cause and with malicious intent. In *Mangus v. Cock Robin Ice Cream Co.*, 52 Ill. App. 3d 110 (1st Dist. 1977), the court held that plaintiffs may bring claims for malicious prosecution when defendants use the legal process to harm others with improper motives. Plaintiffs assert that Defendants pursued eviction as a retaliatory measure without legitimate grounds, causing unnecessary harm and distress.

## M. Abuse of Process (Count IX)

Plaintiffs also claim that Defendants abused the eviction process to further their own interests rather than to pursue lawful eviction. Abuse of process occurs when legal proceedings are used for an ulterior purpose beyond what the process was designed for. In *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962 (1st Dist. 1972), the court noted that legal actions motivated by extrinsic purposes may constitute abuse of process. Plaintiffs argue that Defendants misused the eviction process to intimidate and retaliate against them, rather than for any legitimate legal purpose, thereby constituting an abuse of process.

## N. Intentional and Negligent Infliction of Emotional Distress (IIED and NIED)

Plaintiffs contend that Defendants' actions caused severe emotional distress, justifying claims for both IIED and NIED. Under Illinois law, IIED claims require conduct that is extreme and outrageous, causing severe emotional distress. In *McGrath v. Fahey*, 126 Ill. 2d 78 (1988), the Illinois Supreme Court ruled that extreme conduct that exceeds all bounds of decency may be considered intentional infliction of emotional distress. Plaintiffs allege that Defendants' retaliatory actions and defamatory statements meet this threshold, causing substantial emotional and psychological harm.

In addition, Plaintiffs bring a claim for NIED, arguing that Defendants' conduct foreseeably caused emotional harm. Illinois law recognizes NIED claims when a defendant's negligent actions cause distress that is reasonably foreseeable. In *Corgan v. Muehling*, 143 Ill. 2d 296 (1991), the Illinois Supreme Court held that plaintiffs may recover for emotional distress caused by another's conduct. Plaintiffs argue that Defendants' actions, taken with a disregard for Plaintiffs' well-being, led to distress that was foreseeable and actionable under Illinois law.

## O. Punitive Damages to Uphold Public Integrity

Plaintiffs seek punitive damages to deter Defendants and similar parties from engaging in retaliatory and discriminatory conduct. Punitive damages are awarded to

punish defendants whose actions are willful, wanton, or in reckless disregard for the rights of others. In *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), the Supreme Court held that punitive damages serve as a deterrent for reprehensible conduct that violates public rights or interests.

Plaintiffs argue that Defendants knowingly and intentionally disregarded their rights under federal and state protections, warranting punitive damages. Defendants' actions, including their alleged retaliation, discrimination, and defamatory conduct, reveal a pattern of willful disregard for Plaintiffs' federally and state-protected rights. Punitive damages in this case would underscore the importance of respecting federal housing and disability rights and the integrity of legal processes.

Plaintiffs contend that punitive damages are necessary not only to address the harm inflicted on them but also to send a clear message to other landlords, attorneys, and individuals in positions of power that such conduct will not be tolerated. By awarding punitive damages, the Court can help deter similar violations and reinforce the significance of adherence to legal and ethical standards within the community.

## P. VII. Defendants VIOLATED BANKRUPTCY DISCHARGE INJUNCTION (11 U.S.C. § 524)

Plaintiffs allege that HACD's refusal to port the Section 8 voucher, coupled with actions taken by other defendants to collect a debt discharged in Karen Sam's bankruptcy, violates the discharge injunction established under 11 U.S.C. § 524. This injunction protects debtors from any attempt to collect on discharged debts, including indirectly through housing authorities refusing essential services. *In re Eastman*, 419 B.R. 711, 728 (Bankr. W.D. Tex. 2009), confirms that such actions constitute contempt of the discharge order and justify sanctions.

- **Case Law Support for Enforcement**: The Ninth Circuit in *In re Zilog, Inc.*, 450 F.3d 996, 1008 (9th Cir. 2006), upheld sanctions against creditors who willfully violated the discharge injunction by attempting to enforce previously discharged debts. HACD's refusal to cooperate with Plaintiffs' requests for voucher portability, especially after the discharge, effectively obstructs their legal protections under bankruptcy law.

- **Intentional Harm to Plaintiffs**: Plaintiffs allege HACD's actions were not incidental but part of a concerted effort to pressure them, denying them the fresh start intended by the bankruptcy discharge. Courts have consistently emphasized that violating a discharge injunction is a serious offense, warranting punitive measures.

## Q. POTENTIAL PUBLIC CORRUPTION AND IMPROPER COLLUSION BETWEEN HACD AND THE LANDLORD

Plaintiffs raise significant concerns regarding the possibility of improper collusion and potential public corruption between HACD and the landlord and her attorneys. The pattern of inconsistent and arbitrary actions taken by HACD, as detailed below, suggests that HACD may have abused its public office to serve the private interests of the landlord and her lawyers Riley Oncken and Nicholas Cronauer at the expense of Plaintiffs' due process rights and access to fair housing. Riley Oncken a ex Dekalb county board member And also candidate for states attorney as well as Brett Brown, Melissa Mobiles relative who was the executive director of the Dekalb county housing authority.

