

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION

**ROBERT SAM and KAREN SAM,**
**Plaintiffs,**

v.

**BKA HOLDING, LLC, MELISSA MOBILE, RILEY ONCKEN, RILEY N. ONCKEN, P.C., CHRISTOPHER NICHOLAS CRONAUER, CRONAUER LAW LLP, HOUSING AUTHORITY OF THE COUNTY OF DEKALB, CITY OF SYCAMORE, ILLINOIS,**
**Defendants.**

FILED

MEN

11/7/2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Case No. 3:23-cv-50301
Hon. Judge Ian D. Johnston
Magistrate Judge Margaret Schneider

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT HOUSING AUTHORITY OF THE COUNTY OF DEKALB'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

Plaintiffs Robert and Karen Sam, proceeding pro se, respectfully submit this Response in Opposition to Defendant Housing Authority of the County of DeKalb's

(HACD) Motion to Dismiss Plaintiffs' Third Amended Complaint. For the reasons set forth below, the motion should be denied in its entirety.

# INTRODUCTION

Defendant HACD's Motion to Dismiss overlooks both the factual sufficiency and legal soundness of Plaintiffs' claims. Plaintiffs have made detailed factual allegations concerning HACD's failure to enforce housing standards, its disregard for Plaintiffs' due process rights, and its intentional misuse of procedural defenses to avoid accountability. Plaintiffs assert plausible claims under both federal and Illinois law, and HACD's motion does not satisfy the standard for dismissal under Federal Rule of Civil Procedure 12(b)(6).

# STANDARD OF REVIEW

Under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007);**(case law found on the United States department of justice)** *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate only where the complaint fails to state a plausible claim for relief. Plaintiffs' complaint provides sufficient factual detail to meet this threshold.

# ARGUMENT

# I. PLAINTIFFS HAVE ADEQUATELY PLED A CLAIM FOR VIOLATION OF LANDLORD-TENANT REGULATIONS (COUNT VI)

HACD argues that there is no private right of action for enforcing HUD's Housing Quality Standards (HQS) in subsidized housing. However, this overlooks well-established case law affirming the rights of Section 8 tenants to expect habitable conditions, as mandated by both federal standards and Illinois law.

- **Federal Law**: The Supreme Court in *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418 (1987), held that tenants may bring claims to enforce rights under federally funded housing programs. Additionally, *Gamble v. City of Escondido*, 104 F.3d 300 (9th Cir. 1997), recognized that public housing agencies are bound to ensure that properties meet basic quality standards.**( case text and case mine with a Google search)**

- **Illinois Law**: Illinois has long supported tenants' rights to safe, habitable living conditions. *Davis v. Chicago Housing Authority*, 136 Ill. 2d 296, 555 N.E.2d 343 (1990), underscores the duty of public housing authorities to maintain habitable conditions.

HACD's repeated failures to address Plaintiffs' complaints about inadequate heating, unsafe electrical wiring,

structural issues, and mold violations clearly breach this duty. The conditions present a substantial threat to health and safety, particularly given Plaintiffs' documented medical vulnerabilities. These allegations more than satisfy the pleading standard.

## II. PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED WARRANTY OF HABITABILITY AGAINST HACD (COUNT VII) IS VALID

HACD contends that because it is not the property owner, the warranty of habitability does not apply. However, HACD is a direct party to the Housing Assistance Payment (HAP) Contract and has an obligation to ensure that housing under its authority meets HUD's standards.

- **Housing Authority's Duty**: *Thorpe v. Housing Authority of Durham*, 393 U.S. 268 (1969), supports the principle that housing authorities, through contractual agreements like the HAP, are accountable for tenant safety and habitability. Illinois courts further recognized that housing authorities must act in ways that protect tenants from unsafe conditions. See *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 280 N.E.2d 208 (1972).**( case law found on justia and DePaul university)**

- **Specific Allegations**: Plaintiffs allege that HACD failed multiple HQS inspections, ignored orders to

complete urgent repairs (such as broken heating and mold), and knowingly left conditions unaddressed, violating Illinois law and HUD regulations.

