**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

ROBERT SAM, et al.     )
            )
    Plaintiff,    )
            )  Case No. 23-cv-50301
            )
v.          )
            )  Honorable Ian D. Johnston
CITY OF SYCAMORE, ILLINOIS, et al., )  Magistrate Margaret Schneider
            )
    Defendants.   )
            )

**CITY OF SYCAMORE'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

NOW COME Defendant, THE CITY OF SYCAMORE (the "City") by and through its attorney, K. Austin Zimmer of Del Galdo Law Group, LLC, and, in support of its Motion to Dismiss Plaintiffs Robert and Karen Sam's ("Plaintiffs"), Third Amended Complaint ("TAC") states:

**INTRODUCTION**

The case arises against the City from Plaintiffs, Robert and Karen Sam, filing the TAC alleging violations of their rights under federal and state law. Plaintiffs allege that the City of Sycamore, among other defendants, conspired with private parties to deprive them of habitable living conditions and violated their due process rights under the Fourteenth Amendment in connection with various housing and code enforcement actions. The complaint further alleges liability under 42 U.S.C. § 1983 and *Monell* claims against the City.

However, the TAC is devoid of sufficient factual allegations to establish that the City violated any of Plaintiffs' constitutional rights or acted in concert with private parties to harm Plaintiffs. Further, Plaintiffs fail to allege any direct action, policy, or custom attributable to the City that would rise to the level of a constitutional violation. Consequently, the City bring this

Motion to Dismiss the TAC under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**FACTS ALLEGED**

Plaintiffs, Robert and Karen Sam, claim that they leased a residential property at 639 Stonegate Drive in Sycamore, Illinois, beginning in September 2019. *See* TAC., Doc. # 109, ¶ 1. Plaintiffs allege that the property, owned by BKA Holding LLC, was not maintained in a habitable condition throughout their tenancy. *Id*. at ¶ 4. Plaintiffs allege that despite paying rent with the assistance of Section 8 vouchers, the landlord, BKA Holding, and its agents refused to make necessary repairs, which led to deteriorating living conditions. *Id*. at ¶¶ 38-41.

Plaintiffs allege that the City of Sycamore, along with the Housing Authority of DeKalb County, failed to enforce local building codes, enabling the landlord to neglect necessary repairs. *Id*. at ¶ 93. They further claim that inspections conducted by the City of Sycamore in early 2024 found numerous code violations, including issues with the foundation, mold, and a malfunctioning water heater. *Id*. at ¶¶ 91-94. The Plaintiffs also suggest that when signing the lease in September 2019, they informed the landlords, BKA Holding and Melissa Mobile, that Karen suffers from multiple serious health conditions, including multiple sclerosis and a compromised immune system, and that their daughter has epilepsy. *Id*. at ¶¶ 24-26, 97.

Additionally, Plaintiffs allege that the City of Sycamore conspired with BKA Holding and its agents to avoid holding the landlord accountable for the violations. *Id*. at ¶¶ 5, 104. According to Plaintiffs, Sycamore Township and the City of Sycamore changed their code enforcement policies to shield the landlord from liability after unfounded allegations were made against Plaintiff Robert Sam regarding threats, which Plaintiffs contend were fabricated. *Id*. at ¶ 104. Plaintiffs also assert that the City of Sycamore acted in concert with the landlord to evade necessary repairs and inspections, in violation of their constitutional rights under the Fourteenth Amendment. *Id*. at ¶¶

102-106. Plaintiffs further allege that these actions are part of a pattern of deliberate indifference to their rights, claiming that the City of Sycamore's failure to enforce building codes reflects a custom or practice of disregarding the safety and constitutional rights of tenants. *Id*. at ¶ 105.

The following counts are alleged against the City: Count III alleges unlawful discrimination under the Illinois Human Rights Act (IHRA); Count VI alleges violation of landlord-tenant regulations; Count VII is for the breach of warranty of habitability; Count XIII is for civil conspiracy; Count XIV alleges intentional infliction of emotional distress; Count XV alleges defamation; Count XVI is for misrepresentation; Count XVII is for the violation of Section 1983 of the civil rights act; Count XXI is for the violation of the Americans with Disabilities Act (ADA); Count XX alleges negligent infliction of emotional distress; and Count XXII alleges retaliation. Defendant moves to dismiss Counts all the aforementioned counts pursuant to Rule 12(b)(6).

