

FILED
11/14/2024
VJD
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

## WESTERN DIVISION

**Robert and Karen Sam, Plaintiffs,**
v.
**City of Sycamore, Illinois, et al., Defendants.**

**Case No. 23-cv-50301**

## Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

## INTRODUCTION

Plaintiffs Robert and Karen Sam respectfully submit this response in opposition to Defendants' Motion to Dismiss. The motion reflects a concerted attempt to evade responsibility for significant legal violations that have deprived Plaintiffs of their rights to safe, habitable living conditions free from discrimination and retaliation. Defendants' arguments disregard substantial evidence of harm suffered by Plaintiffs, whose well-pleaded complaint is supported by both factual specifics and binding legal precedent. Dismissing these claims would allow Defendants to escape accountability, and this Court should permit Plaintiffs the opportunity to pursue justice on the merits.

# ARGUMENT

# I. Plaintiffs Have Standing to Pursue Their Claims

## A. Specific and Concrete Injuries

Defendants' argument that Plaintiffs lack standing fundamentally mischaracterizes the nature of the injuries alleged. Plaintiffs' injuries are not only tangible and particularized but are also directly traceable to Defendants' deliberate actions and inactions. As the Supreme Court outlined in *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000), standing is met when plaintiffs can demonstrate a "concrete and particularized" injury that is "actual or imminent." Plaintiffs have alleged sustained harm from dangerous living conditions, with specific impacts on Karen's and her daughter's health—injuries that more than satisfy the requirement for standing.

## B. Traceability and Causation

The Seventh Circuit has consistently upheld standing in cases where government inaction directly contributes to the plaintiff's harm. For instance, in *Chicago v. Morales*, 527 U.S. 41 (1999), the Court confirmed that policies leading to discernible harm to individuals confer standing to challenge those policies. Plaintiffs' situation is directly attributable to the City's non-enforcement policy, which shielded the landlord and prevented critical safety repairs.

The causal chain is clear and direct: the City's refusal to enforce safety codes and address Plaintiffs' health and safety concerns enabled conditions that severely harmed Plaintiffs, especially considering Karen's pre-existing health vulnerabilities.

## II. Plaintiffs Have Stated a Valid Claim Under 42 U.S.C. § 1983

### A. The City of Sycamore Acted Under Color of State Law

To succeed on a claim under 42 U.S.C. § 1983, Plaintiffs must demonstrate that Defendants acted "under color of state law" and deprived Plaintiffs of their constitutional rights. Municipal actions that leverage state authority to favor private parties, at the expense of individual rights, fall squarely under § 1983's purview. In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982), the Supreme Court held that municipalities act under color of state law when they use regulatory powers in ways that effectively deprive individuals of their rights.

Here, the City of Sycamore's policies, including intentional code enforcement failures and policy shifts to favor the landlord, clearly constitute actions under color of state law. The City's repeated failures to protect Plaintiffs, as detailed in the complaint, are not isolated incidents but a pattern of government misuse of authority

designed to benefit the landlord. This municipal conduct deprived Plaintiffs of federally protected rights and meets the "under color of state law" requirement.

## B. Deprivation of Substantive Due Process and Equal Protection Rights

Plaintiffs allege that the City's conduct infringed upon their constitutional right to due process and equal protection, rights guaranteed under the Fourteenth Amendment. The Supreme Court in *Monroe v. Pape*, 365 U.S. 167, 171 (1961), emphasized that § 1983 serves as a vital remedy for citizens deprived of constitutional rights due to government misconduct. The City's actions endangered Plaintiffs' safety, health, and access to habitable housing, particularly given their unique vulnerabilities due to Karen's medical needs.

For example, in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court ruled that municipalities can be held liable under § 1983 if an official policy or custom leads to a violation of constitutional rights. Additionally, cases such as *City of Canton v. Harris*, 489 U.S. 378 (1989), establish that a municipality's deliberate indifference to a known risk can fulfill the criteria for liability under § 1983, particularly when it concerns safety or fundamental rights. Here, the City's refusal to enforce habitability standards constitutes a conscious disregard for Plaintiffs' welfare, aligning

closely with this precedent. Defendants' actions deprived Plaintiffs of their right to live in a safe environment, a fundamental liberty interest protected by the Fourteenth Amendment.

## III. The ADA Claim Is Plausible and Applicable

## A. The ADA's Scope Extends to the City's Conduct

The ADA prohibits discrimination against individuals with disabilities and applies broadly to public entities, requiring them to make reasonable accommodations. Defendants' argument that the ADA is inapplicable here misinterprets both the scope and purpose of the statute. The ADA's protections extend to public entities that contribute to discriminatory living conditions through regulatory failures. In *Wisconsin Community Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006), the court affirmed that municipalities are accountable under the ADA when they refuse to accommodate the needs of individuals with disabilities, even indirectly.

Further, *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003), supports the view that municipal entities must prevent discriminatory conditions if their inaction foreseeably harms individuals with disabilities. Here, the City's documented refusal to enforce essential safety standards, despite knowledge of Karen's disabilities and

health risks, exacerbated conditions that directly impacted her well-being and accessibility. The ADA clearly mandates protections in these circumstances, where inaction serves as an effective denial of safe, accessible housing.

