## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION

| | |
|---|---|
| ROBERT and KAREN SAM, | |
| Plaintiff(s), | Court No. 3:23-cv-50301 |
| v. | Hon. Iain D. Johnston |
| BKA HOLDING, LLC, et al. | Magistrate Margaret J. Schneider |
| Defendant(s). | |

## REPLY IN FURTHR SUPPORT OF HACD MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

Defendant, HOUSING AUTHORITY OF THE COUNTY OF DEKALB ("HACD" or "Defendant"), by its attorney Allie M. Burnet of Best Vanderlaan & Harrington, and for its Reply in Further Support of HACD's Motion for Dismissal of Plaintiffs' Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows:

### INTRODUCTION

In their Response in Opposition at *Dkt. 171*, Plaintiffs, Robert and Karen Sam, acknowledge the applicable standard of review stated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) to withstand a Rule 12(b)(6) motion, but fail to meet it. Despite the length of Plaintiffs' Third Amended Complaint the five counts directed against HACD do not give "fair notice" of what their claim is, nor does it provide grounds upon which it rests or raise any right to relief "above the speculative level." *Id. (Dkt. 109)*. Plaintiffs' response fails to demonstrate the existence of factual allegations to support the types of claims they intend, and fails to refute HACD's arguments supporting dismissal. Instead, Plaintiffs again resort to sweeping generalities, cite unrelated caselaw, and draw unfounded conclusions that – if anything – further support dismissal. Dependence on assorted labels and conclusory statements coupled with formulaic

recitation of elements of causes of action like those of the Third Amended Complaint was rejected in *Jones v. Bremen High Sch. Dist. 228,* No. 08 C 3548, 2009 WL 537073 at \*2 (N.D. Ill. 2009). Simply put, Plaintiffs did not plead any plausible cause of action against HACD. There is no reason to believe these deficiencies would be cured by an amended pleading. The factual insufficiency of Counts VI, VII, VIII, IX, XIII, and XIV against Defendant HACD, along with improper prayers for punitive damages, justify dismissal of HACD from this case, with prejudice.

## ARGUMENT

### A. Plaintiffs Failed to State a Claim Against HACD for Violation of Landlord-Tenant Regulations in Count VI

Despite their citation to *Iqbal* for the applicable standard, Count VI lacks the factual specificity necessary to support claims against HACD. Plaintiffs cannot state a cause of action for violation of "landlord-tenant regulations" because they cannot make any more than conclusory allegations in the absence of the operative facts necessary to state such a claim against HACD. This is even more clear in their response brief because they make no attempt at all to refer to any factual allegations in addressing Count VI. *Dkt. #171, PageID 1980.*

Plaintiffs' Count VI alleges a failure of HACD to enforce HUD Housing Quality Standards ("HQS") and to make repairs at the subject premises relative to those standards. *Dkt. 109 at ¶¶71-80.* The response brief does not identify any allegations with particularity as to when the inspections occurred, and how specifically each such inspection failed and/or did not meet HQS standards. Based on this alone, Plaintiffs' claim in Count VI must be dismissed based on their failure to state their claim with particularity and to rely upon mere conclusory allegations. *See Iqbal v. Ashcroft*, 556 U.S. 662,678 (2009).

More significantly, however, Plaintiffs do not refute HACD's argument as to the lack of any private right of private action for claims regarding the alleged condition of Plaintiff's unit.

2

Plaintiffs cite W*right v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418 (1987), *Gamble v. City of Escondido*, 104 F.3d 300 (9th Cir. 1997), *Davis v. Chicago Housing Authority*, 136 Ill.2d 296 (1990), but none of these cases support entitlement to any particular quality of housing. This is because there is no private right of action for the alleged failure to enforce housing quality standards at the subsidized unit. In *Thomas v. Chicago Hous. Auth.*, 919 F. Supp. 1159, 1164 (N.D. Ill. 1996), the court determined that HUD had no duty to ensure the "good conditions" of apartments that it did not own or manage. Plaintiffs made no attempt to discuss or distinguish *Thomas*. Dismissal is warranted for failure to allege that HACD owned or managed their assisted unit, which they admit was leased to them by BKA Holding. *Dkt. 109 at ¶¶20, 22, 42, Ex. C.*