- **Inconsistent Application of Policies for Personal Gain**: HACD's denial of portability for Plaintiffs' Section 8 voucher based solely on the landlord's unverified allegations—despite the landlord accepting rent payments and entering into a new lease with Plaintiffs—raises concerns about HACD's motives. Courts have found that the acceptance of rent and lease renewal acts as a waiver of prior claims of tenant default, as in *Bank of America v. 3301 Atlantic,*. HACD's disregard for this standard suggests that its decision was not based on a fair

evaluation of Plaintiffs' standing but rather on an improper motive to deny portability in favor of the landlord's interests.

- **Possible Abuse of Public Authority**: If HACD's actions were intended to benefit the landlord by denying Plaintiffs the opportunity to port their voucher, this may constitute an abuse of public authority. Public housing authorities are obligated to administer their programs equitably and without favoritism, ensuring that decisions are made transparently and fairly. The reliance on unsupported allegations from the landlord, coupled with the later approval of portability despite prior denials, reflects a possible misuse of HACD's position to deprive Plaintiffs of their rights.

- **Lack of Independent Verification or Transparency**: HACD's decision to deny portability without conducting an independent investigation into the landlord's allegations, or providing Plaintiffs an opportunity to contest these claims, demonstrates a lack of transparency and procedural fairness. According to HUD regulations, **24 C.F.R. § 982.355(c)(4)**, housing authorities must have substantiated grounds for denying portability. The selective reliance on the landlord's statements without objective review violates this requirement

and raises questions about the impartiality of HACD's actions.

- **Potential for Public Corruption**: Although there is no direct evidence of financial incentives or bribery at this time, the pattern of HACD's actions raises red flags suggestive of favoritism toward the landlord. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), public entities can be held liable when they act in concert with private parties to deprive individuals of their rights. Plaintiffs allege that HACD's coordination with the landlord deprived them of their due process rights and that this conduct may reflect a deeper issue of improper influence or collusion.

- **Request for Discovery to Uncover Potential Corruption**: Plaintiffs respectfully request that the Court allow discovery to investigate the nature of HACD's interactions with the landlord and to determine whether improper influence or collusion affected HACD's decision-making process. Discovery may reveal internal communications or agreements between HACD and the landlord that could provide further evidence of improper conduct or abuse of authority.

## Conclusion to Public Corruption Section

Plaintiffs have direct evidence of public corruption, the pattern of HACD's arbitrary and inconsistent actions raises significant concerns. Plaintiffs request the opportunity to investigate further, as discovery could reveal additional information regarding HACD's potentially improper coordination with the landlord, suggesting possible public corruption. Plaintiffs urge the Court to consider these red flags when evaluating HACD's motion to dismiss.

## Conclusion

For the reasons outlined above, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss in its entirety. Plaintiffs have demonstrated that their claims arise under federal law, establishing federal question jurisdiction under 28 U.S.C. § 1331. Each claim is supported by specific statutory provisions and relevant case law, justifying the Court's jurisdiction over both federal and state claims.

Plaintiffs' allegations against Defendants include violations of the CARES Act, HUD regulations, the Fair Housing Act (FHA), the Rehabilitation Act, the Americans with Disabilities Act (ADA), and the Fair Debt

Collection Practices Act (FDCPA), as well as state law claims for defamation, intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), malicious prosecution, and abuse of process. Defendants' actions, as alleged, involve misuse of state mechanisms to further private interests, constituting a form of "cloaking" that demands federal oversight to prevent the subversion of federally protected rights.

Additionally, Plaintiffs contend that Defendants' actions were retaliatory, intended to punish Plaintiffs for asserting their federal rights. This conduct represents a severe abuse of authority and a violation of critical protections afforded by federal law. Plaintiffs urge the Court to deny Defendants' Motion to Dismiss, allowing Plaintiffs to pursue their claims and seek remedies for the alleged harm.

In addition to compensatory relief, Plaintiffs seek punitive damages to deter Defendants and others from engaging in similar misconduct. A punitive damages award would emphasize the importance of compliance with federal housing and disability laws and underscore the need for integrity in legal proceedings.

Accordingly, Plaintiffs respectfully request that the Court:

1. Deny Defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6);

2. Retain jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 and 42 U.S.C. § 1983;
3. Exercise supplemental jurisdiction over Plaintiffs' related state law claims under 28 U.S.C. § 1367; and
4. Allow Plaintiffs to proceed with their claims and seek full relief for the harm alleged.

**Respectfully submitted,**

/s/ Robert Sam and Karen Sam
**11/5/2024**