## III. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR CIVIL CONSPIRACY (COUNT XIII)

Under Illinois law, civil conspiracy requires (1) an agreement, (2) an overt act in furtherance of that agreement, and (3) resulting damages. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994). Plaintiffs detail a coordinated effort among HACD, the City of Sycamore, and the property owner to obstruct Plaintiffs' tenant rights, suppress necessary repairs, and allow HACD's funding obligations to be improperly managed.

- **Tortious Conduct**: Plaintiffs allege that HACD engaged in this conspiracy by inaction and procedural manipulation to support a scheme that deprived Plaintiffs of habitable housing. Courts have found such conduct actionable when it is designed to harm the plaintiffs through coordinated misconduct. See *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 24 (1998).

- **Specific Allegations of Agreement**: Plaintiffs' complaint details the HACD's and City's combined actions to alter local ordinances and to justify HACD's refusal to address habitability issues. These

actions are sufficient to establish an alleged conspiracy to protect the landlord's interests at the expense of tenant rights.

## IV. PLAINTIFFS HAVE ESTABLISHED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT XIV)

Plaintiffs' claim for intentional infliction of emotional distress is well-supported. Illinois law requires (1) extreme and outrageous conduct, (2) intent or recklessness in causing distress, and (3) severe emotional distress. *Hernandez v. Dart*, 635 F. Supp. 2d 798, 813 (N.D. Ill. 2009).

- **Outrageous Conduct**: Plaintiffs allege that HACD knowingly subjected them to substandard housing conditions, disregarding documented health conditions, and engaged in baseless eviction threats. This conduct, under Illinois standards, is sufficiently "outrageous" to state a claim, especially when vulnerable tenants are at risk.

- **Case Law**: Illinois courts have found emotional distress claims viable where conduct jeopardizes health or safety. *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 88 (1976), held that distress claims can succeed when actions place victims in prolonged

distress or physical danger, as HACD's actions have done here.

## V. DEFENDANTS' "CLOAKING" OF PRIVATE ACTIONS UNDER STATE PROCESS VIOLATES DUE PROCESS

Plaintiffs further allege that HACD used state processes improperly to mask its private motives, thereby violating Plaintiffs' due process rights. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), establishes that public entities are accountable when official policy or actions cause harm. HACD's manipulation of procedural defenses to avoid accountability, as alleged, constitutes an abuse of public power and warrants scrutiny.

- **Procedural Misuse as Cloaking**: HACD's selective enforcement of policies and its failure to act on legitimate tenant concerns represents a cloaking tactic designed to avoid liability. Such procedural misuse to obscure improper private objectives is a serious due process concern.

## VI. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED FEDERAL CLAIMS UNDER SECTION 1983

Plaintiffs allege that HACD's denial of their Section 8 voucher portability without a legitimate basis constitutes a deprivation of due process, in violation of **42 U.S.C. §**

**1983**. Plaintiffs' inability to relocate to safer housing due to HACD's actions places their health and safety at risk.

- **Due Process Rights**: *Goldberg v. Kelly*, 397 U.S. 254, 266 (1970), mandates procedural protections in the administration of benefits such as Section 8 vouchers. Plaintiffs assert that HACD's refusal to allow portability without a hearing violated these procedural rights.

- **Substantive Due Process**: *Gamble v. City of Escondido*, 104 F.3d 300 (9th Cir. 1997), holds that due process violations may be actionable when a public entity arbitrarily denies essential housing rights. Plaintiffs' allegations meet this threshold.

## VII. HACD VIOLATED BANKRUPTCY DISCHARGE INJUNCTION (11 U.S.C. § 524)

Plaintiffs allege that HACD's refusal to port the Section 8 voucher, coupled with actions taken by other defendants to collect a debt discharged in Karen Sam's bankruptcy, violates the discharge injunction established under 11 U.S.C. § 524. This injunction protects debtors from any attempt to collect on discharged debts, including indirectly through housing authorities refusing essential services. *In re Eastman*, 419 B.R. 711, 728 (Bankr. W.D. Tex. 2009), confirms that such actions constitute contempt

of the discharge order and justify sanctions.**( this case comes up case text)**

- **Case Law Support for Enforcement**: The Ninth Circuit in *In re Zilog, Inc.*, 450 F.3d 996, 1008 (9th Cir. 2006), upheld sanctions against creditors who willfully violated the discharge injunction by attempting to enforce previously discharged debts. HACD's refusal to cooperate with Plaintiffs' requests for voucher portability, especially after the discharge, effectively obstructs their legal protections under bankruptcy law.