**STANDARD OF REVIEW**

A motion to dismiss made under Rule 12(b)(6) challenges the sufficiency of a complaint. *Christensen v. City of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a plaintiff has not pled facts which would permit the court to infer more than the mere possibility of misconduct, a plaintiff has alleged, but not demonstrated, that he is entitled to relief, and therefore, his complaint will fail. *Id.* For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This plausibility standard asks for more than a sheer possibility that a defendant acted unlawfully. *Id.*

**ARGUMENT**

**A.     No Standing**

The Plaintiffs lack standing for all alleged claims against the City of Sycamore, as they fail to demonstrate that their alleged injuries are directly attributable to any specific actions by the City. To establish adequate standing "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be addressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envil. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000).

Here, Plaintiffs' TAC attempts to establish standing for their claims by alleging that Plaintiffs' rights were violated through the failure of the City of Sycamore to enforce necessary repairs and ensure compliance with housing standards, which allegedly exposed Plaintiffs to unsafe and uninhabitable living conditions. *See* TAC., Doc. #109, ¶ 72. However, the City of Sycamore had no duty to enforce these repairs or ensure such compliance. The TAC fails to plead facts demonstrating that Plaintiffs' alleged injuries are fairly traceable to City's actions. Specifically, Plaintiffs do not sufficiently connect their alleged harms to any particularized actions taken by the City of Sycamore, failing to show that the injuries they claim are directly attributable to these City of Sycamore's conduct.

**B.     Section 1983 Claim (Count XVII)**

To state a plausible claim under 42 U.S.C. § 1983, a plaintiff must allege that: "(1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Matthews v. Tienda*, No. 11 C 3353, 2014 WL 7360670, at *2 (N.D. Ill. Dec. 22, 2014). A

municipality can only be held liable under § 1983 if a plaintiff establishes that the constitutional violation resulted from an official policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). In this case, Plaintiffs fail to allege any factual basis that ties the City of Sycamore's actions to a violation of their federal rights under the Constitution. Plaintiffs' claims, such as the Town's refusal to facilitate repairs or its alleged support of the wrongful eviction process, do not amount to constitutional violations. *See* TAC., Doc. # 109, ¶¶ 93-96. As the U.S. Supreme Court has made clear, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' complaint is devoid of specific facts demonstrating how the City's conduct deprived them of a protected constitutional right. Accordingly, Plaintiffs' § 1983 claims should be dismissed as a matter of law pursuant to Rule 12(b)(6).

### 1. *Plaintiffs Fail to State a Valid Claim Under 42 U.S.C. § 1983*

To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that the defendant's actions were connected to state authority and that those actions resulted in a violation of the plaintiff's federally protected rights. *Matthews*, 2014 WL 7360670, at 2. Here, Plaintiffs have failed to allege sufficient facts to support the elements necessary for a viable § 1983 claim. The City's conduct, as outlined in the complaint, neither constitutes state action that violated constitutional rights nor deprived the Plaintiffs of any federally protected rights.

### i. *The City of Sycamore Did Not Act Under Color of State Law in the Alleged Eviction or Property Disputes.*

Plaintiffs assert that the City of Sycamore engaged in or supported a wrongful eviction process in violation of their constitutional rights. *See id*. However, the complaint does not establish that the City of Sycamore took any direct or active role in the eviction proceedings initiated by the private landlords, BKA Holdings and Melissa Mobile. The alleged conduct, including the City's

policy change regarding repairs, is regulatory in nature and does not involve state action as required for a § 1983 claim. As the court in *Matthews* held, plaintiffs must demonstrate state involvement in the alleged deprivation of rights, which Plaintiffs have failed to do here. The City's administrative actions, including the refusal to enforce housing repairs, do not amount to unconstitutional state action.