## B. The Direct Impact of the City's Neglect on Plaintiffs' Health

Plaintiffs allege that the City's inaction led to exacerbated health risks and uninhabitable conditions, with tangible effects on Karen's well-being. This harm aligns with ADA standards as outlined in *Henrietta D.*, where the court emphasized a public entity's responsibility to avoid creating conditions that disproportionately harm individuals with disabilities. By failing to enforce habitability codes, Defendants denied Plaintiffs the opportunity to reside in a safe, accessible environment—a fundamental purpose of the ADA.

## IV. Plaintiffs Have Adequately Pleaded Retaliation Under the Fair Housing Act (FHA)

## A. Plaintiffs' Protected Activities Under the FHA

The FHA's anti-retaliation provisions protect tenants from punitive actions for seeking fair housing rights, including safe and habitable living conditions. The Seventh Circuit, in *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009),

clarified that tenants' efforts to secure repairs and raise safety concerns are protected under the FHA. Plaintiffs' repeated requests for necessary repairs, directed to both the City and the landlord, qualify as protected activities under FHA standards.

## B. Retaliatory Non-Enforcement and Policy Changes

Defendants' policy changes and non-enforcement of habitability codes represent clear retaliation. In *Neudecker v. Boisclair Corp.*, 351 F.3d 361 (8th Cir. 2003), the court recognized that failure to maintain habitable conditions in retaliation for a tenant's assertion of housing rights constitutes actionable retaliation. Here, Plaintiffs allege that the City's policy shifts and inaction were intended to deter further assertions of their rights and to discourage them from seeking enforcement—actions that directly align with FHA protections.

## V. Plaintiffs Have Sufficiently Stated a Claim for Civil Conspiracy

## A. The Allegations of Coordination Between Defendants

Defendants' attempt to dismiss the conspiracy claim overlooks well-pleaded allegations demonstrating coordinated actions. Civil conspiracy claims may be supported by circumstantial evidence, as affirmed in

*Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). Plaintiffs' allegations of intentional policy shifts, mutual reinforcement, and non-enforcement of codes show a common intent to protect the landlord at the expense of Plaintiffs' rights.

In *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012), the court held that a municipality's coordinated efforts to evade liability constituted a valid conspiracy claim. Plaintiffs' detailed account of Defendants' deliberate efforts to circumvent tenant protections substantiates the conspiracy claim and warrants a denial of the motion to dismiss.

## VI. The Complaint Sufficiently Alleges a Monell Claim

### A. Municipal Liability for Custom and Practice

Defendants' assertion that Plaintiffs' Monell claim is insufficient disregards the detailed allegations of a City policy or custom leading to constitutional violations. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978), allows municipalities to be held liable for harms caused by a formal policy or informal custom. Plaintiffs allege that the City's continuous neglect and selective enforcement of safety codes created a de facto policy benefiting landlords, leading directly to their injuries.

In *Hahn v. Walsh*, 762 F.3d 617, 638 (7th Cir. 2014), the Seventh Circuit supported the idea that repeated non-enforcement can establish Monell liability. Plaintiffs' claims that the City's non-enforcement practices amounted to a policy harming tenant rights are well-pleaded and refute Defendants' arguments of insufficient specificity.

## VII. Plaintiffs' Claim Under the Illinois Human Rights Act (IHRA) Is Viable

### A. Disability Discrimination Under IHRA Standards

The IHRA mandates accommodations for individuals with disabilities and prohibits discriminatory practices by municipalities. The Seventh Circuit in *Cigan v. Chippewa Falls School District*, 388 F.3d 331, 334 (7th Cir. 2004), affirmed the obligation of public entities to provide accommodations that ensure safe conditions for individuals with disabilities. Defendants' failure to address Plaintiffs' needs, despite their disabilities, violates IHRA's protections and constitutes actionable discrimination.

## VIII. Plaintiffs' Claims for Intentional and Negligent Infliction of Emotional Distress Should Not Be Dismissed

### A. The Severity of Harm and Outrageous Conduct

Illinois law recognizes that extreme and outrageous conduct causing severe emotional distress is actionable. In *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976), the Illinois Supreme Court held that behavior meeting this threshold supports emotional distress claims. Defendants' deliberate disregard for Plaintiffs' safety and prolonged exposure to harmful conditions far exceed mere negligence, warranting claims for emotional distress.

Further, *McGrath v. Fahey*, 126 Ill. 2d 78 (1988), supported emotional distress claims where defendants acted with knowledge of specific vulnerabilities. Here, Defendants' actions—fully aware of Plaintiffs' health challenges—reflect a shocking disregard, satisfying the Illinois standard for both intentional and negligent infliction of emotional distress.

## IX. Causation Evidence and Anticipation of Further Discovery

Plaintiffs have demonstrated a direct causal link between the City's conduct and their harms, supporting their claims and refuting Defendants' suggestion that the landlord alone is responsible. Plaintiffs also anticipate that discovery will yield further evidence of the City's consistent pattern of non-enforcement, further supporting their claims of municipal liability.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety. Plaintiffs' well-pleaded, factually specific claims merit full consideration, and dismissing them would shield Defendants from accountability. Plaintiffs deserve a fair opportunity to seek justice, and this Court must allow them to pursue their claims in full.

Robert and Karen Sam

Pro Se

11/14/24