No attempt is made by Plaintiffs to discuss HUD's regulations which further foreclose a private right of action to enforce HQS. Section 982 does not create any right of the family, or any party other than HUD or the public housing agency ("PHA") to require enforcement of the HQS standards, or to assert any claim against HUD or the PHA for damages, injunctive, or other relief, for alleged failure to enforce the HQS. 24 C.F.R. §982.407; see also *Davis v. Sellas*, 580 F. App'x. 467, 468 (7th Cir. 2014). Further, Plaintiffs contend HACD was obligated but failed to ensure repairs were made to the subject premises. Again, there is no private right of action for alleged violation of HUD regulations relative to the HQS standards, so this claim also fails. Plaintiffs did not even address HACD's citations supporting the premise there is no basis to plausibly allege that HACD was required to remediate *any* issues at the privately owned property at issue.

Plaintiffs' response does not point to any facts to support a basis in the Third Amended Complaint upon which HACD was obligated to compel such conduct from the private owner. Instead, Plaintiffs chose to repeat their misunderstanding of the voucher ("HCV") program expressed by their allegations against HACD regarding its claimed "failure" to mandate owner

3

repairs or improvements. In its opening brief, HACD discussed the 7th Circuit case, *Medley v. City of Milwaukee*, 969 F.2d 312, 313 (7th Cir. 1992) in which the Court explained the voucher system. The money paid by HUD is then distributed by the public housing authority("PHA") to each person who agrees to rent housing to one of these families a fixed percentage of the family's rent. Tenants find their own rental housing under the voucher program. *Pickett v. Hous. Auth. of Cook Cty.*, 2017 WL 4281054, at *1 (N.D. Ill. Sept. 27, 2017), citing *24 C.F.R.* §§ 982.1(a)(2), 982.302(a). If the PHA approves the housing, then the PHA makes a contract with the landlord called a "housing assistance payments" ("HAP") contract under which the tenant family pays a portion of its income as rent and the PHA pays the remainder directly to the owner. *Id.*, *citing* §§982.1(a)(2), 982.451. Plaintiffs again did not attempt to refute or even address these cases.

Simply put, HACD cannot require a property owner such as BKA Holdings to repair and maintain such a dwelling under federal or local regulations. In their response brief, Plaintiffs provide no authority, nor do they point to any factual basis to support a private right of action claim in Count IV against HACD. Program participants select their own units on the open market rather than HACD identifying and/or offering units to a tenant. *Pickett at* *1. HACD does not have the right to compel a private landlord to make any improvements or repairs to a privately-owned property. Instead, HACD has only *one option* under the rules if an owner fails to make improvements to the residence after HQS deficiencies are documented in an inspection under HUD rules. HUD permits abatement of the housing assistance payments. *24 C.F.R. 985.3(f)*. If the owner does not remediate the conditions which violate HQS standards, HACD may move to terminate the HAP contract between the owner and HACD. *Id.* No federal or local program regulation however provides a mechanism by which HACD can compel an owner of private property to make

4

any changes, modifications, or improvements to a private rental property, nor do Plaintiffs cite to any such rule or regulation.

Because HACD has no authority to compel BKA Holding LLC to make improvements or repairs to the privately-owned unit, and no private cause of action exists for such a claim, HACD is entitled to dismissal of Count VI of the Third Amended Complaint, with prejudice, as a matter of law.

**B. Dismissal of Count VII for Breach of the Implied Warranty of Habitability Against HACD Is Likewise Warranted**

Count VII's claim for breach of the implied warranty of habitability regarding the unit leased by Plaintiffs from property owner BKA Holding LLC cannot stand, as it does not apply to HACD. Plaintiffs allege the property was owned by BKA Holding LLC. *Dkt. 109* at ¶¶20, 22, 42, Ex. C. Defendant HACD is not a party to the lease between Plaintiffs and BKA Holding, has no ownership of the property, and has no contractual relationship with Plaintiff relative to the property. *Dkt. 109* at Ex. C.