- **Intentional Harm to Plaintiffs**: Plaintiffs allege HACD's actions were not incidental but part of a concerted effort to pressure them, denying them the fresh start intended by the bankruptcy discharge. Courts have consistently emphasized that violating a discharge injunction is a serious offense, warranting punitive measures.

## VIII. HACD'S REFUSAL TO ALLOW PORTABILITY OF SECTION 8 VOUCHER VIOLATES DUE PROCESS AND EQUAL PROTECTION RIGHTS

Plaintiffs further allege that HACD's refusal to port their Section 8 voucher, despite multiple requests, constitutes a violation of Plaintiffs' due process and equal protection

rights. This refusal was allegedly based solely on the landlord's unsubstantiated claims of "bad standing." Such reliance on unverified allegations, without providing Plaintiffs an opportunity for a hearing or a means to dispute these claims, directly violates established procedural protections for Section 8 recipients.

- **Due Process Rights in Benefit Administration**: In *Goldberg v. Kelly*, 397 U.S. 254, 266-67 (1970), the Supreme Court held that procedural due process protections must be afforded before terminating essential benefits, such as Section 8 housing assistance, especially when the beneficiary's housing stability is at stake. Denying Plaintiffs' requests for voucher portability without a formal hearing denies them a meaningful opportunity to challenge the landlord's allegations and protect their rights to safe, habitable housing.

- **Lack of Objective Review**: The Seventh Circuit in *Goss v. Lopez*, 419 U.S. 565, 581 (1975), held that due process requires notice and an opportunity to be heard before adverse action can be taken based on allegations from third parties. HACD's decision to deny portability based solely on the landlord's claims, without independently investigating or verifying these allegations, fails to satisfy this standard. Such action amounts to a "one-sided"

denial, where Plaintiffs were not afforded any chance to refute or clarify the landlord's claims.

- **Equal Protection Rights**: Plaintiffs contend that HACD's denial of portability based on unverified allegations also violates equal protection. Public benefits, such as Section 8 vouchers, cannot be arbitrarily withheld based on unsubstantiated claims from private parties. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), underscores that arbitrary actions by government entities that treat similarly situated individuals differently violate equal protection rights. Here, HACD's reliance on the landlord's claims without substantiation led to an unequal and discriminatory application of housing assistance benefits.

- **Case Support for Right to Portability**: HUD regulations mandate that public housing authorities must allow voucher portability unless there is a substantiated legal justification to deny it, as outlined in **24 C.F.R. § 982.355(c)(4)**. Courts have held that denial of portability without adequate justification constitutes an arbitrary deprivation of the tenant's housing rights. In *Clark v. Alexander*, 85 F.3d 146 (4th Cir. 1996), the Fourth Circuit upheld that tenants have a right to portability when conditions are met and that arbitrary denial violates this right. HACD's failure to provide a concrete legal basis or evidence

for its denial further underscores the arbitrary nature of its actions.

## PLAINTIFFS' RIGHT TO A HEARING

Plaintiffs assert that HACD's refusal to allow portability based solely on unproven allegations deprived them of their due process right to a hearing. The Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985), affirmed that due process includes the right to be heard before the deprivation of a protected interest. Here, Plaintiffs had a protected interest in the portability of their Section 8 voucher, and HACD's refusal to consider their requests without a hearing violates this right.

- **Requirement for Fair Process**: Federal courts have emphasized that decisions affecting public benefits must be supported by fair and objective procedures. *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 429 (1987), supports the right of tenants to enforce procedural protections within public housing programs. By denying Plaintiffs portability without any procedural recourse, HACD undermined Plaintiffs' federally protected right to safe and stable housing.