### ii. Plaintiffs Have Not Demonstrated a Deprivation of a Federally Protected Right

To state a § 1983 claim, Plaintiffs must identify a specific constitutional or federal right that was violated. Here, Plaintiffs' complaint lacks any factual allegations showing how the City of Sycamore deprived them of their constitutional rights. The refusal to facilitate repairs, the alleged false accusations against Robert, and the policy changes concerning repair mandates are insufficient to demonstrate a violation of the Equal Protection Clause or any other constitutional right. Plaintiffs have failed to sufficiently allege that the City's conduct was motivated by discriminatory intent or that it targeted them based on a protected class.

### C.      Violation of the Americans with Disabilities Act (ADA) (Count XXI)

Plaintiffs' claim under the ADA (Count XXI) should be dismissed because the statute does not apply to private residences, and the City has no obligation to enforce accommodations on private property. Under 42 U.S.C. § 12182, the ADA applies to public accommodations such as businesses and services open to the public, requiring reasonable modifications only when related to access to these services.

In this case, Plaintiffs reside in a privately owned property allegedly managed by BKA Holdings and Melissa Mobile, private landlords with no public accommodation role. The City of Sycamore's involvement was limited to regulatory actions such as inspections, which do not impose any legal duty on the City to enforce accommodations or repairs on private residences.

Because the property is not a public accommodation, the City cannot be held liable under the ADA for failing to enforce repairs or accommodations on private property.

Even if the ADA applied, Plaintiffs have not satisfied the elements for a "failure-to-accommodate" claim. To prevail, they must demonstrate that the requested accommodation—here, repairs to the residence—was both reasonable and necessary to address the disability. *Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006).

Plaintiffs allege that the City's refusal to enforce repairs on the property affected their disabled daughter, but they have not shown that it was reasonable for the City, a public entity, to mandate repairs on privately owned property that it neither owns nor controls. Further, they have not demonstrated how the requested repairs were necessary to ameliorate their daughter's disability in terms of access to public services or programs. Without such a showing, the claim fails under the ADA's failure-to-accommodate theory as well.

### D.     Retaliation Under the Fair Housing Act (FHA) (Count XXII)

Plaintiffs' retaliation claim under the Fair Housing Act (FHA) (Count XXII) should be dismissed because they have not demonstrated that they engaged in a protected activity or established a causal connection between the City of Sycamore's actions and any such activity, both of which are necessary elements for a valid retaliation claim. To establish a retaliation claim, a plaintiff must demonstrate: (1) they are a member of a protected class under the FHA; (2) they engaged in a protected activity; (3) the defendant took an adverse action against them; and (4) the adverse action was taken because of the protected activity. *See Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009). Under the FHA, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1); *Nikolich v. Vill. of Arlington Heights*, Ill., 870 F. Supp. 2d 556, 562 (N.D. Ill. 2012).

Here, Plaintiffs fail to allege facts sufficient to support these elements. While they assert that the City of Sycamore's refusal to facilitate repairs and its alleged discriminatory conduct were retaliatory, they have not demonstrated that they engaged in a protected activity, nor have they connected the City's actions to any such activity.

Even if Plaintiffs engaged in a protected activity under the FHA, such as requesting accommodations or filing complaints, they have not sufficiently shown that the City of Sycamore took an adverse action in retaliation. The City's refusal to facilitate repairs or intervene in the landlord-tenant relationship appears to have been based on legitimate regulatory concerns and discretion, rather than any intent to punish or retaliate against the Plaintiffs. The allegations concerning the City's actions are conclusory and lack specific factual support that connects those actions to any protected FHA activity.

Furthermore, Plaintiffs fail to allege the necessary causal link between their alleged protected activity and the City's actions. For a retaliation claim to survive, Plaintiffs must show that the City's actions were motivated by a retaliatory intent directly tied to their protected FHA activity. Without more than broad allegations, Plaintiffs cannot satisfy the required showing of retaliatory motive. *See Frischholz*, 587 F.3d at 783.

### E.        Civil Conspiracy (Count XIII)

To state a claim for civil conspiracy (Count XIII), the Plaintiffs must demonstrate two key elements: (1) an agreement between two or more persons to achieve an unlawful objective or to use unlawful means to achieve a lawful purpose, and (2) that one of the co-conspirators committed a tortious act in furtherance of the agreement, resulting in injury. *See Clay Fin. LLC v. Mandell*, No. 16 C 11571, 2017 WL 3581142, at *6 (N.D. Ill. Aug. 18, 2017).