Plaintiffs' response focuses on what the Plaintiffs call "failed multiple HQS inspections," as if HACD could or did fail them*. Dkt. #171, PageID 1981*. These inspections were of BKA Holding, LLC owned property, not HACD property. There is no basis for finding such a duty on the part of HACD, and there are simply no factual allegations to support this claim. The implied warranty of habitability as to leases of residential real estate cannot apply to HACD as it was not party to the subject lease. No such implied warranty extends to or is imputed upon third party HACD as a matter of law. *Glasoe v. Trinkle*, 107 Ill.2d 1 (1985); Dkt. 109 at Ex. C.

Courts also consistently have held that even where a federally regulated and subsidized entity under the supervision of HUD owns the subject property and entered into a lease with a tenant (unlike here), no warranty of habitability is implied based upon the Supreme Court's

authority of *Alexander v. HUD*, 555 F.2d 166, 170–71 (7th Cir. 1977). See also *Gibson v. Gary Housing Authority*, 754 F.2d 205, 206 (7th Cir. 1985) (court may set aside warranty of habitability theory based upon *Alexander*). Plaintiffs made no attempt to address either of these cases, or to suggest how a higher standard would apply to voucher subsidized properties not owned by HACD.

Neither of the cases cited by Plaintiffs, *Thorpe v. Housing Authority of Durham*, 393 U.S. 268 (1969) (regarding notification that must precede eviction), nor *Jack Spring, Inc. v. Little*, 50 Ill.2d 351 (1971) (presented issue in dispute between landlords and tenants of whether lease provision governing examination and acceptance by tenant of condition of premises precluded implied warranty of habitability), support the existence of an implied warranty of habitability of the subject property as to HACD. No entity other than BKA Holding, LLC owned the property. Defendant HACD is not a party to the lease between Plaintiffs and BKA Holding, has no ownership of the property, and has no contractual relationship with Plaintiff relative to the property. *Dkt. 109 at Ex. C.*

The factual allegations are that HACD did not own the subject property, and was not a party to the lease, and because the Supreme Court has found such warranties do not apply to even leases relative to HUD assisted housing, this Court must dismiss Plaintiffs claims in Count VII with prejudice based on Plaintiffs' failure to state a cognizable claim under the law.

**C. Plaintiffs Fail to Refute Grounds for Dismissal of Count XIII for Civil Conspiracy Against HACD**

Plaintiffs also improperly rely on conclusory language in their response brief to oppose dismissal of Count VIII alleging civil conspiracy under Illinois law. Dismissal is warranted because Plaintiffs have not plausibly alleged facts required to state the elements of a civil conspiracy claim in Illinois, and do not satisfy the elements set out in their own cited case, *Adcock v. Brakegate, Ltd.,* 164 Ill. 2d 54, 62 (1994).

6

Instead, Plaintiffs claim in their response brief that they "detail" a coordinated effort in the Third Amended Complaint, without actually stating where in the Third Amended Complaint that they specifically allege the part played by HACD in the claimed conspiracy. In pleading civil conspiracy, a plaintiff must plead facts establishing: "(1) an agreement between two or more persons to participate in an unlawful act or a lawful act in an unlawful manner; (2) an injury caused by the defendant; and (3) an overt act committed in furtherance of the common scheme." *Pawilkowski v. Toyota Motor Credit Co.*, 309 Ill. App. 3d 550, 565 (2d Dist. 1999). The overt act committed in furtherance of the conspiracy must be tortious. *Lewis v. Lead Indus. Ass'n*, 2020 IL 124107, ¶ 20. "Ultimately, '[b]ecause conspiracy is not an independent tort, 'if a plaintiff fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for conspiracy also fails.'" *Merrilees v. Merrilees*, 2013 IL App (1st) 121897 ¶ 49, quoting *Indeck N. Am. Power Fund, L.P. v. Norweb, P.L.C.*, 316 Ill. App. 3d 416, 432 (1st Dist. 2000)).