## Conclusion to Section VIII

HACD's refusal to allow portability, grounded solely in unsubstantiated claims from a private landlord, constitutes a violation of Plaintiffs' due process and equal protection rights. This refusal has deprived Plaintiffs of their right to relocate to safe, habitable housing. Plaintiffs seek relief from the Court to protect these rights and ensure that HACD complies with due process and equal protection requirements in its administration of Section 8 benefits.

## IX. HACD'S ARBITRARY DENIAL OF VOUCHER PORTABILITY BASED ON INCONSISTENT AND UNSUBSTANTIATED CLAIMS FROM THE LANDLORD

Plaintiffs further contend that HACD's refusal to allow portability of their Section 8 voucher, despite multiple requests, demonstrates arbitrary conduct and potentially collusive behavior with the landlord. HACD's denial was purportedly based on Plaintiffs' "bad standing" due to alleged nonpayment of rent since January 2022. However, as evidenced by the communications between Plaintiffs, HACD, and the landlord, the landlord continued to accept rent payments and even entered into a new lease agreement with Plaintiffs and HACD even ported plaintiffs in 2023 while in this alleged bad standings from January 2022. These actions directly contradict the claim of "bad standing" and indicate that HACD's basis for denial was flawed and unjustified.

- **Inconsistent Application of "Bad Standing" Allegations**: Courts have held that the acceptance of rent and entry into a new lease can act as a waiver of any prior claim of tenant non-compliance. In *Bank of America v. 3301 Atlantic,*, the court ruled that accepting payment after an alleged default constitutes a waiver of the default claim. Here, the landlord's acceptance of rent and lease renewal with Plaintiffs contradicts HACD's claim of non-compliance and invalidates any assertion of "bad standing."

- **Improper Basis for Denial of Portability**: HUD regulations, specifically **24 C.F.R. § 982.355(c)(4)**, require housing authorities to provide legitimate, substantiated reasons when denying portability. HACD's denial, based solely on unverified landlord allegations, lacks independent verification and procedural fairness. *Goldberg v. Kelly*, 397 U.S. 254 (1970), established that procedural due process requires a fair hearing before the deprivation of benefits, especially when based on unsubstantiated third-party claims. HACD's failure to allow Plaintiffs an opportunity to contest the landlord's allegations violates this due process requirement.

- **Evidence of Collusion Between HACD and the Landlord**: Communications between Plaintiffs, HACD, and the landlord reveal a pattern suggesting that HACD may have improperly coordinated with

the landlord. HACD's reliance on the landlord's statements, without objective verification, and its disregard for the landlord's continued acceptance of rent payments and lease renewal, indicate possible bias or collusion. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), public entities are liable when their actions in coordination with private parties result in the deprivation of constitutional rights. Here, HACD's conduct, in concert with the landlord's actions, deprived Plaintiffs of their due process rights and fair treatment under Section 8 housing assistance.

- **Failure to Provide a Fair Hearing**: Due process requires that beneficiaries of public assistance, such as Section 8 housing recipients, be given a fair opportunity to be heard before adverse action is taken. The Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), held that due process includes the right to a hearing before the deprivation of a protected interest. HACD's denial of portability without offering Plaintiffs a chance to contest the allegations against them constitutes a procedural violation.

Given that HACD ultimately approved portability in 2023 despite the prior claim of "bad standing," it is evident that their initial denial lacked a legitimate basis and may have been retaliatory. Plaintiffs respectfully request that the

Court recognize the arbitrary and potentially collusive nature of HACD's actions, deny the motion to dismiss, and allow discovery to investigate HACD's improper coordination with the landlord.

# X. POTENTIAL PUBLIC CORRUPTION AND IMPROPER COLLUSION BETWEEN HACD AND THE LANDLORD

Plaintiffs raise significant concerns regarding the possibility of improper collusion and potential public corruption between HACD and the landlord. The pattern of inconsistent and arbitrary actions taken by HACD, as detailed below, suggests that HACD may have abused its public office to serve the private interests of the landlord at the expense of Plaintiffs' due process rights and access to fair housing.