Plaintiffs do not allege specific facts showing any agreement between the City of Sycamore and other parties, such as BKA Holdings or Melissa Mobile, to engage in unlawful activity.

Plaintiffs' claim that the City "sided" with the landlords during repair disputes does not suggest an unlawful agreement or collusion. The City's regulatory discretion in housing matters does not imply it was working in concert with the landlords.

Moreover, Plaintiffs fail to identify a tortious act committed in furtherance of the alleged conspiracy. Plaintiffs claim the City refused to enforce repairs, but such actions, based on safety concerns and regulatory duties, are lawful. The refusal to act does not constitute tortious conduct or meet the requirement for an overt act in furtherance of a conspiracy. Without facts demonstrating an unlawful agreement or tortious act, the claim cannot stand.

### 1. Monell Claim

The Complaint contains nothing more than generic allegations reciting the elements of a *Monell* claim, which are insufficient to state a § 1983 claim against the City under *Monell*. Document #109, ¶ 105. The Seventh Circuit has made it clear that allegations consisting of legal conclusions or recitations of the elements of a cause of action can be disregarded when considering a motion to dismiss. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). This Court should similarly disregard the conclusory allegations in the Complaint that are mere boilerplate recitals of the elements of the claim.

### F. Discrimination in Violation of the Illinois Human Rights Act (Count III)

Plaintiffs fail to allege sufficient facts to show that the City engaged in discriminatory conduct in violation of the Illinois Human Rights Act ("IHRA") (Count III). To state a claim under the IHRA, a plaintiff must establish that they are a member of a protected class and that the defendant either refused to engage in a real estate transaction or altered the terms and conditions of a transaction based on discriminatory grounds. *See* 775 ILCS 5/3-102.

The IHRA defines a "real estate transaction" to include the sale, exchange, rental, or lease of real property, as well as brokering or appraising residential real property. It also includes

providing financial assistance for the purchase, construction, improvement, repair, or maintenance of a dwelling or for loans secured by residential real estate. *See* 775 ILCS 5/3-101. Here, however, Plaintiffs fail to establish that a "real estate transaction" existed between themselves and the City of Sycamore.

Here, the Plaintiffs alleged they rented their residence from BKA Holding, LLC, and Melissa Mobile, not from the City. The City involvement, as alleged, was limited to regulatory inspections and ordinances, rather than any direct role in a real estate transaction with Plaintiffs.

Given that there was no real estate transaction between Plaintiffs and the City, the City had no legal obligation to make the requested repairs. Under the IHRA, a violation involving a real estate transaction includes altering the terms, conditions, or privileges of the transaction or the furnishing of facilities or services in connection with it. *See* 775 ILCS 5/3-102(B). However, as a municipality, the City is not responsible for maintaining or managing private rental properties and has no contractual or legal duty to perform repairs on such properties.

Further, under 775 ILCS 5/3–102(B), it is a civil rights violation for "an owner or any other person engaging in a real estate transaction, or for a real estate broker or salesman, *because of* unlawful discrimination or familial status to [a]lter the terms, conditions or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith." 775 ILCS 5/3–102(B)(West 1996).  Here, Plaintiffs fail to allege specific facts showing that the City of Sycamore's actions—such as refusing to make repairs or allegedly making false accusations against Plaintiff—were motivated by discriminatory intent. As clarified in Ashcroft, mere conclusory statements are insufficient to support a claim. *Ashcroft*, 556 U.S. 662 (2009). Since Plaintiffs have not alleged sufficient facts or made a showing that rises above mere speculation, this claim (Count III) must be dismissed pursuant to Rule 12(b)(6) as a matter of law.

G. **Breach of Warranty of Habitability (Count VII)**

Plaintiffs claim for breach of the implied warranty of habitability (Count VII) should be dismissed because this warranty applies only to parties in a direct contractual relationship. *See Sienna Count Condo. Assn. v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 1119–21 (Ill. 2018). Here, the City of Sycamore, as a regulatory entity, is not a party to the lease agreement and therefore cannot be held liable under this theory. *See id*. (Which states that the purchaser of house cannot allege breach of implied warranty of habitability claim against party with whom there is no contractual relationship).