The only "tortious conduct" Plaintiffs discuss in their response, however, is "inaction and procedural manipulation." *Dkt. #171, PageID 1982*. Not only did Plaintiffs fail to allege that HACD engaged in any overt tortious act in furtherance of the alleged conspiracy, but in their response, it is clear that they are relying solely on claimed inaction by HACD. This is characterized in the Third Amended Complaint as: (1) failing to remedy alleged violations of HUD rules and regulations (where there is no allegation supporting any such obligation by HACD); (2) failing to respond to false information allegedly provided to HACD (although there is no allegation that HACD knew said information was false); and (3) failing to get involved in BKA Holding's eviction proceedings against Plaintiffs (although HACD was not party to the same, was not a party to the lease, and had no right to get involved relative to the same). *Dkt. 109 at ¶¶20, 22, 42, Ex. C, Ex. E, Ex. L.*

Even if any of the alleged actions were torts, which HACD denies, "an agreement to commit a wrongful act is not a tort." *Adcock v. Brakegate, Ltd.,* 164 Ill. 2d 54, 63 (1994). Further, as noted by the Illinois Supreme Court, "the mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Buckner v. Atlantic Plant Maintenance*, 182 Ill. 2d 12, 24 (1998). Illinois law requires a plaintiff to allege facts to bring his claim within the cause of action asserted. *Turner v. Mem'l Med. Ctr*., 233 Ill. 2d 494, 499 (2009). Plaintiffs have failed to support their civil conspiracy claim with factual allegations to meet this requirement, as well as the others discussed above, and Count XIII must also be dismissed by this Court with prejudice.

**D.** **Plaintiffs' Response Fails to Provide Any Grounds for Sustaining Count XIV's Claims of IIED Against HACD**

Plaintiffs likewise failed to state a claim for intentional infliction of emotional distress under Count XIV of the Third Amended Complaint. Plaintiffs' factual allegations fall far short of the standard required to sustain such a claim against HACD, justifying dismissal with prejudice with no right to re-plead. Their response brief does nothing to support any other conclusion.

To state a cause of action for intentional infliction of emotional distress under Illinois law, Plaintiffs must allege: (1) the defendant's conduct was extreme and outrageous; (2) that the defendant who engaged in the conduct either intended that his conduct should inflict severe emotional distress or knew that there was a high probability that the conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Hernandez v. Dart*, 635 F. Supp. 2d 798, 813 (N.D. Ill. 2009); *see also Cook v. Winfrey,* 141 F.3d 322, 330 (7th Cir. 1998). Liability for intentional infliction of emotional distress "does not extend to mere insult, indignities, threats, annoyances, petty oppressions or trivialities" and can attach

"only in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Hernandez,* 635 F. Supp. 2d at 813.

Here, Plaintiffs' claims against HACD are essentially that it failed to require the property owner to remedy alleged issues at their subsidized unit, alleged eviction of Plaintiffs without a 30-day notice to vacate (though it did not initiate eviction proceedings as it was not the landlord and the eviction proceedings were filed and continue to be pursued by third-party/landlord BKA Holding), failure to take action in an eviction case where it is not a party and had no right to act, and generally a "failure to follow federal and local regulations." *Dkt. 109 at ¶¶146-148.*

Defendant HACD had no role in the eviction proceedings (which remain ongoing between Plaintiffs and BKA Holding), and its claimed failure to take action where it is not a party and had no right to act cannot be considered the "extreme and outrageous conduct" required to sufficiently plead intentional infliction of emotional distress. Under the objective standard applied by Illinois Courts to determine whether the alleged conduct is extreme and outrageous, it is clear Count XIV must be dismissed based on Plaintiffs' failure to state their claim. *Hernandez,* 635 F. Supp. 2d at 813. In their response brief, Plaintiffs mischaracterize *Public Finance Corporation v. Davis*, 66 Ill.2d 85 (1977), wherein the Illinois Supreme Court rejected the defendant's counterclaim for infliction of emotional distress allegedly caused by Public Finance's manner of seeking to collect money owed. The Court held infliction of emotional distress alone is not enough for the law to intervene, observing that the complaint contained no allegations of abusive or threatening language or conduct coercive in nature. *Id.* at 90, 93, *Dkt. #171, Page ID #1983.*