- **Inconsistent Application of Policies for Personal Gain**: HACD's denial of portability for Plaintiffs' Section 8 voucher based solely on the landlord's unverified allegations—despite the landlord accepting rent payments and entering into a new lease with Plaintiffs—raises concerns about HACD's motives. Courts have found that the acceptance of rent and lease renewal acts as a waiver of prior claims of tenant default, as in *Bank of America v. 3301 Atlantic,*. HACD's disregard for this standard suggests that its decision was not based on a fair

evaluation of Plaintiffs' standing but rather on an improper motive to deny portability in favor of the landlord's interests.

- **Possible Abuse of Public Authority**: If HACD's actions were intended to benefit the landlord by denying Plaintiffs the opportunity to port their voucher, this may constitute an abuse of public authority. Public housing authorities are obligated to administer their programs equitably and without favoritism, ensuring that decisions are made transparently and fairly. The reliance on unsupported allegations from the landlord, coupled with the later approval of portability despite prior denials, reflects a possible misuse of HACD's position to deprive Plaintiffs of their rights.

- **Lack of Independent Verification or Transparency**: HACD's decision to deny portability without conducting an independent investigation into the landlord's allegations, or providing Plaintiffs an opportunity to contest these claims, demonstrates a lack of transparency and procedural fairness. According to HUD regulations, **24 C.F.R. § 982.355(c)(4)**, housing authorities must have substantiated grounds for denying portability. The selective reliance on the landlord's statements without objective review violates this requirement

and raises questions about the impartiality of HACD's actions.

- **Potential for Public Corruption**: Although there is no direct evidence of financial incentives or bribery at this time, the pattern of HACD's actions raises red flags suggestive of favoritism toward the landlord. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), public entities can be held liable when they act in concert with private parties to deprive individuals of their rights. Plaintiffs allege that HACD's coordination with the landlord deprived them of their due process rights and that this conduct may reflect a deeper issue of improper influence or collusion.

- **Request for Discovery to Uncover Potential Corruption**: Plaintiffs respectfully request that the Court allow discovery to investigate the nature of HACD's interactions with the landlord and to determine whether improper influence or collusion affected HACD's decision-making process. Discovery may reveal internal communications or agreements between HACD and the landlord that could provide further evidence of improper conduct or abuse of authority.

## Conclusion to Public Corruption Section

Plaintiffs have direct evidence of public corruption, the pattern of HACD's arbitrary and inconsistent actions raises significant concerns. Plaintiffs request the opportunity to investigate further, as discovery could reveal additional information regarding HACD's potentially improper coordination with the landlord, suggesting possible public corruption. Plaintiffs urge the Court to consider these red flags when evaluating HACD's motion to dismiss.

## REQUEST FOR RELIEF

For the reasons set forth above, Plaintiffs respectfully request that this Court:

1. **Deny Defendant HACD's Motion to Dismiss** in its entirety;

2. **Award Plaintiffs leave to conduct limited discovery** related to HACD's enforcement practices and its communications regarding Plaintiffs' Section 8 voucher, to fully substantiate the allegations;

3. **Grant any additional relief** that the Court deems just and appropriate, including but not limited to declaratory relief or sanctions for HACD's alleged misuse of procedural defenses and violations of federally protected rights.

Should the Court find any portion of Plaintiffs' claims insufficient, Plaintiffs respectfully request leave to amend the complaint to address any perceived deficiencies, allowing for a full and fair adjudication of the claims on their merits.

**Respectfully submitted,**
**Robert Sam and Karen Sam**
**Plaintiffs, Pro Se**

**11/8/2024**

11/7/24

8:43

‹ Emails to GCT ⌃ ⌄

H  **HCV**  10/10/24
To: robert sam ›

# Robert Sam

Mr. Sam,

HACD is in receipt of your communications. HACD considers you not in good standing due to failure to comply with family obligations under HCV to pay rent. Please see attachments as you requested.