The implied warranty of habitability is a contractual obligation that requires a dwelling to be fit for living and habitable. *Glasoe v. Trinkle*, 107 Ill. 2d 1, 13 (1985); *See also 933 Van Buren Condominium Ass'n v. West Van Buren, LLC, 2016 IL App (1st) 143490, ¶ 58, 406 Ill.Dec. 661, 61 N.E.3d 929* (Stating that the implied warranty of habitability must be a creature of contract). This warranty only arises in the context of a valid lease agreement between the tenant and the landlord. *Aharon v. Babu*, No. 22 C 04502, 2023 WL 2214429, at *4 (N.D. Ill. Feb. 24, 2023). A party with no contractual relationship to the tenant cannot be held liable for a breach of this warranty. *Sienna Count Condo. Assn.*, 129 N.E.3d at 1119–21. Additionally, actions relating to the breach of the implied warranty of habitability, as well as the covenant of peaceful enjoyment, stem from the contractual obligations of the landlord. *Aharon*, 2023 WL 2214429, at *4.

In this case, the City is not a party to the lease agreement between Plaintiffs and the private landlords, BKA Holdings and Melissa Mobile. The City's role is regulatory, involving inspections and the enforcement of safety codes, which does not create a contractual obligation to ensure the habitability of the premises. Because there is no contractual relationship between the City and

Plaintiffs, the City cannot be held liable for any alleged breach of the implied warranty of habitability.

Moreover, even if the City of Sycamore had knowledge of the issues related to the habitability of the premises through its regulatory functions, this does not impose a contractual obligation upon the City. Its role in conducting inspections and ensuring compliance with local safety codes is distinct from the legal responsibilities of the landlord under the lease. The implied warranty of habitability requires that tenants and landlords be in a contractual relationship, and municipalities that perform regulatory inspections are not parties to that relationship. Therefore, because the Plaintiffs have not adequately alleged the existence of a contractual relationship with the City of Sycamore, their claim for breach of the implied warranty of habitability (Count VII) must be dismissed.

### H.      Violation of Landlord Tenant Regulations (Count VI)

Plaintiffs' claim for violation of landlord-tenant regulations (Count VI) should be dismissed because the City is not responsible for enforcing the Housing Quality Standards (HQS) or other regulations that apply to private, non-governmental landlords under the Section 8 program. While Plaintiffs are tenants under the Section 8 voucher program, which subjects their rental property to HQS requirements, the obligation to meet those standards falls on the private landlords, not the City. 24 C.F.R. § 982.401 clearly outlines that it is the responsibility of the landlord and the housing authority administering the program to ensure compliance with HQS, not the municipality.

Plaintiffs have not alleged that the City is acting as their landlord or that it has any direct involvement in their lease agreement with the private landlord. Moreover, the City's role in inspections or code enforcement does not create a legal duty to repair or maintain private rental properties under Section 8. Courts have held that municipalities are not liable for the enforcement

of private landlord obligations under federal programs like Section 8. Therefore, the City cannot be held liable for any alleged failure to ensure compliance with housing standards, and Plaintiffs' claim (Count VI) must be dismissed.

## I.     State Law Claims

### 1.  *Defamation (Count XV)*

Plaintiffs' defamation claim (Count XV) should be dismissed because municipalities, such as the City of Sycamore, cannot defame individuals. Defamation requires a false statement made by an individual, not a governmental entity, and the Plaintiffs have not alleged any specific false statements made by individual city employees with malice or reckless disregard for the truth. In the context of public officials, statements made during the course of performing their official duties are generally protected unless they rise to the level of willful and wanton conduct. *Dobias v. Oak Park & River Forest High Sch. Dist. 200*, 2016 IL App (1st) 152205, ¶ 53, 57 N.E.3d 551, 562. In this case, no such allegations are present, and the City's communications were related to official regulatory activities and inspections, which are protected under the Illinois Local Governmental and Governmental Employees Tort Immunity Act. 745 ILCS 10/2-202.