Nor have Plaintiffs plausibly alleged that the conduct identified (which is denied) was undertaken with an intent to inflict severe emotional distress upon Plaintiffs, or that HACD knew there was a high probability of inflicting severe emotional distress on Plaintiffs. Further, Plaintiffs'

9

claim is not properly pled as to each Defendant in Count XIV, instead pleading conduct against Defendants collectively, and failing to attribute which damages were allegedly suffered as a direct result of each Defendant's conduct. In doing so, Plaintiffs further failed to properly plead Count XIV, as general allegations directed at all Defendants, offering only a "formulaic recitation of the elements" of such a cause of action as Plaintiffs have asserted here, do not satisfy pleading requirements under *Iqbal. See Iqbal v. Ashcroft*, 556 U.S. 662, 678(2009). Plaintiffs have not supplied any reason to sustain Count XIV against HACD. It must therefore be dismissed, with prejudice.

> E.   **Plaintiffs' Response Fails to Oppose Dismissal of Counts XIII and XIV Pursuant to Immunities Provided by the Tort Immunity Act**

Defendant HACD is likewise entitled to dismissal of Counts XIII and XIV as it is immune from those claims under Illinois law. Plaintiffs' response brief makes the conclusory claim (without citing underlying fact allegations) that HACD used state processes to "mask its private motives" claiming violation of due process rights. *Dkt. #171, PageID 1984*. Plaintiffs also restate their contention of "manipulation" of procedural defenses by HACD without any specific factual allegations in violation of *Iqbal*. Further, Plaintiffs do not address or distinguish the cases cited by HACD supporting dismissal of Plaintiffs' Illinois tort claims in Counts XIII and XIV pursuant to the various provisions of the Tort Immunity Act raised by HACD in its Motion to Dismiss. *Dkt. 171*. Both Counts XIII and XIV must be dismissed, with prejudice, on that basis alone.

Regardless, as discussed more fully in Defendant's opening brief, HACD is immune from suit pursuant to Section 2-105 of the Act, as "[a] local public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property…to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." *745 ILCS 10/2-105*. Further, Section 2-108 of

the Act provides that "a local public entity is not liable for any injury caused by the granting, or failure to grant, public welfare goods or moneys." *745 ILCS 10/2-108.* When applied to Counts XIII and XIV, even if HACD's inspections identified in Plaintiffs' complaint were inadequate or negligent, reached improper conclusions, or incorrectly determined the property passed HQS (all of which are denied), HACD is immune from Plaintiffs' claims under Section 2-105 of the Act as they all relate to inspections of the subject property. *Dkt. 109 at XIII, ¶¶139 -154.* Considering that all claims raised by Plaintiffs against HACD relate to their administration of HUD's voucher program and public assistance thereunder, Section 2-108 applies to bar any claims related to the purported failure to grant or denial of any requests or assistance thereunder. *Dkt. 109 at XIII, ¶¶139 -154.* Neither of these sections of the Tort Immunity Act contain exceptions for intentional or willful and wanton conduct, so even claims asserting intentional torts are immunized under the aforesaid provisions of the Act. As HACD is immune from Plaintiff's tort claims pursuant to Section 2-105 and 2-108 of the Act, Counts XIII and XIV must be dismissed, with prejudice, as a matter of law.