Housing Authority of the County of DeKalb
310 N. 6th Street
DeKalb, IL 60115
815.758.2692 - phone
815.758.4190 – fax

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version. The Housing Authority of the County of DeKalb 310 N 6th St., DeKalb, IL 60115 www.dekcohousing.com

8:43      

 **Emails to GCT**    **Robert Sam**   

 Robert Sam HAP amendment 6-22-22.pdf
260.4kB

 Robert Sam HAP amendment 8-24-22.pdf
575.3kB

---

 **Robert Sam Back rent and Utilities (1).xlsx**
15 KB


CRONAUER LAW, LLP
1101 DeKalb Ave., Suite 2
Sycamore, IL 60178
(815) 895-8585
Info@CronauerLaw.com

February 27, 2024

Robert Sam, Karen Sam, and all unknown occupants of:
639 Stonegate Drive
Sycamore, IL 60178

Subject: **30 Day Notice to Quit Premises** - Non-Payment of Rent, Utilities, breach of lease terms, 735 ILCS 5/9-120.

Dear Robert Sam, Karen Sam, and all unknown occupants.

This letter serves as a formal Notice to Quit Premises in accordance with Section 4024(c) of the federal Coronavirus Aid, Relief, and Economic Security (CARES) Act and applicable state and local laws.

As of the date of this notice, you are in arrears of rent for the period of January 2022 through present day, totaling an amount not less than $5,780. This notice is to inform you that due to the non-payment of rent, you are required to vacate the premises located at 639 Stonegate Drive, Sycamore, Illinois, 60178 no later than 30 days from the date of this notice, which is March 28, 2024. As of the date of this notice, you are also in breach of the August 21, 2022, lease terms, specifically § 9, and 735 ILCS 5/9-120.

Please understand that the failure to pay rent, comply with the lease terms, and conduct prohibited by 735 ILCS 5/9-120, this violates the terms of your lease agreement dated August 21, 2022. In accordance with the federal CARES Act, you are hereby given 30 days' notice to vacate the premises. If you do not vacate by March 28, 2024, legal proceedings may be initiated to recover possession of the property.

Please be advised that this notice is made under the specific requirements set forth in Section 4024(c) of the CARES Act and is subject to change based on any amendments to federal, state, or local laws.

We appreciate your immediate attention to this matter. If you have any questions or need further clarification, please do not hesitate to contact me directly at (815) 895-8585.

Sincerely,

/s/ C. Nicholas Cronauer
1101 DeKalb Ave., Suite 2
Sycamore, IL 60178

                 

7:37

< **Sent**                                    ∧    ∨

Found in Yahoo! Sent Mailbox                    ◁

**RS**   **robert sam**                    8/16/22
         To: Melissa Mobile  >

## Re: Robert

Ok. I can have it to you on the 31st. Can I get a total on the water bills, I believe there is only two. Thank you very very much Melissa.

Sincerely, Robert Sam

On Aug 16, 2022, at 9:04 PM, Melissa Mobile <melissa@hrgsells.com> wrote:

Robert,

If you can pay $1900 plus all the late water bills and $5 late August rent I will do a month to month until you can find something but I need the cash before the 1st of the month otherwise I have no choice but to file the eviction.

This is all I can do.

Melissa

On Tue, Aug 16, 2022 at 8:56 PM robert sam <Harpees5@yahoo.com> wrote:





7:38

‹ Sent

**robert sam**                    8/24/22
To: Kim   Cc: Melissa & 4 more... ›

## Re: Robert Sam

I think I understand. So you'll continue paying month to month at 1695.00 and I pay 255.00?

Sincerely, Robert Sam

> On Aug 24, 2022, at 10:16 AM, Kim Rodr <krodr@dekcohousing.com> wrote:
>
> Mr. Sam,
> HACD has received a copy of the signed lease agreement from your landlord with an increased contract rent of $1950 effective September 1st. Please understand that the full burden of the contract rent increase will be your responsibility effective September 1st, and by not moving out of the unit on the agreed upon date of August 31, 2022, you have waived your right to the in general 30-day notice of rent increase. See attached IR 9.1.2022 R. Sam for more details.
> Effective September 1st
> Housing Assistance Payment = $1695
> Robert Sam Rent to Landlord = $255
>
> When you find your new unit in Lake County and have your move-in date you and your landlord must provide HACD with a completed intent to vacate form so HAP payments are stopped at HACD prior to the start of HAP payments at your new housing authority.
>
> I have included your landlord on this email so we are all