### 2.  *Emotional Distress (Count XIV and XX)*

Plaintiffs' emotional distress claims for intentional infliction of emotional distress (IIED) (Count XIV) and negligent infliction of emotional distress (NIED) should also be dismissed (Count XX). To establish a claim for IIED, Plaintiffs must show that the defendant's conduct was extreme and outrageous, that the defendant intended to cause emotional distress or acted with reckless disregard, and that severe emotional distress resulted from the conduct. *Bianchi v. McQueen*, 2016 IL App (2d) 150646, ¶ 82, 58 N.E.3d 680, 699. Conduct is considered "extreme and outrageous" only when it goes beyond all bounds of decency and can be regarded as intolerable in a civilized

society. Routine actions performed by public officials, such as property inspections and enforcing housing codes, do not meet this high standard. In this case, Plaintiffs have not shown that the City's conduct, which was related to its regulatory duties, was extreme or outrageous. The City's actions were part of standard municipal operations and were not intended to cause emotional distress.

Similarly, Plaintiffs' NIED claim is unfounded. For NIED, a plaintiff must show that the City owed them a duty of care, breached that duty, and caused emotional distress as a result of the breach. *Roehl v. Merrilees*, No. 11 C 4886, 2012 WL 1192093, at *9 (N.D. Ill. Apr. 10, 2012). In this case, Plaintiffs have not established that the City owed them a specific duty of care related to their emotional well-being. The City's actions, such as conducting inspections and issuing safety notices, were part of its regulatory duties and did not involve a breach of any duty owed to Plaintiffs. Furthermore, there are no allegations that the City's actions were the direct cause of any emotional distress suffered by Plaintiffs. Without a breach of duty or proximate cause, Plaintiffs cannot succeed on their NIED claim.

### 3. *Misrepresentation* (*Count XVI*)

Plaintiffs' misrepresentation claim (Count XVI) is similarly unsustainable. To state a claim for misrepresentation, Plaintiffs must show that a false statement was made by the City with the intent to deceive, that Plaintiffs relied on this false statement, and that this reliance caused them harm. *Kramer v. Am. Bank & Tr. Co.,* N.A., No. 11 C 8758, 2017 WL 1196965, at *2 (N.D. Ill. Mar. 31, 2017). Misrepresentation claims generally arise when there is an affirmative falsehood or omission that induces the plaintiff into acting to their detriment.

However, Plaintiffs have not identified any false statement made by the City or its officials with intent to deceive. The City's role in inspecting properties and communicating safety violations to landlords was part of its regulatory responsibilities and not an effort to deceive or mislead

Plaintiffs. Furthermore, there are no allegations that Plaintiffs relied on any statement made by the City to their detriment. Plaintiffs' broad claims regarding the City's alleged failure to act or enforce regulations do not amount to misrepresentation. Therefore, the misrepresentation claim (Count XVI) fails as no intent to deceive, reliance, or harm has been properly pled.

**J.     Plaintiffs' Punitive and Tort Claims Against the City Barred by Statutory Immunity.**

Plaintiffs' prayers for punitive damages against the City must be stricken, as the City, a municipality, is immune from such damages under both federal and state law, which do not support punitive measures against municipalities or local government entities. *Newport v. Fact Concerts*, 453 U.S. 247; 745 ILCS 10/2-102. Additionally, the City is immune from Plaintiffs' Illinois tort claims in Counts XIII and XIV under the Tort Immunity Act, which bars liability for any injury related to inspection failures or the administration of public assistance. 745 ILCS 10/2-105, 2-108.

<u>**CONCLUSION**</u>

WHEREFORE, for the foregoing reasons, Defendant, CITY OF SYCAMORE, prays that this Honorable Court grants its Motion to Dismiss, and for all such other relief as this Court deems equitable and just.

Respectfully submitted,

**CITY OF SYCAMORE**
By: */s/ K. Austin Zimmer*
One of its attorneys

K. Austin Zimmer (#6276227)
Del Galdo Law Group, LLC
1441 South Harlem Avenue
Berwyn, Illinois 60402
P: (708) 222-7000
F: (708) 222-7001
zimmer@dlglawgroup.com

Page **15** of **15**