   F. **Count XVII Pursuant to 42 U.S.C. §1983 is Subject to Dismissal as Plaintiffs' Fail to Allege Actionable Deprivation and Nonetheless Have Adequate State Law Remedies**

   1. **Plaintiffs Cannot Plausibly Allege an Actionable Deprivation Under §1983**

Plaintiffs' claims asserting violations based upon an alleged failure of HACD to comply with the CARES Act and Interim Final Rule regarding notice to tenants prior to eviction by a landlord, do not constitute constitutional rights and are therefore not subject to redress pursuant to §1983. *See, e.g., Taake v. County of Monroe,* 530 F.3d 538, 542 (7th Cir. 2008)(§1983 covers only "fundamental" rights, which are few, and **§**1983 does not transform every tort committed by a state actor into a constitutional violation). Even if the failure to provide notice itself did rise to the level

of a constitutional violation (which is denied), any duty to provide such notice was that of Plaintiffs' landlord, BKA Holding LLC, who initiated the eviction proceedings and pursued eviction against Plaintiffs as admitted on the face of the current complaint. *Dkt. 109 at ¶¶56, 62, 79, Ex. E., Ex. Q.*

Plaintiffs admit in their response brief, as they did in the Third Pary Complaint, that they have remained assisted during all relevant time periods to their claims, and that HACD continued to pay rental assistance to their landlord, BKA Holding LLC. *Dkt. 109 at ¶¶39-40, Ex. B; Ex. B1. Dkt. 171, PageID 1990.* Even if Plaintiffs pled a constitutional violation sufficient to support their claims in Count XVII (which is denied), their admission that they suffered no actionable deprivation requires dismissal. Although Plaintiffs allege that Defendant HACD's "actions or inactions" somehow contributed to the alleged deprivation of rights (which allegations fail to plead such conduct with specificity as required by *Iqbal* and instead improperly relies upon conclusory allegations), even viewing the allegations in the light most favorable to Plaintiffs, their claims are insufficient as a matter of law.

In their response brief, Plaintiffs have not countered the clear failure of the Third Amended Complaint to state a due process deprivation claim. To assert a violation of the Due Process Clause, Plaintiffs must demonstrate that they had a "property interest" and that they were deprived of this interest without due process of law. See *Phelan v. City of Chicago,* 347 F.3d 679, 681 (7th Cir.2003) (internal citation omitted). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Moore v. Muncie Police and Fire Merit Com'n,* 312 F.3d 322, 326 (7th Cir.2002) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).

12

Plaintiffs admit in their response that they were not deprived of any property right by HACD. *Dkt. 171, PageID 1990*. According to their Third Amended Complaint, HACD provided rental assistance to the property owner for Plaintiffs' benefit, and Plaintiffs have remained assisted at all times. *Dkt. 109 at ¶¶39-40, Ex. B; Ex. B1; Dkt. 171, PageID 1990.* This admission, now repeated in their response brief, defeats Plaintiffs' claims of any constitutional deprivation, as no deprivation of their alleged property right has occurred. As participants in the HCV program, Plaintiffs' only protected interest is in the continued participation in the program. The Third Amended Complaint does not allege that the Plaintiffs' participation in the program was suspended or terminated by HACD at any time. Because Plaintiffs failed to allege they were subjected to a deprivation of a protected property interest, Count XVII should also be dismissed as a matter of law.

### 2. Plaintiffs' Section 1983 Claim Must be Dismissed Because Plaintiffs Have Adequate State Law Remedies

As discussed above, Plaintiffs' procedural due process claim allegedly arising out of a failure to provide notice regarding BKA Holding LLC's eviction proceedings against them fails to support a claim against HACD, not only because HACD is not involved in that process and had no obligation to provide such notice, but because Plaintiffs admit they have remained subsidized at all times, there was no termination of assistance so there could be no claim based upon failure to provide notice of an event which never occurred. *Dkt. 109 at ¶¶39-40, Ex. B; Ex. B1*. Further, even if Plaintiffs could plausibly plead a claim for deprivation of their procedural due process rights (which is denied), dismissal is required because of the availability of state law remedies for the deprivation alleged. Illinois law provides sufficient procedural protection in the context of this case through the pending eviction proceedings between BKA Holding and Plaintiffs. *See Bravo v. IBC, et al.,* 2022 WL 3290719 at *3-4 (N.D.Ill. August 11, 2022) citing *Dix v. Edelman Fin. Servs.,*

13

*LLC,* 2018 WL 3922199, at *7 (N.D. Ill. Aug. 14, 2018) (plaintiff had an "adequate remedy" for his alleged wrongful eviction—the Illinois Forcible Entry and Detainer Act), aff'd, 978 F.3d 507 (7th Cir. 2020). Plaintiffs must allege they availed themselves of state post-deprivation remedies, or that available remedies are inadequate. *See LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 (7th Cir. 2010) (failure to allege Plaintiff availed itself of post-deprivation remedies, or that available remedies were inadequate, was fatal to its procedural due process claim."). Plaintiffs have not done so here, subjecting their due process claim in Count XVII to dismissal, with prejudice.

Though not discussed in Plaintiffs' response, to the extent they plead a §1983 claim against Defendant HACD based upon alleged violation of the federal housing laws, it should be dismissed due to the available remedial mechanisms of the Fair Housing Act. While a Plaintiff may bring a §1983 suit to enforce rights defined by federal statutes, an exception exists when a comprehensive remedial scheme evinces a congressional intent to foreclose resort to Section 1983 for remedy of statutory violations. *Alsbrook v. City of Maumelle, 184 F.3d 999,1011(8th Cir. 1999)* (internal citation omitted); *See also Hopkins v. Springfield Housing Auth.,* 2014 WL 3583857 (C.D. Ill. July 21, 2014). Count XVII must accordingly be dismissed with prejudice.

**G.      Plaintiffs' Prayers for Punitive Damages Must Be Stricken**

Plaintiffs' response fails to address HACD's argument that punitive damages are not available against HACD, and Plaintiffs accordingly waive opposition to HACD's motion in this regard. Instead, Plaintiffs make the blanket conclusory statement that HACD's actions were not incidental, and that HACD violated a discharge injunction relating to a bankruptcy filing by one of them as their basis for an award of punitive damages. *Dkt. #17, PageID 1986*. Nor have they addressed cases relied upon by HACD in support of striking and/or dismissing the prayers for

14

punitive damages against HACD in Count XIII ¶¶8 and 10, and elsewhere generally in the Third Amended Complaint *(Dkt. 109)*. Because HACD is immune from the imposition of punitive damages under both federal and state law, and Plaintiffs have failed to provide any basis to support the availability of such damages against HACD, Plaintiffs' prayers for punitive damages must also be stricken as a matter of law.

## **CONCLUSION**

Not only have Plaintiffs failed to state cognizable claims against Defendant HACD, but HACD is immune from Plaintiffs' tort claims, and HACD is entitled to dismissal of all Counts against it as a matter of law. HACD respectfully requests dismissal with prejudice of Counts VI, VII, VIII, Count III and Count XIV, and further requests that any and all prayers for punitive damages be stricken and/or dismissed, with prejudice, by the court.

WHEREFORE, Defendant, HOUSING AUTHORITY OF THE COUNTY OF DEKALB, prays that this Court grant its Motion to Dismiss Plaintiff's Third Amended Complaint, with prejudice, strike the prayers for punitive damages, and for all other relief in its favor deemed just and proper.

Respectfully submitted,

**HOUSING AUTHORITY OF THE COUNTY OF DEKALB**

/s/ Allie M. Burnet

Allie M. Burnet
**Best, Vanderlaan & Harrington**
200 N. LaSalle Street, Suite 2600
Chicago, IL 60601
(312) 819-1100
eservice@bestfirm.com
aburnet@bestfirm.com

15

## CERTIFICATE OF SERVICE

I, the undersigned, state that I caused copies of the foregoing to be served, with enclosures referred to thereon, if any, by **electronic delivery through the Court's filing system** to all parties of record, at their addresses of record, on December 6, 2024.


/s/ Allie M. Burnet